JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**Motion 1 of 3**<br><br>**(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FORUM NON CONVENIENS;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**FILED UNDER SEPARATE COVER:**<br><br>**(3) REQUEST FOR JUDICIAL NOTICE AND NOTICE OF DOCUMENTS INCORPORATED BY REFERENCE;**<br><br>**(4) DECLARATIONS OF LEE TAYLOR AND ANTONY WHITE IN SUPPORT; and**<br><br>**(5) [PROPOSED] ORDER.**<br><br>Judge:       Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:        December 19, 2024<br>Time:        10:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 19, 2024, at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Specially Appearing Defendants Fenix International Limited and Fenix Internet LLC (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion to dismiss the Complaint filed by Plaintiffs N.Z., R.M. B.L., S.M., and A.L. (collectively, "Plaintiffs") for forum non conveniens ("Motion").

This motion is based on the forum-selection clause in the Terms of Service for OnlyFans.com ("OnlyFans"), to which each Plaintiff repeatedly agreed, which specifies that this action must be brought "in the courts of England and Wales." This Motion is based on this Notice, the Memorandum of Points and Authorities, the Request for Judicial Notice and Notice of Documents Incorporated by Reference, Declarations of Lee Taylor and Antony White and their attached exhibits, the files and records in this action, the arguments of counsel, and any other matters the Court may properly consider.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 18, 2024.

DATED: October 25, 2024    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____ */s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

i

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

    I.    The Instant Action ...................................................................................2

    II.   Plaintiffs Repeatedly and Affirmatively Assented to the Terms ............3

ARGUMENT .............................................................................................................6

    I.    THIS COURT CAN AND SHOULD DECIDE THIS MOTION FIRST ....................................................................................................7

    II.   THE FORUM-SELECTION CLAUSE APPLIES TO PLAINTIFFS' CLAIMS .......................................................................7

    III.  THE COURTS OF ENGLAND AND WALES ARE AN ADEQUATE ALTERNATIVE FORUM .............................................10

    IV.  THE FORUM-SELECTION CLAUSE IS VALID AND ENFORCEABLE .................................................................................13

        A.    The Forum-Selection Clause Is Not the Product of Fraud ..........13

        B.    Enforcing the Forum-Selection Clause Would Not Deprive Plaintiffs of Their Day in Court ...................................................16

        C.    Enforcing the Forum-Selection Clause Would Not Contravene California Public Policy .................................................................16

    V.   THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL ....................................................................................18

CONCLUSION ........................................................................................................20

CERTIFICATE OF COMPLIANCE .........................................................................21

ii

# TABLE OF AUTHORITIES

Page(s):

## CASES

*210 Brands Inc. v. Canterbury of New Zealand Ltd.*,
No. 2:20-cv-06853-JWH-Asx,
2020 WL 7773892 (C.D. Cal. Dec. 29, 2020)..........................................................20

*Altimeo Asset Management v. Qihoo 360 Technology Co.*,
No. LA CV19-01619 JAK (JCx),
2019 WL 11274587 (C.D. Cal. Oct. 24, 2019) ........................................................8

*America Online, Inc. v. Superior Court*,
90 Cal.App.4th 1 (2001) ...............................................................................................18

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*,
571 U.S. 49 (2013).................................................................................6, 13, 16, 18

*Cole v. Quest Diagnostics, Inc.*,
No. 1:22-cv-00892 JLT SKO,
2023 WL 6201702 (E.D. Cal. Sept. 22, 2023) ........................................................9

*Dibdin v. South Tyneside NHS Healthcare Trust*,
No. CV 12–00206 DDP (PLAx),
2013 WL 327324 (C.D. Cal. Jan. 29, 2013).............................................................11

*Everest National Insurance Co. v. ShiftPixy, Inc.*,
No. SACV 20-02362-CJC (KESx),
2021 WL 4497935 (C.D. Cal. Apr. 7, 2021) ...........................................................16

*Falls v. Soulbound Studios, LLC*,
No. 2:21-cv-00961-SVW-JPR,
2021 WL 4295137 (C.D. Cal. July 6, 2021) ...........................................................15

*Frisby v. Thor Motor Coach, Inc.*,
No. CV-22-2047-MWF (SHKx),
2023 WL 1420434 (C.D. Cal. Jan. 24, 2023)....................................................17, 19

*GIP Development SARL v. Shaghal Ltd.*,
No. CV 22-6573-JFW(JPRx),
2022 WL 18932821 (C.D. Cal. Dec. 9, 2022)....................................................8, 10

iii

*Globatrac LLC v. JB Squared Ltd.*,
    No. CV–15–9278–MWF (SPx),
    2016 WL 9045479 (C.D. Cal. Feb. 5, 2016) ........................................10, 12, 19, 20

*Ingram v. HamSquad, Inc.*,
    No. 2:21-cv-09664-FWS (KSx),
    2023 WL 7276562 (C.D. Cal. July 20, 2023) ...................................................*passim*

*Keebaugh v. Warner Bros. Entm't Inc.*,
    100 F.4th 1005 (9th Cir. 2024) .....................................................................14

*Kiwijet, LLC v. Guangzhou Hayonex International Logistics Co.*,
    No. 2:21-cv-07515-FWS-JDE,
    2024 WL 3468926 (C.D. Cal. June 10, 2024)...............................................8, 13, 18

*Knight v. Wata, Inc.*,
    No. SA CV 22-00967-DOC-KES,
    2022 WL 3574441 (C.D. Cal. July 27, 2022) ...........................................................9

*Lee v. DoNotPay, Inc.*,
    683 F. Supp. 3d 1062 (C.D. Cal. 2023) ............................................................14, 15

*Lewis v. Liberty Mutual Insurance Co.*,
    953 F.3d 1160 (9th Cir. 2020) ....................................................................1, 12, 16

*Lockman Foundation v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) .......................................................................11

*Losson v. Union des Associations Europeennes de Football*,
    No. 23-cv-06500-JSC,
    2024 WL 3406987 (N.D. Cal. July 11, 2024) ......................................................9, 12

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)..............................................................................11

*Mazzola v. Roomster Corp.*,
    No. CV 10-5954 AHM (JCGx),
    2010 WL 4916610 (C.D. Cal. Nov. 30, 2010) ........................................................14

