JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>                  Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**Motion 3 of 3**<br><br>**(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**FILED UNDER SEPARATE COVER:**<br><br>**(3) SUPPLEMENTAL DECLARATION OF LEE TAYLOR IN SUPPORT; and**<br><br>**(4) REQUEST FOR JUDICIAL NOTICE AND NOTICE OF DOCUMENTS INCORPORATED BY REFERENCE;**<br><br>**(5) [PROPOSED] ORDER.**<br><br>Judge:     Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:      January 30, 2025<br>Time:      10 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 30, 2025, at 10 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Specially Appearing Defendants Fenix International Limited ("FIL") and Fenix Internet LLC (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion to dismiss the Complaint filed by Plaintiffs N.Z., R.M. B.L., S.M., and A.L. (collectively, "Plaintiffs") for lack of personal jurisdiction and failure to state a claim ("Motion").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), and is based on this Notice, the Memorandum of Points and Authorities that follows, the Declaration of Lee Taylor in Support of Motion to Dismiss for Forum Non Conveniens ("Taylor Decl.") and Supplemental Declaration of Lee Taylor in Support of Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State a Claim ("Supp. Taylor Decl.") and their attached exhibits, the accompanying Request for Judicial Notice and Notice of Documents Incorporated by Reference, the files and records in this action, the arguments of counsel, and any other matters the Court may properly consider. The grounds for this motion are as follows:

**Personal Jurisdiction**

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(b) because Plaintiffs do not allege a multidistrict RICO conspiracy involving all Defendants;

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(d) because that provision is not a means for a court to acquire jurisdiction;

- The Court does not have general jurisdiction over Fenix because they are not incorporated or headquartered in California, and do not otherwise have such

i

continuous and systematic contacts that they are essentially at home in California;

- The Court does not have specific jurisdiction over Fenix because they do not have sufficient minimum contacts with California, the Plaintiffs' claims do not arise out of or relate to Fenix's connections with California, and requiring Fenix to defend this lawsuit in California would be unreasonable.

**Failure to State a Claim**

- <u>Choice-of-Law</u>: Plaintiffs agreed to a choice-of-law clause providing that all their claims related in any way to their agreement with Fenix and/or their use of the OnlyFans.com website ("OnlyFans") are governed by English law, which precludes the U.S. law-based claims they assert in their Complaint;

- <u>Racketeer Influenced Corrupt Organizations Act</u>: Plaintiffs fail to state a RICO or RICO conspiracy claim because they fail to allege the existence of a racketeering enterprise, do not plead cognizable damages, do not plead that the Defendants formed a conspiracy to violate RICO or commit wire fraud, and do not plead that Fenix had specific intent to defraud Plaintiffs;

- <u>Video Privacy Protection Act ("VPPA")</u>: Plaintiffs fail to state a VPPA claim because they fail to allege that Fenix knowingly disclosed their personal identifiable information to third parties;

- <u>California Invasion of Privacy Act ("CIPA")</u>: Plaintiffs fail to state a CIPA claim because they consented to Fenix's alleged conduct, and otherwise fail to plead that their communications were unlawfully intercepted;

- <u>Breach of Contract, Fraud, Deceit, Unfair Competition Law, and False Advertising Law</u>: Plaintiffs' remaining California state law claims are each barred by OnlyFans' Terms of Service, which fatally undermine Plaintiffs' theories that Fenix misled them into purchasing chat services offered by OnlyFans Creators, or had a duty to prevent other people from misleading

ii

1    Plaintiffs about those services.

2    This Motion is made following the conference of counsel pursuant to L.R. 7-3, which

3    took place on October 18, 2024.

4

5    DATED: October 25, 2024    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7    By:_____/s/ Jason D. Russell_____
        JASON D. RUSSELL

8    *Attorneys for Specially Appearing Defendants*
     Fenix International Limited and Fenix Internet LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT .................................................................................................. 2

I.    THE COURT LACKS PERSONAL JURISDICTION OVER FENIX ... 2

     A.    The Court Does Not Have Jurisdiction Under RICO ................... 2

         1.    Section 1965(b) Does Not Give the Court Personal Jurisdiction ........................................................................ 2

         2.    Section 1965(d) Does Not Give the Court Personal Jurisdiction ........................................................................ 4

     B.    Fenix Lack Sufficient Contacts with California to Assert Personal Jurisdiction ................................................................. 5

         1.    The Court Does Not Have General Jurisdiction .................. 5

         2.    The Court Does Not Have Specific Jurisdiction ................. 5

             (a)    Plaintiffs Cannot Show Purposeful Direction or Availment ................................................................. 6

                 (i)    Plaintiffs Cannot Demonstrate Purposeful Direction ...................................................... 6

                 (ii)    Plaintiffs Cannot Demonstrate Purposeful Availment ..................................................... 7

             (b)    Plaintiffs' Claims Do Not Arise Out of Fenix's Allegedly Forum-Related Contacts ........................... 8

             (c)    Exercising Personal Jurisdiction Would Be Unreasonable ............................................................ 8

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX ............ 9

     A.    The Parties' Choice-of-Law Provision Precludes Plaintiffs' Claims ....................................................................................... 9

     B.    Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims ........ 11

     C.    Plaintiffs Fail to Plead a VPPA Claim ........................................ 12

     D.    Plaintiffs Fail to Plead a CIPA Claim ......................................... 14

     E.    Plaintiffs Fail to Plead a Breach of Contract Claim ................... 17

     F.    Plaintiffs Fail to Plead Fraud or Deceit Claims .......................... 18

     G.    Plaintiffs Fail to Plead UCL or FAL Claims .............................. 20

iv

CONCLUSION ..................................................................................................21

CERTIFICATE OF COMPLIANCE .................................................................22

1
2
## <u>TABLE OF AUTHORITIES</u>
3
<u>Page(s):</u>
4
## CASES
5

6
*Adler v. Community.com, Inc.*,
    No.: 2:21-cv-02416-SB-JPR,
7
    2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........................................................ 16
8
*AMC Technology, LLC v. Cisco Systems, Inc.*,
    No. 11–CV–03403 PSG,
9
    2012 WL 174949 (N.D. Cal. Jan. 20, 2012)........................................................ 17
10
*Ashcroft v. Iqbal*,
11
    556 U.S. 662 (2009)............................................................................................ 12
12
*Banks v. ACS Education*,
13
    638 F. App'x 587 (9th Cir. 2016)........................................................................ 11
14
*Barrett v. Apple Inc.*,
15
    523 F.Supp.3d 1132 (N.D. Cal. 2021)................................................................. 19
16
*Beagle v. Amazon.com, Inc.*,
    No. C24-0316JLR,
17
    2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ................................................. 12
18
*Bernardino v. Barnes & Noble Booksellers, Inc.*,
19
    No. 17-CV-04570 (LAK) (KHP),
20
    2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ..................................................... 13
21
*Block v. eBay, Inc.*,
22
    747 F.3d 1135 (9th Cir. 2014) ................................................................... 17, 18
23
*Boat People S.O.S., Inc. v. Voice*,
    No. 8:24-CV-00135-DOC-DFMx,
24
    2024 WL 3914508 (C.D. Cal. July 31, 2024) ....................................................... 6
25
*Boschetto v. Hansing*,
26
    539 F.3d 1011 (9th Cir. 2008) ......................................................................... 6, 7

