Oliver Rocos - State Bar No. 319059
    orocos@birdmarella.com
Barr Benyamin - State Bar No. 318996
    bbenyamin@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Moxy Management

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ÉLITE CREATORS LLC,<br><br>　　　　Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Filed Concurrently with [Proposed] Order<br><br>Date:　　January 30, 2025<br>Time:　　10:00 a.m.<br>Crtrm.:　10D<br><br>Assigned to Hon. Fred W. Slaughter |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 30, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Fred W. Slaughter, United States District Judge of the Central District of California, Southern Division, in Courtroom 10D, Defendant Moxy Management ("Moxy") will, and hereby does, move for an order dismissing the Class Action Complaint (the "Complaint") against Moxy pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for the following reasons:

**RICO And RICO Conspiracy** – Plaintiffs fail to state a RICO or RICO conspiracy claim because they have failed to allege the existence of a racketeering enterprise, do not plead that Moxy engaged in any conduct in furtherance of any such enterprise, or that Plaintiffs suffered recoverable damages.

**Video Privacy Protection Act** – Plaintiffs fail to state a claim under this statute because they fail to allege facts showing that Moxy is a video tape service provider within the meaning of the statute, that Moxy ever possessed any personally identifiable information covered by the statute, or that Moxy ever disclosed any such information outside of its ordinary course of business.

**California Invasion of Privacy Act and Electronic Communications Privacy Act** – Plaintiffs have failed to state claims under either of these statutes because they have not alleged that Moxy or any other defendant "tapped" or "intercepted" any communication and that even if that did occur, Plaintiffs and all other relevant individuals consented to any such interception.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the reply papers, the pleadings on file, and such other evidence and argument as the Court may receive. Pursuant to Local Rule 7-3, on October 18, 2024, counsel for Moxy met and conferred with counsel for Plaintiffs to discuss the grounds for its motion.

1    DATED:  October 25, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Oliver Rocos
Barr Benyamin
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By: _____

                Oliver Rocos
Attorneys for Defendant Moxy
Management

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

**Page**

Table of Contents.............................................................................................4

Table of Authorities .......................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES.........................................10

I.      INTRODUCTION ....................................................................................10

II.     LEGAL STANDARDS .............................................................................11

III.    PLAINTIFFS HAVE FAILED TO PLEAD A CIVIL RICO
        VIOLATION ........................................................................................12

        A.     Plaintiff Has Not Alleged Facts Showing A RICO Enterprise............12

               1.     Plaintiffs Have Plead The Alleged Enterprise Was Formed
                      Before Its Members *Even Existed* ................................................13

               2.     Plaintiffs Have Failed To Plead The Alleged Enterprise
                      Members Even Knew Each Other Existed ....................................13

               3.     Plaintiffs Have Failed To Plead Any Coordination....................14

               4.     Plaintiffs Have Failed To Plead A Common Purpose................16

               5.     The Alleged Members Of The Purported RICO Enterprise
                      Were Merely Acting In Their Self-Interest ................................17

        B.     Moxy Did Not Engage In Any Conduct In Furtherance Of The
               Alleged RICO Scheme ........................................................................18

               1.     Moxy Did Not Give Or Take Directions From Anyone ...........19

               2.     Plaintiffs Have Not Alleged Moxy Committed Any
                      Racketeering Act ........................................................................19

               3.     Allegedly Fraudulent Acts By OnlyFans Cannot Be
                      Imputed To Moxy........................................................................21

        C.     Plaintiffs Have Failed To Allege The Purported RICO Activity
               Caused Them Any Damages.................................................................22

IV.     PLAINTIFFS HAVE FAILED TO PLEAD A RICO CONSPIRACY ..........23

V.      MOXY COULD NOT AND DID NOT VIOLATE THE VPPA ...................24

        A.     Moxy Is Not Subject To The VPPA ......................................................24

        B.     Moxy Did Not Collect Any PII.............................................................25

        C.     Any Disclosure By Moxy Was Permitted Under The VPPA ..............26

4

VI.    PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF CIPA OR THE
       WIRETAP ACT ...............................................................................27

       A.    Plaintiffs Do Not Plead An "Intentional Wiretapping" Violation ........27

       B.    Plaintiffs Do Not Plead An "Interception" Violation ...........................28

       C.    Moxy Did Not Use Unlawfully Obtained Information Or Aid
             And Abet Or Conspire To Violate Section 631(a) .............................30

       D.    The Creator's Consent Is Fatal To Plaintiff's Wiretap Act Claim .......30

VII.   CONCLUSION ................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................31

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Federal Cases**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................11, 12, 16

5

6

*Blue Oak Med. Grp. v. State Comp. Ins. Fund,*
    809 F. App'x 344 (9th Cir. 2020)...........................................................19

7

8

*Canyon City v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008).................................................................23

9

10

*Chaset v. Fleer/Skybox Intern., LP,*
    300 F.3d 1083 (9th Cir. 2002)...............................................................22

11

12

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices and*
    *Products Liability Litigation,*
    295 F.Supp.3d 927 (N.D. Cal. 2018)......................................................17

13

14

*Clemons v. Waller,*
    82 F. App'x 436 (6th Cir. 2003).............................................................29

15

16

*Coronavirus Rep. v. Apple, Inc.,*
    85 F.4th 948 (9th Cir. 2023)..................................................................20

17

18

*Cruz v. FXDirectDealer, LLC,*
    720 F.3d 115 (2d Cir. 2013)..................................................................17

19

20

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (9th Cir. 2014)............................................................12, 13

21

22

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017).................................................................25

23

24

*Gardner v. Starkist Co.,*
    418 F. Supp.3d 443 (N. D. Cal. 2019)....................................................21

25

26

*Gomez v. Guthy-Renker, LLC,*
    2015 WL 4270042 (C.D. Cal. July 13, 2015) ..........................................18

