Nithin Kumar (SBN 300607)
    nithin@kingfisherlawapc.com
KINGFISHER LAW APC
P.O. Box 492415
Los Angeles, California 90024
T: (408) 930-3580

Attorneys for Defendant Content X, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>       Plaintiff,<br><br>     vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>       Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**DEFENDANT CONTEXT X, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**<br><br>Judge:  Hon. Fred W. Slaughter<br>Dept.:   10D<br>Date:   January 30, 2025<br>Time:  10:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on January 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Fred W. Slaughter, United States District Court Judge, in Courtroom 10D of the United States District Court for the Central District of California, Southern Division, 411 West 4th Street, Los Angeles, California, 90012, Defendant Content X, Inc. ("Content X") will and hereby does move this Court for entry of an Order dismissing the claims asserted against Content X in the Complaint filed by Plaintiffs N.Z., R.M. B.L., S.M., and A.L. (collectively, "Plaintiffs"). This Motion to Dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and is made on the ground that each of the causes of action asserted against Content X fails to state a claim upon which relief may be granted.

   This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 18, 2024.

   This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Motion.


DATED:  October 25, 2024          KINGFISHER LAW APC


                              By:  _____
                                        */s/ Nithin Kumar*
                                       Nithin Kumar
                              Attorneys for Defendant Content X, Inc.

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ……………………………….………..    1

II.    ALLEGATIONS RELEVANT TO CONTENT X……………………    2

III.    LEGAL STANDARD...………………………………………………    2

IV.    DISCUSSION……………………………………………………    3

    A.    The RICO Claims Against Content X Should Be Dismissed ………    3

        1.    Plaintiffs Fail to Plead the Existence of a RICO Enterprise ……    4

            a.    The Complaint Contains No Allegations of Coordination or Cooperation Required to Establish an Associated-in-Fact Enterprise under RICO…………………………...    5

            b.    The Complaint Does Not Establish that Defendants Acted in Furtherance of a Common Purpose……………………    8

        2.    The Complaint Fails to Allege Any Participation by Content X in the Alleged Racketeering Activity …………………………..    9

        3.    The Complaint Does Not Establish a Section 1962(d) Violation    11

        4.    Other Grounds for Dismissing RICO Claims ………….…..……    11

    B.    The VPPA Claim Against Content X Must Be Dismissed ...………..…    12

        1.    Content X Is Not a Video Tape Service Provider and PlaintiffsAre Not Consumers of Content X's Services ………..    12

        2.    The Complaint Does Not Allege Any Information Meeting the VPPA's Definition of Personally Identifiable Information ……    14

        3.    The Complaint Does Not Allege Any Disclosure of VPPA PII...    15

    C.    The Federal Wiretap Act and California Invasion of Privacy Act Claims Are Fatally Flawed……..…..…..…..…..……..……    15

IV.    CONCLUSION ……………………………………………………    17

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

The Court should reject Plaintiffs' ill-conceived attempts to apply several inapposite federal statutes to the conduct alleged in their Complaint.  The Court should dismiss each of the five causes of action asserted in the Complaint against defendant Content X, Inc. ("Content X").

As explained herein, Plaintiffs' allegations regarding the use of alleged "chatter services"—which Content X accepts as true solely for the purposes of this Motion—do not adequately allege a single claim against Content X—an alleged "Agency Defendant" that represented various "Creators" on the OnlyFans platform. Compl. ¶ 44.

*First*, the first and second causes of action under the RICO Act should be dismissed for a myriad of reasons, including that Plaintiffs fail to allege any connection whatsoever between the Agency Defendants, much less a coordinated RICO enterprise acting in furtherance of a common purpose, and because Plaintiffs do not adequately allege any fraudulent representations or other racketeering activity by Content X.

*Second*, Plaintiffs fall woefully short of establishing an actionable claim under the Video Privacy Protection Act ("VPPA"), a statute that Congress enacted to protect a very narrow category of specific information.  The Complaint fails to establish that the VPPA applies to either Content X or Plaintiffs, and also fails to allege any prohibited disclosure of Plaintiffs' video-watching habits.

*Third*, the claims under the California Invasion of Privacy Act ("CIPA") and the Federal Wiretap should be summarily dismissed, as Plaintiffs do not even come close to alleging a viable violation of either statute under well-established legal precedent.

For these reasons, Content X respectfully requests that the Court grant this Motion to Dismiss by Content X.

## II.    ALLEGATIONS RELEVANT TO CONTENT X

Content X was registered as a California corporation on September 1, 2020, *id.* ¶ 50, and ceased to exist as of December 1, 2023, according to a Certificate of Dissolution filed with the Secretary of State.[1]

The Complaint alleges that Content X "manages or at some point managed the accounts of the following Creators, who are subscribed to by either Plaintiff S.M. and/or Plaintiff B.L": Bella Thorne, Abella Danger, Mathilde Tantot and Pauline Tantot.  Compl. ¶ 216.  Plaintiffs allege that "Content X has full access to and control over each Represented Creator's OnlyFans account."  *Id.* ¶ 220.

Content X allegedly provided "Chatter Services" in the course of representing Creators "to impersonate the Creator and communicate with Fans without the Fans' knowledge."  *Id.* ¶¶ 217, 221.  At some point in time, Plaintiff S.M. alleges that he "confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and they all said it was them replying to messages and/or denied using chatters."  *Id.* ¶ 290.

Plaintiff S.M. also alleges that he paid for subscriptions via the OnlyFans platform, that he received photographs of Bella Thorne and Abella Danger, and that he requested a refund after learning that the photographs of Ms. Danger had also been posted to a different social media account.  *Id.* ¶¶ 378(i), 378(k).

## III.    LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570).  "A claim has facial plausibility when the plaintiff pleads factual content

---

[1]    *Smelt v. Cnty. of Orange*, 447 F.3d 673, 676 (9th Cir. 2006) (taking judicial notice of termination papers filed with California Secretary of State).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.    DISCUSSION

### A.    The RICO Claims Against Content X Should Be Dismissed

"To state a RICO claim, [Plaintiffs] must plausibly allege that [the defendants] participated, directly or indirectly, in (1) the conduct, (2) of an enterprise that affects interstate commerce, (3) through a pattern, (4) of racketeering activity." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  Because "[t]he mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants," "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *see Oscar v. Univ. Students Co-Op Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) ("RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.").

As explained below, the Court should dismiss Plaintiffs' RICO causes of action for two primary reasons.  First, the Complaint fails to establish the existence of an enterprise composed of multiple members acting in concert to achieve a common, unlawful purpose—a fundamental element of any RICO claim.  Second, Plaintiffs do not allege that Content X either directed the conduct of the RICO

1    enterprise or participated in the racketeering activity, especially as Plaintiffs'

2    threadbare allegations of fraud against Content X fail to meet the particularity

3    requirements of Rule 9(b).

4          **1.**      **Plaintiffs Fail to Plead the Existence of a RICO Enterprise**

5          To adequately plead a RICO claim, a plaintiff must establish the existence of

6    a RICO enterprise, which includes either "any individual, partnership, corporation,

7    association, or other legal entity," or alternatively, "any union or group of

8    individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

9    Here, Plaintiffs attempt to allege the latter—a so-called "association-in-fact

10   enterprise" between OnlyFans, the Agency Defendants and the Represented

11   Creators.  FAC ¶ 353.

12         An associated-in-fact enterprise is "a group of persons associated together for

13   a common purpose of engaging in a course of conduct." *United States v. Turkette*,

14   452 U.S. 576, 583 (1981).  An enterprise is "proved by evidence of an ongoing

15   organization, formal or informal, and by evidence that the various associates

16   function as a continuing unit."  *Id.*  In *Boyle v. United States*, 556 U.S. 938 (2009),

17   the Supreme Court clarified the required attributes of an association-in-fact

18   enterprise in holding that it "must have at least three structural features: a purpose,

19   relationships among those associated with the enterprise, and longevity sufficient to

20   permit these associates to pursue the enterprise's purpose." *Id.* at 946 (explaining

21   that "association" requires "both interpersonal relationships and a common interest,"

22   and so members of the alleged enterprise must have "joined together" in order to

23   advance their "common purpose").  Critically, allegations that "several individuals,

24   independently and without coordination, engaged in a pattern of crimes listed as

25   RICO predicates . . . would not be enough to show that the individuals were

26   members of an enterprise."  *Boyle*, 556 U.S. at 947 n.4.[2]

27

28   [2]  "Unless a plaintiff is required at the pleading stage to suggest plausibly the

### a. The Complaint Contains No Allegations of Coordination or Cooperation Required to Establish an Associated-in-Fact Enterprise under RICO

Plaintiffs' RICO claims should be dismissed because the Complaint does not allege that any of the defendants "joined together" or "operated in a coordinated manner in order to carry out the alleged common purpose" of a RICO enterprise. *Id.* at 942 n.1, 946; *see Doan v. Singh*, 617 F. App'x 684, 868 (rejecting RICO claim for failure to allege "what exactly each individual did, when they did it, or how they functioned together as a continuing unit"); *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3 (C.D. Cal. 2016) (dismissing RICO claims for failing to allege facts demonstrating that purported enterprise members "cooperated with each other" or "coordinated their behavior"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (RICO claim alleging "nothing more than parallel conduct by separate actors" is insufficient: "there has to be something that ties together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together—acting in concert—by means of mail and wire fraud").

The Complaint does not allege any form of cooperation or coordination between any of the defendants, let alone for the purpose of some common, unlawful purpose. Plaintiffs do not allege that Content X even knew of the existence of the other Agency Defendants, much less that Content X "joined together" with the other

---

existence of an enterprise structure . . . the RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless of whether there is even a hint of the collaboration necessary to trigger liability." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) ("To require less would ignore Twombly's interest in "insist[ing] upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" to an "inevitably costly and protracted discovery phase."). "Without such a limitation, as commentators have observed, one malefactor's series of independent frauds could be cast as a RICO conspiracy, sweeping numerous other individuals into a net of heightened liability under RICO, and doing so even if each fraud was perpetrated quite independently of the others." *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018).

defendants in any way.  Compl. ¶¶ 212-221; *see Vulcan Gold, LLC v. Google Inc.*, 2008 WL 2959951, at *5 (N.D. Ill. July 31, 2008) (dismissing RICO claims where complaint did not allege "consensual decisionmaking" by purported enterprise members or "any specific knowledge of the others' existence"); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173-74 (D. Mass. 2003) (RICO plaintiff failed to plead defendants "were even aware of one another's existence as participants in a scheme to defraud").  And the mere fact that Content X conducted its business by representing creators on the OnlyFans platform obviously cannot by itself establish the existence of a RICO enterprise.  *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (holding that allegations that defendants were "associated in a manner directly related to their own primary business activities" are insufficient to establish RICO enterprise).

The allegations that OnlyFans was aware of the Agency Defendants and did not stop their use of chatters on its platform due to its own profit motive, *id.* ¶¶ 362, 366, are not sufficient to establish the requisite element of "relationships among those associated with the enterprise."  *Boyle*, 556 U.S. at 946; *see Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (affirming dismissal of RICO claims alleging that defendant failed to stop—but did not direct—the illegal activity). Indeed, Plaintiffs allege that OnlyFans' own Terms of Service "prohibit[ed] Creators from allowing anyone else to even access their accounts," which conflicts with Plaintiffs' allegations that the Agency Defendants' use of chatters was done in coordination with OnlyFans.  (Compl. ¶¶ 126, 151.)

Most importantly, Plaintiffs completely fail to plead any form of relationship or association between Content X and the other Agency Defendants.  Courts have repeatedly rejected RICO claims alleging an enterprise based on a "rimless hub-and-spoke conspiracy" structure, which is exactly what Plaintiffs have done here.  *See, e.g.*, *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*,

589 F.3d 389, 400 (7th Cir. 2009); *see also* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 106 (3d ed. 2010) (stating that "rimless hub-and-spoke configuration would not satisfy the 'relationships' prong of Boyle's structure requirement").  For example, this District Court rejected claims that correspondent lenders, real estate appraisers, underwriters, foreclosure law firms and mortgage insurers were all members of a RICO enterprise based on allegations that they each played a role in the securitization of Countrywide mortgage loans:

> Nothing in the [Complaint] indicates that any of the groups above shared a "common purpose" and coordinated with each other as required to plead an enterprise. Many of the allegations indicate the opposite, that the entities engaged in bilateral business dealings with Countrywide but in sharp competition with each other. That is the type of rimless hub-and-spoke structure that the Third Circuit considered and found wanting in *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir.2010). Western and Southern has cited no reason why such a structure suffices to plead an enterprise in this case.

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012); *compare Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2011 WL 4852314, at *6 (C.D. Cal. Oct. 13, 2011) (holding that evidence of "contractual arrangements [between marketing agencies] governing their relationships and division of profit . . . . suppl[ied] the "unifying rim" of relationships absent in *Ins. Brokerage*").

If anything, Plaintiffs' allegations suggest that the Agency Defendants were ***competing*** with one another, not that they were working together to achieve some common purpose.  Without any factual support or explanation, Plaintiffs' conclusory allegation that the defendants "play different roles, but all cooperate on a common purpose: using chatters to extract Premium Content Fees," Compl. ¶ 354, does not plausibly establish the existence of any actual association between the purported members of the enterprise.  *See* Footnote 2, *supra*.  Fatally, the Complaint does not even allege that any of the Agency Defendants communicated with each other, much less coordinated their conduct.  *See Elsevier*, 692 F. Supp. 2d at 307 (dismissing RICO claim based on "nothing more than parallel conduct by separate

1  actors").  Absent any factual allegations of cooperation or relationship between the

2  Agency Defendants, Plaintiffs have failed to establish the existence of an associated-

3  in-fact RICO enterprise.

4          **b.      The Complaint Does Not Establish that Defendants**

5                   **Acted in Furtherance of a Common Purpose**

6          Even if Plaintiffs had pled some form of relationship or coordinated activity

7  between the defendants, the Complaint would still fail on the grounds that it does

8  not identify any "common purpose" that the purported enterprise was formed to

9  further.  *Turkette*, 452 U.S. at 583.  "'Common purpose' does not mean

10 commonality of motive, it means coordinated activity in pursuit of a common

11 objective." *Lupron*, 295 F.Supp.2d at 173.  "[S]imilarity of goals and methods does

12 not suffice to show that an enterprise exists; what is necessary is evidence of

13 systematic linkage, such as overlapping leadership, structural or financial ties, or

14 continuing coordination.'"  *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995).

15 Even where the multiple parties engage in the same fraudulent conduct, courts have

16 declined to impose RICO liability absent plausible factual allegations of a common

17 purpose.  *Gardner v. StarKist*, 417 F. Supp. 3d 443, 461-462 (N.D. Cal. 2019)

18 (allegations that StarKist's business partners had all fraudulently marketed and

19 labeled tuna products were insufficient to establish a RICO enterprise). Thus, the

20 mere fact that the Agency Defendants may have had similar goals and methods of

21 achieving them does not permit Plaintiffs to bring a claim under the RICO statute.

22         The only "common purpose" alleged in the Complaint is to "us[e] chatters to

23 extract Premium Content Fees" and "increas[e] the amount and number of Premium

24 Content Fees each Fan pays."  Compl. ¶¶ 354, 368.  Setting aside Plaintiffs' failure

25 to plead facts supporting this alleged shared objective, the allegations themselves are

26 not plausible on their face.  The Complaint offers no explanation for why Content X

27 would seek to increase the revenue collected by its competitors—the other Agency

28 Defendants—or how its own alleged use of chatters would positively affect the

DEFENDANT CONTEXT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

amount of fees paid to other agencies.  In reality, Plaintiffs' alleged "common purpose" is nothing more than the regular business activity of each Agency Defendant.  (*E.g.*, Compl. ¶ 217 (alleging that "as part of its management of those and other Creator accounts, Content X provides Chatter Services").)  As such, Plaintiffs have failed to establish the existence of an associated-in-fact RICO enterprise acting in furtherance of a common purpose.  *See, e.g.*, *Gardner v. StarKist*, 417 F. Supp. 3d at 461 (plaintiffs failed to show that alleged fraudulent acts were committed "towards this alleged common purpose"); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (dismissing RICO claims where plaintiff failed to allege an unlawful purpose beyond "ordinary business conduct and an ordinary business purpose").

## 2.    The Complaint Fails to Allege Any Participation by Content X in the Alleged Racketeering Activity

To state a RICO claim against Content X, Plaintiffs must allege not only the existence of an enterprise, but also that Content X conducted or participated in the conduct of the enterprise's affairs. 18 U.S.C. § 1962(c).  "In order to participate, directly or indirectly, in the conduct of [an] enterprise's affairs, [a defendant] must have some part in *directing* those affairs."  (*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added).  It is not enough to allege that a purported member of the enterprise directed its own affairs.  (*Id.*; *Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.,* 2013 WL 11323601, at *5 (C.D. Cal. Dec. 13, 2013).  Yet, as explained below, the Complaint fails to allege that Content X either directed the fraudulent activity of others or otherwise engaged in a pattern of racketeering activity itself.  *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) ("A pattern of racketeering activity requires at least two predicate acts of

1  racketeering activity, as defined in 18 U.S.C. §1961(1).").

2      As an initial matter, Plaintiffs have not alleged any form of communication,

3  direct or indirect, between Context X and OnlyFans or the other Agency

4  Defendants.  For that reason alone, Plaintiffs cannot establish that Content X

5  directed, operated or managed any of the affairs of the purported enterprise other

6  than its own.  *See Walter v. Drayson*, 538 F.3d at 1247-48 (citing *Reves*, 507 U.S. at

7  177-79).

8      Plaintiffs have also failed to allege with sufficient particularity that Content X

9  itself engaged in any racketeering activity.  "To satisfy Rule 9(b), a RICO complaint

10  must 'state the time, place, and specific content of the false representations as well

11  as the identities of the parties to the misrepresentation.'"  *Cal. Pharm. Mgmt., LLC*

12  *v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009) (quoting *Edwards v.*

13  *Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004)).  Where a plaintiff claims

14  that specific mail or wire transmissions "were themselves fraudulent, *i.e.*,

15  themselves contained false or misleading information," the plaintiff "should specify

16  the fraud involved, identify the parties responsible for the fraud, and where and

17  when the fraud occurred." *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624

18  (S.D.N.Y. 2006).  Moreover, given that Plaintiffs' RICO claims are premised solely

19  on predicate racketeering acts of wire fraud, the Complaint must identify at least two

20  distinct fraudulent actions by Content X.  *See In re WellPoint, Inc. Out-of-Network*

21  *UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is

22  asserted against multiple defendants, a plaintiff must allege at least two predicate

23  acts by *each* defendant." (emphasis in original)).

24      While Plaintiffs allege that Content X generally engaged in fraud, they fail to

25  identify any specific fraudulent representations it made.  In fact, the only specific

26  allegation of fraud even remotely attributed to Content X is contained in paragraph

27  290 of the Complaint, which states that Bella Thorne—a creator allegedly managed

28  by Content X—responded to Plaintiff S.M. via a direct message that stated, "it was

10

DEFENDANT CONTEXT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

[her] replying to messages and/or denied using chatters." Compl. ¶¶ 216, 290. This allegation, however, falls woefully short of Rule 9(b)'s heightened pleading standard in that it does not identify **who** allegedly sent the message or **when** it was sent, in any case, does not meet the minimum threshold of alleging at least two predicate acts.

Most importantly, Plaintiffs fail to establish that the statement alleged in paragraph 290 was false or in any way fraudulent. Plaintiffs do not allege that the direct message from Bella Thorne's account was sent by a chatter employed by Content X or that the message was **not** sent by Ms. Thorne herself. And because Plaintiffs acknowledge that Content X only managed Ms. Thorne's account "at some point," *id.* ¶ 216, the Complaint fails to allege even that Content X had access to the account when the purported statement was sent. As such, Plaintiffs have failed to establish the alleged statement was false or fraudulent.

Given that Plaintiffs cannot adequately allege even one fraudulent statement by Content X, the RICO claims fail as a matter of law. *See Harmoni Int'l Spice, Inc. v. Bai*, 2016 WL 6542731, at *25 (C.D. Cal. May 24, 2016) (dismissing RICO claim where plaintiffs "alleged only one predicate act" by moving defendant, which was insufficient to establish "a *pattern* of racketeering" (emphasis in original)).

### 3. The Complaint Does Not Establish a Section 1962(d) Violation

Plaintiffs' inability to adequately plead a cognizable RICO violation under section 1962(c) requires dismissal of their RICO conspiracy claim under section 1962(d). *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy"), *cert. denied*, 121 S.Ct. 77 (2000).

### 4. Other Grounds for Dismissing RICO Claims

Plaintiffs' RICO claims are flawed for many additional reasons that do not require further detailed discussion. For example, as other defendants have noted, Plaintiffs have failed to establish they each suffered "concrete financial loss"

sufficient to confer standing under RICO, as "the mere 'lost expectation' of talking to Creators rather than a chatter is not a RICO injury.  ECF No. 64 at 6 (citing *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002)); ECF No. 65 at 16-17.  The RICO claims should also be dismissed on the grounds that the Complaint impermissibly relies on allegations made on information and belief, and fails to adequately plead the structure or longevity elements of a RICO claim.  ECF No. 66-1 at 11-14.  Content X joins in each of these arguments, all of which also require the dismissal of Plaintiffs' RICO claims.

**B.    The VPPA Claim Against Content X Must Be Dismissed**

**1.    Content X Is Not a Video Tape Service Provider and Plaintiffs Are Not Consumers of Content X's Services**

The Complaint fails to establish that Content X meets the definition of a "Video Tape Service Provider."  According to Plaintiffs, the Agency Defendants used their access to the Creators' accounts to facilitate delivery of the videos to Plaintiffs via the OnlyFans platform.  (*Id.* ¶¶ 110, 259, 274, 287, 305.)  Even accepting such allegations as true, they do not establish that the Agencies provide video content as a "central" part of their business.  *Hernandez v. Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023).  "[C]ourts in the Ninth Circuit have recognized consistently that delivering video content must be central to the defendant's business or product for the VPPA to apply" (*Id.* (citing *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023); *Cantu v. Tapestry, Inc.*, 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023)).  "[F]or the defendant to be 'engaged in the business' of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose."  *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).  Yet the Complaint includes no such allegations.  Indeed, the only allegations involving the Creators allegedly managed by Content X state that they provided ***photgraphs*** to Plaintiffs—***not videos***.  (Compl. ¶¶ 378(i),

378(k).)  The Agencies are no more "providers" of video content than the advertising agencies and producers who help to market and distribute films shown in movie theaters and streamed online.  The Court should not countenance Plaintiffs' attempt to drastically expand the reach of the VPPA beyond anything Congress intended.

Even if Content X could be considered a "video tape service provider," the Complaint does not establish that Plaintiffs were "consumers" within the meaning of the VPPA.  18 U.S.C. § 2710(a)(1) (defining "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider").  While Plaintiffs may have an argument they were consumers in relation to OnlyFans, Plaintiffs did not and cannot allege that they "rente[d], purchase[d] or subscribe[d]" to any goods or services provided by Content X or any of the other Agencies.  *See Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) (holding that plaintiff did not meet VPPA's definition of "consumer").  The Complaint describes the services provided by Content X and the other Agencies as "manag[ing] the accounts of [their] Creators," including the provision of "Chatter Services."  (*E.g.*, Compl. ¶¶ 216-217.)  Yet, Plaintiffs do not allege that they utilized the Agencies' services to manage their own OnlyFans Creators accounts.  Plaintiffs did not "sign up for or establish an account" with, become a "registered user" of, or "make any payments" to any Agency, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015), nor do they allege using any other mobile app or website owned by an Agency, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016).  Thus, even accepting the conclusory allegation that the Agencies "engaged in the business of selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators" as true (Compl. ¶ 409), the VPPA claim still fails as Plaintiffs have not pled they were "consumers" of any services or goods provided by the Agencies.

## 2. The Complaint Does Not Allege Any Information Meeting the VPPA's Definition of Personally Identifiable Information

The VPPA claim also fails because the information the Complaint alleges was shared with chatters is not actionable personal identifying information under the VPPA. "Personally identifiable information" (hereinafter, "VPPA PII") includes "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has held that to qualify as VPPA PII, the information must "readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983, 984 n.2 (9th Cir. 2017) (citation omitted) (explaining that the VPPA was enacted in response to the publication of then-Supreme Court nominee Robert Bork's video rental history from a local Washington D.C. video store and was intended to protect "a consumer's substantive privacy interest in his or her video-viewing history"). In other words, VPPA pertains to only a limited category of information—a consumer's "video-watching habits"—and the disclosure of any other private information is not actionable under the VPPA. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (citing Congress's "quite narrow" purpose in enacting the VPPA); *see, e.g.*, *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024) (VPPA violated by disclosure of users' full name and records of every video they viewed on mobile news apps); *Edwards v. Learfield Commc'ns, LLC*, 697 F.Supp.3d 1297 (N.D. Fla. 2023) (no VPPA violation where college sports fans did not allege that their video-watching habits were identifiable).

Here, Plaintiffs do not allege the existence of any VPPA PII, much less its disclosure. The Complaint identifies the information disclosed to chatters as only the Fans' "communication history," which displays only "the Fan's username" and not their real name. Compl. ¶¶ 406-408. Nowhere in the Complaint do Plaintiffs allege that the Agency Defendants—or the Creators they represent—have any

1  knowledge of the identities of OnlyFans users.  Thus, Plaintiffs' messaging history

2  of requests for Creators to send them custom video content does not constitute

3  VPPA PII, as it does not "identify a specific individual's video-watching behavior."

4  *Eichenberger*, 876 F.3d at 985.

5           **3.    The Complaint Does Not Allege Any Disclosure of VPPA PII**

6           Even assuming that Content X received Plaintiffs' VPPA PII, the Complaint

7  does not allege any disclosure of such information by Content X.  Instead, after

8  noting that OnlyFans collects personal information about its users that could be used

9  to identify them (*e.g.*, email addresses), Plaintiffs allege in conclusory fashion that

10  "Defendants knowingly disclosed Plaintiffs' and Class Members' PII without their

11  consent."  (Compl. ¶¶ 406, 413.)  ***But there is no allegation that OnlyFans***

12  *** disclosed any VPPA PII to the Agency Defendants***.  And more importantly, even if

13  the Agencies somehow obtained information that could be used to link an OnlyFans

14  user and their video-watching habits to a specific person, there is not a single

15  allegation anywhere in the Complaint that Content X ever disclosed such

16  information to a third party.  Plaintiffs' conclusory allegation of disclosure—without

17  explaining how, when or to whom Content X made such purported disclosures—is

18  insufficient to plausibly state a claim under the VPPA.[3]

19     **C.    The Federal Wiretap Act and California Invasion of Privacy Act**

20             **Claims Are Fatally Flawed**

21          Plaintiffs' ill-conceived claims under the Federal Wiretap Act and the

22  California Invasion of Privacy Act ("CIPA") should be summarily dismissed.  First,

23  both claims—which are analyzed under the same legal framework—fail for failing

24

25  _____

26  [3]    Given that Plaintiffs' allegations of disclosure could be described as vague at
best, it is difficult for Content X to evaluate the applicability of the VPPA's
"ordinary course of business" exception, which includes "order fulfillment" and

27  "request processing."  18 U.S.C. § 2710(b)(2)(E) (permitting disclosure incident to
the ordinary course of business of the video tape service provider); *see Sterk v.*

28  *Redbox Automated Retail, LLC*, 2013 WL 4451223, at *4 (N.D. Ill. Aug. 16, 2013),
*aff'd*, 770 F.3d 618 (7th Cir. 2014).

to allege the interception of any communication while in transit.  Second, the Wiretap Act claim fails simply because it is subject to the one-party consent rule. Third, courts have repeatedly held that impersonation of another—the gravamen of Plaintiffs' allegations—is not an actionable violation of the Wiretap Act.

Both the relevant clause of CIPA[4] and the Federal Wiretap Act only apply where a communication is "intercept[ed]" while "in transit."  18 U.S.C. § 2510(4); Cal. Pen. Code § 631(a).  The Ninth Circuit has interpreted these requirements to mean that "acquisition" must occur "during transmission," not by accessing stored data.  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077-78 (9th Cir. 2004) (unauthorized access to stored emails does not violate act); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-78 (9th Cir. 2002) (no interception where message was read after it had arrived at its intended destination).  As Plaintiffs plead that the chatters employed by the Agency Defendants read Plaintiffs' messages ***after*** they were received on the OnlyFans' Creators accounts, Compl. ¶ 437, their claims fail to establish a violation under either CIPA or the Wiretap Act.

The Wiretap Act claims fail for two additional reasons.  First, Plaintiffs do not deny that the Creators consented to the chatters access to and use of their accounts to read users' communications.  Compl. ¶ 102.  A violation of the Wiretap Act, however, cannot occur if any of the parties to the communication "has given prior consent to such interception."  18 U.S.C. § 2511(2)(d); *see In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *12 (N.D. Cal. Mar. 18, 2014).  Second, the Wiretap Act claim fails because federal appellate courts have consistently held that the act of impersonating another person does not constitute an actionable violation under the

---

[4]    The first clause of CIPA does not plausibly apply here, as it only applies to communications sent via telephone or telegraphs.  Cal. Pen. Code § 631(a). Communications sent via the Internet—like those alleged here—do not fall within the scope of the first clause.  *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020); *see also Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *7 ("A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a).").

1  statute.  *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806

2  F.3d 125, 144 (3d Cir. 2015); *Clemons v. Waller*, 82 F. App'x 436 (6th Cir. 2003);

3  *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964).

4  **V.    CONCLUSION**

5       For the foregoing reasons, Content X respectfully requests that the Court

6  grant this motion and dismiss each cause of action asserted against Content X for

7  failure to state a claim for relief.

8

9  DATED:  October 25, 2024          KINGFISHER LAW APC

10

11                          By:      */s/ Nithin Kumar*

12                                  Nithin Kumar
                                    Attorneys for Defendant Content X, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CONTEXT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendant Content X, Inc. certifies that this brief contains 5,523 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 25, 2024          KINGFISHER LAW APC

By:    _____*/s/ Nithin Kumar*_____
                     Nithin Kumar
          Attorneys for Defendant Content X, Inc.

DEFENDANT CONTEXT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)