Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile:  (213) 330-7152
Email:  christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email:  rob@hbsslaw.com
          leonarda@hbsslaw.com
          michellak@hbsslaw.com

*Attorneys for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>Judge:      Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date:       January 30, 2025<br>Time:       10:00 a.m. |

011194-11/2686242 V1                                          Case No: 8:24-cv-01655-FWS-SSC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTS ....................................................................................................... 1

III.  LEGAL STANDARD ............................................................................... 3

IV.   ARGUMENT ............................................................................................ 4

    A.    The forum-selection clause is invalid and unenforceable ................... 4

        1.    The forum-selection clause is unconscionable under California law. ........................................................................ 4

        2.    The forum-selection clause is unenforceable. ........................ 6

            a.    California has a well-established public policy favoring consumer class actions ...................................... 7

            b.    Forcing Plaintiffs to bring their case in England would prevent Plaintiffs from effectively bringing this case as a class action in violation of California's public policy. ............................................... 8

            c.    Plaintiffs maintain non-waivable rights in connection with their claims based on both California and federal law. .......................................... 12

            d.    Enforcing the forum-selection clause would violate California's public policy by forcing Plaintiffs to waive their non-waivable rights under California and federal law. .................................. 14

        3.    The forum-selection clause is unenforceable in English courts because it is an "unfair" term under the Consumer Rights Act of 2015. ................................................. 16

    B.    In the absence of an enforceable forum-selection clause, Defendants have failed to meet the heavy burden of overcoming the deference given to Plaintiffs' choice of forum. .................................................................................................. 17

-i-

C.  Even if the forum-selection clause were enforceable, dismissal would still be inappropriate. ............................................... 18

1.  Public interest factors ................................................................ 18

2.  Defendants' post-complaint update to the forum-selection clause supports keeping the case in this Court; doing otherwise would lead to piecemeal litigation and is unreasonable under the circumstances................................. 19

V.  CONCLUSION ............................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*,
No. 15-2457, 2015 WL 5818521 (E.D. Pa. Oct. 6, 2015)..................................21

*Am. Online, Inc. v. Superior Court*,
90 Cal.App.4th 1 (2001) .......................................................7, 8, 9, 13

*Aral v. Earthlink, Inc.*,
134 Cal.App.4th 544 (2005) ...............................................................6, 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................5

*Atl. Marine Constr. Co. v. United States Dist. Court*,
571 U.S. 49 (2013) ..............................................................................3, 4

*Bayol v. Zipcar, Inc.*,
No. 14-cv-02483-TEH, 2014 U.S. Dist. LEXIS 135953 (N.D. Cal.
Sep. 25, 2014) ......................................................................................15

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .....................................................3, 4, 18

*Carney v. Beracha*,
996 F.Supp. 2d 56 (D. Conn. 2014) ...................................................21

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) .............................................................17

*Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*,
28 F.4th 956 (9th Cir. 2022)...................................................................4

*Depuy Synthes Sales, Inc. v. Stryker Corp.*,
No. EDCV18-1557, 2019 U.S. Dist. LEXIS 67403 (C.D. Cal. Feb.
5, 2019)................................................................................................17

*Docksider, Ltd. v. Sea Tech., Ltd.*,
875 F.2d 762 (9th Cir. 1989) ...............................................................19

-iii-

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) ................................................................ 8

*First Intercontinental Bank v. Ahn*,
   798 F.3d 1149 (9th Cir. 2015) ................................................................ 6

*Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*,
   No. CV 14-2086 DSF, 2014 U.S. Dist. 182207 (C.D. Cal. July 21,
   2014) ........................................................................................................ 6

*Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*,
   No. CV 14-2086-DSF, 2014 U.S. Dist. LEXIS 182207 (C.D. Cal.
   July 21, 2014) .......................................................................................... 4

*Friedman v. Glob. Payments, Inc.*,
   No. CV 18-3038 FMO, 2019 U.S. Dist. LEXIS 67414 (C.D. Cal.
   Feb. 5, 2019) ........................................................................................... 4

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*,
   S.A., 972 F.3d 1101 (9th Cir. 2020) ........................................................ 3

*Glob. Power Supply, LLC v. Acoustical Sheetmetal Inc.*,
   2018 U.S. Dist. LEXIS 115593 (C.D. Cal. 2018) ................................... 4

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) ................................................................... 20

*Iskanian v. CLS Transp. L.A., LLC*,
   59 Cal. 4th 348 (2014) ..................................................................... 12, 13

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ................................................................. 18

*Koresko v. RealNetworks, Inc.*,
   291 F. Supp. 2d 1157 (E.D. Cal. 2003) ................................................. 20

*Lipeles v. United Airlines, Inc.*,
   No. CV 23-7143-KK, 2024 U.S. Dist. LEXIS 67526 (C.D. Cal.
   Apr. 11, 2024) .......................................................................................... 5

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ........................................................... 3, 17

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ................................................................................. 6

*McGill v. Citibank, N.A.*,
  393 P.3d 85 (Cal. 2017)....................................................................... 13

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*,
  116 F. Supp. 3d 1010 (N.D. Cal. 2015)............................................... 13

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ............................................................. 12

*Muto v. Fenix Int'l Ltd.*,
  2024 WL 2148734 (C.D. Cal. May 2, 2024)................................*passim*

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ............................................................... 5

*Omstead v. Dell, Inc.*,
  533 F. Supp. 2d 1012 (N.D. Cal. 2008).................................................. 7

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  498 F.3d 976 (9th Cir. 2007) ............................................................ 5, 6

*Suski v. Marden-Kane, Inc.*,
  No. 21-cv-04539-SK, 2022 U.S. Dist. LEXIS 157448 (N.D. Cal.
  Aug. 31, 2022) ....................................................................................... 5

*Tech. Credit Corp. v. N.J. Christian Acad., Inc.*,
  307 F. Supp. 3d 993 (N.D. Cal. 2018).................................................. 20

*In re Uber Techs., Inc.*,
  No. 3084 CRB, 2024 U.S. Dist. LEXIS 90342 (N.D. Cal. May 20,
  2024) ..................................................................................................... 13

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
  227 F.Supp.3d 1098 (N.D. Cal. 2017).................................................. 12

**Statutes**

18 U.S.C.A. § 2710(b)(2)(B) ..................................................................... 14

28 U.S.C. § 1404(a) ..................................................................................... 3

Cal. Civ. Code § 1668.............................................................................12, 13

-v-

1

Cal. Civ. Code § 3513 ........................................................................... 13

2

Consumer Rights Act of 2015 ......................................................... 16, 20

3

**Other Authorities**

4

5

*Cannon Screen Entm't Ltd v Handmade Films (Distributors) Ltd*
    (July 11 1989 QBD unreported) ...................................................... 20

6

7

CJEU *Oceano Grupo* C-240/98 ............................................................ 16

8

Fed R. Civ. P. 23 ......................................................................... 10, 11

9

*Sabah Shipyard (Pakistan) Ltd v The Islamic Republic of Pakistan &*
    *Anr* [2002] EWCA Civ 1643. [2003] 2 Lloyd's Rep. 571 ................................ 20

10

11

Terms of Service,
    available at www.onlyfans.com/terms ............................................. 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

011194-11/2686242 V1                                      Case No: 8:24-cv-01655-FWS-SSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Defendants Fenix International Limited and Fenix Internet LLC argue that a forum-selection clause embedded deep in OnlyFans' Terms of Service ("TOS") means that they can't be sued in the United States, even though most of their multi-billion-dollar revenue comes from Fans and Creators here and all of it is collected and distributed by U.S.-based Fenix Internet LLC. But the Court cannot enforce the clause because doing so would result in a loss of California consumers' rights to pursue their putative consumer class claims here. This Court analyzed the *same* forum-selection clause just a few months ago in *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 (C.D. Cal. May 2, 2024) and concluded it was ***unenforceable*** under "California's strong state policy regarding consumer class actions" that "this policy would be wholly undermined if Plaintiffs were required to litigate in Defendants' proposed forum" of England. Simply put, Defendants' choice of forum guarantees that no consumer could legally be made whole—in clear violation of California public policy. This Court should follow its decision in *Muto* and refuse to enforce Defendants' forum-selection clause.

## II.    FACTS

Plaintiffs filed their Class Action Complaint against Defendants Fenix International Limited ("FIL"), the owner and operator of the OnlyFans website; its U.S. subsidiary Fenix Internet LLC ("Fenix Internet") (together, "Fenix Defendants" or "Defendants"); and nine agencies representing creators on the OnlyFans website ("Agency Defendants"). Dkt. 1 ("Compl."). The Complaint alleges that each Agency Defendant is domiciled, registered, or has a principal place of business in California, Compl. ¶¶ 44–52; that the events giving rise to Plaintiffs' claims occurred in California, *id.* ¶¶ 22–23; that Fenix Defendants and Agency Defendants violated California common law, *id.* ¶¶ 423–34, 441–89; and that a substantial number of OnlyFans users (Fans and Creators) are in California,

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

*id.* ¶ 41. Plaintiffs have alleged claims arising under the California Invasion of Privacy Act, Deceit under the Cal. Civil Code §§ 1709–10, California False Advertising Law, and California Unfair Competition Law. *Id.* ¶¶ 423–34, 463–89.

Fenix Defendants filed a Motion to Dismiss for Forum Non Conveniens ("FNC Motion") and a Request for Judicial Notice. Dkts. 60, 63. Attached to the FNC Motion are supporting declarations: one from Lee Taylor—the CFO (and a director) of Defendant FIL, Dkt. 60-1 ("Taylor Decl.")—and another from Antony White KC—a purported expert in UK law, where Defendant FIL is based. Dkt. 60-2 ("White Decl.").

The Taylor Declaration purports to establish certain facts relied on by Defendants in their FNC Motion, including the specific process by which Fans sign up for accounts; the specific form of the forum-selection clause that forms the basis of the FNC Motion; and that both the signup process and the FNC have been the same (or "substantially similar" both in form and content) during the relevant time. Dkt. 60 at 3–6. Defendants also rely on the Taylor Declaration to establish: "Defendant Fenix Internet LLC . . . does not own or operate the Website," but only "provides payment-processing assistance to FIL in the U.S.;" Defendants "have agreed to personal jurisdiction and service in England and Wales;" and "the employees, officers, and records of Fenix are located in the United Kingdom, not California." *Id.* at 11, 19.

The White Declaration opines on: (1) whether the English courts would accept jurisdiction over Plaintiffs' claims if similar claims were brought in England ("Equivalent English Proceedings"); (2) whether, under English law, the exclusive jurisdiction clauses agreed to by the Plaintiffs are valid and enforceable; (3) whether English law would provide a similar remedy; and (4) whether the English courts would provide a convenient forum for the efficient, just, and expeditious resolution of such claims. White Decl. ¶ 6.

1    Defendants rely on White to show: "where...fraudulent misrepresentations
2    involve a number of parties acting in concert, the tort of conspiracy to injure by
3    unlawful means can be used to claim damages' under English law;" "English courts
4    also offer Plaintiffs a remedy for their CIPA and VPPA claims; English law
5    provides an "equivalent to the FAL, UCL, and fraud claims;" "English courts offer
6    'various procedures analogous to a class action which the Plaintiffs could seek to
7    deploy;'" and English courts "have procedures to handle small-dollar claims
8    [efficiently]," Dkt. 60 at 12, 17.

9    ### III.    LEGAL STANDARD

10    Under *forum non conveniens*, a "district court has discretion to decline to
11    exercise jurisdiction in a case where litigation in a foreign forum would be more
12    convenient for the parties." *Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1142 (9th
13    Cir. 2001).[1] "To prevail on a motion to dismiss based upon *forum non conveniens*, a
14    defendant bears the burden of demonstrating an adequate alternative forum, and
15    that the balance of private and public interest factors favors dismissal." *Glob.*
16    *Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, S.A., 972 F.3d
17    1101, 1111 (9th Cir. 2020) (quoting *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1076 (9th
18    Cir. 2015). The plaintiff's choice of forum weighs heavily in that balance. *See*, *e.g.*,
19    *Lueck*, 236 F.3d at 1143.

20    Whether to dismiss for *forum non conveniens* requires a district court to
21    balance the same public and private factors considered under 28 U.S.C. § 1404(a)
22    ("Section 1404(a)"). *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S.
23    49, 60-61 (2013) ("*Atlantic Marine*"). The doctrine of *forum non conveniens* is,
24    however, a more "drastic exercise of the court's inherent power," since "unlike a
25    mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v.*
26
27    _____
28    [1] For ease of reading, all internal marks and citations are omitted unless
     otherwise noted.

-3-

*Occidental Petroleum Corp*., 643 F.3d 1216, 1224 (9th Cir. 2011). As a result, *forum non conveniens* is "an exceptional tool to be employed sparingly." *Id*.

The presence of a valid and enforceable forum-selection clause changes the *forum non conveniens* analysis by requiring the court to disregard the private interest factors; in such cases, "a district court may consider arguments about public-interest factors only," *Frango Grille USA, Inc. v. Pepe's Franchising Ltd.,* No. CV 14-2086-DSF, 2014 U.S. Dist. LEXIS 182207, at *6 (C.D. Cal. July 21, 2014) (quoting *Atlantic Marine*, 571 U.S. 49 at 582), and will give less deference to a plaintiff's choice of forum. *See e.g.*, *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp*., 28 F.4th 956, 963 (9th Cir. 2022).

This modified *forum non conveniens* analysis, however, "applies only to *valid* forum selection clauses." *Frango*, 2014 U.S. Dist. LEXIS 182207, at *6 (emphasis in original); *see also Depuy,* 28 F.4th at 963 ("application of the modified *Atlantic Marine* analysis "presupposes a contractually valid forum-selection clause.").

## IV.    ARGUMENT

**A.    The forum-selection clause is invalid and unenforceable.**

**1.    The forum-selection clause is unconscionable under California law.**

"Before embarking on the § 1404 analysis, the court must determine whether there is a contractually valid forum-selection clause." *Friedman v. Glob. Payments, Inc.*, No. CV 18-3038 FMO (FFMx), 2019 U.S. Dist. LEXIS 67414, at *5 (C.D. Cal. Feb. 5, 2019) (citing *Atlantic Marine*, 571 U.S. 49 at 62 n. 5; *Moretti v. Hertz Corp*., 2014 U.S. Dist. LEXIS 50660 (N.D. Cal. 2014)). Federal law governs forum-selection clauses, while state law governs contract formation and the interpretation of an agreement's terms. *Glob. Power Supply, LLC v. Acoustical Sheetmetal Inc*., 2018 U.S. Dist. LEXIS 115593, *2 (C.D. Cal. 2018).

-4-

Under California law, a contractual term that requires consumer plaintiffs to give up their right to bring a class action is unconscionable when: (1) "the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power;" (2) "the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) where plaintiffs allege "that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Lipeles v. United Airlines, Inc.*, No. CV 23-7143-KK, 2024 U.S. Dist. LEXIS 67526, at *15 (C.D. Cal. Apr. 11, 2024); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) (summarizing how California courts have construed *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148 (Cal.2005)).[2]

Here, all three factors apply. ***First***, there is no question the Terms of Service here are adhesive. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) ("A contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms."). ***Second***, while Defendants claim that "this case is not about small-dollar claims," Dkt. 60 at 18, they fail to establish any reasonable metric for saying so. They suggest that Plaintiffs "are claiming individual damages up to $25,000 per individual for a putative class of hundreds of thousands (or even millions) of consumers." *Id.* But the idea that even $25,000 would be sufficient to incentivize an individual consumer to litigate in the UK is absurd—and the fact that *classwide* damages might be high is irrelevant to whether the consumer relationship between Fans and

---

[2] In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court "held that the Federal Arbitration Act preempted California's *Discover Bank* rule," but "[w]here, as here, the class action waiver . . . is not coupled with an arbitration provision, *Concepcion* does not apply," and courts continue to apply "California law on unconscionability." *Suski v. Marden-Kane, Inc.*, No. 21-cv-04539-SK, 2022 U.S. Dist. LEXIS 157448, at *13 (N.D. Cal. Aug. 31, 2022).

-5-

the platform "predictably involve small amounts of damages." Indeed, that fact supports the ***third*** factor because Plaintiffs' claim that OnlyFans ("the party with the superior bargaining power") engaged in "a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Shroyer*, 498 F.3d at 983; *see e.g.* Compl. ¶¶ 372, 382. Thus, the forum-selection clause—which negates class-action relief—is unconscionable under California law.

### 2.    The forum-selection clause is unenforceable.

A forum-selection clause that is valid as a matter of contract law may still be "unreasonable"—and therefore unenforceable—under the Supreme Court's analysis in *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972) ("*Bremen*"). While a plaintiff seeking to prove that a forum-selection clause is unreasonable bears "a heavy burden," that "***burden was not intended to be insurmountable***." *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 561, (2005) (emphasis added) (citing *Bremen*, 407 U.S. at 18).

"A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*, No. CV 14-2086 DSF, 2014 U.S. Dist. 182207, at *6 (C.D. Cal. July 21, 2014) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1293 (9th Cir. 1998); *see also*, *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015) ("To determine the public policy of a state, a federal court considers the Constitution, laws, and judicial decisions of that state, and as well the applicable principles of the common law.").

Here, enforcement of the forum-selection clause would violate California's public policy by forcing Plaintiffs to forgo their well-established rights to class-action relief and to waive other non-waivable rights under California law.

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

1

2

### a.   California has a well-established public policy favoring consumer class actions.

Where everyone's damages are likely small, but where "[a] company which wrongfully extracts a dollar from each of millions of customers will reap a handsome profit," the class action device "is often the only effective way to halt and redress such exploitation." *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1016-17 (N.D. Cal. 2008).

There is no question that California public policy is in favor of consumer class actions. Such rights have been extolled by California courts since at least 1971, when the California Supreme Court "first noted that 'protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Am. Online, Inc. v. Superior Court*, 90 Cal.App.4th 1 (2001) ("*Mendoza*") (quoting *Vasquez v. Superior Court,* 4 Cal. 3d 800, 808 (Cal. 1971).

In *Mendoza*, a California resident brought a putative class action on behalf of AOL customers in California state court, alleging violations of the CLRA and the UCL, as well as common law conversion and fraud. 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699, 702 (2001). AOL moved to dismiss based on its forum-selection clause giving the "courts of Virginia" exclusive jurisdiction over "any claim or dispute with AOL or relating in any way to your membership or your use of AOL." *Id*. at 701–02. The trial court denied AOL's motion, and the Court of Appeals affirmed on two independent grounds—one was because "Virginia law does not allow consumer lawsuits to be brought as class actions and the available remedies are more limited than those afforded by California law," the rights of "California consumer class members would be substantially diminished if they are required to litigate their dispute in Virginia, thereby violating an important public policy underlying California's consumer protection law." *Mendoza*, 90 Cal.App.4th at 5.

Following *Mendoza*, the Ninth Circuit came to the same conclusion in *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1079 (9th Cir. 2009), where plaintiffs brought a class action alleging various violations of California consumer protection law. 552 F.3d at 1078. AOL again sought dismissal for improper venue, relying on forum selection and choice of law clauses requiring any action to be brought in Virginia under Virginia law. *Id*. at 1079-80. The district court granted the motion, but the Ninth Circuit reversed. It held that "[a]s to such California resident plaintiffs, *Mendoza* holds **California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law.**" *Id*. at 1084 (emphasis added).[3]

### b. Forcing Plaintiffs to bring their case in England would prevent Plaintiffs from effectively bringing this case as a class action in violation of California's public policy.

Relying on the White Declaration, Defendants claim that "English courts offer 'various procedures analogous to a class action which the Plaintiffs could seek to deploy,'" Dkt. 60 at 12.; and that English courts "have procedures to handle small-dollar claims on an efficient basis," *id*. at 17.

In *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 (C.D. Cal. May 2, 2024), this Court analyzed whether to enforce *the exact same forum-selection clause* at issue here to force four California residents to litigate their putative class action for violation of California's UCL—with the predicate unlawful act of violations of

---

[3] Although *Doe 1* largely concerned a Consumer Legal Remedies Act ("CLRA") claim which has not been advanced here, that difference is not dispositive. That was made clear in *Mendoza*, which states that "[t]he unavailability of class action relief in this context is sufficient *in and by itself* to preclude enforcement of the TOS forum selection clause." 90 Cal. App. 4th at 712 (emphasis added). Moreover, California courts have expressed California's public policy in favor of class actions in the context of other consumer protection laws, describing, for example, the "fundamental policy" of this state to ensure that its citizens have a "viable forum in which to recover minor amounts of money allegedly obtained in violation of the UCL." *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564 (2005).

California's Automatic Renewal Law—in England. In its thorough and well-reasoned decision, the Court held that the clause was unenforceable in light of the "California's strong state policy regarding consumer class actions," which "would be wholly undermined if Plaintiffs were required to litigate in Defendants' proposed forum." *Id*.

Defendants desperately attempt to distinguish *Muto*, but their attempts fall flat. Defendants' contention "this is not a case about small-dollar claims," Dkt. 60 at 18, is specious; while some putative class members may possibly have larger damages than the monthly subscription fees at issue in *Muto*, it remains the case that the per-person individual damages at issue here are sufficiently small to make obtaining counsel and litigating in a foreign forum across the Atlantic essentially impossible. *See e.g.,* Compl. ¶ 214 (describing one of the most successful OnlyFans creators, who charged $102 for a six-month subscription); *id.* ¶ 378 (describing OnlyFans subscription amounts from $4.99 to $20 per month).

Defendants also miss the mark with their claim that "California does not have a public policy against enforcing forum-selection clauses that may be economically inconvenient for small-dollar plaintiffs," Dkt. 60 at 18, citing *Mendoza,* 90 Cal.App.4th at 18-19. Not only is their formulation of the public policy at issue a red herring, but Defendants' citation to *Mendoza* is puzzling considering that in that putative class case the court *refused* to enforce the forum-selection clause urged by the defendant. Moreover, the California Court of Appeals explicitly rejected the idea that the enforceability of a forum-selection clause would turn on "the economic value of the particular claim in issue, so that the clause can be enforced some of the time (depending on the value of the claim), but not all of the time"— suggesting that the "practical problems" involved in considering the economic value of the claim "are formidable, and will ensnare trial courts in endless proceedings during which these factors would be argued and weighed." *Id*. at 19.

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

In *Muto*, this Court rejected essentially the exact same arguments Defendants regurgitate here, including Defendants' argument—also supported by a declaration from Mr. White—that English courts could provide a procedure "analogous" to class actions under Rule 23. The Court held:

> [N]one of the procedures in the English and Welsh courts that Defendants have identified would offer Plaintiffs the essential benefits of the class action format. Under a "group litigation order," per CPR 19.11,4 each claimant would be required to affirmatively opt into the proceedings and enter into a retainer agreement with the solicitor (attorney) responsible for managing the group's claims. As British courts acknowledge, the up-front costs of the retainer agreement render this process "not economic" for "claims which individually are only worth a few hundred pounds." [citation]. For similar reasons, the Court finds that the other procedural alternatives Defendants point to [*see* White Decl. (Dkt. 35-14) at ¶¶ 47, 48] would also fail to protect the important objectives of California's strong consumer class action policy.

*Muto*, 2024 U.S. Dist. LEXIS 83275, at *9.

Not only did Judge Sykes get it right,[4] but that same result is substantiated here by the attached Declaration of English barrister Jonathan Kirk, King's Counsel ("Kirk Decl.")—who wrote the book on UK consumer law, advises the UK government on consumer law, and has represented corporations including Apple and Amazon in consumer law matters. Kirk Decl. ¶¶ 2–4. Mr. Kirk explains in detail that there is no similar procedure in the English courts that would permit Plaintiffs and putative class members to enforce their consumer class action rights. *See* Kirk Decl. ¶¶ 58–65. While Mr. White offers a number of examples of procedures available under English law, his actual *comparative* analysis is limited to the single assertion that English law provides "various procedures analogous to a class action." White Decl. ¶ 68.

---

[4] As the passage above demonstrates, Defendants' attempt to distinguish *Muto* by suggesting Judge Sykes failed to consider that English courts have "numerous collective action procedures" that can handle small-dollar class claims, Dkt. 60 at 17, is flatly false.

011194-11/2686242 V1                                                    Case No: 8:24-cv-01655-FWS-SSC

By contrast, Mr. Kirk describes in detail the way that the mechanisms described by White are not meaningfully analogous to class actions under U.S. law. *See, e.g.*, Kirk Decl. ¶ 12 ("I agree [with White] that there is a mechanism through which group litigation could be advanced in the English court system. However, I disagree that this is analogous to a US class action . . . ."). For example, unlike U.S. class actions (which, for the relevant part of Rule 23 here, automatically include all affected consumers) the Group Litigation Order ("GLO") procedure available in English courts "is opt-in only," Kirk Decl. ¶¶ 12, 59, 61—as is the "single Claim Form" procedure suggested by White as "analogous" to class actions. *Id*. ¶ 61. Moreover, there are several other legal consequences to GLO claimants that do not exist under Rule 23, including that each claimant must "consent to being an identified claimant in the proceedings" and "pay a court issue fee"—along with the fact that each claimant "is potentially liable, both jointly and severally, for the payment of . . . the adverse party's legal fees." *Id*. ¶¶ 58–59; *accord* White Decl. ¶ 72.

Similarly, while Mr. White includes "representative actions" under CPR 19.8 as a procedure "analogous" to class actions, White Decl. ¶¶ 72–73, Mr. Kirk explains that such actions require "that more than one person has the '*same interest*' in the claim"—a test that "has been strictly construed by the English courts"; do not allow for any "individualised assessments of damages"; and as a result "are rarely used in the English courts as a mechanism for obtaining collective redress." Kirk Decl. ¶¶ 62–64. Ultimately, Mr. Kirk's analysis leads him to conclude: "In my opinion, ***there is no practical analogous proceeding available in the English courts*** to the type of proceeding filed by Plaintiffs in these US proceedings." *Id*. ¶ 67 (emphasis added). Mr. White's final generalized conclusion, on the other hand, is "that English courts would provide a fair, impartial, efficient, and, given the underlying facts alleged by the Plaintiffs in this matter, convenient forum for the resolution of this dispute." White Decl. ¶ 79.

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

The Kirk Declaration offers a detailed and robust analysis of English law by a preeminent UK expert on consumer law—an analysis that supports this Court's conclusion in *Muto* that "[n]one of the procedures in the English and Welsh courts that Defendants have identified would offer Plaintiffs the essential benefits of the class action format." *Muto*, 2024 U.S. Dist. LEXIS 83275, at *9. The White Declaration does not support—much less demand—a different conclusion.[5]

### c. Plaintiffs maintain non-waivable rights in connection with their claims based on both California and federal law.

Although, as explained above, the inability to bring a U.S.-style class action under English law is, by itself, sufficient to invalidate a forum-selection clause, courts in California also refuse to enforce contractual provisions that force a plaintiff to waive rights deemed non-waivable by the California legislature. An anti-waiver provision may be explicit in a statute—such as the CLRA—and the California Supreme Court explained that the "unwaivability" of certain other rights "derives from two statutes that are themselves derived from public policy." *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 382 (2014). The first, California Civil Code § 1668, provides that any contract that seeks to "directly or indirectly" exempt oneself from "his own fraud" or "willful injury to the person or

---

[5] Mr. White offers similar "facts" regarding English law, but to the extent he comes to any conclusion specific enough to conflict with Mr. Kirk's conclusions, he fails to explain how he got there. If, however, the Court intends to credit Mr. White's or Mr. Taylor's testimony to support Defendants' FNC Motion, Plaintiffs respectfully request that they be given an opportunity to conduct discovery, including depositions, to test their factual statements and opinions before they are used to dismiss the case. *Cf. Union Asset Mgmt. Holding AG v. Sandisk LLC*, 227 F.Supp. 3d 1098, 1099–100 (N.D. Cal. 2017) (recognizing it would be improper for a court to credit a declaration and rely on it without giving the opposing party an opportunity to test the declaration's accuracy through discovery, evidentiary hearing, or both); *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1143 (9th Cir. 2004) (holding it was an abuse of discretion to grant 12(b)(3) motion without an evidentiary hearing when there are disputed facts).

property of another" or "violation of law, whether willful or negligent," is against the "policy of the law." *Id.*; Cal. Civ. Code § 1668. The second, California Civil Code § 3513, allows for a person to "waive the advantage of a law intended solely for his benefit," but forbids waiver of "a law established for a public reason"—such a law "cannot be contravened by a private agreement." *Iskanian*, 59 Cal. 4th at 382–83 (quoting Cal. Civ. Code § 3513).[6]

California courts and the Ninth Circuit have applied these principles to state consumer protection claims and federal claims, including RICO and the VPPA.[7] With respect to state consumer protection claims, the California Supreme Court held that an agreement that waives the right to seek injunctive relief in any forum, as the exclusivity clause does here by requiring consumers to litigate in a forum that does not allow for injunctive relief, is contrary to public policy. *McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017).

California courts have also explicitly found that where an exclusive jurisdiction provision prohibits consumers from bringing federal claims, such as RICO, it violates California public policy expressed in Cal. Civ. Code § 1668. *Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015), *order vacated in part on reconsideration*, 14-CV-03953-BLF, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015) (refusing to enforce contractual limitation on liability to plaintiffs' RICO claims, as doing so would

---

[6] The contract does not need to provide explicitly for a waiver; enforcement of a forum-selection clause is "prohibited under California law where it "would be the functional equivalent of a contractual waiver." *Mendoza*, 90 Cal. App. 4th at 5.

[7] "For purposes of the unenforceability analysis, California law includes federal law. ... Thus, a violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable as contrary to the public policy of California." *In re Uber Techs., Inc.,* No. 3084 CRB, 2024 U.S. Dist. LEXIS 90342, at *52 (N.D. Cal. May 20, 2024).

violate § 1668 by "exculpate[ing] [defendant] from liability for his own misconduct.").

Plaintiffs' VPPA claims are subject to their own explicit waiver requirements—which Defendants did not follow. The VPPA protects personally identifiable information from disclosure and that right can only be waived with the consumer's informed, written consent. 18 U.S.C.A. § 2710(b)(2)(B). Consent, moreover, must be in a form that is different from the form setting forth the consumer's other legal obligations; and is either (1) given at the time the disclosure of PII is sought, or (2) in advance so long as consent does not exceed two years or until withdrawn by the consumer, whichever is sooner. *Id*. Here, there was no consent given for the actions giving rise to the claims, let alone voluntary and informed consent that satisfies the VPAA. Without consent, the protections under the VPPA cannot be waived and the forum-selection clause, which would effectively waive such rights by eliminating consumers' ability to seek relief under the statute, is invalid.

> **d.    Enforcing the forum-selection clause would violate California's public policy by forcing Plaintiffs to waive their non-waivable rights under California and federal law.**

Forcing Plaintiffs and putative class members to litigate their claims—for fraud, consumer deception, and privacy violations under state and federal law—in England violates California law by immunizing Defendants from their fraudulent, unlawful conduct under California and federal laws meant explicitly to protect the public—effectively forcing Plaintiffs to waive non-waivable rights.

***First***, Defendants provide no basis to presume an English court would preserve Plaintiffs' California statutory rights. Indeed, under the choice-of-law clause in the OnlyFans TOS, an English court could determine that Plaintiffs' statutory claims don't apply at all—completely wiping out their substantive rights. Defendants concede this possibility: Mr. White states that an English court would apply its own conflict-of-laws analysis, and while he baldly claims that Plaintiffs

-14-

1  could ask an English Court to "consider whether any US law or California law

2  provision should be applied by the English court," nowhere does he suggest that an

3  English court **would** ever do so. White Decl. ¶ 40. This Court alone can make that

4  guarantee.

5      Mr. White then concludes that, regardless of the law applied, Plaintiffs would

6  have a "potential remedy," which Defendants cursorily call "adequate." *Id.* ¶ 41;

7  Dkt. 60 at 11. But it does not matter what *Defendants* consider "adequate"—what

8  matters are the rights and remedies explicitly conferred on California consumers by

9  the Legislature. Mr. White's assertion that Plaintiffs could obtain "remedies which

10 are broadly comparable" to the "causes of action advanced and the remedies sought

11 in the US Proceedings"—without any detailed discussion of the claims or any

12 discussion of the defenses—cannot supplant the protections California gave its

13 consumers. *Id.* ¶ 50. *See Bayol v. Zipcar, Inc*., No. 14-cv-02483-TEH, 2014 U.S.

14 Dist. LEXIS 135953, at *12-13 (N.D. Cal. Sep. 25, 2014) (even if consumers were

15 generally "better off under Massachusetts' laws," application of those laws would

16 "effect the waiver of California's unwaivable consumer remedies"—an

17 impermissible result since plaintiffs were "entitled to the specific protections

18 provided by the legislature and courts of California.").

19      **Second**, requiring California residents to bring their claims in England would

20 have an impermissible chilling effect on their California consumer rights, if not

21 extinguish them altogether—*even if* an English court were to attempt to apply

22 California consumer laws. As explained above, a consumer litigating their claims in

23 England runs the very real risk of having the *defendant's legal fees* assessed against

24 them if the English court denies their claims. Kirk Decl. ¶¶ 12, 60(c). A rational

25 consumer would not assume these risks to pursue their modest-value claims in

26

27

28

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

England, even if they had the means—resulting in a strong chilling effect on such claims.[8]

**Finally**, if forced to litigate in England, California consumers would lose their right to have their claims heard by a jury of their peers, as a jury trial would not be available. *Id.* ¶ 49(f).

### 3. The forum-selection clause is unenforceable in English courts because it is an "unfair" term under the Consumer Rights Act of 2015.

Furthermore, an English court would find the forum-selection clause to be unenforceable. The Kirk Declaration explains that the forum-selection clause is an "unfair term" under Section 62(3) of the Consumer Rights Act of 2015 ("CRA") and cannot be enforced against consumers like Plaintiffs. Kirk Decl. ¶¶ 49, 67. Mr. Kirk explains that the CRA prohibits terms in consumer contracts that "seek to restrict the liability of a trader to a consumer." *Id.* ¶ 28. He explains the "important principle" underpinning UK consumer law is that consumers should be able to commence proceedings against foreign companies operating in their jurisdiction in the consumer's home court. *Id.* ¶ 36. The basis for this principle is akin to California public policy: the costs of litigating abroad would often outstrip a claim's value, causing consumers to "forgo any legal remedy." *Id.* ¶ 38 (quoting CJEU *Oceano Grupo* C-240/98 [22]). In *Oceano Grupo* and other cases, UK courts have found forum-selection clauses to be unfair and therefore unenforceable. *Id.* ¶¶ 38–39. Thus, the forum-selection clause cannot be enforced in the UK and this Court should not dismiss Plaintiffs' claims by relying on a forum-selection clause that is unenforceable.

---

[8] Indeed, Defendants have not identified a single case in which any of the millions of U.S. users of OnlyFans have sued OnlyFans in England.

**B.    In the absence of an enforceable forum-selection clause, Defendants have failed to meet the heavy burden of overcoming the deference given to Plaintiffs' choice of forum.**

Once a court determines the forum-selection clause is invalid or unenforceable, it proceeds as if the clause did not exist, and "considers the factors of § 1404(a) to decide defendant's motion to transfer . . . rather than engaging in the modified *Atlantic Marine* analysis." *Deputy Synthes Sales, Inc. v. Stryker Corp*., No. EDCV18-1557, 2019 U.S. Dist. LEXIS 67403, at *10 (C.D. Cal. Feb. 5, 2019). Where a plaintiff chooses their home forum, that "choice of forum is entitled to greater deference," since "it is reasonable to assume that this choice is convenient." *Lueck*, 236 F.3d at 1143. And when the plaintiff is a United States citizen or resident, the plaintiff's choice of forum should be accorded significant deference and the defendant must satisfy a heavy burden of proof. *Id*.

Here, two of the named plaintiffs are California residents, and none are UK residents. Their choice to bring their claims in this Court weighs heavily in favor of denying Defendants' Motion, and Defendants have failed to make a showing that litigating in California would result in "oppression and vexation" to Defendants that is "out of proportion to the plaintiff's convenience." *Cheng v. Boeing Co*., 708 F.2d 1406, 1410 (9th Cir. 1983). Indeed, while the Taylor Declaration purports to establish the "fact" that "the forum-selection clause is necessary to manage the costs of litigation and reduce the inconvenience to OnlyFans' personnel of litigating claims all over the world," Taylor Decl. ¶ 37, it offers no details regarding that "inconvenience." Nor can the Court infer such details from, for example, the location of employees, since the Declaration is ambiguous about such key facts. Taylor states, for example, that "[n]either FIL nor Fenix Internet has any offices, employees, or other physical presence in California," *id*. ¶ 10, but use of the present

tense leaves open whether Defendants *ever had* such a presence.[9] Taylor offers no

details that would support a finding that Defendants' private interests weigh in

favor of dismissal—much less demand it.

## C.    Even if the forum-selection clause were enforceable, dismissal would still be inappropriate.

### 1.    Public interest factors

The public interest factors to be weighed by courts in deciding an FNC

motion include "(1) the local interest in the lawsuit, (2) the court's familiarity with

the governing law, (3) the burden on local courts and juries, (4) congestion in the

court, and (5) the costs of resolving a dispute unrelated to a particular forum."

*Carijano*, 643 F.3d at 1232. Most of these factors identify "how well-equipped a

jurisdiction is to handle a case," while the "local interest factor has the different aim

of determining if the forum in which the lawsuit was filed has its own identifiable

interest in the litigation which can justify proceeding in spite of these burdens." *Id.*

The California public policies implicated by the forum-selection clause,

*supra* section I.A.2, are relevant to the local interest factor—as are facts related to

Defendants' contacts with California. *E.g.*, *Jones v. GNC Franchising, Inc.*, 211

F.3d 495, 498 (9th Cir. 2000) (courts consider "the respective parties' contacts with

the forum," as well as "contacts relating to the plaintiff's cause of action in the

chosen forum"). While Defendants have offered the Taylor Declaration, which

purports to establish some "facts" addressing those contacts, Taylor's testimony is

---

[9] And while Taylor claims to have knowledge about Defendants' operations
during the entire "period relevant to Plaintiffs' claims," *id.* ¶ 5, he also admits he
has only held his position since December 2021, and apparently has only worked
for Defendants since (some unspecified time in) 2019, *id.* ¶ 2. These are the types
of issues Plaintiffs believe they would be entitled to discovery prior to the Court
deciding to dismiss the case on *forum non conveniens* grounds. *See generally*,
Plaintiffs' motion to serve limited discovery, included within their *Ex parte*
Application to Vacate Deadlines and for Discovery. Dkt. 81.

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

too ambiguous to credit as establishing any of those facts for the purposes of analyzing the FNC Motion.[10]

Moreover, nothing in Defendants' Motion or Declarations addresses the fact that they are only two of eleven defendants in this case who could be held jointly and severally liable on Plaintiffs' claims. The Agency Defendants are all alleged to have connections to California, and Fenix Defendants have offered no suggestion that they have any connections to the UK—much less that they would find it more convenient to litigate this case overseas, or that they would even be entitled to do so. The likelihood of splintered, piecemeal litigation weighs against granting Defendants' Motion.

**2.      Defendants' post-complaint update to the forum-selection clause supports keeping the case in this Court; doing otherwise would lead to piecemeal litigation and is unreasonable under the circumstances.**

Approximately one month after Plaintiffs filed suit—and *before* Defendants filed the instant Motion—Defendants unilaterally modified the TOS, ***removing the mandatory forum-selection clause and replacing it with a permissive one***. Specifically, the current TOS, available at www.onlyfans.com/terms, states that, for users outside the UK or EU (*i.e.*, U.S. consumers), "the courts of England and Wales ***will have jurisdiction*** over any claim" arising out of the consumer's use of the site (emphasis added). Thus, where the provision in the 2021 TOS that Defendants seek to enforce here provides that claims "***must*** be brought" in English courts (emphasis added), Defendants have since modified the term to remove the mandatory language.

In this Circuit, "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). Indeed, the Ninth Circuit has addressed almost identical language and

---

[10] *See supra*, note 9.

concluded that the clause is permissive, not mandatory: "Here, the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action. The language says nothing about the Orange County courts having exclusive jurisdiction." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987); *see Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F. Supp. 3d 993, 1007 (N.D. Cal. 2018) ("clauses simply signifying agreement to jurisdiction in a particular forum are deemed permissive"); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162 (E.D. Cal. 2003) ("A forum-selection clause is permissive if does not preclude suit elsewhere with express language.").

Under English law, the 2024 TOS forum-selection clause would also be understood as permissive, not exclusive. First, to the extent there is any ambiguity in whether the clause requires an English forum (there is not), the Consumer Rights Act of 2015 requires the ambiguity be read in the consumer's favor—in this case, against Defendants. CRA 69(1) ("if a term in a consumer contract . . . could have different meanings, the meaning that is most favourable to the consumer is to prevail"); *see* Kirk Decl. ¶ 50(a) (discussing same). But even in a commercial context, courts have interpreted forum-selection clauses as non-exclusive even when, like here, they do not explicitly state that the selected forum is exclusive. *See, e.g., Cannon Screen Entertainment Ltd v Handmade Films (Distributors) Ltd* (July 11 1989 QBD unreported) (clause stating that "the parties hereby consent and submit to the jurisdiction of the Courts of England in connection with any dispute arising hereunder" did not require English forum); *Sabah Shipyard (Pakistan) Ltd v The Islamic Republic of Pakistan & Anr* [2002] EWCA Civ 1643. [2003] 2 Lloyd's Rep. 571 (clause stating "[e]ach party hereby consents to the jurisdiction of the Courts of England for any action filed by the other Party under this Agreement to resolve any dispute between the Parties" did not require English forum).

The same is true here after OnlyFans' recent amendment of its TOS.

The natural reading of the 2024 TOS forum-selection clause is that it is permissive, not mandatory—it states only that jurisdiction will lie, but does not purport to require filing in any particular forum. Indeed, both the law of this Circuit and English law confirm this reading: the clause *permits* filing in England, but does not require it.

The import here is that many thousands, if not millions, of putative class members *are not barred* from litigating in this forum, since this new permissive clause applies to the likely millions of putative class members (and Plaintiffs) who have used the OnlyFans site since September 1, 2024. The fact that any of these putative class members—including any joining as named plaintiffs in an amended complaint in the current action—could *not* be forced to litigate in England and Wales. Granting Defendants' FNC Motion with respect to only those class members who have not used the OnlyFans website since September 1, 2024, would result both in piecemeal litigation and likely in parallel and duplicative actions.

Enforcement of the prior forum-selection clause—which, as explained above, should already be found unconscionable and unenforceable, and which Defendants unilaterally and voluntarily modified shortly before filing the instant Motion—is even more unreasonable under these circumstances.[11]

---

[11] Federal courts regularly decline to enforce forum-selection clauses where doing so would result in piecemeal litigation. *See*, *e.g.*, *ABC Medical Holdings, Inc. v. Home Medical Supplies, Inc.*, No. 15-2457, 2015 WL 5818521, at *9 (E.D. Pa. Oct. 6, 2015) (finding that where forum selection clause was enforceable as to one defendant but not another, "[t]he public interest in efficiency served by litigating substantially the same claims in one court rather than two outweighs the prior agreement as to forum"); *Carney v. Beracha*, 996 F.Supp. 2d 56, 71 (D. Conn. 2014) (enforcement unreasonable where "it would require piecemeal litigation in multiple fora and, in some cases, might require multiple courts to adjudicate claims covering only portions of each transaction").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Fenix Defendants' Motion to Dismiss for Forum Non Conveniens.

DATED:  November 27, 2024.          Respectfully submitted,

                              HAGENS BERMAN SOBOL SHAPIRO LLP

                              By */s/ Robert B Carey*
                              Robert B. Carey (*pro hac vice*)
                              Leonard W. Aragon (*pro hac vice*)
                              Michella A. Kras (*pro hac vice*)

                              HAGENS BERMAN SOBOL SHAPIRO LLP
                              11 West Jefferson, Suite 1000
                              Phoenix, Arizona 85003
                              Telephone: (602) 840-5900
                              Facsimile:  (602) 840-3012
                              Email: rob@hbsslaw.com
                                   leonarda@hbsslaw.com
                                   michellak@hbsslaw.com
                              Christopher R. Pitoun (SBN 290235)
                              301 N. Lake Avenue, Suite 920
                              Pasadena, California 91101
                              Telephone: (213) 330-7150
                              Facsimile:  (213) 330-7152
                              Email: christopherp@hbsslaw.com

                              Andrea R. Gold (*pro hac vice*)
                              David A. McGee (*pro hac vice*)
                              Shana H. Khader (*pro hac vice*)
                              TYCKO & ZAVAREEI LLP
                              2000 Pennsylvania Avenue NW, Suite 1010
                              Washington, DC 20006
                              Phone: (202) 973-0900
                              Facsimile: (202) 973-0950
                              Email: agold@tzlegal.com
                                   dmcgee@tzlegal.com
                                   skhader@tzlegal.com

                              *Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,893 words which complies with the word limit of L.R. 11-6.1.

Dated: November 27, 2024

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that this document filed through the CM/ECF system and

3  will be sent electronically to the registered participants.

4  Dated: November 27, 2024      */s/ Robert B. Carey*

                                     Robert B. Carey

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' RESP. IOT FENIX DEFS.' MTD FOR FORUM NON CONVENIENS