JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>                                  Plaintiffs,<br><br>            v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>                                  Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>Judge:        Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:          January 30, 2025<br>Time:          10:00 a.m. |

# TABLE OF CONTENTS

PAGE:

INTRODUCTION ......................................................................................... 1

ARGUMENT ................................................................................................ 2

I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT ENFORCING THE FORUM-SELECTION CLAUSE WOULD NOT CONTRAVENE ANY CALIFORNIA PUBLIC POLICY .................... 3

      A.    The Parties' Experts Agree Collective Relief Is Available In England ...................................................................................... 3

      B.    Plaintiffs Cannot Show They Will Waive Non-Waivable Rights On Proceeding In England ...................................................... 8

      C.    Plaintiffs' Authorities Do Not Rescue Their Opposition ........... 11

II.   PLAINTIFFS DO NOT OTHERWISE SHOW THE FORUM-SELECTION CLAUSE IS INVALID ................................................... 14

III.  THE PUBLIC INTEREST FACTORS MANDATE DISMISSAL ...... 17

CONCLUSION ........................................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................................... 20

i

**TABLE OF AUTHORITIES**

**PAGE(S):**

**CASES**

*America Online, Inc. v. Superior Court,*
    90 Cal.App.4th 1 (2001) .................................................................... 11, 12

*America Dredging Co. v. Miller,*
    510 U.S. 443 (1994) ................................................................................. 16

*Aral v. Earthlink, Inc.,*
    134 Cal.App.4th 544 (2005),
    *abrogated on other grounds by*
    *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................ 11, 13

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas,*
    571 U.S. 49 (2013) ................................................................................. 17

*Bayol v. Zipcar, Inc.,*
    No. 14-cv-02483-TEH,
    2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) ........................................... 8

*Bowerman v. Field Asset Services, Inc.,*
    60 F.4th 459 (9th Cir. 2023) ............................................................... 5, 6

*Capriole v. Uber Technologies, Inc.,*
    7 F.4th 854 (9th Cir. 2021) ................................................................... 10

*Carnival Cruise Lines, Inc. v. Shute,*
    499 U.S. 585 (1991),
    *superseded by statute, as recognized by*
    *Yang v. M/V MINAS LEO*, 76 F.3d 391 (9th Cir. 1996) ........................... 15

*de Fontbrune v. Wofsy,*
    838 F.3d 992 (9th Cir. 2016) ................................................................... 4

*Doe 1 v. AOL LLC,*
    552 F.3d 1077 (9th Cir. 2009) ............................................................ 11, 13

*E & J Gallo Winery v. Andina Licores S.A.,*
    446 F.3d 984 (9th Cir. 2006) ................................................................. 17

ii

*In re First American Home Buyers Protection Corp. Class Action Litigation*,
  313 F.R.D. 578 (S.D. Cal. 2016),
  *aff'd*, 702 F.App'x 614 (9th Cir. 2017) .................................................................. 6

*Flowers Industries, Inc. v. F.T.C.*,
  835 F.2d 775 (11th Cir. 1987),
  *superseded by statute*, *as recognized by*
  *Rare Breed Triggers, LLC v. Garland*,
  639 F.Supp.3d 903 (D.N.D 2022) ................................................................. 16, 17

*Frango Grille USA, Inc. v. Pepe's Franchising Ltd.*,
  No. CV 14-2086 DSF (PLAx),
  2014 WL 7892164 (C.D. Cal. July 21, 2014) ............................................................ 9

*Friedman v. Global Payments Inc.*,
  No. CV 18-3038 FMO (FFMx),
  2019 WL 1718690 (C.D. Cal. Feb. 5, 2019) ............................................................ 9

*Huthart v. News Corp.*,
  No. CV-13-04253-MWF (AJWx),
  2014 WL 12577175 (C.D. Cal. May 21, 2014).......................................................... 10

*Ingram v. HamSquad, Inc.*,
  No. 2:21-cv-09664-FWS (KSx),
  2023 WL 7276562 (C.D. Cal. July 20, 2023) ...................................................... 2, 3

*Intershop Communications v. Superior Court*,
  104 Cal.App.4th 191 (2002) ................................................................................. 15

*Kiwijet, LLC v. Guangzhou Hayonex International Logistics Co. Ltd*,
  No. 2:21-cv-07515-FWS-JDE,
  2024 WL 3468926 (C.D. Cal. June 10, 2024)...................................................... 2, 17

*Lipeles v. United Airlines*, *Inc.*,
  No. CV 23-7143-KK-MAAx,
  2024 WL 1946660 (C.D. Cal. Apr. 11, 2024)........................................................... 15

*Losson v. Union des Associations Europeennes de Football*,
  No. 23-cv-06500-JSC,
  2024 WL 3406987 (N.D. Cal. July 11, 2024) ........................................................... 4

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ................................................................................. 2

iii

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) ................................................................. 11

*McGill v. Citibank, N.A.*,
    2 Cal.5th 945 (2017) ............................................................................... 10

*Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*,
    116 F.Supp.3d 1010 (N.D. Cal. 2015),
    *order vacated in part*,
    No. 14–cv–03953–BLF,
    2015 WL 4624678 (N.D. Cal. Aug. 3, 2015) ........................................... 10

*Monugian v. Desarrollo Marina Vallarta S.A. DE C.V.*,
    No. CV 08-1497 GAF (AJWx),
    2008 WL 11336862 (C.D. Cal. Dec. 15, 2008)..................................... 8, 14

*Moretti v. Hertz Corp.*,
    No. C 13-02972 JSW,
    2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)..................................... 15, 16

*Muniz v. Fenix International Ltd.*,
    NO. 1:20-cv-03200-LMM,
    2021 WL 3417581 (N.D. Ga. June 28, 2021) ......................................... 14

*Murphy v. Schneider National, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ................................................................. 14

*Muto v. Fenix International Ltd.*,
    No. 5:22-cv-02164-SSS-DTBx,
    2024 WL 2148734 (C.D. Cal. May 2, 2024)....................................... 11, 12

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ................................................................. 15

*Out of Nowhere v. Nolan Transportation Group, LLC*,
    No. 2:21-cv-08823-FWS-JPR,
    2023 WL 398105 (C.D. Cal. Jan. 3, 2023).............................................. 14

*Pinnacle Foods of California, LLC v. Popeyes Louisiana Kitchen, Inc.*,
    No. 2:21-cv-02050-SVW-SK,
    2021 WL 3557744 (C.D. Cal. Apr. 21, 2021)............................................. 9

iv

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)............................................................... 1

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ............................................... 3

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ......................................... 9, 10

*Rochfort v. EF Institute for Cultural Exchange, Inc.*,
   No. 3:20-cv-00508-GPC-BLM,
   2020 WL 12833951 (S.D. Cal. Sept. 8, 2020) ....................... 8

*Rosenberg v. Viking River Cruises, Inc.*,
   No. 2:19-cv-09691-RGK-AS,
   2020 WL 1442886 (C.D. Cal. Mar. 23, 2020) ........................ 4

*Rostami v. Hypernet Inc.*,
   No. 22-cv-01813-EJD,
   2023 WL 2717262 (N.D. Cal. Mar. 29, 2023) ...................... 16

*Sawyer v. Bill Me Later, Inc.*,
   No. CV 10-04461 SJO (JCGx),
   2011 WL 7718723 (C.D. Cal. Oct. 21, 2011) ......................... 8

*Shroyer v. New Cingular Wireless Services, Inc.*,
   498 F.3d 976 (9th Cir. 2007) ............................................... 15

*Suski v. Marden-Kane, Inc.*,
   No. 21-cv-04539-SK,
   2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ...................... 15

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ....................................... passim

*Ward v. Crow Vote LLC*,
   343 F.R.D. 133 (C.D. Cal. 2022),
   *aff'd*, 2024 WL 2239010 (9th Cir. May 17, 2024). ................. 6

*Whipple Industries, Inc. v. Opcon AB*,
   No. CV-F-05-0902 REC SMS.,
   2005 WL 2175871 (E.D. Cal. Sept. 7, 2005) ....................... 11

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) .................................................................... 7, 9

**STATUTES**

18 U.S.C. §2710(c)(2)(A) ........................................................................... 13

18 U.S.C. § 2710 .......................................................................................... 8

Cal. Lab. Code § 925(a)(1) ........................................................................... 9

Cal. Civ. Code § 1668 .............................................................................. 9, 10

Cal. Civ. Code § 3513 .................................................................................. 9

**RULES**

Fed. R. Civ. P. 23(b)(3) ................................................................................ 5

Fed. R. Civ. P. 44.1 ...................................................................................... 4

# INTRODUCTION

1

2      In their Motion to Dismiss for Forum Non Conveniens ("Motion"), Specially

3  Appearing Defendants Fenix International Limited ("FIL") and Fenix Internet LLC

4  (collectively, "Fenix") established, and Plaintiffs do not dispute, that every Plaintiff

5  affirmatively and repeatedly agreed to a forum-selection clause in the OnlyFans Terms of

6  Service ("Terms") stating "any claim… arising out of or in connection with your agreement

7  with us or your use of OnlyFans (including, in both cases, non-contractual disputes or

8  claims) must be brought in the courts of England and Wales." ("Forum-Selection Clause")

9  (Mot. at 3-6).[1] Plaintiffs further do not dispute, and thus concede, Fenix's showing the

10  Forum-Selection Clause applies to all claims asserted by Plaintiffs here. (*Id*. at 7-10.)

11      Plaintiffs also do not challenge Fenix's showing that (i) English courts provide an

12  adequate alternative forum under the law, because the Fenix entities are amenable to

13  service of process there, and the remedies available are not "so clearly inadequate or

14  unsatisfactory that it is no remedy at all," (*id*. at 10-13, citing, *inter alia*, *Piper Aircraft Co.*

15  *v. Reyno*, 454 U.S. 235, 254-55 & n.22 (1981)); (ii) the inclusion of the Forum-Selection

16  Clause was not the product of fraud or coercion (*id*. at 13-16); and (iii) enforcing the

17  Forum-Selection Clause would not deprive Plaintiffs of their day in court (*id*. at 16).

18      Instead, Plaintiffs focus almost entirely on a single contention—that enforcing the

19  Forum-Selection Clause would contravene California public policy because Plaintiffs

20  would "lo[se] California consumers' rights to pursue their putative consumer class claims."

21  (Opp'n at 1.) For this proposition, Plaintiffs primarily rely on expert Jonathan Kirk, but

22  Kirk *concedes* the availability of collective relief in England (ECF 85-1 ("Kirk Decl.")

23  ¶12)—consistent with his previous testimony. When retained by corporate defendant

24  Apple in another consumer class action, Kirk attested that "[t]he UK has a robust and

25  respected legal system that would allow UK consumer protection issues to be ventilated

---

26  [1]    Unless otherwise noted, all emphases are added, and all citations, alterations, and
27  internal quotation marks are omitted from all quoted material for ease of reading. "Taylor
   Decl." and "White Decl." references are to the declarations of Lee Taylor and Antony
28  White filed as ECF 60-1 and 60-2, respectively. "Hamilton Decl." refers to the
   concurrently-filed Declaration of Hillary Hamilton.

1  and determined in UK courts, *on behalf of multiple litigants*, by UK judges that have long

2  experience of applying English law." (Hamilton Decl. Ex. 2, ¶7(d).) Plaintiffs also argue

3  they would have to waive "non-waivable" rights if the Forum-Selection Clause is enforced,

4  but make no showing of such supposed waiver as required under settled Ninth Circuit law.

5      Finally, Plaintiffs try, but fail, to show the Forum-Selection Clause is

6  "unconscionable" because it was a contract of adhesion containing terms that Plaintiffs

7  indisputably were provided but apparently never read. A plethora of cases reject their

8  precise arguments, and the same result should occur here.

9      In short, Plaintiffs' arguments fail to meet their "burden of showing why the court

10  should not dismiss the case." *Ingram v. HamSquad, Inc.*, 2023 WL 7276562, at *6 (C.D.

11  Cal. July 20, 2023) (Slaughter, J.) Accordingly, the Court should dismiss the action.

12  <u>**ARGUMENT**</u>

13      Fenix showed, and Plaintiffs concede, that forum non conveniens is the means to

14  enforce a forum-selection clause designating a foreign forum; when the forum-selection

15  clause is valid, courts are only permitted to consider the public interest factors and are

16  "requir[ed]… to disregard the private interest factors" (Opp'n at 4); and "[u]nder federal

17  law, forum[-]selection clauses are presumptively valid and should be honored absent some

18  compelling and countervailing reasons." *Kiwijet, LLC v. Guangzhou Hayonex Int'l

19  Logistics Co.*, 2024 WL 3468926, at *5 (C.D. Cal. June 10, 2024) (Slaughter, J.). (*See* Mot.

20  at 8, 13, 18; Opp'n at 3-4.)

21      Plaintiffs ignore the requirement that the Court must first determine the existence of

22  an "adequate" alternative forum, where defendants are amenable to service of process (like

23  Fenix here) and plaintiff can receive *some* remedy, even if "certain types of remedies are

24  unavailable in the foreign forum." (*See* Mot. at 10-13 (collecting cases); *see also Lueck v.

25  Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) (affirming dismissal of action

26  brought by multiple plaintiffs for forum non conveniens because "a foreign forum will be

27  deemed adequate unless it offers no practical remedy for the plaintiff's complained of

28  wrong" and "[a]lthough New Zealand law does not permit Plaintiffs to maintain this exact

2

1  suit, New Zealand… provide[s] a remedy for Plaintiffs' losses") (cited by Plaintiffs); *Ranza*

2  *v. Nike, Inc.*, 793 F.3d 1059, 1077 (9th Cir. 2015) (affirming forum non conveniens

3  dismissal, noting "[t]hat the law, or the remedy afforded, is less favorable in the foreign

4  forum is not determinative") (cited by Plaintiffs).)

5       As Plaintiffs' expert Kirk opined for Apple in a class action asserting consumer

6  protection claims, including FAL and UCL claims, "the UK legal system provides *an*

7  *adequate and appropriate forum*… best placed to address the complexities of consumer

8  protection claims" based on alleged Apple misrepresentations about its products'

9  performance. (Hamilton Decl. Ex. 2 ¶19; *id*. Ex. 1 ¶¶291-369, 492-521.)

10       In short, England is indisputably an adequate forum.

11  I.  **PLAINTIFFS' OPPOSITION CONFIRMS THAT ENFORCING**

12     **THE FORUM-SELECTION CLAUSE WOULD NOT**

13     **CONTRAVENE ANY CALIFORNIA PUBLIC POLICY**

14       The Motion demonstrated that federal courts may only refuse to enforce a forum-

15  selection clause in three scenarios: "(1) the clause is invalid due to fraud or overreaching,

16  (2) enforcement would contravene a strong public policy of the forum in which suit is

17  brought, whether declared by statute or by judicial decision, or (3) trial in the contractual

18  forum will be so gravely difficult and inconvenient that the litigant will for all practical

19  purposes be deprived of their day in court." *Ingram*, 2023 WL 7276562, at *3. Fenix also

20  demonstrated that Plaintiffs cannot establish any of those scenarios. (*See* Mot. at 13-18.)

21       In response, Plaintiffs assert only that "enforcement of the forum-selection clause

22  would violate California's public policy by forcing Plaintiffs to forgo their well-established

23  rights to class-action relief and to waive other non-waivable rights under California law."

24  (Opp'n at 6.) Neither assertion has any basis in the law.

25     A.  **The Parties' Experts Agree Collective Relief Is Available In England**

26       Courts in this Circuit routinely reject arguments based on the unavailability of class

27  action relief in a foreign forum because "an alternative forum need not provide the same

28  degree of relief to be considered adequate," so "the absence of the class-action device…

3

1   does not by itself bar dismissal." *Rosenberg v. Viking River Cruises, Inc.*, 2020 WL

2   1442886, at *3 (C.D. Cal. Mar. 23, 2020) (holding Switzerland was adequate forum despite

3   lack of class action relief) (collecting cases). Indeed, "[i]f [Plaintiffs'] analysis was correct,

4   *nearly no international forum-selection clause would be enforceable as most countries do*

5   *not have a class action procedure*." *Losson v. Union des Associations Europeennes de*

6   *Football*, 2024 WL 3406987, at *3 (N.D. Cal. July 11, 2024).

7         Regardless, Fenix showed English law offers at least three different collective action

8   mechanisms for Plaintiffs to pursue, even for "low value individual claims": the use of a

9   single claim form by multiple litigants, a Group Litigation Order ("GLO"), or a

10  representative action. (White Decl. ¶¶68-74.) In response, Plaintiffs contend their expert

11  Kirk is of the opinion that "there is *no similar procedure* in the English courts that would

12  permit Plaintiffs and putative class members to enforce their consumer class action rights."

13  (Opp'n at 10.) Unfortunately for Plaintiffs, Kirk disagrees with their argument.

14        Contrary to Plaintiffs' insistence that they would lose their "rights to pursue their

15  putative consumer class claims" (Opp'n at 1), Kirk explicitly "*agree[s]*" with Fenix's

16  expert Antony White "that there is a mechanism through which group litigation could be

17  advanced in the English court system." (Kirk Decl. ¶12.)[2]

18        Notably, Kirk previously attested for Apple, consistent with White, that "[t]he UK

19  allows for three types of collective action: joint claims, representative actions, and group

20

21  [2]    Plaintiffs renew their ill-considered request for discovery and deposition of White,
    despite this Court's emphatic rejection. (*Compare* Opp'n at 12 n.5 with ECF 83 at 5-6.)

22  Among other things, Plaintiffs still "fail[] to specify which, if any, factual assertions" of
    White's necessitate such discovery, nor can they. (ECF 83 at 5.) That is because White is

23  an English barrister-at-law explaining English law, rather than any facts pertinent to the
    motion. (*See* White Decl. ¶6(a)-(d).) The Federal Rules of Civil Procedure ("FRCP") make

24  clear that "[t]he court's determination [of foreign law] must be treated as a ruling on a
    question of law." FRCP 44.1; *see also de Fontbrune v. Wofsy*, 838 F.3d 992, 999-1000 (9th

25  Cir. 2016) (rulings on foreign law "are determinations of law, not of fact"). The Ninth
    Circuit has explained that the "basic mode" of determining foreign law is "[i]ndependent

26  research, plus the testimony of foreign legal experts, together with extracts of foreign legal
    materials"—not discovery. *See id.* (holding that a court can determine foreign law at the

27  pleading stage based on expert affidavits). Plaintiffs can contest White's opinions on
    English law the same way they would contest any other legal proposition—by offering a

28  different (albeit erroneous) interpretation of the law. Discovery is thus unwarranted.

litigation" available to "multiple litigants" in England seeking relief based on a company's alleged mispresentations, noting that "[g]roup litigation *is closest in nature to a class action such as the present case*." (Hamilton Decl. Ex. 2 ¶¶7, 16.) Kirk told the *Apple* court that "[o]n application, the High Court may make a GLO… where there are a number of claims raising common issues" and that "[t]here are currently 105 GLOs in place that include claims *concerning a wide variety of issues including personal injury, financial services and the motor industry*." (*Id.* ¶16.)[3]

Here, Kirk again acknowledges "[i]f a GLO is ordered a court can make a variety of case management directions in relation to the determination of 'common or related issues of fact or law.'" (Kirk Decl. ¶58.) Now retained by plaintiffs, Kirk tries to contradict his testimony in the *Apple* litigation and posits a GLO action is not "analogous" to a Rule 23 class action, but only because "[t]he claimants must each consent to being an identified claimant in the proceedings" and pay a "court issue fee"—which he does not identify.[4] (*Id.* ¶¶12, 59-60.)

Like in the *Apple* litigation, Kirk also acknowledges the existence of "representative actions," which he describes as among the multiple "English remedies for obtaining collective redress." (*Id.* ¶62.) He further admits the *Lloyd v. Google* decision discussed by White "clarified that there may be circumstances where a representative action could be brought in relation to a damages claim, but not where an 'individualised assessment' of damages was necessary," which would "preclude a representative claim." (*Id.* ¶¶63-64; White Decl ¶73.) But this is no different than a Rule 23 class action, which requires "questions of law or fact common to class members predominate over any questions affecting only individual members." FRCP 23(b)(3); *see also, e.g.*, *Bowerman v. Field*

---

[3]     Currently there are 124 GLOs covering the same "wide variety" of consumer protection issues. *See* https://www.gov.uk/government/publications/group-litigation-orders/list-of-group-litigation-orders (cited by Kirk, *see* Hamilton Decl. Ex. 2 ¶16 n.10).

[4]     Kirk omits that a filing fee was also required for Plaintiffs to file this action, and does not suggest that English courts would not allow counsel for the litigants to advance that fee on behalf of their clients, just as plaintiffs' counsel in consumer class actions routinely do in U.S. courts.

1  *Asset Servs., Inc.*, 60 F.4th 459, 470-71 (9th Cir. 2023) (reversing order granting class

2  certification where "individualized mini-trials" were "required to establish liability and

3  damages"). Kirk tellingly does *not* dispute White's showing that—also like Rule 23

4  actions—class members *may opt out* of representative actions. (White Decl. ¶73.)

5       Finally, and most importantly, Kirk *ignores* White's extensive discussion of English

6  courts' growing acceptance of using "a single Claim Form to bring very large numbers of

7  relatively low value individual claims." (*Id*. ¶70.) White explained "[t]his procedural

8  approach is now commonly adopted in the English courts… where each individual

9  claimant's claim may be worth only a few hundred pounds," that "economies of scale

10 achieved by joining thousands of claimants in one action have led to the regular use of the

11 procedure," and noting "no reason why" Plaintiffs' claims "could not be pursued using this

12 procedure." (*Id*. ¶71.)

13      Kirk does not challenge, let alone refute, White's conclusions regarding the single-

14 claim-form approach, and instead admits "the law on representative actions is a developing

15 area in the English courts." (Kirk Decl. ¶¶61, 65.) He conclusorily opines the approach is

16 "not analogous" only because it is "opt in," and "its use ultimately depends upon whether

17 a judge can be persuaded that it is 'convenient' to try the claims together, *which is unlikely*

18 *where there are material factual differences between the individual claimants*." (*Id*. ¶61.)

19      Kirk's attempted distinction does not help Plaintiffs, since a U.S. court will likewise

20 not "be persuaded to try the claims together… where there are material factual differences

21 between the individual claimants" (*id*.)—because Rule 23 also does not permit class

22 certification in that instance. *See Bowerman*, 60 F.4th at 469; *In re First Am. Home Buyers*

23 *Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 606 (S.D. Cal. 2016) (refusing to certify

24 consumer class because of factual differences between class members).[5]

25 ───────────────
   [5]    As this Court has recognized, "[a]n individual question is one where members of a
26 proposed class will need to present evidence that varies from member to member, while a
   common question is one where the same evidence will suffice for each member to make a
27 prima facie showing or the issue is susceptible to generalized, class-wide proof." *Ward v.*
   *Crow Vote LLC*, 343 F.R.D. 133, 141–42 (C.D. Cal. 2022) (Slaughter, J.) (refusing to
28 certify class asserting RICO and UCL claims where plaintiffs' "proposed common issue of
   *(cont'd)*

1   In sum, Kirk's (repeated) admissions that numerous mechanisms exist for "multiple
2   litigants" to pursue their claims collectively in English courts defeat Plaintiffs' arguments
3   here. That some, but not all, of these mechanisms are "opt in"—Kirk's only basis to
4   distinguish GLOs and the single-claim-form options from Rule 23 class actions—is
5   inconsequential. As the Ninth Circuit recognized, "a [forum-selection] clause remains
6   enforceable even when the contractually selected forum *may afford the plaintiffs less*
7   *effective remedies than they could receive in the forum where they filed suit*," because "the
8   fact that *certain types of remedies* are unavailable in the foreign forum does not change the
9   calculus if there exists a basically fair court system in that forum that would allow the
10  plaintiff to seek some relief." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d
11  1081, 1092 (9th Cir. 2018) (second emphasis in original).

12  Importantly, Plaintiffs' counsel is well-versed in class litigation in England. Hagens
13  Berman frequently litigates collective actions in England comprised of numerous
14  claimants. (Hamilton Decl. Exs. 3-8.) For example, Hagens Berman represents the lead
15  class representative in an opt-out collective action of nearly *50 million* consumers seeking
16  between £1.221 and £1.361 billion in damages due to allegedly deceptive Amazon business
17  practices, noting "[t]he nature of the claims which are relatively low in value on an
18  individual basis but substantial in aggregate are… a prime example of the type of claims
19  for which collective proceedings provisions were designed" as "*the only economically*
20  *viable method for individual class members to obtain compensation*." (Hamilton Decl. Ex.
21  3 at 2-4, Ex. 4 ¶37; *see also id.* Exs. 5-6 (collective action of 712 class members represented
22  by Hagens Berman asserting fraud and breach of contract claims against automaker); Ex.
23  7 (same, 7388 class members).) Given that Hagens Berman can likewise represent this
24  putative class in England, there will be no prejudice to Plaintiffs if the Forum-Selection

25

26  _____
27  fact—that proposed class members paid money to cast votes—is not a question that can
    generate common answers apt to drive the resolution of the litigation" and "the question of
28  whether the contest was illegal gambling under Arizona law requires examining individual
    voters' intent in casting votes").

1  Clause is enforced.[6]

2  **B.** <u>**Plaintiffs Cannot Show They Will Waive**</u>

3  <u>**Non-Waivable Rights On Proceeding In England**</u>

4  Alternatively, Plaintiffs argue that "[f]orcing Plaintiffs and putative class members

5  to litigate their claims—for fraud, consumer deception, and privacy violations under state

6  and federal law—in England… effectively forc[es] Plaintiffs to waive non-waivable

7  rights." (Opp'n at 14.) Plaintiffs' assertion is wrong for at least two reasons.

8  *First*, Plaintiffs' argument fails because they cannot point to any express

9  "antiwaiver" provision in the statutes under which they bring their claims. *See, e.g.*,

10  *Monugian v. Desarrollo Marina Vallarta S.A. DE C.V.*, 2008 WL 11336862, at *6 (C.D.

11  Cal. Dec. 15, 2008) (noting no antiwaiver provisions in UCL and FAL). Plaintiffs claim—

12  but do not and cannot point to—an "explicit waiver" provision in the VPPA, (*compare*

13  Opp'n at 14 *with* 18 U.S.C. § 2710), and cite the Consumer Legal Remedies Act ("CLRA")

14  as an example of a statute with an antiwaiver provision, but admit a CLRA claim "has not

15  been advanced here," and is therefore irrelevant. (Opp'n at 8 n.3, 12.)[7]

16  *Second*, even if Plaintiffs could invoke an express antiwaiver provision—which they

---

17
18  [6]    Hagens Berman's active English class action practice undermines Plaintiffs' contention that an English court would reject the Forum-Selection Clause as an "unfair term" under *Oceano Grupo* C-240/98 [22] (Opp'n at 16.) *Oceano Grupo* describes
19  "disputes concerning limited amounts of money," where "costs related to the consumer's entering an appearance could be a deterrent." *Id.* Plaintiffs' counsel's litigation on behalf
20  of millions of consumers in England show costs are *not* automatically a "deterrent," especially where, as here, Plaintiffs individually seek tens of thousands of dollars in
21  damages. *Infra* §I.C.

22  [7]    Plaintiffs' reliance on a single decision refusing to transfer a CLRA action for public policy reasons is thus misplaced. *See Bayol v. Zipcar, Inc.*, 2014 WL 4793935, at *2-3
23  (N.D. Cal. Sept. 25, 2014). In fact, courts in this Circuit routinely transfer CLRA claims to other federal courts, recognizing there is no contravention of public policy where a plaintiff
24  can argue California law applies in the court designated in the forum-selection clause. *See, e.g.*, *Sawyer v. Bill Me Later, Inc.*, 2011 WL 7718723, at *7-8 (C.D. Cal. Oct. 21, 2011)
25  (rejecting argument that Utah court "will automatically enforce the choice-of-law provision favoring Utah law, thereby denying Plaintiff his rights… under the CLRA" because "the
26  FSC by itself does not contravene California public policy because Plaintiff is able to argue, in the appropriate forum, that California state law applies"); *Rochfort v. EF Inst. for*
27  *Cultural Exch., Inc.*, 2020 WL 12833951, at *8 (S.D. Cal. Sept. 8, 2020) (transferring CLRA claim because "Plaintiffs can argue for the applicability of California law" in
28  transferee court and "the fact that the court may ultimately decide the CLRA does not apply does not render the forum[-]selection clause itself contrary to California public policy").

1   cannot—the Ninth Circuit has repeatedly made clear that "the strong federal policy in favor
2   of enforcing forum-selection clauses *would supersede antiwaiver provisions in state*
3   *statutes as well as federal statutes*, regardless whether the clause points to a state court, *a*
4   *foreign court*, or another federal court." *Sun*, 901 F.3d at 1090; *see also Richards v. Lloyd's*
5   *of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (en banc) (holding explicit antiwaiver
6   provision of the 1934 Securities Exchange Act did not preclude dismissal of securities
7   claims for forum non conveniens, rejecting contention that "public policy reasons allow
8   the [appellants] to escape their solemn agreement to adjudicate their claims in England
9   under English law," because "we cannot have trade and commerce in world markets…
10  exclusively on our terms, governed by our laws, and resolved in our courts."). "Because an
11  antiwaiver provision by itself does not supersede a forum-selection clause, in order to prove
12  that enforcement of such a clause would contravene a strong public policy… the plaintiff
13  must point to a statute or judicial decision *that clearly states such a strong public policy*."
14  *Sun*, 901 F.3d at 1090.

15      Given that "the Ninth Circuit does enforce forum-selection clauses notwithstanding
16  more general anti-waiver statutes that do not speak specifically to the enforceability of
17  forum-selection clauses," *Pinnacle Foods of California, LLC v. Popeyes Louisiana*
18  *Kitchen, Inc.*, 2021 WL 3557744, at *2 (C.D. Cal. Apr. 21, 2021), Plaintiffs' reliance on
19  the general protections of California Civil Code sections 1668 and 3513 limiting a
20  contracting party's ability to "exempt [itself]… from his own fraud, or willful injury to the
21  person or property of another, or violation of law" do not satisfy the Ninth Circuit's test to
22  overcome a forum-selection clause. (Opp'n at 12-14.)[8] Plaintiffs' own authority, while not
23  analyzing a forum-selection clause and therefore inapposite, observed that a provision

24  ────────────────────
    [8]    In contrast, the forum-selection clauses in Plaintiffs' authority ran afoul of state law
25  expressly addressing contractual venue provisions. *See Frango Grille USA, Inc. v. Pepe's*
    *Franchising Ltd*., 2014 WL 7892164, at *1 (C.D. Cal. July 21, 2014) (refusing to enforce
26  forum-selection clause in franchise agreement because California Franchise Relations Act
    specifically provided "[a] provision in a franchise agreement restricting venue to a forum
27  outside this state is void"); *Friedman v. Glob. Payments Inc.*, 2019 WL 1718690, *3 (C.D.
    Cal. Feb. 5, 2019) (holding forum-selection clause in employment contract void as contrary
28  to Cal. Lab. Code § 925(a)(1) prohibiting employers from requiring employees "to
    adjudicate outside of California a claim arising in California").

9

1  exempting officers and directors from liability did "not violate California Civil Code §1668

2  nor any policy against immunizing fiduciaries from the consequences of betraying their

3  trust" because plaintiffs could "still pursue their tort claims against" the corporate

4  defendants. *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 116 F.Supp.3d

5  1010, 1050-51 (N.D. Cal. 2015).

6      For the same reason, Plaintiffs' passing reference to their RICO claim is unavailing.

7  (Opp'n at 13.) Plaintiffs ignore the Ninth Circuit's repeated admonition that "the loss of

8  RICO claims does *not* suffice to bar dismissal for forum non conveniens" because, as Fenix

9  established, and Plaintiffs have not meaningfully disputed, Plaintiffs here "have recourse"

10 under English law to redress their injuries. *Richards*, 135 F.3d at 1296; *see also* Mot. at 11-

11 12 (discussing available remedies under English law).

12     Fenix's expert White explained in detail that "English law includes well-established

13 causes of action which provide remedies for deception and fraud, and for breaches of

14 confidence and privacy violations involving unauthorized use or disclosure of private or

15 personal information" equivalent "to the causes of action advanced and the remedies

16 sought" by Plaintiffs here. (White Decl. ¶¶44-61, ¶¶75-78.) In his 26-page declaration,

17 Plaintiffs' expert Kirk does not challenge, let alone rebut, White's conclusions regarding

18 the availability of equivalent causes of action and remedies. (*See generally* Kirk Decl.)[9]

19     California courts likewise hold that "English law recognizes claims for breach of

20 confidence and misuse of private information," and offers remedies for those claims

21 including "compensatory damages, accounts of profits, and injunctive relief." *Huthart v.*

22 *News Corp.*, 2014 WL 12577175, at *6 (C.D. Cal. May 21, 2014) (granting motion to

23 dismiss action asserting CIPA and statutory and common law privacy claims on forum non

---

24 [9]    Kirk only claims injunctive relief is not available to civil litigants in one limited
25 statutory circumstance. (Kirk Decl. ¶66.) Plaintiffs thus (wrongly) proclaim that England
   "does not allow for injunctive relief," which is "contrary to public policy" (Opp'n at 13),
26 citing *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 954 (2017). But *McGill* held consumers
   have a right to seek "public injunctive relief." *Id.* at 966. Here, Plaintiffs are seeking relief
27 that is "overwhelmingly directed at Plaintiffs and other [OnlyFans users]," which "plainly
   does not constitute public injunctive relief." *Capriole v. Uber Techs., Inc.*, 7 F.4th 854,
28 870-71 (9th Cir. 2021). Plaintiffs do not cite any "non-waivable right" to seek private
   injunctive relief.

1  conveniens grounds in favor of English forum). Notably, Plaintiffs cite no authority to the
2  contrary.

3      Instead, Plaintiffs complain that there is "no basis to presume an English court would
4  preserve Plaintiffs' California statutory rights" and "under the choice-of-law clause in the
5  [Terms], an English court could determine that Plaintiffs' statutory claims don't apply at
6  all," resulting in an "impermissible chilling effect on their California consumer rights."
7  (Opp'n at 14-15.) But the Ninth Circuit and its courts routinely reject arguments by
8  plaintiffs claiming they "cannot be assured that a[] [foreign] court will adequately
9  safeguard [their] rights against all the defendants" as "speculative" and "provincial."
10  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988); *see also*
11  *Whipple Indus., Inc. v. Opcon AB*, 2005 WL 2175871, at *10 (E.D. Cal. Sept. 7, 2005)
12  (holding plaintiff failed to "assert[] that Swedish courts are ill-equipped to address the legal
13  issues related to those causes of action" and thus plaintiff's "argument regarding
14  contravention of public policy is speculative and insufficient").

15      In sum, Plaintiffs did not and cannot show they will be "forc[ed] to waive
16  unwaivable rights" if the Forum-Selection Clause is enforced.

17  **C.    Plaintiffs' Authorities Do Not Rescue Their Opposition**

18      Plaintiffs primarily rely on four cases to support their arguments against enforcing
19  the Forum-Selection Clause: *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 (C.D. Cal. May
20  2, 2024), *Am. Online, Inc. v. Superior Court*, 90 Cal.App.4th 1 (2001) ("*Mendoza*"), *Doe*
21  *1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009), and *Aral v. Earthlink, Inc.*, 134 Cal.App.4th
22  544 (2005). None helps them.

23      ***Muto***. Plaintiffs argue the Court should follow *Muto* in rejecting the Forum-
24  Selection Clause. (Opp'n at 8.) There, another judge in this District held that the Forum-
25  Selection Clause is unenforceable (while simultaneously holding that Fenix are not subject
26  to personal jurisdiction in California for OnlyFans-related claims). 2024 WL 2148734, at
27  *3-4. The court reasoned that: (1) California public policy prohibits enforcement of forum-
28  selection clauses designating jurisdictions that do not permit class litigation of small-dollar

1 claims; and (2) English courts do not allow for collective litigations of small-dollar claims.

2 *Id.* Therefore, the Forum-Selection Clause could not be enforced against claims ranging

3 "from about five dollars to about fifty dollars." *Id.*

4      The Court should decline to follow *Muto*'s forum-selection clause analysis because

5 both of its core premises are wrong. To start, California does not have a policy against

6 enforcing forum-selection clauses that are financially inconvenient for small-dollar

7 plaintiffs. As the Ninth Circuit has explained, "California appellate courts considering

8 forum[-]selection clauses in adhesion contracts have held that neither inconvenience nor

9 additional expense in litigating in the selected forum is part of the test" for whether a forum-

10 selection clause should be enforced. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th

11 Cir. 2016) (collecting cases). Indeed, the very case *Muto* relied upon for its public policy

12 analysis observed that "the additional cost or inconvenience necessitated by litigation in

13 the selected forum is *not* part of the calculus when considering whether a forum[-]selection

14 clause should be enforced," even when the "expense in litigating in the selected forum…

15 exceeds the amount in controversy or at least renders the choice to litigate impractical."

16 *Mendoza*, 90 Cal.App.4th at 18-19. *Muto* erroneously relied on a policy rationale that the

17 Ninth Circuit and California courts have rejected.

18      Moreover, both parties' experts agree that English courts have efficient mechanisms

19 for aggregating small-dollar claims. (*See supra* §I.A.) Contrary to Plaintiffs' contention

20 (Opp'n at 10 & n.4), the *Muto* court did *not* consider and reject these mechanisms; indeed,

21 English courts' endorsement and embrace of the single-claim-form procedure for

22 thousands of claimants occurred *since* Muto *was decided*. (*See* White Decl. ¶70 (citing

23 *Morris v Williams Solicitors* [2024] EWCA Civ 376).) Thus, *Muto*'s conclusion that

24 England lacks procedural mechanisms to litigate small claims is inaccurate.

25      Finally, even if the Court accepts *Muto*'s analysis, it does not apply here, because

26 this case does not involve small-dollar claims. Unlike the $5-50 dollar claims at issue in

27 *Muto*, Plaintiffs here claim damages of up to $25,000 dollars per individual for a putative

28 class of "hundreds of thousands—if not millions—of Class Members." (Compl. ¶¶251,

267, 279, 296, 312, 321, Prayer.) Indeed, Plaintiffs' counsel has represented that the class is seeking "billions in damages." *See* Joel Stein, *Is OnlyFans Catfishing Its Users?*, Hollywood Reporter (October 14, 2024), https://www.hollywoodreporter.com /business/digital/onlyfans-catfishing-users-1236026987 (quoting Plaintiffs' counsel). While Plaintiffs point out that some putative class members could have subscribed to Creator channels that are relatively inexpensive (Opp'n at 9), Plaintiffs are seeking statutory damages of $2,500 for each class member just from their VPPA claim alone. (*See* Compl. ¶422); 18 U.S.C. §2710(c)(2)(A). This simply is not a case about $5-$50 claims consumers might theoretically forgo that *Muto* had in mind.

*Mendoza* **and** *AOL*. Plaintiffs also argue *Mendoza* and *AOL* held forum-selection clauses are unenforceable when they pick a forum that does not permit class actions. (Opp'n at 7-8.) Contrary to Plaintiffs' argument, neither case embraces such a rule. *Mendoza* and *AOL* each declined to enforce Virginia forum-selection clauses against classes of California residents because: (1) the plaintiffs in those cases asserted CLRA claims, (2) the CLRA contains a provision prohibiting contracts that diminish CLRA rights, and (3) because Virginia does not allow class actions, sending the case there would diminish the California Plaintiffs' CLRA rights. *See AOL*, 552 F.3d at 1084 (following *Mendoza*'s holding that there is a "California public policy against consumer class action waivers and waivers of consumer rights *under the CLRA*"). Here, as explained above, none of Plaintiffs' claims implicate a CLRA-like statutory anti-waiver provision. (*See supra* §I.B.) In any event, England has claim aggregation procedures that are analogous to class actions. (*See supra* §I.A.) Therefore, enforcing the Forum-Selection Clause would not offend *Mendoza* or *AOL*.

*Aral*. Finally, Plaintiffs urge the Court to follow *Aral*, where the California Court of Appeal refused to enforce a contract requiring consumers to arbitrate claims in Georgia as contrary to California's purported policy of providing a convenient forum for small-dollar claims. (Opp'n at 8); *Aral*, 134 Cal.App.4th at 564. But *Aral* is bad law. In *Tompkins*, the Ninth Circuit declined to follow *Aral* as contrary to prior and subsequent California

Supreme Court decisions holding a plaintiff's economic convenience is irrelevant in determining whether to enforce a forum-selection clause. 840 F.3d at 1028. *Tompkins* (and the many California cases it cites) is the precedent to follow, not *Aral*'s rejected rule.

## II.    PLAINTIFFS DO NOT OTHERWISE SHOW
##        THE FORUM-SELECTION CLAUSE IS INVALID

Plaintiffs seek to avoid the Forum-Selection Clause as unconscionable as a "contract of adhesion." (Opp'n at 4-6.) At the outset, Plaintiffs' challenge to the Forum-Selection Clause as "unconscionable" is baffling because, as Fenix showed and Plaintiffs do not dispute, Plaintiffs repeatedly cite to and rely on the Terms as a basis for their claims in their Complaint. (*See* Mot. at 2-3, 9-10 (collecting references to the Terms).)[10] In rejecting an argument challenging a forum-selection clause as "unconscionable because it was presented on a 'take it or leave it basis' and is 'one-sided in favor of Defendants'," this Court observed that "[p]laintiffs do not sufficiently explain *how they can simultaneously seek to enforce the contract and argue that the contract is unconscionable*." *Out of Nowhere v. Nolan Transportation Grp., LLC*, 2023 WL 398105, at *3 (C.D. Cal. Jan. 3, 2023) (Slaughter, J.); *see also Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581, at *4 (N.D. Ga. June 28, 2021) (holding plaintiff could not "plausibly argue" she was "unable to become meaningfully informed" of OnlyFans' Terms when she alleged she agreed to and performed under those Terms).

In any event, Plaintiffs ignore that, as the Ninth Circuit and its courts have repeatedly recognized, California state courts have "enforced forum[-]selection clauses in adhesion contracts," particularly "in a non-arbitration context." *Tompkins*, 840 F.3d at 1028; *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004) ("To decline enforcement of a forum[-]selection [clause] merely on the showing of non-negotiability and power difference… would disrupt the settled expectations of the parties.") (cited by Plaintiffs); *Monugian*, 2008 WL 11336862, at *7 (rejecting argument that forum-selection

---

[10] Indeed, in their Opposition to Fenix's RJN, Plaintiffs emphasize they do not "dispute" the existence of the Terms precisely because their Complaint quotes the Terms to "support" their fraud, breach of contract, and privacy claims. (ECF 87 at 2-3.)

1  clause specifying Mexico forum was unconscionable as contract of adhesion because
2  "federal law recognizes the legitimacy of a forum[-]selection clause even if it is part of a
3  form contract" (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)).

4        The *Tompkins* court considered and rejected a challenge to a forum-selection clause
5  as "unconscionable because it could potentially require consumers to travel from a faraway
6  city or state for a small potential recovery." 840 F.3d at 1027. Instead, courts must weigh
7  whether "enforcement of such a clause would be unreasonable," that is, "the forum selected
8  *would be unavailable or unable to accomplish substantial justice*." *Id*. If not unreasonable,
9  "[a] forum[-]selection clause within an adhesion contract will be enforced as long as the
10  clause provided adequate notice to the party that he was agreeing to the jurisdiction cited
11  in the contract." *Id*. at 1028; *see also Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2
12  (N.D. Cal. Apr. 11, 2014) (same) (cited by Plaintiffs); *Intershop Commc'ns v. Superior
13  Court*, 104 Cal.App.4th 191, 201-02 (2002) (enforcing forum-selection clause designating
14  Germany as forum in adhesion contract because plaintiff had adequate notice). "[N]either
15  inconvenience nor additional expense in litigating in the selected forum is part of the test
16  of unreasonability." *Tompkins*, 840 F.3d at 1028.[11]

17        Here, as shown, the English courts are available and can do substantial justice
18  between the parties. (*Supra* §I.) And it is undisputed that Plaintiffs affirmatively agreed to

---

19  [11]      Rather than address the Ninth Circuit's established analysis for forum-selection
20  clauses challenged as unconscionable, Plaintiffs rely on procedurally and factually distinct
   cases invoking an entirely different test: "[t]o determine whether *a class action waiver is
21  unconscionable* in the consumer setting." (*See* Opp'n at 5, quoting *Lipeles v. United
   Airlines, Inc.*, 2024 WL 1946660, at *6 (C.D. Cal. Apr. 11, 2024) (denying motion to strike
22  class allegations "in light of Plaintiff's arguments that the class action wavier [sic] was
   unconscionable"), *Suski v. Marden-Kane, Inc.*, 2022 WL 3974259, at *4-5 (N.D. Cal. Aug.
23  31, 2022) (applying same test to class action waiver provision on Rule 12(b)(6) motion to
   dismiss), and *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983-84 (9th
24  Cir. 2007) (applying same test to class arbitration waiver)). As shown, because Plaintiffs
   can pursue class relief in England, their "waiver" cases are inapposite. (*Supra* §I.A.)
25
       The holding that an arbitration provision in a franchise agreement was
26  unconscionable in Plaintiffs' other case, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th
   Cir. 2006), was expressly called into question by the *Tompkins* court, which noted that its
27  ruling lacked the "guidance" of the California Supreme Court, which "has since barred
   state courts from applying an unconscionability doctrine in a different manner in arbitration
28  and nonarbitration contexts." *Tompkins*, 840 F.3d at 1029 n.6.

1  the Terms, including the Forum-Selection Clause, by repeatedly checking a box. (Mot. at

2  3-6.) Courts routinely hold plaintiffs have adequate notice of forum-selection clauses when

3  they check a box accepting a website's terms of service where, as here, the clause is "set

4  in the same size font as the remainder of the agreement and plainly indicates that the

5  [foreign forum] is the designated forum." *Rostami v. Hypernet Inc.*, 2023 WL 2717262, at

6  *6, 8 (N.D. Cal. Mar. 29, 2023) (holding forum-selection clause designating Cook Islands

7  as forum was not unconscionable where "printed in the same, regularly-sized font as the

8  rest of the" terms because "even if [p]laintiff was somehow not aware of the clause when

9  signing the agreement, it was stated in clear and unambiguous language and not hidden in

10  fine print"); *see also Moretti*, 2014 WL 1410432, at *3 (transferring FAL, UCL, CLRA

11  and common law fraud claims pursuant to forum-selection clause because plaintiff checked

12  "Acceptance Box") (cited by Plaintiffs); Taylor Decl. Ex. A at 13 (Forum-Selection Clause

13  appears in same size font with conspicuous heading). Accordingly, since the Forum-

14  Selection Clause picks a reasonable forum, and Plaintiffs had adequate notice of the clause,

15  the clause is enforceable. *See Tompkins*, 840 F.3d at 1027.

16        In a last-ditch effort to avoid the Forum-Selection Clause, Plaintiffs wrongly contend

17  a revision admittedly "*after* Plaintiffs filed suit" makes the Forum-Selection Clause

18  "permissive" and binding on their current claims. (Opp'n at 19-21.) Wrong on all counts.

19  *First*, the forum non conveniens doctrine is "a supervening venue provision." *Am.*

20  *Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994). "[V]enue must be determined based on

21  the facts *at the time of filing*." *Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 775, 777 (11th Cir.

22  1987). Plaintiffs cannot escape the Motion by pointing to a clause that took effect *after*

23  their Complaint was filed.

24        *Second*, the updated clause, which states "the courts of England and Wales will have

25  jurisdiction over any claim which arises out of or in connection with your agreement with

26  us or your use of OnlyFans (including non-contractual disputes or claims)," is mandatory,

27  not permissive. *See* https://onlyfans.com/terms. The Terms are "governed by the laws of

28  England" and "apply to any claim arising out of or in connection with" the Terms. *Id.*

Because the updated Terms "clearly contain[] a [English] choice-of-law clause… the validity of the forum[-]selection clause should be decided by [English] law, as the law of the contract." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006).

Plaintiffs' expert asserts that English courts employ a "common law test for whether to enforce an exclusive jurisdiction clause, as set out in *Sinochem*." (Kirk Decl. ¶54.) Kirk omits that *Sinochem* evaluated "whether… the clause obliges the parties to resort to the relevant jurisdiction, *irrespective of whether the word 'exclusive' is used*." *Sinochem Int'l Oil (London) Co. Ltd v. Mobil Sales and Supply Corp Ltd* [2000] 1 All ER (Comm) 758 at [32]. An English law choice-of-law provision strengthens this interpretation of exclusivity. *Id.* at [33]. *Sinochem* itself upheld a similar forum-selection clause to the updated clause here, finding it was exclusive. *Id.*

In short, Plaintiffs' authority undermines their assertions about the updated clause, particularly because FIL operates OnlyFans and is registered and headquartered in England, Fenix's employees, officers, and records are primarily located in England, and Fenix require litigation in England to reduce the costs and inconvenience of litigating all over the world. (Taylor Decl. ¶¶6, 9, 37.) In sum, Plaintiffs' contentions about the post-filing revision to the Forum-Selection Clause are meritless.

## III.   THE PUBLIC INTEREST FACTORS MANDATE DISMISSAL

Because the Forum-Selection Clause is valid, this Court "may consider arguments about public-interest factors *only*," *Atl. Marine Constr. Co. v. W. Dist. of Tex.*, 571 U.S. 49, 64 (2013), and Plaintiffs must "show that the public-interest factors *overwhelmingly disfavor dismissal*." *Kiwijet*, 2024 WL 3468926, at *4. Here, Fenix showed, and Plaintiffs for the most part concede, the public factors weigh in favor of dismissal. (Mot. at 18-20.)

Plaintiffs address only the "local interest" factor. Admitting only "two of the named Plaintiffs are California residents," Plaintiffs claim that "California public policies are implicated by the [F]orum-[S]election [C]lause." (Opp'n at 17, 18.) That argument fails as shown in §I, *supra*.

Plaintiffs also assert "[t]he Agency Defendants are all alleged to have connections to California" and thus there is a "likelihood of splintered, piecemeal litigation." (Opp'n at 19.) Plaintiffs ignore that the Agency Defendants are bound by the same Forum-Selection Clause as Plaintiffs. The Terms define "User" as "any user of OnlyFans, whether a Creator or a Fan or both." (Taylor Decl. Ex A at 2.) And, like Plaintiffs, "business Users" like Creators and their agents agreed "the courts of England and Wales shall have exclusive jurisdiction to resolve any dispute or claim (including non-contractual disputes or claims) which you have or which we have arising out of or in connection with your agreement with us… or your use of OnlyFans" and that English law would govern the Terms. (*Id*. at 13-14.) The Agency Defendants thus have no basis to object to the litigation of Plaintiffs' claims in England pursuant to the Forum-Selection Clause. Indeed, they have filed notices of non-opposition to the Motion, and "contend[] it should be granted." (ECF 88; *see also* ECF 86, 90, 91 (notices of non-opposition).) The existence of the Agency Defendants does not constitute a "local interest" weighing against dismissal.

Finally, Plaintiffs assert that Fenix's showing that "[n]either FIL nor Fenix Internet has any offices, employees, or other physical presence in California" is somehow "ambiguous" because the use of the "present tense leaves open whether Defendants *ever had* such a presence," a factor on which they claim to be "entitled to discovery." (Opp'n at 17-19 & nn.9-10 (emphasis in original).) This Court already denied Plaintiffs' ex parte request for the same discovery based on the exact same reason. (*See* ECF 81 at 8-9, 15 (claiming discovery into "Fenix Defendants' interactions with/presence in California" was "necessary since the Taylor Decl. talks about the lack of such affiliations only in the present tense").) As this Court held, Plaintiffs did "not adequately demonstrate[] that this discovery is necessary to oppose the Motion to Dismiss." (ECF 83 at 5.)

Such discovery remains unnecessary for purposes of this Motion. Even if Plaintiffs were able to demonstrate some Fenix connection to California with the benefit of discovery, they have conceded the remaining public interest factors are in favor of Fenix, including that "the courts of England are better suited to apply English law." (Mot. at 18-

18

20.) As Plaintiffs' expert previously attested, this Court's consideration of English law would be "unsatisfactory because it will involve a U.S. judge hearing evidence about English… law from UK lawyers, then deciding what the law in the UK should be on the basis of evidence, rather than experience and jurisprudence," which "circumvents the obvious way that such UK consumer protection issues should be decided, *in a UK court by a UK judge*." (Hamilton Decl. Ex. 2 ¶21.)

Because the "public interest" factors are overwhelmingly in favor of dismissal, the Motion should be granted.

## <u>CONCLUSION</u>

The Court should dismiss the Complaint for forum non conveniens.

DATED: December 27, 2024

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

19

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,966 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: December 27, 2024

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Jason D. Russell_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC