JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE;**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**<br><br>**<u>FILED UNDER SEPARATE COVER:</u>**<br><br>**(3) REQUEST FOR JUDICIAL NOTICE AND NOTICE OF DOCUMENTS INCORPORATED BY REFERENCE; and**<br><br>**(4) [PROPOSED] ORDER.**<br><br>Judge:        Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:         June 26, 2025<br>Time:         10 a.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on June 26, 2025, at 10 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Specially Appearing Defendants Fenix International Limited ("FIL") and Fenix Internet LLC (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion to dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiffs N.Z. and R.M. (collectively, "Plaintiffs") for lack of personal jurisdiction and failure to state a claim, as well as improper venue as to Plaintiff R.M. ("Motion").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), and is based on this Notice, the Memorandum of Points and Authorities that follows, the accompanying Request for Judicial Notice and Notice of Documents Incorporated by Reference, the files and records in this action, the arguments of counsel, and any other matters the Court may properly consider. The grounds for this motion are as follows:

### Personal Jurisdiction

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(b) because Plaintiffs do not allege a multidistrict RICO conspiracy involving all Defendants;

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(d) because that provision is not a means for a court to acquire jurisdiction;

- The Court does not have general jurisdiction over Fenix because they are not incorporated or headquartered in California, and do not otherwise have such continuous and systematic contacts that they are essentially at home in California;

- The Court does not have specific jurisdiction over Fenix because they do not

have sufficient minimum contacts with California, and the Plaintiffs' claims do not arise out of or relate to Fenix Internet's connections with California;

- The Court should transfer Plaintiffs' claims against Fenix Internet to the District of Delaware, where Fenix Internet is subject to general jurisdiction and both sides have agreed that claims against Fenix Internet may be litigated.

## Failure to State a Claim

- Plausibility: None of Plaintiffs' claims are plausible because they fail to plead facts showing that Fenix knew about the Agency Defendants' alleged use of third-party contractors to manage chats—the conduct targeted in the FAC;

- Section 230: 47 U.S.C. §230 bars Plaintiffs' claims because they are based on Fenix's role as the publisher of the OnlyFans website;

- Racketeer Influenced Corrupt Organizations Act ("RICO"): Plaintiffs fail to state a RICO or RICO conspiracy claim because they fail to allege the existence of a racketeering enterprise, do not plead cognizable damages, do not plead that the Defendants formed a conspiracy to violate RICO or commit wire fraud, and do not plead that Fenix had specific intent to defraud Plaintiffs;

- Video Privacy Protection Act ("VPPA"): Plaintiffs fail to state a VPPA claim because they fail to allege that Fenix knowingly disclosed their personal identifiable information to third parties;

- California Invasion of Privacy Act ("CIPA"): Plaintiffs fail to state a CIPA claim because they consented to Fenix's alleged conduct, and otherwise fail to plead that their communications were unlawfully intercepted;

- California Penal Code Section 502: Plaintiffs fail to state a Penal Code Section 502 claim because Plaintiffs do not plead: (1) Fenix accessed their data without permission; (2) Fenix knowingly violated the law; (3) Plaintiffs suffered cognizable damages; and (4) Fenix improperly accessed Plaintiffs' chats.

- **Breach of Contract, Fraud, Deceit, Unfair Competition Law ("UCL"), and False Advertising Law ("FAL")**: Plaintiffs' remaining California state law claims are each barred by OnlyFans' Terms of Service, which fatally undermine Plaintiffs' theories that Fenix misled them into purchasing chat services offered by OnlyFans Creators or had a duty to prevent other people from misleading Plaintiffs about those services.

**Improper Venue as to Plaintiff R.M.**

- Plaintiff R.M. does not reside in this District, claims he was defrauded by agency representatives located in other countries, and does not allege that any personal harms allegedly suffered by him or any material conduct by *any* Defendant (let alone Fenix) occurred in this District. Thus, his claims must be dismissed for improper venue.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 18, 2024, and May 16, 2025.

DATED: May 23, 2025          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/ Jason D. Russell*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................2

I.    THE COURT LACKS PERSONAL JURISDICTION OVER FENIX...2

    A.    The Court Does Not Have Jurisdiction Under RICO ...................2

        1.    Section 1965(b) Does Not Give the Court Personal Jurisdiction................................................................2

        2.    Section 1965(d) Does Not Give the Court Personal Jurisdiction................................................................4

    B.    Due Process Prohibits Exercising Personal Jurisdiction Over Fenix.........................................................................................4

        1.    The Court Does Not Have General Jurisdiction.................5

        2.    The Court Does Not Have Specific Jurisdiction .................5

            (a)    Plaintiffs Cannot Show Purposeful Direction or Availment ................................................................5

                (i)    Plaintiffs Cannot Demonstrate Purposeful Direction................................................6

                (ii)    Plaintiffs Cannot Demonstrate Purposeful Availment................................................7

            (b)    Plaintiffs' Claims Do Not Arise Out of Fenix Internet's Allegedly Forum-Related Contacts ..........7

            (c)    The Court Should Transfer Claims Against Fenix Internet to Delaware ..................................8

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX............8

    A.    None of Plaintiffs' Claims Against Fenix Are Plausible..............8

    B.    Section 230 Bars Plaintiffs' Claims................................................9

    C.    Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims ........10

    D.    Plaintiffs Fail to Plead a VPPA Claim.......................................11

    E.    Plaintiffs Fail to Plead a CIPA Claim .......................................13

    F.    Plaintiffs Fail to Plead a Claim Under Penal Code §502.............15

    G.    Plaintiffs Fail to Plead a Breach of Contract Claim ...................17

    H.    Plaintiffs Fail to Plead Fraud or Deceit Claims ..........................18

        I.      Plaintiffs Fail to Plead UCL or FAL Claims ............................... 19

    III.      VENUE IS IMPROPER AS TO PLAINTIFF R.M. ............................. 20

CONCLUSION ............................................................................................ 21

CERTIFICATE OF COMPLIANCE ............................................................ 22

1

2

**TABLE OF AUTHORITIES**

3

Page(s)

4

**CASES**

5

*Afriyie v. NBCUniversal Media, LLC*,
   No. 1:23-CV-09433-LTS,
   2025 WL 962033 (S.D.N.Y. Mar. 31, 2025)........................................... 12

*AMC Technology, LLC v. Cisco Systems, Inc.*,
   No. 11-CV-03403 PSG,
   2012 WL 174949 (N.D. Cal. Jan. 20, 2012)........................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................... 8, 11

*Banks v. ACS Education*,
   638 F.App'x 587 (9th Cir. 2016) .......................................................... 10

*Barrett v. Apple Inc.*,
   523 F.Supp.3d 1132 (N.D. Cal. 2021) ................................................... 18

*Beagle v. Amazon.com, Inc.*,
   No. C24-0316JLR,
   2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ...................................... 11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   No. 17-CV-04570 (LAK) (KHP),
   2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017),
   *report and recommendation adopted*, No. 17-cv-4570 (LAK),
   2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017) ......................................... 12

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ............................................................. 17

*Boat People S.O.S., Inc. v. Voice*,
   No. 8:24-CV-00135-DOC-DFMx,
   2024 WL 3914508 (C.D. Cal. July 31, 2024) ........................................... 5

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ........................................................... 5, 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Boulton v. Community.com, Inc.*,
  No. 23-3145,
  2025 WL 314813 (9th Cir. Jan. 28, 2025) ................................................ 15

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) ................................................................. 20

*Bray v. Kendall*,
  No. 08-0535 SC,
  2010 WL 56181 (N.D. Cal. Jan. 5, 2010) ................................................... 4

*Briskin v. Shopify, Inc.*,
  No. 22-15815,
  2025 WL 1154075 (9th Cir. Apr. 21, 2025) ................................................ 6

*Burke v. Olden*,
  No. 8:22-cv-01666-FSW-JDE,
  2023 WL 4157456 (C.D. Cal. May 24, 2023) ............................................ 20

*Busbice v. Vuckovich*,
  No. CV 16-8511 PA (AJWx),
  2016 WL 10586306 (C.D. Cal. Dec. 9, 2016) ............................................ 20

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
  788 F.2d 535 (9th Cir. 1986) ............................................................ 1, 2, 3

*Canyon County v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ................................................................. 10

*Caraccioli v. Facebook, Inc.*,
  700 F.App'x 588 (9th Cir. 2017) ............................................................. 17

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.*,
  173 F.3d 725 (9th Cir. 1999) ................................................................. 19

*Cory v. Aztec Steel Building, Inc.*,
  468 F.3d 1226 (10th Cir. 2006) ............................................................... 4

*Custom Packaging Supply, Inc. v. Phillips*,
  No. 2:15-CV-04585-ODW-AGR,
  2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ............................................. 15

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................... 1, 5

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ................................................................. 18

*Doe 1 v. Fenix International Ltd.*,
    No. 24-cv-03713-CRB,
    2024 WL 5505192 (N.D. Cal. Nov. 22, 2024) ...................................... 6, 7

*Doe 1 v. NCAA*,
    No. 22-cv-01559-LB,
    2023 WL 105096 (N.D. Cal. Jan. 4, 2023)................................................ 7

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) ........................................................... 9, 10

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .................................................................. 9

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................... 10

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ................................................................... 12

*EPA Real Estate Partnership v. Kang*,
    12 Cal.App.4th 171 (1992) ...................................................................... 17

*Garcia v. NutriBullet, L.L.C.*,
    No. 2:21-cv-09348-DDP (GJSx),
    2022 WL 3574699 (C.D. Cal. July 14, 2022) ........................................... 7

*Gilbert v. Bank of America*,
    No. C 13-01171 JSW,
    2014 WL 4748494 (N.D. Cal. Sept. 23, 2014).................................... 2, 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................. 5

*Gutierrez v. Converse, Inc.*,
    No. 2:23-cv-06547-RGK-MAR,
    2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ......................................... 16

*Handsome Music, LLC v. Etoro USA LLC*,
    No. LACV 20-08059-VAP (JCx),
    2020 WL 8455111 (C.D. Cal. Dec. 17, 2020)........................................... 6

*Healthcare Ally Management of Cal., LLC v. Blue Cross Blue Shield of Minn.*,
    No. CV 16-7042-DMG (AFMx),
    2018 WL 5880743 (C.D. Cal. June 6, 2018),
    *aff'd*, 787 F.App'x 417 (9th Cir. 2019) ...................................................................... 7

*Heiting v. Athenahealth, Inc.*,
    No. 2:23-cv-10338-FLA (DFMx),
    2024 WL 3761294 (C.D. Cal. July 29, 2024) ......................................................... 15

*Heiting v. Taro Pharmaceutical USA, Inc.*,
    709 F.Supp.3d 1007 (C.D. Cal. 2023) ................................................................... 16

*Helms v. Wells Fargo Bank, N.A.*,
    No. CV 17-3183 CBM-SK,
    2018 WL 6133715 (C.D. Cal. June 19, 2018) ......................................................... 11

*Henderson v. Gruma Corp.*,
    No. CV 10-04173 AHM (AJWx),
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ......................................................... 19

*Hicks v. Bradford*,
    No. CV 21-7330-DMG (GJSx),
    2023 WL 6190884 (C.D. Cal. Aug. 17, 2023) ......................................................... 9

*Hodes v. Van's International Foods*,
    No. CV 09-01530 RGK (FFMx),
    2009 WL 10674101 (C.D. Cal. June 23, 2009) ..................................................... 19

*In re Hulu Privacy Litigation*,
    86 F.Supp.3d 1090 (N.D. Cal. 2015) ..................................................................... 12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ....................................................................... 18, 20

*Laurel Gardens, LLC v. McKenna*,
    948 F.3d 105 (3rd Cir. 2020) ................................................................................. 4

*Lazar v. Superior Court*,
    12 Cal.4th 631 (1996) ........................................................................................... 18

*Lewis v. Google LLC*,
    461 F.Supp.3d 938 (N.D. Cal. 2020),
    *aff'd*, 851 F.App'x 723 (9th Cir. 2021) ................................................................. 9

*Libman v. Apple, Inc.*,
  No. 22-cv-07069-EJD,
  2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)........................................................ 14

*Licea v. Cinmar, LLC*,
  659 F.Supp.3d 1096 (C.D. Cal. 2023) ..................................................................... 15

*Lightpath Capital, Inc. v. Phoenix American Hospitality, LLC*,
  No. 18-1131-CV-PSG (AFM),
  2018 WL 5905387 (C.D. Cal. Apr. 5, 2018) ............................................................. 8

*Limcaco v. Wynn*,
  No. 2:20-cv-11372-RSWL-MAAx,
  2021 WL 5040368 (C.D. Cal. Oct. 29, 2021),
  *aff'd*, No. 21-56285,
  2023 WL 154965 (9th Cir. Jan. 11, 2023),
  *cert. denied*, 143 S. Ct. 2612 (2023)........................................................................ 3

*Manos v. MTC Financial, Inc.*,
  No. SACV 16-01142-CJC (KESx),
  2017 WL 8236356 (C.D. Cal. Dec. 21, 2017),
  *aff'd*, 773 F.App'x 452 (9th Cir. 2019) ................................................................... 11

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) .................................................................................... 5

*Maschoff Brennan Laycock Gilmore Israelsen & Wright PLLC v. PilePro, LLC*,
  No. SA CV 15-0915-DOC (Ex),
  2015 WL 13917884 (C.D. Cal. Oct. 27, 2015) .......................................................... 8

*Meyer v. One West Bank, F.S.B.*,
  91 F.Supp.3d 1177 (C.D. Cal. 2015) ....................................................................... 10

*Mir v. Greines, Martin, Stein & Richland*,
  No. 2:14-4132-CAS(FFMx),
  2015 WL 4139435 (C.D. Cal. Jan. 12, 2015),
  *aff'd*, 676 F.App'x 699 (9th Cir. 2017) ............................................................... 3, 4

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) .................................................................................. 11

*Moody v. Hot Topic, Inc.*,
 No. EDCV 23-0447 JGB,
 2023 WL 9511159 (C.D. Cal. Nov. 15, 2023) .................................................. 18, 19

*Morton v. Twitter, Inc.*,
 No. CV 20-10434-GW-JEMx,
 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .................................................. 17, 20

*Muto v. Fenix International Ltd.*,
 No. 5:22-cv-02164-SSS-DTBx,
 2024 WL 2148734 (C.D. Cal. May 2, 2024) ...................................................... 6, 7

*In re Nickelodeon Consumer Privacy Litigation*,
 No. 2443 (SRC),
 2014 WL 3012873 (D.N.J. July 2, 2014) .............................................................. 12

*Nowak v. Xapo, Inc.*,
 No. 5:20-cv-03643-BLF,
 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ...................................................... 16

*Oasis West Realty, LLC v. Goldman*,
 51 Cal.4th 811 (2011) ............................................................................................ 17

*Picot v. Weston*,
 780 F.3d 1206 (9th Cir. 2015) ................................................................................ 7

*PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*,
 138 F.3d 65 (2d Cir. 1998) ..................................................................................... 4

*Rancour v. Lush*,
 No. 8:23-cv-01753-FWS-ADS,
 2024 WL 1829621 (C.D. Cal. Mar. 18, 2024) ...................................................... 5

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ...................................................................... 4, 5, 6, 7

*Silver v. Stripe Inc.*,
 No. 4:20-cv-08196-YGR,
 2021 WL 3191752 (N.D. Cal. July 28, 2021) .................................................. 13, 14

*Smith v. Facebook, Inc.*,
 262 F.Supp.3d 943 (N.D. Cal. 2017),
 *aff'd*, 745 F.App'x 8 (9th Cir. 2018) ............................................................... 13, 14

*Smith v. Trinity Broadcasting of Texas, Inc.*,
    No. 8:24-cv-01046-JVS-ADS,
    2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ........................................ 13

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*,
    933 F.Supp. 918 (C.D. Cal. 1996) ...................................................... 19

*United States v. Brooklier*,
    685 F.2d 1208 (9th Cir. 1982) .......................................................... 10

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................... 2, 6

*Williams v. Yamaha Motor Co., Ltd.*
    851 F.3d 1015 (9th Cir. 2017) ............................................................ 5

## STATUTES

18 U.S.C. §1961 .......................................................................... 10

18 U.S.C. §1965 ..................................................................... *passim*

18 U.S.C. §2710(b)(1)...................................................................... 11

28 U.S.C. §84(b) .......................................................................... 20

28 U.S.C. §1406(a) ......................................................................... 8

47 U.S.C. §230 ............................................................................. 9

Cal. Bus. & Prof. Code §17200 ........................................................... 19

Cal. Penal Code §502................................................................... 15, 16

## **PRELIMINARY STATEMENT**

OnlyFans.com is an online subscription-based social media, content and video-sharing platform ("OnlyFans") that allows users ("Creators") to share and monetize entertainment content offered to other users ("Fans"). (FAC¶¶8-9.) Plaintiffs N.Z. and R.M. are two alleged California Fans who purportedly used OnlyFans to purchase content from Creators, including individualized messaging that allowed Plaintiffs to experience the fantasy of intimate conversations, even though Plaintiffs do not have a non-commercial relationship with any Creator. (*Id.*¶¶28-31, 250-323.) Plaintiffs claim some Creators did not provide the "authentic" relationships they paid for, outsourcing their interactions to third parties ("Agency Defendants") who managed the Creators' communications with Plaintiffs. Despite the contract for the interactions being expressly between the Creator and Fan, Plaintiffs blame FIL (the London-based owner and operator of OnlyFans) and its subsidiary Fenix Internet (together, "Fenix"), alleging that Fenix "duped" Plaintiffs into thinking the Creators they paid were personally engaging with them, and/or should have monitored their communications and stopped the Creators and Agency Defendants from using third parties' assistance to operate their accounts. The FAC should be dismissed for lack of jurisdiction, failure to state a claim, and improper venue as to Plaintiff R.M.[1]

***First***, the Court lacks personal jurisdiction over Fenix. RICO's nationwide service of process provision, 18 U.S.C. §1965(b), does not provide personal jurisdiction because Plaintiffs do not allege "a single nationwide RICO conspiracy" involving all defendants—a vital prerequisite under Ninth Circuit precedent. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). The Court does not have general jurisdiction over Fenix because they are not incorporated or headquartered in California—the only ties that typically render a business "at home" in a jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Court lacks specific jurisdiction over Fenix because the only tie between Plaintiffs' claims against Fenix and California is the fact that

---

[1] Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material.

1  two Plaintiffs are allegedly located here, which is insufficient. *See Walden v. Fiore*, 571
2  U.S. 277, 284 (2014).

3      **Second**, Plaintiffs' claims are not plausibly pled and are all barred by Section 230.
4  Plaintiffs fail to plead key elements of their federal claims, and their six California claims
5  are barred by (among other things) the OnlyFans Terms of Service ("Terms"), which
6  expressly disclaim any Fenix obligation to ensure Plaintiffs' interactions are sufficiently
7  "authentic." (ECF 60-1, PageID#359-60.)

8      **Third**, Plaintiff R.M. fails to plead a basis for venue in this District, since he resides
9  in the Eastern District of California and does not allege significant conduct occurred here.

10      Because no basis exists for this action to proceed, it should be dismissed.

**ARGUMENT**

11

12  **I.    THE COURT LACKS PERSONAL JURISDICTION OVER FENIX**

13      **A.    The Court Does Not Have Jurisdiction Under RICO**

14      RICO contains special provisions for service of process in civil actions. Plaintiffs
15  allege this "Court has personal jurisdiction over Defendants pursuant to 18 U.S.C.
16  §§1965(b) and (d)." (FAC¶22.) Incorrect. Plaintiffs do not meet the applicable statutory
17  requirements to invoke §1965(b)'s nationwide service of process provision against either
18  Fenix entity, and §1965(d) does not create a vehicle to acquire personal jurisdiction.

19      **1.    Section 1965(b) Does Not Give the Court Personal Jurisdiction**

20      Section 1965(b) provides that in any RICO action in a U.S. district court where "the
21  ends of justice require that other parties residing in any other district be brought before the
22  court, the court may cause such parties to be summoned, and process for that purpose may
23  be served in any judicial district of the United States by the marshal thereof." 18 U.S.C.
24  §1965(b). Although this provision allows a court to obtain personal jurisdiction over a
25  defendant through nationwide service of process, it also "makes clear" that "the right to
26  nationwide service in RICO suits *is not unlimited*." *Butcher's Union*, 788 F.2d at 539.
27  Among other things, a plaintiff must demonstrate "the facts show a *single nationwide*
28  RICO conspiracy exists." *Gilbert v. Bank of Am.*, 2014 WL 4748494, at *4 (N.D. Cal. Sept.

2

23, 2014) (emphasis in original); *Limcaco v. Wynn*, 2021 WL 5040368, at *9 (C.D. Cal. Oct. 29, 2021) (same).

To meet this requirement, Plaintiffs must plead facts showing all defendants worked together to carry out one common RICO conspiracy, rather than alleging multiple different conspiracies with overlapping actors. For example, in *Butcher's Union*, plaintiffs brought RICO claims against 18 different defendants, arguing that several attorneys worked with four different employers to engage in separate union-busting campaigns. 788 F.2d at 537. The Ninth Circuit held the district court could not obtain jurisdiction over defendants under §1965(b) because plaintiffs failed to "allege a single nationwide RICO conspiracy." *Id.* at 539. The court reasoned there was no single "multidistrict conspiracy" because "none of the four defendant employers had any specific knowledge of or participation in any of the other" employer's union-busting activities, even though the same lawyers coordinated "each of the individual conspiracies." *Id.*

Here, Plaintiffs likewise fail to "allege a single nationwide RICO conspiracy." *Id.* Although Plaintiffs allege individual Creators worked with various Agency Defendants to manage their interactions with users, they do not allege *Fenix* coordinated with the Creators or Agency Defendants, nor that any Creator or Agency Defendant knew about or coordinated with any other Creator or Agency Defendant, to carry out the alleged conspiracy. (FAC¶¶365-75.) At best, Plaintiffs allege several entirely *separate* acts, which they claim misled Fans, rather than a single nationwide conspiracy encompassing all named Defendants. Accordingly, Plaintiffs cannot invoke §1965(b) to obtain personal jurisdiction over Fenix. *See, e.g.*, *Butcher's Union*, 788 F.2d at 539; *Gilbert*, 2014 WL 4748494, at *5 (no §1965(b) jurisdiction where "Plaintiffs fail to allege any connection between [one group of defendants] and [a second group of defendants] and the only connection between those two groups of defendants is that they are alleged to have done business with [a third group of Defendants]"); *Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *13 (C.D. Cal. Jan. 12, 2015) (no jurisdiction where plaintiffs only alleged defendant was connected with another defendant, but not all other members of the conspiracy).

### 2.    Section 1965(d) Does Not Give the Court Personal Jurisdiction

Plaintiffs' efforts to assert personal jurisdiction over Fenix under §1965(d) are equally meritless. That section provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. §1965(d).

On its face, §1965(d) does not provide a vehicle for a court to obtain personal jurisdiction over a defendant. As shown, §1965(b) sets forth when and how a plaintiff can serve a "summon[s]"—the document that gives a court jurisdiction over a defendant, assuming constitutional requirements are satisfied. 18 U.S.C. §1965(b). Similarly, §1965(c) discusses when and how a party can serve a witness subpoena in a RICO action. *Id.* §1965(c). Thus, §1965(d)'s "reference to '[a]ll other process' must mean process *different* than a summons or a government subpoena, both of which are dealt with in previous subsections." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006). Allowing a plaintiff to use §1965(d) to serve a summons—and thus acquire personal jurisdiction—would be nonsensical, rendering §1965(b) and (c) "duplicative." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998). It would also undermine Congress's decision in §1965(b) to allow nationwide service of process only when "the ends of justice [so] require." *Cory*, 468 F.3d at 1230.

Courts consistently reject efforts by plaintiffs to use §1965(d) to acquire personal jurisdiction over out-of-state defendants. *See, e.g.*, *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117-20 (3rd Cir. 2020) (holding RICO plaintiffs cannot rely on §1965(d) as a means to obtain personal jurisdiction); *Cory*, 468 F.3d at 1230 (same); *PT United*, 138 F.3d at 72 (same); *Mir*, 2015 WL 4139435, at *12 n.15 (same); *Bray v. Kendall*, 2010 WL 56181, at *5 (N.D. Cal. Jan. 5, 2010) (same). This Court should do the same.

### B.    Due Process Prohibits Exercising Personal Jurisdiction Over Fenix

Plaintiffs also cannot meet their burden to establish personal jurisdiction over Fenix under a traditional due process analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

### 1.   The Court Does Not Have General Jurisdiction

General jurisdiction exists when a party's contacts with the forum state are "so continuous and systematic as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is typically "at home" only within "[its] place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137. FIL is incorporated and registered in England and Wales, with its principal place of business in London. (FAC¶39.) Fenix Internet is organized and headquartered in Delaware. (ECF60-1, ¶7.) Neither entity has offices, staff, or other physical presence in California, or a registered agent for service of process here. (*Id.* ¶10.) Thus, Fenix are not "at home" in California. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (rejecting general jurisdiction where these factors were absent).

### 2.   The Court Does Not Have Specific Jurisdiction

Plaintiffs cannot demonstrate Fenix's "suit-related conduct [creates] a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017). For specific jurisdiction: (1) the defendant must "purposefully direct[] [his] activities" toward the forum or "purposefully avail[] [himself] of the benefits afforded by the forum's laws"; (2) the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction [must] comport[] with fair play and substantial justice, i.e., it [must be] reasonable." *Id.* at 1023. Plaintiffs "bear the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. Specific jurisdiction is assessed on a claim-by-claim basis. *See Rancour v. Lush*, 2024 WL 1829621, at *5 (C.D. Cal. Mar. 18, 2024).

### (a)   Plaintiffs Cannot Show Purposeful Direction or Availment

Most of Plaintiffs' claims sound in tort and are evaluated under the purposeful direction test. *See, e.g.*, *Boat People S.O.S., Inc. v. Voice*, 2024 WL 3914508 at *13 (C.D. Cal. July 31, 2024). Plaintiffs' breach of contract claim is evaluated under the purposeful availment test. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016-17 (9th Cir. 2008). Plaintiffs cannot satisfy either.

**(i)**    **Plaintiffs Cannot Demonstrate Purposeful Direction**

For specific jurisdiction to exist under the purposeful direction test, Fenix must have "(1) committed an intentional act, (2) expressly aimed at [California], (3) causing harm [they] kn[ew] [would] likely… be suffered in [California]." *Schwarzenegger*, 374 F.3d at 803. Plaintiffs do not and cannot allege Fenix undertook any tortious act "directly targeting [California]." *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111 at *7 (C.D. Cal. Dec. 17, 2020).

**FIL**. Plaintiffs' allegations that they used OnlyFans in California are insufficient to establish that FIL directly targeted California. (FAC¶326.) As Judge Sykes observed in dismissing another OnlyFans-related case, "the mere operation of interactive website[s] visited by residents of a particular state does not, by itself, establish that Defendant either expressly aimed its conduct at that state or deliberately reached out to it." *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 at *4 (C.D. Cal. May 2, 2024); *Doe 1 v. Fenix Int'l Ltd.*, 2024 WL 5505192, at *6 (N.D. Cal. Nov. 22, 2024) (similar). That is because Plaintiffs cannot "satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. Plaintiffs do not—and cannot—allege Fenix does anything to purposefully direct OnlyFans at California. *Muto*, 2024 WL 2148734 at *4; *Doe 1*, 2024 WL 5505192, at *6.

The Ninth Circuit's recent en banc decision in *Briskin v. Shopify, Inc.*, 2025 WL 1154075 (9th Cir. Apr. 21, 2025), does not change the calculus. *Briskin* held that a website operator can be subject to jurisdiction in California even if the website does not differentially target California consumers. *Id.* at *12. But it reaffirmed prior case law holding that a plaintiff must point to "something more than" a website's "mere passive nationwide accessibility" to subject the website operator to jurisdiction in California. *Id.* at *8. *Briskin* does not displace Judge Sykes's and Judge Breyer's well-reasoned conclusions that Fenix cannot be subject to jurisdiction in California merely because some users reside here. *Muto*, 2024 WL 2148734 at *4; *Doe 1*, 2024 WL 5505192, at *6.

**Fenix Internet**. Plaintiffs' allegations that Fenix Internet "directly or indirectly

1  collect[ed]" payments from Fans and remitted payments to Creators in California
2  (FAC¶42) are irrelevant because Plaintiffs do not allege Fenix Internet's payment-
3  processing services were tortious or caused them harm. *See Schwarzenegger*, 374 F.3d at
4  803. Moreover, Fenix Internet's payment processing services are initiated by consumers
5  accessing OnlyFans—wherever they may be located—and therefore are not contacts Fenix
6  Internet itself directed at California. *Muto*, 2024 WL 2148734 at *4 (rejecting jurisdiction
7  over Fenix for OnlyFans-related claims); *Doe 1*, 2024 WL 5505192, at *6 (same).

8                      **(ii)   Plaintiffs Cannot Demonstrate Purposeful Availment**

9          For specific jurisdiction under the purposeful availment test, "the defendant *himself*"
10 must undertake "actions" that "create a substantial connection with the forum State." *Picot*
11 *v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (emphasis in original). A "contract" with
12 plaintiff "alone does not automatically establish minimum contacts in the plaintiff's home
13 forum." *Boschetto*, 539 F.3d at 1017.

14 **FIL**. The contracts formed when Plaintiffs accepted the Terms do not constitute
15 purposeful availment by FIL. The Terms are offered to the world at large, not just
16 California residents, and do not show FIL "deliberately reached out beyond" England and
17 Wales "with a contract that envisioned continuing and wide-reaching contacts with
18 California." *See Doe 1 v. NCAA*, 2023 WL 105096 at *11 (N.D. Cal. Jan. 4, 2023).

19 **Fenix Internet**. None of the "billing and payment" services Plaintiffs allege Fenix
20 Internet performs take place in California, so there is no "substantial connection with
21 California." *Healthcare Ally Mgmt. of Cal., LLC v. Blue Cross Blue Shield of Minn.*, 2018
22 WL 5880743 at *4 (C.D. Cal. June 6, 2018).

23                      **(b)   Plaintiffs' Claims Do Not Arise Out of Fenix Internet's**
24                              **Allegedly Forum-Related Contacts**

25          "A lawsuit arises out of a defendant's contacts with the forum state if… a direct
26 nexus [exists] between the claims being asserted and the defendant's activities in the
27 forum." *Garcia v. NutriBullet, L.L.C.*, 2022 WL 3574699, at *3 (C.D. Cal. July 14, 2022).
28          Plaintiffs' claims against Fenix Internet do not arise out of or relate to its payment

processing services, which are its only asserted tie to California. Accordingly, Plaintiffs cannot demonstrate their claims arise out of Fenix Internet's supposed contacts with California. *See Lightpath Cap., Inc. v. Phoenix Am. Hosp., LLC*, 2018 WL 5905387, at *6 (C.D. Cal. Apr. 5, 2018) (no personal jurisdiction existed where alleged harms did not arise from defendants' other California-related activities).

**(c)**     **The Court Should Transfer Claims Against Fenix Internet to Delaware**

"When the district court lacks personal jurisdiction over" a defendant, "transfer pursuant to 28 U.S.C. § 1406(a) is appropriate." *Maschoff Brennan Laycock Gilmore Israelsen & Wright PLLC v. PilePro, LLC*, 2015 WL 13917884, at *5 (C.D. Cal. Oct. 27, 2015). Here, the Court should transfer Plaintiffs' claims against Fenix Internet to the District of Delaware, where it is subject to general jurisdiction. Doing so would comport with the forum-selection clause in the Terms providing that claims involving Fenix Internet (but not FIL) may be filed in Delaware. (ECF 60-1, PageID#366.) The Court found the forum-selection clause generally enforceable. (*See* ECF 117.) Enforcing it here would not offend California public policy because jury trials and class actions are available in Delaware federal court. (*Id.*)

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX

### A.    None of Plaintiffs' Claims Against Fenix Are Plausible

To survive a motion to dismiss, Plaintiffs must plead a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The FAC flunks this basic requirement. Plaintiffs' theory is (1) Agency Defendants impersonated Creators in chats with Plaintiffs, and (2) Fenix misrepresented and/or failed to stop them. (FAC¶¶101-54.) Plaintiffs allege no facts suggesting Fenix actually knew about the activities of which Plaintiffs complain. (*Contra id.*¶¶133-36.) Instead, Plaintiffs claim Fenix "should have known" because Creator accounts would have shown multiple simultaneous logins, and Fenix could infer from high chat volumes that Creators were using agencies. (*Id.*¶¶137-49.) But the FAC specifically pleads the Agency Defendants' contractors use technology to communicate

8

1  with Plaintiffs "without ever opening the official OnlyFans interface." (*Id.*¶¶112, 120-27.)
2  And Plaintiffs do not plead facts showing Fenix did, or had any reason to, monitor
3  individual Creators' chats to prevent the alleged activities, because using Agency
4  Defendants' services does not violate OnlyFans' Terms. (ECF 60-1, PageID#374.) This
5  fatal defect infects and renders implausible every claim.

6  **B.  Section 230 Bars Plaintiffs' Claims**

7      47 U.S.C. §230 immunizes "(1) a provider… of an interactive computer service
8  (2) whom a plaintiff seeks to treat… as a publisher or speaker (3) of information provided
9  by another information content provider," *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d
10  1093, 1097 (9th Cir. 2019), and "extends to causes of action under both state and federal
11  law." *Lewis v. Google LLC*, 461 F.Supp.3d 938, 953 (N.D. Cal. 2020). Plaintiffs' claims
12  seek to treat Fenix as a publisher or speaker and are all barred by §230.[2]

13      FIL, by operating OnlyFans, "facilitate[s] the connection of countless online users
14  to a common database" and "qualif[ies] as [an] interactive computer service[]." *Hicks v.*
15  *Bradford*, 2023 WL 6190884, at *2 (C.D. Cal. Aug. 17, 2023). Plaintiffs allege Fenix
16  "facilitated" and knew or "should have known" of others' use of "Chatters" to
17  communicate with Plaintiffs without their consent. (*See, e.g.*, FAC¶¶7, 156, 171, 440-41,
18  459, 470, 482, 510, 542.) As the Ninth Circuit recently made clear, Plaintiffs cannot hold
19  Fenix liable for "facilitating communication among users" that results in alleged tortious
20  or illegal activity, like fraud. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1152-53 (9th Cir. 2025).
21  Section 230 bars Plaintiffs' claims because they "necessarily implicate [Fenix's] role as a
22  publisher of third-party content," and "require [Fenix] to monitor third-party content"—
23  Plaintiffs' alleged communications with "Chatters"—to avoid liability. *Id.* at 1153.
24  Because Fenix expressly disclaims any obligation to monitor third-party content, these

25

26  [2]    This Court recognized Plaintiffs do not dispute they are bound by the Terms, which
contain an "English choice-of-law provision." (ECF 117, PageID#1506-07, 1509, 1519.)
27  This Motion addresses Plaintiffs' claims under federal and California law because, as Fenix
showed, English law is substantially similar, but without waiving Fenix's right to enforce
28  their choice-of-law clause in the future.

1  claims fail.[3]

2      Plaintiffs' claims that Fenix "falsely promised" Plaintiffs "'authentic'

3  communications" with Creators likewise rely on Fenix to monitor communications for

4  purported "authenticity." (*See, e.g.*, FAC¶¶133-49, 363-65, 444, 498-501, 505-07, 523,

5  529, 539.) These claims also fail as promises "too general to be enforced," *Grindr*, 128

6  F.4th at 1154, particularly because Fenix expressly "make no promises or guarantees about

7  the accuracy" of "materials which [Fenix] make accessible on OnlyFans," and do not

8  guarantee "that [u]sers will achieve any particular result or outcome from using such

9  materials." (ECF 60-1 PageID#360.)

10      **C.    Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims**

11      To state a RICO claim, a plaintiff must allege: "(1) conduct (2) of an enterprise

12  (3) through a pattern (4) of racketeering activity." *Meyer v. One West Bank, F.S.B.*, 91

13  F.Supp.3d 1177, 1182 (C.D. Cal. 2015). To state a claim for RICO conspiracy, Plaintiffs

14  must also allege "the assent of each defendant" to the conspiracy. *United States v.*

15  *Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982).

16      "A pattern of racketeering activity requires at least two predicate acts of racketeering

17  activity, as defined in 18 U.S.C. §1961(1)." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d

18  969, 972 (9th Cir. 2008). Here, the only statutorily permissible RICO predicates Plaintiffs

19  claim are alleged acts of wire fraud.[4] (FAC¶382.) To plead a RICO claim based on wire

20  fraud, Plaintiffs must allege: "(A) the formation of a scheme to defraud, (B) the use of the

21  mails or wires in furtherance of that scheme, and (C) the specific intent to defraud."

22  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

23
24  [3]    The Terms state Fenix "are not responsible for reviewing or moderating Content," "cannot control and will not be responsible to [Plaintiffs] for the use which other [u]sers
25  *or third parties* make" of content Plaintiffs upload to OnlyFans, and "are under no obligation to monitor Content or to detect breaches of the Terms." (ECF 60-1 PageID#359-60.)
26  [4]    Although Plaintiffs allege additional acts supposedly relevant to their RICO claims
27  (FAC¶422), none appear to fall under the list of permissible RICO predicates under §1961(1). *See Banks v. ACS Educ.*, 638 F.App'x 587, 589 (9th Cir. 2016) (affirming
28  dismissal of RICO claim because violations of statutes not listed within 1961(1) do not constitute racketeering activity).

1    Plaintiffs' RICO claims fail in multiple respects.

2    *First*, as explained in §§III-IV of Moxy Management's motion to dismiss, which

3    Fenix join, Plaintiffs fail to allege the existence of a racketeering enterprise, and do not

4    plead that they suffered a concrete financial loss nor that Defendants formed a conspiracy

5    to violate RICO or commit wire fraud.

6    *Second*, the FAC is devoid of facts indicating Fenix had a specific intent to mislead

7    Fans or conspired with Creators or the Agency Defendants to defraud Fans. Instead,

8    Plaintiffs make only conclusory allegations that all "Defendants acted with the specific

9    intent to deceive and defraud Fans to increase their profits." (FAC¶381.) Such

10   "[t]hreadbare recitals of [an] element[] of a cause of action, supported by mere conclusory

11   statements," is not enough to state a claim under any pleading standard, *see Iqbal*, 556 U.S.

12   at 678, let alone that Fenix formed a specific intent to commit wire fraud against their users.

13   *See, e.g.*, *Manos v. MTC Fin., Inc.*, 2017 WL 8236356, at *10 (C.D. Cal. Dec. 21, 2017)

14   ("conclusory allegation that Defendants possessed a specific intent to defraud to

15   accomplish the purpose of each scheme" insufficient); *Helms v. Wells Fargo Bank, N.A.*,

16   2018 WL 6133715, at *4 (C.D. Cal. June 19, 2018) (similar).

17   ### D.    Plaintiffs Fail to Plead a VPPA Claim

18   The VPPA prohibits "knowingly disclos[ing], to any person, personally identifiable

19   information ["PII"] concerning any consumer" of a video tape service provider. 18 U.S.C.

20   §2710(b)(1). Plaintiffs do not plead a plausible VPPA claim.

21   *First*, Plaintiffs cannot assert claims against an entity tangentially related to a

22   purported disclosure if that entity does not actually control the disclosure. *See Mollett v.*

23   *Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("The lawfulness of this disclosure cannot

24   depend on circumstances outside of [defendant's] control."). Alleging "the mere *possibility*

25   that information could be disclosed" to others, not that defendant "*in fact* made such

26   disclosures," is insufficient. *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290, at *3 (W.D.

27   Wash. Sept. 3, 2024) (emphasis in original).

28   Plaintiffs never allege Fenix *themselves* have "taken the affirmative act of

11

1  disclosing" any PII. *Id.* Instead, Plaintiffs allege actions by "management agencies" outside

2  Fenix's control—"on behalf of and at the direction of the *Creators*"—and allege Fenix

3  "disclosed Plaintiffs'… [PII] to other people" only by "facilitat[ing] the communication of

4  information between Fan and Creator [OnlyFans] accounts" (but *not* on "the OnlyFans

5  platform itself.") (FAC¶¶112, 461.) Plaintiffs' acknowledgment that Fenix's only

6  purported role is to "facilitat[e]" disclosures by others ends their claim.

7      ***Second***, Plaintiffs do not plead facts indicating Fenix "knowingly" disclosed

8  Plaintiffs' PII. "[K]nowingly connotes actual knowledge" and "means consciousness of

9  transmitting the private information." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095

10  (N.D. Cal. 2015). The FAC asserts Fenix "should know" Creators used others to manage

11  their interactions—"an open secret to industry insiders." (FAC¶¶129, 137.) But whether

12  Fenix *should know* is irrelevant to the VPPA: there are no allegations establishing Fenix

13  had *actual knowledge of a specific disclosure* made by a Creator to an Agency. *See*

14  *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug.

15  11, 2017) (explaining plaintiff "must prove that the defendant knew that a third party would

16  actually link information it had with other information conveyed and become aware that a

17  particular person had in fact purchased a particular video" (citing *Hulu*)).

18      ***Third***, PII is "information that would readily permit an ordinary person to identify a

19  specific individual's video-watching behavior" and must include "some information that

20  can be used to identify an individual." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984-85

21  (9th Cir. 2017). PII does not include "information" that "*cannot* identify an individual

22  unless it is combined with other data" through a method "an ordinary person could not

23  use." *Id.* at 986 (emphasis in original). "[A]nonymous usernames" alone are not PII

24  because they do not "identify an actual, identifiable person and link that person to a specific

25  video choice." *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *12 (D.N.J.

26  July 2, 2014); *see also Afriyie v. NBCUniversal Media, LLC*, 2025 WL 962033, at *12

27  (S.D.N.Y. Mar. 31, 2025) (dismissing VPPA claim where "there are no allegations that

28  these profiles contain any further identifying information, such as names or addresses" and

1 "*Plaintiffs allege that the profiles are themselves anonymous*"). Courts in this District
2 dismiss VPPA claims alleging disclosure of a user ID where plaintiffs do not establish their
3 "profile is publically accessible" and "includes sufficient identifying information," such as
4 "name, gender, birthday, place of residence, career, education history, photographs, and
5 content of posts." *Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, at *3 (C.D.
6 Cal. Sept. 27, 2024) (collecting cases).

7     Plaintiffs allege Fenix collect information like "email address[es]" and "telephone
8 number[s]," but admit the only information purportedly disclosed to others was the Fans'
9 "communication history" with a Creator, which displays "the Fan's username," not their
10 real name. (FAC¶¶449-51.) While Plaintiffs contend a "username" can be used to "view
11 the Fan's profile on OnlyFans," they do *not* allege their profiles contain sufficient
12 information to identify them; rather, they allege Fans use "pseudonyms as a matter of
13 course… to remain anonymous." (FAC¶¶27, 450.)[5] Their VPPA claim fails.

14 ### E.   Plaintiffs Fail to Plead a CIPA Claim

15     Plaintiffs allege communications they sent to a Creator's account on OnlyFans were
16 then "disclosed to… contractors of the Agency Defendants" without their consent.
17 (FAC¶¶254-55, 269.) Plaintiffs claim Fenix aided Agency Defendants in "obtain[ing]" and
18 "us[ing]" those messages by "track[ing] Plaintiffs'… communications… on the OnlyFans
19 website." (*Id.*¶¶476-87.) Plaintiffs' CIPA claim fails.

20     ***First***, "[c]onsideration of consent is appropriate on a motion to dismiss" CIPA
21 claims. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021); *see also*
22 *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 955 (N.D. Cal. 2017), ("Plaintiffs' consent
23 bars" CIPA claim "because [CIPA] imposes liability only for interception without the
24 consent of all parties"). Courts "consistently hold that terms of service and privacy
25 policies… can establish consent to the alleged conduct challenged under" CIPA. *See Silver,*

26 ───────────────

27 [5]    If Plaintiffs *themselves* disclosed information in their profiles or communications
that enabled others to identify them, they agreed their "Content may be viewed by
individuals that recognise [their] identity" and Fenix are "not in any way… responsible" if
28 Plaintiffs "are identified from [their] Content." (ECF 60-1, PageID#359.)

2021 WL 3191752, at *3-4 (N.D. Cal. July 28, 2021) (collecting cases) (dismissing claim where plaintiff agreed to privacy policy which disclosed personal information would be shared with third parties, establishing consent); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *7-8 (N.D. Cal. Sept. 26, 2024) (dismissing CIPA claim where privacy policy "sufficiently disclosed the challenged data collection").

Plaintiffs did not and cannot dispute they expressly agreed to the Terms and the Privacy Policy. (ECF 117, PageID#1509; *see also* ECF 85, 87.) Indeed, Plaintiffs allege the Privacy Policy and Terms are part of "the legally binding agreement between [Plaintiffs] and [Fenix]" and quote them at length, admitting the Privacy Policy disclosed Fenix would process "customer data" like "comments… from your Fan account" and "chat messages between you and other users," including Creators. (*See, e.g.* FAC¶¶139, 163-66, 449.) The Privacy Policy further disclosed Fenix may: "[m]oderat[e]… text and content uploaded to the Website" and "content sent in chat messages"; "share personal data" with "third-party service providers," including "content and text moderation… providers"; and disclose "personal data" to "third parties for various business purposes." (ECF 62-1, PageID#525, 527, 535.) "Having alleged that they understood and agreed to [Defendants'] policies, *Plaintiffs cannot now claim to be ignorant of their contents*." *Smith*, 262 F.Supp.3d at 953 (dismissing CIPA claim where plaintiffs alleged policies "constitute a valid contract" and "allege[d] that they relied on [defendant's] assertions in the very same contracts").

Agreeing to the Terms, Plaintiffs expressly "*consent[ed]* to… the processing of [their] personal data as more fully detailed in [OnlyFans'] Privacy Policy" and "acknowledge[d]" that "[o]nce [their] Content"—defined as "any material uploaded to OnlyFans by any User (whether a Creator or a Fan), including any photos, videos…, text…, and any other material whatsoever"—is "posted on OnlyFans, [Fenix] cannot control and will not be responsible to [Plaintiffs] for the use which *other Users or third parties make of such Content*," and "do not select or modify the Content that is *stored or transmitted* via OnlyFans." (ECF 60-1, PageID#354, 357, 359-60.)

Because Plaintiffs expressly consented to any alleged Fenix "tracking," storage, and disclosure of Plaintiffs' communications to Creators and others, and agreed Fenix are not responsible for any subsequent "use" of those communications, Plaintiffs' CIPA claim fails.

**Second**, as explained in §VII of Moxy Management's motion to dismiss, which Fenix join, Plaintiffs cannot show third parties read their messages "in transit" as CIPA requires because Plaintiffs allege their communications were not "distributed [to] and/or accessible" by software employed by third parties until *after* they were received by the Creator's account. (*See, e.g.*, FAC¶¶5, 112-13, 122-24); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of CIPA claim with prejudice where defendant app received and forwarded text messages to celebrities because defendant "could have only read or attempted to read [message] *after it was received*… so the text could not have been accessed 'in transit' within the meaning of § 631(a).").

**Third**, Plaintiffs' allegation that Fenix's "computer code and programs… track[ed]" Plaintiffs' communications on OnlyFans (FAC¶479) "does not allege specific facts as to how or when the interception takes place, which… fall[s] short of stating a plausible claim under" CIPA. *See Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1109–10 (C.D. Cal. 2023) (dismissing §631 claim); *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (dismissing §631 claim because "[t]hough Plaintiff alleges in general terms the interception occurs through software embedded in Defendant's website, she does not include additional factual details establishing when the interception occurs"). Plaintiffs' conclusory allegations regarding Fenix's role in the purported "wiretapping" are likewise insufficient, and contradict Plaintiffs' amended allegations that "Chatters" are not using the OnlyFans platform directly. *Supra*, §II.A.

## F.    Plaintiffs Fail to Plead a Claim Under Penal Code §502

California Penal Code §502 is an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).

Section 502 claims "sound[] in fraud," and are therefore "subject to Rule 9(b)'s pleading standard." *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020). Plaintiffs claim Fenix violated §502 by taking their data without permission and also assisting the Agency Defendants in doing so. (FAC¶¶471-72.) This claim fails.

*First*, Plaintiffs must allege Fenix accessed Plaintiffs' data "without permission" by "overcom[ing] technical or code-based barriers." *Gutierrez v. Converse, Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023). Plaintiffs do not and cannot allege Fenix overcame any such barriers because FIL owns and operates OnlyFans and "there are "no technical barriers blocking [it] from using its own [w]ebsite." *Id*. Nor do Plaintiffs allege the Agency Defendants overcame any technical barriers; rather Plaintiffs allege they obtained permission and login credentials from Creators to access Plaintiffs' chats. (FAC¶468.) Accordingly, Plaintiffs do not satisfy §502's "without permission" element.

*Second*, Plaintiffs must plead that Fenix committed any alleged violations "knowingly." Cal. Penal Code §502(c)(2)-(3), (6)-(7). As shown, Plaintiffs fail to plead Fenix *knew* any Agency Defendant was accessing chats for any Creator "without permission" and by "overcoming technical or code-based barriers." *Supra*, §II.A.

*Third*, Plaintiffs must plead they suffered "damages or loss by reason of a violation." Cal. Penal Code §502(e)(1). Plaintiffs assert Fenix caused them "damages including invasion of privacy, emotional distress, and economic losses." (FAC¶474.) But the "majority of courts to consider the issue" have found that inchoate harms like "privacy invasions" and emotional distress "do not qualify" as damages under §502. *Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1020-21 (C.D. Cal. 2023) (collecting cases). Plaintiffs also plead no facts in support of their economic damages claim. *See Gutierrez*, 2023 WL 8939221, at *5 (dismissing conclusory damages claim).

*Fourth*, Plaintiffs fail to plead a single fact in support of their §502(2)-(3) claims that Fenix improperly took, accessed, or used Plaintiffs' data. (FAC¶472.) Their theory is the Agency Defendants improperly participated in Creator chats, not that Fenix misappropriated data through computer hacking, since users consensually posted the

1  content on OnlyFans. (*Id.*¶¶250-323.) Plaintiffs' conclusory allegation should be dismissed
2  as insufficient under Rule 9(b).

3  ### G. <u>Plaintiffs Fail to Plead a Breach of Contract Claim</u>

4  To state a breach of contract claim, Plaintiffs must plead: (1) the existence of a
5  contract; (2) performance by one party; (3) breach by the other party; and (4) damages.
6  *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Plaintiffs do not invoke the
7  Terms; instead, they claim "[w]hen a Fan goes to subscribe to a Creator's page," the site
8  "promise[s]" they "will be able to '[d]irect message with this' Creator," which forms
9  *separate* contracts with Fenix for every subscription supposedly breached when Plaintiffs
10 allegedly communicated with third parties. (FAC¶¶497-504.)

11 But a plaintiff cannot allege a breach of alleged promises made outside of the four
12 corners of an integrated contract. *See, e.g., EPA Real Estate P'ship v. Kang*, 12 Cal.App.4th
13 171, 175 (1992) (holding integrated contract is "the final contract between the parties" and
14 cannot be contradicted by "collateral agreements"); *AMC Tech., LLC v. Cisco Sys., Inc.*,
15 2012 WL 174949, at *6 (N.D. Cal. Jan. 20, 2012) (dismissing breach of contract claim
16 where "integration clause by its terms bar[red] any extra-contractual promises"). The
17 Terms' integration clause states Plaintiffs have "[n]o implied… rights… save as expressly
18 set out in the Terms," and the Terms "form the entire agreement between [Fenix] and
19 [Plaintiffs] regarding [their] access to and use of OnlyFans." (ECF 60-1, PageID#365-66.)

20 Moreover, courts ascertain the terms of the parties' agreement from their written
21 contract "alone." *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014); *see also*
22 *Caraccioli v. Facebook, Inc.*, 700 F.App'x 588, 590 (9th Cir. 2017) (affirming dismissal
23 of breach claim barred by terms of service); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at
24 *5 (C.D. Cal. Feb. 19, 2021) (dismissing breach claim where terms barred claim based on
25 separate policy). The Terms state transactions between Fans and Creators are "contracts
26 between Fans and Creators," Fenix are *not* parties to those contracts and are "not
27 responsible for any Fan/Creator Transaction," and Creators may "have an agent, agency,
28 management company or other third party which assists [them] with the operation of [their]

1  Creator account (or operates it on [their] behalf)." (ECF 60-1, PageID#370-71, 374.) The

2  Terms also disavow any Fenix obligation to monitor content or responsibility for its

3  accuracy or use by others. *Supra*, §II.B. These provisions extinguish Plaintiffs' claim that

4  Fenix had any contractual obligation to ensure Plaintiffs were interacting with specific

5  Creators.

6           **H.    Plaintiffs Fail to Plead Fraud or Deceit Claims**

7           To state a claim for fraud or deceit, Plaintiffs must plead: "(a) misrepresentation

8  (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

9  scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

10  (e) resulting damage." *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). Fraud must be

11  pleaded with particularity, meaning Plaintiffs must "articulate the who, what, when, where,

12  and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th

13  Cir. 2009). Plaintiffs allege Fenix fraudulently represented they would be interacting with

14  individual Creators, when some Creators were outsourcing their interactions to the Agency

15  Defendants. (FAC¶505.) Plaintiffs' claims fail.

16          ***First***, a plaintiff cannot allege defendant misrepresented information that was

17  disclosed. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012)

18  (affirming dismissal of fraud claim due to defendant disclosure); *Barrett v. Apple Inc.*, 523

19  F.Supp.3d 1132, 1152 (N.D. Cal. 2021) (dismissing fraud claim contradicted by website

20  disclaimers). The Terms disclose Creators may "have an agent… or other third party" that

21  assists them, and Fenix "cannot control" how Creators or third parties "use" content

22  provided by Fans, "make no promises or guarantees about the accuracy or otherwise" of

23  materials made available to Fans, and "are not responsible for reviewing or moderating

24  Content." (ECF 60-1, PageID#359-60, 374.)

25          ***Second***, while the FAC alleges Plaintiffs "justifiably relied" on Twitter posts and

26  marketing statements buried on OnlyFans' website (FAC¶¶81-92, 251, 264, 505-09, 525),

27  neither Plaintiff sufficiently "specif[ies] when he was exposed to them or which ones he

28  found material." *Kearns*, 567 F.3d at 1126; *see also Moody v. Hot Topic, Inc.*, 2023 WL

9511159, at *7 (C.D. Cal. Nov. 15, 2023) (dismissing misrepresentation claims where plaintiffs failed to "provide the particulars of their own experience reviewing or relying upon any representations").

**Third**, "merely conclusory" allegations of "scienter and intent to defraud" fail to state a claim. *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009) (dismissing fraud claim). Plaintiffs allege Fenix "*should know* about" Creators' use of third parties "from monitoring its platform" (FAC¶137), but do not explain how Fenix would "know" the identity of individuals typing in a Creator interaction.

**Fourth**, Plaintiffs cannot base a fraud claim on a "vague and subjective" statement that is "not a specific and measurable claim." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). To the extent Plaintiffs' claims rely on alleged representations about "foster[ing] authentic relationships" and "authentic connections," (*see, e.g.*, FAC¶¶82, 84), these statements are non-actionable as a matter of law because they are "incapable of objective verification and not expected to induce reasonable consumer reliance." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F.Supp. 918, 931 (C.D. Cal. 1996); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (statements promising "[a]uthentic [t]radition" were too vague to be actionable).

## I.    <u>Plaintiffs Fail to Plead UCL or FAL Claims</u>

California's UCL prohibits "unlawful, unfair or fraudulent business" practices, along with false advertising. Cal. Bus. & Prof. Code §17200. The FAL prohibits "untrue or misleading" advertising statements the speaker knows, or through "reasonable care" should know "to be untrue or misleading." *Id.* §17500. Plaintiffs allege Fenix violated these statutes by: (1) promising Plaintiffs would be able to interact directly with Creators, when some Creators were working with agencies to manage their interactions; (2) violating CIPA; (3) committing fraud; and (4) purportedly failing to enforce the Terms to prevent Creators from misleading Fans regarding their work with agencies. (FAC¶¶527-46.) Because these claims sound in fraud, they are subject to Rule 9(b)'s stringent pleading

requirements. *See Kearns*, 567 F.3d at 1125.

To the extent Plaintiffs' UCL and FAL claims are predicated on their fraud, deceit, and CIPA theories, they fail because Plaintiffs' other claims fail. *Supra,* §§II.B., E., H. Moreover, to the extent Plaintiffs' UCL claim is based on Fenix's alleged failure to "enforc[e] their policies and [Terms]… or ensur[e] the Creators are engaging in direct communications with the Fans" (FAC¶539(c)), the Terms make clear Fenix "are under no obligation to monitor Content or detect breaches of the Terms," or ensure Creators are personally interacting with Fans. *Supra,* §II.B., G-H. Plaintiffs cannot now claim that it was unfair for Fenix not to detect breaches. *See Morton*, 2021 WL 1181753, at *5 (dismissing UCL claims where social media platform terms of service "specifically disclaim[ed]" responsibility for actions by third parties using the platform).

## III.    VENUE IS IMPROPER AS TO PLAINTIFF R.M.

The Court should dismiss Plaintiff R.M.'s claims for improper venue. In a putative class action, venue must be proper as to each named plaintiff. *See In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018). Plaintiffs assert venue is proper pursuant to 28 U.S.C. §1391(b)(2) because "a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred" in this District. (FAC¶23.) To invoke this transactional theory of venue, R.M. must show "significant events or omissions material to [his] claim… occurred in the district in question." *Burke v. Olden*, 2023 WL 4157456, at *2 (C.D. Cal. May 24, 2023).

R.M. cannot carry this burden. "[D]uring the time period at issue" R.M. "was a resident of El Dorado Hills" (FAC¶30) in the Eastern District of California. *See* 28 U.S.C. §84(b). Although R.M. claims he subscribed to Creators managed by two Agency Defendants located in this District, he further alleges the contractors he purportedly interacted with were located in foreign "countries like the Philippines or Venezuela." (FAC¶¶4, 105.) R.M. does not allege his personal harms or any material conduct by *any* Defendant occurred in this District. Accordingly, R.M. fails to carry his burden to show venue, and his claims must be dismissed. *See Busbice v. Vuckovich*, 2016 WL 10586306, at *2 (C.D. Cal. Dec. 9, 2016) (no venue where "little of Defendants' alleged involvement

giving rise to the claims alleges against them occurred in this district").

## CONCLUSION

The Court should dismiss the FAC for lack of personal jurisdiction, failure to state a claim, and/or improper venue.

DATED: May 23, 2025          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

21

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Defendants Fenix International Limited and

3 Fenix Internet LLC, certifies that this brief contains 6,986 words, which complies with the

4 word limit of C.D. Cal. L.R. 11-6.1.

5

6

7 DATED: May 23, 2025   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8

9       By:     *Jason D. Russell*

             JASON D. RUSSELL

10         *Attorneys for Specially Appearing Defendants*

        Fenix International Limited and Fenix Internet LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28