1   Oliver Rocos - State Bar No. 319059
        orocos@birdmarella.com
2   Barr Benyamin - State Bar No. 318996
        bbenyamin@birdmarella.com
3   BIRD, MARELLA, RHOW,
    LINCENBERG, DROOKS & NESSIM, LLP
4   1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
5   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
6
    Attorneys for Defendant Moxy
7   Management

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

| | |
|---|---|
| 11  N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated, | CASE NO. 8:24-cv-01655-FWS-SSC |
| 12 | **DEFENDANT MOXY** |
| 13 | **MANAGEMENT'S NOTICE OF MOTION AND MOTION TO** |
| Plaintiffs, | **DISMISS PLAINTIFFS' FIRST** |
| 14 | **AMENDED CLASS ACTION** |
| vs. | **COMPLAINT; MEMORANDUM** |
| 15 | **OF POINTS AND AUTHORITIES** |
| FENIX INTERNATIONAL LIMITED, | **IN SUPPORT THEREOF** |
| 16  FENIX INTERNET LLC, BOSS | |
| BADDIES LLC, MOXY | Filed Concurrently with [Proposed] |
| 17  MANAGEMENT, UNRULY | Order |
| AGENCY LLC (also d/b/a DYSRPT | |
| 18  AGENCY), BEHAVE AGENCY LLC, | Date:     June 26, 2025 |
| A.S.H. AGENCY, CONTENT X, INC., | Time:    10:00 a.m. |
| 19  VERGE AGENCY, INC., AND ÉLITE | Crtrm.:  10D |
| CREATORS LLC, | |
| 20 | Assigned to Hon. Fred W. Slaughter |
| Defendants. | |
| 21 | |

22

23

24

25

26

27

28

1

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Fred W. Slaughter, United States District Judge of the Central District of California, Southern Division, in Courtroom 10D, Defendant Moxy Management ("Moxy") will, and hereby does, move for an order dismissing the Class Action Complaint (the "Complaint") against Moxy pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for the following reasons:

**RICO And RICO Conspiracy** – Plaintiffs fail to state a RICO or RICO conspiracy claim because they have failed to allege the existence of a racketeering enterprise, do not plead that Moxy engaged in any conduct in furtherance of any such enterprise, or that Plaintiffs suffered recoverable damages.

**California Penal Code § 502** – Plaintiffs fail to state a claim under this statute because it requires "unauthorized" use and Plaintiffs plead Moxy was authorized to do what it allegedly did.  Plaintiffs also fail to plead they suffered any compensable damages.

**Video Privacy Protection Act** – Plaintiffs fail to state a claim under this statute because they fail to allege facts showing that Moxy is a video tape service provider within the meaning of the statute, that Moxy ever possessed any personally identifiable information covered by the statute, or that Moxy ever disclosed any such information outside of its ordinary course of business.

**California Invasion of Privacy Act and Electronic Communications Privacy Act** – Plaintiffs have failed to state claims under either of these statutes because they have not alleged that Moxy or any other defendant "tapped" or "intercepted" any communication and that even if that did occur, Plaintiffs and all other relevant individuals consented to any such interception.

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

Moxy further will, and hereby does, move for an order dismissing the claims brought by Plaintiffs B.L., S.M., and A.L. (the "Non-California Plaintiffs") in the FAC against Moxy on the basis of forum non conveniens for the following reasons:

On April 9, 2025, the Court held the Non-California Plaintiffs are bound by the forum-selection clause in the OnlyFans Terms of Service and that the forum selection clause precludes them from being able to bring claims in this forum such that their claims had to be dismissed. ECF No. 117 at 16.

As users of OnlyFans and by virtue of their alleged activities on OnlyFans, the same forum-selection clause applies to Moxy and the claims the Non-California Plaintiffs assert against Moxy. Accordingly, the claims asserted by the Non-California Plaintiffs against Moxy should be dismissed for the same reasons they were dismissed against OnlyFans.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the reply papers, the pleadings on file, and such other evidence and argument as the Court may receive. Pursuant to Local Rule 7-3, on May 16, 2025, counsel for Moxy met and conferred with counsel for Plaintiffs to discuss the grounds for its motion.

DATED:  May 23, 2025

Oliver Rocos
Barr Benyamin
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By: _____

Oliver Rocos
Attorneys for Defendant Moxy
Management

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION.............................................................................................2

TABLE OF CONTENTS .........................................................................................4

MEMORANDUM OF POINTS AND AUTHORITIES.........................................11

I.      INTRODUCTION ........................................................................................11

II.     LEGAL STANDARDS ................................................................................12

III.    PLAINTIFFS HAVE FAILED TO PLEAD A CIVIL RICO
        VIOLATION ................................................................................................13

        A.      Plaintiff Has Not Alleged Facts Showing A RICO Enterprise.............13

                1.      Plaintiffs Plead The Alleged Enterprise Was Formed
                        Before Its Members *Even Existed* ...................................13

                2.      Plaintiffs Have Failed To Plead The Alleged Enterprise
                        Members Even Knew Each Other Existed .................................14

                3.      Plaintiffs Have Not Pled Coordination.......................................15

                4.      Plaintiffs Have Failed To Plead A Common Purpose................17

                5.      The Alleged Members Of The Purported RICO Enterprise
                        Were Merely Acting In Their Self-Interest ................................18

        B.      Moxy Did Not Engage In Any Conduct In Furtherance Of The
                Alleged RICO Scheme........................................................................19

                1.      Moxy Did Not Give Or Take Directions From Anyone ...........19

                2.      Plaintiffs Have Not Alleged Moxy Committed A Predicate
                        Act............................................................................................19

                3.      OnlyFans' Alleged Fraudulent Acts Cannot Be Imputed
                        To Moxy ...................................................................................21

        C.      Plaintiffs Have Failed To Allege The Purported RICO Activity
                Caused Them Any Damages................................................................22

IV.     PLAINTIFFS FAIL TO PLEAD A RICO CONSPIRACY............................23

V.      MOXY COULD NOT AND DID NOT VIOLATE THE VPPA ..................23

        A.      Moxy Is Not Subject To The VPPA .......................................................23

        B.      Moxy Did Not Collect Any PII................................................................24

        C.      Any Disclosure By Moxy Was Permitted Under The VPPA ...............25

4

VI.    PLAINTIFFS' FAIL TO PLEAD A CLAIM UNDER CALIFORNIA
       PENAL CODE § 502 ................................................................................26

VII.   PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF CIPA OR THE
       WIRETAP ACT ......................................................................................27

       A.    Plaintiffs Do Not Plead An "Intentional Wiretapping" Violation........28

       B.    Plaintiffs Do Not Plead An "Interception" Violation ..........................28

       C.    Moxy Did Not Use Unlawfully Obtained Information Or Aid
             And Abet Or Conspire To Violate Section 631(a) ..............................30

       D.    Creators' Consent Is Fatal To Wiretap Act Claim................................30

VIII.  NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE
       DISMISSED ON THE BASIS OF FORUM NON CONVENIENS ..............31

IX.    CONCLUSION ........................................................................................32

CERTIFICATE OF COMPLIANCE.........................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................................... 12, 13

*Blue Oak Med. Grp. v. State Comp. Ins. Fund*,
　809 F. App'x 344 (9th Cir. 2020) ....................................................... 19, 20

*Boulton v. Community.com, Inc.*,
　2025 WL 314813 (9th Cir. Jan. 28, 2025) ................................................ 28

*Boyle v. U.S.*,
　556 U.S. 938 (2009) ................................................................................ 17

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
　519 F.3d 969 (9th Cir. 2008) ................................................................... 23

*Chaset v. Fleer/Skybox Int'l., LP*,
　300 F.3d 1083 (9th Cir. 2002) ................................................................. 22

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods.
　Liab. Litig.*,
　295 F. Supp. 3d 927 (N.D. Cal. 2018) ....................................................... 17

*Clemons v. Waller*,
　82 F. App'x 436 (6th Cir. 2003) ........................................................... 29, 30

*Coronavirus Rep. v. Apple, Inc.*,
　85 F.4th 948 (9th Cir. 2023) ................................................................... 21

*Cruz v. FXDirectDealer, LLC*,
　720 F.3d 115 (2d Cir. 2013) ................................................................... 17

*Custom Packaging Supply, Inc. v. Phillips*,
　Case No. 2:15-CV-04584-ODW-AGR, 2015 WL 8334793 (C.D.
　Cal. Dec. 7, 2015) ................................................................................ 26

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
　751 F.3d 990 (9th Cir. 2014) ................................................................... 13

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ............................................................................24

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)..................26

*Franklin v. Cmty. Regional Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ......................................................................31, 32

*Gardner v. Starkist Co.*,
    418 F. Supp. 3d 443 (N. D. Cal. 2019).............................................................21

*Gomez v. Guthy-Renker, LLC*,
    Case No. EDCV 14-01423 JGB, 2015 WL 4270042 (C.D. Cal. July
    13, 2015)............................................................................................................18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) .............................................................................30

*Gutierrez v. Converse, Inc.*,
    2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .............................................26, 27

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp. 3d 1007 (C.D. Cal. 2023)............................................................27

*Heiting v. Taro Pharms. USA, Inc.*,
    728 F. Supp. 3d 1112 (C.D. Cal. 2024).......................................................28, 30

*Hernandez v. Chewy, Inc.*,
    Case No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236 (C.D. Cal.
    Dec. 13, 2023) ..................................................................................................23

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ................25

*In re Jamster Mktg. Litig.*,
    No. 05cv0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22,
    2009)......................................................................................................16, 17, 18

*Khalid v. Microsoft Corp.*,
    No. 20-35921, 2023 WL 2493730 (9th Cir. Mar. 14, 2023).............................23

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ......................................................................28, 29

7

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................ 12

*Licea v. Am. Eagle Outfitters*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................ 29

*Marsh v. Zaazoom Sols., LLC*,
  No. C-11-05226-YGR, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012) .............. 29

*Martin v. Meredith Corp.*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................................................. 24

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................ 28

*Moore v. Kayport Package Express., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................ 20

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019) ......................................................... 14, 20

*In re Nickelodeon Consumer Priv. Litig.*,
  MDL No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014) .............. 25

*Nowak v. Xapo, Inc.*,
  Case No. 5:20-cv-03643-BLF, 2020 WL 6822888 (N.D. Cal. Nov.
  20, 2020) ............................................................................................ 27

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ................................................................ 15

*Oscar v. Univ. Students Co-op. Ass'n*,
  965 F.2d 783 (9th Cir. 1992) ......................................................... 13, 22

*Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ................................................................ 12

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................ 19

*Shaw v. Nissan N. Am. Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) ............................................ 15, 16

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

*Sihler v. Fulfillment Lab, Inc.*,
    Case No. 3:20-cv-01528-H-MSB, 2020 WL 7226436 (S.D. Cal.
    Dec. 8, 2020) ............................................................................................... 18

*Sterk v. Redbox Automated Retail LLC*,
    770 F.3d 618 (7th Cir. 2014) ...................................................................... 26

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................... 27, 30

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
    *& Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................... 18

*U.S. v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) .................................................................... 15

*U.S. v. Turkette*,
    452 U.S. 576 (1981) .................................................................................... 13

*Uce v. Oral Aesthetic Advoc. Grp., Inc.*,
    Case No. CV 23-3186-CBM-MRWx, 2024 WL 3050720 (C.D. Cal.
    Feb. 23, 2024) ....................................................................................... 16, 21

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) .................................................................... 19

*Wimo Labs LLC v. eBay Inc.*,
    Case No. SACV 15-1330-JLS, 2016 WL 11507382 (C.D. Cal. Jan.
    28, 2016) ..................................................................................................... 15

**Federal Statutes**

18 U.S.C.
    § 1343 ......................................................................................................... 19
    § 1961(3) ..................................................................................................... 14
    § 1962(c) ................................................................................................ 14, 23
    § 2511(1) ..................................................................................................... 28
    § 2511(2)(d) ................................................................................................ 30
    § 2710(a)(2) ................................................................................................ 25
    § 2710(a)(4) ................................................................................................ 23
    § 2710(b) ..................................................................................................... 23
    § 2710(b)(1) ................................................................................................ 24
    § 2710(b)(E) ............................................................................................... 25

9

**California Statutes**

Cal. Pen. Code

§ (6)-(7)..................................................................................................27
§ 502 ..............................................................................................12, 26, 27
§ 502(c)(2)-(3) .......................................................................................27
§ 631(a).........................................................................................27, 28, 30

**Other Authorities**

Fed. R. Civ. Proc. 9(b)............................................................................19, 20, 27

Fed. R. Civ. Proc. 12(b)(6) .....................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Moxy Management ("Moxy") is a management and consulting company formed in 2021 that services individuals ("Creators") on the OnlyFans social media platform. FAC ¶¶180-183. OnlyFans is a subscription-based social media, content-sharing, and video-sharing platform on which Creators can create, share, and monetize content offered to others ("Fans") and on which Fans can direct-message Creators' accounts. *Id.* ¶¶8-9, 14. Plaintiffs allege they are five individuals who wanted the fantasy of an intimate relationship with certain Creators by exchanging direct messages. *Id.* ¶¶28-37, 250-323. Plaintiffs concede Creators have "subscriber bases so large" it would be "physically impossible for a single individual" to interact with Fans "on a direct personal basis." *Id.* ¶179. Plaintiffs nonetheless claim they were somehow "duped" into thinking they were talking directly to Creators, when they allegedly were instead talking to "chatters" Moxy and the other defendant agencies (collectively, the "Agency Defendants") engaged to impersonate Creators. *See, e.g., id.* ¶¶257-259. Apparently disappointed their fantasy was just that, *a fantasy*, Plaintiffs now claim they were duped. Their claims fail.

**RICO and RICO Conspiracy** – The indispensable core of a civil RICO claim is that defendants form an enterprise and then coordinate with it to pursue a common purpose. Fatally, Plaintiffs allege the supposed RICO enterprise was formed *five years* before Moxy was even incorporated, which clearly is impossible. Just as fatally, they fail to allege facts showing OnlyFans even knew Moxy (or any Agency Defendant) existed, that any Agency Defendant knew any other Agency Defendant existed, that any supposed enterprise member had so much as a *single* communication

---

[1]    To avoid repetition in light of the other contemporaneously filed motions, Moxy details the allegations relevant to the claims asserted against it in its argument sections herein. Unless otherwise noted and for ease of reading, all citations and internal quotation marks are omitted from quoted material, and all emphasis is added.

with any other coordinating any RICO activity, or that members even shared a common purpose. At *best*, Plaintiffs allege only that defendants acted independently in pursuit of their own economic interests, which has *never* been held to violate RICO.

**California Penal Code § 502** – This claim fails as a matter of law because it requires "unauthorized" use and Plaintiffs plead Moxy was authorized to use Creators' accounts. Plaintiffs also fail to plead any compensable damages.

**Video Privacy Protection Act ("VPPA")** – The VPPA governs only the non-business disclosure of personally identifying information ("PII") by videotape providers. Plaintiffs nowhere allege facts showing Moxy is a videotape provider, that it ever possessed any PII, or that any disclosure was wrongful.

**California Invasion of Privacy Act ("CIPA") And Electronic Communications Privacy Act ("Wiretap Act")** – These claims fail because Plaintiffs nowhere allege Moxy tapped any wire or "intercepted" any communications. Mere *impersonation* of another, which is all Plaintiffs allege, is not actionable under either statute. Plaintiffs' Wiretap Act claim also fails because the Creators consented to any interception.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a court accepts factual allegations as true and views them in the light most favorable to plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation" and will accept

12

1  such a conclusion only where it is adequately "supported by factual allegations."

2  *Iqbal*, 556 U.S. at 664, 678.

3  **III.   PLAINTIFFS HAVE FAILED TO PLEAD A CIVIL RICO VIOLATION**

4  The civil RICO statute was "intended to combat organized crime, not to provide

5  a federal cause of action and treble damages to every tort plaintiff."  *Oscar v. Univ.*

6  *Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992).  Accordingly, a plaintiff

7  only pleads a civil RICO violation where it plausibly alleges the defendant

8  participated in "(1) the conduct of (2) an enterprise that affects interstate commerce

9  (3) through a pattern (4) of racketeering activity or collection of unlawful debt."

10  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

11  Plaintiffs' supposed RICO scheme comprises only bare allegations that

12  indirectly connected entities who never communicated with one another pursued

13  economic gain in a manner that involved vague fraudulent statements.  That has *never*

14  been sufficient to plead a RICO scheme and is not sufficient now.

15  **A.   Plaintiff Has Not Alleged Facts Showing A RICO Enterprise**

16  A RICO enterprise is "a group of persons associated together for a common

17  purpose of engaging in a course of conduct" that violates the RICO statute.  *U.S. v.*

18  *Turkette*, 452 U.S. 576, 583 (1981).  Accordingly, Plaintiffs must plead (1) "a

19  common purpose," (2) "a structure or organization," and (3) "longevity necessary to

20  accomplish the purpose."  *Eclectic Props.*, 751 F.3d at 997.

21  Plaintiffs allege a so-called "Content Fraud Enterprise" comprising OnlyFans,

22  Moxy and the other Agency Defendants, and their "Represented Creators."  FAC

23  ¶361.  Far from pleading facts supporting that such an enterprise ever existed,

24  Plaintiffs plead facts showing it did *not*.

25  **1.   Plaintiffs Plead The Alleged Enterprise Was Formed Before**
26  **Its Members *Even Existed***

27  The most emblematic of Plaintiffs' failures to plead a RICO enterprise is their

28  allegation it "has been ongoing since approximately 2016," because that date was ***four***

13

*years before any Agency Defendant even existed*. *Id.* ¶377. The earliest an Agency Defendant was incorporated was March 2020, and the remainder (including Moxy) were incorporated thereafter. *Id.* ¶¶46-52 (alleging Unruly Agency, Dysrpt Agency, Behave Agency, and Content X formed in 2020; Moxy, A.S.H. Agency, Verge Agency, and Boss Baddies formed in 2021; and Elite Creators formed in 2022). It is not possible for a RICO enterprise to have existed *before* its members existed. *See* 18 U.S.C. 1962(c) (requiring existence of a "person" for RICO liability); 18 U.S.C. 1961(3) ("'person' includes any individual or entity capable of holding a legal or beneficial interest in property").[2] Plaintiffs' enterprise allegations thus fail the most elementary hurdle.

### 2.    Plaintiffs Have Failed To Plead The Alleged Enterprise Members Even Knew Each Other Existed

Plaintiffs' allegations regarding the purported RICO enterprise *after* the Agency Defendants were incorporated fare no better, because they fail to plead facts showing OnlyFans knew the Agency Defendants—not just agencies in general—existed, or that the Agency Defendants knew each other existed.

As to OnlyFans's knowledge of the Agency Defendants, Plaintiffs generally allege OnlyFans knew content creators could use agencies. FAC ¶¶130, 146. But the sole factual allegation to support Plaintiffs' conclusory assertion that OnlyFans was "aware of Agency Defendants" *in particular* (*id.* ¶370) is that in July 2023 *one* of the Agency Defendants collaborated with OnlyFans (*id.* ¶6 (alleging event with Creators Inc.)). OnlyFans' knowledge that *one* Agency Defendant existed in 2023 says nothing about whether OnlyFans knew a *different* agency Moxy (or any other Agency Defendant) existed at any time before this action was filed. If OnlyFans did not know

---

[2] To the extent Plaintiffs argue the enterprise existed prior to 2020 between OnlyFans and the Creators the Agency Defendants now allegedly represent, they have failed to allege any supporting facts. Plaintiffs have not, for example, alleged Creators used chatters without Agency Defendants, nor have they alleged any fraud prior to 2020. *See* FAC ¶384 (alleging OnlyFans's predicate acts began in 2021).

Moxy existed, it plainly cannot have been in a RICO enterprise with it.  *Wimo Labs LLC v. eBay Inc.*, Case No. SACV 15-1330-JLS (KESx), 2016 WL 11507382, at *4 (C.D. Cal. Jan. 28, 2016) (RICO claim failed absent allegations enterprise members "were even aware of one another's existence as participants in a scheme to defraud.").

As to the Agency Defendants' knowledge of each other, the Complaint is totally silent.  Plaintiffs nowhere allege *any* facts showing any Agency Defendant knew any other Agency Defendant existed.  Again, persons cannot form a RICO enterprise with members they do not know exist.  *Id.*; *see also U.S. v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (defendant can only participate in RICO scheme where it is "aware of the essential nature and scope of the enterprise").

### 3.    Plaintiffs Have Not Pled Coordination

Plaintiffs' failure to plead facts supporting that any alleged member of the purported RICO enterprise knew any other member existed automatically precludes them from having alleged the necessary "evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).

Recognizing they must plead coordination, Plaintiffs conclusorily allege the existence of supposed "financial ties and coordination of activities between the OnlyFans Defendants and the Agency Defendants."  FAC ¶378; *see also id.* ¶422 (alleging in conclusory manner various supposed "communications").  Fatally, however, *nowhere* in the 546-paragraph FAC do Plaintiffs allege any facts supporting that any such coordination *ever happened*.  Indeed, Plaintiffs do not allege so much as a *single* communication between *any* of the alleged members of the enterprise, whether between OnlyFans and an Agency Defendant or between any Agency Defendants.  Without such allegations, Plaintiffs have not met their pleading burden. *Shaw v. Nissan N. Am. Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (RICO claim dismissed where plaintiff failed to allege facts supporting coordination); *Wimo Labs*, 2016 WL 11507382 at *3 (absence of allegations of coordination between

alleged enterprise members meant "Plaintiff fail[ed] to allege any facts suggesting that they combined as an enterprise in furtherance of a fraudulent or unlawful purpose"); *In re Jamster Mktg. Litig.*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (merely alleging defendants were a part of a fraud insufficient to plead purported enterprise members "work[ed] together to achieve" a common purpose).

As to the supposed "financial ties," Plaintiffs have alleged only that each Agency Defendant earns money through their relationships with Creators who in turn earn money through their relationships with OnlyFans. Such bare allegations are, again, insufficient to plead coordination. *Uce v. Oral Aesthetic Advoc. Grp., Inc.*, Case No. CV 23-3186-CBM-MRWx, 2024 WL 3050720, at *7 (C.D. Cal. Feb. 23, 2024) (mere fact that different defendants had some economic relationship to a single entity that allegedly engaged in fraudulent activity insufficient to allege a RICO enterprise).

Far from alleging *coordination* between OnlyFans and the Agency Defendants, Plaintiffs repeatedly allege OnlyFans had policies *against* the Agency Defendants' supposed use of chatters. Specifically, Plaintiffs allege that "None of what agencies (including Agency Defendants) are doing to perpetuate the Chatter Scams is actually 'allowed' by OnlyFans' 'Terms of Service'" (FAC ¶163) and OnlyFans "policies contain specific terms" that "prohibit Creators from allowing anyone else to even access their accounts," such as chatters (*id.* ¶130). These allegations that OnlyFans and the Agency Defendants were at odds contradict Plaintiffs' conclusory coordination allegations and doom their RICO claim. *Shaw*, 220 F. Supp. 3d at 1057 (plaintiff failed to plead coordination where RICO enterprise members took steps that conflicted with the alleged common purpose).

In the absence of factual allegations supporting coordination, Plaintiffs have alleged only that purported enterprise members acted "independently and without coordination," which the Supreme Court has conclusively held is "insufficient to

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

adequately plead a RICO enterprise." *Boyle v. U.S.*, 556 U.S. 938 at 947 n.4 (2009).

### 4.   Plaintiffs Have Failed To Plead A Common Purpose

Plaintiffs also have failed to allege facts sufficient to show the Defendants even *could* have shared the supposed "common purpose" of using "chatters to extract Premium Content Fees from Plaintiffs and Class Members," let alone facts to show they actually did so.  FAC ¶362.

While Plaintiffs allege OnlyFans is the central player in the purported RICO enterprise because it represented to Plaintiffs that they could "direct message" Creators and "build 'genuine' and 'authentic' connections," (*id.* ¶¶362-365), they concede that, at *best*, their allegations merely "support[] an inference that OnlyFans is aware of the Chatter Scams." *Id.* ¶129.  Plaintiffs' admitted inability to plead facts showing OnlyFans *actually knew* of the alleged "Chatter Scams" precludes them from having plead that OnlyFans, Moxy, and the other Agency Defendants shared the "common purpose" of making money through that alleged scam.[3]   *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (RICO claim failed where participants "generally were unaware of [alleged] deceptive practices"); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 ("At a minimum, Plaintiffs must set forth particularized allegations that [Defendants] had the common purpose of increasing their revenues by fraudulent means.").

The absence of a common purpose is further supported by Plaintiffs' characterization of OnlyFans as having only "overlooked or permitted" (FAC ¶100) or "willfully ignored" (*id.* ¶157) agencies and chatters, rather than having undertaken some affirmative action to facilitate them.  The mere allowance of others to act cannot support "common purpose" among RICO enterprise participants.  *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods. Liab. Litig.*, 295 F.

---

[3]   OnlyFans's policies against agencies only further support the absence of a common purpose.  *See* Section III.A.3, *supra*.

Supp. 3d 927, 983 (N.D. Cal. 2018) (merely "failing to stop illegal activity[ ] is not sufficient" to show a common purpose); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (plaintiffs' conclusory allegation defendants were "fraudulently collecting monies" insufficient to plead a common purpose).

### 5. The Alleged Members Of The Purported RICO Enterprise Were Merely Acting In Their Self-Interest

The consequence of Plaintiffs' pleading failures is they have necessarily plead only that each Defendant acted independently and in their own economic self-interests. "Courts have overwhelmingly rejected" attempts to "characterize routine commercial relationships" as a RICO enterprise; this Court should do the same here. *Gomez v. Guthy-Renker, LLC*, Case No. EDCV 14-01423 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

In particular, while Plaintiffs allege the RICO enterprise existed for "the common purpose of fraudulently increasing the amount and number of Premium Content Fees each Fan pays" (FAC ¶376), courts routinely reject RICO claims that merely describe routine business activity as "fraudulent." *See, e.g.*, *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (dismissing RICO claim because "[w]ithout the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose"). Indeed, Plaintiffs do little more than characterize Moxy's entire business as a fraud perpetrated through a RICO enterprise. "[A]lleg[ing] no more than that Defendants' primary business activity . . . was conducted fraudulently" is, too, insufficient to state a RICO claim. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (dismissing RICO claim alleging defendants' business was operated fraudulently); *see also Sihler v. Fulfillment Lab, Inc.*, Case No. 3:20-cv-01528-H-MSB, 2020 WL 7226436, at *12-13 (S.D. Cal. Dec. 8, 2020) (merely identifying business transactions, even those that show fraud occurred, is not sufficient to plead a RICO claim).

18

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

### B.   Moxy Did Not Engage In Any Conduct In Furtherance Of The Alleged RICO Scheme

RICO liability requires that "the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). In evaluating whether a defendant had some part in directing the affairs of the enterprise, the Ninth Circuit considers whether it (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the enterprise were conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). Plaintiffs have not pled any of these factors as to Moxy.

### 1.   Moxy Did Not Give Or Take Directions From Anyone

The absence of any allegation Moxy ever communicated with OnlyFans or the other Agency Defendants, *see supra* Section III.A.3, means Plaintiffs have not pled Moxy did anything to direct or participate in the conduct of the enterprise's affairs. *Walter*, 538 F.3d at 1249 (although plaintiff had shown defendant was "involved" in enterprise, RICO claim nonetheless failed due to absence of allegations showing defendant had "some part in directing its affairs").

### 2.   Plaintiffs Have Not Alleged Moxy Committed A Predicate Act

Plaintiffs' RICO claim is based on alleged wire fraud under 18 U.S.C. § 1343. FAC ¶382. Plaintiffs fail, however, to plead Moxy engaged in any such fraud at all, let alone with the degree of particularity required under F.R.C.P. 9(b). *Blue Oak Med. Grp. v. State Comp. Ins. Fund*, 809 F. App'x 344, 345 (9th Cir. 2020).

The *only* alleged fraudulent acts by Moxy in particular are supposed "communications through the internet to Plaintiffs and Class Members" by chatters, "falsely representing they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees." FAC ¶404. Specifically, Plaintiffs allege they paid money to subscribe to the accounts of four Moxy-affiliated Creators: i) Plaintiff B.L.

19

subscribed to Briana Armbruster on November 28, 2023; ii) Plaintiff S.M. subscribed to Kaitlyn Krems and Breckie Hill in 2023; and iii) Plaintiff R.M. subscribed to Chyanne Burden on July 16, 2020. *Id.* These allegations do not satisfy Plaintiffs' burden to plead fraud with specificity.

Plaintiffs allege Moxy represented these four creators "on information and belief" but *without* any supporting facts, which is insufficient as a matter of law. *Moore v. Kayport Package Express., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[A]llegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)."); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) ("[A]llegations 'based on information and belief may suffice,' 'so long as the allegations are accompanied by a statement of facts upon which the belief is founded.'"). Indeed, Plaintiffs allegations are demonstrably *false* in at least one respect—Moxy cannot have represented Chyanne Burden in 2020 (FAC ¶419) because it was not formed until 2021 (*id.* ¶49). Even the allegation Moxy operated the accounts of its affiliated Creators is insufficiently made "[o]n information and belief." *Id.* ¶103. Absent alleged facts supporting these claims, Plaintiffs' fraud allegations unquestionably fail.

Further, Plaintiffs do not allege any facts supporting that Moxy, or chatters it engaged, ever "falsely represent[ed] they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees." *Id.* ¶404. The *closest* Plaintiffs come is alleging that *one* Plaintiff, S.M., "confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and *they all said* it was them replying to messages and/or denied using chatters."[4] *Id.* ¶299. But that allegation lacks the minimum required "who, what, when, where, and how" of an alleged

---

[4] There is *no allegation anywhere* that any Creator allegedly affiliated with Moxy other than Kaitlyn Krems and Breckie Hill ever represented to any Plaintiff that they were the individuals talking to a Plaintiff and not a chatter, or that they denied using chatters. Accordingly, no other Plaintiff can have alleged any fraud by Moxy.

misrepresentation to support a fraud claim. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). And, fatally, there is no allegation that any such response by Kaitlyn Krems and Breckie Hill (the two Moxy-affiliated Creators) *was false*, *i.e.*, that the response was in fact from a chatter (or that they ever even used chatters). In fact, Plaintiffs have plead themselves out of being able to argue that the communications were from chatters by alleging only that "agencies contract with chatters to conduct *most*" of the communications "between the Creators and the Fans," and *not all*. FAC ¶104.

While Plaintiffs allege a range of other supposed "fraudulent" acts, their failure to allege any specifics regarding those acts precludes them from being able to rely on such acts in support of their RICO claim. FAC ¶422 (listing alleged acts undertaken by "Defendants" generally); *Coronavirus Rep.*, 85 F.4th at 958.

### 3. OnlyFans' Alleged Fraudulent Acts Cannot Be Imputed To Moxy

Finally, even assuming Plaintiffs *have* sufficiently plead *OnlyFans* misrepresented that all communications were authentically with creators and not chatters (FAC ¶384), Plaintiffs have failed to show such conduct should be imputed to Moxy.

The mere performance of legitimate business activities that *another* might use in a fraudulent manner is not conduct in furtherance of a RICO enterprise. *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N. D. Cal. 2019) (that the *seller* of canned tuna misrepresented it was "dolphin safe" did not mean the fisherman, importers, storers, canners and processors had engaged in fraudulent RICO conduct); *Uce*, 2024 WL 3050720, at *5 (alleged RICO scheme members did not commit RICO conduct where they "simply perform[ed] services for the enterprise"). Merely alleging Moxy's engagement of chatters made OnlyFans' alleged misrepresentation of authenticity untrue does not show actionable RICO conduct by Moxy.

**C.      Plaintiffs Have Failed To Allege The Purported RICO Activity Caused Them Any Damages**

Finally, to plead a RICO claim a plaintiff must allege the RICO scheme caused it "concrete financial loss." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992). Plaintiffs allege they were harmed because they spent money on "Premium Content Fees," including paying more than they would have had they known about chatters, and their "lost expectation" of speaking directly with Creators. FAC ¶¶433-437. But mere "lost expectation" of talking to Creators rather than a chatter is not compensable. *Chaset v. Fleer/Skybox Int'l., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002). And Plaintiffs have failed to allege facts showing they suffered any financial harm.

Plaintiffs define "Premium Content Fees" as "Subscription Fees, PPV Charges, and Creator Tips"—*i.e.*, *all* the fees Plaintiffs spent on any content *for any reason*, such as to access explicit pictures, not solely for talking to Creators. *Id.* ¶77. As to "Subscription Fees," Plaintiffs allege they were paid to unlock access to a Creator's entire account and view certain highly desirable content. *See, e.g.*, *id.* ¶404, 418 (alleging S.M. became a VIP subscriber to Breckie Hill but the content he received was not as explicit as he had hoped). Critically, Subscription Fees certainly *were not* paid for the sole purpose of talking to Creators because some Plaintiffs *are still subscribed to Creators* despite alleging chatters operate their accounts. *See, e.g.*, *id.* ¶404, 419. (alleging R.M. is still subscribed to Chyanne Burden).

As to "PPV" or "Pay-Per-View" charges, these comprise the lion's share of the Premium Content Fees but are paid to view explicit pictures, *not to speak to Creators*. *Id.* ¶111. PPV charges are irrelevant because Plaintiffs (1) do not allege any supposed RICO activity regarding PPV content, and (2) do not allege the PPV content was fraudulent in any way (it was not). *Id.* ¶¶363-365.

As to Creator Tips, Plaintiffs affirmatively allege they were paid for a multitude of reasons *other than* because Plaintiffs believed they were talking to a Creator. *Id.*

¶72 (alleging tips were paid for "custom content, special requests, advice, recipes, lessons, or almost anything else").

Because the alleged Premium Content Fees purportedly were paid for reasons *other than* to talk directly with Creators, Plaintiffs have failed to plead their alleged financial harm either happened or was caused by the alleged RICO activity. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 980-81 (9th Cir. 2008) (RICO claim dismissed where Plaintiff failed to plead the alleged RICO activity, rather than other acts, caused it any financial loss).

## IV.  PLAINTIFFS FAIL TO PLEAD A RICO CONSPIRACY

When a plaintiff fails to plead a RICO claim, they necessarily also fail to plead a RICO conspiracy claim under 18 U.S.C. § 1962(c). *Khalid v. Microsoft Corp.*, No. 20-35921, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023) ("Because [plaintiff] failed to state a RICO claim . . . he also failed to state a RICO conspiracy claim"). Accordingly, this claim also fails.

## V.  MOXY COULD NOT AND DID NOT VIOLATE THE VPPA

### A.  Moxy Is Not Subject To The VPPA

Only a "video tape service provider" can be liable under the VPPA.  18 U.S.C. § 2710(b) (prohibiting acts by "[a] video tape service provider").  Plaintiffs fail to allege facts, rather than merely a conclusion (FAC ¶452), supporting that Moxy meets the "video tape service provider" definition of "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

As an initial matter, Plaintiffs allege Moxy's business is to manage the accounts of its affiliated Creators and its primary activity is to facilitate chatters.  *Id.* ¶¶180-188.  Plaintiffs nowhere allege that delivering video content is even a small part of Moxy's business, let alone a "central" part as the VPPA requires.  *Hernandez v. Chewy, Inc.*, Case No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236, at *3 (C.D.

23

Cal. Dec. 13, 2023) ("[C]ourts in the Ninth Circuit have recognized consistently that delivering video content must be central to the defendant's business or product for the VPPA to apply.").

Further, the Complaint nowhere alleges that Moxy *in particular* ever provided any audiovisual materials to any Plaintiff. Plaintiffs' generalized allegations that certain Plaintiffs "viewed videos sent to [them] via direct message through Creators' accounts—some of which [they] had specifically requested" is insufficient to show that Moxy itself, rather than the Creator, some third party, or some other Agency Defendant, ever provided such materials. FAC ¶¶268, 283, 296, 314; *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim because the "handful of generalized allegations saying [defendant] shares video titles" with third parties were unsupported by "specific allegations").

Finally, the only material any allegedly Moxy-affiliated Creator sent to any Plaintiff was a *single photograph* Kaitlyn Krems sent to Plaintiff S.M. FAC ¶404, 417. Because a photograph plainly does not constitute a videotape "or similar audio visual materials," that allegation does not support that Moxy is a videotape service provider who is even capable of breaching the VPPA.

## B. Moxy Did Not Collect Any PII

The VPPA prohibits the "knowing[] disclos[ure], to any person, personally identifiable information [("PII")] concerning any consumer" of the video tape service provider. 18 U.S.C. § 2710(b)(1). PII is limited to "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior," and must include "some information that can be used to identify an individual." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017). PII *does not* include "information" that "*cannot* identify an individual unless it is combined with other data" through a method "an ordinary person could not use." *Id.* at 986. As a consequence, "anonymous usernames" alone are not PII because they do not "identify an actual, identifiable person and link that person to a specific video choice."

*In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *12 (D.N.J. July 2, 2014); *see also In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) (disclosing "a unique identifier— without more—[does not] violate[]" VPPA).

Plaintiffs' failure to plead they ever asked for any videos from any Moxy-affiliated Creator precludes Plaintiffs from having alleged Moxy ever possessed any PII that it even *could* have wrongfully disclosed under the VPPA.  But even if they had plead that, Plaintiffs admit the only information disclosed to chatters was the Fans' "communication history," which displays only "the Fan's username" and not their real name.[5] FAC ¶¶449-451.  Indeed, Plaintiffs concede that while a "username" can be used to "view the Fan's profile on OnlyFans," usernames are "pseudonyms as a matter of course…to remain anonymous."  *Id.* ¶¶27, 450; *see Nickelodeon*, 2014 WL 3012873, at *12 (ordinary people cannot use "anonymous information about home computers, IP addresses, anonymous usernames, even a user's gender and age…to identify an actual, identifiable person").

Accordingly, Plaintiffs have failed to allege that Moxy ever even possessed any PII that it even *could* have disclosed in violation of the VPPA.

### C.    Any Disclosure By Moxy Was Permitted Under The VPPA

Even if Moxy was subject to the VPPA and both possessed and disclosed PII, its disclosure would be lawful because it would have occurred in the "ordinary course of business."  18 U.S.C. 2710(b)(E).

Under the VPPA, the "ordinary course of business" includes "order fulfillment [and] request processing."  18 U.S.C. 2710(a)(2).  Here, Plaintiffs fatally concede that chatters "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content" and disclose information to Moxy and/or the Creator for

---

[5]    OnlyFans is the only Defendant that allegedly collected information such as email addresses and telephone numbers.  FAC ¶449.

the purpose of fulfilling the request.[6]   FAC ¶112(b)-(d).   That is perfectly lawful. *Sterk v. Redbox Automated Retail LLC*, 770 F.3d 618 (7th Cir. 2014) (VPPA not violated where disclosure was part of defendant's "ordinary course of business" of fulfilling orders and processing requests).

## VI.   PLAINTIFFS' FAIL TO PLEAD A CLAIM UNDER CALIFORNIA PENAL CODE § 502

Plaintiffs' claim Moxy violated Section 502 by "knowingly accessing, without permission, Plaintiffs' and Class Members' private messages stored on or transmitted via the OnlyFans Platform's computer systems" fails as a matter of law.   FAC ¶467.

Section 502 "require[s] that a defendant's access of the computer system at issue be 'without permission.'"   *Custom Packaging Supply, Inc. v. Phillips*, Case No. 2:15-CV-04584-ODW-AGR, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing §§ 502(c)(1), (2), (3), (4), (6), & (7)).   "'Without permission'" is narrowly defined as accessing or using "'a computer, computer network, or website in a manner that overcomes technical or code-based barriers.'"   *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010).   Far from alleging Moxy overcame any such barrier, Plaintiffs allege Moxy had "full permission and authority" to access their affiliated-Creators' accounts and to view "Plaintiffs' and Class Members' private messages."   FAC ¶104; *see also id.* ¶4 ("Chatters are often hired by self-styled 'management agencies' operating OnlyFans accounts on behalf of multiple Creators, *at the request of and with the consent of the Creators.*"); *id.* ¶190 (Moxy's agreement with its affiliated Creators "grants Moxy full access to and control over each Represented Creator's OnlyFans account."). Accordingly, Plaintiffs have not only failed to plead Moxy violated Section 502, but have plead facts showing it *cannot have done so*.   *See Gutierrez v. Converse, Inc.*,

---

[6]   Plaintiffs' conclusory allegations that Moxy's supposed disclosures were not "in the ordinary course of business but were done for the purpose of illegal and fraudulent conduct" is insufficient under basic pleading standards.   FAC ¶463.

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

2023 WL 8939221 at *4 (C.D. Cal. Oct. 27, 2023) (website operator cannot act without permission when there are "no technical barriers blocking [it] from using its own Website").

This claim also fails because Moxy's authorization means Plaintiffs cannot, and do not, plead any facts showing Moxy committed any violations "knowingly." Cal. Pen. Code §502(c)(2)-(3), (6)-(7); *Nowak v. Xapo, Inc.*, Case No. 5:20-cv-03643-BLF, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (because Section 502 claims "sound[] in fraud," they are therefore "subject to Rule 9(b) pleading standard").

Finally, Plaintiffs plead their damages include "invasion of privacy, emotional distress, and economic losses." FAC ¶474. But invasion of privacy and emotional distress "do not qualify" as damages under §502. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023) (collecting cases). And Plaintiffs' bare allegation that they suffered "economic losses" is insufficient to meet their pleading threshold. *See Gutierrez*, 2023 WL 8939221, at *5.

## VII. PLAINTIFFS FAIL TO ALLEGE A VIOLATION OF CIPA OR THE WIRETAP ACT

Courts routinely and consistently hold that—with one exception noted below—claims for violation of CIPA and the Wiretap Act are subject to the same analysis. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). These claims thus fail for the same reasons.

Section 631(a) contains "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities," but also includes a fourth potential basis of liability (4) for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done

27

any of the" other three bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Although Plaintiffs fail to specify which of these clauses Moxy allegedly violated, they fail to state a claim under any.

### A. Plaintiffs Do Not Plead An "Intentional Wiretapping" Violation

The first clause of Section 631(a) imposes liability on "[a]ny person who . . . intentionally taps, or makes any unauthorized connection . . .with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Pen. Code § 631(a). But Plaintiffs nowhere allege that Moxy, or any other Defendant, tapped their communications using telegraph or telephone wires. And "the first clause of Section 631(a) . . . does not apply to internet communications." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123 (C.D. Cal. 2024). Plaintiffs thus fail to plead a claim under Section 631(a)'s wiretapping clause.

### B. Plaintiffs Do Not Plead An "Interception" Violation

CIPA expressly requires the wrongful act under Section 631(a)'s second clause be the learning of a communication "*while the same is in transit*." Cal. Pen. Code § 631(a). Similarly, the Wiretap Act requires a message be "intercept[ed]." 18 U.S.C. § 2511(1). In both such cases, therefore, Plaintiffs must plead facts showing interception. *Heiting*, 728 F. Supp. 3d at 1124 (CIPA claim requires allegations of "facts demonstrating the statute's 'in transit requirement' has been met."); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (same for Wiretap Act); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of CIPA claim where defendant "could have only read or attempted to read [message] after it was received…so the text could not have been accessed 'in transit' within the meaning of § 631(a)"). Plaintiffs have not done so.

Plaintiffs affirmatively plead Creators engaged Moxy to "operate[] all aspects of the Creator's account" and "contract with chatters to conduct most, if not all, of the communications between the Creators and the Fans" by giving them "direct access to

1   the Creator's OnlyFans account."  FAC ¶¶103-104, ¶112(b)-(c); *see also id.* ¶112c.

2   ("Chatters communicate with Fans directly or indirectly *through the OnlyFans*

3   *account*.").  These allegations make plain that Moxy or Chatters received Plaintiffs'

4   messages only *after* they had reached the Creators' inboxes, which is fatal because

5   reading a message *after* it has reached the intended recipient's inbox *is not an*

6   *interception*.  *Marsh v. Zaazoom Sols., LLC*, No. C-11-05226-YGR, 2012 WL

7   952226, at *17 (N.D. Cal. Mar. 20, 2012) (no interception where "Defendants did not

8   stop, seize, or interrupt a communication in progress before arrival to its intended

9   destination"); *Konop*, 302 F.3d at 878 (no "interception" where message read after it

10  had arrived at intended destination).

11      Recognizing this critical concession, Plaintiffs broadly allege on "information

12  and belief" that "CRM" software used by Chatters "intercept[s] messages and content

13  contemporaneously with their transmission."  FAC ¶123; *see also id.* ¶490 (generally

14  alleging "Agency Defendants have engaged in unauthorized interception").  But that

15  conclusory allegation is unsupported by *any* alleged facts explaining *how* CRM

16  software used by chatters could access OnlyFans' systems to "intercept" messages

17  before they arrive in Creators' inboxes. *Id.* (vaguely alleging it happens with "various

18  web-based technologies").  It also is contradicted by the repeat allegations that such

19  tools merely "access the Creator's OnlyFans account," *id.* ¶122, and that Chatters

20  interact with Fans "through the Creator's account," *id.* ¶124.  Simply put, chatters

21  *cannot be intercepting* Fans' messages if they are accessing the *Creator's* account,

22  and Plaintiffs' conclusory interception allegations should not be credited.  *Licea v.*

23  *Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (dismissing CIPA

24  claim based only on "conclusory allegations that messages were intercepted 'during

25  transmission and in real time.'").

26      Plaintiffs' claims further necessarily fail because *impersonating* an individual

27  does not violate the Wiretap Act or CIPA.  In *Clemons v. Waller*, 82 F. App'x 436

28  (6th Cir. 2003) the defendant allegedly violated the Wiretap Act when it had

impersonated plaintiff in a telephone call and thereby obtained plaintiff's phone records. *Id.* at 440. While the court did "not dispute that utilizing false pretenses to secure information" may be unlawful, "impersonating an intended recipient of a communication does not violate the federal wiretap act." *Id.* at 441 (citing *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) ("impersonation of the intended receiver is not an interception within the meaning of the [Wiretap] statute")). The Third Circuit has joined the Sixth and Seventh Circuits. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) ("one who impersonates the intended receiver of a communication may still be a party to that communication for the purposes of the federal wiretap statute and [] such conduct is not proscribed by the statute."). Simply put, the Wiretap Act and (impliedly) CIPA do not proscribe the impersonation conduct about which Plaintiffs complain.

## C.    Moxy Did Not Use Unlawfully Obtained Information Or Aid And Abet Or Conspire To Violate Section 631(a)

Plaintiffs' failure to state a claim under Section 631(a)'s wiretapping and interception clauses against Moxy forecloses them from being able to plead a claim under Section 631(a)'s third clause. *Heiting*, 728 F. Supp. 3d at 1123 ("[a] violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)."). It further precludes them from being able to plead a claim under the final clause of that section. *Swarts*, 689 F. Supp. 3d at 746 (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to "adequately allege interception within the meaning of the statute").

## D.    Creators' Consent Is Fatal To Wiretap Act Claim

Plaintiffs' Wiretap Act claim fails for the independent reason that it is a one-party-consent statute. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . to intercept a wire, oral, or electronic communication . . . *where one of the parties to the communication has given prior consent to such interception*."). Plaintiffs concede that Moxy, "[w]orking in partnership with their Creators—*often with full permission*

*and authority from those Creators*—. . . contract with chatters to conduct most, if not all, of the communications between the Creators and the Fans." FAC ¶104; *see id.* ¶4 (alleging Moxy operates "OnlyFans accounts…at the request of and with the consent of the Creators"). Any interception was thus lawful under the Wiretap Act.

## VIII. NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE BASIS OF FORUM NON CONVENIENS

In its April 9, 2025 Order, the Court found Plaintiffs were bound by the forum-selection clause in OnlyFans' Terms of Use ("Terms") that stated "any claim… arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) must be brought in the courts of England and Wales." ECF 117 at 3-4, 6. The forum-selection clause's "broad scope…covers Plaintiffs' claims" and "Plaintiffs' alleged injuries from this scheme all stem from Plaintiffs' use of the OnlyFans website, which is governed by the Terms…and Privacy Policy." *Id.* at 7; *see also id.* ("Plaintiffs' claims are logically or causally connected to the Terms…, and thus the claims are covered by the forum[-]selection clause."). Accordingly, the Court dismissed Plaintiffs B.L., S.M., and A.L.'s (the "Non-California Plaintiffs") claims against OnlyFans without leave to amend but without prejudice to refiling in England or Wales. *Id.* at 16.

The Non-California Plaintiffs' claims against Moxy should be dismissed for the same reasons. As an agent of its affiliated Creators, FAC ¶¶112b., 130, 452, Moxy undoubtedly is a "user" subject to the Terms. *See* ECF 60-1, Ex. A at 2 (Terms define "User" as "any user of OnlyFans, whether a Creator or a Fan or both."); ECF 117 at 4 (forum-selection clause "applicable to OnlyFans *users*"). And even if not a "user," the Terms apply equitably because a nonsignatory is entitled to invoke a forum-selection clause when "a signatory" sues the "nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from…claims against signatory defendants." *Franklin v. Cmty. Regional Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021). The Non-California Plaintiffs' claims alleged against Moxy are

31

inseparably intertwined with those they alleged against OnlyFans, arising from the same course of conduct, from allegations that the Terms contained misrepresentations of the authenticity of the connection they could make with Creators, and carried out in an alleged conspiracy.  Plaintiffs cannot as a matter of law rely on the Terms to sue the Agency Defendants while disclaiming the Terms' forum-selection clause.  *See Franklin*, 998 F.3d at 876 (holding that equitable estoppel applied when question of "whether [plaintiff] can maintain liability against the" non-signatory defendant could not "be answered without reference" to the contract containing an arbitration clause).

Accordingly, if any of their claims survive at all, the claims of the Non-California Plaintiffs should be dismissed against Moxy on the basis of forum non conveniens.

## IX.    CONCLUSION

Plaintiffs' Complaint against Moxy should be dismissed.


DATED:  May 23, 2025            Oliver Rocos
                               Barr Benyamin
                               Bird, Marella, Rhow,
                               Lincenberg, Drooks & Nessim, LLP


                               By: _____
                                        Oliver Rocos
                               Attorneys for Defendant Moxy
                               Management

1

## **CERTIFICATE OF COMPLIANCE**

2     The undersigned, counsel of record for Defendant Moxy Management, certifies

3 that this brief contains 6,994 words, which complies with the word limit of C.D. Cal.

4 L.R. 11-6.1.

5

6 DATED:  May 23, 2025          Oliver Rocos

7                               Barr Benyamin
                               Bird, Marella, Rhow,
8                               Lincenberg, Drooks & Nessim, LLP

9

10

11                             By: _____

12                                        Oliver Rocos
                                   Attorneys for Defendant Moxy
13                                 Management

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES