1  | Nithin Kumar (SBN 300607)
   |   nithin@kingfisherlawapc.com
2  | KINGFISHER LAW APC
   | P.O. Box 492415
3  | Los Angeles, California 90024
   | T: (408) 930-3580
4  |
5  | Attorneys for Defendant Content X, Inc.
6  |
7  |
8  |
9  |                **UNITED STATES DISTRICT COURT**
10 |                **CENTRAL DISTRICT OF CALIFORNIA**
11 |                     **SOUTHERN DIVISION**
12 |

13 | N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

CASE NO. 8:24-cv-01655-FWS-SSC

**DEFENDANT CONTENT X, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6); AND REQUEST FOR JUDICIAL NOTICE**

*[concurrently filed with [Proposed] Order]*

Plaintiff,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

Judge:  Hon. Fred W. Slaughter
Dept.:  10D
Date:   June 26, 2025
Time:   10:00 a.m.

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Fred W. Slaughter, United States District Court Judge, in Courtroom 10D of the United States District Court for the Central District of California, Southern Division, 411 West 4th Street, Santa Ana, California, 92701, Defendant Content X, Inc. ("Content X") will and hereby does move this Court for entry of an Order dismissing the claims asserted against Content X in the First Amended Complaint filed by Plaintiffs N.Z., R.M. B.L., S.M., and A.L. (collectively, "Plaintiffs").

This Motion to Dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and is made on the ground that each of the causes of action asserted against Content X fails to state a claim upon which relief may be granted.

The First and Second Causes of Actions for violations of the RICO Act fail to state claim because Plaintiffs do not allege the existence of a RICO enterprise acting in furtherance of a common purpose or that Content X directed or participated in any racketeering activity.

The Third Cause of Action for violation of the Video Privacy Protection Act (VPPA) fails to state a claim because the VPPA does not apply to either Plaintiffs or Content X, as well as because Plaintiffs do not allege the existence or disclosure of any personally identifiable information covered by the statute.

The Fourth Cause of Action for violation of California's Comprehensive Data Access and Fraud Act (CDAFA) fails to state a claim because Plaintiffs allege that Content X had permission to access the Creators' accounts.

The Fifth and Sixth Causes of Action for violation of the California Invasion of Privacy Act (CIPA) and Federal Wiretap Act fail for several reasons, including because Plaintiffs do not adequately allege that Content X intercepted any

1    communications in transit, because the Creators consented to the access to their

2    communications, and because impersonation is not prohibited by the statutes.

3        This Motion to Dismiss is made following the conference of counsel pursuant

4    to Local Rule 7-3 which took place on May 16, 2025.

5        This Motion to Dismiss is based upon this Notice of Motion, the following

6    Request for Judicial Notice and corresponding Exhibit A attached hereto, the

7    attached Memorandum of Points and Authorities, all papers and records on file

8    herein, and such other matters as may be presented to the Court at or before the

9    hearing on this Motion.

10                **<u>REQUEST FOR JUDICIAL NOTICE</u>**

11        In deciding a Rule 12 motion, the Court may take judicial notice of

12    undisputed matters of public record, including documents filed with the California

13    Secretary of State. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1186 n.3 (9th Cir.

14    2024) (taking judicial notice of ; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

15    988 (9th Cir. 2018); Fed. R. Evid. 201(d) ("The court may take judicial notice at any

16    stage of the proceeding.").

17        Content X hereby respectfully requests that the Court take judicial notice of

18    the document attached hereto as Exhibit A, a true and correct copy of the Certificate

19    of Dissolution for Content X, Inc. filed with the California Secretary of State, and

20    specifically, the names of the three individuals identified as Content X's

21    shareholders at the time of its dissolution.

22

23    DATED:  May 23, 2025            KINGFISHER LAW APC

24

25                        By:    _____
                                    */s/ Nithin Kumar*
26                                Nithin Kumar
27                        Attorneys for Defendant Content X, Inc.

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ………………………………….……..    1

II.   ALLEGATIONS RELEVANT TO CONTENT X……………….    2

III.  LEGAL STANDARD..………………………………………….    3

IV.   DISCUSSION…………………………………………………..    4

A.   The RICO Claims Against Content X Should Be Dismissed ……….    4

    1.   The Complaint Does Not Adequately Plead a RICO Enterprise..    4

    2.   The Complaint Fails to Establish that Defendants Acted in
         Furtherance of Any Common Purpose…………………………..    8

    3.   The Complaint Does Not Allege that Content X Directed or
         Participated in Any Alleged Racketeering Activity …………….    9

    4.   The Complaint Does Not Plead a Section 1962(d) Violation …..    12

B.   The VPPA Claim Fails as a Matter of Law …………………..…...    13

    1.   Content X Is Not a Video Tape Service Provider ………………    13

    2.   Plaintiffs Are Not Consumers of Content X's Services ………..    14

    3.   The Complaint Does Not Allege Any Information Meeting the
         VPPA's Definition of Personally Identifiable Information ……    15

    4.   The Complaint Does Not Allege Any Disclosure of VPPA PII ..    16

C.   Plaintiffs' Fail to State a Claim Under California's Anti-Hacking
     Statute ……………………..……..……..……..……………………    17

D.   The Federal Wiretap Act and CIPA Claims Are Fatally Flawed ……    17

IV.   CONCLUSION ……………………………………………………    20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 3, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 3, 12

*Boyle v. United States*,
    556 U.S. 938 (2009) ............................................................................... 5, 6, 7

*Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*,
    669 F. Supp. 2d 1152 (C.D. Cal. 2009)....................................................... 10

*Cantu v. Tapestry, Inc.*,
    2023 WL 6451109 (S.D. Cal. Oct. 3, 2023)................................................. 13

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ...................................................................... 10

*Carroll v. Gen. Mills, Inc.*,
    2023 WL 4361093 (C.D. Cal. June 26, 2023)............................................. 13

*Clemons v. Waller*,
    82 F. App'x 436 (6th Cir. 2003)................................................................. 20

*Custom Packaging Supply, Inc. v. Phillips*,
    2015 WL 8334793 (C.D. Cal. Dec. 7, 2015)............................................... 17

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018) ......................................................................... 5, 7

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015).................................................................. 5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ......................................................................... 4

*Edwards v. Learfield Commc'ns, LLC*,
    697 F.Supp.3d 1297 (N.D. Fla. 2023) ......................................................... 15

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ................................................................. 10

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ....................................................... 14, 15, 16

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) .............................................................. 14

*Elsevier Inc. v. W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010) .................................................... 6, 8

*Evercrete Corp. v. H-Cap Ltd.*,
    429 F. Supp. 2d 612 (S.D.N.Y. 2006) .................................................... 10

*Facebook, Inc. v. Power Ventures, Inc.*,
    2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................................ 17

*Gardner v. StarKist*,
    417 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................... 8, 9

*Gomez v. Guthy-Renker, LLC*,
    2015 WL 4270042 (C.D. Cal. July 13, 2015) .......................................... 9

*Gutierrez v. Converse, Inc.*,
    2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ........................................ 17

*Harmoni Int'l Spice, Inc. v. Bai*,
    2016 WL 6542731 (C.D. Cal. May 24, 2016) ......................................... 12

*Heiting v. athenahealth, Inc.*,
    2024 WL 3761294 (C.D. Cal. July 29, 2024) ......................................... 19

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp.. 3d 1007 (C.D. Cal. 2023) ................................................. 17

*Heiting v. Taro Pharms. USA, Inc.*,
    728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........................................... 17, 19

*Hernandez v. Chewy, Inc.*,
    2023 WL 9319236 (C.D. Cal. Dec. 13, 2023) ........................................ 13

*Howard v. Am. Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ................................................................. 12

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
2012 WL 10731957 (C.D. Cal. June 29, 2012)......................................................7

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)................................................................18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ............................................................................20

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................................19

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)..............................................15, 16

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) .........................................................................5, 7

*In re Jamster Mktg. Litig.*,
2009 WL 1456632 (S.D. Cal. May 22, 2009) ......................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
295 F. Supp. 2d 148 (D. Mass. 2003)...............................................................6, 8

*In re Nickelodeon Consumer Priv. Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) ..........................................................16

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................13

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023)...............................................................14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..........................................................................18

*Libertad v. Welch*,
53 F.3d 428 (1st Cir. 1995) .............................................................................8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2024)........................................................17, 19

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)................................................................13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   2011 WL 4852314 (C.D. Cal. Oct. 13, 2011) ...................................................... 7, 8

*Odom v. Microsoft Corp.*,
   486 F.3d 541, 551 (9th Cir. 2007) .................................................................... 4

*Oscar v. Univ. Students Co-Op Ass'n*,
   965 F.2d 783 (9th Cir. 1992) ............................................................................ 4

*Rao v. BP Prods. N. Am., Inc.*,
   589 F.3d 389 (7th Cir. 2009) ............................................................................ 7

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ....................................................................................... 10

*Saunders v. Hearst Television, Inc.*,
   711 F. Supp. 3d 24 (D. Mass. 2024) .............................................................. 15

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ........................................................... 7

*Sterk v. Redbox Automated Retail, LLC*,
   2013 WL 4451223 (N.D. Ill. Aug. 16, 2013) ................................................ 16

*Swarts v. Home Depot, Inc.*,
   689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................... 18

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ....................................................................... 18

*United States v. Pasha*,
   332 F.2d 193, 198 (7th Cir. 1964) ................................................................. 20

*United States v. Turkette*,
   452 U.S. 576 (1981) ..................................................................................... 5, 8

*Vulcan Gold, LLC v. Google Inc.*,
   2008 WL 2959951 (N.D. Ill. July 31, 2008) ................................................... 6

*Wagh v. Metris Direct, Inc.*,
   348 F.3d 1102 (9th Cir. 2003) ......................................................................... 4

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ....................................................................... 10

*Wimo Labs LLC v. eBay Inc.*,
　　2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) ........................................................ 6

*Yershov v. Gannett Satellite Info. Network, Inc.*,
　　820 F.3d 482 (1st Cir. 2016) ................................................................. 14

**Statutes and Rules**

18 U.S.C. § 2510(4) ........................................................................................ 18

18 U.S.C. § 2710(a)(1) .................................................................................... 14

18 U.S.C. § 2710(a)(3) .................................................................................... 15

18 U.S.C. § 2710(a)(4) .................................................................................... 13

18 U.S.C. § 2710(b)(2)(E) ............................................................................... 16

18 U.S.C. § 1961(1) ........................................................................................ 10

18 U.S.C. § 1961(4) .......................................................................................... 4

18 U.S.C. § 1962(c) .................................................................................... 9, 12

18 U.S.C. § 1962(d) ........................................................................................ 12

Cal. Pen. Code § 631(a) .................................................................................. 18

Cal. Pen. Code § 502 ...................................................................................... 17

Fed. R. Civ. Proc. 9(b) .............................................................................. 11, 17

Fed. R. Civ. Proc. 12(b)(6) ............................................................................... 3

**Other Authorities**

Gregory P. Joseph, *Civil RICO: A Definitive Guide* (3d ed. 2010) .............................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should dismiss each of the six causes of action asserted in the First Amended Complaint ("FAC") against defendant Content X, Inc. ("Content X"). Plaintiffs' allegations regarding the use of alleged "Chatter services" do not establish a single viable claim against Content X—one of several alleged "Agency Defendants" that represented various "Creators" on the OnlyFans platform.

***First***, the first and second causes of action under the RICO Act should be dismissed for a myriad of reasons, including that Plaintiffs fail to allege any connection whatsoever between the Agency Defendants, much less a coordinated RICO enterprise acting in furtherance of a common purpose. Moreover, Plaintiffs do not allege that Content X directed or participated in any fraudulent conduct or any other racketeering activity.

***Second***, Plaintiffs fall woefully short of establishing an actionable claim under the Video Privacy Protection Act (VPPA), a statute that Congress enacted to protect a very narrow category of specific information. The FAC fails to establish that the VPPA applies to either Content X or Plaintiffs, or that Content X disclosed any personally identifiable information covered by the statute.

***Third***, the FAC's new claim under California's anti-hacking statute should be dismissed, as it is contradicted by Plaintiffs' own allegations that Content X and the other Agency Defendants had permission to access the Creators' accounts.

***Lastly***, the fifth and sixth causes of action under the California Invasion of Privacy Act (CIPA) and the Federal Wiretap Act should be dismissed for several reasons, including that Plaintiffs do not adequately allege the interception of any communications while in transit, as well as because impersonation is not prohibited by the statutes, and because the Creators consented to the Agency Defendants' access.

Content X respectfully requests that the Court grant this Motion and dismiss each claim asserted against the Agency Defendants in the First Amended Complaint.

## II.    ALLEGATIONS RELEVANT TO CONTENT X

Content X was registered as a California corporation on September 1, 2020, FAC ¶ 52, and ceased to exist as of December 1, 2023, according to a Certificate of Dissolution of Content X filed with the California Secretary of State. (Exh. A, attached hereto.)[1]  At the time of its dissolution, Content X was owned by Annabella (Bella) Thorne, Tamara Thorne and Brad Thor. *Id.*

Content X allegedly provided "Chatter Services" to its Represented Creators "to impersonate the Creator and communicate with Fans without the Fans' knowledge." FAC ¶ 227. Plaintiffs allege that "Content X has full access to and control over each Represented Creator's OnlyFans account." *Id.* ¶ 230. The Complaint states that Content X "manages or at some point managed the accounts of the following Creators, who are subscribed to by either Plaintiff S.M. and/or Plaintiff B.L.," namely, Bella Thorne, Abella Danger, Mathilde Tantot and Pauline Tantot. *Id.* ¶ 226.

Plaintiffs SM and BL reside in Atlanta, Georgia and Nashville, Tennessee, respectively. *Id.* ¶¶ 32, 34. None of the other three Plaintiffs—including California Plaintiffs N.Z. and R.M—subscribed to any of the Creators managed by Content X. *See id.* ¶¶ 250-278, 308-323.

Plaintiff S.M. alleges that he subscribed to the accounts of Bella Thorne and Abella Danger, as well as the accounts of other Creators managed by other Agency Defendants. *Id.* ¶ 291. He claims he sent his personal information to the Creators' accounts in the belief that "he was communicating directly and privately with that Creator." *Id.* ¶¶ 294-295. Plaintiff S.M. further alleges that he "confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and they all said it was them replying to messages and/or denied using chatters." *Id.* ¶ 299.

---

[1] In deciding a Rule 12 motion, the Court may take judicial notice of undisputed matters of public record, including documents filed with the California Secretary of State. *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1186 n.3 (9th Cir. 2024); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018); Fed. R. Evid. 201.

1  Likewise, Plaintiff B.L. alleges he subscribed to and sent his personal information to

2  the accounts of Mathilde and Pauline Tantot, as well as tips in the amount of $294.31

3  and $148.00, respectively. *Id.* ¶¶ 279-282, 410-411.

4      The Complaint alleges the following racketeering activity by Content X, which

5  Plaintiffs contend constitutes violations of the federal wire fraud statute. *See id.* ¶¶

6  358, 422. First, Plaintiff S.M. alleges that "he paid for a 'topless picture' and received

7  a picture of Ms. Thorne's back with no shirt and covering her breasts [sic]." *Id.* ¶ 413.

8  Second, Plaintiff S.M. alleges that he paid "$100 to become a VIP subscriber" of

9  Abella Danger's account because "he was led to believe he would receive 'spicy

10 content' monthly," subsequently "received the same photos that were posted on Ms.

11 Danger's Instagram Account," and did not receive a response to his refund request.

12 *Id.* ¶ 415. The Complaint does not allege any other predicate acts or specific conduct

13 by Content X or any of its other Represented Creators. *See id.* ¶¶ 380-426.

14 **III.    LEGAL STANDARD**

15     A party may move to dismiss a complaint for failure to state a claim upon which

16 relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). "To

17 survive a motion to dismiss, a complaint must contain sufficient factual matter,

18 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

19 *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

20 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

21 content that allows the court to draw the reasonable inference that the defendant is

22 liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Only where a plaintiff fails

23 to "nudge[] [his or her] claims…across the line from conceivable to plausible," is the

24 complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not

25 akin to a probability requirement, it demands more than "a sheer possibility that a

26 defendant has acted unlawfully." *Id.* at 678. Determining whether a complaint

27 satisfies the plausibility standard is a "context-specific task that requires the reviewing

28 court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.    DISCUSSION

## A.    The RICO Claims Against Content X Should Be Dismissed

"To state a RICO claim, [Plaintiffs] must plausibly allege that [the defendants] participated, directly or indirectly, in (1) the conduct, (2) of an enterprise that affects interstate commerce, (3) through a pattern, (4) of racketeering activity." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Because "[t]he mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants," "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *see Oscar v. Univ. Students Co-Op Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) ("RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.").

The Court should dismiss Plaintiffs' RICO claims for several different reasons. *First*, the Complaint fails to plead the existence of an enterprise composed of multiple members acting in concert—a fundamental element of any RICO claim. (*See* Footnote 2, *infra* at 5.) *Second*, and relatedly, the factual allegations do not plausibly establish that the defendants acted in furtherance of any coordinated common purpose. *Third*, there are no allegations that Content X either directed the RICO enterprise's conduct or participated in any conduct constituting wire fraud or other racketeering activity. *Finally*, Plaintiffs' second cause of action for RICO conspiracy cannot stand in the absence of an actionable RICO violation.

### 1.    The Complaint Does Not Adequately Plead a RICO Enterprise

A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity," or alternatively, "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Here, Plaintiffs attempt to allege the latter—a so-called "association-in-fact enterprise" between

OnlyFans, the Agency Defendants and the Represented Creators. FAC ¶ 361. An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* In *Boyle v. United States*, 556 U.S. 938 (2009), the Supreme Court clarified the required attributes of an association-in-fact enterprise in holding that it "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946 (explaining that "association" requires "both interpersonal relationships and a common interest," and that members of the alleged enterprise must have "joined together" in order to advance their "common purpose"). Allegations that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . would not be enough to show that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4.[2]

Plaintiffs' RICO claims should be dismissed because the Complaint does not allege that any of the defendants "joined together" or "operated in a coordinated manner in order to carry out the alleged common purpose" of a RICO enterprise. *Id.* at 946; *see Doan v. Singh*, 617 F. App'x 684, 868 (9th Cir. 2015) (rejecting RICO claim for failure to allege "what exactly each individual did, when they did it, or how

---

[2] "Unless a plaintiff is required at the pleading stage to suggest plausibly the existence of an enterprise structure . . . the RICO statute's allowance for association-in-fact enterprises becomes an open gateway to the imposition of potentially massive costs on numerous defendants, regardless of whether there is even a hint of the collaboration necessary to trigger liability." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) ("To require less would ignore *Twombly's* interest in 'insist[ing] upon some specificity in pleading before allowing a potentially massive factual controversy to proceed'" to an "inevitably costly and protracted discovery phase."). "Without such a limitation, as commentators have observed, one malefactor's series of independent frauds could be cast as a RICO conspiracy, sweeping numerous other individuals into a net of heightened liability under RICO, and doing so even if each fraud was perpetrated quite independently of the others." *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018).

they functioned together as a continuing unit"); *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3 (C.D. Cal. Jan. 28, 2016) (RICO claim failed to allege facts demonstrating that purported enterprise members "cooperated with each other" or "coordinated their behavior"). A RICO claim alleging "nothing more than parallel conduct by separate actors" does not suffice. *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) ("[T]here has to be something that ties together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together—acting in concert—by means of mail and wire fraud.").

The Complaint does not allege any form of cooperation or coordination between any of the defendants, let alone for the purpose of some common, unlawful purpose. Plaintiffs do not allege that Content X knew of the existence of the other Agency Defendants, much less that Content X "joined together" with the other defendants in any way. FAC ¶¶ 222-231; *see, e.g.*, *Vulcan Gold, LLC v. Google Inc.*, 2008 WL 2959951, at *5 (N.D. Ill. July 31, 2008) (dismissing RICO claims where complaint did not allege "consensual decisionmaking" by purported enterprise members or "any specific knowledge of the others' existence"); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173-74 (D. Mass. 2003) (RICO plaintiff failed to plead defendants "were even aware of one another's existence as participants in a scheme to defraud").

The allegation that OnlyFans was aware of the Agency Defendants but did not stop their use of chatters on its platform due to its own profit motive, FAC ¶¶ 370, 374, is insufficient to establish the requisite element of "relationships among those associated with the enterprise." *Boyle*, 556 U.S. at 946. Indeed, Plaintiffs allege that OnlyFans' own Terms of Service "prohibit[ed] Creators from allowing anyone else to even access their accounts," which conflicts with Plaintiffs' allegations that the Agency Defendants' use of chatters was done in coordination with OnlyFans. FAC ¶¶ 130, 163. And the mere fact that Content X conducted its business on the OnlyFans

platform is obviously insufficient to establish the existence of a RICO enterprise between Content X and OnlyFans. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (holding that allegations that defendants were "associated in a manner directly related to their own primary business activities" are insufficient to establish RICO enterprise).

Most importantly, Plaintiffs completely fail to plead any form of relationship or association between Content X and the other Agency Defendants. Courts have repeatedly rejected RICO claims alleging an enterprise based on a "rimless hub-and-spoke conspiracy" structure, which is exactly what Plaintiffs have done here. *See, e.g.*, *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009); *see also* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 106 (3d ed. 2010) (stating that "rimless hub-and-spoke configuration would not satisfy the 'relationships' prong of Boyle's structure requirement"). For example, this District Court rejected claims that correspondent lenders, real estate appraisers, underwriters, foreclosure law firms and mortgage insurers were all members of a RICO enterprise based on allegations that they each played a role in the securitization of Countrywide mortgage loans:

> Nothing in the [Complaint] indicates that any of the groups above shared a "common purpose" and coordinated with each other as required to plead an enterprise. Many of the allegations indicate the opposite, that the entities engaged in bilateral business dealings with Countrywide ***but in sharp competition with each other***. That is the type of rimless hub-and-spoke structure that the Third Circuit considered and found wanting in *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir.2010). Western and Southern has cited no reason why such a structure suffices to plead an enterprise in this case.

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (emphasis added); *compare Negrete v. Allianz Life Ins. Co. of N. Am.*, 2011 WL 4852314, at *6 (C.D. Cal. Oct. 13, 2011) (holding that evidence of "contractual arrangements [between marketing agencies] governing their relationships and division of profit . . . . suppl[ied] the "unifying rim" of relationships

absent in *Ins. Brokerage*").

If anything, Plaintiffs' allegations suggest that the Agency Defendants were ***competing*** with one another, not that they were working together to achieve some common purpose. Without any factual support or explanation, Plaintiffs' conclusory allegation that the defendants "play different roles, but all cooperate on a common purpose: using chatters to extract Premium Content Fees," FAC ¶ 362, does not plausibly establish the existence of any actual association between the purported members of the enterprise. (*See* Footnote 2, *supra* at 5.) Fatally, ***the Complaint does not identfy any communications between the Agency Defendants***, much less efforts to coordinate their conduct. *See Elsevier*, 692 F. Supp. 2d at 307 (dismissing RICO claim based on "nothing more than parallel conduct by separate actors"). Absent any factual allegations of cooperation or relationships between the Agency Defendants, Plaintiffs have failed to plead an associated-in-fact RICO enterprise.

## 2. The Complaint Fails to Establish that Defendants Acted in Furtherance of Any Common Purpose

Even if Plaintiffs had pled some form of relationship or coordinated activity between the defendants, the RICO claims would still fail on the grounds that the Complaint does not identify any "common purpose" that the purported enterprise was formed to further. *Turkette*, 452 U.S. at 583. "'Common purpose' does not mean commonality of motive, it means coordinated activity in pursuit of a common objective." *Lupron*, 295 F.Supp.2d at 173. "[S]imilarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systematic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination." *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir. 1995). Even where multiple parties are alleged to have engaged in parallel fraudulent conduct, courts have declined to impose RICO liability absent plausible factual allegations of a coordinated common purpose. *See Gardner v. StarKist*, 417 F. Supp. 3d 443, 461-462 (N.D. Cal. 2019) (citing *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d at 1057).

The mere fact that the Agency Defendants may have had similar goals and methods of achieving them does not permit Plaintiffs to bring a claim under the RICO statute.

The only "common purpose" alleged in the Complaint is to "us[e] chatters to extract Premium Content Fees" and "increas[e] the amount and number of Premium Content Fees each Fan pays." FAC ¶¶ 363, 376. Setting aside Plaintiffs' failure to plead any facts supporting this alleged shared objective, the allegations themselves are not plausible on their face. The Complaint offers no explanation for why Content X would seek to increase the revenue collected by its direct competitors—the other Agency Defendants—or how Content X's use of chatters could positively affect the amount of fees paid to other agencies. In reality, Plaintiffs' alleged "common purpose" is nothing more than the regular business activity of each Agency Defendant. *See id.* ¶ 227 ("[A]s part of its management of those and other Creator accounts, Content X provides Chatter Services"). Thus, even assuming Plaintiffs had alleged the existence of a RICO enterprise, the Complaint still fails to establish that the enterprise acted in furtherance of a common purpose. *See, e.g.*, *Gardner v. StarKist*, 417 F. Supp. 3d at 461 ("Simply characterizing routine commercial dealing as a RICO enterprise is not enough."); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (dismissing RICO claims where plaintiff failed to allege an unlawful purpose beyond "ordinary business conduct and an ordinary business purpose").

### 3. The Complaint Does Not Allege that Content X Directed or Participated in Any Alleged Racketeering Activity

To state a RICO claim against Content X, Plaintiffs must allege not only the existence of an enterprise acting with a common purpose, but also that Content X conducted or participated in that enterprise's racketeering activity. 18 U.S.C. § 1962(c). "In order to participate, directly or indirectly, in the conduct of [an]

enterprise's affairs, [a defendant] must have some part in *directing* those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added). In *Reves*, the Supreme Court held that it is not enough to allege that a purported member of the enterprise directed its own affairs. "[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 185 (emphasis in original); *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008).

Plaintiffs fail to allege that Content X either (i) directed or (ii) participated in the enterprise's racketeering activity. As an initial matter, the Complaint does not allege any form of communication, direct or indirect, between Content X and any of the other defendants. For that reason alone, Plaintiffs cannot establish that Content X directed, operated or managed any of the affairs of the purported enterprise other than its own. *Walter v. Drayson*, 538 F.3d at 1247-48 ("Like the accounting firm in *Reves,* [defendants] were not acting under direction from [other defendants]").

Plaintiffs also utterly fail to establish that Content X participated in any racketeering activity itself. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) ("A pattern of racketeering activity requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. §1961(1)."). Racketeering activity founded on alleged fraudulent conduct must 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004)); *see Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624 (S.D.N.Y. 2006) ("Where a plaintiff claims that specific mail or wire transmissions were themselves fraudulent, *i.e.*, themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred.").

Although Plaintiffs generally allege that defendants engaged in wire fraud, FAC ¶¶ 358, 422, they fail to identify any specific fraudulent conduct by Content X. Indeed, the only purported "racketeering activity" attributed to Content X is neither fraudulent nor related in any way to the alleged "Chatter Services" scheme. *Id.* ¶ 413, 415. The allegation that Plaintiff S.M. requested a "topless photograph" of Content X's Bella Thorne and then received a picture of her exposed back with her breasts covered does not plead a false representation, let alone actionable fraud. *Id.* ¶ 413. Plaintiff S.M.'s apparent frustration that the "topless photograph" did not show Ms. Thorne's exposed breasts as he had hoped does not serve as a basis to assert a criminal violation of federal wire fraud statutes. His disappointment after paying for "spicy content" and receiving photos that Ms. Thorne had published elsewhere is no different—***it was not wrongful let alone a RICO predicate act***. *Id.* ¶ 415. In any case, the manner in which Ms. Thorne photographs and distributes photos of her own body has nothing to do with the alleged "Chatter Services" scheme, and the Court should exercise its authority to strike these incredibly offensive and entirely irrelevant allegations that were included for the sole purpose of unfairly disparaging Ms. Thorne. *See* Fed. R. Civ. P. 12(f) ("The Court may strike . . . any redundant, immaterial, impertinent, or scandalous matter.").

The only other specific representation attributed to Content X is contained in paragraph 299 of the FAC, which alleges that Bella Thorne responded to Plaintiff S.M. via a direct message stating that "it was [Ms. Thorne] replying to messages and/or den[ying] using chatters." FAC ¶¶ 226, 299. This allegation, however, falls woefully short of Rule 9(b)'s heightened pleading standard in that it does not identify ***who*** Plaintiff contends sent the message or ***when*** it was sent. Fed. R. Civ. P. 9(b). Even more importantly, Plaintiffs fail to establish that the statement alleged in paragraph 299 was false or in any way fraudulent. Plaintiffs do not allege that the direct message from Bella Thorne's account was sent by a chatter employed by Content X or that the message was ***not*** sent by Ms. Thorne herself. Indeed, given that

1   Ms. Thorne was a co-owner of Content X (Exh. A), it is entirely plausible that it **was**
2   Ms. Thorne responding on her own behalf. *See Iqbal*, 556 U.S. at 678 (*Twombly*
3   demands more than "a sheer possibility that a defendant has acted unlawfully").
4   Moreover, because Plaintiffs acknowledge that Content X only managed Ms.
5   Thorne's account "at some point," *id.* ¶ 226, the Complaint fails to establish that
6   Content X had access to the account when the purported representation was made.
7   Accordingly, Plaintiffs have failed to establish the alleged statement was false let
8   alone fraudulent.

9       Given that Plaintiffs cannot adequately allege even one fraudulent statement by
10   Content X, the RICO claims fail as a matter of law. *See Harmoni Int'l Spice, Inc. v.*
11   *Bai*, 2016 WL 6542731, at *25 (C.D. Cal. May 24, 2016) (dismissing RICO claim
12   where plaintiffs "alleged only one predicate act" by moving defendant, which was
13   insufficient to establish "a *pattern* of racketeering" (emphasis in original)). In the
14   absence of sufficient factual allegations that Content X directed or participated in any
15   racketeering activity, the RICO claims against Content X must be dismissed.

16       **4.      The Complaint Does Not Plead a Section 1962(d) Violation**

17       Finally, Plaintiffs' inability to adequately plead a cognizable RICO violation
18   under section 1962(c) requires dismissal of their RICO conspiracy claim under section
19   1962(d). *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he
20   failure to adequately plead a substantive violation of RICO precludes a claim for
21   conspiracy"), *cert. denied*, 121 S.Ct. 77 (2000).

22                          *          *          *

23       In conclusion, the Court should dismiss Plaintiffs' first and second causes of
24   action alleging violations of the RICO Act for each of the reasons discussed above.
25   Given that the FAC suffers from the exact same flaws as Plaintiffs' initial complaint,
26   *see* ECF No. 67, Content X respectfully requests that the Court dismiss the RICO
27   claims without further leave to amend.

28

DEFENDANT CONTENT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

**B.    The VPPA Claim Fails as Matter of Law**

The Court should also dismiss Plaintiffs' claim under the Video Privacy Protection Act (VPPA). The Agency Defendants are not "video tape service providers" and Plaintiffs are not "consumers" under the VPPA. Furthermore, Plaintiffs fail to allege either the existence or disclosure of any specific person's private information.

### 1.    Content X Is Not a Video Tape Service Provider

The Complaint fails to establish that Content X meets the definition of a "Video Tape Service Provider." 18 U.S.C. § 2710(a)(4). According to Plaintiffs, the Agency Defendants used their access to the Creators' accounts to facilitate delivery of the videos to Plaintiffs via the OnlyFans platform. FAC ¶¶ 112, 452. Even accepting those allegations as true, they do not establish that the Agencies provide video content as a "central" part of their business. *Hernandez v. Chewy, Inc.*, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023). "[C]ourts in the Ninth Circuit have recognized consistently that delivering video content must be central to the defendant's business or product for the VPPA to apply." *Id.* (citing *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023); *Cantu v. Tapestry, Inc.*, 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023)). "[F]or the defendant to be 'engaged in the business' of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim because the "handful of generalized allegations saying [defendant] shares video titles" with third parties were unsupported by "specific allegations").

The Complaint includes no such allegations sufficient to establish that Content X was "engaged in the business of delivering video content." Indeed, the only factual allegations involving Content X state that its Creators provided ***photographs*** to Plaintiffs—***not videos***. FAC ¶¶ 413, 415. Moreover, Plaintiffs themselves allege that

---

13

1  Content X's business was to manage Creators' accounts and facilitate chatters, *id.* ¶¶

2  222-231—not to deliver video content. The Court should not countenance Plaintiffs'

3  attempt to dramatically expand the reach of the VPPA beyond anything Congress ever

4  intended, *i.e.*, regulating the broad swath of businesses that have any remote

5  connection to the delivery of video content.[3]

6      **2.    Plaintiffs Are Not Consumers of Content X's Services**

7      Even if Content X could be considered a "video tape service provider," the

8  Complaint does not establish that Plaintiffs were "consumers" within the meaning of

9  the VPPA.  *See Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D.

10  Cal. 2023) (holding that plaintiff did not meet VPPA's definition of "consumer"). The

11  VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or

12  services from a video tape service provider." 18 U.S.C. § 2710(a)(1). While Plaintiffs

13  may have been consumers of OnlyFans' services, Plaintiffs do not and cannot allege

14  that they "rente[d], purchase[d] or subscribe[d]" to any goods or services provided by

15  Content X or any of the other Agency Defendants. Plaintiffs describe the services

16  provided by Content X as "manag[ing] the accounts of [its] Creators," including

17  "Chatter Services." *E.g.*, FAC ¶¶ 226-227. Because they are "Fans"—not Creators—

18  Plaintiffs obviously did not utilize any of the Agency Defendants' services. Moreover,

19  Plaintiffs did not "sign up for or establish an account" with, become a "registered

20  user" of, or "make any payments" to Content X, nor do they use any other mobile app

21  or website operated by Content X. *See Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251,

22  1257 (11th Cir. 2015); *see also Yershov v. Gannett Satellite Info. Network, Inc.*, 820

23  F.3d 482, 489 (1st Cir. 2016). Thus, even accepting as true the conclusory allegation

24

25      [3] It is beyond dispute that Congress did not contemplate this type of video
content—which is often created on Creators' phones and instantly and widely
26  distributed via the Internet—at the time the VPPA was enacted in 1988. *See
Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 n.2 (9th Cir. 2017) (explaining that
27  the VPPA was enacted in 1988 in response to the publication of Supreme Court
nominee Robert Bork's video rental history from a local Washington D.C. video
28  store; the VPPA was intended to protect "a consumer's substantive privacy interest
in his or her video-viewing history").

that the Agency Defendants are "engaged in the business of selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators," FAC ¶ 452, the VPPA claim would still fail as Plaintiffs cannot show that they were ever "consumers" of any goods or services *provided by the Agency Defendants*.

### 3.   The Complaint Does Not Allege Any Information Meeting the VPPA's Definition of Personally Identifiable Information

The VPPA claim also fails because the information the Complaint alleges was shared with chatters is not actionable personal identifying information under the VPPA. "Personally identifiable information" (hereinafter, "VPPA PII") includes "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has held that to qualify as VPPA PII, the information must "readily permit an ordinary person to identify *a specific individual's* video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d at 983 (emphasis added). Thus, information is not VPPA PII unless it identifies a specific person. *Compare Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024) (VPPA violated by disclosure of users' full name and records of every video they viewed on mobile news apps) *with Edwards v. Learfield Commc'ns, LLC*, 697 F.Supp.3d 1297 (N.D. Fla. 2023) (no violation where sports fan's video-watching habits were not disclosed).

Here, Plaintiffs do not allege the existence of any VPPA PII, much less its disclosure. The Complaint identifies the information disclosed to chatters as only the Fans' "communication history," which displays only "the Fan's username" and not their real name. FAC ¶¶ 449-451. Crucially, Plaintiffs do not allege that the Agency Defendants—or the Creators they represent—have any knowledge of the actual identities of OnlyFans users. VPPA PII, however, does not include "information" that "*cannot* identify an individual unless it is combined with other data" through a method "an ordinary person could not use." *Eichenberger*, 876 F.3d at 986 (emphasis in original); *see, e.g., In re Hulu Priv. Litig.*, 2014 WL 1724344, at *12 (N.D. Cal.

1  Apr. 28, 2014) ("[T]he issue is whether a unique identifier—without more—violates

2  the VPPA. It does not."); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873,

3  at *12 (D.N.J. July 2, 2014) ("anonymous usernames" are not VPPA PII because they

4  do not "identify an actual, identifiable person and link that person to a specific video

5  choice"). Accordingly, Plaintiffs' "username" and "communication history" cannot

6  be VPPA PII, as they do not "identify a specific individual's video-watching

7  behavior." *Eichenberger*, 876 F.3d at 985. Plaintiffs' *ipse dixit* that "any interaction

8  related to a Fan's request for or viewing of any video content is considered [VPPA

9  PII] about that Fan," FAC ¶ 450, is incorrect as a matter of law. The Court should

10  reject Plaintiffs' tortured interpretation and dismiss the VPPA claim

11  **4.    The Complaint Does Not Allege Any Disclosure of VPPA PII**

12  Finally, even assuming that the Content X received Plaintiffs' VPPA PII, the

13  Complaint does not allege any disclosure of such information by Content X.  Instead,

14  after noting that OnlyFans collects personal information about its users that could be

15  used to identify them (*e.g.*, email addresses), Plaintiffs allege in conclusory fashion

16  that "Defendants knowingly disclosed Plaintiffs' and Class Members' PII without

17  their consent." *Id.* ¶ 456. ***But to whom?*** Even assuming the Agencies somehow

18  obtained information that could be used to identify a specific person's video-watching

19  habits to a specific person, there is not a single allegation anywhere in the Complaint

20  that Content X ever disclosed such information to a third party.  Plaintiffs' conclusory

21  allegation of disclosure—without explaining how, when or to whom Content X made

22  such purported disclosures—is plainly insufficient to plausibly state a claim under the

23  VPPA.[4]

24  **C.    Plaintiffs Fail to State a Claim Under California's Anti-Hacking Statute**

25

---

26    [4] Given that Plaintiffs' allegations of disclosure could be described as vague at
best, it is impossible to evaluate the applicability of the VPPA's "ordinary course of
27  business" exception, which includes "order fulfillment" and "request processing."
18 U.S.C. § 2710(b)(2)(E) (permitting disclosure incident to the ordinary course of
28  business); *see Sterk v. Redbox Automated Retail, LLC*, 2013 WL 4451223, at *4
(N.D. Ill. Aug. 16, 2013), *aff'd*, 770 F.3d 618 (7th Cir. 2014).

Plaintiffs' new cause of action asserted in the FAC for violations of California's Anti-Hacking Statute is dead on arrival. A violation of California's Comprehensive Data Access and Fraud Act (CDAFA) "require[s] that a defendant's access of the computer system at issue be 'without permission.'" *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing Cal. Penal Code § 502). "Without permission" has been interpreted to mean "accessing or using a computer, computer network, or website in a manner that overcomes technical or code-based barriers.'" *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010).

Plaintiffs cannot plead a claim for violation of the CDAFA for the simple reason that the Complaint extensively alleges that the Creators **authorized** the Agency Defendants to access and use their OnlyFans accounts. *E.g.*, FAC ¶¶ 4, 104. The allegation that "Content X has full access to and control over each Represented Creator s OnlyFans account" thus defeats Plaintiffs' CDAFA claim. *Id.* ¶ 230; *see Gutierrez v. Converse, Inc.*, 2023 WL 8939221 at *4 (C.D. Cal. Oct. 27, 2023) (website operator cannot act without permission when there are "no technical barriers blocking [it] from using its own Website").[5]

## D.    The Federal Wiretap Act and CIPA Claims Are Fatally Flawed

Plaintiffs' ill-conceived claims under the Federal Wiretap Act and the California Invasion of Privacy Act (CIPA) should be dismissed for several reasons. Just as this Court held in *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) and *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1109-10 (C.D. Cal. 2023), Plaintiffs' allegations do not establish the interception of a communication while in transit—a necessary element under both CIPA and the Wiretap Act. The

---

[5] The CDAFA claim also fails because invasion of privacy and emotional distress "do not qualify" as damages under § 502, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023), and because Plaintiffs' conclusory allegation of "economic losses do not satisfy Rule 9(b)'s heightened pleading standard. FAC ¶ 474; *see Gutierrez*, 2023 WL 8939221, at *5.

1  Wiretap Act claim also fails because it is subject to the one-party consent rule, and

2  because courts have repeatedly held that impersonation of another—the gravamen of

3  Plaintiffs' allegations—is not an actionable violation of the statute.

4      Both the relevant clause of CIPA[6] and the Wiretap Act—which are analyzed

5  under the same legal framework[7]—require a communication to be "intercept[ed]"

6  while "in transit." Cal. Pen. Code § 631(a); 18 U.S.C. § 2510(4). The Ninth Circuit

7  has interpreted that to mean that the communication must be acquired "during

8  transmission," and not by accessing stored data. *Theofel v. Farey-Jones*, 359 F.3d

9  1066, 1077-78 (9th Cir. 2004) (unauthorized access to stored emails does not violate

10  act); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-78 (9th Cir. 2002) (no

11  interception where message was read after it had arrived at its intended destination).

12  Because the Agency Defendants "directly access[ed]" the Creators accounts to read

13  and respond to the stored messages, FAC ¶ 112(b) n.45, Plaintiffs' claims fail to allege

14  an interception "during transit" under either statute.

15      In the hopes of addressing this fatal flaw, the FAC adds the allegation that the

16  Agency Defendants use "customer relationship management ('CRM') platforms" so

17  that "Fan messages sent to a Creator's account are simultaneously intercepted,

18  diverted and routed through the CRM platform." FAC ¶¶ 121, 124. But these new

19  conclusory allegations do not provide any factual detail as to "how or when" the CRM

20  platforms "intercept" the messages, as opposed to merely collecting them after they

21  are delivered to the Creators' accounts. *See id.* ¶ 491. As this Court recently held, an

---

[6] Plaintiffs presumably allege a violation of the second clause of CIPA, which prohibits "willfully attempting to learn the contents or meaning of a communication in transit over a wire." Cal. Pen. Code § 631(a). The first clause of CIPA does not plausibly apply here, as it only applies to communications sent via telephone or telegraphs. Cal. Pen. Code § 631(a). Communications sent via the Internet—like those alleged here—do not fall within the scope of the first clause. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020). "A violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023).

[7] *Swarts*, 689 F. Supp. 3d at 747 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

allegation that a "'third party secretly intercepts in real time, eavesdrops upon, and stores transcripts' is conclusory and does not allege specific facts as to how or when the interception takes place." *Licea v. Cinmar, LLC*, 659 F.Supp.3d at 1109-10 (dismissing CIPA claim for lack of "detail to support an inference of in transit interception"). It is simply not plausible that such powerful—and illegal—wiretapping software capable of intercepting Internet messages in transit is widely available via CRM platforms. Vague hand-waving about technology and conclusory allegations of interception do not suffice. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).[8]

The Wiretap Act claim fails for two additional reasons. First, Plaintiffs do not deny that the Creators consented to the chatters access to and use of their accounts to read users' communications. FAC ¶¶ 4, 104. A violation of the Wiretap Act, however, cannot occur if any of the parties to the communication "has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *12 (N.D. Cal. Mar. 18, 2014). Because Plaintiffs admit the Agency Defendants had the Creators' consent, the Wiretap Act claim must be dismissed. The Wiretap Act claim also fails because federal appellate courts have consistently held

---

[8] Judge Garnett explained precisely why these conclusory allegations are insufficient in her recent ruling dismissing similar CIPA claims for the second time:

> Plaintiff alleges that, "[b]y virtue of how the Genesys API functions, these communications were intercepted 'in transit' and recorded by Genesys," (FAC ¶ 25), and that "[Defendant] is aware that Genesys collects and stores chats recordings [sic] as they occur," (*id.* ¶ 15). As with the Court's previous order granting Defendant's first motion to dismiss, however, the Court finds these allegations are not sufficient. The allegations still require the Court to determine how the software code embedded on Defendant's website works. That is not the Court's task at this stage. Further, these allegations merely restate the statutory language, which is insufficient under the plausibility standard.

*Heiting*, 728 F. Supp. 3d at 1126; *see Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) ("Though Plaintiff alleges in general terms the interception occurs through software embedded in Defendant's website, she does not include additional factual details establishing when the interception occurs.").

that the act of impersonating another person does not constitute an actionable violation of the statute. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015); *Clemons v. Waller*, 82 F. App'x 436 (6th Cir. 2003); *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964). Yet the very basis of Plaintiffs' entire Complaint is that the Agency Defendants' chatters are "impersonating" Creators. *E.g.*, FAC ¶¶ 104 ("Chatters impersonate the Creators when direct messaging"), 109 ("Chatters . . . learn as much as possible about the Creator they will be impersonating"), 114 ("Agencies do not require Chatters to be similar in any way to the Creators they impersonate"), 227 (Content X employs "Chatters to impersonate the Creator").

## V. CONCLUSION

For the foregoing reasons, Content X respectfully requests that the Court grant this Motion and dismiss the First, Second, Third, Fourth, Fifth and Sixth Causes of Action as to Content X for failure to state a claim for relief.

Respectfully submitted,

DATED: May 23, 2025          KINGFISHER LAW APC


By:          */s/ Nithin Kumar*
_____
Nithin Kumar
Attorneys for Defendant Content X, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendant Content X, Inc. certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

DATED:  May 23, 2025           KINGFISHER LAW APC


By:     _____/s/ Nithin Kumar_____
                    Nithin Kumar
        Attorneys for Defendant Content X, Inc.

DEFENDANT CONTENT X, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

Exhibit A

**Secretary of State**

**Certificate of Dissolution**

(California Stock Corporation ONLY)

| DISS STK |

**For Office Use Only**

**-FILED-**

File No.: BA20241454748

Date Filed: 8/8/2024

There is No Fee for filing a Certificate of Dissolution - Stock

**Certification Fee (Optional) - $5.00**

**This Space For Office Use Only**

| **1. Corporate Name** (Enter the exact name of the Corporation as it is recorded with the California Secretary of State.) | **2. Secretary of State Entity Number** |
|---|---|
| Content X, Inc. | C4634927 |

**3. Election**

[X] The dissolution was made by a vote of ALL of the shareholders of the California corporation.

Note: If the above box is not checked, a Certificate of Election to Wind Up and Dissolve (Form ELEC STK) must be filed prior to or together with this Certificate of Dissolution. (California Corporations Code section 1901.)

**4. Debts and Liabilities**    (Check the applicable statement. Only one box may be checked. If second box is checked, must include the required information in an attachment.)

[X] The known debts and liabilities have been actually paid or paid as far as its assets permitted.

[ ] The known debts and liabilities have been adequately provided for in full or as far as its assets permitted by their assumption. Included in the **attachment** to this certificate, incorporated herein by this reference, is a description of the provisions made and the name and address of the person, corporation or government agency that has assumed or guaranteed the payment, or the depository institution with which deposit has been made.

[ ] The corporation never incurred any known debts or liabilities.

**5. Required Statements** (Do not alter the Required Statements – ALL must be true to file Form DISS STK.)

a.  The Corporation has been completely wound up and is dissolved.

b.  All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

c.  The known assets have been distributed to the persons entitled thereto or the corporation acquired no known assets.

**6. Read, Verify, Date and Sign Below**

The undersigned is the sole director or a majority of the directors now in office. I declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of my own knowledge.

| 12/01/2023 | | Annabella Thorne |
|---|---|---|
| Date | Signature | Type or Print Name |

| 12/01/2023 | | Tamara Thorne |
|---|---|---|
| Date | Signature | Type or Print Name |

| 12/01/2023 | | Thor Bradwell |
|---|---|---|
| Date | Signature | Type or Print Name |

B2888-9897 08/08/2024 5:00 PM Received by California Secretary of State