Allen Sattler (SBN 321086)
Younjin (Jennifer) Lee (SBN 310198)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
3420 Bristol Street, 6th Floor
Costa Mesa, California 92626
Tel.: 949.743.3979
Fax: 949.743.3934
asattler@constangy.com
jlee@constangy.com

*Counsel for Defendant Verge Agency, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**DEFENDANT VERGE AGENCY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FORUM NON CONVENIENS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed Concurrently with [Proposed] Order<br><br>Date:   June 26, 2025<br>Time:  10:00 a.m.<br>Crtrm.: 10D<br><br>Assigned to Hon. Fred W. Slaughter |

1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 26, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Fred W. Slaughter, United States District Judge of the Central District of California, Southern Division, in Courtroom 10D, Defendant Verge Agency, Inc. ("Verge") will move for an order dismissing Plaintiffs' First Amended Class Action Complaint (the "Complaint") against it for the following reasons:

1. Plaintiffs previously agreed to bring all disputes related to their use of the OnlyFans platform in the courts of England and Wales based on their assent to the OnlyFans Terms of Service. Because the claims against Verge are all encompassed by the forum selection clause in the OnlyFans Terms of Service, Plaintiffs' claims against Verge are improperly brought in this Court and should be dismissed without prejudice to refiling in the appropriate forum.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities filed contemporaneously, the reply papers, the pleadings on file, and such other evidence and argument as the Court may receive. In accordance with Local Rule 7-3, on May 16, 2025, counsel for Verge met and conferred with counsel for Plaintiffs to discuss the grounds for this Motion.

DATED: May 23, 2025

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

By: _/s/ Younjin (Jennifer) Lee_
Allen Sattler
Younjin (Jennifer) Lee

*Counsel for Defendant Verge Agency, Inc.*

2

DEFENDANT VERGE AGENCY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FORUM NON CONVENIENS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On July 29, 2024, Plaintiffs initiated this action by filing a class action complaint alleging that Verge and other talent management agencies (collectively, "Agency Defendants") participated in a scheme to use professional "chatters" to pose as content creators and exchange messages with Plaintiffs. After the Court ruled on the Fenix Defendants' Motion to Dismiss for Forum Non Conveniens and Motion to Compel Plaintiffs to Proceed under their Real Names, Plaintiffs filed their First Amended Class Action Complaint. (Plaintiffs' First Amended Class Action Complaint ("Compl.") ¶¶ 15-18.) Plaintiffs allege that the Agency Defendants are "violating explicit platform policies" of OnlyFans and none of what they "are doing to perpetuate the Chatter Scams is actually 'allowed' by OnlyFans' 'Terms of Service[.]'" (*Id.* ¶¶ 162-63.) Plaintiffs, on behalf of a nationwide class and/or California subclass of OnlyFans users, assert claims against Verge for violations of RICO, Video Privacy Protection Act ("VPPA"), California Comprehensive Data Access and Fraud Act, California Invasion of Privacy Act ("CIPA"), and Federal Wiretap Act. (*Id.* ¶¶ 355-496.)

Plaintiffs' claims against Verge are improperly filed in this Court because they are all subject to a mandatory forum selection clause. Specifically, Plaintiffs' allegations against Verge all relate to allegations based on their use of the OnlyFans platform. However, Plaintiffs previously agreed to bring all disputes related to their use of the OnlyFans platform in the courts of England and Wales based on their assent to the OnlyFans Terms of Service. Because the claims against Verge are all encompassed by the forum selection clause in the OnlyFans Terms of Service, the Court should grant this Motion to Dismiss for Forum Non Conveniens and dismiss Plaintiffs' claims without prejudice to refiling in the appropriate forum.

Given the number of defendants filing responsive pleadings to Plaintiffs' Class Action Complaint, this Memorandum is limited to those allegations alleged against

3

Verge specifically—for additional context, Verge reincorporates by reference the allegations in the briefing of co-Defendants.

## II. BACKGROUND

In their Complaint, Plaintiffs allege that Verge, along with Defendants Fenix International Limited and Fenix Internet LLC ("Fenix Defendants"), participated in a fraudulent scheme by employing professional "chatters" to pose as creators and exchange direct messages with Plaintiffs. (*See, e.g.*, Complaint ¶¶ 3-8, 15-18.) According to Plaintiffs, this alleged "chatter scheme" allegedly involves "massive breaches of confidentiality and privacy violations" and violates OnlyFans' Terms of Service and Privacy Policy by distributing subscribers' "intimate communications and private and/or personal information" to unauthorized parties. (*Id.* at ¶¶ 5, 155-170.) Plaintiffs allege that, in its management of the accounts of creators Katie Williams and Mikayla Demaiter, Verge employs chatters "to impersonate the Creator and communicate with Fans without the Fans' knowledge." (*Id.* ¶ 246.) Specifically, Plaintiff A.L. alleges that, when he subscribed to the Verge-affiliated creators' accounts, he believed "he was communicating directly and privately" with the creators. (*Id.* ¶¶ 309, 312.) According to Plaintiff A.L., if he had known about the alleged chatter scheme, he "would not have subscribed to or interacted with" the creators' accounts and "likely would not have signed up for an OnlyFans account in the first place." (*Id.* ¶¶ 319-220.)

The Fenix Defendants' Terms of Service govern the relationship between OnlyFans and its users. (*See* Declaration of Lee Taylor in Support of Specially Appearing Defendants' Fenix International Limited's and Fenix Internet LLC's Motion to Dismiss for Forum Non Conveniens, Dkt. 60-1 ("Taylor Decl.") ¶ 12, Exh. A, Dkt. 60-1 ("Terms of Service") ¶ 1).[1] Since July 2018, OnlyFans has required users

---

[1] In accordance with Fed. R. Civ. P. 10(c), Verge incorporates by reference the Taylor Decl. and the accompanying Exhibit A.

to agree to the Terms of Service when creating an account on the website. (Terms of Service ¶ 27.) When creating an account on OnlyFans, users provide their name, email address, and password, and click the "Sign Up" button. (Taylor Decl. ¶¶ 23-26, Exh. C.) The "Sign Up" button appears above text stating, "By signing up you agree to our Terms of Service and Privacy Policy and confirm that you are at least 18 years old." (*Id.* ¶¶ 23, Exh. C.) The phrases "Terms of Service" and "Privacy Policy" appear in blue text and are hyperlinked to the relevant policies. (*Id.* ¶ 24.)

The Fenix Defendants use a similar process for amendments to the OnlyFans Terms of Service. OnlyFans sent all users a message through the platform before its December 2021 amendments took effect. (Taylor Decl. ¶¶ 28-29.) The message stated the Terms of Service were being updated, listed the effective date of the update, shared a hyperlink to the updated Terms of Service, provided a summary of the relevant changes, and notified users that they agreed to comply with the updated Terms of Service by continuing to use the OnlyFans platform. (*Id.* ¶¶ 29-30, Exh. D.) The Fenix Defendants also sent users an alert on the first day they logged into OnlyFans after the amendment went into effect stating: "Our Terms of Service have been updated on December 15, 2021. To continue using our service, please confirm you have read and agree with our Terms of Service." (*Id.* ¶¶ 31-33, Exh. E.) The alert contained a hyperlink to the updated Terms of Service and required users to click "accept" to continue using the website. (*Id.* ¶ 33.)

The Terms of Service include a forum selection clause and choice-of-law provision applicable to OnlyFans users, which provide:

> **Consumers - where claims must be brought:**
> If you are a consumer resident **outside** of the United Kingdom or the European Union, any claim which you have or which we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual

disputes or claims) must be brought in the courts of England and Wales.

### III. ARGUMENT

"[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Federal law governs the interpretation of a forum selection clause. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). When interpreting a contract under federal law, courts "look for guidance to general principles for interpreting contracts." *Id.* (internal citation omitted). The Court reads contracts as a whole. *Id.* The Court should apply the usual meanings to the words in a contract "unless circumstances show that in a particular case a special meaning should be attached to it." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). "[W]hen the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Ninth Circuit law requires that the Court consider whether the language in the forum selection clause is mandatory, or merely permissive. "[W]here venue is specified with mandatory language the clause will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). Where the language mentions jurisdiction only, without any specific reference to venue, it is a mandatory forum selection clause when the specification of jurisdiction

is exclusive. *Docksider, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989).

The Ninth Circuit has held that courts may enforce forum selection clauses against a nonsignatory to a contract where the nonsignatory's alleged conduct is "closely related to the contractual relationship." *Manetti-Farrow*, 858 F.2d at 514 n. 5 (9th Cir. 1988); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007).

### 1. The Terms of Service' Forum Selection Clause Covers Plaintiffs' Claims against Verge.

The Court should dismiss Verge because there is a valid forum selection clause in the OnlyFans Terms of Service that sets forth mandatory language providing that the only appropriate forum for their disputes in connection with use of the OnlyFans platform is an English court, not a federal one. Dismissal is appropriate because no amendment could cure the defect here based on the validity of a forum selection clause with mandatory language. As an initial matter, and as noted in the Court's ruling on the Fenix Defendants' Motion to Dismiss for Forum Non Conveniens,[2] Plaintiffs "do not dispute that they agreed to the Terms of Service by creating accounts and subscribing to the website or that the forum selection clause covers their claims." (Order on Fenix Defendants' FNC Motion at 6.)

To determine whether the scope of the forum selection clause applies to Plaintiffs' claims against Verge, the Court begins its analysis with the plain language of the agreement. *AOL LLC*, 552 F.3d at 1081. "[F]orum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow, Inc.*, 858 F.2d at 514 (citations omitted). "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.* (citations omitted).

---

[2] See (In Chambers) Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for Forum Non Conveniens [60] and Denying without Prejudice Motion to Compel Plaintiffs to Proceed in their Real Names [61] ("Order on Fenix Defendants' FNC Motion").

As the Court has previously noted, the scope of the forum selection clause here is broad in scope. Order on Fenix Defendants' FNC Motion at 7. The forum selection clause applies to "*any* claims that you have arising out of or *in connection with* your agreement with us or *your use of OnlyFans*[.]" Exh. A ¶ 16(a). *See also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (*citing Huffington v. T.C. Grp.*, 637 F.3d 18, 22 (1st Cir. 2011) (explaining that "the phrase 'with respect to' [is] synonymous with the phrases 'with reference to,' 'relating to,' 'in connection with,' and 'associated with,'" and is "broader in scope than the term 'arising out of'")).

Plaintiffs' claims against Verge are all plainly related to alleged fraudulent practices and dissemination of private information without consent using the OnlyFans platform. For example, Plaintiffs allege that the Agency Defendants participated in a RICO enterprise by:

> [I]mplement[ing] the Chatter Scams on behalf of the Creators they represent to convince Fans they were direct messaging with the Represented Creators and receiving the promised "1 on 1," chats, "direct messaging." or "authentic" experience, when in fact the Fans were speaking with third parties without their knowledge.

(Compl. ¶ 367.) The Agency Defendants did so, Plaintiffs allege, "to maximize the Premium Content Fees paid to the Creators by the Fans as described herein, a portion of which is paid to the Agency Defendants." (*Id.* ¶ 368.)

Plaintiffs allege that the Agency Defendants are liable under the VPPA because they are engaged in the business of selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators." (*Id.* ¶ 452.) A substantial portion of this content, according to Plaintiffs, "is made up of prerecorded videos which OnlyFans not only stores, but organizes, on behalf of Creator accounts." (*Id.* ¶ 454.) In addition, Plaintiffs allege that the Agency Defendants violated the CDAFA

"by knowingly accessing, without permission, Plaintiffs' and Class Members' private messages stored on or transmitted via the OnlyFans Platform's computer systems." (*Id.* ¶ 467.) Plaintiffs allege that the Agency Defendants violated CIPA by reading or learning the content of their private messages on the OnlyFans platform without their consent. (*Id.* ¶ 480.)

Likewise, Plaintiffs allege that the Agency Defendants' use of customer relationship management ("CRM") platforms to manage creators' accounts violated the federal wiretap act by intercepting and diverting messages from creators' inboxes to the CRM platform to facilitate the use of chatters. (*Id.* ¶ 491.) Plaintiffs allege that the Agency Defendants' use of the CRM platforms was necessary because, "[w]ithout it, each Chatter would individually need to log into a Creator's OnlyFans account and send messages directly from the Creator's inbox after they were received—something that would overwhelm a specific account, causing loss of functionality." (*Id.* ¶ 492.)

These allegations all point back to a central fact that the alleged conduct all involves Plaintiffs' use of the OnlyFans platform to engage in direct messaging and exchange of content with creators represented by the Agency Defendants. Ninth Circuit precedent holds that similarly situated parties are bound to forum-selection clauses. *See, e.g., Manetti-Farrow*, 858 F.2d at 514 n.5; *Connex R.R. LLC v. AXA Corp. Solutions Assurance*, 209 F.Supp.3d 1147, 1150 (C.D. Cal. 2016). Because the Agency Defendants' alleged conduct is closely related to the contractual relationship as embodied by the forum selection clause's language regarding "use of OnlyFans," the forum selection clause should apply to Plaintiffs' claims against Verge.

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs' claims against Verge fall within the scope of the forum selection clause of the OnlyFans Terms of Service. Accordingly, the Court should dismiss Plaintiffs' claims without prejudice to refiling in the courts of England and Wales.

DATED: May 23, 2025

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

By: */s/ Younjin (Jennifer) Lee*
Allen Sattler
Younjin (Jennifer) Lee

*Counsel for Defendant Verge Agency, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Verge Agency, Inc., certifies that this brief contains 2,163 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

By: _____
Allen Sattler
Younjin (Jennifer) Lee

*Attorneys for Defendant Verge Agency, Inc.*