JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL RECONSIDERATION OR ALTERNATIVELY CERTIFICATION OF AN INTERLOCUTORY APPEAL;**<br><br>**2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>**3) DECLARATION OF RAZA RASHEED IN SUPPORT THEREOF (SEPARATE COVER); and**<br><br>**4) [PROPOSED] ORDER (SEPARATE COVER).**<br><br>Judge:        Hon. Fred W. Slaughter<br>Courtroom:   10D<br>Date:         August 28, 2025<br>Time:         10:00 a.m. |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 28, 2025, at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Specially Appearing Defendants Fenix International Limited and Fenix Internet LLC (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion for partial reconsideration of the Court's April 9, 2025 Order, or, alternatively, certification of that order for an interlocutory appeal.

On April 9, 2025, the Court denied in part (ECF 117, "FNC Order") Fenix's motion to dismiss this action for forum non conveniens (the "FNC Motion"). The Court reasoned that the forum selection clause in the OnlyFans Terms of Service was contrary to California public policy, and thus not enforceable against California residents because: (1) the courts of England and Wales do not have civil jury trials, and thus enforcing the clause would violate California's public policy favoring jury trials; and (2) the courts of England and Wales do not have California-style class action procedures, and thus enforcing the clause would violate California's purported public policy favoring class actions for consumer claims. The motion seeks reconsideration of the Court's decision based on the California Supreme Court's July 21, 2025 decision in *EpicentRx, Inc. v. Superior Court*, --- P.3d ---, No. S282521, 2025 WL 2027272 (Cal.) ("*EpicentRx II*"), which reversed, disapproved, or limited the California authorities upon which this Court relied in reaching its decision. In the alternative, if the Court is not inclined to grant reconsideration, Fenix ask the Court to certify its FNC Order for an interlocutory appeal to the United States Court of Appeals for the Ninth Circuit because it presents an important, and novel, legal question.

This motion is made pursuant to Civil Local Rule 7-18, Federal Rules of Civil Procedure 59 and 60, and 28 U.S.C. §1292(b). It is based on this notice, the memorandum of points and authorities that follows, the files and records in this action, the arguments of

counsel, and any other matters the Court may in the exercise of its discretion properly consider. The grounds for the motion are as follows:

- **Reconsideration**: In *EpicentRx II*, the California Supreme Court held that: (1) California does not have a public policy against enforcing forum selection clauses selecting jurisdictions that do not provide a right to a civil jury trial; and (2) lower court decisions recognizing a public policy against forum selection clauses selecting jurisdictions that do not have California-style class action procedures are limited to claims under California statutes that prohibit contractual waivers of a consumer's substantive rights. 2025 WL 2027272, at *11-13 & n.7. Those conclusions overturn the public policy rationales the Court relied upon in partially denying the FNC Motion. The Court should thus partially reconsider its FNC Order, and grant the FNC Motion in its entirety.

- **Certification of an Interlocutory Appeal**: After *EpicentRx II*, the Court's FNC Order presents substantial and disputed issues of California law and public policy that, if resolved in Fenix's favor, would result in the dismissal of this action in its entirety. Accordingly, the FNC Order meets all of the requirements for certification of an interlocutory appeal pursuant to 28 U.S.C. §1292(b).

This motion is made following the conference of counsel required by Civil Local Rule 7-3, which took place on July 23, 2025. (*See* Declaration of Raza Rasheed ¶2.)

DATED: July 31, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Jason D. Russell_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

ii

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 2

      A.    Fenix's FNC Motion and the Court's Decision ........................... 2

      B.    The California Supreme Court's Decision in *EpicentRx II* ................... 4

ARGUMENT ........................................................................................................ 6

I.    The Court Should Reconsider Its FNC Order Based on *EpicentRx II*, and Grant Fenix's FNC Motion in Its Entirety ........................... 7

      A.    *EpicentRx II* Is a Material Change in Law Justifying Reconsideration ........................................................................... 7

      B.    *EpicentRx II* Leaves No Reason to Deny the FNC Motion ................. 11

      C.    This Motion for Reconsideration Is Timely ......................... 12

II.    Alternatively, the Court Should Certify Its FNC Order to the Ninth Circuit .......................................................................... 12

      A.    The Court's FNC Order Involved a Controlling Question of Law ..................................................................................... 12

      B.    After *EpicentRx II*, There Are Substantial Grounds for Disagreement With the Court's Decision .............................. 13

      C.    An Interlocutory Appeal Would Materially Advance This Litigation's Ultimate Termination ................................. 17

CONCLUSION .................................................................................................. 17

CERTIFICATE OF COMPLIANCE .................................................................. 18

iii

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AGK Sierra De Montserrat, L.P. v. Comerica Bank,*
    109 F.4th 1132 (9th Cir. 2024) .................................................................. 11

*America Online, Inc. v. Superior Court,*
    90 Cal.App.4th 1 (2001) .............................................................. 1, 4, 5, 9

*Casola v. Dexcom, Inc.,*
    98 F.4th 947 (9th Cir. 2024) ...................................................................... 14

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper,*
    254 F.3d 882 (9th Cir. 2001) ........................................................................ 7

*Couch v. Telescope Inc.,*
    611 F.3d 629 (9th Cir. 2010) ...................................................................... 16

*Doe 1 v. AOL LLC,*
    552 F.3d 1077 (9th Cir. 2009) ............................................................... 4, 11

*Effron v. Sun Line Cruises, Inc.,*
    67 F.3d 7 (2d Cir. 1995) ............................................................................. 13

*EpicentRx, Inc. v. Superior Court,*
    95 Cal.App.5th 890 (2023) ........................................................................... 4

*EpicentRx, Inc. v. Superior Court of San Diego County,*
    No. S282521,
    2025 WL 2027272 (Cal. July 21, 2025) ............................................. *passim*

*Fabian v. LeMahieu,*
    No. 4:19-cv-00054-YGR,
    2020 WL 3402800 (N.D. Cal. June 19, 2020) ........................................... 16

*Feltz v. Cox Communications California, LLC,*
    562 F.Supp.3d 535 (C.D. Cal. 2021) ..................................................... 7, 11

*Ford v. Brown,*
    319 F.3d 1302 (11th Cir. 2003) .................................................................. 13

iv

*Handoush v. Lease Finance Group, LLC*,
　41 Cal.App.5th 729 (2019) ................................................................ 1, 3, 8

*Health Net of California, Inc. v. Department of Health Services*,
　113 Cal.App.4th 224 (2003) ..................................................................... 13

*Lathrop v. Thor Motor Coach, Inc.*,
　105 Cal.App.5th 808 (2024), *review granted*, 561 P.3d 847 (Cal. 2025) ............ 3, 8

*Los Angeles Lakers, Inc. v. Federal Insurance Company*,
　637 F.Supp.3d 801 (C.D. Cal. 2022) ........................................................ 11

*Losson v. Union des Associations Europeennes de Football*,
　No. 23-cv-06500-JSC,
　2024 WL 3406987 (N.D. Cal. July 11, 2024) ......................................... 16

*Net2Phone, Inc. v. Superior Court*,
　109 Cal.App.4th 583 (2003) ................................................................. 14

*Ovando v. City of Los Angeles*,
　92 F.Supp.2d 1011 (C.D. Cal. 2000) ........................................................ 12

*Parker v. County of Riverside*,
　No. EDCV 21-1280 JGB (KKx),
　2022 WL 2204146 (C.D. Cal. May 5, 2022) ........................................ 12, 13

*Piper Aircraft Co. v. Reyno*,
　454 U.S. 235 (1981) ......................................................................... 3, 11

*Reese v. BP Exploration (Alaska) Inc.*,
　643 F.3d 681 (9th Cir. 2011) ............................................................ 2, 14

*Rosenberg v. Viking River Cruises, Inc.*,
　No. 2:19-cv-09691-RGK-AS,
　2020 WL 1442886 (C.D. Cal. Mar. 23, 2020) ........................................ 16

*Scruggs v. Mars*,
　No. LA CV22-05617 JAK (AFMx),
　2023 WL 8263364 (C.D. Cal. Nov. 9, 2023) ............................................ 12

*Sheaffer v. Superior Tank Lines Northwest Division, LLC*,
　No. 2:19-cv-00190-BJR,
　2019 WL 2476636 (W.D. Wash. June 13, 2019) ...................................... 13

v

*Troisi v. Cannon Equipment Co.*,
  No. G042084,
  2010 WL 2061989 (Cal. Ct. App. May 25, 2010) ............................................ 14, 15

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988) ...................................................................................... 2, 12

*Verthelyi v. PennyMac Mortgage Investment Trust*,
  No. CV 24-05028-MWF (JCx),
  2025 WL 1720193 (C.D. Cal. May 5, 2025) .................................................. 2, 17

**STATUTES**

28 U.S.C. §1292 ................................................................................... 12, 13, 17

Cal. Civ. Code §1751 ........................................................................................ 5, 9

Cal. Civ. Proc. Code §631 ........................................................................*passim*

**COURT RULES**

Cal. R. Ct. 8.548 ............................................................................................... 16

**OTHER AUTHORITIES**

C.D. Cal. Civ. L.R. 7-18 ............................................................................ 2, 7, 10

Debra Lyn Bassett, *The Future of International Class Actions*,
  18 Sw. J. Int'l L. 21 (2011) ............................................................................. 15

Richard D. Freer,
  15 Fed. Prac. & Proc.: Jurisdiction §3866.2 (4th ed. 2025 update) ...................... 15

Robert H. Klonoff, *Why Most Nations Do Not Have U.S.-Style Class Actions*,
  Bloomberg Law (May 22, 2015) ....................................................................... 15

## **PRELIMINARY STATEMENT**[1]

On April 9, 2025, the Court granted in part and denied in part (ECF 117, "FNC Order") Defendants Fenix International Limited's and Fenix Internet LLC's (collectively, "Fenix") motion to dismiss this case because the forum selection clause in OnlyFans.com's Terms of Service ("Forum-Selection Clause") requires Plaintiffs' claims to brought in the courts of England and Wales (the "FNC Motion"). The Court agreed with Fenix that the Forum-Selection Clause is enforceable as a general matter and applied it to dismiss the claims brought by the three Plaintiffs who live outside of California. (*Id.* at PageID#1517-18.) But the Court held that applying the clause to the two Plaintiffs who live in California would violate California public policy because the courts of England and Wales do not have civil jury trials, or California-style opt-out class actions. (*Id.* at PageID#1513-17.)

On July 21, 2025, the California Supreme Court issued a significant new decision overturning or limiting the California cases the Court relied upon in conducting its public policy analysis. In *EpicentRx, Inc. v. Superior Court*, --- P.3d ---, No. S282521, 2025 WL 2027272 (Cal. July 21, 2025) ("*EpicentRx II*"), the California Supreme Court held that: (1) California does not have any public policy against requiring its residents to litigate their claims in court systems that do not guarantee civil jury trials, *id.* at *1, 13 & n.7 (disapproving *Handoush v. Lease Finance Group, LLC*, 41 Cal.App.5th 729, 736 (2019)); and (2) California's public policy favoring consumer class actions applies only when the plaintiff asserts claims covered by a statute that voids contracts diminishing the plaintiff's statutory rights, *id.* at *10-12 (discussing *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1 (2001)).

*EpicentRx II* overturns the two public policy rationales the Court invoked to partially deny the FNC Motion. Without those public policy rationales, there is no longer any reason to decline to dismiss the two California Plaintiffs' claims. The Court should thus partially reconsider its FNC Order based on *EpicentRx II*, and grant the FNC Motion in its entirety.

---

[1] Unless otherwise noted, all emphasis is added, and all citations, brackets, footnotes, and internal quotation marks are omitted from all quoted material for ease of reading.

1

1    *See* C.D. Cal. Civ. L.R. 7-18(b) (allowing reconsideration based on "a change of law

2    occurring after the Order was entered").

3        If the Court has any doubt about *EpicentRx II*'s impact on the Court's FNC Order,

4    Fenix respectfully urge the Court to certify that order to the Ninth Circuit under 28 U.S.C.

5    §1292(b). This case meets all of the criteria for an interlocutory appeal. Whether California

6    public policy blocks the Forum Selection Clause after *EpicentRx II* is a pure issue of law.

7    *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529-30 (1988) (holding "that the denial of

8    a motion to dismiss on the ground of *forum non conveniens*" is appropriate for interlocutory

9    review under §1292(b)). That issue is novel, undecided, and at least debatable after the

10   California Supreme Court's opinion. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d

11   681, 688 (9th Cir. 2011) (interlocutory appeal is appropriate "when novel legal issues are

12   presented" in the district court's order and "reasonable jurists might disagree on [those]

13   issue[s'] resolution"). And resolution of that issue could greatly simplify this case. *See*

14   *Verthelyi v. PennyMac Mortgage Investment Trust*, 2025 WL 1720193, at *3 (C.D. Cal.

15   May 5, 2025). Indeed, if the Ninth Circuit agrees with Fenix that enforcing the Forum-

16   Selection Clause would not offend California public policy, that decision would end this

17   case, because the Court has already determined that all of the other prerequisites for

18   enforcing the clause have been met.

19       Accordingly, for these reasons, and those explained below, the Court should partially

20   reconsider the FNC Order and grant the FNC Motion in its entirety, or at the very least

21   certify its order for an interlocutory appeal to the Ninth Circuit.

22                       **BACKGROUND**

23       **A.    Fenix's FNC Motion and the Court's Decision**

24       Because the Court is already familiar with the basic issues from the FNC Motion,

25   Fenix discuss only those facts necessary to understand this motion for reconsideration.

26   Plaintiffs are anonymous users of OnlyFans—a web-based multimedia platform that hosts

27   content uploaded by third-party Creators. (FAC ¶ 8.) In this case, Plaintiffs allege that

28

1  Fenix and certain talent agencies conspired to mislead consumers about the nature of
2  services on OnlyFans that allow users to chat with Creators. (FAC ¶¶ 361-66.)

3    However, OnlyFans' Terms of Service contains a Forum-Selection Clause providing
4  that "any claim which [a user has] or which [Fenix have] arising out of or in connection
5  with [the user's] agreement with [Fenix] or [the user's] use of OnlyFans (including, in both
6  cases, non-contractual disputes or claims) must be brought in in the courts of England and
7  Wales." (ECF 60-1, PageID#366.) On October 25, 2024, Fenix moved to dismiss this
8  action for forum non conveniens, arguing that the Forum-Selection Clause requires
9  Plaintiffs to litigate their claims in England or Wales. (ECF 60.)

10    On April 9, 2025, the Court granted in part and denied in part the FNC Motion. (ECF
11  117.) The Court agreed with Fenix that "the broad scope of the forum selection [clause]
12  covers Plaintiffs' claims." (*Id.* at PageID#1510.) It agreed that the public interest factors
13  courts consider under the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454
14  U.S. 235, 241 n.6 (1981), favored enforcing the Forum-Selection Clause. (*Id.* at
15  PageID#1518-19.) And it agreed that the Forum-Selection Clause is valid and enforceable
16  against the three Plaintiffs who do not reside in California. (*Id.* at PageID#1517-18.) The
17  Court thus dismissed the three out-of-state Plaintiffs' claims. (*Id.* at PageID#1519.)

18    But the Court declined to enforce the Forum-Selection Clause against the two
19  Plaintiffs who reside in California, reasoning that to do so would violate California public
20  policy for two independent reasons.

21    ***First***, the Court concluded that enforcing "the forum selection clause would
22  substantially diminish the rights of California residents by effectively waiving their right
23  to a civil jury trial." (*Id.* at PageID#1516.) The Court cited two California cases—
24  *Handoush v. Lease Finance Group, LLC*, 41 Cal.App.5th 729, 736 (2019), and *Lathrop v.*
25  *Thor Motor Coach, Inc.*, 105 Cal.App.5th 808, 819 (2024)—for the proposition that
26  "California courts refuse to enforce forum selection clauses that result in waiver of the right
27  to a jury trial." (*Id.*) It then concluded that the Forum-Selection Clause is effectively a pre-
28  dispute jury trial waiver because England and Wales do not guarantee civil jury trials. (*Id.*)

3

1    ***Second***, the Court concluded that it could not enforce the Forum-Selection Clause

2    because the courts of England and Wales do not provide for California-style class actions.

3    The Court determined that under *America Online, Inc. v. Superior Court*, 90 Cal.App.4th

4    1 (2001), and *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam)—a Ninth

5    Circuit decision following *America Online*—California law never permits courts to enforce

6    a forum selection clause that would require California consumers to litigate claims in

7    jurisdictions that do not have California-style class actions. (ECF 117 at PageID#1514.)

8    The Court rejected an argument by Fenix that *America Online*'s policy is limited to cases

9    involving statutes that invalidate waivers of a consumer's substantive rights. (*Id.*) It then

10    determined that the class action-like mechanisms available in English and Welsh courts are

11    not sufficient to satisfy California public policy, because consumers must opt-in to English

12    and Welsh group actions. (*Id.* at PageID#1515.) The Court accordingly declined to dismiss

13    the two California Plaintiffs' claims. (*Id.*)

14    **B.    The California Supreme Court's Decision in *EpicentRx II***

15    One of the cases the Court cited and relied upon in its FNC Order was *EpicentRx,*

16    *Inc. v. Superior Court*, 95 Cal.App.5th 890 (2023) ("*EpicentRx I*"). In *EpicentRx I*, a

17    minority shareholder brought suit against a Delaware company and several others, alleging

18    breaches of fiduciary duty, fraud, and unfair competition. *Id.* at 895. The company moved

19    to dismiss the suit for forum non conveniens, invoking a forum selection clause in its

20    corporate charter and bylaws requiring the shareholder's claims to be brought in the

21    Delaware Court of Chancery. *Id.* at 896. The trial court denied the motion to dismiss, and

22    the Court of Appeal affirmed, holding that enforcing the forum selection clause would be

23    contrary to California's public policy favoring jury trials because jury trials are not

24    available in the Delaware Court of Chancery. *Id.* at 908.

25    On July 21, 2025, the California Supreme Court reversed *EpicentRx I*. Two aspects

26    of the court's decision are particularly relevant to this motion.

27    ***First***, the California Supreme Court held that a "forum selection clause is not

28    unenforceable simply because it requires the parties to litigate in a jurisdiction that does

4

not afford civil litigants the same right to trial by jury as litigants in California courts enjoy." *EpicentRx II*, 2025 WL 2027272, at *1. While "California has a strong public policy… in favor of the right to trial by jury," that policy "protects the jury trial right in California courts, not elsewhere." *Id.* In other words, "California does not have a strong public policy against forum selection clauses or agreements to litigate in a jurisdiction that does not recognize the same civil jury trial right." *Id.* at *13. In reaching this conclusion, the California Supreme Court expressly disapproved the decision in *Handoush* that this Court relied upon to reach the opposite conclusion in its FNC Order. *Id.* at *13 n.7.

**Second**, the court clarified that *American Online*'s public policy analysis applies only when the plaintiff asserts claims subject to a statutory provision voiding any contractual agreements that would diminish the plaintiff's substantive rights. In *America Online*, the defendant attempted to enforce a Virginia forum selection clause against a California plaintiff who asserted claims under California's Consumer Legal Remedies Act. 90 Cal.App.4th at 15. The CLRA has a provision voiding contractual waivers of a consumer's CLRA rights. *See* Cal. Civ. Code §1751 ("Any waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void"). Invoking this provision, the California Court of Appeal held that enforcing the defendant's forum selection clause would impermissibly diminish the consumer's rights, because Virginia does not permit consumer class actions. *America Online*, 90 Cal.App.4th at 15-17.

The plaintiff in *EpicentRx II* argued that the case was similar to *America Online*, because California has a statute disallowing pre-dispute jury trial waivers. *See* Cal. Civ. Proc. Code §631. But the California Supreme Court rejected the comparison. The court began by observing that courts must be "reluctant to decline enforcement of contractual provisions on public policy grounds, especially where no statute or constitutional provision speaks to the issue." *EpicentRx II*, 2025 WL 2027272, at *7. The court explained that the "power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power," which "should be exercised only in cases

1  free from doubt." *Id.*

2      The court then held that §631 was not the kind of statute that would establish a public

3  policy against forum selection clauses under *America Online*'s public policy rationale. The

4  court reasoned that §631 was fundamentally "unlike" the CLRA anti-waiver provision at

5  issue "in *America Online*," because the CLRA states that contractual waivers of CLRA

6  rights are "void," while §631 merely provides that pre-dispute jury trial waivers "will not

7  be enforced in California." *EpicentRx II*, 2025 WL 2027272, at *12. That was significant,

8  the court explained, because without the CLRA's language "void[ing]" contracts that

9  diminish CLRA rights or "prohibit[ing] parties from agreeing to them," §631 created only

10  "limitations on courts operating in this forum," rather than "a public policy against

11  predispute jury trial waivers writ large, untethered to their enforcement in a California

12  forum." *Id.* Put differently, the court held that *America Online*'s public policy analysis did

13  not apply because the plaintiff could not point to a CLRA-like anti-waiver provision

14  voiding any contracts that diminished the plaintiff's substantive rights. *Id.*

15  ## ARGUMENT

16      The recent decision in *EpicentRx II* directly undermines the two bases for partially

17  denying the FNC Motion and warrants reconsideration of the FNC Order. The California

18  Supreme Court made clear that California has no policy against contracts requiring

19  California residents to litigate in jurisdictions that do not guarantee civil jury trials.

20  *EpicentRx II*, 2025 WL 2027272, at *1, 13. It further clarified that *America Online*'s pro-

21  consumer class action policy turns on whether the plaintiff's claims are governed by a

22  CLRA-like anti-waiver provision, something that is absent here. *Id.* at *11-12.

23  Accordingly, the two public policy rationales the Court gave for declining to enforce the

24  OnlyFans Forum-Selection Clause against the California Plaintiffs were overturned by

25  *EpicentRx II*. The Court should partially reconsider its FNC Order and dismiss the

26  California Plaintiffs' claims as well.

27      If the Court has any doubts about granting reconsideration outright, it should certify

28  its FNC Order to the Ninth Circuit under 28 U.S.C. §1292(b). This reconsideration motion

turns on substantial questions of law that, if resolved in Fenix's favor, would dispose of this case. This motion thus presents exactly the sort of issues that are appropriate for an interlocutory appeal.

## I.    The Court Should Reconsider Its FNC Order Based on *EpicentRx II*, and Grant Fenix's FNC Motion in Its Entirety

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). "A motion for reconsideration is appropriate when the previous order in question is demonstrably wrong, or if new developments would affect the outcome of the motion." *Feltz v. Cox Communications California, LLC*, 562 F.Supp.3d 535, 539 (C.D. Cal. 2021). Accordingly, this Court's Local Rules permit the Court to reconsider a prior order based on "the emergence of new material facts or a change of law occurring after the Order was entered." C.D. Cal. Civ. L.R. 7-18(b). A motion for reconsideration "must be filed no later than 14 days after entry of the Order that is the subject of the motion or application," unless there is "good cause" for the later filing. *Id.*

The instant motion provides the paradigmatic example of the proper subject for a reconsideration motion. Here, the Court should reconsider its FNC Order and grant Fenix's FNC Motion for three reasons: (A) *EpicentRx II* materially changed the California law underlying the Court's FNC Order; (B) *EpicentRx II*, makes clear that the Court should enforce the OnlyFans Forum-Selection Clause against the California Plaintiffs; and (C) this motion could not have been brought within the default 14-day period specified by the Local Rules, and is thus timely.

### A.    *EpicentRx II* Is a Material Change in Law Justifying Reconsideration

To start, *EpicentRx II* changed the law upon which the Court relied to deny Fenix's FNC Motion, which justifies reconsideration under Civil Local Rule 7-18(b). Previously, the Court found that enforcing the Forum-Selection Clause would violate California public policy because the courts of England and Wales do not: (1) guarantee the right to a jury

trial in civil cases; and (2) have California-style class action procedures. (ECF 117 at PageID#1513-16.) *EpicentRx II* invalidates both conclusions.

*First*, *EpicentRx II* directly overturns the authority on which the Court relied to reach its conclusion that the Forum-Selection Clause "contravenes California public policy as an unenforceable predispute jury waiver." (ECF 117 at PageID#1516.) Contrary to the Court's FNC Order, *EpicentRx II* held that a "forum selection clause is not unenforceable" under California law "simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy." 2025 WL 2027272, at *1. While "California has a strong public policy…in favor of the right to trial by jury," that policy "protects the jury trial right in California courts, not elsewhere." *Id.* In other words, "California does not have a strong public policy against forum selection clauses or agreements to litigate in a jurisdiction" like the courts of England and Wales "that does not recognize the same civil jury trial right." *Id.* at *13.

In reaching these conclusions, the California Supreme Court rejected or fatally undermined the two California cases this Court relied upon to conclude that California public policy prohibits forum selection clauses choosing jurisdictions that do not have civil jury trials: *Handoush v. Lease Financial Group, LLC*, 41 Cal.App.5th 729, 736 (2019), and *Lathrop v. Thor Motor Coach, Inc.*, 105 Cal.App.5th 808, 819 (2024). (FNC Order at PageID#1516.) The California Supreme Court expressly "disapprove[d]" *Handoush*, singling it out as "unpersuasive" and contrary to California law. *EpicentRx II*, 2025 WL 2027272, at *11, *13 n.7. And while the California Supreme Court did not discuss *Lathrop*, that decision relied on *EpicentRx I* and *Handoush* for the proposition that "California courts refuse to enforce forum selection clauses that result in a waiver of the right to a jury trial." *Lathrop*, 105 Cal.App.5th at 819. The California Supreme Court reversed *EpicentRx I* and disapproved *Handoush*, leaving *Lathrop* without any foundation.[2]

---

[2]    Moreover, the California Supreme Court granted review in *Lathrop*, and held the case pending disposition of *EpicentRx II*. *See Lathrop v. Thor Motor Coach, Inc.*, 561 P.3d 847 (Cal. 2025). Because the California Supreme Court subsequently disapproved the cases upon which *Lathrop* relied, that decision is unlikely to survive intact when the California Supreme Court addresses it.

1   **Second**, *EpicentRx II* also fatally undermines the Court's conclusion that California

2   has "a strong... public policy in favor of consumer class actions" that applies to this case.

3   (ECF 117 at PageID#1514.) The Court located this public policy in *America Online, Inc.*

4   *v. Superior Court*, 90 Cal.App.4th 1 (2001) (referred to as *Mendoza* in the FNC Order)—

5   a decision where the California Court of Appeal declined to enforce a Virginia forum

6   selection clause against a California plaintiff who asserted claims under the California

7   Consumer Legal Remedies Act because "Virginia does not allow class actions for

8   consumer claims." (FNC Order at PageID#1513.) In their FNC Motion papers, Fenix

9   argued that *America Online*'s policy does not apply to this case because: (1) the CLRA

10  contains a provision preventing contractual provisions that would diminish a consumer's

11  CLRA rights, *see* Cal. Civ. Code §1751 ("Any waiver by a consumer of the provisions of

12  [the CLRA] is contrary to public policy and shall be unenforceable and void"); (2) the

13  *America Online* court grounded its analysis on the CLRA's anti-waiver provision; and

14  (3) Plaintiffs here do not assert any claims that are covered by a similar anti-waiver

15  provision. (Fenix's Reply, ECF 95 at PageID#893.) The Court rejected this argument,

16  concluding that *America Online* announced a general policy against requiring California

17  plaintiffs to litigate in forums that do not have California-style class action procedures, no

18  matter what claims they bring. (ECF 117 at PageID#1514.)

19  *EpicentRx II* made clear that *America Online* applies only when the plaintiff asserts

20  statutory claims subject to a CLRA-like statutory anti-waiver provision. California Code

21  of Civil Procedure §631 provides that "a jury may only be waived" after a lawsuit is

22  initiated, or when a party fails to request one, appear at trial, or pay jury fees. *See* Cal. Civ.

23  Proc. Code §631(a), (f). In *EpicentRx II*, the plaintiff argued that §631 expresses a strong

24  public policy against enforcing contractual provisions requiring litigants to bring their

25  claims in jurisdictions that do not guarantee civil jury trials. 2025 WL 2027272, at *9. The

26  plaintiff analogized §631 to the CLRA's anti-waiver provision, and argued that under

27  *America Online*'s reasoning, §631 was evidence that California has a strong public policy

28  against requiring California residents to litigate in jurisdictions that do not provide civil

1  jury trials. *Id.*

2  The California Supreme Court rejected the comparison, while reserving the question

3  of whether *America Online* was correctly decided. *Id.* at *11-12, 13 n.7. The court began

4  by observing that courts must be "reluctant to decline enforcement of contractual

5  provisions on public policy grounds, especially where no statute or constitutional provision

6  speaks to the issue." *Id.* at *7. The court explained that the "power of the courts to declare

7  a contract void for being in contravention of sound public policy is a very delicate and

8  undefined power," which "should be exercised only in cases free from doubt." *Id.*

9  Then court then held that §631 was not the kind of statute that would establish a

10  public policy against forum selection clauses under *America Online*'s (and similar cases')

11  reasoning. The court reasoned that §631 was fundamentally "unlike" the CLRA anti-

12  waiver provision at issue "in *America Online*," because the CLRA states that contractual

13  waivers of CLRA rights are "void," while §631 merely provides that pre-dispute jury trial

14  waivers "will not be enforced in California." *Id.* at *12. That was significant, the court

15  explained, because without the CLRA's language "void[ing]" contracts that diminish

16  CLRA rights or "prohibit[ing] parties from agreeing to them," §631 created only

17  "limitations on courts operating in this forum," rather than "a public policy against

18  predispute jury trial waivers writ large, untethered to their enforcement in a California

19  forum." *Id.* Put differently, the court held that *America Online*'s public policy rationale did

20  not apply because the plaintiff could not point to a CLRA-like anti-waiver provision

21  voiding any contracts that diminished the plaintiff's substantive rights. *Id.*

22  *EpicentRx II*'s reasoning applies just as strongly here. None of Plaintiffs' claims are

23  subject to a CLRA-like anti-waiver provision voiding contracts that would diminish

24  Plaintiffs' ability to bring a California-style class action. And without a statute that

25  "explicitly or implicitly voids a private agreement that waives a substantive statutory

26  right," this case is "unlike" *America Online*. *Id.* Accordingly, *America Online* is no longer

27

28

a basis to refuse to enforce the Forum-Selection Clause.[3]

At bottom, *EpicentRx II* abrogates or expressly limits each of the California cases the Court relied upon in conducting its public policy analysis. Because *EpicentRx II* represents "a change of law occurring after the Order was entered," it is sufficient grounds for the Court to reconsider its FNC Order. *See* C.D. Cal. Civ. L.R. 7-18(b); *Feltz*, 562 F.Supp.3d at 540 (granting reconsideration based on intervening California appellate authority); *Los Angeles Lakers, Inc. v. Federal Insurance Company*, 637 F.Supp.3d 801, 804 (C.D. Cal. 2022) (same).

## B.    *EpicentRx II* Leaves No Reason to Deny the FNC Motion

After *EpicentRx II*, there is no longer any basis to deny the FNC Motion as to the two California Plaintiffs. The Court previously concluded that the Forum-Selection Clause "is mandatory," valid, "covers Plaintiffs' claims," and that the public interest factors identified in *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981), weigh in favor of dismissal. (*See generally* ECF 117.) The Court further held that the Forum-Selection Clause is enforceable against the three Plaintiffs who do not reside in California. (*Id.* at PageID#1517-18.) While the Court declined to enforce the Forum-Selection Clause against the two California Plaintiffs, it did so because it believed that California law prohibited forum selection clauses picking jurisdictions that do not have civil jury trials or California-style class actions and did not have the benefit of the California Supreme Court's recent analysis. (*Id.* at PageID#1514-17.) Because *EpicentRx II* abrogated those public policy rationales, the Court should grant the FNC Motion in its entirety and dismiss the California Plaintiffs' claims as well.

---

[3]    The Court also relied on the Ninth Circuit's decision in *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam), for its California public policy analysis. But *Doe 1* itself was simply applying *America Online*. *See id.* at 1084 (holding that *America Online* "is the kind of declaration by judicial decision" that can establish a public policy). The Ninth Circuit's "precedent interpreting state law… is only binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024). Accordingly, the Court must follow *EpicentRx II*'s interpretation of *America Online* to the extent it conflicts with *Doe 1*.

C.    <u>This Motion for Reconsideration Is Timely</u>

Finally, this motion for reconsideration is timely. "[A]n intervening change in law provides good cause for the delayed filing of a motion for reconsideration." *Scruggs v. Mars*, 2023 WL 8263364, at \*5 (C.D. Cal. Nov. 9, 2023) (collecting cases). This motion is based on *EpicentRx II*, which was decided on July 21, 2025. Fenix thus could not have brought this motion within 14 days of April 9, 2025—the day the Court issued its FNC Order. Fenix brought this a motion promptly on July 31, 2025, only ten days after *EpicentRx II* was decided. Accordingly, the Court should find that the motion for reconsideration is timely. *See id.* (reconsideration motion based on case that was decided more than 14 days after original order was timely).

II.    <u>Alternatively, the Court Should Certify Its FNC Order to the Ninth Circuit</u>

*EpicentRx II* leaves no doubt that the Court should not decline to enforce the OnlyFans Forum-Selection Clause simply because the courts of England and Wales do not guarantee civil jury trials. 2025 WL 2027272, at \*1. But if the Court has any doubts about whether, after *EpicentRx II*, California public policy bars forum selection clauses requiring consumers to litigate in jurisdictions that do not have California-style class actions, it should certify that issue to the Ninth Circuit.

A district court may certify an order for interlocutory appeal when the court finds "that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b); *Parker v. County of Riverside*, 2022 WL 2204146, at \*2 (C.D. Cal. May 5, 2022). All three criteria are satisfied here.

A.    <u>The Court's FNC Order Involved a Controlling Question of Law</u>

Whether California permits contracts requiring consumers to litigate in non-class action jurisdictions is "a controlling question of law." 28 U.S.C. §1292(b). "A question is controlling if the resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Parker*, 2022 WL 2204146, at \*2; *Ovando v. City of Los*

1    *Angeles*, 92 F.Supp.2d 1011, 1025 (C.D. Cal. 2000) (same). Courts have repeatedly held
2    that orders denying dismissal for forum non conveniens involve controlling questions of
3    law. *See, e.g.*, *Van Cauwenberghe*, 486 U.S. at 529-30 (holding "that the denial of a motion
4    to dismiss on the ground of *forum non conveniens*" is appropriate for interlocutory review
5    under §1292(b)); *Ford v. Brown*, 319 F.3d 1302, 1304 n.2 (11th Cir. 2003) (granting review
6    of denial of forum non conveniens dismissal under §1292(b)); *Effron v. Sun Line Cruises,*
7    *Inc.*, 67 F.3d 7, 8 (2d Cir. 1995) (granting review of failure to enforce forum selection
8    clause under §1292(b)).

9         Here, whether California has a general public policy against all forum selection
10    clauses designating jurisdictions without California-style class action procedures is a
11    question of law. *See Health Net of California, Inc. v. Department of Health Services*, 113
12    Cal.App.4th 224, 232 (2003) ("the issue of whether a contractual provision is contrary to
13    public policy, or a statute which embodies such public policy, is a question of law");
14    *Sheaffer v. Superior Tank Lines Northwest Division, LLC*, 2019 WL 2476636, at *3 (W.D.
15    Wash. June 13, 2019) ("the question of whether a public policy exists is a question of law").
16    And that question is controlling. If the Ninth Circuit agrees with Fenix that California
17    permits forum selection clauses specifying non-class action jurisdictions (at least for claims
18    that are not subject to a CLRA-like antiwaiver provision), the Court would be required
19    based on its prior analysis in the FNC Order to grant the FNC Motion and dismiss the
20    California Plaintiffs' claims, ending the case. *See, e.g.*, *Parker*, 2022 WL 2204146, at *3
21    (granting certification where a "Ninth Circuit decision agreeing with Defendants'
22    interpretation of the… issue would prove fatal to [plaintiff's] two remaining causes of
23    action"). The first factor is thus satisfied.

24        **B.**    **After *EpicentRx II*, There Are Substantial Grounds for Disagreement**
25                **With the Court's Decision**

26         After *EpicentRx II*, there are also "substantial ground[s] for difference of opinion"
27    with the Court's conclusion that California prohibits all consumer forum selection clauses
28    selecting jurisdictions that do not have California-style class action procedures. 28 U.S.C.

§1292(b). Substantial grounds for disagreement exist "when novel legal issues are presented" in the district court's order and "reasonable jurists might disagree on [those] issue[s'] resolution." *Reese*, 643 F.3d at 688.

Here, whether *EpicentRx II* cabins *America Online*'s public policy rationale to cases involving CLRA-like anti-waiver provisions is a novel issue of first impression that has not been decided by the Ninth Circuit or any other court. And reasonable jurists might disagree with the Court's reading of *America Online* after *EpicentRx II* for three reasons.

***First***, as explained above, the California Supreme Court in *EpicentRx II* read *America Online* as turning on the CLRA's language voiding contracts that would limit a consumer's CLRA rights. *See supra*, §I.B. The California Supreme Court's decision conflicts or is at least in substantial tension with this Court's prior ruling that *America Online* applies to all consumer claims, not just those brought under statutes with CLRA-like anti-waiver provisions. *Id.* A reasonable jurist could thus read *America Online* more narrowly than the Court did in light of *EpicentRx II*.

***Second***, multiple California courts have read *America Online* as applying only when a California plaintiff asserts CLRA claims. For example, in *Net2Phone, Inc. v. Superior Court*, 109 Cal.App.4th 583 (2003), the plaintiff invoked *America Online* to argue that the court should not enforce a New Jersey forum selection clause because the plaintiff had brought a representative action under the UCL on behalf of the general public, and New Jersey does not have a California-like representative action procedure. *Id.* at 587, 589. The California Court of Appeal rejected the argument, holding that *America Online* did not apply because *America Online* turned on the CLRA's anti-waiver provision, while the "UCL, under which [plaintiff] brought this action, contains no such limitation." *Id.* at 589.

Similarly, in *Troisi v. Cannon Equipment Co.*, 2010 WL 2061989, at *6 (Cal. Ct. App. May 25, 2010),[4] the plaintiff invoked *America Online* and argued that the court could not enforce a Washington forum selection clause because Washington might not enforce

---

4    Federal courts "may consider unpublished California Court of Appeal decisions in determining California law, even though such opinions are not precedent within the state system." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 958 n.12 (9th Cir. 2024).

Business and Professions Code §16600, a statute restricting non-competition agreements. The court rejected that argument, explaining that in the CLRA's "anti-waiver provision[]" was "the basis" for the *America Online* "court's refusal to enforce the forum selection clause[]." *Id.* Because "Section 16600" did "not have such an anti-waiver provision," *America Online* did not apply. *Id.*

Combined with *EpicentRx II*, these cases could lead a reasonable jurist to conclude that *America Online* applies only when the plaintiff asserts a CLRA-like anti-waiver provision.

**Third**, Fenix respectfully submit that reading *America Online* as broadly as the Court's FNC Order did substantially undermines California's public policy favoring forum selection clauses. *EpicentRx II* reaffirmed that California courts will "typically" enforce forum selection clauses due to California "law's devotion to the concept of one's free right to contract," and "the important practical effect such contractual rights have on commerce generally." 2025 WL 2027272, at *6. The court "emphasized the importance of enforcing forum selection clauses." *Id.* at *8. But under the Court's pre-*EpicentRx II* reading of *America Online*, relatively few forum selection clauses are enforceable against California consumers. Of the 195 countries recognized by the United Nations, roughly 30 have some kind of class action or group pleading procedure (depending on what parameters one uses for the count). *See* Debra Lyn Bassett, *The Future of International Class Actions*, 18 Sw. J. Int'l L. 21, 24 (2011) (collecting countries). About half of those countries use the sort of "opt-in" class actions that the Court held are insufficient as a matter of California public policy. *See* Robert H. Klonoff, *Why Most Nations Do Not Have U.S.-Style Class Actions*, Bloomberg Law at 3 n.27 (May 22, 2015) (collecting sources) (attached to the Rasheed Declaration as Exhibit 1). And two U.S. states—Virginia and Mississippi—do not have class action procedures except where specifically allowed by statute. *See* Richard D. Freer, 15 Federal Practice & Procedure Jurisdiction §3866.2 (4th ed. 2025 update) (noting that "two states (Mississippi and Virginia)… do not generally recognize the class action"). That means that under the Court's reading of *America Online*, at most, California consumers

15

1  could only be bound by forum clauses selecting roughly 15 countries and 48 U.S. states.

2  That is a far cry from the California Supreme Court's understanding that California courts

3  "typically" enforce forum selection clauses to effectuate "one's free right to contract."

4  *EpicentRx II*, 2025 WL 2027272, at *6.

5       Moreover, in multiple contexts, courts have repeatedly held that the unavailability

6  of class actions is not a reason to deny enforcement of a forum selection clause, or dismissal

7  for forum non conveniens. *See, e.g.*, *Losson v. Union des Associations Europeennes de*

8  *Football*, 2024 WL 3406987, at *3 (N.D. Cal. July 11, 2024) (rejecting argument that Swiss

9  forum selection clause was unenforceable because Switzerland does not have class actions,

10 and noting that "[i]f [plaintiff's] analysis was correct, nearly no international forum-

11 selection clause would be enforceable as most countries do not have a class action

12 procedure"); *Rosenberg v. Viking River Cruises, Inc.*, 2020 WL 1442886, at *3 (C.D. Cal.

13 Mar. 23, 2020) (holding that "the absence of the class-action device in Switzerland does

14 not by itself bar dismissal" under a forum selection clause); *Fabian v. LeMahieu*, 2020 WL

15 3402800, at *8 (N.D. Cal. June 19, 2020) (explaining that "[c]ourts routinely reject

16 arguments that… the difficulties of certifying a class, as compared to federal courts in the

17 United States, are relevant to a determination of whether an alternative forum is adequate").

18 This background principle is in tension with the Court's decision that California has a

19 strong public policy against litigating in forums that do not permit California-style class

20 actions.

21      Because the Court's reading of *America Online* substantially restricts the kinds of

22 forum selection clauses that may be enforced, departs from the general rule that parties can

23 contract to litigate in jurisdictions that do not have California-style class-actions, and

24 dilutes California's background commitment to enforcing forum selection clauses,

25 reasonable jurists could conclude that the Court read *America Online* too broadly.[5]

26 [5]    Although the Court cannot certify its FNC Order to the Ninth Circuit just to facilitate
27 certification to the California Supreme Court, *see Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010), it is worth noting that the Ninth Circuit is better positioned to resolve
28 difficult questions of state law than this Court because it can ask the California Supreme Court for assistance. *See* Cal. R. Ct. 8.548(a).

1    **C.**    **An Interlocutory Appeal Would Materially Advance This Litigation's**
2          **Ultimate Termination**

3          Finally, "an immediate appeal from the [Court's] order may materially advance the
4    ultimate termination of the litigation." 28 U.S.C. §1292(b). This "prong is satisfied when
5    the resolution of the question may appreciably shorten the time, effort, or expense of
6    conducting the district court proceedings." *Verthelyi*, 2025 WL 1720193, at *3.

7          Here, if the Ninth Circuit agrees with Fenix that *America Online* applies only when
8    the plaintiff asserts claims subject to CLRA-like anti-waiver provisions, the FNC Motion
9    will be granted and this case will be dismissed. An interlocutory appeal could thus
10   "conserve time and resources spent litigating an action potentially premised on a mistaken
11   analysis of a threshold question." *Id.* (certifying appeal when "the Ninth Circuit's
12   determination of this issue could result in dismissal of Plaintiff's only existing claim"). By
13   contrast, if the Court declines certification, the parties might waste the Court's time and
14   their resources on claims that could be redirected to the courts of England and Wales after
15   a post-judgment appeal. The Court should certify an interlocutory appeal to avoid that
16   wasted effort.

17                                      **CONCLUSION**

18         The Court should partially reconsider its FNC Order, enforce the Forum-Selection
19   Clause, and dismiss this action. In the alternative, the Court should certify its FNC Order
20   to the Ninth Circuit pursuant to 28 U.S.C. §1292(b).

21   DATED: July 31, 2025

22                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
23
24                                      By: _____*/s/ Jason D. Russell*_____
                                             JASON D. RUSSELL
                                        *Attorneys for Specially Appearing Defendants*
25                                      Fenix International Limited and Fenix Internet LLC
26
27
28

                                             17

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,028 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: July 31, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC