Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email:  christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
            leonarda@hbsslaw.com
            michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br>                    Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S MOTION FOR PARTIAL RECONSIDERATION OR ALTERNATIVELY CERTIFICATION OF AN INTERLOCUTORY APPEAL**<br><br>Judge:          Hon. Fred W. Slaughter<br>Courtroom:   10D<br>Date:           September 4, 2025<br>Time:           10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND ............................................................................................. 1

III.  ARGUMENT .................................................................................................. 3

   A.   *EpicentRx II* leaves this Court's class-action ruling
        untouched. ........................................................................................ 4

        1.   California public policy recognizes consumer class
             actions as a substantive right. ........................................... 5

        2.   *EpicentRx II* did not address, let alone disturb,
             California's public policy favoring consumer class
             actions. ................................................................................ 7

        3.   California public policy need not be rooted in a statute
             or constitutional provision in order to serve as a basis
             for refusing to enforce a forum-selection clause. ...................... 9

        4.   Because it only affects one of two independent
             rationales, *EpicentRx II* does not alter the outcome of
             this Court's FNC Order. ................................................. 10

        5.   *EpicentRx II*  reaffirms this Court's discretion in
             weighing various public policies. ............................... 11

   B.   Fenix fails to meet its burden for reconsideration because
        *EpicentRx II* is not a material, outcome-determinative
        change in law. ................................................................................ 12

        1.   Fenix fails to show a material change in the law that
             would support reconsideration.......................................... 12

        2.   Reconsideration is discretionary ..................................... 13

   C.   Fenix has not met the stringent standard to certify
        interlocutory appeal under 28 U.S.C. § 1292(b). ............................ 13

        1.   There is no controlling question of law. ........................ 14

PLS.' RESP. IOT FENIX DEFS.' MOT. FOR RECONSIDERATION

2.  There is no substantial ground for difference of
    opinion. ...................................................................................... 14

3.  Immediate appeal would not materially advance the
    termination of this litigation. ...................................................... 15

IV.  CONCLUSION ............................................................................................ 16

PLS.' RESP. IOT FENIX DEFS.' MOT. FOR RECONSIDERATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*America Online, Inc. v. Superior Court of Alameda County*,
    90 Cal. App. 4th 1 (2001)..............................................................*passim*

*City of San Diego v. Monsanto Co.*,
    310 F. Supp. 3d 1057 (S.D. Cal. 2018) ............................................ 15

*Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*,
    28 F.4th 956 (9th Cir. 2022)........................................................ 4, 11

*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (2005).......................................................................9

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009)...................................................*passim*

*EpicentRx, Inc. v. Superior Court*,
    2025 WL 2027272 (Cal. July 21, 2025)....................................*passim*

*Gemini Techs., Inc. v. Smith & Wesson Corp.*,
    931 F.3d 911 (9th Cir. 2019)................................................. 4, 9, 13

*Loritz v. CMT Blues*,
    271 F. Supp. 2d 1252 (S.D. Cal. 2003) ............................................ 14

*Massachusetts v. United States*,
    333 U.S. 611 (1948) ........................................................................ 10

*Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*,
    215 F.R.D. 581 (D. Ariz. 2003)..................................................... 3, 12

*In re Pacific Gas & Elec. Co.*,
    280 B.R. 506 (N.D. Cal. 2002)....................................................... 15

*Planned Parenthood of the Great Nw. & the Hawaiian Islands v. Wasden*,
    564 F. Supp. 3d 895 (D. Idaho 2021)............................................ 4, 12

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2006)......................................... 3, 12

*Stiner v. Brookdale Senior Living, Inc.*,
   383 F. Supp. 3d 949 (N.D. Cal. 2019) ................................................................ 15

*Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ................................................................ 4, 11, 13

*United States v. Woodbury*,
   263 F.2d 784 (9th Cir. 1959) ............................................................ 3, 10, 13, 14

*California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
   766 F.2d 1319 (9th Cir. 1985) ................................................................ 10

*Vasquez v. Superior Ct.*,
   4 Cal. 3d 800 (1971) ................................................................ *passim*

**Statutes**

28 U.S.C. § 1292 ................................................................ *passim*

**Other Authorities**

C.D. Cal. Civ. L.R. 7-18 ................................................................ 3, 12

PLS.' RESP. IOT FENIX DEFS.' MOT. FOR RECONSIDERATION

## I.    INTRODUCTION

Defendants Fenix International Limited's ("FIL") and Fenix Internet LLC's (together "Fenix" or "Fenix Defendants") Motion for Partial Reconsideration or Alternatively Certification of an Interlocutory Appeal, Dkt. 147 ("Motion") overstates the reach of *EpicentRx II* and understates the breadth of this Court's prior ruling. *EpicentRx II* addressed a narrow question about predispute jury trial waivers. It did not involve consumers, class actions, or California's well-established public policy favoring those remedies. That independent rationale—recognized in California Supreme Court and Ninth Circuit precedent—remains untouched. Even setting *EpicentRx II* aside, this Court's decision is grounded in discretionary public-policy balancing and fact-specific findings that are unsuitable for reconsideration and do not meet the exacting standard for interlocutory appeal under 28 U.S.C. § 1292(b). Stripping away Fenix's mischaracterizations leaves the same result this Court reached before: the forum selection clause is unenforceable against the California Plaintiffs.

## II.    BACKGROUND

Fenix moved to dismiss this action on forum non conveniens grounds based on a forum selection clause ("FSC") in its Terms of Service. Dkt. 60 ("FNC Motion"). The FSC designates the courts of England and Wales as the exclusive forum for disputes. *Id.* at 4. Plaintiffs opposed, arguing that enforcement of the FSC would violate California public policy in two respects: (1) by requiring California residents to litigate in a forum that does not provide a civil jury trial, and (2) by requiring California residents to litigate in a forum that does not permit U.S.-style,

opt-out class actions, thereby depriving them of an essential mechanism for vindicating substantive consumer and privacy rights. Dkt. 85 at 9–17.

In denying Fenix's FNC Motion in part, the Court found first that enforcement against the California Plaintiffs "contravenes California public policy" by "substantially diminish[ing] the rights of California residents to bring class action suits." Dkt. 117 at 12 ("FNC Order"); *see also id*. at 11–12 (finding that "limitations on class actions identified by Plaintiffs"—including requirements that class members "'opt in,' consent to being identified as a claimant, pay a 'court issue fee," and accept potential liability for payment of the adverse party's legal fees— undermine the ability of "California residents to recover in cases where 'the amount of individual recovery would be insufficient to justify bringing a separate action.'") *Second*, explicitly describing it as an "independent and alternative basis" for its decision, the Court determined that requiring California residents to litigate in England and Wales would deprive them of a civil jury trial. The Court dismissed the claims of the non-California Plaintiffs against the Fenix Defendants based on the FSC, but retained jurisdiction over the California Plaintiffs' claims on both public-policy grounds. *Id.* at 14–15. The Court also retained jurisdiction over all Plaintiffs' claims against the Agency Defendants.[1]

Fenix now moves for "partial" reconsideration of the Court's ruling or, in the alternative, certification for interlocutory appeal under 28 U.S.C. § 1292(b)—

---

[1] Although Defendants now claim in their motions to dismiss that the Court's FNC Order dismissing the non-California Plaintiffs' claims against Fenix applied equally to the Agency Defendants, that is incorrect, as Plaintiffs explain in their briefing. *See generally*, Dkts. 138, 141, 142. Those motions remain pending and will be argued at the same hearing as the present motion for reconsideration.

relying on the California Supreme Court's decision in *EpicentRx, Inc. v. Superior
Court*, 2025 WL 2027272 (Cal. July 21, 2025) ("*EpicentRx II*"), which Fenix
argues changed the applicable law and requires dismissal of the remaining claims
(or at least interlocutory review).

### III.    ARGUMENT[2]

Fenix seeks two forms of relief—reconsideration and, in the alternative,
certification for interlocutory appeal—and claims both are supported by the
California Supreme Court's recent decision in *EpicentRx II*. Civil Local Rule 7-
18(b) permits reconsideration where there has been an "emergence of new material
facts or a change of law occurring after the Order was entered." Similarly,
§ 1292(b) authorizes interlocutory appeal only when the challenged order "involves
a controlling question of law as to which there is substantial ground for difference
of opinion and…an immediate appeal…may materially advance the ultimate
termination of the litigation."

Both reconsideration and interlocutory appeal require more than a change in
the law—the change must be material to the challenged order, such that it would
require a different result. *See United States v. Woodbury*, 263 F.2d 784, 787–88
(9th Cir. 1959) (§ 1292(b) intended for "exceptional cases" where resolution of the
legal question will control the outcome); *Stewart v. Wachowski*, 574 F. Supp. 2d
1074, 1117 (C.D. Cal. 2006) (party seeking reconsideration must "demonstrate a
material factual or legal difference" that could not have been known earlier and that
is "of such consequence that it would have changed the prior decision"); *Motorola,
Inc. v. J.B. Rodgers Mech. Contrs., Inc.*, 215 F.R.D. 581, 583 (D. Ariz. 2003)

---

[2] Unless otherwise noted, all internal quotation marks and citation are omitted.

PLS.' RESP. IOT FENIX DEFS.' MOT. FOR RECONSIDERATION

(denying reconsideration where alleged change "would not alter the Court's prior reasoning or result"); *Planned Parenthood of the Great Nw. & the Hawaiian Islands v. Wasden*, 564 F. Supp. 3d 895, 901 (D. Idaho 2021) (denying reconsideration where intervening Supreme Court decision "did not change the applicable . . . standard," and therefore "did not alter [the] Court's prior ruling").

Even when a party claims an intervening change in law, the question whether it is material—and whether reconsideration or certification is warranted—is left to the trial court's sound discretion. *See Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (public-policy determinations in forum-selection context are "case-specific" and "entrusted to the trial court's discretion"); *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 (9th Cir. 2022) (weight assigned to state public policy under § 1404(a) transfer analysis "is for the trial court to determine"); *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (public-policy grounds for declining enforcement "need not be codified in statute" and are assessed in the trial court's discretion).

At most, *EpicentRx II* addresses one of the "two separate and independent public-policy grounds" on which the Court denied Fenix's FNC Motion; the other—California's public policy favoring consumer class actions—remains binding and independently dispositive. Dkt. 117 at 10.

The Court should deny Fenix's Motion in its entirety.

## A.    *EpicentRx II* leaves this Court's class-action ruling untouched.

The Court should reaffirm its prior holding that enforcing Fenix's clause against California Plaintiffs would contravene California's public policy favoring consumer class actions—an independent, sufficient ground to deny enforcement.

### 1.    California public policy recognizes consumer class actions as a substantive right.

In *Vasquez v. Superior Ct.*, describing the protection of consumers as "an exigency of the utmost priority in contemporary society," the California Supreme Court described the state's public policy in favor of consumer class actions as vital to protecting consumers' *substantive* rights to be free from fraudulent business practices at the hands of businesses that are more powerful than they are. 4 Cal. 3d 800, 808 (1971). "Frequently," the court noted, "numerous consumers are exposed to the same dubious practice by the same seller," yet "**[i]ndividual actions by each of the defrauded consumers [are] often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action**." *Id.* (emphasis added). In other words, without the availability of the class-action mechanism, an "unscrupulous seller" can violate consumers' substantive rights but still "retain[] the benefits of its wrongful conduct." *Id.*[3]

The California Court of Appeal reiterated this strong public policy in favor of consumer class actions when it declined to enforce an outbound forum selection clause in *America Online, Inc. v. Superior Court of Alameda County,* 90 Cal. App. 4th 1 (2001) ("*America Online*"). In *America Online*, the plaintiff brought a putative class action in California alleging that internet service provider AOL had continued to charge consumers monthly subscription fees even after they had

---

[3] The court went on to explain that while "multiple litigation (joinder, intervention, consolidation, the test case)" can, in some ways, serve as an alternative to class actions, such alternatives "do not sufficiently protect the consumer's rights" because they "presuppose a group of economically powerful parties who are obviously able and willing to take care of their own interests individually through individual suits or individual decisions about joinder or intervention." *Id.*

-5-

1    cancelled their subscriptions. 90 Cal. App. 4th at 5. The plaintiff raised various

2    common law and statutory claims, one of which was for violations of the CLRA.

3    *Id.*

4         The Court of Appeal rejected AOL's attempt to enforce a forum-selection

5    clause that would have required litigation in Virginia, where the plaintiff would be

6    prohibited from asserting their claims on a class-wide basis. *Id.* at 15–17. Critically,

7    the court explicitly recognized *two separate public policy bases* for its decision.

8    *First*, the Court of Appeal described how "the right to seek class action relief in

9    consumer cases has been extolled by California courts," quoting the "memorable

10   prose" from *Vasquez* recognizing California's strong public policy in favor of

11   consumer class actions. *Id.* at 17. On this basis, the court held that "[t]he

12   unavailability of class action relief in this context *is sufficient in and by itself* to

13   preclude enforcement of the TOS forum selection clause." *Id.* at 18 (emphasis

14   added). *Second*, the court in *America Online* explained that the limitations in

15   Virginia's consumer protection law as compared to California's law—specifically,

16   the availability of injunctive relief and other remedies under California's consumer

17   protection laws that were not available under Virginia law—also precluded the

18   enforcement of the forum selection clause. *Id.* at 18. "Quite apart from" the

19   unavailability of class action procedures (and injunctive relief), "the cumulative

20   importance of" the substantive differences in law "would itself violate important

21   California public policy." *Id.* at 18.

22        A few years later, confronted with AOL's same forum-selection clause, the

23   Ninth Circuit hewed to the reasoning in *America Online*, refusing to enforce the

24   clause based on the same two—independent—public policy grounds: (1) the

25                                           -6-

"California public policy that strongly favors consumer class actions," and (2) "the anti-waiver provisions of the [CLRA] . . . as well as California's 'strong public policy' to 'protect consumers against unfair and deceptive business practices.'" *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083-84 (9th Cir. 2009) (quoting *America Online*, 108 Cal. Rptr. 2d. at 712). Thus, as this Court recognized in its FNC Order, the court in *America Online* based its decision on two *independent* public policy rationales, and "explicitly stated that '[t]he unavailability of class action relief in this context is sufficient in and by itself to preclude enforcement of the . . . forum selection clause.'" Dkt. 117 at 11 (citing *America Online*, 90 Cal. App. 4th at 18).

### 2. *EpicentRx II* did not address, let alone disturb, California's public policy favoring consumer class actions.

On July 21, 2025, the California Supreme Court issued its decision in *EpicentRx, Inc. v. Superior Court*, No. S282521, 2025 WL 2027272 (July 21, 2025) ("*EpicentRx II*"). The case arose from a business dispute between corporate entities and involved a forum-selection clause requiring litigation in the Delaware Court of Chancery—which does not provide civil jury trials. *Id*. at *1. The Court framed the question narrowly: "whether the lower courts were correct to decline enforcement of the forum selection clause on public policy grounds based *solely* on the clause's impact on plaintiff's jury trial right." *Id*. at *13 (emphasis added). Confining its analysis to the jury-trial provisions in the California Constitution and § 631, the Court held that while those provisions imposed "limitations on courts operating in this forum" they did not reflect "a public policy against predispute jury trial waivers writ large, untethered to their enforcement in a California forum." *Id*. at *12. In so holding, it distinguished the portion of *America Online* in which the court had articulated its *second* public policy rationale: the express statutory anti-waiver

-7-

provision of the CLRA. *E.g.*, *EpicentRx II* at \*12–13. Rejecting the plaintiffs'

attempts to analogize § 631 to the CLRA, the *EpicentRx II* court found that because

§ 631 did not contain an explicit anti-waiver provision, the same reasoning did not

apply. But *EpicentRx II* left undisturbed California's strong public policy favoring

consumer class actions—as described in *Vasquez*, *America Online*, and *Doe*—

specifically declining to "consider the merits" of *America Online* "or similar cases

involving potentially unwaivable substantive rights." *Id*. at \*13 n.7.

Ignoring this clear distinction between the two different public policy

rationales, Fenix asserts that *EpicentRx II* "held" that "California's public policy

favoring consumer class actions applies only when the plaintiff asserts claims

covered by a statute that voids contracts diminishing the plaintiff's statutory rights."

Mot. at 1. That is incorrect. *EpicentRx II* did not involve a class action, did not

analyze California's consumer class-action policy, and did not disturb controlling

decisions recognizing that policy as a basis to refuse enforcement of an FSC.

Fenix argues that "*EpicentRx II* made clear that *America Online* applies only

when the plaintiff asserts statutory claims subject to a CLRA-like statutory anti-

waiver provision." Mot. at 9. But that argument is contradicted by the

*EpicentRx II* decision itself, where the court was careful to limit its reasoning to

cases where the absence of a jury trial in the selected forum was *the sole* public

policy issue under consideration: "[W]e consider in this matter only whether the

lower courts were correct to decline enforcement of the forum selection clause on

public policy grounds *based solely* on the clause's impact on plaintiff's jury trial

right." *EpicentRx II* at \*13 (emphasis added).

### 3. California public policy need not be rooted in a statute or constitutional provision in order to serve as a basis for refusing to enforce a forum-selection clause.

Fenix's argument rests frequently on the incorrect premise that a public policy must be rooted in statute or the Constitution to bar enforcement of an FSC. For example, Fenix asserts that *EpicentRx II* "makes clear" that courts are "reluctant to decline enforcement" of an FSC "especially where no statute or constitutional provision speaks to the issue," and contends that *America Online* and *Doe* "turned on" the CLRA's statutory anti-waiver provision. Mot. at 9–10, 14.

That is not the law. The language Fenix seizes on appears in *EpicentRx II*'s general caution about the "delicate and undefined" power to void contracts—it did not announce any new requirement that public policy be statutory. Indeed, the *EpicentRx II* court expressly preserved the *America Online* and *Doe 1* line of cases resting on judicially declared policies. The Ninth Circuit has made clear that "[p]ublic policy grounds for declining to enforce a forum-selection clause need not be codified in statute" and may instead be "judicially declared." *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084–85). California courts have said the same: "[P]ublic policy may be found in … judicial decisions as well as in constitutions and statutes." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005). Nothing in *EpicentRx II*—a corporate contract dispute involving no consumers and no class action—purports to disturb this settled rule.

### 4. Because it only affects one of two independent rationales, *EpicentRx II* does not alter the outcome of this Court's FNC Order.

Where an order rests on "two separate and independent" grounds, eliminating one does not compel a different result. *See Massachusetts v. United States*, 333 U.S. 611, 623 (1948) ("Where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum, and each is the judgment of the court and of equal validity with the other."); *California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1323 (9th Cir. 1985) ("Because either ground independently supports the judgment, we may affirm on the basis of either."); *United States v. Woodbury*, 263 F.2d 784, 788 (9th Cir. 1959) (where an order rests on two independent grounds, "even if one of the two grounds were erroneous, the judgment must be affirmed on the other ground.")

Here, the Court's FNC Order rested on two distinct public-policy determinations, either of which was sufficient to deny Fenix's FNC Motion. Not only that, but the Court explicitly described the two public policy grounds as "independent and alternative" bases for its ruling. Dkt. 117 at 13. The first concerned California's public policy regarding predispute jury trial waivers; the second concerned California's public policy favoring consumer class actions. Because *EpicentRx II*—a corporate contract dispute involving no consumers and no class action—addressed only the jury-trial rationale, the class-action rationale remains untouched and independently sustains the FNC Order.

Fenix all but ignores the Court's own language—eliding the distinction between the two distinct public-policy determinations to suggest (misleadingly) that both grounds must be based on a "CLRA-like anti-waiver provision voiding

-10-

contracts that would diminish Plaintiffs' ability to bring a California-style class action." Mot. at 10.

Nor does Fenix challenge this Court's factual findings further supporting the conclusion that requiring California Plaintiffs to litigate in England or Wales would deprive them of substantive rights by preventing them from bringing their claims as a class action. *See* Dkt. 117 at 11 ("The court finds that the limitations on class actions identified by Plaintiffs would 'substantially diminish' the rights of California residents to bring consumer class actions.") (quoting *EpicentRX*, 95 Cal. App. 5th at 899).

Because the class-action rationale is untouched by *EpicentRx II* and amply supported by precedent and factual findings, it continues to warrant the denial of Fenix's Motion.

**5.    *EpicentRx II*  reaffirms this Court's discretion in weighing various public policies.**

In the *forum non conveniens* context, trial courts retain discretion to weigh public-policy factors and are not compelled to change course based on a partial shift in law. *See Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (public policy weighing is case-specific and entrusted to trial court discretion.) The Ninth Circuit has emphasized that public-policy determinations in this context are "case-specific" and "entrusted to the trial court's discretion." *Id*. It has likewise recognized that the "weight to be given to a state's public policy" in enforcing or declining to enforce an FSC "is for the trial court to determine." *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 (9th Cir. 2022).

Fenix's Motion never engages with the fact that whether to enforce an FSC contrary to public policy is committed to the trial court's discretion, but that principle alone is fatal to Fenix's request: this Court has already exercised its discretion on a fully developed record, and nothing in *EpicentRx II* undermines that judgment.

**B.    Fenix fails to meet its burden for reconsideration because *EpicentRx II* is not a material, outcome-determinative change in law.**

**1.    Fenix fails to show a material change in the law that would support reconsideration.**

Civil Local Rule 7-18 permits reconsideration only where there is "a material difference in fact or law" from that presented before the decision, or "a change of law" occurring afterward. *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1117; *Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*, 215 F.R.D. 581, 583; *Planned Parenthood of the Great Nw. & the Hawaiian Islands v. Wasden*, 564 F. Supp. 3d 895, 901 ("did not change the applicable … standard," and therefore "did not alter [the] Court's prior ruling").

As shown in Section III.A, *EpicentRx II* was a corporate contract dispute involving no consumers and no class action. It addressed only the jury-trial rationale, leaving untouched the class-action rationale that this Court identified as an independent basis for denying enforcement. Fenix identifies no change in law beyond *EpicentRx II*, and no new facts.[4] This Court's class-action rationale is grounded both in binding California and Ninth Circuit authority (*Vasquez*, *America*

---

[4] Any legal theories or authorities it now invokes, apart from *EpicentRx II*, could have been raised in its original FNC Motion or reply. *See* Civil Local Rule 7-18(a)'s requirement that the moving party must also show that the material difference or change "could not with reasonable diligence have been known" before the decision.

-12-

*Online*, *Doe 1*, *Gemini*) and in the Court's factual findings about the "significant limitations" California consumers would face trying to bring class action suits in English or Welsh courts (Dkt. 117 at 12–13). Because those findings and the governing law remain unchanged, reconsideration is unwarranted.

### 2.    Reconsideration is discretionary

Even when a change in law is alleged, whether to grant reconsideration is within the trial court's sound discretion. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (public-policy determinations in FSC enforcement are "case-specific" and "entrusted to the trial court's discretion").

The Court's class-action rationale is rooted in case-specific factual findings and the Court's evaluation of the burdens imposed on California consumers by litigating in England/Wales. Those determinations, and the public-policy balancing they inform, are matters the Ninth Circuit has recognized fall squarely within the trial court's discretion.

### C.    Fenix has not met the stringent standard to certify interlocutory appeal under 28 U.S.C. § 1292(b).

Section 1292(b) authorizes interlocutory appeal only when the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and…an immediate appeal…may materially advance the ultimate termination of the litigation." These requirements are jurisdictional and must be strictly construed. *See United States v. Woodbury*, 263 F.2d 784, 787–88 (§ 1292(b) intended for "exceptional cases" where resolution of the legal question will control the outcome). Fenix fails to establish any of those elements.

### 1.    There is no controlling question of law.

Because interlocutory review requires that the challenged order involve a "controlling question of law," interlocutory review is inappropriate where the judgment can be affirmed on unaffected, alternative grounds. *See Woodbury*, 263 F.2d at 788.

Fenix cannot satisfy the first requirement. Again, as explained previously in Section III.A, the Court's FNC Order rests on two "independent and alternative" bases. Dkt. 117 at 13. Even if the Ninth Circuit were to adopt Fenix's reading of *EpicentRx II* and reverse the jury-trial rationale, the class-action rationale would remain and independently sustain the order.

### 2.    There is no substantial ground for difference of opinion.

A substantial ground for difference of opinion exists only where there is genuine uncertainty in controlling law. Courts applying § 1292(b) have repeatedly rejected certification of interlocutory appeals where the asserted disagreement is over application of existing law rather than its content. *See Loritz v. CMT Blues*, 271 F. Supp. 2d 1252, 1256 (S.D. Cal. 2003) (rejecting certification where the issue was application of established law to case-specific facts).

Here, there is no uncertainty as to the controlling law. *EpicentRx II* did not address—much less disturb—California's class-action public policy as articulated in *Vasquez*, *America Online*, and *Doe 1*. Fenix's proposed "difference" does not reflect an actual conflict in authority—simply Fenix's own disagreement with how this Court applied settled law to the facts found in the FNC Order.

### 3.    Immediate appeal would not materially advance the termination of this litigation.

Section 1292(b) allows an immediate appeal only where it would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b)—not where an interlocutory appeal could at most narrow the case but would not resolve it. *See e.g.*, *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 958 (N.D. Cal. 2019) (refusing to certify an interlocutory appeal where "even if [certain claims] were terminated at this juncture, Plaintiffs' other claims are still pending and litigation would go forward regardless.").

Here, even if the Ninth Circuit adopted Fenix's position on the jury-trial rationale, the class-action rationale would sustain the denial of the FNC Motion, and the case would proceed in this Court. Moreover, as argued in more detail in Plaintiffs' Oppositions to Defendants' Motions to Dismiss, the Agency Defendants are not parties to the FSC, and claims against them would remain here regardless.[5]

Because the litigation would continue in any event, an interlocutory appeal would not eliminate the need for further proceedings or conserve judicial resources. Section 1292(b) is not satisfied where an immediate appeal could at most narrow one issue while leaving the remainder of the case untouched. *See In re Pacific Gas & Elec. Co.*, 280 B.R. 506, 522 (N.D. Cal. 2002) (exceptional circumstances required for § 1292(b) certification).

Moreover, forum non conveniens rulings that turn on the balancing of public- and private-interest factors are inherently fact-bound and discretionary, not "pure" legal questions appropriate for interlocutory review. *See City of San Diego v.*

---

[5] *See supra*, n. 1.

*Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018) (mixed fact-law determinations are not suitable for § 1292(b) review).

## IV.    CONCLUSION

Fenix has not shown that *EpicentRx II* undermines this Court's independent rationale based on California's public policy favoring consumer class actions. That rationale remains binding under California Supreme Court, California appellate, and Ninth Circuit precedent, and it is amply supported by this Court's factual findings. Nor has Fenix met the exacting requirements for certification under 28 U.S.C. § 1292(b). Because neither reconsideration nor interlocutory review is warranted, the Motion should be denied in its entirety.


DATED:  August 11, 2025          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

1

2 Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
3 301 N. Lake Avenue, Suite 920
Pasadena, California 91101
4 Telephone: (213) 330-7150
Facsimile: (213) 330-7152
5 Email: christopherp@hbsslaw.com

6
Andrea R. Gold (*pro hac vice*)
7 David A. McGee (*pro hac vice*)
Shana H. Khader (*pro hac vice*)
8 TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
9 Washington, DC 20006
Phone: (202) 973-0900
10 Facsimile: (202) 973-0950
Email: agold@tzlegal.com
11         dmcgee@tzlegal.com
12         skhader@tzlegal.com

13 Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
14 1717 K Street NW, Suite 900
Washington, DC 20006
15 Phone: (202) 349-9864
Facsimile: (215) 540-2643
16 Email: kvernon@timoneyknox.com

17
Andrew C. Stone (*pro hac vice*)
18 Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
19 2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
20 Phone: (602) 735-2691
Facsimile: (602) 926-2471
21 Email: stone.andy@dorsey.com
22         goertz.seth@dorsey.com

23 *Counsel for Plaintiffs*

24

25
-17-

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,188 words which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: August 11, 2025

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey

PLS.' RESP. IOT FENIX DEFS.' MOT. FOR RECONSIDERATION