JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated, | CASE NO.: 8:24-cv-01655-FWS-SSC |
| Plaintiffs, | **(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE; and** |
| v. | |
| FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC, | **(2) DECLARATION OF OR-EL VAKNIN IN SUPPORT (filed under separate cover).** |
| Defendants. | Judge:        Hon. Fred W. Slaughter |
| | Courtroom:  10D |
| | Date:         September 4, 2025 |
| | Time:         10 a.m. |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................ii

PRELIMINARY STATEMENT RE: USE OF AI ......................................1

ARGUMENT ...............................................................................................3

I.   PLAINTIFF R.M. FAILS TO PLEAD VENUE.....................................3

II.  THE COURT LACKS PERSONAL JURISDICTION OVER FENIX...3

   A.  The Court Does Not Have Jurisdiction Under RICO ...................3

      1.  Section 1965(b) Does Not Give the Court Personal
          Jurisdiction..........................................................................3

      2.  Section 1965(d) Does Not Give the Court Personal
          Jurisdiction..........................................................................4

   B.  Due Process Prohibits Exercising Personal Jurisdiction Over
       Fenix..............................................................................................5

      1.  The Court Does Not Have General Jurisdiction.................5

      2.  The Court Does Not Have Specific Jurisdiction ...............5

         (a)  Plaintiffs Cannot Show Purposeful Direction or
              Availment .....................................................................5

         (b)  Plaintiffs' Claims Do Not Arise Out of Fenix
              Internet's Allegedly Forum-Related Contacts ..........6

III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX.............7

   A.  Plaintiffs Cannot Refute That Section 230 Bars Their Claims......7

   B.  Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims ........12

   C.  Plaintiffs' VPPA Arguments Rest On Invented Authority And
       Thus Fail .......................................................................................13

   D.  Plaintiffs Cannot Save Their CIPA Claim....................................14

   E.  Plaintiffs Fail to Plead a Claim Under Penal Code §502............16

   F.  Plaintiffs Fail to Plead a Breach of Contract Claim ...................17

   G.  Plaintiffs Cannot Save Their Fraud, Deceit, FAL or UCL
       Claims ...........................................................................................18

CERTIFICATE OF COMPLIANCE............................................................22

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Apple & AT&T iPad Unlimited Data Plan Litigation*,
    802 F.Supp.2d 1070 (N.D. Cal. 2011) ...................................................... 19

*Archer v. NBCUniversal Media, LLC*,
    No. 2:24-CV-10744-AB-JC,
    2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) ............................ 13, 14

*Baldwin-Kennedy v. Meta Platforms Inc.*,
    No. 23-cv-06615-HSG,
    2025 WL 1935433 (N.D. Cal. June 5, 2025) ............................................. 18

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .................................................... 11, 18

*BNSF Railway Co. v. Tyrrell*,
    581 U.S. 402 (2017) ....................................................................... 5

*Bogard v. TikTok Inc.*,
    No. 24-cv-03131-VKD,
    2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ............................................ 11

*Briskin v. Shopify, Inc.*,
    135 F.4th 739 (9th Cir. 2025) ........................................................... 6

*Brown v. Google LLC*,
    685 F.Supp.3d 909 (N.D. Cal. 2023) ................................................... 17

*Burke v. Olden*,
    No.: 8:22-cv-01666-FWS-JDE,
    2023 WL 4157456 (C.D. Cal. May 24, 2023) ........................................... 3

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
    788 F.2d 535 (9th Cir. 1986) ........................................................... 3

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ................................................... *passim*

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ...................................................................... 2

*Cory v. Aztec Steel Building, Inc.*,
    468 F.3d 1226 (10th Cir. 2006) .................................................................. 4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...................................................................................... 5

*Doe 1 v. Fenix International Ltd.*,
    No. 24-cv-03713-CRB,
    2024 WL 5505192 (N.D. Cal. Nov. 22, 2024) .......................................... 6

*Doe 1 v. Twitter, Inc.*,
    --- F.4th ---, No. 24-177,
    2025 WL 2178534 (9th Cir. Aug. 1, 2025) ................................................ 8

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) ................................................................... 8

*Doe v. Roblox Corp.*,
    602 F.Supp.3d 1243 (N.D. Cal. 2022)............................................. 1, 17, 20

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ................................................................... 7

*Estate of Bride v. Yolo Technologies, Inc.*,
    112 F.4th 1168 (9th Cir. 2024) .......................................................... 7, 8, 12

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
    402 F.Supp.3d 767 (N.D. Cal. 2019)....................................... 1, 14, 16, 17

*Gilbert v. Bank of America*,
    No. C 13–01171 JSW,
    2014 WL 4748494 (N.D. Cal. Sept. 23, 2014)......................................... 4

*In re Google Inc. Gmail Litigation*,
    No. 13–MD–02430–LHK,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ................................... 14, 15

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
    709 F.Supp.3d 1007 (C.D. Cal. 2023)....................................................... 17

*In re Hulu Privacy Litigation*,
    86 F.Supp.3d 1090 (N.D. Cal. 2015)......................................................... 14

*In re JUUL Labs, Inc., Marketing, Sales Practices, & Products Liability Litigation*,
    497 F.Supp.3d 552 (N.D. Cal. 2020)...................................................................18, 19

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ...............................................................................................20

*Lacey v. State Farm General Insurance Co.*,
    No. 2:24-cv-05205-FMO-MAA,
    2025 WL 1363069 (C.D. Cal. May 6, 2025)...........................................................2

*Lakes v. Ubisoft, Inc.*,
    777 F.Supp.3d 1047 (N.D. Cal. 2025)......................................................................15

*Laurel Gardens, LLC v. McKenna*,
    948 F.3d 105 (3d Cir. 2020) .......................................................................................4

*Mata v. Avianca, Inc.*,
    678 F.Supp.3d 443 (S.D.N.Y. 2023) .........................................................................2

*Mavy v. Commissioner of Social Security*,
    No. CV-25-00689-PHX-KML (ASB),
    2025 WL 2355222 (D. Ariz. Aug. 14, 2025) ...........................................................2

*Mendoza v. Amalgamated Transit Union International*,
    30 F.4th 879 (9th Cir. 2022) .....................................................................................18

*Mir v. Greines, Martin, Stein & Richland*,
    No. 2:14–4132–CAS(FFMx),
    2015 WL 4139435 (C.D. Cal. Jan. 12, 2015),
    *aff'd*, 676 F. App'x 699 (9th Cir. 2017) ...................................................................4

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .......................................................................................20

*Muto v. Fenix International Ltd.*,
    No. 5:22-cv-02164-SSS-DTBx,
    2024 WL 2148734 (C.D. Cal. May 2, 2024)...........................................................6

*Nichols v. Walmart, Inc.*,
    No. CV 124-236,
    2025 WL 1178592 (S.D. Ga. Apr. 23, 2025) ...........................................................2

*O'Brien v. Flick*,
    No. 24-61529-CIV-DAMIAN,
    2025 WL 242924 (S.D. Fla. Jan. 10, 2025) ........................................................ 2

*Opperman v. Path, Inc.*,
    84 F.Supp.3d 962 (N.D. Cal. 2015) .................................................................... 14

*Penthouse Global Media, Inc. v. Guccione Collection, LLC*,
    No. CV 17-4980 PA (FFMx),
    2017 WL 10434392 (C.D. Cal. Nov. 27, 2017) .................................................. 7

*People v. Childs*,
    220 Cal.App.4th 1079 (2013) ............................................................................. 16

*People v. McKale*,
    25 Cal. 3d 626 (1979) ......................................................................................... 20

*Poston v. General Motors, LLC*,
    No. 24-cv-0082-BAS-JLB,
    2024 WL 3558377 (S.D. Cal. July 22, 2024) .............................................. 19, 20

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ................................................................................... 4

*R.C. v. Walgreen Co.*,
    733 F.Supp.3d 876 (C.D. Cal. 2024) ................................................................. 15

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    No. 2:24-cv-06525-WLH-E,
    2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ................................................... 15

*Snyder v. G6 Hospitality LLC*,
    No. 5:24-cv-02423-AH-(SHKx),
    2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) ................................................... 14

*Stephen McCarthy, P.A. v. DEA*,
    No. 24-2704,
    2025 WL 2028399 (3d Cir. July 21, 2025) .......................................................... 2

*In re Vizio, Inc., Consumer Privacy Litigation*,
    238 F.Supp.3d 1204 (C.D. Cal. 2017) ............................................................... 16

v

**STATUTES AND CODES**

18 U.S.C. §1965 ................................................................................................... 3, 4

28 U.S.C. §1391 ...................................................................................................... 3

28 U.S.C. §1406 ...................................................................................................... 7

Cal. Penal Code §502 ....................................................................................... 16, 17

**NON-EXISTENT AUTHORITIES CITED BY PLAINTIFFS**

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
     2011 WL 4538422 (W.D. Wash. Jan. 3, 2011) ...................................... 1, 4

*Doe v. Match Group*,
     2022 WL 4551660 (C.D. Cal. Aug. 12, 2022) ...................................... 1, 3

## PRELIMINARY STATEMENT RE: USE OF AI

Plaintiffs' Opposition ("Opp'n") proves that Fenix's Motion should be granted.[1] Although Plaintiffs had two months to craft their 11,515-word brief, they were evidently unable to find legitimate legal authorities supporting their arguments. On at least 20 occasions, Plaintiffs' Opposition cites imaginary caselaw, quotes invented language in real cases, summarizes non-existent court holdings and analysis, or responds to arguments Fenix did not make. (*See* Declaration of Or-el Vaknin (compiling examples).) For example, Plaintiffs:

- cite "*Doe v. Match Group*, 2022 WL 4551660 (C.D. Cal. Aug. 12, 2022)" (Opp'n 13) and quote "*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 4538422, at *8 (W.D. Wash. Jan. 3, 2011)" (Opp'n 11)—decisions that do not exist. There is a case called *Cascade Yarns*, but none of its orders on Westlaw use that identification number, and no federal case contains the "quoted" language;

- describe the Ninth Circuit's VPPA analysis in *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024), where no VPPA claim was asserted (Opp'n 31);

- claim *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767 (N.D. Cal. 2019) held "CDAFA covers economic harm tied to unauthorized data use," when there was no CDAFA claim at issue (Opp'n 37); and

- claim *Doe v. Roblox Corp.*, 602 F.Supp.3d 1243 (N.D. Cal. 2022) "allow[ed a] breach claim where platform failed to enforce its own safety rules" (Opp'n 19), when the decision did not involve "safety rules" and the breach claim was "not viable." *Roblox*, 602 F.Supp.3d at 1252 n.3, 1264.

The Opposition's widespread use of illegitimate citations suggests that Plaintiffs: (1) outsourced part or all of their legal research to a generative artificial intelligence program; (2) failed to review and correct resulting errors; and (3) failed to tell the Court that they were using AI software in submissions certified under Rule 11. "By repeatedly

---

[1] Capitalized terms carry the same meaning they had in Fenix's Rule 12 motion (ECF 121, "Motion" or "Mot."). Unless otherwise noted, all emphases are added, and all citations, alterations, and internal quotation marks are omitted from all quoted material.

citing th[e] Court to non-existent cases and to actual cases that d[o] not support the
propositions for which they were cited, Counsel failed to conduct any review whatsoever
that those cases were valid or that the arguments [they were] making were legally tenable."
*Mavy v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2355222, at *6, 9-10 (D. Ariz. Aug. 14,
2025) (striking brief citing nonexistent cases or holdings, among other sanctions).

Plaintiffs' conduct was wrongful. Filing briefs "without taking the necessary care in
their preparation" is an "abuse of the judicial system." *Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 398 (1990); *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 461 (S.D.N.Y. 2023)
("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an
abuse of the adversary system."). That is why this Court provides clear instructions in its
model civil standing order that "[a]ny party who uses generative artificial intelligence… to
generate any portion of a… filing must attach to the filing a separate declaration disclosing
the use of artificial intelligence and certifying that the filer has reviewed the source material
and verified that the artificially generated content is accurate."[2] As another court in this
District held in similar circumstances: "The initial, undisclosed use of AI products to
generate the first draft of the brief was flat-out wrong. Even with recent advances, **no
reasonably competent attorney should out-source research and writing to this
technology** – particularly without any attempt to verify the accuracy of that material."
*Lacey v. State Farm General Insurance Co.*, 2025 WL 1363069, at *3 (C.D. Cal. May 6,
2025) (striking briefs that cited AI-generated cases, among other sanctions).[3]

Fenix had to spend real time and money figuring out how to respond to the
hallucinations in Plaintiffs' Opposition. Now the Court must expend resources to address
it too. *See Mata*, 678 F.Supp.3d at 448-49 (describing the "[m]any harms" that "flow from

---

[2]    https://www.cacd.uscourts.gov/sites/default/files/documents/FWS/AD/Civil%20
Standing %20Order%20UPDATED%2009-23-2024.pdf (last visited Aug. 18, 2025).

[3]    *See also Stephen McCarthy, P.A. v. DEA*, 2025 WL 2028399, at *3 (3d Cir. July 21,
2025) (declining to consider AI-hallucinated portions of brief); *Nichols v. Walmart, Inc.*,
2025 WL 1178592, at *2 (S.D. Ga. Apr. 23, 2025) (dismissing case "as a sanction for
Plaintiff's use of fake case citations"); *O'Brien v. Flick*, 2025 WL 242924, at *6-7 (S.D.
Fla. Jan. 10, 2025) (dismissing case and striking filing).

1   the submission of fake" caselaw). The remainder of this brief refutes Plaintiffs' arguments
2   and authority (real and imagined) and shows the Court should dismiss Plaintiffs' claims.

3   **ARGUMENT**

4   **I.   PLAINTIFF R.M. FAILS TO PLEAD VENUE**

5       Plaintiff R.M. cannot show that venue is proper pursuant to 28 U.S.C. §1391(b)(2)
6   because he lives in the Eastern District of California, and does not plead that "significant
7   events or omissions material to [his] claim… occurred" in this District. *Burke v. Olden*,
8   2023 WL 4157456, at *3 (C.D. Cal. May 24, 2023); (Mot. 20).

9       R.M. does not even attempt to show otherwise. Instead, he argues that Fenix's venue
10  argument is an attempt to enforce the Forum-Selection Clause in OnlyFans' Terms. (Opp'n
11  13.) This is incorrect. Fenix's venue argument is based on Plaintiffs' failure to satisfy the
12  legal standard for invoking §1391(b)(2), not the Forum-Selection Clause. (Mot. 20.)
13  Moreover, R.M. attempts to support his irrelevant argument by citing "*Doe v. Match*
14  *Group*, 2022 WL 4551660 (C.D. Cal. Aug. 12, 2022)," for the proposition "public policy
15  weighs against transfer where the gravamen of the action is fraud." (Opp'n 13.) But *Doe* is
16  an AI hallucination; the Westlaw identification number is fake, and there is no case by that
17  name in any federal court. Thus, R.M. fails to provide any basis to avoid dismissal.

18  **II.   THE COURT LACKS PERSONAL JURISDICTION OVER FENIX**

19      **A.   The Court Does Not Have Jurisdiction Under RICO**

20          **1.   Section 1965(b) Does Not Give the Court Personal Jurisdiction**

21      Plaintiffs cannot invoke §1965(b)'s nationwide service of process provision because
22  they do not "allege a single nationwide RICO conspiracy" involving all Defendants acting
23  in concert. *See Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539
24  (9th Cir. 1986); (Mot. 2-3.)

25      Plaintiffs' Opposition repeatedly asserts that "Plaintiffs allege a single, coordinated
26  scheme in which the Fenix Defendants and Agency Defendants acted in concert," but never
27  identifies any allegations substantiating that claim. (Opp'n 10-12.) That is because the FAC
28  does not plead a single fact even hinting that the various Defendants acted as part of a

3

common plan or enterprise. (Mot. 2-3.) At best, Plaintiffs allege individual Agency Defendants utilized OnlyFans to deceive Fans, not that Fenix coordinated with the Agency Defendants, or that the Agency Defendants coordinated with each other. (*Id.*) As a result, Plaintiffs cannot invoke §1965(b). *See Gilbert v. Bank of America*, 2014 WL 4748494, at *4-5 (N.D. Cal. Sept. 23, 2014) (no jurisdiction where plaintiffs alleged that two groups of defendants were connected with a third defendant, but not each other).

Plaintiffs cite "*Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 4538422, at *8 (W.D. Wash. Jan. 3, 2011)," for the proposition that "an agreement may be inferred from the specific acts and relationships alleged." (Opp'n 11.) But this appears to be another AI hallucination. There is a case by that name with 43 orders on Westlaw, but none uses the Westlaw identification number Plaintiffs gave. And none of those orders (or any other case, to Fenix's knowledge) contains the language Plaintiffs purport to quote.

## 2.    <u>Section 1965(d) Does Not Give the Court Personal Jurisdiction</u>

Plaintiffs cannot invoke 18 U.S.C. §1965(d) as a basis for personal jurisdiction over Fenix because that provision does not permit nationwide service of a summons. (Mot. 4.) Plaintiffs offer no argument in response. Instead, they state in a footnote the Fourth and Eleventh Circuits previously invoked §1965(d) (without analysis) as authorizing nationwide service of a summons, and state the "Court need not resolve" whether those decisions were correct. (Opp'n 12 n.12.) But every court of appeals that has actually analyzed §1965(d) has disagreed with the Fourth and Eleventh Circuits and held §1965(d) is not a method to obtain personal jurisdiction. *See Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117-20 (3d Cir. 2020); *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998); *Mir v. Greines, Martin, Stein & Richland*, 2015 WL 4139435, at *12 n.15 (C.D. Cal. Jan. 12, 2015). The Court should follow those well-reasoned decisions and reject Plaintiffs' attempt to rely on §1965(d).

**B.**    **Due Process Prohibits Exercising Personal Jurisdiction Over Fenix**

**1.**    **The Court Does Not Have General Jurisdiction**

Plaintiffs admit neither FIL nor Fenix Internet is incorporated, organized, or headquartered in California. (FAC ¶39; ECF60-1, ¶7.) That all but ends the general jurisdiction inquiry, as the only time the Supreme Court has recognized general jurisdiction outside of the places where the company was incorporated, headquartered, or consented to such jurisdiction was a case where the company moved its headquarters to Ohio while the Philippines was occupied during World War II. *Daimler AG v. Bauman*, 571 U.S. 117, 129, 139 n.19 (2014).

Plaintiffs argue Fenix are subject to general jurisdiction in California because FIL earns revenue from California consumers, and a California-based agency and Creator hosted a promotional event in Florida using OnlyFans merchandise. (Opp'n 12-13.)[4] That does not show that Fenix are "at home" in California. *See, e.g.*, *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (no general jurisdiction over out-of-state corporation in Montana even though corporation had systematic infrastructure and operations and "more than 2,000 employees in Montana").

Plaintiffs also claim Fenix's ties to California "warrant additional jurisdictional discovery," (Opp'n 13), but no amount of discovery changes the fact that Fenix are incorporated and headquartered outside of California. Indeed, Plaintiffs' counsel since disavowed their argument as an irrelevant "red herring," stating "general jurisdiction— who cares?" (Vaknin Decl. Ex. A 23:12-17.)

**2.**    **The Court Does Not Have Specific Jurisdiction**

**(a)**    **Plaintiffs Cannot Show Purposeful Direction or Availment**

Plaintiffs point to the same facts to try to show both purposeful direction and purposeful availment. Their arguments lack merit.

***First***, Plaintiffs argue "Fenix deliberately targeted California through platform

---

[4]    Plaintiffs also point to an allegation that Fenix has personnel in California, but Fenix submitted evidence contradicting that allegation. (ECF60-1, ¶10.)

design, Creator onboarding, identity verification, and a payment infrastructure that monetized" OnlyFans' chat function. (Opp'n 5.) But those activities represent "the mere operation" of the OnlyFans website, which accepts Creators and payments from around the world. *See Muto v. Fenix International Ltd.*, 2024 WL 2148734, at *4 (C.D. Cal. May 2, 2024). As Judge Sykes and Judge Breyer have explained, and the Ninth Circuit affirmed in *Briskin*, offering a website to the world at large does not create jurisdiction in any place the website can be reached. *See id.*; *Doe 1 v. Fenix International Ltd.*, 2024 WL 5505192, at *6 (N.D. Cal. Nov. 22, 2024); *see also Briskin v. Shopify, Inc.*, 135 F.4th 739, 752 (9th Cir. 2025) (en banc) ("'[S]omething more' than mere passive nationwide accessibility [is] required to show express aiming at the forum state"). Plaintiffs do not address *Muto* or *Doe 1* even though they relied upon *Muto* in opposing Fenix's forum non conveniens motion.

**Second**, Plaintiffs trumpet instances where Fenix personnel attended conferences or filmed television shows in California. (Opp'n 6-7.) But those California contacts have nothing to do with this case. Plaintiffs admit the only contacts relevant to specific jurisdiction are those that allegedly "caused harm that the defendant knew would be suffered in the forum." (*Id.* 5.) Plaintiffs do not claim the conferences or television shows harmed them or have anything to do with their claims. As such, they are irrelevant to the specific jurisdiction analysis.

### (b)    Plaintiffs' Claims Do Not Arise Out of Fenix Internet's Allegedly Forum-Related Contacts

Fenix Internet is simply a payment processing entity. (FAC ¶ 42.) None of Plaintiffs' claims arise out of or relate to Fenix Internet's payment processing services, which means that there is no jurisdiction over Fenix Internet. (Mot. 7-8.)

Plaintiffs claim their "injuries stem directly from… the processing of payments from California-based Fans," but do not explain why. (Opp'n 8.) Instead, Plaintiffs quote *Briskin* for the proposition that a "claim arises out of a defendant's forum-related activities if it would not have occurred but for the defendant's contacts with the forum." (Opp'n 9.) But that is another AI hallucination. Neither *Briskin* nor any other federal case contains that

language. Because Plaintiffs fail to supply any reasoning or non-fabricated law in support of their arguments, the Court should hold that Fenix Internet is not subject to personal jurisdiction in California. *See, e.g.*, *Penthouse Global Media, Inc. v. Guccione Collection, LLC*, 2017 WL 10434392, at *5 (C.D. Cal. Nov. 27, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments or otherwise consented to granting the motion."). Moreover, Plaintiffs do not contest the argument that their claims against Fenix Internet should be transferred to the District of Delaware under 28 U.S.C. §1406 if not dismissed outright (Mot. 8), conceding that point as well.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX

### A.    Plaintiffs Cannot Refute That Section 230 Bars Their Claims

The Ninth Circuit has repeatedly established that Plaintiffs' claims are barred by §230. In *Calise*, cited by Plaintiffs, §230 barred fraud-based claims asserting Meta was "aware" of and "materially contributed" to the creation of fraudulent Facebook advertisements via Meta's "'assistance' for third-party advertisers" because "to avoid liability here, Meta… would need *to actively vet and evaluate third party ads*." 103 F.4th at 736-37, 743-45. Providing a platform for Creators to communicate with users—"a fundamental part of [Fenix's] business model and that of countless other internet companies—does not undo §230(c)(1)'s protections just because it could be misused by third parties." *Id*. at 745.

*Dyroff v. Ultimate Software Group., Inc.*, 934 F.3d 1093 (9th Cir. 2019) held §230 barred plaintiffs' claims that a social networking website connected users for improper purposes, and thus "contributed to the[ir] content," because the "content at issue" was posts "created and developed by [the deceased] and his drug dealer" and while the website "used features and functions, including algorithms, to analyze user posts" and make recommendations to other users, those were "tools meant to facilitate the communication and content of others," not "content in and of themselves." *Id*. at 1098-99.

In *Estate of Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168 (9th Cir. 2024), cited

by Plaintiffs, the Ninth Circuit affirmed this Court's dismissal of product liability claims arising from bullying posts by users on the defendant website because plaintiffs were "essentially faulting YOLO for not moderating content in some way, whether through deletion, change, or suppression." *Id*. at 1180. The Ninth Circuit reiterated "[n]o website could function if a duty of care was created *when a website facilitates communication, in a content-neutral fashion, of its users' content*." *Id*. at 1181.

*Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025), held §230 bars claims that "necessarily implicate [a website's] role as a publisher of third-party content" and "require [the website] to monitor third-party content and prevent [unlawful or fraudulent] communications." *Id*. at 1152–53. Plaintiffs counter that "Fenix's argument that it is merely 'facilitating communications among users' cannot be squared with the facts alleged" (Opp'n 22), ignoring their allegations that Fenix's "platform… *facilitates the communication of information between Fan and Creator accounts,*" among others. (FAC¶461; Mot. 9-10 (collecting allegations).)

Most recently, in *Doe 1 v. Twitter, Inc.*, ---F.4th---, 2025 WL 2178534 (9th Cir. Aug. 1, 2025), the Ninth Circuit held plaintiffs' claims alleging (like Plaintiffs here) that Twitter "monetize[d]" unlawful content were barred by §230 because "the only way for Twitter to avoid" liability "would be to remove third-party posts—a quintessential publishing activity" and "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune." *Id.* at *4.

Plaintiffs' claims run afoul of these decisions. As Plaintiffs put it: "[a]lthough Fenix's Terms… prohibit account sharing and impersonation, Plaintiffs allege that Fenix knowingly tolerates widespread violations of those rules" because "Fenix has *the ability to detect impersonation* through metadata anomalies, geolocation mismatches, and chat irregularities, yet it selectively enforces its policies and protects top-earning accounts." (Opp'n 3.) In other words, Plaintiffs' theory is Fenix should have—but did not—do more to moderate content on OnlyFans, exactly the kind of claims that *Calise*, *Dryoff*, *Bride*, *Grindr*, and *Twitter* prohibit. Indeed, each claim necessarily implicates Fenix's purported

failure to monitor and prevent Creators' use of third-parties to communicate with users:

- **Breach of Contract**: "[T]he FAC alleges that Fenix had full visibility into" Creators' use of third-parties "including irregular IP logins, chat volume anomalies, and metadata patterns associated with Agency-run accounts." (Opp'n 20);

- **RICO**: "Fenix maintains platform tools that allow third-party Chatters to impersonate Creators at scale" and "internal data and system access," which made Fenix "uniquely positioned to detect (and prevent) the use of Chatters" but "chose not to do so." (Opp'n 21-22);

- **Fraud and Deceit**: "Fenix provides tools to help Agencies manage impersonation at scale, selectively enforces its TOS to shield high-revenue impersonators," "makes sure the messages appear to come from the Creator and do not disclose that Chatters are operating behind the scenes," and "builds and profits from a system designed to create the illusion of real connection while hiding the impersonation behind it." (Opp'n 14, 23-24, 26);

- **FAL**: "Fenix had constructive and actual knowledge of" allegedly false statements "based on its extensive monitoring capabilities." (Opp'n 42);

- **VPPA**: Fenix "disclosed user-specific viewing histories to overseas Chatters hired to impersonate Creators." (Opp'n 27);

- **CIPA**: "Fenix is not only aware of the Agency Defendants' use of CRM software to intercept Plaintiffs' messages, but intentionally chooses not to police such activity." (Opp'n 35);

- **CDAFA**: "Fenix designed a platform that allowed impersonator[s]… to access Fan inboxes and message histories" and "tracked metadata revealing that accounts were being operated by" third-parties, "not individual Creators, yet it took no action to restrict access." (Opp'n 36);

- **UCL**: "Fenix actively enabled and profited from a system in which Agencies used low-wage workers… to impersonate Creators for financial gain," "knew

about these impersonations, facilitated them through its design choices and policy enforcement decisions," and "impersonation occurred through a platform that Fenix controlled and monetized, and in some cases involved the distribution of private communications and sensitive content to third parties," (Opp'n 39-40).

Plaintiffs' Opposition arguments lack merit.

***First***, Plaintiffs claim Fenix "ignore[]… the[ir] allegations" (Opp'n 16-17) but the allegations Plaintiffs repeatedly cite allege Fenix knew or "*should know* about the scams from monitoring [the] platform," because Fenix can "monitor the activity happening on Creator Accounts" (such as "the number of direct messages with Fans" of individual Creators) and "collects" data "sufficient to put [Fenix] on notice that Creator accounts are using" third-parties, including "track[ing] information on message traffic between Fans and Creator accounts." (*See* FAC¶¶7-9, 127-44, 153-59 (emphasis original).) Because Fenix "would need to actively vet and evaluate" Creators' posts and communications with users, §230 bars all Plaintiffs' claims. *Calise*, 103 F.4th at 744.

***Second***, Plaintiffs claim—contrary to their allegations—they are challenging Fenix's "direct statements and marketing efforts—not whether they published… third party content." (Opp'n 16-17, 19-20.) Plaintiffs allege a false "promise of 'authentic' one-on-one communication between Fans and Creators" and that Fenix "actively markets these 'direct' and '1-on-1' connections." (Opp'n 21, citing FAC¶¶91 (collecting Instagram and Twitter posts), 384-404 (same).)

To start, this argument effectively abandons Plaintiffs' VPPA, CIPA, and CDAFA claims, which have nothing to do with "direct statements and marketing efforts." (Opp'n 17.) The Court can dismiss those claims out of hand.

Plaintiffs' remaining claims are barred too. Courts routinely reject such efforts to characterize misrepresentation claims as somehow unrelated to "publishing" where, as here, "it appears that fulfillment of the duty [p]laintiffs say [d]efendants undertook in making the alleged representations would necessarily require [d]efendants to change how

1  they moderate content posted by third parties." *Bogard v. TikTok Inc.*, 2025 WL 604972,

2  at *18 (N.D. Cal. Feb. 24, 2025) (finding fraudulent misrepresentation claims barred by

3  §230). Here, Plaintiffs' claims that "OnlyFans markets itself as a platform for authentic,

4  direct communication… with a specific person[] whose identity is the core of the

5  transaction" (Opp'n 23)—require Fenix to moderate and verify Creators' posts on the

6  OnlyFans website to ensure users are not communicating with third-parties. "Unlike *Bride*,

7  where the representations at issue involved *banning or unmasking users* who posted

8  objectionable content—implicating duties other than those of a publisher—it is difficult to

9  see how Plaintiffs' misrepresentation claims treat [Fenix] as anything other than a

10  publisher… of third-party content." *Bogard*, 2025 WL 604972, at *18 (emphasis original).

11  Moreover, Fenix established that using Agency Defendants' services does *not*

12  violate OnlyFans' Terms, which state Creators may "have an agent, agency, management

13  company or other third party which assists [them] with the operation of [their] Creator

14  account (or operates it on [their] behalf)." (Mot. 17-18.) Fenix also showed the Terms

15  expressly "make no promises or guarantees about the accuracy" of "materials which

16  [Fenix] make accessible on OnlyFans," and do not guarantee "that [u]sers will achieve any

17  particular result or outcome from using such materials." (Mot. 10.)

18  ***Third***, to the extent Plaintiffs allege that Fenix falsely promised it was monitoring

19  Creators' accounts (FAC¶¶137-39), their own authority shows that allegation is not

20  enough. The Ninth Circuit has repeatedly held a "general monitoring policy… on the part

21  of an interactive computer service… does not suffice for contract liability" which "makes

22  it easy for" such a service "to avoid liability: *it need only disclaim any intention to be*

23  *bound*." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1108 (9th Cir. 2009) (cited by Plaintiffs).

24  Plaintiffs ignore Fenix's Terms, which expressly state Fenix "are not responsible for

25  reviewing or moderating Content," "cannot control and will not be responsible to

26  [Plaintiffs] for the use which other *[u]sers or third parties* make" of content Plaintiffs

27  upload to OnlyFans, and "*are under no obligation to monitor Content or to detect breaches*

28

1 *of the Terms*." (Mot. 10 n.3.)[5] Plaintiffs have no answer to the express language
2 undermining their claims, so they ignore it.

3    **B.    Plaintiffs Fail to Plead RICO or RICO Conspiracy Claims**

4    Plaintiffs do not state a RICO or RICO conspiracy claim because they fail to allege:
5 (1) the existence of a racketeering enterprise; or (2) that Fenix had a specific intent to
6 defraud. (Mot. 11; Moxy MTD §§III-IV.) Plaintiffs' contrary arguments lack merit.

7    ***First***, in their Agency Defendant-specific Opposition brief, Plaintiffs argue that they
8 have pled the existence of a RICO enterprise. Fenix joins the relevant portion of Defendant
9 Moxy's reply brief, which ably disposes of this argument. (*See* Moxy Reply §II.A.1.)

10    ***Second***, Plaintiffs claim several allegations in the FAC collectively show that Fenix
11 had a specific intent to defraud Fans. (Opp'n 21.) But most of the allegations Plaintiffs cite
12 describe how OnlyFans works, without alleging anything about Fenix's state of mind. (*Id.*)
13 Although Plaintiffs assert "Fenix knew about and collaborated with agencies perpetrating
14 [the alleged fraud], including through co-hosted promotional events" (*id.*), the allegation
15 they cite claims Fenix provided merchandise for one Creator's promotional event, not that
16 Fenix intentionally misled Fans about chats with Creators. (FAC¶6.) And Plaintiffs' own
17 brief describes the FAC as alleging Fenix was "uniquely positioned to detect (and prevent)"
18 the alleged fraud but "chose not to do so." (Opp'n 22.) Alleging Fenix chose not to "detect"
19 the Agency Defendants' alleged use of third-parties to manage Creator chats is the *exact*
20 *opposite* of alleging that Fenix had a specific intent to perpetuate that scheme.

21    ***Third***, Plaintiffs take issue with Fenix's purported "defense[] that the[] allegations
22 amount to mere omissions or passive indifference." (Opp'n 22.) But Fenix never made that
23 argument (Mot. 10-11), which again suggests improper use of AI to draft Plaintiffs' brief.

24 _____
25 [5]    For this reason, Plaintiffs' reliance on *Bride* and *Calise* is misplaced. Those courts
considered affirmative representations in defendants' terms promising to remove the
26 offending material and thus "manifested [defendants'] intent to be legally obligated to 'take
appropriate action'" outside of §230. *Calise*, 103 F.4th at 736, 743; *Bride*, 112 F.4th at
27 1173 (Yolo application "promis[ed]" new users "they would be 'banned for any
inappropriate usage,'" and those sending "harassing messages" would be "unmask[ed]").
28 Neither case involved an express disavowal of any duty to moderate or remove user or
third-party content, as Fenix showed here.

### C.    Plaintiffs' VPPA Arguments Rest On Invented Authority And Thus Fail

Plaintiffs concede Fenix's only alleged role in their imagined scheme is to "facilitate[]" disclosures by the Agency Defendants who "controlled the Creator accounts." (FAC¶¶112, 461; Opp'n 28-29.) That forecloses their VPPA claim because Plaintiffs never allege Fenix have "taken the affirmative act of disclosing" any PII to third-parties or had *actual knowledge of a specific disclosure* made by a Creator to an Agency. Moreover, the Terms expressly warned users that "[c]ontent may be viewed by individuals that recognise [their] identity" and, if Plaintiffs *themselves* disclosed information in their communications that enabled others to identify them, Fenix are "not in any way… responsible." (Mot. 11-13 & n.5 (collecting cases).) Plaintiffs do not refute, and therefore concede, those arguments.[6]

Fenix also collected cases establishing Plaintiffs' allegations—asserting the only PII purportedly disclosed to others was Fans' "communication history" with a Creator, which admittedly displays only "the Fan's username" (a "pseudonym[]" so Fans can "remain anonymous")—do not state a VPPA claim. (Mot. 12-13.) PII does not include information that "*cannot* identify an individual unless it is combined with other data" through a method "an ordinary person could not use," and courts routinely hold anonymous usernames are not PII where plaintiffs do not establish their "profile is publically accessible" and "includes sufficient identifying information." (*Id*.)

In opposition, Plaintiffs rely entirely on *Archer v. NBCUniversal Media, LLC*, 2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025), where defendant transmitted a "combination" of an "unencrypted" Facebook ID and "video titles and URLs" to Meta that was sufficient to identify plaintiffs. *Id*. at *9-11. But *Archer* acknowledged the disclosures would not constitute PII if "the information disclosed needed to be combined with other data to link plaintiffs' information to their identity"—precisely the case here. *Id*. at *10.

---

[6]    Plaintiffs spend pages arguing the Agencies are video service providers and Plaintiffs are "subscribers" to the Agencies, purportedly in response to "Fenix argu[ments]," but Fenix did not challenge their VPPA claim on those grounds, suggesting more AI hallucinations. (*Compare* Mot. 11-13 *with* Opp'n 27-29.)

1    Plaintiffs describe a fictional Ninth Circuit analysis in *Calise* "reaffirm[ing] the
2    VPPA's reach" and "reject[ing]" certain arguments. (Opp'n 31.) **But there was *no VPPA***
3    ***claim* in *Calise*.** *See* 103 F.4th at 737 (describing claims). Plaintiffs also "quote" *Facebook*
4    as purportedly holding "PII includes 'identifiers tied to video behavior.'" (Opp'n 31.) But
5    that quote is not in the opinion—indeed, *Facebook*'s abbreviated VPPA discussion never
6    mentions "identifiers." *See* 402 F.Supp.3d at 798-99.

7    Finally, Plaintiffs' irrelevant "counterargument" that the VPPA's "ordinary course
8    of business" exception does not apply—which Fenix did not raise—misquotes the statute,
9    cites *Archer*'s purported holding that "transmitting user identifiers and video URLs was
10   not 'ordinary course' conduct," and claims *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095
11   (N.D. Cal. 2015) "construe[d] this carveout narrowly." (Opp'n 31-32.) But neither decision
12   mentions the "ordinary course" exception, suggesting further AI hallucinations.

13   ### D.    Plaintiffs Cannot Save Their CIPA Claim

14   Fenix established "[c]onsideration of consent is appropriate on a motion to dismiss"
15   CIPA claims and "that terms of service and privacy policies… can establish consent to the
16   alleged conduct challenged under" CIPA. (Mot. 13-14 (collecting cases)); *see also Snyder*
17   *v. G6 Hosp. LLC*, 2025 WL 1254382, at *4 & n.2 (C.D. Cal. Apr. 14, 2025) (granting
18   motion to dismiss CIPA claim where "Plaintiff consented to the privacy policy").

19   Plaintiffs nonetheless insist consent is "a fact intensive inquiry not ripe for 12(b)(6)
20   adjudication," (Opp'n 34), inexplicably citing *In re Google Inc. Gmail Litig.*, 2014 WL
21   1102660 (N.D. Cal. Mar. 18, 2014). In considering (and denying) *class certification* of
22   CIPA claims because "individual issues of consent are likely to predominate," that court
23   described in detail weighing Google's disclosures in its terms and privacy policy when
24   considering consent *at the motion to dismiss stage*. *Id* at *13-16.[7]

25   Plaintiffs do not dispute Fenix's showing that Plaintiffs agreed to and quote the

---

26   [7]    *See also Opperman v. Path, Inc.*, 84 F.Supp.3d 962, 992 (N.D. Cal. 2015)
27   (evaluating consent on motion to dismiss privacy claim and distinguishing case where
     defendant "expressly informed users that, 'by scanning and analyzing such
28   communications content, Yahoo collects and stores the data'" and "told users that Yahoo
     would scan their e-mails for a variety of purposes") (cited by Plaintiffs).

Terms and the Privacy Policy in their FAC, and expressly "*consent[ed]* to… the processing of [their] personal data" as described in the Privacy Policy, among other things. (Mot. 14.) Indeed, Plaintiffs *admit* the Privacy Policy disclosed Fenix would process "customer data" like "chat messages" and "share" that data with "third-party service providers," including "content and text moderation… providers." (Opp'n 33; Mot. 14.) Plaintiffs nonetheless insist—without citing even imaginary authority—that Fenix was obligated to disclose "a third party managing the Creators[']" accounts was "re-rout[ing]" messages "from the OnlyFans platform to an entirely separate software application." (*Id.*) But assuming for the sake of argument the allegation was true, such "granular disclosure" is not required where Fenix has disclosed that Plaintiffs' communications would be shared with third parties. *See Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1056-57 (N.D. Cal. 2025) (granting motion to dismiss CIPA claim where terms and privacy policy "clearly disclose… data connected to the use of the site could be collected and shared," rejecting plaintiffs' contention that "a granular disclosure… is required to obtain actual consent").

Plaintiffs assert the "crime-tort" exception trumps their consent because they have sufficiently "alleged their messages were intercepted in furtherance of a RICO scheme." (Opp'n 34-35.) But as Fenix demonstrated above, Plaintiffs have not stated a RICO claim. (Mot. §II.C, *supra* §III.B.) Plaintiffs' reliance on *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876 (C.D. Cal. 2024) is misplaced because, as numerous courts have held, the exception only applies where plaintiffs have stated a claim involving tortious intent "independent of the interception itself." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12-13 (C.D. Cal. Feb. 27, 2025) (distinguishing *Walgreen* as "inapposite" and holding the crime-tort exception did not apply where plaintiff failed to state an independent claim); *Lakes*, 777 F.Supp.3d at 1057-58 (similar); *see also Gmail*, 2014 WL 1102660, at *18 n.13 (holding crime-tort exception did not apply where defendant's alleged "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money").

Further, Plaintiffs fail to refute Fenix's showing that (1) Plaintiffs did not and cannot allege third-parties read their messages "in transit" as CIPA requires because Plaintiffs

1  allege their communications were not "distributed [to] and/or accessible" by software

2  employed by third parties *until after* they were received by the Creator's account, or

3  (2) Plaintiffs' vague allegations of Fenix's role in the purported "wiretapping" are

4  insufficiently specific and contradict Plaintiffs' allegations (repeated here) that the

5  Agencies are not using the OnlyFans platform directly. (Mot. 15 (collecting cases); Opp'n

6  33 (noting Agencies' alleged use of "an entirely separate platform").)[8] Insisting they have

7  adequately alleged Fenix's CIPA violation, Plaintiffs cite allegations stating only "[o]n

8  information and belief, OnlyFans is aware of the use of CRM software" purportedly in

9  violation of its Terms "but chooses to do nothing to prevent the use of such software in

10  order to continue profiting from the increased revenues." (Opp'n 35, citing FAC¶¶127-

11  128.) This is plainly not enough to survive dismissal.

12  ### E.  Plaintiffs Fail to Plead a Claim Under Penal Code §502

13  Plaintiffs cannot state a CDAFA claim because, among other things, Plaintiffs must,

14  but cannot, allege Fenix accessed Plaintiffs' data "without permission" by "overcom[ing]

15  technical… barriers." (Mot. 16.) There are "no technical barriers blocking [Fenix] from

16  using its own [w]ebsite." (*Id.*) In response, Plaintiffs cite random allegations (*e.g.*,

17  FAC¶¶145-48 (describing a 2019 OnlyFans' blog post)) that do not overcome the law or

18  the facts foreclosing their claim. (Opp'n 36.)[9]

19  Fenix also showed Plaintiffs must plead they suffered "damages or loss by reason of

20  a violation" and that inchoate harms like "privacy invasions" and emotional distress "do

21  not qualify" as damages under §502. (Mot. 16 (collecting cases).) Plaintiffs do not

22  acknowledge or refute Fenix's authority. Instead, they again invent a ruling, claiming

23  (Opp'n 37) that *Facebook*, 402 F.Supp.3d at 795-96, held "CDAFA covers economic harm

---

24  [8]  *See also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D.
25  Cal. 2017) (dismissing CIPA claim where plaintiffs' "vague allegations… inadequately
    pleaded interception," particularly because the "Complaint suggests that Vizio transmits
26  their data to its Inscape platform significantly *after the data arrive at their Smart TVs*")
    (cited by Plaintiffs).

27  [9]  Plaintiffs cite *People v. Childs*, 220 Cal.App.4th 1079 (2013), but that case involved
    a criminal prosecution and assessed whether §502(c)(5)—a subdivision not at issue here—
28  applied to employees. *Id*. at 1098.

1   tied to unauthorized data use." But there was no CDAFA claim in *Facebook*, so this appears
2   to be yet another AI hallucination. *See id.* Plaintiffs note that they paid subscription fees
3   and tipped Creators, but do not cite any case, real or imagined, demonstrating that these
4   qualify as damages under §502. Rather, "CDAFA's private right of action contemplates
5   some damage *to the computer system, network, program, or data contained on that*
6   *computer*." *Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1021 (C.D. Cal.
7   2023); Cal. Penal Code §502(e)(1). Plaintiffs' CDAFA claim fails.

8              **F.    Plaintiffs Fail to Plead a Breach of Contract Claim**

9          Plaintiffs do not allege Fenix breached the Terms, but instead allege that Fenix
10   breached supposed promises made on social media and statements that appear when a user
11   subscribes to a new Creator that users can "direct message with" a Creator. (Mot. 17; Opp'n
12   18.) But Fenix showed "a plaintiff cannot allege a breach of alleged promises made outside
13   of the four corners of an integrated contract," and the Terms contain an integration clause
14   establishing that they "form the entire agreement between [Fenix] and [Plaintiffs] regarding
15   [their] access to and use of OnlyFans." (Mot. 17 (collecting cases and quoting Terms).)
16   Plaintiffs ignore and thus concede both the law and the integration clause in the Terms
17   foreclosing their claims.[10]

18          Moreover, well-settled law holds that courts ascertain the terms of the parties'
19   agreement from their written contract "alone." (*Id*. (collecting cases).) Plaintiffs do not
20   dispute that under the Terms: (1) transactions between Fans and Creators are "contracts
21   between Fans and Creators"; (2) Fenix are not parties to those contracts and are "not
22   responsible for any Fan/Creator Transaction"; (3) Creators may use third-party agencies to

---

23   [10]    Plaintiffs purportedly "quote" *Brown v. Google LLC*, 685 F.Supp.3d 909, 931 (N.D.
24   Cal. 2023) as stating "'Will' and 'will not' language supports a reasonable inference that
     Google made a binding promise" to contend that Fenix's alleged "representation[s]"
25   outside the Terms are nonetheless contractual promises. (Opp'n 18-19.) The quoted
     language appears nowhere in that opinion, which in any event does not address an
26   integration clause or promises made separate from the defendant's terms of use. Plaintiffs
     also claim *Roblox*, 602 F.Supp.3d at 1243, "allow[ed] breach claim where platform failed
27   to enforce its own safety rules." (Opp'n 19.) But that case was expressly *not* about safety,
     602 F.Supp.3d. at 1252 n.3, and the only "breach" claim was of the covenant of good faith
28   and fair dealing, which the court did not address because the parties agreed it was "not
     viable." *Id*. at 1264.

1  manage their accounts; and most importantly (4) Fenix have no obligation to monitor
2  content or ensure its accuracy and proper use by others. (*Id.* 17-18; *see also supra* §III.A.)

3       Plaintiffs claim the Terms "prohibit impersonation, restrict account access" and
4  allow Fenix to "suspend or remove accounts" that violate the Terms, but the allegations
5  they cite make no mention of the Terms at all. (Opp'n 19, citing FAC¶¶153-56.) But even
6  if Plaintiffs had pointed to allegations quoting the Terms (*e.g.,* FAC¶¶164-66),
7  "provid[ing] select excerpts of the Terms in the FAC" or "quoting them in a piecemeal
8  fashion" does not overcome a defendant's showing where, as here, the Terms expressly
9  disavow liability for the complained-of conduct. *Baldwin-Kennedy v. Meta Platforms Inc.*,
10  2025 WL 1935433, at *2–4 (N.D. Cal. June 5, 2025) (dismissing misrepresentation and
11  contract claims where Meta terms stated "We do not control or direct what people and
12  others do or say, and we are not responsible for their actions or conduct (whether online or
13  offline) or any content they share," meaning "[d]efendant is not responsible for the actions
14  of third parties"). Plaintiffs' reliance on *Barnes* and *Calise* for their contrary arguments
15  (Opp'n 20) is misplaced because those courts either did not consider or foreclosed contract
16  claims where, as here, the parties' Terms "disclaim any intention to be bound." *Barnes*,
17  570 F.3d at 1108; *see also supra* §III.A & n.5.

18       **G.    Plaintiffs Cannot Save Their Fraud, Deceit, FAL or UCL Claims**

19       Plaintiffs' fraud/deceit, FAL, and UCL claims based on alleged Fenix
20  misrepresentations that users could have "authentic connections" with individual Creators
21  must be pled with particularity under Rule 9(b). (Mot. 18-20 (collecting cases and
22  allegations); Opp'n 23-26, 38-40, 42 (failing to meaningfully dispute this analysis).)

23       Claiming they have adequately pled fraud, Plaintiffs again rely on manufactured
24  quotations from inapposite decisions. Plaintiffs' quoted language about "intent to defraud"
25  (Opp'n 24) does not appear in *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879,
26  883 (9th Cir. 2022), which "address[ed] *only* [a] district court's ruling on claim-splitting."
27  Plaintiffs fabricate a "quote" from *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods.*
28  *Liab. Litig.*, 497 F.Supp.3d 552 (N.D. Cal. 2020) as stating that "the allegations are detailed

1    and plausible… all that Rule 8 requires" (Opp'n 24), but the court's only mention of Rule

2    8 is when it held Rule 9(b)'s pleading standard should apply instead. 497 F.Supp.3d at 666.

3    Similarly, Plaintiffs' claim that *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802

4    F.Supp.2d 1070 (N.D. Cal. 2011), inferred knowing fraud "from defendant's internal

5    control over allegedly deceptive systems" (Opp'n 25) is without merit because nothing

6    about "knowledge" based on "control" over "systems" appears in this false advertising

7    case. *See* 802 F.Supp.2d at 1072-74.

8        Plaintiffs' premise that they do not have to meet Rule 9(b)'s rigorous pleading

9    standard because their claims target concealment, rather than affirmative

10   misrepresentations, is false. (Opp'n 23-26 & n.15, 38-40, 42.) Plaintiffs allege that Fenix

11   made affirmatively false promises that Plaintiffs could anonymously pay strangers on the

12   Internet for "authentic" relationships stemming from "direct connection." (FAC¶¶13-14,

13   81-91.) But regardless, their attempt to relabel their fraud theories does not lower their

14   pleading burden. As Plaintiffs' authority shows, "some courts" acknowledge the

15   difficulties of pleading "the *specific* time, place, or content of [an] omission relative to an

16   active misrepresentation," but "this *somewhat* relaxed standard… *does not eliminate Rule

17   9(b)'s requirements that the plaintiff plead with particularity all other elements of his

18   claim*." *Poston v. Gen. Motors, LLC*, 2024 WL 3558377, at *5 (S.D. Cal. July 22, 2024).

19   This is because "[f]raudulent concealment is *more than the simple nondisclosure of

20   material facts*." *Id*. Rather, Plaintiffs "must point to specific affirmative acts [Fenix] took

21   in hiding, concealing, or covering up the matters complained of." *Id*.

22        Plaintiffs do not—and cannot—cite any allegations describing "specific affirmative

23   acts" that Fenix took to *hide* the Creators' purported use of third-parties, *id*., because

24   Plaintiffs only allege Fenix knew or "*should know* about" the third-parties "from

25   monitoring its platform," but took no action to prevent it. *Supra* §III.A. Plaintiffs also have

26   no answer to Fenix's showing that the Terms actually *disclose* the use of third-parties.

27

28

(Mot. 18.)[11] Thus, any "concealment" claims fail.

Plaintiffs fail to refute Fenix's showing that Plaintiffs do not allege when they were exposed to the alleged misrepresentations or that they relied on them, as Rule 9(b) requires. (*Id*. 18-19 (collecting cases and allegations).) As *Poston* held in dismissing misrepresentation claims for the same reasons, "[t]he misrepresentation's impact on [Plaintiffs] is the operative component here, and [Plaintiffs] fail to supply it." 2024 WL 3558377, at *5.

Plaintiffs insist they were "manipulated into sharing personal, intimate communications *with strangers*," as if their anonymous paid interactions with Creators were real intimate relationships with non-strangers. (Opp'n 24.) This establishes why their reliance on the "reasonable consumer" standard to save their UCL claim is ill-founded. (*Id*. 38-39.)[12] Plaintiffs also admit their unlawful prong claims hinge on their futile deceit, FAL, and statutory privacy claims. (*Id*. 41.) And because Plaintiffs' unfair prong claims assert the same conduct and harm as their fraud claims—"Fenix operated and profited from a system that allowed Agencies to impersonate Creators in sexually and emotionally intimate chats without the Fan's knowledge or consent," citing the same allegations (*id*. 40)—their own authority mandates dismissal. "[W]here the plaintiffs' unfair prong claims overlap entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive." *Roblox*, 602 F.Supp.3d at 1261.

---

[11]    Plaintiffs acknowledge this disclosure when they (unsuccessfully) attempt to refute its import with an entirely hallucinated quote purportedly from *People v. McKale*, 25 Cal. 3d 626, 635 (1979). (Opp'n 40-41.) They further attempt to dodge the Terms as "a merits defense, not a [UCL] standing argument," inexplicably citing Fenix's RICO argument and fabricating a quotation from *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310 (2011). (Opp'n 38.)

[12]    *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 882-85 (9th Cir. 2021) (affirming dismissal of UCL, FAL and fraud claims because "the reasonable consumer standard requires a probability that a significant portion of the general consuming public… *acting reasonably in the circumstances*, could be misled," not "unreasonable or fanciful interpretations" of advertising) (cited by Plaintiffs).

1

2   DATED: August 18, 2025        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3                                 By:_____*/s/ Jason D. Russell*_____
                                                    JASON D. RUSSELL
4                                      *Attorneys for Specially Appearing Defendants*
                                       Fenix International Limited and Fenix Internet LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendants Fenix International Limited and

3 Fenix Internet LLC, certifies that this brief contains 6,988 words, which complies with the

4 word limit of C.D. Cal. L.R. 11-6.1.

5

6

7 DATED: August 18, 2025          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8

By:_____
9                                      *Jason D. Russell*
                                       JASON D. RUSSELL
10                              *Attorneys for Specially Appearing Defendants*
                            Fenix International Limited and Fenix Internet LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28