*Medina v. Oanda Corp.*,
    No. 5:16-cv-02170-EJD,
    2017 WL 1159572 (N.D. Cal. Mar. 29, 2017) ......................................................9, 15

*Muniz v. Fenix International Ltd.*,
No. 1:20-cv-03200-LMM,
2021 WL 3417581(N.D. Ga. June 28, 2021) ........................................................ 11

*Muto v. Fenix International Ltd.*,
No. 5:22-cv-02164-SSS-DTBx,
2024 WL 2148734 (C.D. Cal. May 2, 2024) ................................................... 17, 18

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) ............................................................................ 14, 15

*Pioneer Cirs., Inc. v. Miva Technologies GmbH*,
No. SA CV 20-00243-DOC-DFM,
2020 WL 6694318 (C.D. Cal. Sept. 3, 2020) ........................................................ 13

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ...................................................................................... 10, 11

*Plumleigh v. Metropolitan Fine Arts & Antiques Inc.*,
No. SACV 14-1721-JLS (JCGx),
2015 WL 13918387 (C.D. Cal. Jan. 21, 2015) ..................................................... 13

*Provincial Government of Marinduque v. Placer Dome, Inc.*,
582 F.3d 1083 (9th Cir. 2009) ............................................................................. 7

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) (en banc) ........................................................ 12, 13

*Rosenberg v. Viking River Cruises, Inc.*,
No. 2:19-cv-09691-RGK-AS,
2020 WL 1442886 (C.D. Cal. Mar. 23, 2020) ............................................. 7, 8, 10

*Sandler v. iStockphoto LP*,
No. 2:15–cv–03659–SVW–JEM,
2016 WL 871626 (C.D. Cal. Feb. 5, 2016) ................................................. 3, 15, 17

*Schumacher v. Amazon.com LLC*,
No. SACV 11–01906–CJC(JPRx),
2012 WL 13036856 (C.D. Cal. May 29, 2012) ...................................................... 19

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
549 U.S. 422 (2007) ............................................................................................ 7

v

*Stoneville USA, Inc. v. COMPACstone USA, Inc.*,
    No. CV 19-10252 PA (SSx),
    2020 WL 13413472 (C.D. Cal. Mar. 6, 2020) ......................................................... 16

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ............................................................... *passim*

*TMF Trustee Ltd. v. M/T Megacore Philomena*,
    No. CV 17-09010 AGR,
    2020 WL 3064447 (C.D. Cal. Mar. 24, 2020) ......................................................... 20

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
    407 F. Supp. 3d 931 (S.D. Cal. 2019) ............................................................. 11, 20

**PRELIMINARY STATEMENT**

This action does not belong in this (or any United States) court. Rather, Plaintiffs' claims should be dismissed for forum non conveniens based on the forum-selection clauses in their binding agreements with Specially Appearing Defendants Fenix International Limited ("FIL") and Fenix Internet LLC (collectively, "Fenix").

Every Plaintiff who registered for a user account on OnlyFans.com ("OnlyFans" or the "Website") since July 2018 **affirmatively agreed** to the OnlyFans Terms of Service ("Terms") when they signed up. And regardless of when they signed up, every Plaintiff actively re-affirmed that consent when the Terms were updated in 2021. As a result, every Plaintiff agreed to the forum-selection clause in the Terms stating "**any claim** which you have or which we have **arising out of or in connection with your agreement with us or your use of OnlyFans** (including, in both cases, non-contractual disputes or claims) **must be brought in the courts of England and Wales**." ("Forum-Selection Clause") (Taylor Decl. ¶¶16-35.)[1] Plaintiffs also agreed that "English law will apply to" such claims. (*Id.*)

The Ninth Circuit and its courts recognize "an alternative forum is available where the defendant is amenable to service of process and the forum provides some remedy for the wrong at issue." *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1168 (9th Cir. 2020). And "when a valid forum[-]selection clause applies, the clause should be given controlling weight in all but the most exceptional cases." *Ingram v. HamSquad, Inc.*, 2023 WL 7276562, at *3 (C.D. Cal. July 20, 2023) (Slaughter, J.). Federal courts may only refuse to enforce a forum-selection clause in three scenarios: "(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of their day in court." *Id.*

---

[1] Unless otherwise noted, all emphases are added, and all citations, alterations, and internal quotation marks are omitted from all quoted material for ease of reading. "Taylor Decl." and "White Decl." references are to the concurrently-filed declarations of Lee Taylor and Antony White, respectively.

Here, English courts offer sufficient remedies for Plaintiffs' claims, and the Fenix entities have agreed to personal jurisdiction and service in England. *Infra* §III. Thus, Plaintiffs cannot show English courts are an inadequate forum.

Plaintiffs also cannot show the Forum-Selection Clause was the product of fraud (or is otherwise unenforceable), or that allowing an English court to decide their claims will deprive them of their day in court or contravene California public policy, particularly given that English law governs their claims. *Infra* §IV. Nor can Plaintiffs show "exceptional" circumstances exist that warrant disregarding the parties' agreed-upon choice of forum. *Infra* §V. For the foregoing reasons, this Court should enforce the Forum-Selection Clause and dismiss this case on forum non conveniens grounds.

## BACKGROUND

### I.    The Instant Action

On July 29, 2024, Plaintiffs filed a class action complaint alleging that content providers ("Creators") on the Website paid third parties to pose as the Creator and exchange messages with the Plaintiffs. (Compl. ¶16.) They assert Fenix are aware of this practice, which "blatantly violates many of [their] platform rules and policies," but Fenix "fail[] to enforce those policies… in violation of their promises" that Plaintiffs could "direct message" with Creators. (*Id.* ¶¶7, 14, 18, 483a.) On behalf of a nationwide class and/or California subclass of OnlyFans users, Plaintiffs assert claims for violations of RICO, breach of contract, common law and statutory fraud, the California False Advertising Law ("FAL"), the California Unfair Competition Law ("UCL") (collectively, "Misrepresentation Claims"), the Video Privacy Protection Act ("VPPA"), and the California Invasion of Privacy Act ("CIPA"). (*Id.* ¶¶316-17, 347-434, 441-89.)

In the Complaint, Plaintiffs repeatedly cite and rely on the Terms. (*See, e.g.*, *id.* ¶¶68, 120, 126-27 & n.47, 323, 326.) Indeed, Plaintiffs quote the Terms at length, alleging the Terms "require[] Fans and Creators to… protect personal and confidential information," prohibit "misleading or deceptive conduct" or "anything that violates… someone else's rights," and give Fenix "powers to prevent the use of" third parties by Creators and "rectify

2

1   the violations of its [T]erms." (*Id.* ¶¶151-55.)

2      In their Misrepresentation Claims, Plaintiffs allege that Fenix "misrepresented and

3   concealed material facts regarding the nature of the **interactions on [their] platform**"

4   when they falsely stated on the Website that a user can "direct message" and have

5   "authentic connections" with Creators "to fraudulently induce Plaintiffs… **to use the**

6   **OnlyFans site.**" (*Id.* ¶¶80, 86-87, 98, 146, 156, 242, 255, 271, 283, 301, 355-57, 376, 378,

7   442, 449-50, 452, 467, 473-74, 483-84.)

8      Plaintiffs' VPPA and CIPA claims allege Fenix's "platform collects and transmits

9   information" and "tracks Plaintiffs' and Class members' communications **while they were**

10  **on the OnlyFans website**." (*Id.* ¶¶407, 426). Plaintiffs cite the Terms and the Privacy

11  Policy, which Plaintiffs admit is explicitly referenced and incorporated in the Terms in

12  effect at the time the Complaint was filed as part of "**the legally binding agreement**

13  between [Plaintiffs] and [Fenix]." (Compl. ¶151; *see also id.* ¶¶130, 406, n.79 (quoting the

14  Privacy Policy's provisions on the collection of customer data); *see also* Taylor Decl. Ex.

15  A at 2.) Indeed, Plaintiffs allege (wrongly) that "Nothing in OnlyFans' Terms… informs

16  Fans of the possibility that their Private Communications might be disclosed to

17  Unauthorized Third Parties" or "obtain Fans' consent for such disclosures"—again putting

18  the Terms and Plaintiffs' use of OnlyFans squarely at issue in their claims. (Compl. ¶149.)

19  **II.    Plaintiffs Repeatedly and Affirmatively Assented to the Terms**

20     Since July 2018, every user of OnlyFans has had to affirmatively agree to the Terms

21  when creating a user account on the Website. (Taylor Decl. ¶¶22-27.)[2] While Plaintiffs

22  have impermissibly chosen to conceal their identities, as pled, they created accounts

23  between "approximately 2018" and "approximately 2021."[3] (Compl. ¶¶241, 254, 270, 282,

24
_____

25  [2] "Courts may consider facts outside of the pleadings in deciding whether to enforce a forum[-]selection clause" in a motion to dismiss on forum non conveniens grounds. *Sandler v. iStockphoto LP*, 2016 WL 871626, at *2 (C.D. Cal. Feb. 5, 2016).

26
27  [3] As noted in Fenix's concurrently-filed Motion To Compel Plaintiffs To Proceed In Their Real Names ("Motion to Compel"), Plaintiffs should be required to reveal their identities, particularly because their meritless contention that they should remain anonymous is

28  preventing Fenix from making dispositive arguments as to each specific Plaintiff. *See*

*(cont'd)*

3

299.) Per their allegations, all Plaintiffs continued to use their accounts through at least 2023, and two allege they are still current users. (*Id.*)

Every Plaintiff who signed up on the Website since July 2018 entered their email address and password and then clicked a button labeled "Sign Up." (Taylor Decl. ¶¶23-26 & Ex. C.) Next to the button the following (or substantively similar) language appeared: "By signing up you agree to our Terms of Service and Privacy Policy, and confirm that you are at least 18 years old." The phrases "Terms of Service" and "Privacy Policy" were in blue and hyperlinked to the full text of the Terms and Privacy Policy then in effect, as shown below.



In order to proceed to the next page and complete their account registration on OnlyFans,

---

Motion to Compel §II. If Plaintiffs had appeared under their real names, Fenix could introduce evidence regarding each Plaintiff's registration of their account, use of the Website, and agreement to the Terms. (Taylor Decl. ¶18.) Fenix would also be able to expose the Plaintiffs who are not actually OnlyFans users and have no grounds to bring this action, if any. (*Id.*)

4

1    every user was required to and did click on the "Sign Up" button. (*Id.*) (Plaintiffs can hardly

2    dispute this: the Complaint includes a screenshot of the sign-in page from 2019 with the

3    express agreement language next to a "Sign Up" button (*see* Compl. ¶95, Fig. 5).)

4        From April 2021 through the filing of the Complaint, the Terms to which each

5    Plaintiff agreed stated in a conspicuously marked, stand-alone paragraph that "English law

6    will apply to… any claim that you have arising out of or in connection with your agreement

7    with us or your use of OnlyFans" including "non-contractual disputes or claims" and that

8    "any claim which you have or which we have **arising out of or in connection with your**

9    **agreement with us or your use of OnlyFans** (including, in both cases, non-contractual

10   disputes or claims) **must be brought in the courts of England and Wales**." (Taylor Decl.

11   Ex. A at 13.) Plaintiffs who joined OnlyFans before 2021 agreed to a substantively similar

12   and conspicuously placed forum-selection clause. (*Id.* ¶¶19-21 and Ex. B at 10.)

13       Furthermore, *every* Plaintiff re-affirmed their agreement to the Forum-Selection

14   Clause when the Terms were updated in December 2021. (*Id.* ¶¶28-34.) They were

15   provided notice via direct message in their OnlyFans account, as well as on a pop-up screen

16   that appeared the first time they logged into their account on or after December 15, 2021.

17

18

19

20

21

22

23   

24

25

26

27

28   (*Id.* ¶29, 31.)

1   After being presented with the above alert, an OnlyFans user—including Plaintiffs—

2   would have been **unable to continue** using the Website unless they clicked "ACCEPT."

3   (*Id*. ¶33.) Had a user clicked on the blue hyperlinked words "Terms of Service," they would

4   have been taken to a full copy of the Terms. (*Id*.)

5   According to their own allegations, each Plaintiff continued to use OnlyFans after

6   accepting the December 15, 2021 amendments to the Terms, including the Forum-

7   Selection Clause. (Compl. ¶¶241, 254, 270, 282, 299.) Thus, Plaintiffs repeatedly agreed

8   to the Forum-Selection Clause.[4]

9   Nevertheless, Plaintiffs brought this Action in the Central District of California.

10  <u>**ARGUMENT**</u>

11  "[T]he appropriate way to enforce a forum-selection clause pointing to a… foreign

12  forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S.*

13  *Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). In the absence of a forum-selection

14  clause, a court must evaluate private-interest and public-interest considerations to

15  determine whether dismissal for forum non conveniens is appropriate. *See id*. at 62-63 &

16  n.6. "The calculus changes, however, when the parties' contract contains a valid forum-

17  selection clause, which represents the parties' agreement as to the most proper forum." *Id.*

18  at 63. Then, "a court must deem all factors relating to the private interests of the parties…

19  entirely in favor of the preselected forum." *Sun v. Advanced China Healthcare, Inc.*, 901

20  F.3d 1081, 1087-88 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 64).

21  As this Court has recognized, where there is a valid forum-selection clause

22  designating a foreign forum, "[t]he plaintiff bears the burden of showing why the court

23  should not dismiss the case, and the plaintiff's subsequent choice of forum merits no

24  weight." *Ingram*, 2023 WL 7276562, at *6.

25

26

27  [4] Prior to December 15, 2021, the Terms were updated in April 2021, and were most recently updated effective September 1, 2024 after the filing of the Complaint; in both instances all users were likewise required to affirmatively agree to the updated Terms, including a substantively similar Forum-Selection Clause. (Taylor Decl. ¶¶19, 35-36.)

28

6

## I.    <u>THIS COURT CAN AND SHOULD DECIDE THIS MOTION FIRST</u>

This Court should decide this Motion before the concurrently-filed Motion to Compel or any motion to dismiss on Rule 12(b) grounds because "a district court has discretion to respond at once to a defendant's forum non conveniens plea, and need not take up first any other threshold objection." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). "In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Id.* In so holding, "the Supreme Court offered the lower courts a practical mechanism for resolving a case that would ultimately be dismissed." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1088 (9th Cir. 2009).

As this Court has recognized, courts "may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Ingram*, 2023 WL 7276562, at *3 & n.2 (Slaughter, J.) (quoting *Sinochem* and holding "[b]ecause the court may consider forum non conveniens without regard to whether it has personal jurisdiction over [d]efendants, the court does not reach the parties' arguments regarding personal jurisdiction"); *see also Rosenberg v. Viking River Cruises, Inc.*, 2020 WL 1442886, at *5 (C.D. Cal. Mar. 23, 2020) ("Because the forum-selection clause must be enforced, the Court need not consider whether the Complaint fails under Rule 12(b)(6).").

Here, because an English court "is plainly the more suitable arbiter of the merits of the case," this Court may, and should, decide this Motion first—i.e., before Fenix's Motion to Compel or concurrently-filed Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim—in the interest of judicial economy. *Sinochem*, 549 U.S. at 425.

## II.    <u>THE FORUM-SELECTION CLAUSE APPLIES TO PLAINTIFFS' CLAIMS</u>

Courts in this District routinely recognize that "[f]orum-selection clauses are not limited to contractual causes of action, and may apply to statutory and tort claims as well."

7

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 2019 WL 11274587, at \*4 (C.D. Cal. Oct. 24, 2019); *see also Kiwijet, LLC v. Guangzhou Hayonex Int'l Logistics Co. Ltd*, 2024 WL 3468926, at \*5 (C.D. Cal. June 10, 2024) (Slaughter, J.) (noting forum-selection clauses "can be equally applicable to contractual and tort causes of action," dismissing action for forum non conveniens where claims for, *inter alia*, breach of contract and UCL violation "all rely on interpretation or performance of" agreement). "Whether a forum[-]selection clause applies to non-contractual claims depends on the breadth of the language used in the forum[-]selection clause." *GIP Dev. SARL v. Shaghal Ltd.*, 2022 WL 18932821, at \*5 (C.D. Cal. Dec. 9, 2022).

"[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement," and "[t]he dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Sun*, 901 F.3d at 1086 (holding forum-selection clause covered suit alleging defendants "engaged in various fraudulent practices to induce them to invest" because plaintiffs "invested pursuant to those agreements" containing forum-selection clause).

Courts routinely hold that a forum-selection clause "that provides that all disputes... 'in connection with' an agreement shall be adjudicated in a specified forum"—like the Forum-Selection Clause here—"should be interpreted broadly." *GIP*, 2022 WL 18932821, at \*5 (dismissing complaint on forum non conveniens grounds where forum-selection clause specified "claims 'in connection with' the Agreement" must be arbitrated in Singapore, encompassing federal trademark infringement and UCL claims). "[W]hen a forum[-]selection clause is drafted broadly, it reaches every dispute between the parties having a significant relationship to the contract… and the allegations *need only touch on matters covered by the contract*." *Id*.

The *Rosenberg* court dismissed an action for forum non conveniens because plaintiff's fraud and UCL claims alleging Viking Cruises made false statements regarding staff gratuities were encompassed by a forum-selection clause that required "any dispute

1    arising out of or in connection with" the ticket contract conditions had to be brought in

2    Switzerland. 2020 WL 1442886, at *4-5; *see also Ingram*, 2023 WL 7276562, at *4

3    (holding forum-selection clause governed fraud claim which "depends upon the terms of

4    the 2019 Agreement… to determine whether [d]efendants misrepresented those terms").[5]

5        Courts have also recognized that a forum-selection clause like Fenix's here applies

6    to VPPA and CIPA claims. *See Losson v. Union des Associations Europeennes de

7    Football*, 2024 WL 3406987, at *1–2 (N.D. Cal. July 11, 2024) (dismissing action for

8    forum non conveniens where plaintiff "agreed to UEFA.com's Terms & Conditions when

9    he signed up," which "included a forum[-]selection clause requiring all disputes in

10   connection with the Terms & Conditions be litigated in Switzerland," and VPPA claim had

11   "some logical or causal connection to the Terms & Conditions because they govern his

12   access to and use of the websites which led to the alleged violations"); *Cole v. Quest

13   Diagnostics, Inc.*, 2023 WL 6201702, at *3-4 (E.D. Cal. Sept. 22, 2023) (holding where

14   plaintiffs "were required to, and did, accept the Terms and Conditions to create their

15   MyQuest accounts," CIPA claim asserting defendant "intercept[ed] and transmitt[ed]

16   information without their consent" was covered by forum-selection clause "[b]ecause the

17   Terms and Conditions disclose the data collection practices challenged and referenced by

18   Plaintiffs").

19       Here, as noted above, the Forum-Selection Clause that Plaintiffs repeatedly agreed

20   to mandates that "any claim which you have… arising out of or in connection with your

21   agreement with us or your use of OnlyFans (including… non-contractual disputes or

22   claims) must be brought in the courts of England and Wales." *Supra* at 5.

---

23   [5] *See also Knight v. Wata, Inc.*, 2022 WL 3574441, at *1, 3 (C.D. Cal. July 27, 2022)

24   (rejecting contention that forum-selection clause in agreement "provided as a hyperlink...
     at checkout" did not cover claims for false advertising and racketeering because claims

25   were "directly related to purchases governed by the Agreement"); *Medina v. Oanda Corp.*,
     2017 WL 1159572, at *10 (N.D. Cal. Mar. 29, 2017) (where plaintiff argued forum-

26   selection clause he agreed to in opening online account was not applicable to state law
     claims for fraud, false advertising, and breach of contract because he did "not allege breach

27   of contract with respect to the Agreement itself," court held all claims subject to forum-
     selection clause covering actions "in connection with the transactions contemplated by this

28   Agreement").

1    As shown, Plaintiffs are asserting VPPA and CIPA claims based on alleged illicit
2    sharing of personal information in their communications on the Website, explicitly placing
3    disclosures in the Terms and Privacy Policy at issue. *Supra* at 2-3. They premise their
4    Misrepresentation Claims on Fenix's Website statements that Plaintiffs could "direct
5    message" Creators to induce Plaintiffs to use the Website, again citing the Terms to allege
6    that Fenix knew those representations were false. *Id.*

7    Because Plaintiffs' allegations "touch on matters covered by the" Terms, *GIP*, 2022
8    WL 18932821, at *5, and are indisputably "in connection with" the Terms and Plaintiffs'
9    "use of OnlyFans," (Taylor Decl. Ex. A at 13), the Forum-Selection Clause applies to all
10   Plaintiffs' claims.

11   ## III.  THE COURTS OF ENGLAND AND WALES ARE AN ADEQUATE
12   ## ALTERNATIVE FORUM

13   "At the outset of any forum non conveniens inquiry, the court must determine
14   whether there exists an alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254
15   n.22 (1981). "The Supreme Court has explained that ordinarily, this requirement will be
16   satisfied when the defendant is amenable to process in the other jurisdiction." *Rosenberg*,
17   2020 WL 1442886, at *3 (citing *Piper*); *see also Globatrac LLC v. JB Squared Ltd.*, 2016
18   WL 9045479, at *3 (C.D. Cal. Feb. 5, 2016) (holding England was adequate forum where
19   "England would have jurisdiction over Defendant because it is headquartered in England"
20   and plaintiff "consented to the courts of England and Wales" in forum-selection clause).

21   The Ninth Circuit recognizes that "a [forum-selection] clause remains enforceable
22   even when the contractually selected forum *may afford the plaintiffs less effective remedies*
23   *than they could receive in the forum where they filed suit*," because "the fact that *certain*
24   *types of remedies* are unavailable in the foreign forum does not change the calculus if there
25   exists a basically fair court system in that forum that would allow the plaintiff to seek some
26   relief." *Sun*, 901 F.3d at 1092 (second emphasis in original).

27   Rather, Plaintiffs must show this is one of the "rare circumstances" where "the
28   remedy provided by the alternative forum is *so clearly inadequate or unsatisfactory that it*

*is no remedy at all*." *Piper*, 454 U.S. at 254-55 & n.22 (holding Scottish courts were adequate forum because "[a]lthough [plaintiffs] may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly").

Here, Plaintiffs admit that FIL, which owns and operates the Website, is "a private limited company registered in the United Kingdom… with its principal place of business in London." (Compl. ¶37; *see also* Taylor Decl. ¶6.) Defendant Fenix Internet LLC is a Delaware limited liability company that does *not* own or operate the Website; it provides payment-processing assistance to FIL in the U.S. (Taylor Decl. ¶¶7-8, 10; Compl. ¶40.) Both FIL and Fenix Internet LLC have agreed to personal jurisdiction and service in England and Wales. (Taylor Decl. ¶¶38-39.)

Plaintiffs plainly cannot show that they will have "no remedy at all" in an English court because courts routinely find English courts to be adequate. *See Dibdin v. S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324, at *3 (C.D. Cal. Jan. 29, 2013) ("This court is not aware of any Ninth Circuit case that has found England inadequate, but there are a number finding England adequate") (collecting cases); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("[T]he courts of England meet the standards of neutrality and long experience in admiralty litigation"); *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F.Supp.3d 931, 948 (S.D. Cal. 2019) ("[T]he Court has no reason to stray from the conclusions of other courts regarding the adequacy of England and Wales.") (collecting cases); *Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581, at *5 (N.D. Ga. June 28, 2021) (enforcing Forum-Selection Clause and dismissing claims against FIL for forum non conveniens because English courts are adequate "fair and neutral forums" capable of adjudicating plaintiff's claims).

Plaintiffs' RICO claim is insufficient to deny Fenix's motion, given Plaintiffs' "possible recovery on the other tort and contract claims." *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 769 (9th Cir. 1991) (holding "the inability to assert a RICO claim in a foreign forum does not preclude a forum non conveniens dismissal"). Indeed,

the Ninth Circuit held that where a valid forum-selection clause bound the parties "to proceed in England under English law," the plaintiffs "ha[d] recourse" under English law "for fraud, breach of fiduciary duty, or negligent misrepresentation" and thus "the loss of RICO claims does not suffice to bar dismissal for forum non conveniens." *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292, 1296 (9th Cir. 1998) (en banc). Moreover, while there is no direct RICO equivalent, "where… fraudulent misrepresentations involve a number of parties acting in concert, the tort of conspiracy to injure by unlawful means can be used to claim damages" under English law. (White Decl. ¶51.)

English courts also offer Plaintiffs a remedy for their CIPA and VPPA claims because England has data protection laws protecting personal information provided to websites, as well as tort relief for "misuse of private information," both of which offer monetary and declaratory and injunctive relief as remedies. (*See* White Decl. ¶¶52-56); *see also Losson*, 2024 WL 3406987, at *3 (observing plaintiff was not denied a remedy for a VPPA claim because "Switzerland has a data protection law which penalizes individuals responsible for failing to ensure an adequate level of data protection or for adhering to other information obligations set out under the rules"). English law also prohibits practices that are unfair and/or misleading to consumers, equivalent to the FAL, UCL, and fraud claims asserted by Plaintiffs here (White Decl. ¶¶58-61), and "England can provide the straightforward relief Plaintiff[s] seek[] regarding [their] contractual rights." *Globatrac LLC*, 2016 WL 9045479, at *4; (*see also* White Decl. ¶57.) Finally, English courts offer "various procedures analogous to a class action which the Plaintiffs could seek to deploy," as well as injunctive and declaratory relief. (White Decl. ¶¶68-78.)

In any event, the agreed-upon Terms specify that English law applies to Plaintiffs' claims, so "even if this case remained in the district court in California, the court would likely still apply [English] law," and it is "especially inappropriate… to find a foreign forum inadequate when a California court might very well reach the same conclusion based on the choice-of-law provision." *Lewis*, 953 F.3d at 1168-69.

"Simply put, there is no basis for a judgment that only California laws and California

12

1  courts should determine this controversy in the face of a solemn agreement between the

2  parties that such controversies be resolved elsewhere." *Pioneer Cirs., Inc. v. Miva Techs.*

3  *GmbH*, 2020 WL 6694318, at *2 (C.D. Cal. Sept. 3, 2020). "[I]t is improper to hold that

4  American standards of fairness must rule, for such a determination demeans the standards

5  of justice elsewhere in the world, and unnecessarily exalts the primacy of United States

6  law over the laws of other countries." *Id.*

7  **IV.    THE FORUM-SELECTION CLAUSE IS VALID AND ENFORCEABLE**

8        As this Court has recognized, "[u]nder federal law, forum[-]selection clauses are

9  presumptively valid and should be honored absent some compelling and countervailing

10 reasons." *Kiwijet*, 2024 WL 3468926, at *5. Courts "evaluate a forum-selection clause

11 pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause

12 pointing to a federal forum." *Ingram*, 2023 WL 7276562, at *6 (quoting *Atl. Marine*, 571

13 U.S. at 61). Federal courts may refuse to enforce a forum-selection clause only when "(1)

14 the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a

15 strong public policy of the forum in which suit is brought, whether declared by statute or

16 by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and

17 inconvenient that the litigant will for all practical purposes be deprived of their day in

18 court." *Ingram*, 2023 WL 7276562 at *3 (quoting *Sun*, 901 F.3d at 1088).

19        **A.    The Forum-Selection Clause Is Not the Product of Fraud**

20       "For a party to escape a forum[-]selection clause on the grounds of fraud, it must

21 show that the *inclusion of that clause in the contract* was the product of fraud or coercion."

22 *Richards*, 135 F.3d at 1297 (emphasis in original); *see also Ingram*, 2023 WL 7276562, at

23 *6 (dismissing action for forum non conveniens where "[p]laintiff does not argue the

24 forum[-]selection clause *itself* was a product of fraudulent inducement") (emphasis in

25 original).

26       Even where, as here, a plaintiff claims "[d]efendants are guilty of fraud in their

27 transactions... an allegation of fraud going only to the contract as a whole is not sufficient

28 to avoid a forum-selection clause." *Plumleigh v. Metro. Fine Arts & Antiques Inc.*, 2015

WL 13918387, at *5 (C.D. Cal. Jan. 21, 2015); *see also Mazzola v. Roomster Corp.*, 2010 WL 4916610, at *2 (C.D. Cal. Nov. 30, 2010) ("Plaintiff's arguments regarding [d]efendants' purportedly fraudulent billing scheme have no bearing on how the forum[-]selection clause itself was included in the Agreement.").

Plaintiffs may nevertheless try to attack the Terms in their entirety as invalid or non-binding. But courts in this Circuit routinely find customers bound by forum-selection provisions in terms and conditions they affirmatively agreed to in website interactions. Under established Ninth Circuit law, "an enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (holding website terms were binding on ticket purchasers where "by creating an account… and proceeding to the next page, the user 'agree[d] to [defendants'] Terms of Use'" because "webpage users are presented with a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use,'" with a hyperlink to the terms, and thus the "websites provided reasonably conspicuous notice of the Terms to which Ticket Purchasers unambiguously manifested assent").

Courts in this Circuit characterize internet contracts as "browsewraps, clickwraps, [or] sign-in wraps," and routinely find sign-in wrap agreements—which "do[] not require users to review the Terms of Service and confirm their assent prior to accessing the" service, but "[i]nstead, users are required to advance through a sign-in screen which states 'By tapping [the button], I agree to the Terms of Service'"—to be enforceable. *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). Specifically, courts in the Ninth Circuit routinely find that where a sign-up page "presents one hyperlink that is displayed directly below the box where a user seeking to become a [] subscriber must enter contact information," a "reasonable user" would understand "they are agreeing to the company's terms that are presented in immediate proximity to the 'Continue' button." *Lee*

14

1    *v. DoNotPay, Inc.*, 683 F.Supp.3d 1062, 1071, 1072 (C.D. Cal. 2023) (collecting cases

2    where "sign-in screens... were found to provide sufficiently conspicuous notice of assent

3    to terms" using "a terms and conditions hyperlink with contrasting color font and

4    underlining of text placed in proximity to the button manifesting assent to terms and

5    conditions").

6        Courts employ this reasoning to enforce forum-selection clauses in internet

7    contracts. As the *Sandler* court observed, such "agreements serve a critical function for

8    online businesses to ensure that terms of use are established before entering into a business

9    relationship with consumers." 2016 WL 871626, at *2. Because "[t]he terms… including

10   the forum[-]selection clause, were accessible for Plaintiffs to read prior to assenting to the

11   terms," the court held "Plaintiffs' failure to do so does not establish that the clause was the

12   result of fraud or undue influence." *Id.*[6]

13       Here, as shown, Plaintiffs who signed up on OnlyFans after July 2018 clicked a

14   "Sign Up" button next to: "By signing up you agree to our Terms of Service and Privacy

15   Policy." *Supra* at 4. If Plaintiffs clicked on the hyperlink, which was set apart in blue font,

16   they would be brought to a page that contained the full text of the Terms then in effect. *Id*.

17   Moreover, all Plaintiffs actively re-affirmed their agreement to the Terms when they

18   clicked "I accept" to continue using the Website after the December 2021 update. *Supra* at

19   5. Because the Website provided "reasonably conspicuous notice" and a hyperlink to the

20   Terms, informing Plaintiffs that they agreed to the Terms if they proceeded in creating their

21   accounts and continuing to use the Website, they "unambiguously manifested assent to"

22   the Terms and are thus bound by the Forum-Selection Clause. *Oberstein*, 60 F.4th at 517.

23

24   ───────────────

     [6] *See also Falls v. Soulbound Studios, LLC*, 2021 WL 4295137, at *2, *4 (C.D. Cal. July

25   6, 2021) (granting motion to transfer pursuant to forum-selection clause where "all users
     of Xsolla's website—including Plaintiff—are presented with the [terms] via hyperlink at

26   the time of the checkout" and "[t]he website language provided that the customer
     acknowledges and agrees to be bound by the [terms] by submitting payment"); *Medina*,

27   2017 WL 1159572, at *9 (holding evidence showed "Plaintiff would have been required
     [to] 'click to agree' to the terms and conditions of the 2005 Agreement in order to have

28   opened his trading account with OANDA" and thus "Plaintiff is subject to the
     forum[-]selection clause").

1  Plaintiffs cannot show the Forum-Selection Clause is the product of fraud or
2  overreaching, and thus it is enforceable.

3  **B.** **Enforcing the Forum-Selection Clause Would Not Deprive Plaintiffs of**
4      **Their Day in Court**

5  "When parties agree to a forum-selection clause, they waive the right to challenge
6  the preselected forum as inconvenient or less convenient for themselves or their witnesses,
7  or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. Thus "[a] party seeking
8  to escape a forum[-]selection clause must show that trial in the contractual forum will be
9  so gravely difficult and inconvenient that he will for all practical purposes be deprived of
10 his day in court." *Stoneville USA, Inc. v. COMPACstone USA, Inc.*, 2020 WL 13413472,
11 at *5 (C.D. Cal. Mar. 6, 2020). "However, this is an extremely heavy burden to meet, and
12 is not satisfied simply by a showing of additional expense." *Id.*

13 Indeed, the Ninth Circuit has rejected arguments that "Australia is a remote and
14 inconvenient forum—stressing the high costs and great inconvenience to [plaintiffs] of
15 litigating this matter in Australia" pursuant to a forum-selection clause, because "[w]hile
16 we do not doubt that bringing this claim in Australia will impose burdens on [plaintiffs],
17 we are unable to conclude that the district court abused its discretion in failing to refuse
18 dismissal for this reason." *Lewis*, 953 F.3d at 1169. And, as shown, Plaintiffs can hardly
19 contend that English courts provide such insufficient remedies that they will be denied their
20 day in court. *Supra* §III. Thus, Plaintiffs cannot satisfy this factor either.

21 **C.** **Enforcing the Forum-Selection Clause Would Not Contravene**
22     **California Public Policy**

23 Courts in the Ninth Circuit routinely reject efforts to overcome forum-selection
24 clauses asserting that California public policy requires that California claims be litigated
25 in California. "California has a strong policy in favor of enforcing forum[-]selection
26 clauses." *Stoneville*, 2020 WL 13413472, at *5. "[T]he strong federal policy in favor of
27 enforcing forum-selection clauses" likewise mandates that "a plaintiff must show more
28 than the forum state's mere interest in adjudicating certain claims." *Everest Nat'l Ins. Co.*

1  *v. ShiftPixy, Inc.*, 2021 WL 4497935, at *2 (C.D. Cal. Apr. 7, 2021). Instead, "there must

2  be a judicial decision or statute that makes clear that the forum state has a strong public

3  policy preference concerning the *venue* for enforcing the plaintiff's specific legal claims."

4  *Frisby v. Thor Motor Coach, Inc.*, 2023 WL 1420434, at *3 (C.D. Cal. Jan. 24, 2023)

5  (emphasis in original).

6        The *Sandler* court rejected plaintiffs' argument that a forum-selection clause

7  requiring disputes be submitted to courts in Alberta, Canada was contrary to California

8  public policy because the dispute arose from online transactions "by users in California, on

9  a non-Canadian web address, for images downloaded outside of Canada, for use outside of

10  Canada, under a Membership Agreement entered into outside of Canada." 2016 WL

11  871626, at *3. The court noted that plaintiffs "chose to use the online service of a company

12  that does business world-wide and is headquartered in Alberta, Canada" and while

13  "California courts may be more familiar with California unfair competition law, there is no

14  evidence that bringing this case in Canada would contravene any strong California public

15  policy." *Id.* The same is true here: Plaintiffs "chose to use the online service of a company

16  that does business world-wide and is headquartered in [London, England]." *Id.*

17        Plaintiffs may invoke the decision in *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734, at

18  *3–4 (C.D. Cal. May 2, 2024), in which the court determined that enforcing the Forum-

19  Selection Clause in the Terms would violate California public policy because it is

20  supposedly economically impractical to litigate small-dollar claims in mass actions before

21  English courts. For at least three reasons, any such reliance is misplaced, and this Court

22  should not follow *Muto*'s incorrect and inapposite analysis.

23        ***First***, *Muto* was wrong to claim that small-dollar plaintiffs are effectively denied

24  relief in England. English courts *do* have procedures to handle small-dollar claims on an

25  efficient basis, as evident in the very decision cited by the *Muto* court. (*See* White Decl.

26  ¶¶68-74.) Indeed, Fenix's expert also attests to numerous collective action procedures

27  available in English courts that the *Muto* court did not consider, much less address. (*Id.*)

28

**Second**, California does not have a public policy against enforcing forum-selection clauses that may be economically inconvenient for small-dollar plaintiffs. As the California Court of Appeal held in *America Online, Inc. v. Superior Court*—the case *Muto* cited for its California public policy analysis—"the additional cost or inconvenience necessitated by litigation in the selected forum is *not* part of the calculus when considering whether a forum[-]selection clause should be enforced," even when the "expense in litigating in the selected forum… exceeds the amount in controversy or at least renders the choice to litigate impractical." 90 Cal.App.4th 1, 18–19 (2001).

**Third**, *Muto* is distinguishable because Plaintiffs here are claiming individual damages up to **$25,000 dollars** per individual for a putative class of "hundreds of thousands—if not millions—of Class Members" (Compl. ¶¶251, 267, 279, 296, 312, 321, Prayer)—meaning that this is not a case about small-dollar claims.

Simply stated, Plaintiffs cannot demonstrate a California public policy that would be contravened by enforcing the Forum-Selection Clause here.

## V.    THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL

As this Court has recognized, "[i]n deciding whether to dismiss under the doctrine of forum non conveniens, district courts consider the public factors, such as 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Ingram*, 2023 WL 7276562, at *6 (quoting *Sun*, 901 F.3d at 1088). Where there is a valid forum-selection clause, "a district court may consider arguments about public-interest factors *only*," *Atl. Marine*, 571 U.S. at 64, and the plaintiff must "show that the public-interest factors *overwhelmingly disfavor dismissal*." *Kiwijet*, 2024 WL 3468926, at *4. Plaintiffs cannot do so here.

**First**, the Central District is one of the busiest courts in the nation: there were 18,149 new case filings and 13,649 total cases pending during the 12-month period ending June

30, 2024, and the median time from filing to trial for civil cases was 30.4 months.[7] English courts are less congested: "cases in English courts proceed expeditiously toward a conclusion, usually reaching trial within 1-2 years of commencement." (White Decl. ¶65); *see also Globatrac LLC*, 2016 WL 9045479, at *6 (noting "the average time to trial in English courts is 12 months, as compared to the 19.3 months in this District").

*Second*, even where "the relevant events took place in California and much of the evidence may reside in California, local interests generally do not outweigh the controlling weight of the forum-selection clause." *Frisby*, 2023 WL 1420434, at *5. Here, the employees, officers, and records of Fenix are located in the United Kingdom, not California. (Taylor Decl. ¶¶9-10.) Plaintiffs admit that the Fenix entities are not located in California. (Compl. ¶¶37, 40.) Plaintiffs also admit that only two of the five Plaintiffs live in California—the rest live in Tennessee, Georgia, and Wisconsin. (*Id.* ¶¶27-36, 317.)

Indeed, "[t]he national character of the class [Plaintiffs] seek[] to represent… avoids any potential conflict with California's public policy" to "protect California consumers." *Schumacher v. Amazon.com LLC*, 2012 WL 13036856, at *5 (C.D. Cal. May 29, 2012).[8] "By virtue of a nationwide class action, [Plaintiffs] seek[] to impose California law on non-California residents, for transactions that occurred outside of California," but "California has no interest in applying its laws to residents of other states who [used OnlyFans] in those other states." *Schumacher*, 2012 WL 13036856, at *5. In sum, the local interest factor does not bar dismissal here.

*Third*, the choice-of-law provision in the Terms providing that "English law will apply to… any claim that you have arising out of or in connection with your agreement

---

[7] *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30, 2024)*, United States Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2024.pdf (last accessed October 1, 2024).

[8] (*See* Compl. ¶ 316 (defining proposed "Nationwide Class" as "All persons residing in the United States who had a Fan account on OnlyFans and paid Premium Content Fees to any Creator who was represented by an Agency Defendant and that Agency Defendant used [third parties] to communicate directly with these Fans on the OnlyFans platform during the Relevant Time Period.").)

19

with us or your use of OnlyFans" weighs in favor of dismissal here. (Taylor Decl. Ex. A at 13.) Courts consider such choice-of-law provisions "[t]he most significant public interest factor" because "[t]he courts of England are better suited to apply English law." *210 Brands Inc. v. Canterbury of New Zealand Ltd.*, 2020 WL 7773892, at *6 (C.D. Cal. Dec. 29, 2020) (dismissing action asserting California statutory claims, including UCL and misrepresentation claims, for forum non conveniens where agreement required parties to "submit to the exclusive jurisdiction of the courts of England"); *see also TMF Tr. Ltd. v. M/T Megacore Philomena*, 2020 WL 3064447, at *4 (C.D. Cal. Mar. 24, 2020) (granting motion to dismiss for forum non conveniens, noting "English law will govern the Loan Agreement and therefore the English court is the forum that is at home with the law"); *Globatrac LLC*, 2016 WL 9045479, at *6 (C.D. Cal. Feb. 5, 2016) (same, holding "this factor weighs strongly in favor of dismissal because the mandatory choice-of-law provision requires the application of English law" and "[t]here is no doubt that the English courts are more adept at interpreting and applying English law").[9] Because English law governs Plaintiffs' claims here, dismissal is warranted.

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Complaint for forum non conveniens.

DATED: October 25, 2024        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____
                          */s/ Jason D. Russell*
                          JASON D. RUSSELL
            *Attorneys for Specially Appearing Defendants*
            Fenix International Limited and Fenix Internet LLC

---

[9] *See also White Knight*, 407 F.Supp at 948-49 (holding where forum-selection clause included choice-of-law provision providing "the law of England and Wales governs," that "English courts are more adept at interpreting and applying English law" and thus "the need to apply English law favors dismissal"); *accord Ingram*, 2023 WL 7276562, at *7 (noting "Florida courts would provide an adequate alternative forum, in particular because Florida law applies to this suit pursuant to the choice[-]of[-]law provision").

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,863 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: October 25, 2024      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Jason D. Russell* _____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

21