27
28

vi

*Bray v. Kendall,*
    No. 08-0535 SC,
    2010 WL 56181 (N.D. Cal. Jan. 5, 2010) ................................................. 5

*Butcher's Union Local No. 498, United Food & Committee Workers v. SDC
    Investment, Inc.,*
    788 F.2d 535 (9th Cir. 1986) ..................................................... 1, 3

*Callaway Golf Corp. v. Royal Canadian Golf Ass'n,*
    125 F.Supp.2d 1194 (C.D. Cal. 2000) .............................................. 9

*Canyon County v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008) ...................................................... 11

*Caraccioli v. Facebook, Inc.,*
    700 F. App'x 588 (9th Cir. 2017) ................................................. 18

*Caruth v. International Psychoanalytical Ass'n,*
    59 F.3d 126 (9th Cir. 1995) ........................................................ 9

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.,*
    173 F.3d 725 (9th Cir. 1999) ...................................................... 19

*Core-Vent Corp. v. Nobel Industries AB,*
    11 F.3d 1482 (9th Cir. 1993) .................................................... 8, 9

*Cory v. Aztec Steel Building, Inc.,*
    468 F.3d 1226 (10th Cir. 2006) ................................................... 4

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) .............................................................. 2, 5

*Davis v. HSBC Bank Nevada, N.A.,*
    691 F.3d 1152 (9th Cir. 2012) .................................................... 19

*Doe 1 v. National Collegiate Athletic Ass'n,*
    No. 22-cv-01559-LB,
    2023 WL 105096 (N.D. Cal. Jan. 4, 2023) ........................................ 7

*Eclectic Properties East, LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014) ..................................................... 11

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017) ..................................................... 13

*Elliot v. Cessna Aircraft Co.*,
    No.: 8:20-cv-00378-SB (ADSx),
    2021 WL 2153820 (C.D. Cal. May 25, 2021)...........................................6

*EPA Real Estate Partnership v. Kang*,
    12 Cal.App.4th 171 (1992) .................................................................17

*Etaliq, Inc. v. Cisco Systems, Inc.*,
    No. CV 11–3672 GAF (FFMx),
    2011 WL 13220445 (C.D. Cal. July 20, 2011) .....................................11

*In re Fairfield Sentry Ltd.*,
    627 B.R. 546 (S.D.N.Y. 2021) ............................................................17

*Fields v. Legacy Health System*,
    413 F.3d 943 (9th Cir. 2005) ..............................................................10

*Garcia v. NutriBullet, L.L.C.*,
    No. 2:21-cv-09348-DDP (GJSx),
    2022 WL 3574699 (C.D. Cal. July 14, 2022) ........................................8

*Gilbert v. Bank of America*,
    No. C 13–01171 JSW,
    2014 WL 4748494 (N.D. Cal. Sept. 23, 2014).......................................3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)............................................................................5

*Handsome Music, LLC v. Etoro USA LLC*,
    No. LACV 20-08059-VAP (JCx),
    2020 WL 8455111 (C.D. Cal. Dec. 17, 2020).......................................6

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) ............................................................10

*Healthcare Ally Management of California, LLC v. Blue Cross Blue Shield of
    Minnesota*,
    No. CV 16-7042-DMG (AFMx),
    2018 WL 5880743 (C.D. Cal. June 6, 2018)..........................................7

*Heiting v. Athenahealth, Inc.*,
    No. 2:23-cv-10338-FLA (DFMx),
    2024 WL 3761294 (C.D. Cal. July 29, 2024) ......................................16

*Helms v. Wells Fargo Bank, N.A.*,
    No.: CV 17-3183 CBM-SK,
    2018 WL 6133715 (C.D. Cal. June 19, 2018).........................................................12

*Henderson v. Gruma Corp.*,
    No. CV 10–04173 AHM (AJWx),
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011).........................................................20

*Hodes v. Van's International Foods*,
    No. CV 09–01530 RGK (FFMx),
    2009 WL 10674101 (C.D. Cal. June 23, 2009).......................................................19

*In re Hulu Privacy Litigation*,
    No. C 11–03764 LB,
    2014 WL 1724344 (N.D. Cal. Apr. 28, 2014).........................................................14

*In re Hulu Privacy Litigation*,
    86 F.Supp.3d 1090 (N.D. Cal. 2015).......................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................20

*Laurel Gardens, LLC v. McKenna*,
    948 F.3d 105 (3rd Cir. 2020)....................................................................................4

*Lazar v. Superior Court*,
    12 Cal.4th 631 (1996).............................................................................................18

*Libman v. Apple, Inc.*,
    No. 22-cv-07069-EJD,
    2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)......................................................15

*Licea v. Cinmar, LLC*,
    659 F.Supp.3d 1096 (C.D. Cal. 2023)....................................................................16

*Lightpath Capital, Inc. v. Phoenix American Hospitality, LLC*,
    No. 18-1131-CV-PSG (AFM),
    2018 WL 5905387 (C.D. Cal. Apr. 5, 2018)...........................................................8

*Limcaco v. Wynn*,
    No. 2:20-cv-11372-RSWL-MAAx,
    2021 WL 5040368 (C.D. Cal. Oct. 29, 2021) ..........................................................3

*Manos v. MTC Financial, Inc.*,
  No.: SACV 16-01142-CJC(KESx),
  2017 WL 8236356 (C.D. Cal. Dec. 21, 2017)........................................................ 12

*Markos v. Sears, Roebuck & Co.*,
  No. CV 05–3051 CBM (JWJx),
  2005 WL 8155228 (C.D. Cal. Oct. 4, 2005) .......................................................... 11

*Martin v. Meredith Corp.*,
  657 F.Supp.3d 277 (S.D.N.Y. 2023) ...................................................................... 13

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) .................................................................................. 5

*Maxim Crane Works, L.P. v. Tilbury Constructors*,
  208 Cal.App.4th 286 (2012) ................................................................................... 10

*Meyer v. One West Bank, F.S.B.*,
  91 F.Supp.3d 1177 (C.D. Cal. 2015) ...................................................................... 11

*Mir v. Greines, Martin, Stein & Richland*,
  No. 2:14–4132–CAS(FFMx),
  2015 WL 4139435 (C.D. Cal. Jan. 12, 2015)....................................................... 4, 5

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ................................................................................ 12

*Morton v. Twitter, Inc.*,
  No. CV 20-10434-GW-JEMx,
  2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ................................................... 18, 20

*Muto v. Fenix International Ltd.*,
  No. 5:22-cv-02164-SSS-DTBx,
  2024 WL 2148734 (C.D. Cal. May 2, 2024).......................................................... 6, 7

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal.4th 459 (1992) .............................................................................................. 10

*In re Nickelodeon Consumer Privacy Litigation*,
  No. 12–07829,
  2014 WL 3012873 (D.N.J. July 2, 2014) ............................................................... 14

*Oasis West Realty, LLC v. Goldman*,
  51 Cal.4th 811 (2011) ............................................................................................ 17

x

*Parallel Media, LLC v. D&M Capital Group, LLC*,
    No. CV 10–05666 MMM (FFMx),
    2011 WL 13217278 (C.D. Cal. May 31, 2011)........................................9

*Peleg v. Neiman Marcus Group, Inc.*,
    204 Cal.App.4th 1425 (2012) ......................................................10

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .....................................................7

*PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*,
    138 F.3d 65 (2d Cir. 1998) .........................................................4

*Rancour v. Lush*,
    No.: 8:23-cv-01753-FWS-ADS,
    2024 WL 1829621 (C.D. Cal. Mar. 18, 2024) ....................................6

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ....................................................11

*Rocke v. Canadian Automobile Sport Club*,
    660 F.2d 395 (9th Cir. 1981) ......................................................9

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ....................................................18

*Salustri v. Dell, Inc.*,
    No. EDCV 09-02262 SJO (DTBx),
    2010 WL 11596554 (C.D. Cal. Apr. 27, 2010)..................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..............................................5, 6, 7

*Shizzle Pop, LLC v. Aviva Sports, Inc.*,
    No. CV 10–02574–RGK (SSx),
    2010 WL 11509148 (C.D. Cal. Nov. 3, 2010) ..................................19

*Silver v. Stripe Inc.*,
    No. 4:20-cv-08196-YGR,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ...............................14, 15

*Smith v. Facebook, Inc.*,
    262 F.Supp.3d 943 (N.D. Cal. 2017),
    *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .................................14, 15

xi

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.,*
    933 F.Supp. 918 (C.D. Cal. 1996) ............................................................ 20

*Terracom v. Valley National Bank,*
    49 F.3d 555 (9th Cir. 1995) .................................................................... 8

*United States v. Brooklier,*
    685 F.2d 1208 (9th Cir. 1982) .............................................................. 11

*Walden v. Fiore,*
    571 U.S. 277 (2014) ......................................................................... 2, 6

*Williams v. Yamaha Motor Co.,*
    851 F.3d 1015 (9th Cir. 2017) ........................................................... 5, 6

## STATUTES

18 U.S.C. §1961(1) ........................................................................... 11

18 U.S.C. §1965 .................................................................... 1, 2, 3, 4

18 U.S.C. §2710(b)(1) ..................................................................... 12

Cal. Bus. & Prof. Code §17200 ...................................................... 20

Cal. Bus. & Prof. Code §17500 ...................................................... 20

Cal. Penal Code §631(a) .............................................................. 15

**PRELIMINARY STATEMENT**

OnlyFans.com is an online subscription-based social media, content-sharing, and video-sharing platform ("OnlyFans") that allows users ("Creators") to create, share, and monetize entertainment content offered to other users ("Fans"). (Compl. ¶¶8-9.) Plaintiffs are five alleged Fans who purportedly used OnlyFans to purchase content from Creators, including individualized messaging that allowed Plaintiffs to experience the fantasy of an intimate conversation, even though Plaintiffs do not have a non-commercial relationship with any Creator. (*Id.* ¶¶27-36, 241-314.) Plaintiffs claim some Creators did not provide the "authentic" relationships they paid for, outsourcing their interactions to third parties ("Agency Defendants") who managed the exchange of private messages with Plaintiffs. Plaintiffs blame Fenix International Ltd. ("FIL") (the London-based company that owns and operates OnlyFans) and its subsidiary Fenix Internet LLC (together, "Fenix"), alleging alternately that Fenix "duped" Plaintiffs into thinking the Creators they paid were personally engaging with them, and/or should have monitored their communications and stopped the Creators and Agency Defendants from using third parties' assistance. While this Court should first decide Fenix's Motion to Dismiss for Forum Non Conveniens ("FNC Motion"), if it does reach this Motion, the Complaint should be dismissed for lack of jurisdiction and failure to state a claim. (*See* FNC Motion §I.)[1]

***First***, the Court lacks personal jurisdiction over Fenix. The nationwide service of process provision in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1965(b), does not give the Court personal jurisdiction because Plaintiffs do not allege "a single nationwide RICO conspiracy" involving all defendants—a vital prerequisite under Ninth Circuit precedent. *See Butcher's Union Local No. 498, United Food & Comm. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). The Court does not have general jurisdiction over Fenix because they are not incorporated or

---

[1]    The Court can find additional background information about this dispute in the FNC Motion, incorporated by reference here to avoid repetition. Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material for ease of reading.

headquartered in California—the only ties that typically render a business "at home" in a jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Court lacks specific jurisdiction over Fenix because the only tie between Plaintiffs' claims against Fenix and California is the fact that two Plaintiffs are allegedly located here, which is insufficient. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

*Second*, none of the claims in Plaintiffs' Complaint are plausibly pled. Plaintiffs' claims are barred by the English choice-of-law clause in the OnlyFans Terms of Service ("Terms"). (Taylor Decl. Ex. A at 13.) Plaintiffs also fail to plead key elements of their federal claims, and their five California claims are barred by (among other things) the Terms, which expressly disclaim any Fenix obligation to ensure Plaintiffs' interactions are sufficiently "authentic." (*Id*. at 6-7.) Because no basis exists for this action to proceed at all, much less in this Court, it should be dismissed.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER FENIX

### A.    The Court Does Not Have Jurisdiction Under RICO

RICO contains special provisions for service of process in civil actions. Plaintiffs allege this "Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§1965(b) and (d)." (Compl. ¶22.) This is incorrect. Plaintiffs do not meet the applicable statutory requirements to invoke §1965(b)'s nationwide service of process provision against either Fenix entity, and §1965(d) does not create a vehicle to acquire personal jurisdiction.

### 1.    Section 1965(b) Does Not Give the Court Personal Jurisdiction

Section 1965(b) provides that in any RICO action in a U.S. district court where "the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." 18 U.S.C. §1965(b). Although this provision allows a court to obtain personal jurisdiction over a defendant through nationwide service of process, it also "makes clear" that "the right to

2

nationwide service in RICO suits *is not unlimited.*" *Butcher's Union*, 788 F.2d at 539. Among other things, a plaintiff must demonstrate "the facts show a *single nationwide* RICO conspiracy exists." *Gilbert v. Bank of Am.*, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (emphasis in original); *Limcaco v. Wynn*, 2021 WL 5040368, at *9 (C.D. Cal. Oct. 29, 2021) (same).

To meet this requirement, a plaintiff must plead facts showing all defendants worked together to carry out one common RICO conspiracy, rather than alleging multiple different conspiracies with overlapping actors. For example, in *Butcher's Union*, plaintiffs brought RICO claims against 18 different defendants, arguing that several attorneys worked with four different employers to engage in separate union-busting campaigns. 788 F.2d at 537. The Ninth Circuit held the district court could not obtain jurisdiction over the defendants under §1965(b) because plaintiffs failed to "allege a single nationwide RICO conspiracy." *Id.* at 539. The court reasoned there was no single "multidistrict conspiracy" because "none of the four defendant employers had any specific knowledge of or participation in any of the other" employer's union-busting activities, even though the same lawyers coordinated "each of the individual conspiracies." *Id.*

Here, Plaintiffs likewise fail to "allege a single nationwide RICO conspiracy." *Id.* Although Plaintiffs allege that individual Creators worked with various Agency Defendants to manage their interactions with users, they do not allege that Fenix coordinated with the Creators or Agency Defendants to carry out these activities, nor that any Creator or Agency Defendant knew about or coordinated with any other Creator or Agency Defendant to carry out the alleged conspiracy. (Compl. ¶¶357-67.) At best, Plaintiffs allege a number of entirely *separate* acts, which they claim misled OnlyFans users, rather than a single nationwide conspiracy encompassing all named Defendants in this lawsuit. Accordingly, Plaintiffs cannot invoke §1965(b) to obtain personal jurisdiction over Fenix. *See, e.g.*, *Butcher's Union*, 788 F.2d at 539; *Gilbert*, 2014 WL 4748494, at *4 (no jurisdiction under §1965(b) where "Plaintiffs fail to allege any connection between [one group of defendants] and [a second group of defendants] and the only connection

between those two groups of defendants is that they are alleged to have done business with [a third group of Defendants]"); *Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *13 (C.D. Cal. Jan. 12, 2015) (no jurisdiction where plaintiffs only alleged that a defendant was connected with another defendant, but not all other members of the conspiracy).

## 2.   Section 1965(d) Does Not Give the Court Personal Jurisdiction

Plaintiffs' efforts to assert personal jurisdiction over Fenix under §1965(d) are equally meritless. That section provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. §1965(d).

On its face, §1965(d) does not provide a vehicle for a court to obtain personal jurisdiction over a defendant. As discussed above, §1965(b) sets forth when and how a plaintiff can serve a "summon[s]"—the document that gives a court jurisdiction over a defendant (assuming constitutional requirements are satisfied). 18 U.S.C. §1965(b). Similarly, §1965(c) discusses when and how a party can serve a witness subpoena in a RICO action. *Id.* §1965(c). Thus, §1965(d)'s "reference to '[a]ll other process' must mean process *different* than a summons or a government subpoena, both of which are dealt with in previous subsections." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006). Allowing a plaintiff to use §1965(d) to serve a summons—and thus acquire personal jurisdiction—would be nonsensical, since it would render §1965(b) and (c) "duplicative." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998). It would also undermine Congress's decision in §1965(b) to only allow nationwide service of process when "the ends of justice [so] require." *Cory*, 468 F.3d at 1230.

For these reasons, courts consistently reject efforts by RICO plaintiffs to use §1965(d) to acquire personal jurisdiction over out-of-state defendants. *See, e.g.*, *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117-20 (3rd Cir. 2020) (holding that RICO plaintiffs cannot rely on §1965(d) as a means to obtain personal jurisdiction); *Cory*, 468 F.3d at 1230 (same); *PT United*, 138 F.3d at 72 (same); *Mir*, 2015 WL 4139435, at *12

4

n.15 (same); *Bray v. Kendall*, 2010 WL 56181, at *5 (N.D. Cal. Jan. 5, 2010) (same). This Court should do the same.

**B.    Fenix Lack Sufficient Contacts with California to Assert Personal Jurisdiction**

Plaintiffs also cannot meet their burden to establish personal jurisdiction over Fenix under a traditional due process analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

**1.    The Court Does Not Have General Jurisdiction**

General jurisdiction exists when a party's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is typically "at home" only within "[its] place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. Fenix are not "at home" in California. FIL is incorporated in the United Kingdom, and its principal place of business is London. (Compl. ¶37.) Fenix Internet is organized and headquartered in Delaware. (Supp. Taylor Decl. ¶7.) Neither entity has offices, staff, or other physical presence in California, or a registered agent for service of process in California. (*Id.* ¶¶11-13.) Thus, they are not "at home" in California. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (rejecting general jurisdiction where these factors were absent).

**2.    The Court Does Not Have Specific Jurisdiction**

Plaintiffs likewise cannot meet their burden of demonstrating specific jurisdiction. Specific jurisdiction exists when "the defendant's suit-related conduct [creates] a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017). For specific jurisdiction to exist: (1) the defendant must "purposefully direct [his] activities" toward the forum or "purposefully avail[] [himself] of the benefits afforded by the forum's laws"; (2) the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction [must] comport with fair play and substantial justice, i.e., it [must be] reasonable." *Id.* at 1023.

Plaintiffs "bear the burden of satisfying the first two prongs of the test," but all three prongs must be met to exercise specific jurisdiction. *Id.* Specific jurisdiction is assessed on a claim-by-claim basis. *See Rancour v. Lush*, 2024 WL 1829621, at *5 (C.D. Cal. Mar. 18, 2024) (Slaughter, J.).

### (a)    Plaintiffs Cannot Show Purposeful Direction or Availment

Most of Plaintiffs' claims sound in tort and are evaluated under the purposeful direction test. *See, e.g.*, *Boat People S.O.S., Inc. v. Voice*, 2024 WL 3914508 at *13 (C.D. Cal. July 31, 2024). Plaintiffs' breach of contract claim, by contrast, is evaluated under the purposeful availment test. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Plaintiffs cannot satisfy either test.

### (i)    Plaintiffs Cannot Demonstrate Purposeful Direction

For specific jurisdiction to exist under the purposeful direction test, Fenix must have "(1) committed an intentional act, (2) expressly aimed at [California], (3) causing harm [they] kn[ew] [would] likely… be suffered in [California]." *Schwarzenegger*, 374 F.3d at 803.

Plaintiffs do not and cannot allege Fenix undertook any tortious act "directly targeting [California]." *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111 at *7 (C.D. Cal. Dec. 17, 2020). *First*, Plaintiffs' allegations that two of them used OnlyFans in California are insufficient. (Compl. ¶317.) As Judge Sykes observed in dismissing another OnlyFans-related case, "the mere operation of interactive website[s] visited by residents of a particular state does not, by itself, establish that Defendant either expressly aimed its conduct at that state or deliberately reached out to it." *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 at *4 (C.D. Cal. May 2, 2024); *Elliot v. Cessna Aircraft Co.*, 2021 WL 2153820, at *3 (C.D. Cal. May 25, 2021) (similar). That is because Plaintiffs cannot "satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. Plaintiffs do not—and cannot—allege OnlyFans "had some [California]-specific focus," and therefore fail to show it was purposefully directed at California. *Muto*, 2024 WL

6

1  2148734 at *4.

2  **Second**, Plaintiffs' allegations that Fenix Internet "directly or indirectly collect[ed]"

3  payments from Fans and remitted payments to Creators in California are irrelevant.

4  (Compl. ¶40.) For starters, Plaintiffs do not allege the payment-processing services that

5  Fenix Internet assists FIL with were tortious or caused them harm, which means they are

6  irrelevant to the purposeful direction analysis. *Schwarzenegger*, 374 F.3d at 803.

7  Moreover, Fenix Internet assists FIL with payment-processing services *no matter where* a

8  user is located in the United States, meaning such activities are not directed at California.

9  *Muto*, 2024 WL 2148734 at *4 (rejecting jurisdiction over Fenix for OnlyFans-related

10  claims).

11    (ii)   <u>**Plaintiffs Cannot Demonstrate Purposeful Availment**</u>

12  For specific jurisdiction under the purposeful availment test, "the defendant *himself*"

13  must undertake "actions" that "create a substantial connection with the forum State." *Picot*

14  *v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). A "contract" with the plaintiff "alone does

15  not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*,

16  539 F.3d at 1017.

17  **First**, the contracts formed when Plaintiffs accepted the Terms do not constitute

18  purposeful availment. The Terms are offered to the world at large, not just California

19  residents, and thus do not show Fenix "deliberately reached out beyond" the United

20  Kingdom and Delaware "with a contract that envisioned continuing and wide-reaching

21  contacts with California." *See Doe 1 v. Nat'l Collegiate Athletic Ass'n*, 2023 WL 105096

22  at *11 (N.D. Cal. Jan. 4, 2023).

23  **Second**, none of the "billing and payment" services Plaintiffs allege that Fenix

24  Internet performs take place in California, and thus there is no "substantial connection with

25  California." *Healthcare Ally Mgmt. of Cal., LLC v. Blue Cross Blue Shield of Minn.*, 2018

26  WL 5880743 at *4 (C.D. Cal. June 6, 2018).

27

28

7

**(b)** **Plaintiffs' Claims Do Not Arise Out of Fenix's**
**Allegedly Forum-Related Contacts**

"A lawsuit arises out of a defendant's contacts with the forum state if… a direct nexus [exists] between the claims being asserted and the defendant's activities in the forum." *Garcia v. NutriBullet, L.L.C.*, 2022 WL 3574699, at *3 (C.D. Cal. July 14, 2022). Here, as shown, Fenix lack any substantial contacts with California, and the very limited California contacts they do have are unrelated to Plaintiffs' claims. Accordingly, Plaintiffs cannot demonstrate their claims arise out of Fenix's supposed contacts with California. *See Lightpath Cap., Inc. v. Phoenix Am. Hosp., LLC*, 2018 WL 5905387, at *6 (C.D. Cal. Apr. 5, 2018) (concluding no personal jurisdiction existed where alleged harms did not arise from defendants' other California-related activities).

**(c)** **Exercising Personal Jurisdiction Would Be Unreasonable**

Courts consider seven factors when determining whether the exercise of jurisdiction would comport with fair play and substantial justice. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). They are: (1) the extent of the defendants' purposeful interjection into California's affairs, (2) the burden on the defendant of defending in California, (3) the extent of conflict with the sovereignty of the defendants' sovereignty, (4) California's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.* at 1487-88. These factors weigh in favor of Fenix.

*First*, purposeful interjection is synonymous with the purposeful availment and purposeful direction tests. It favors Fenix since, as shown, Fenix did not direct tortious acts at California, or do anything to specifically avail themselves of California's commercial market. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

*Second*, Fenix's burden of litigating in California is substantial, because Fenix's core personnel and documents are located in England, and thus Fenix would have to import all of the relevant evidence into California. (Supp. Taylor Decl. ¶9.) "[T]he greater burden

of moving people" falls on Fenix. *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F.Supp.2d 1194, 1206 (C.D. Cal. 2000).

*Third*, there is a significant conflict of sovereignty because FIL is a foreign corporation—a fact that creates a "higher" "barrier" to exercise jurisdiction here, and "tends also to undermine the reasonableness of personal jurisdiction" in California. *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981).

*Fourth*, California has minimal interest in adjudicating this dispute because although Plaintiffs reside in California, Fenix is not a California citizen and there is "a limited… connection between [California] and the contracts at issue." *Parallel Media, LLC v. D&M Cap. Grp., LLC*, 2011 WL 13217278, at *23 (C.D. Cal. May 31, 2011).

*Fifth*, California is not the location best-suited to efficient resolution of the controversy given "the witnesses and the evidence are likely to be located" in England. *Core-Vent*, 11 F.3d at 1489.

*Sixth*, "[a]lthough the importance of the forum to" Plaintiffs "nominally remains part of this test, cases have cast doubt on its significance" and it should not "significantly influence" the Court's "analysis." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). A plaintiff's "mere preference… for its home forum does not affect the balancing," and this factor is "insignificant" when, as here, the other factors weigh against exercising jurisdiction. *Core-Vent*, 11 F.3d at 1490.

*Seventh*, the Terms provide an adequate alternate forum for this dispute—England. *See Callaway*, 125 F.Supp.2d at 1207; *see also* FNC Motion §III.

Accordingly, the Court should dismiss Plaintiffs' claims against Fenix for lack of personal jurisdiction.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX

### A.    The Parties' Choice-of-Law Provision Precludes Plaintiffs' Claims

All Plaintiffs' claims must be dismissed because English law governs this dispute. In December 2021, every existing OnlyFans user (including Plaintiffs, per their allegations) confirmed their prior acceptance of the Terms, which have long provided that "any claim"

1   connected to their use of OnlyFans "is governed by English law." (FNC Motion at 3-6.)

2      A "[f]ederal court[] sitting in diversity must apply the forum state's
3   choice[-]of[-]law rules to determine the controlling substantive law." *Fields v. Legacy*
4   *Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). California has a "strong policy favoring
5   enforcement of [choice-of-law] provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3
6   Cal.4th 459, 464-65 (1992). California courts consider "(1) whether the chosen state has a
7   substantial relationship to the parties or their transaction, or (2) whether there is any other
8   reasonable basis for the parties' choice[-]of[-]law." *Id.* at 466. If "either test is met," courts
9   determine "whether the chosen state's law is contrary to a fundamental policy of
10   California." *Id.* The party arguing against the choice-of-law clause bears the burden to
11   show a conflict. *See Maxim Crane Works, L.P. v. Tilbury Constructors*, 208 Cal.App.4th
12   286, 292 (2012). If there is no conflict, courts will enforce the clause. *Nedlloyd*, 3 Cal.4th
13   at 466.

14      A substantial relationship exists when "one of the parties is domiciled or has his
15   principal place of business" in the chosen location. *Peleg v. Neiman Marcus Grp., Inc.*, 204
16   Cal.App.4th 1425, 1447 (2012). Here, FIL—the entity that owns and operates OnlyFans—
17   was formed in the United Kingdom, and has its principal place of business in London.
18   (Supp. Taylor Decl. ¶6; Compl. ¶37.) Thus, the substantial relationship test is met. *See,*
19   *e.g.*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1183 (9th Cir. 2009) ("The fact that
20   [defendant] is a United Kingdom company is sufficient to establish a substantial
21   relationship between England and the parties" and "a reasonable basis for applying the
22   English choice[-]of[-]law provision."); *Nedlloyd*, 3 Cal.4th at 467 (parties had a substantial
23   relationship with Hong Kong because one was incorporated in Hong Kong).

24      Applying English law here would not offend any fundamental California policy,
25   which "must be a substantial one" that "involve[s] some fundamental principle of justice,
26   some prevalent conception of morals, or some deep-seated tradition of the commonweal."
27   *Salustri v. Dell, Inc.*, 2010 WL 11596554, at *4 (C.D. Cal. Apr. 27, 2010). "Where a
28   plaintiff can seek the same relief under the law of" the chosen forum, "the selected state's

law is not contrary to a fundamental policy of [California]." *Markos v. Sears, Roebuck & Co.*, 2005 WL 8155228, at *3 (C.D. Cal. Oct. 4, 2005). Here, as shown in the FNC Motion, Plaintiffs can obtain substantially the same relief under English law. (FNC Motion §III.)

Since English law governs all claims related to Plaintiffs' use of OnlyFans, their U.S. law-based claims violate the OnlyFans choice-of-law clause and should be dismissed. *See, e.g.*, *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (en banc) (affirming dismissal of federal claims where parties agreed to contract governed by English choice-of-law clause); *Etaliq, Inc. v. Cisco Sys., Inc.*, 2011 WL 13220445, at *7 (C.D. Cal. July 20, 2011) (dismissing California claims governed by Canadian choice-of-law clause).

## B.  Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims

To state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Meyer v. One West Bank, F.S.B.*, 91 F.Supp.3d 1177, 1182 (C.D. Cal. 2015). To state a claim for RICO conspiracy, Plaintiffs must also allege "the assent of each defendant" to the conspiracy. *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982).

"A pattern of racketeering activity requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. §1961(1)." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). Here, the only statutorily permissible RICO predicates Plaintiffs claim are alleged acts of wire fraud.[2] (Compl. ¶374.) To plead a RICO claim based on wire fraud, Plaintiffs must allege: "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Plaintiffs' RICO claims fail in multiple respects.

*First*¸ as explained in §§III.A, III.C, and IV of Moxy Management's motion to dismiss, which Fenix join, Plaintiffs fail to allege the existence of a racketeering enterprise,

---

[2]    Although Plaintiffs allege additional acts supposedly relevant to their RICO claims (Compl. ¶374), none appear to fall under the list of permissible RICO predicates under §1961(1). *See Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016) (affirming dismissal of RICO claim because violations of statutes not listed within 1961(1) do not constitute racketeering activity).

1   and do not plead either that they suffered a concrete financial loss, or that the Defendants

2   formed a conspiracy to violate RICO or commit wire fraud.

3   **Second**, the Complaint is devoid of facts indicating Fenix had a specific intent to

4   mislead Fans or conspired with Creators or the Agency Defendants to defraud Fans.

5   Instead, Plaintiffs make only conclusory allegations that all "Defendants acted with the

6   specific intent to deceive and defraud Fans to increase their profits." (Compl. ¶373.) That

7   kind of "[t]hreadbare recital[] of [an] element[] of a cause of action, supported by mere

8   conclusory statements," is not enough to state a claim under any pleading standard, *see*

9   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), let alone that Fenix formed a specific intent to

10  commit wire fraud against their customers. *See, e.g.*, *Manos v. MTC Fin., Inc.*, 2017 WL

11  8236356, at *10 (C.D. Cal. Dec. 21, 2017) ("conclusory allegation that Defendants

12  possessed a specific intent to defraud 'to accomplish the purpose of each scheme'"

13  insufficient); *Helms v. Wells Fargo Bank, N.A.*, 2018 WL 6133715, at *4 (C.D. Cal. June

14  19, 2018) (similar).

15  **C.    Plaintiffs Fail to Plead a VPPA Claim**

16  The Video Privacy Protection Act ("VPPA") prohibits "knowingly disclos[ing], to

17  any person, personally identifiable information ["PII"] concerning any consumer" of a

18  video tape service provider. 18 U.S.C. §2710(b)(1). Plaintiffs do not plead a plausible

19  VPPA claim for three independent reasons.

20  **First**, Plaintiffs cannot assert claims against an entity tangentially related to a

21  purported disclosure if that entity does not actually control the disclosure. *See Mollett v.*

22  *Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("The lawfulness of this disclosure cannot

23  depend on circumstances outside of [defendant's] control."). Alleging "the mere *possibility*

24  that information could be disclosed" to third parties, not that defendant "*in fact* made such

25  disclosures," is insufficient. *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290, at *3 (W.D.

26  Wash. Sept. 3, 2024) (emphasis in original).

27  Here, Plaintiffs never allege that Fenix *themselves* have "taken the affirmative act of

28  disclosing" any PII. *Id.* Instead, Plaintiffs focus exclusively on actions by third parties

1  outside Fenix's control—"[s]cams… primarily perpetrated by '*management agencies*'…

2  on behalf of and at the direction of the *Creators*"—and allege only that Fenix "disclosed

3  Plaintiffs'… [PII] to other people" by "facilitat[ing] the communication of information

4  between Fan and Creator accounts" through the OnlyFans platform. (Compl. ¶¶99, 418.)

5  Plaintiffs' acknowledgment that Fenix's only alleged role is to "facilitat[e]" disclosures by

6  third parties fatally undermines their claim. *See Martin v. Meredith Corp.*, 657 F.Supp.3d

7  277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim "despite a handful of generalized

8  allegations saying [defendant] shares video titles with" third party, where allegations were

9  contradicted by "specific allegations").

10      ***Second***, Plaintiffs do not plead any facts indicating Fenix "knowingly" disclosed

11  Plaintiffs' PII. "'[K]nowingly' connotes actual knowledge" and "means consciousness of

12  transmitting the private information." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095

13  (N.D. Cal. 2015). The Complaint repeatedly asserts Fenix "should know" Creators used

14  third parties to manage their interactions—"an open secret to industry insiders." (Compl.

15  ¶125.) But whether Fenix *should know* is irrelevant to the VPPA: there are no allegations

16  that establish Fenix had *actual knowledge of a specific disclosure* made by a Creator to an

17  Agency. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9

18  (S.D.N.Y. Aug. 11, 2017) (explaining plaintiff "must prove that the defendant knew that a

19  third party would actually link information it had with other information conveyed and

20  become aware that a particular person had in fact purchased a particular video" (citing

21  *Hulu*)).

22      ***Third***, PII is "only that information that would readily permit an ordinary person to

23  identify a specific individual's video-watching behavior" and must include "some

24  information that can be used to identify an individual." *Eichenberger v. ESPN, Inc.*, 876

25  F.3d 979, 984-85 (9th Cir. 2017). PII does not include "information" that "*cannot* identify

26  an individual unless it is combined with other data" through a method "an ordinary person

27  could not use." *Id.* at 986. Thus, courts hold "anonymous usernames" alone are not PII

28  because they do not "identify an actual, identifiable person and link that person to a specific

13

video choice." *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *12 (D.N.J. July 2, 2014); *see also In re Hulu Priv. Litig.*, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) (disclosing "a unique identifier—without more—[does not] violate[]" VPPA).

Here, Plaintiffs allege that Fenix collects information like "email address[es]" and "telephone number[s]," but admit the only information purportedly disclosed to third parties was the Fans' "communication history" with a Creator, which displays "the Fan's username," not their real name. (Compl. ¶¶406-08.) Plaintiffs also admit that while a "username" can be used to "view the Fan's profile on OnlyFans," it does not identify an actual person; indeed, Fans use "pseudonyms as a matter of course… to remain anonymous." (*Id.* ¶¶26, 407.)[3] Since Plaintiffs do not allege Fenix disclosed information that would allow an ordinary person to pierce Fans' pseudonyms and identify individuals' viewing histories, their VPPA claim must be dismissed. *See Nickelodeon*, 2014 WL 3012873, at *12 (holding ordinary person could not use "anonymous information about home computers, IP addresses, anonymous usernames, even a user's gender and age… to identify an actual, identifiable person").

### D.    Plaintiffs Fail to Plead a CIPA Claim

Plaintiffs allege communications they sent to a Creator's account on OnlyFans were then "disclosed to… agents or contractors of the Agency Defendants" without their consent. (*See* Compl. ¶¶243-46.) Plaintiffs claim Fenix aided Agency Defendants in "obtain[ing]" and "us[ing]" those messages by "track[ing] Plaintiffs'… communications… on the OnlyFans website." (Compl. ¶¶423-34.) Plaintiffs' CIPA claim fails.

***First***, Plaintiffs consented to the conduct about which they now complain. "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021); *see also Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 955 (N.D. Cal. 2017),

---

[3] If Plaintiffs *themselves* disclosed information in their profiles or communications that enabled others to identify them, they agreed their "Content may be viewed by individuals that recognise [their] identity" and Fenix are "not in any way… responsible" if Plaintiffs "are identified from [their] Content." (Taylor Decl. Ex. A at 6.)

14

1  ("Plaintiffs' consent bars" CIPA claim "because [CIPA] imposes liability only for
2  interception 'without the consent of all parties'" (quoting Cal. Penal Code §631(a)).

3  Courts "consistently hold that terms of service and privacy policies… can establish
4  consent to the alleged conduct challenged under" CIPA. *Silver,* 2021 WL 3191752, at *3-
5  4 (N.D. Cal. July 28, 2021) (collecting cases) (dismissing claim where plaintiff agreed to
6  privacy policy which disclosed personal information would be shared with third parties,
7  establishing consent); *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *7-8 (N.D.
8  Cal. Sept. 26, 2024) (dismissing CIPA claim where privacy policy "sufficiently disclosed
9  the challenged data collection").

10  As Fenix showed, all Plaintiffs expressly agreed to the Terms and, separately, the
11  Privacy Policy. (FNC Motion at 3-6.) Plaintiffs allege the Privacy Policy and Terms are
12  part of "the legally binding agreement between [Plaintiffs] and [Fenix]" and quote them at
13  length. (*See, e.g.* Compl. ¶¶130, 151-58, 406.) Plaintiffs admit the Privacy Policy disclosed
14  that Fenix would process "customer data" like "comments… from your Fan account" and
15  "chat messages between you and other users," including Creators. (*Id*. ¶¶130, 406 (quoting
16  Privacy Policy).)

17  "Having alleged that they understood and agreed to [Defendants'] policies, *Plaintiffs*
18  *cannot now claim to be ignorant of their contents*." *Smith*, 262 F.Supp.3d at 953
19  (dismissing CIPA claim where plaintiffs alleged policies "constitute a valid contract" and
20  "allege[d] that they relied on [defendant's] assertions in the very same contracts").

21  In agreeing to the Terms, Plaintiffs expressly "***consent[ed]*** to… the processing of
22  [their] personal data as more fully detailed in [OnlyFans'] Privacy Policy." (Taylor Decl.
23  Ex. A at 4.) The Privacy Policy disclosed that Fenix may: "[m]oderat[e]… text and content
24  uploaded to the Website" and "content sent in chat messages"; "share personal data" with
25  "third-party service providers," including "content and text moderation… providers"; and
26  disclose "personal data" to "third parties for various business purposes." (Supp. Taylor
27  Decl. Ex. 1 at 13, 15, 23.)

28  Plaintiffs also expressly "acknowledge[d]" in the Terms "that once [their]

15

1  Content"—defined as "any material uploaded to OnlyFans by any User (whether a Creator
2  or a Fan), including any photos, videos…, text…, and any other material whatsoever"—is
3  "posted on OnlyFans, [Fenix] cannot control and will not be responsible to [Plaintiffs] for
4  the use which *other Users or third parties make of such Content*," and "do not select or
5  modify the Content that is *stored or transmitted* via OnlyFans." (Taylor Decl. Ex. A at 1,
6  6-7.)

7        Plaintiffs were thus on notice of and expressly consented to Defendants' "tracking,"
8  storage, and disclosure of Plaintiffs' communications to Creators and third parties, and
9  agreed Defendants are not responsible for their subsequent "use" of those communications.
10 Plaintiffs' consent bars their CIPA claim.

11       ***Second***, as explained in §VI.B of Moxy Management's motion to dismiss, which
12 Fenix join, Plaintiffs cannot show third parties read their messages "in transit" as CIPA
13 requires because Plaintiffs allege their communications were not "distributed [to] and/or
14 accessible" by third parties until *after* they were received by the Creator's account. (*See,*
15 *e.g.*, Compl. ¶¶5, 110-11, 245-46); *see also Adler v. Community.com, Inc.*, 2021 WL
16 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim with prejudice where
17 defendant app received and forwarded text messages to celebrities because "[d]efendant
18 could not access the contents of the text messages at issue *until they were received* at the
19 celebrity's Community number").

20       ***Third***, Plaintiffs' allegation that Fenix's "computer code and programs… track[ed]"
21 Plaintiffs' communications on OnlyFans (Compl. ¶426) "does not allege specific facts as
22 to how or when the interception takes place, which has been found to fall short of stating a
23 plausible claim under" CIPA. *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1109–10 (C.D.
24 Cal. 2023) (dismissing Section 631 claim); *see also Heiting v. Athenahealth, Inc.*, 2024
25 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (dismissing CIPA claim because "[t]hough
26 Plaintiff alleges in general terms the interception occurs through software embedded in
27 Defendant's website, she does not include additional factual details establishing when the
28 interception occurs."). Plaintiffs' conclusory allegations regarding Fenix's role in the

1   purported "wiretapping" are likewise insufficient.

2        **E.**    <u>**Plaintiffs Fail to Plead a Breach of Contract Claim**</u>

3        The basic elements of a breach of contract claim are the same under English and

4   California law. To state a claim, Plaintiffs must plead: (1) the existence of a contract; (2)

5   performance by one party; (3) breach by the other party; and (4) damages. *Compare In re*

6   *Fairfield Sentry Ltd.*, 627 B.R. 546, 556 (S.D.N.Y. 2021) (English law); *with Oasis W.*

7   *Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011) (California law).

8        Plaintiffs do not invoke the Terms; instead, they claim "[w]hen a Fan goes to

9   subscribe to a Creator's page," the site "promise[s]" they "will be able to '[d]irect message

10   with this' Creator," which forms *separate* contracts with Fenix for every subscription, that

11   were supposedly breached when Plaintiffs allegedly communicated with third parties

12   instead. (Compl. ¶¶441-46.) Plaintiffs' breach claim fails for two reasons.

13        *First*, Plaintiffs' claims are barred by the integration clause in the Terms. A plaintiff

14   cannot allege a breach of alleged promises made outside of the four corners of an integrated

15   contract. *See EPA Real Estate P'ship v. Kang*, 12 Cal.App.4th 171, 175 (1992) (holding

16   integrated contract is "the final contract between the parties" and cannot be contradicted

17   by "collateral agreements").

18        Plaintiffs did not, in fact, form separate contracts with Fenix every time they

19   subscribed to a Creator's page. Instead, Plaintiffs "use of OnlyFans and" their "agreement

20   with" Fenix is "govern[ed]" by the Terms. (Taylor Decl. Ex. A at 1.) The Terms'

21   integration clause states Plaintiffs have "[n]o implied… rights… save as expressly set out

22   in the Terms," and the Terms "form the entire agreement between [Fenix] and [Plaintiffs]

23   regarding [their] access to and use of OnlyFans." (*Id.* at 13.) These integrated Terms

24   preclude Plaintiffs' breach claims. *See, e.g.*, *AMC Tech., LLC v. Cisco Sys., Inc.*, 2012 WL

25   174949, at *6 (N.D. Cal. Jan. 20, 2012) (dismissing breach of contract claim where "the

26   integration clause by its terms bar[red] any extra-contractual promises").

27        *Second*, other provisions in the Terms bar Plaintiffs' claims. Courts ascertain the

28   terms of the parties' agreement from their written contract "alone." *Block v. eBay, Inc.*, 747

F.3d 1135, 1138 (9th Cir. 2014). Here, the Terms state that transactions between Fans and Creators are "contracts between Fans and Creators," Fenix are *not* parties to those contracts, and are "not responsible for any Fan/Creator Transaction." (Taylor Decl. Ex. A at 17-18.) The Terms also state that Creators may "have an agent, agency, management company or other third party which assists [them] with the operation of [their] Creator account (or operates it on [their] behalf)." (*Id.* at 21.) Further, Fenix "are not responsible for reviewing or moderating Content," "are under no obligation to monitor Content or to detect breaches of the Terms," "make no promises or guarantees about the accuracy" of "materials which [they] make accessible on OnlyFans," "cannot control and will not be responsible to [Plaintiffs] for the use which other [u]sers *or third parties* make" of content Plaintiffs upload to OnlyFans, and do not guarantee "that [u]sers will achieve any particular result or outcome from using such materials." (*Id.* at 6-7.) These provisions fatally undermine Plaintiffs' claim that Fenix had any contractual obligation to ensure Plaintiffs were only interacting with specific Creators. *See Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming dismissal of breach claim barred by terms of service); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 19, 2021) (dismissing breach claim because terms barred claim based on separate Twitter policy).

### F.    <u>Plaintiffs Fail to Plead Fraud or Deceit Claims</u>

To state a claim for fraud or deceit, Plaintiffs must plead: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). Fraud must be pleaded with particularity, meaning the Complaint must "identify the who, what, when, where, and how of the misconduct charged." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Plaintiffs allege Fenix defrauded them by promising that they would be solely interacting with individual Creators, when some Creators were outsourcing their interactions to the Agency Defendants. (Compl. ¶449.) Plaintiffs' claims fail for three reasons.

1      ***First***, Plaintiffs cannot successfully allege Fenix made any misrepresentations or

2   omissions. A plaintiff cannot allege the defendant misrepresented information that was, in

3   fact, disclosed. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir.

4   2012). Here, the Terms disclose that Creators may "have an agent, agency, management

5   company or other third party" that assists them, that Fenix "cannot control" how Creators

6   or third parties "use" content provided by Fans, "make no promises or guarantees about

7   the accuracy or otherwise" of materials made available to Fans, and "are not responsible

8   for reviewing or moderating Content." (Taylor Decl. Ex. A at 6-7.) Since the allegedly

9   misrepresented information was fully disclosed, Plaintiffs' claims fail as a matter of law.

10  *See, e.g.*, *Davis*, 691 F.3d at 1163 (affirming dismissal of fraud claim where defendant

11  made disclosure); *Barrett v. Apple Inc.*, 523 F.Supp.3d 1132, 1152 (N.D. Cal. 2021)

12  (dismissing fraud claim contradicted by website's disclaimers).

13     ***Second***, Plaintiffs do not plead intent to defraud. "[M]erely conclusory" allegations

14  of "scienter and intent to defraud" are insufficient to state a claim. *Hodes v. Van's Int'l*

15  *Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009). Yet that is all Plaintiffs offer.

16  Plaintiffs claim that Fenix "*should know* about" Creators' use of third parties "from

17  monitoring its platform" (Compl. ¶129), but do not explain how monitoring the content

18  posted on OnlyFans would allow Fenix to know the identity of every person typing in a

19  Creator interaction. Plaintiffs do not plead a single fact suggesting Fenix knowingly

20  engaged in misleading advertising. Without these details, Plaintiffs' claims fail as a matter

21  of law. *See, e.g.*, *Hodes*, 2009 WL 10674101, at *3 (dismissing claim with conclusory

22  scienter and intent allegations); *Shizzle Pop, LLC v. Aviva Sports, Inc.*, 2010 WL 11509148,

23  at *3 (C.D. Cal. Nov. 3, 2010) (similar).

24     ***Third***, to the extent Plaintiffs' claims rest on statements regarding "authentic"

25  interactions with Creators, they are too indefinite to be actionable. Plaintiffs cannot base a

26  fraud claim on a "vague and subjective" statement that is "not a specific and measurable

27  claim." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.

28  1999). Plaintiffs' claims rely on alleged representations about "foster[ing] authentic

relationships" and "authentic connections." (*See, e.g.*, Compl. ¶¶80, 82). These statements are non-actionable as a matter of law because they are "incapable of objective verification and not expected to induce reasonable consumer reliance." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F.Supp. 918, 931 (C.D. Cal. 1996); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (statements promising "[a]uthentic [t]radition" were too vague to be actionable).

### G.  Plaintiffs Fail to Plead UCL or FAL Claims

California's Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent business" practices, along with false advertising. Cal. Bus. & Prof. Code §17200. California's False Advertising Law ("FAL") prohibits "untrue or misleading" advertising statements that the speaker knows, or through "reasonable care" should know "to be untrue or misleading." *Id.* §17500. Here, Plaintiffs allege Fenix violated these statutes by: (1) promising Plaintiffs would be able to interact directly with Creators, when some Creators were working with agencies to manage their interactions; (2) violating CIPA; (3) committing fraud; and (4) purportedly failing to enforce the Terms to prevent Creators from misleading Fans regarding working with third parties. (Compl. ¶¶471-89.) Because these claims sound in fraud, they are subject to Rule 9(b)'s stringent pleading requirements. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

To the extent Plaintiffs' UCL and FAL claims are predicated on their fraud, deceit, and CIPA theories, the UCL and FAL claims fail because Plaintiffs' other claims fail. *Supra* §§II.D, F. Moreover, to the extent Plaintiffs' UCL claim is based on Fenix's alleged failure to "enforc[e] their policies and terms of service regarding the confidentiality of communications or ensuring the Creators are engaging in direct communications with the Fans" (Compl. ¶483(a)), that claim fails because it contradicts the Terms, which make clear Fenix "are under no obligation to monitor Content or detect breaches of the Terms," or ensure Creators are personally interacting with Fans, among other things. *Supra* §II.E. Having agreed to the Terms, Plaintiffs cannot now claim that it was unfair for Fenix not to detect breaches. *See Morton*, 2021 WL 1181753, at *5 (dismissing UCL claims where

20

social media platform terms of service "specifically disclaim[ed]" responsibility for actions by third parties using the platform).

## **CONCLUSION**

If it does not dismiss for forum non conveniens, the Court should dismiss the Complaint for lack of personal jurisdiction, failure to state a claim, or both.

DATED: October 25, 2024          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Jason D. Russell*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

21

1

## CERTIFICATE OF COMPLIANCE

2    The undersigned, counsel of record for Defendants Fenix International Limited and

3  Fenix Internet LLC, certifies that this brief contains 6,985 words, which complies with the

4  word limit of C.D. Cal. L.R. 11-6.1.

5

6

7  DATED: October 25, 2024       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8
                                  By:_____
9                                             *Jason D. Russell*
                                            JASON D. RUSSELL
10                                  *Attorneys for Specially Appearing Defendants*
                                  Fenix International Limited and Fenix Internet LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28