27

28

*In re Google Assistant Privacy Litig.,*
    457 F. Supp. 3d 797 (N.D. Cal. 2020).....................................................27

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ................................................................29

*Heiting v. Taro Pharms. USA, Inc.*,
    2024 WL 1626114 (C.D. Cal. Apr. 2, 2024)........................................27, 28, 30

*Hernandez v. Chewy, Inc.*,
    2023 WL 9319236 (C.D. Cal. Dec. 13, 2023)........................................24

*In re Hulu Privacy Litig.*,
    2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)........................................25

*In re Jamster Mktg. Litig.*,
    2009 WL 1456632 (S.D. Cal. May 22, 2009) ........................................15, 17, 18

*Khalid v. Microsoft Corp.*,
    2023 WL 2493730 (9th Cir. Mar. 14, 2023) ........................................23

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ................................................................28

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................12

*Licea v. American Eagle Outfitters*,
    659 F.Supp.3d 1072 (C.D. Cal. 2023)....................................................28

*Marsh v. Zaazoom Sols., LLC*,
    2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ........................................28

*Martin v. Meredith Corp.*,
    657 F.Supp. 3d 277 (S.D.N.Y. 2023) ....................................................24

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................27

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................20

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) ................................................................14, 20

*In re Nickelodeon Consumer Privacy Litig.*,
    2014 WL 3012873 (D.N.J. July 2, 2014) ..............................................25, 26

7

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) (en banc) ................................................................ 15

*Oscar v. Univ. Students Co-op. Ass'n*,
    965 F.2d 783 (9th Cir. 1992) ................................................................ 12, 22

*Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ................................................................ 12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................ 18

*Rosen v. Duel*,
    2022 WL 18231777 (C.D. Cal. Nov. 23, 2022) ................................................................ 21

*Shaw v. Nissan North America*,
    220 F.Supp.3d 1046 (C.D. Cal. 2016) ................................................................ 15, 16

*Sihler v. Fulfillment Lab, Inc.*,
    2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) ................................................................ 18

*Sterk v. Redbox Automated Retail LLC*,
    770 F.3d 618 (7th Cir. 2014) ................................................................ 26

*Swarts v. Home Depot, Inc.*,
    689 F.Supp.3d 732 (N.D. Cal. 2023) ................................................................ 26, 30

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................................................ 18

*U.S. v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ................................................................ 14

*Uce v. Oral Aesthetic Advocacy Grp., Inc.*,
    2024 WL 3050720 (C.D. Cal. Feb. 23, 2024) ................................................................ 15, 17, 21, 23

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................ 12

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 29

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ................................................................ 19

8

*Wimo Labs LLC v. eBay Inc.*,
  2016 WL 11507382 (C.D. Cal. Jan. 28, 2016)..............................................14, 15

**Federal Statutes**

18 U.S.C.
  §1343 ...........................................................................................................19
  §1961(3)........................................................................................................13
  §1962(c)...................................................................................................13, 23
  §2511(2)(d)...................................................................................................30
  §2710(a)(2)...................................................................................................26
  §2710(a)(4)...................................................................................................24
  §2710(b)...................................................................................................24, 25
  §2710(b)(E)...................................................................................................26

**California Statutes**

Cal. Pen. Code
  §631(a)................................................................................................27, 28, 30

**Other Authorities**

Central Dist. of California, Local Rule 7-3 ........................................................2

Fed. Rule of Civ. Proc. 9(b)..................................................................19, 20

Fed. Rule of Civ. Proc. 12(b)(6) ........................................................11

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Moxy Management ("Moxy") is a management and consulting company formed in 2021 that provides services to individuals ("Creators") on the OnlyFans social media platform.  Compl. ¶¶ 170-173.  OnlyFans is an online subscription-based social media, content-sharing, and video-sharing platform that allows Creators to create, share, and monetize entertainment content offered to others ("Fans"), including the ability to direct message Creators' accounts.  *Id.* ¶¶ 8-9, 14.  Plaintiffs allege they are five individuals who wanted to experience the fantasy of having an intimate relationship with Creators by exchanging direct messages.  *Id.* ¶¶ 27-36, 241-314.  Plaintiffs concede that Creators have "subscriber bases so large" it would be "physically impossible for a single individual" to interact with Fans "on a direct personal basis." *Id.* ¶ 181.  Nonetheless, Plaintiffs claim they were somehow "duped" into thinking they were talking directly to Creators, when they allegedly were instead talking to "chatters" Moxy and the other defendant agencies (collectively, the "Agency Defendants") engaged to impersonate the Creators in direct message conversations.  *See, e.g.*, *id.* ¶¶ 248-250.  Apparently disappointed at learning their fantasy was just that, *a fantasy*, Plaintiffs attempt to monetize their disappointment through claims against OnlyFans and the Agency Defendants.  Each of those claims suffer from multiple fatal flaws.

**RICO and RICO Conspiracy** – The indispensable core of a civil RICO claim is the existence of an enterprise formed by the defendants, who coordinate in order to pursue a common purpose.  Yet, Plaintiffs not only allege that the supposed enterprise between OnlyFans, Moxy, and the Agency Defendants was formed *five years* before

---

[1]    To avoid repetition in light of the other contemporaneously filed motions, Moxy details the allegations relevant to the claims asserted against it in its argument sections herein.  Unless otherwise noted and for ease of reading, all citations and internal quotation marks are omitted from quoted material, and all emphasis is added.

Moxy was even incorporated, which clearly is impossible, but also fail to allege facts showing OnlyFans even knew Moxy (or any other Agency Defendant) existed, that any Agency Defendant knew any other Agency Defendant existed, that any supposed member of the enterprise ever has so much as a *single* communication with another member coordinating their purported RICO activities, or that the members even shared a common purpose. At their highest, Plaintiffs' allegations amount to nothing more than that the various defendants were acting independently of each other in pursuit of their own economic interests, which has never been held to constitute a RICO violation.

**Video Privacy Protection Act ("VPPA")** – The VPPA is limited to governing the non-business disclosure of personally identifying information ("PII") by videotape providers. Fatally, Plaintiffs nowhere allege facts showing Moxy is a videotape provider within the meaning of the VPPA, that it ever possessed any PII, or that any disclosure it *might* have made was outside of its ordinary course of business.

**California Invasion of Privacy Act ("CIPA") And Electronic Communications Privacy Act ("Wiretap Act")** – These claims fail because Plaintiffs nowhere allege that any Defendant tapped any wire or "intercepted" any communications. Mere *impersonation* of another, which is all Plaintiffs allege, is simply not actionable under either statute. And even if it was, Plaintiffs' Wiretap Act claims fails because the Creators consented to any such interception.

Plaintiffs' claims should be dismissed.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

11

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id*. at 664. Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## III.    PLAINTIFFS HAVE FAILED TO PLEAD A CIVIL RICO VIOLATION

The civil RICO statute was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992). As a consequence, to state a claim for a civil RICO violation a plaintiff must plausibly allege that the defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Plaintiffs' RICO scheme comprises nothing more than bare allegations that certain indirectly connected entities—who never communicated with one another—pursued economic gain in a manner that involved fraudulent statements. That has *never* been sufficient to plead a RICO scheme, and it is not sufficient now.

### A.    Plaintiff Has Not Alleged Facts Showing A RICO Enterprise

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" that violates the RICO statute. *United States v. Turkette*, 452 U.S. 576, 583 (1981). Accordingly, Plaintiffs are required to plead (1) "a common purpose," (2) "a structure or organization," and (3) "longevity

12

necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Plaintiffs allege the existence of a so-called "Content Fraud Enterprise" comprising OnlyFans, Moxy and the other Agency Defendants, and their "Represented Creators." Compl. ¶ 353. Far from pleading facts supporting that such an enterprise ever existed, Plaintiffs instead plead facts showing it did not.

### 1. Plaintiffs Have Plead The Alleged Enterprise Was Formed Before Its Members *Even Existed*

The most emblematic of Plaintiffs' failures to plead a RICO enterprise is their allegation that it "has been ongoing since approximately 2016," because that date was *four years before any Agency Defendant even existed*. *Id.* ¶ 369. The very first Agency Defendant was incorporated in March 2020, and the remainder (including Moxy) were incorporated thereafter. *Id.* ¶¶ 46-52 (alleging Unruly Agency, Dysrpt Agency, Behave Agency, and Content X formed in 2020; Moxy, A.S.H. Agency, Verge Agency, and Boss Baddies formed in 2021; and Elite Creators formed in 2022). It clearly is not possible for a RICO enterprise to have existed *before* its members existed. *See* 18 U.S.C. 1962(c) (requiring existence of a "person" for RICO liability); 18 U.S.C. 1961(3) ("'person' includes any individual or entity capable of holding a legal or beneficial interest in property").[2] Plaintiffs' enterprise allegations thus fails the most elementary of hurdles.

### 2. Plaintiffs Have Failed To Plead The Alleged Enterprise Members Even Knew Each Other Existed

Plaintiffs' allegations regarding the existence of the purported RICO enterprise

---

[2]   To the extent Plaintiffs argue the enterprise existed prior to 2020 between OnlyFans and the Creators the Agency Defendants now allegedly represent, they have failed to allege any supporting facts. Plaintiffs have not, for example, alleged that Creators used chatters without Agency Defendants, nor have they alleged any fraudulent act prior to 2020. *See* Compl. ¶ 376 (alleging OnlyFans's predicate acts began in 2021).

*after* the Agency Defendants were at least incorporated fare no better, because they fail even to plead facts showing that OnlyFans knew the Agency Defendants—not just agencies in general—existed, or that the Agency Defendants knew each other existed.

As to OnlyFans's knowledge of the Agency Defendants, Plaintiffs generally allege that OnlyFans knew content creators could use agencies. Compl. ¶¶ 126, 136. But the sole factual allegation to support Plaintiffs' conclusory assertion that OnlyFans was "aware of Agency Defendants" *in particular* (*id.* ¶ 362) is an allegation that in July 2023 *one* of the Agency Defendants collaborated with OnlyFans (*id.* ¶ 6 (alleging event with Creators Inc.)). The mere fact that OnlyFans knew *one* Agency Defendant existed in 2023 says nothing about whether it had formed a RICO enterprise with the *different* agency Moxy. Indeed, the allegation that OnlyFans knew of Creators Inc. says nothing about whether OnlyFans knew Moxy (or any other Agency Defendant) existed at any time before this action was filed. If OnlyFans did not know Moxy existed, it plainly cannot have been in a RICO enterprise with it. *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *4 (C.D. Cal. Jan. 28, 2016) (RICO claim failed where there were no allegations the alleged enterprise members "were even aware of one another's existence as participants in a scheme to defraud.").

As to the Agency Defendants' knowledge of each other, the Complaint is totally silent. Not once do Plaintiffs allege *any* facts supporting that any Agency Defendant knew any other Agency Defendant existed. Again, persons cannot form a RICO enterprise with members they do not know exist. *Id.*; *see also U.S. v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (defendant can only participate in RICO scheme where it is "aware of the essential nature and scope of the enterprise").

### 3.    Plaintiffs Have Failed To Plead Any Coordination

Plaintiffs' failure to plead facts supporting that any alleged member of the purported RICO enterprise knew any other member existed also precludes them from having alleged the necessary "evidence of an ongoing organization, formal or

14

informal, and evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc).

Recognizing that they must plead coordination, Plaintiffs allege in a conclusory manner at Paragraph 370 of the Complaint the existence of supposed "financial ties and coordination of activities between the OnlyFans Defendants and the Agency Defendants." *See also* Compl. ¶ 379 (alleging in conclusory manner various supposed "communications"). Fatally, however, *nowhere* in the 489-paragraph Complaint do Plaintiffs allege any facts to support that any such communications ever happened. Indeed, Plaintiffs do not allege so much as a *single* communication between *any* of the alleged members of the enterprise, whether between OnlyFans and an Agency Defendant or between any Agency Defendants. Without such factual allegations, Plaintiff has failed to meet its pleading burden. *See, e.g.*, *Shaw v. Nissan North America*, 220 F.Supp.3d 1046, 1057 (C.D. Cal. 2016) (RICO claim dismissed where plaintiff failed to allege facts supporting coordination); *Wimo Labs*, 2016 WL 11507382 at *4 (absence of allegations of coordination between alleged enterprise members meant "Plaintiff fail[ed] to allege any facts suggesting that they combined as an enterprise in furtherance of a fraudulent or unlawful purpose"); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (merely alleging defendants were a part of a fraud insufficient to plead that purported enterprise members "work[ed] together to achieve" a common purpose).

As to the supposed "financial ties," at *best,* Plaintiffs have alleged only that each Agency Defendant has an indirect relationship with OnlyFans, through which they each earn money. But such bare allegations are, again, insufficient to plead coordination under the RICO statute. *Uce v. Oral Aesthetic Advocacy Grp., Inc.*, 2024 WL 3050720, at *7 (C.D. Cal. Feb. 23, 2024) (mere fact that different defendants had some economic relationship to a single entity that allegedly engaged in fraudulent activity insufficient to allege a RICO enterprise).

Indeed, far from alleging coordination between OnlyFans and the Agency

15

Defendants to facilitate a fraudulent scheme, Plaintiffs repeatedly allege that OnlyFans had policies *against* the Agency Defendants and their alleged use of chatters.  Specifically, Plaintiffs allege that "None of what agencies (including Agency Defendants) are doing to perpetuate the Chatter Scams is actually 'allowed' by OnlyFans' 'Terms of Service'" (Compl. ¶ 151) and that OnlyFans "policies contain specific terms" that "prohibit Creators from allowing anyone else to even access their accounts," such as chatters (*id.* ¶ 126).  These allegations that OnlyFans and the Agency Defendants were at odds directly contradict Plaintiffs' conclusory allegation that they were acting in a coordinated manner and doom their RICO claim.  *Shaw*, 220 F.Supp.3d at 1057 (plaintiff failed to plead coordination where RICO enterprise members took steps that conflicted with the alleged common purpose).

In the absence of any factual allegations supporting any coordination whatsoever, Plaintiffs have alleged only that "purported enterprise members acted independently and without coordination," which the Supreme Court has conclusively held is "insufficient to adequately plead a RICO enterprise." *Boyle v. U.S.*, 556 U.S. 938 at 947 n.4 (2009).

### 4.    Plaintiffs Have Failed To Plead A Common Purpose

Plaintiffs also have failed to allege facts sufficient to show that the Defendants even *could* have shared the supposed "common purpose" of using "chatters to extract Premium Content Fees from Plaintiffs and Class Members," let alone facts to show that they actually did.  Compl. ¶ 354.

In particular, while Plaintiffs allege that OnlyFans is the central player in the purported RICO enterprise because it represented to Plaintiffs that they could "direct message" Creators and "build 'genuine' and 'authentic' connections," (*id.* ¶¶ 355-357), they concede that, at best, their allegations merely "support[] an inference that OnlyFans is aware of the Chatter Scams." *Id.* ¶ 125.  Plaintiffs' admitted inability to plead facts showing that OnlyFans actually *knew* of the alleged "Chatter Scams" precludes them from having plead that OnlyFans, Moxy, and the other Agency

16

Defendants shared the "common purpose" of using that alleged scam to make money.[3] *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (RICO claim failed where participants "generally were unaware of [alleged] deceptive practices"); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 ("At a minimum, Plaintiffs must set forth particularized allegations that [Defendants] had the common purpose of increasing their revenues by fraudulent means."). Plaintiffs certainly cannot establish this key element of its RICO claim merely "on information and belief". *Uce*, 2024 WL 3050720, at *7.

The absence of a common purpose is further supported by Plaintiffs' characterization of OnlyFans as having merely "overlooked or permitted" (Compl. ¶ 98) or "willfully ignored" (*id.* ¶ 147) agencies and chatters, rather than it having undertaken some affirmative action to facilitate their alleged use. Allegations of mere permitting the activity of others fall far short of showing a "common purpose" among the RICO enterprise participants. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices and Products Liability Litigation*, 295 F.Supp.3d 927, 983 (N.D. Cal. 2018) (merely "failing to stop illegal activity[ ] is not sufficient" to show a common purpose); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (without supporting facts, plaintiffs' mere allegation that defendants were "fraudulently collecting monies" insufficient to plead a common purpose).

### 5. The Alleged Members Of The Purported RICO Enterprise Were Merely Acting In Their Self-Interest

The consequence of Plaintiffs' failures to plead facts showing that (1) a RICO enterprise *could* have existed in 2016 when it allegedly began, (2) the various Defendants even knew each other existed, (3) the Defendants *ever* communicated or coordinated in any manner, and (4) they had a common purpose, is that they have

---

[3]  OnlyFans's policies against agencies only further support the absence of a common purpose. *See* Section III.A.3, *supra*.

necessarily plead only that each Defendant was acting independently and in their own economic interest.  "Courts have overwhelmingly rejected" attempts by plaintiffs to "characterize routine commercial relationships" as a RICO enterprise, and this Court should do the same.  *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

While Plaintiffs allege that the RICO enterprise existed for "the common purpose of fraudulently increasing the amount and number of Premium Content Fees each Fan pays" (Compl. ¶ 368), courts routinely reject RICO claims that do nothing more than describe routine business activity as "fraudulent."  *See, e.g.*, *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (dismissing RICO claim because "[w]ithout the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose").  Indeed, Plaintiffs do little more than characterize Moxy's entire business as a fraud perpetrated through a RICO enterprise.  Merely "alleg[ing] no more than that Defendants' primary business activity . . . was conducted fraudulently" is, too, insufficient to state a RICO claim. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (dismissing RICO claim that alleged that defendants' business was operated fraudulently); *see also Sihler v. Fulfillment Lab, Inc.*, 2020 WL 7226436, at *12-13 (S.D. Cal. Dec. 8, 2020) (merely identifying business transactions, even those that show fraud occurred, is not sufficient to plead a RICO claim).

### B.    Moxy Did Not Engage In Any Conduct In Furtherance Of The Alleged RICO Scheme

RICO liability requires that "the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).  In evaluating whether a defendant had some part in directing the affairs of the enterprise, the Ninth Circuit has considered whether that defendant (1) gave or took directions; (2) occupied a

18

position in the "chain of command" through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal. *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Plaintiffs have not come close to pleading that Moxy took any act that rose to this level.

### 1. Moxy Did Not Give Or Take Directions From Anyone

As set forth above, there is no allegation that Moxy ever communicated with OnlyFans or the other Agency Defendants. *See supra* Section III.A.3. As a consequence, it simply cannot have done anything to direct or participate in the conduct of the enterprise's affairs. *Walter*, 538 F.3d at 1249 (although plaintiff had shown defendant was "involved" in enterprise, RICO claim nonetheless failed due to absence of allegations showing defendant "had some part in directing its affairs").

### 2. Plaintiffs Have Not Alleged Moxy Committed Any Racketeering Act

Plaintiffs' RICO claim is based on alleged wire fraud under 18 U.S.C. § 1343. Compl. ¶ 374. Plaintiffs fail, however, to plead Moxy engaged in any such fraud at all, let alone with the degree of particularity required under F.R.C.P. 9(b). *Blue Oak Med. Grp. v. State Comp. Ins. Fund*, 809 F. App'x 344, 345 (9th Cir. 2020).

The *only* alleged fraudulent acts by Moxy in particular are alleged "communications through the internet to Plaintiffs and Class Members" by chatters, "falsely representing they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees." Compl. ¶ 378. Specifically, Plaintiffs allege that they paid money to subscribe to the accounts of four Moxy-affiliated Creators: i) Plaintiff B.L. subscribed to Briana Armbruster on November 28, 2023; ii) Plaintiff S.M. subscribed to Kaitlyn Krems and Breckie Hill in 2023; and iii) Plaintiff R.M. subscribed to Chyanne Burden on July 16, 2020. *Id.* These allegations do not satisfy Plaintiffs' burden to show fraud with specificity.

As a threshold matter, Plaintiffs allege that Moxy represented these four

19

creators "on information and belief," which is insufficient as a matter of law. *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 540 (9th Cir. 1989) ("allegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)."). Plaintiffs do not allege facts supporting that professed belief. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) ("[A]llegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded."). Indeed, Plaintiffs allegations are demonstrably *false* in at least one respect—Moxy cannot have represented Chyanne Burden in 2020 (Compl. ¶ 378o.) because it was not formed until 2021 (*id.* ¶ 47).

Further, Plaintiffs do not allege any facts to support that Moxy, or chatters it engaged, ever actually "falsely represent[ed] they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees" as Plaintiffs broadly allege. *Id.* ¶ 378. The closest Plaintiffs come is alleging that *one* Plaintiff, S.M., "confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and *they all said* it was them replying to messages and/or denied using chatters."[4] *Id.* ¶ 290. But that allegation lacks the minimum required "who, what, when, where, and how" of an alleged misrepresentation to support a fraud claim. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). More fundamentally, however, there is no allegation that any such response by Kaitlyn Krems and Breckie Hill (the two Moxy-affiliated Creators) were false at the time they were made, *i.e.*, that the response was from a chatter or that they used chatters. In fact, Plaintiffs have plead themselves out of being able to argue that such

---

[4] There is *no allegation anywhere* any Creator allegedly affiliated with Moxy other than Kaitlyn Krems and Breckie Hill ever represented to any Plaintiff other than S.M. that they were the individuals talking to a Plaintiff and not a chatter, or that they denied using chatters. Accordingly, no other Plaintiff has alleged any fraudulent conduct by Moxy.

communications must have been false by alleging only that "agencies contract with chatters to conduct *most*, if not all, of the communications between the Creators and the Fans." Compl. ¶ 102. Indeed, even the allegation that Moxy operated the accounts of its affiliated Creators is insufficiently made "[o]n information and belief." *Id.* ¶ 101. Plaintiffs have simply failed to allege, whether adequately or at all, any fraud by Moxy or its affiliated Creators at any time.

While Plaintiffs allege a range of other supposed "fraudulent" acts, their failure to allege any specifics regarding such acts precludes them from being able to rely on such acts in support of their RICO claim. Compl. ¶ 379 (listing alleged acts undertaken by "Defendants" generally); *Coronavirus Rep.*, 85 F.4th at 958.

### 3. Allegedly Fraudulent Acts By OnlyFans Cannot Be Imputed To Moxy

Finally, even assuming for the sake of argument that Plaintiffs have sufficiently plead that OnlyFans misrepresented that all communications were authentically with creators and not chatters (Compl. ¶ 376), Plaintiffs have failed to show that such conduct should be imputed to Moxy.[5]

Courts are clear that the mere performance of legitimate business activities that *another* might use in a fraudulent manner is not sufficient to constitute conduct in furtherance of a RICO enterprise. *See Gardner v. Starkist Co.*, 418 F. Supp.3d 443, 461 (N. D. Cal. 2019) (the fact that the *seller* of canned tuna misrepresented that it was dolphin safe did not mean that the fisherman, importers, storage, canning and processing entities were part of fraudulent scheme and they had not engaged in any

---

[5] For the avoidance of doubt, Plaintiffs have not shown that OnlyFans' alleged misrepresentations were actionable. Any representation that communications with a Creator were "authentic" are tantamount to a statement of quality made in a sales pitch, which is non-actionable puffery. *Rosen v. Duel*, 2022 WL 18231777, at *7 (C.D. Cal. Nov. 23, 2022). The puffery nature of the alleged communications is supported by Plaintiffs' concession that Creators have "subscriber bases so large" that it would be "physically impossible for a single individual" to interact with Fans "on a direct personal basis." *Id.* ¶ 181.

RICO conduct); *Uce*, 2024 WL 3050720, at \*7 (alleged members of RICO scheme did not commit RICO conduct where they "simply perform[ed] services for the enterprise").  Accordingly, the mere allegation that it was Moxy's engagement of chatters that made OnlyFans' alleged misrepresentation of authenticity untrue is not sufficient to show actionable RICO conduct by Moxy.

### C.    Plaintiffs Have Failed To Allege The Purported RICO Activity Caused Them Any Damages

Finally, in order to plead a RICO claim a Plaintiff must allege that the RICO scheme caused them to suffered "concrete financial loss."  *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) (en banc).  Plaintiffs allege the harm they suffered due to the RICO scheme was money they spent on "Premium Content Fees," including paying more than they would have spent had they known about chatters, and their "lost expectation" of speaking directly with Creators.  Compl. ¶¶ 390-394.  But the mere "lost expectation" of talking to Creators rather than a chatter is not a compensable harm under the RICO statute.  *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002).  And Plaintiffs have failed to allege facts showing they suffered any financial harm as a result of the alleged scheme.

*First*, Plaintiffs do not specifically allege N.Z. or A.L. spent *any* Premium Content Fees on Moxy-affiliated Creators (or any other Creators).  Compl. ¶ 378.  Their RICO claims thus fail.

*Second*, the remaining Plaintiffs allegedly paid "Premium Content Fees" to Moxy-affiliated Creators Briana Armbruster, Kaitlyn Krems, Breckie Hill, and Chyanne Burden.  *Id.*  But while Plaintiffs' RICO claim is based on their allegation that they were talking to chatters and not Creators, they do not define (or limit) "Premium Content Fees" as money spent in order to speak to Creators.  Instead, and fatally, that term comprises "Subscription Fees, PPV Charges, and Creator Tips"— *i.e.*, all the fees Plaintiffs spent on any content for any reason, not solely for talking to Creators.  *Id.* ¶ 74.

Plaintiffs have not and cannot allege that they only paid Subscription Fees in order to talk to a Creator directly, because they affirmatively plead those fees unlocked access to a Creator's entire account and certain desirable content. *See, e.g., id.* ¶ 378n. (alleging S.M. subscribed to Breckie Hill to become a VIP subscriber and was disappointed when the content he received was not as explicit as he had hoped). And Plaintiffs certainly *did not* pay those subscription fees for the purpose, or at least the sole purpose, of talking to Creators, because some Plaintiffs *are still subscribed to Creators* despite alleging chatters operate their accounts. *See, e.g., id.* ¶ 378o. (alleging R.M. is still subscribed to Chyanne Burden). Similarly, PPV charges are for "Pay-Per-View" content, *i.e.*, explicit pictures, and Plaintiffs affirmatively allege that it is these PPV charges that comprise the lion's share of the Premium Content Fees. *Id.* ¶ 109. But PPV charges are irrelevant because Plaintiffs (1) do not allege any supposed RICO activity regarding PPV content, and (2) do not allege that the PPV content was fraudulent in any way (it was not).[6] *Id.* ¶¶ 355-358. Finally, Plaintiffs allege that so-called "Creator Tips" were paid for a multitude of reasons *other than* because they believed they were talking to a Creator and not a chatter. *Id.* ¶ 70.

Because the alleged Premium Content Fees purportedly were paid for reasons *other than* to talk directly with Creators, Plaintiffs have failed to plead their alleged financial harm either happened or was caused by the alleged RICO activity. *Canyon City v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 980-81 (9th Cir. 2008) (RICO claim dismissed where Plaintiff failed to plead the alleged RICO activity, rather than other acts, caused it any financial loss).

## IV.    PLAINTIFFS HAVE FAILED TO PLEAD A RICO CONSPIRACY

The law is settled that where a plaintiff fails to plead a RICO claim, they necessarily also fail to plead a RICO conspiracy claim under 18 U.S.C. § 1962(c).

---

[6]    The only alleged PPV content provided by an alleged Moxy-affiliated creator was a bikini picture of Kaitlyn Krems. *Id.* ¶ 378m. Plaintiff complains it was not as explicit as hoped, not that it was fraudulent. *Id.*

1  *Khalid v. Microsoft Corp.*, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023)

2  ("Because [plaintiff] failed to state a RICO claim . . . he also failed to state a RICO

3  conspiracy claim").  Accordingly, this claim also fails.

4  **V.    MOXY COULD NOT AND DID NOT VIOLATE THE VPPA**

5      **A.    Moxy Is Not Subject To The VPPA**

6      Only a "video tape service provider" can be liable under the VPPA.  18 U.S.C.

7  § 2710(b) (prohibiting acts by "[a] video tape service provider").  A "video tape

8  service provider" is defined as "any person, engaged in the business, in or affecting

9  interstate or foreign commerce, of rental, sale, or delivery of prerecorded video

10  cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Plaintiffs'

11  conclusory allegation that "[e]ach of the Agency Defendants is engaged in the

12  business of selling and/or delivering audiovisual materials as the agent or

13  representative of the Represented Creators" (Compl. ¶ 409) is insufficient as a matter

14  of law.

15      As an initial matter, Plaintiffs allege Moxy's business is to manage the accounts

16  of its affiliated Creators and its primary activity is to facilitate chatters.  *Id.* ¶¶ 170-

17  178.  Plaintiffs nowhere allege that delivering video content is even a significant part

18  of Moxy's business, let alone a "central" part as the VPPA requires.  *Hernandez v.*

19  *Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023) ("[C]ourts in the

20  Ninth Circuit have recognized consistently that delivering video content must be

21  central to the defendant's business or product for the VPPA to apply.")

22      Further, the Complaint nowhere alleges that Moxy *in particular* ever provided

23  any audiovisual materials to any Plaintiff.  Plaintiffs' generalized allegations that

24  certain of them "viewed videos sent to [them] via direct message through Creators'

25  accounts—some of which [they] had specifically requested" is insufficient to show

26  that Moxy itself, rather than some other Agency Defendant, ever provided such

27  materials.  Compl. ¶¶ 259, 274, 287, 305; *Martin v. Meredith Corp.*, 657 F.Supp. 3d

28  277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim because the "handful of

generalized allegations saying [defendant] shares video titles" with third parties were unsupported by "specific allegations").

Finally, the only material any allegedly Moxy-affiliated Creator sent to any Plaintiff was a single photograph sent by Kaitlyn Krems to Plaintiff S.M.  Compl. ¶ 378m.  Because a photograph plainly does not constitute a videotape "or similar audio visual materials," that allegation does not support that Moxy is a videotape service provider even capable of breaching the VPPA.

### B.    Moxy Did Not Collect Any PII

The VPPA prohibits the "knowing[] disclos[ure], to any person, personally identifiable information [("PII")] concerning any consumer" of the video tape service provider.  18 U.S.C. § 2710(b).  The VPPA limits PII to "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior" and it must include "some information that can be used to identify an individual."  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (citing 18 U.S.C. 2710(a)(3)).  PII *does not* include "information" that "*cannot* identify an individual unless it is combined with other data" through a method "an ordinary person could not use."  *Id.* at 986.  As a consequence, "anonymous usernames" alone are not PII because they do not "identify an actual, identifiable person and link that person to a specific video choice."  *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *12 (D.N.J. July 2, 2014); *see also In re Hulu Privacy Litig.*, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) (disclosing "a unique identifier— without more—[does not] violate[]" VPPA).

Here, Plaintiffs' failure to plead that anyone ever asked for any videos from any Moxy-affiliated Creator precludes Plaintiffs from having alleged that Moxy ever possessed any PII that it even *could* have wrongfully disclosed under the VPPA.  And even if someone *had* ordered a video from a Moxy-affiliated Creator, Plaintiffs admit that the only information disclosed to chatters was the Fans' "communication

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

history," which displays only "the Fan's username" and not their real name.[7]  Compl. ¶¶ 406-08.  Indeed, Plaintiffs concede that while a "username" can be used to "view the Fan's profile on OnlyFans," usernames are "pseudonyms as a matter of course… to remain anonymous."  *Id.* ¶¶ 26, 407; *see Nickelodeon*, 2014 WL 3012873, at *12 (holding ordinary person could not use "anonymous information about home computers, IP addresses, anonymous usernames, even a user's gender and age… to identify an actual, identifiable person").

Accordingly, Plaintiffs have failed to allege that Moxy ever even possessed any PII that it even *could* have disclosed in violation of the VPPA.

**C.    Any Disclosure By Moxy Was Permitted Under The VPPA**

Finally, even if Moxy was subject to the VPPA and both possessed and disclosed PII, its disclosure would be lawful so long as it occurred in the "ordinary course of business."  18 U.S.C. 2710(b)(E).  Under the VPPA, the "ordinary course of business" includes "order fulfillment [and] request processing."   18 U.S.C. 2710(a)(2).

Here, Plaintiffs fatally concede that chatters "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content" and disclose information to Moxy and/or the Creator for the purpose of fulfilling the request.[8]  Compl. ¶ 110a.-b.  That is perfectly lawful.  *Sterk v. Redbox Automated Retail LLC*, 770 F.3d 618 (7th Cir. 2014) (VPPA was not violated where disclosure was a part of defendant's "ordinary course of business" of fulfilling orders and processing requests).

---

[7]    The only Defendant that allegedly collected information such as email addresses and telephone numbers was OnlyFans.  Compl. ¶ 406.

[8]    Plaintiffs' conclusory allegations that Moxy's supposed disclosures were not "in the ordinary course of business but were done for the purpose of illegal and fraudulent conduct" is insufficient under basic pleading standards.  Compl. ¶ 420.  There also is no allegation that Moxy committed any fraud when transmitting any videos.

## VI. PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF CIPA OR THE WIRETAP ACT

Courts routinely and consistently hold that—with one exception noted below—claims for violation of CIPA and the Wiretap Act are subject to the same analysis. *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 747 (N.D. Cal. 2023) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").  These claims thus fail for the same reasons.

Section 631(a) contains "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities," but also includes a fourth potential basis of liability (4) for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other three bases for liability.  *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).  Although Plaintiffs fail to specify which of these clauses Moxy allegedly violated, they fail to state a claim under any.

### A. Plaintiffs Do Not Plead An "Intentional Wiretapping" Violation

The first clause of Section 631(a) imposes liability on "[a]ny person who . . . intentionally taps, or makes any unauthorized connection . . .with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system."  Cal. Pen. Code § 631(a).  Courts have strictly construed the "telegraph or telephone" component as requiring the use of telegraph or telephone wires.  *See, e.g.*, *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) ("The first clause expressly requires that the unauthorized connection be made with any telegraph or telephone wire, line, cable, or instrument."); *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *7 n.8 (C.D. Cal. Apr. 2, 2024) ("[T]he first clause of Section 631(a) does not apply to

27

internet communications.").

Plaintiffs nowhere allege that Moxy, or any other Defendant, tapped their communications using telegraph or telephone wires, and thus fail to plead a claim under Section 631(a)'s wiretapping clause.

## B.    Plaintiffs Do Not Plead An "Interception" Violation

CIPA expressly requires that the wrongful act complained of under Section 631(a)'s second clause is the learning of a communication "*while the same is in transit.*" Cal. Pen. Code § 631(a). Similarly, the Wiretap Act requires that a message be "intercept[ed]." 18 U.S.C. § 2511(1). In both such cases, therefore, a Plaintiff must plead facts showing interception in order to state a claim. *Heiting*, 2024 WL 1626114, at *8 ("To state a claim under [CIPA], a plaintiff must allege facts demonstrating the statute's 'in transit requirement' has been met."); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) ("[F]or a website such as Konop's to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage."). Plaintiffs have not done so.

Plaintiffs affirmatively plead that Creators engage agencies such as Moxy, who "operate[] all aspects of the Creator's account" and "contract with chatters to conduct most, if not all, of the communications between the Creators and the Fans" such that "[w]ithout the Fans knowledge, the chatters *impersonate the Creators when direct messaging with Fans.*" Compl. ¶¶ 101-02. The chatters can read messages because they have "direct access to the Creator's OnlyFans account." *Id.* ¶ 110a. These admissions are fatal to their CIPA and Wiretap Act claims, because the reading of a message after it has reached the intended recipient's inbox *is not an interception*. *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (no interception where "Defendants did not stop, seize, or interrupt a communication in progress before arrival to its intended destination"); *Konop*, 302 F.3d at 878 (no "interception" where message was read after it had arrived at its intended destination). Plaintiffs' generalized allegation that "interception included the real-time acquisition

28

of messages, images, and other electronic communications by chatters," (Compl. ¶ 437) is insufficient to save their claims absent any supporting facts.[9]  *Licea v. American Eagle Outfitters*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. 2023) (dismissing CIPA claim because "Plaintiff does not allege sufficient facts as to *how* and *when* the third party receives the communications" and it "must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing Wiretap Act claim fair failure to "provide fair notice to Defendants of when they believe [Defendant] intercepts their communications.")).

Plaintiffs' claims necessarily fail because merely *impersonating* an individual is not a violation of the Wiretap Act or (impliedly) CIPA.  In *Clemons v. Waller*, 82 F. App'x 436 (6th Cir. 2003) the plaintiff alleged that defendant had violated the Wiretap Act when it had impersonated him in a telephone call with his telephone provider and thereby obtained his phone records. *Id.* at 440.  The court noted that it did "not dispute that utilizing false pretenses to secure information is proscribed in certain areas of the law," but went on to hold "that impersonating an intended recipient of a communication does not violate the federal wiretap act." *Id.* at 441 (citing *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) ("We believe that impersonation of the intended receiver is not an interception within the meaning of the [Wiretap] statute.")).  The Third Circuit has joined the Sixth and Seventh Circuit.  *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) (agreeing that "[b]y citing *Pasha* [when passing the Wiretap Act], Congress strongly intimated that one who impersonates the intended receiver of a communication may still be a party to that communication for the purposes of the federal wiretap statute

---

[9]  Notably, this conclusory allegation appears only with respect to Plaintiffs' Wiretap Act claim.  Plaintiffs do not even attempt to allege interception in their CIPA claim. Compl. ¶¶ 423-34.

and that such conduct is not proscribed by the statute."). Simply put, the Wiretap Act and (impliedly) CIPA were not designed to capture the impersonation conduct about which Plaintiffs complain.

### C. Moxy Did Not Use Unlawfully Obtained Information Or Aid And Abet Or Conspire To Violate Section 631(a)

Plaintiffs' failure to state a claim under Section 631(a)'s wiretapping and interception clauses against Moxy or any of the other defendants forecloses them from being able to plead a claim under Section 631(a)'s third clause. *Heiting*, 2024 WL 1626114, at *7 ("[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)."). It further precludes them from being able to plead a claim under the final clause of that section. *Swarts*, 689 F.Supp.3d at 746 (dismissing claim under Section 631(a)'s fourth clause where "plaintiff failed to adequately allege interception within the meaning of the statute").

### D. The Creator's Consent Is Fatal To Plaintiff's Wiretap Act Claim

Finally, Plaintiffs' Wiretap Act claim fails for the additional and independent reason that it is a one-party-consent statute, expressly allowing a third party to intercept a communication if a single party to the communication permits it. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication . . . *where one of the parties to the communication has given prior consent to such interception*.").

Plaintiffs concede that Moxy, "[w]orking in partnership with their Creators— and *always with full permission and authority from those Creators, as their agents*— . . . contract with chatters to conduct most, if not all, of the communications between the Creators and the Fans." Compl. ¶ 102. Thus, even if Moxy *had* intercepted communications between Plaintiffs and Creators, that interception was lawful under the Wiretap Act because the Creators had consented.

## VII. CONCLUSION

For those reasons, Plaintiffs' Complaint against Moxy should be dismissed.

30

1

2 DATED: October 25, 2024  Oliver Rocos

3              Barr Benyamin

4              Bird, Marella, Rhow,
               Lincenberg, Drooks & Nessim, LLP

5

6

7          By: _____

8              Oliver Rocos
              Attorneys for Defendant Moxy

9              Management

10

11

12      **CERTIFICATE OF COMPLIANCE**

13

14    The undersigned, counsel of record for Defendant Moxy Management, certifies

that this brief contains 6,989 words, which complies with the word limit of C.D. Cal.

15

16 L.R. 11-6.1.

17

18 DATED: October 25, 2024  Oliver Rocos
               Barr Benyamin

19              Bird, Marella, Rhow,
               Lincenberg, Drooks & Nessim, LLP

20

21

22          By: _____

23              Oliver Rocos
              Attorneys for Defendant Moxy

24              Management

25

26

27

28

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF