JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**DECLARATION OF OR-EL S. VAKNIN IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE**<br><br>Judge:         Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:           September 4, 2025<br>Time:           10:00 a.m. |

## <u>DECLARATION OF OR-EL S. VAKNIN</u>

I, Or-el S. Vaknin, declare and state as follows:

1.    I am an attorney admitted to practice before the courts of the State of California and have been admitted to this Court. I am an associate in the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, which represents Specially Appearing Defendants Fenix International Limited and Fenix Internet LLC (together, "Fenix").[1] I submit this declaration in support of the Fenix Defendants' Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue (ECF 121, "Motion to Dismiss"). This declaration is based on my own personal knowledge and if called upon to do so, I could and would testify competently thereto.

2.    I have reviewed Plaintiffs' Consolidated Opposition to Fenix's Motion to Strike Claims of Non-California Defendants and Fenix Defendants' Motion for Request for Judicial Notice (ECF 138, "Opposition to Defendants' MTS and RJN"), and found that Plaintiffs quoted language from this Court's April 9, 2025 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for Forum Non Conveniens (ECF 117, "Order") that does not appear in the Court's Order, and described holdings in the Order that do not appear to exist.

3.    Specifically, on PageID#2121 of Plaintiffs' Opposition to Defendants' MTS and RJN, the following text appears:

> First, the Court has already declined to rely on these materials in its prior ruling. *See* Dkt. 117 at 3 n.2 ("Because the court does not rely on any disputed terms, it need not and does not reach the parties' RFJN-related arguments."). That rationale applies equally here. The portions of the Terms relevant to this motion—

4.    The quoted language does not appear in the Court's Order. I ran a search in Westlaw for the exact quoted language and found no cases containing this exact language.

---

[1]    Unless otherwise noted, all emphases are added, and all citations, alterations, and internal quotation marks are omitted from all quoted material.

5.  On PageID#2123 of Plaintiffs' Opposition to Defendants' MTS and RJN, the following text appears:

> 15  should deny Defendants' motion to strike. ==Because the Court has already rejected==
> 16  ==the previous request,== the documents do not cover the relevant time-period, and the
> 17  documents are disputed factually, the Court should also deny the Fenix RFJN.

6.  On page 3, at footnote 2 of the Order, the Court stated that, "The court need not take judicial notice of these documents for purposes of its analysis because it may consider evidence outside the pleadings in deciding a motion to dismiss for forum non conveniens." (ECF 117, PageID#1506.) The court did not consider Fenix's Request for Judicial Notice in the context of Fenix's motion to dismiss for failure to state a claim or on personal jurisdiction grounds.

7.  On PageID#2121 of Plaintiffs' Opposition to Defendants' MTS and RJN, the following text appears:

> 21  ==First, the Court has already declined to rely on these materials in its prior==
> 22  ==ruling.== *See* Dkt. 117 at 3 n.2 ("Because the court does not rely on any disputed
> 23  terms, it need not and does not reach the parties' RFJN-related arguments.") That

8.  The Court's Order quoted the forum-selection clause found in the Terms and stated that "the broad scope of the forum selection covers Plaintiffs' claims," that the clause was "mandatory," and that the clause "is valid and enforceable as to Plaintiffs B.L., S.M., and A.L." (Order, ECF 117, PageID#1509-10, 1519.)

9.  I have also reviewed the redacted version of Plaintiffs' Opposition to Fenix's Motion to Dismiss (ECF 141, "Opposition"), and found multiple examples of citations to caselaw that does not appear to exist, quoted language that does not appear in the cases cited by Plaintiffs, and responses to arguments Fenix did not make in its Motion. I have compiled examples below for the Court's reference.

2

10.    On PageID#2221 of Plaintiffs' Opposition, the following text appears:

| 1 | intentional engagement with California users, the "arising from" prong is satisfied. |
| 2 | *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) ("A claim arises out |
| 3 | of a defendant's forum-related activities if it would not have occurred but for the |
| 4 | defendant's contacts with the forum."). |
| 5 | |

11.    The quoted language does not appear in the text of *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). I ran a Westlaw search for the exact quoted language and found no cases containing this exact language.

12.    On PageID#2223 of Plaintiffs' Opposition, the following text appears:

| 10 | participate in a common fraudulent enterprise. *See Cascade Yarns, Inc. v. Knitting* |
| 11 | *Fever, Inc.*, 2011 WL 4538422, at *8 (W.D. Wash. Jan. 3, 2011) ("an agreement |
| 12 | may be inferred from the specific acts and relationships alleged"). |
| 13 | |

13.    I ran a Westlaw search for *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 4538422 (W.D. Wash. Jan. 3, 2011) using the Westlaw number provided, which directed me to *Moe's Stop One, Inc. v. Ohio Liquor Control Commission*, No. 11AP-143, 2011 WL 4538422 (Ohio Ct. App. Sept. 30, 2011). The quoted language does not appear in *Moe's Stop One*. I ran a Westlaw search for *Cascade Yarns* using the name of the case, and found a January 3, 2011 order, available at *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM 2011 WL 31862 (W.D. Wash. Jan. 3, 2011). The quoted language does not appear in the *Cascade Yarns* January 3, 2011 order. I searched the 43 orders in the *Cascade Yarns* case available on Westlaw for the quoted language. None of them contain the quoted language. I ran a Westlaw search for the exact quoted language and found no cases containing this exact language.

14.    On PageID#2224 of Plaintiffs' Opposition, the following text appears:

> 2
> 3
> 4
> 5
> 6
>
> from the Chatter Scams. ==This includes specific conduct, economic interdependence, and coordination across actors—hallmarks the Ninth Circuit has recognized as sufficient to infer agreement.== *See Cascade Yarns*, 2011 WL 4538422, at *8; *see also* Section E, *infra*.

15.    Neither *Moe's Stop One* (which Plaintiffs' Westlaw citation directs to) nor the January 3, 2011 order in *Cascade Yarns* contain language describing those factors as Ninth Circuit hallmarks for inferring agreement.

16.    On PageID#2225 of Plaintiffs' Opposition, the following text appears:

> 21
> 22
> 23
> 24
> 25
> 26
>
> already rejected that argument in prior briefing. *See* Dkt. 117 at 2–3. The forum-selection clause in question is not enforceable against Plaintiffs asserting claims based on deception, and public policy weighs against transfer where the gravamen of the action is fraud. ==*See Doe v. Match Group*, 2022 WL 4551660, at 6 (C.D. Cal. Aug. 12, 2022).== R.M. resides in California, and the claims he asserts arise from

17.    Plaintiffs' Westlaw citation to *Doe v. Match Group*, 2022 WL 4551660 (C.D. Cal. Aug. 12, 2022) does not direct to any decision available on Westlaw. I ran a nationwide search for dockets or cases matching this case name via Bloomberg Law and Westlaw, and for any cases involving a Doe plaintiff and Match Group defendant. I was unable to find any docket or order matching Plaintiffs' citation or characterization of the case.

18. On PageID#2230 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 14 | **D.    Plaintiffs Have Plausibly Alleged a Breach of Contract by the Fenix Defendants.** |
| 15 | ==To state a claim for breach of contract under California law, a plaintiff must== |
| 16 | ==allege: (1) the existence of a contract; (2) the plaintiff's performance or excuse for== |
| 17 | ==nonperformance; (3) the defendant's breach; and (4) resulting damages.== *Oasis W.* |
| 18 | |
| 19 | *Realty, LLC v. Goldman*==, 51 Cal. App. 5th 811, 825 (2020).== |

19. The citation for *Oasis W. Realty, LLC v. Goldman*, 51 Cal.App.5th 811 (2020) directs Westlaw users to *Roche v. Hyde*, 51 Cal.App.5th 757 (2020), which does not describe the elements for stating a claim for breach of contract. The citation for *Oasis W. Realty, LLC v. Goldman* is found at 51 Cal.4th 811, as cited in the Fenix Motion to Dismiss. (*See* ECF 121, PageID#1704 (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).) The elements of a cause of action for breach of contract appear at page 821, and not at 825.

20. On PageID#2230-2231 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 27 | contractual term. ==*See Brown v. Google LLC*, 685 F. Supp. 3d 909, 931 (N.D. Cal.== |
| 1 | ==2023) ("'Will' and 'will not' language supports a reasonable inference that Google== |
| 2 | ==made a binding promise.").== |

21. The quoted language does not appear in the text of *Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023). I ran a Westlaw search for the exact quoted language and found no cases containing this exact language.

5

22.     On PageID#2231 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 17 | 153–156. These Terms were not passive disclaimers. They were contractual |
| 18 | controls—and Fenix was the only party with the authority to enforce them. *See Doe* |
| 19 | *v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1252 (N.D. Cal. 2022) (allowing breach |
| 20 | claim where platform failed to enforce its own safety rules); *Est. of Bride v. YOLO* |
| 21 | *Techs., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (§ 230 does not shield platforms |
| 22 | from liability for refusing to enforce their own Terms). |
| 23 | |

23.     The complaint in *Doe v. Roblox* did not contain a breach of contract claim. *See Doe v. Roblox Corp.*, 602 F.Supp.3d 1243, 1252 (N.D. Cal. 2022) (listing claims as violations of "California's Unfair Competition Law ("UCL")[, ]Consumers Legal Remedies Act ("CLRA"), and [acts] constitut[ing] fraud, conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing").

24.     The term "safety rules" does not appear in the *Roblox* decision. The decision states that while plaintiff alleged "children on Roblox have been exposed to lewd behavior, profanity, and other similar acts," that conduct was not at issue in the decision. *Id.* at 1252 n.3 (stating that "this case is not about that type of behavior").

25.     The *Roblox* decision did not "allow [a] breach" claim as represented by Plaintiffs. The decision stated that the plaintiff "represents that she pursues a claim for breach of the implied covenant of good faith and fair dealing in the alternative, assuming the Court concludes that an enforceable contract does exist between the parties." *Id.* at 1264. The court stated that "[b]ased on [plaintiff's] representation that this claim is not viable if the Terms of Use are not valid, there is no need to address the parties' arguments about it." *Id.*

26.     On PageID#2234 of Plaintiffs' Opposition, the following text appears:

6

| | |
|---|---|
| 3 | **Fenix's defense—that these allegations amount to mere omissions or passive** |
| 4 | |
| 5 | **indifference—mischaracterizes the FAC.** Plaintiffs allege an affirmative scheme to |

27.     Fenix did not raise this defense in its response to Plaintiffs' RICO claims and allegations in their Motion to Dismiss, nor did Fenix reference "omissions" or "passive indifference" in their response to Plaintiffs' RICO claims and allegations. (*See* ECF 121, PageID#1697-1698.)

28.     On PageID#2236 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 19 | Fenix lacked specific knowledge). But the allegations describe an objective scheme |
| 20 | to extract money by lying about the nature of the service. *See Mendoza v.* |
| 21 | *Amalgamated Transit Union Int'l*, 30 F.4th 879, 889 (9th Cir. 2022) ("Intent to |
| 22 | defraud can be inferred from the totality of the circumstances."); *In re JUUL Labs,* |
| 23 | *Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 634 (N.D. Cal. |
| 24 | 2020) ("The allegations are detailed and plausible—and that is all that Rule 8 |
| 25 | requires.").[15] |

29.     The quoted language does not appear in the text of *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022). *Mendoza* did not address fraud and involved "two overlapping suits challenging a national union's imposition of a trusteeship over one of its local unions" and "address[ed] only the district court's ruling on claim-splitting." *Id*. at 883.

30.     Similar, but still different language appears in a 1979 D.C. Circuit case, *U.S. v. Alston*, 609 F.2d 531, 538 (D.C. Cir. 1979) ("The requisite intent under the federal mail and wire fraud statutes may be inferred from the totality of the circumstances and need not be proven by direct evidence"). I ran a Westlaw search for the exact quoted language and found two cases containing this exact language. The first case was a 1986 Sixth Circuit

appeal from a criminal conviction, and stated that "Under Rule 10b-5, the defendant's
intent to defraud can be inferred from the totality of the circumstances and the actions of
the parties." *See U.S. v. Tager*, 788 F.2d 349, 353 (6th Cir. 1986). The second case was a
2012 First Circuit Bankruptcy Appellate Panel decision reviewing the denial of a motion
for a new trial, and stated that "In support, [plaintiff] cites a few cases in which fraud was
inferred where a debtor made a representation which was followed by a contrary action.
*See, e.g.*, *Palmacci [v. Umpierrez]*, 121 F.3d [781,] 789 [(1st Cir. 1997)] (noting that intent
to defraud can be inferred from the totality of the circumstances, and among the
circumstances from which it may be inferred is a debtor's 'repudiation of the promise soon
after made')." *In re Stewart*, No. BAP MB 12-017, 2012 WL 5189048, at *9 (B.A.P. 1st
Cir. Oct. 18, 2012).

    31.    On PageID#2236 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 18 19 20 21 22 23 24 25 26 | Fenix lacked specific knowledge). But the allegations describe an objective scheme to extract money by lying about the nature of the service. *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 889 (9th Cir. 2022) ("Intent to defraud can be inferred from the totality of the circumstances."); *In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 634 (N.D. Cal. 2020) ("The allegations are detailed and plausible—and that is all that Rule 8 requires.").[15] |

    32.    The quoted language does not appear in the text of *In re JUUL Labs, Inc.
Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F.Supp.3d 552 (N.D. Cal. 2020). I ran a
Westlaw search for the exact quoted language and found no cases containing this exact
language.

    33.    "Rule 8" appears once in the text of *In re JUUL Labs* when the court stated:
"The parties dispute whether I should apply Rule 9(b)'s heightened standard for pleadings

claims sounding in fraud or the more permissive pleading standards of Rule 8(a) to the New York and Florida statutory consumer protection claims. . . . But I am bound to apply Ninth Circuit precedent, which requires claims based on fraudulent conduct to be pleading with particularity." *Id.* at 666.

34. On PageID#2237 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 9 | enforcement practices that support a strong inference of knowledge. *Id.* ==Courts== |
| 10 | ==routinely find fraud plausible where defendants benefit from the deception and== |
| 11 | ==control the architecture enabling it.== *See, e.g., In re Apple & AT&T iPad Unlimited* |
| 12 | *Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (inferring |
| 13 | |
| 14 | knowledge from defendant's internal control over allegedly deceptive systems). |

35. Nothing about "knowledge" based on "control" over "allegedly deceptive systems" appears in *In re Apple & AT&T iPad Unlimited Data Plan Litigation*, 802 F.Supp.2d 1070 (N.D. Cal. 2011), which involved allegations that "Defendants marketed and advertised [an] unlimited data plan, and the ability to switch in and out of the unlimited data plan, to induce consumers to purchase iPads with 3G capability" and "defendants' misleading statements and omissions regarding the availability of the unlimited data plan induced them to buy the 3G-enabled iPad rather than the less expensive WiFi only model." *Id*. at 1073-74.

36. On PageID#2240 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 13 | ==Fenix argues that the agencies are not "video tape service providers" because== |
| 14 | ==they merely staffed accounts and did not themselves "deliver" video content.== |
| 15 | ==Motion at 11.== But the FAC alleges that agencies directed content production, |

37. Fenix did not raise this argument in their Motion, nor does Fenix's Motion to Dismiss use the quoted word "deliver." (*See* ECF 121, PageID#1698.)

38. On PageID#2241 of Plaintiffs' Opposition, the following text appears:

> 10
> 11    **Fenix argues that Plaintiffs subscribed to OnlyFans or to individual Creators,**
> 12    **not to the agencies themselves. Motion at 11.** But the FAC alleges that the agencies

39.    Fenix did not raise this argument in their Motion. (*See* ECF 121, PageID#1698.)

40.    On PageID#2243 of Plaintiffs' Opposition, the following text appears:

> 1    As the Ninth Circuit has recognized, the VPPA was designed not just to avoid
> 2    embarrassment, but "to ensure that consumers retain control over their personal
> 3    information." *Eichenberger*, 876 F.3d at 984; *see also* FAC ¶ 447 (citing legislative
> 4    history). *See also In re Facebook, Inc.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019)
> 5    (PII includes "identifiers tied to video behavior"). The allegation of deliberate,
> 6

41.    The quoted language ("identifiers tied to video behavior") does not appear in the text of *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F.Supp.3d 767 (N.D. Cal. 2019). I ran a Westlaw search for the exact quoted language and found no cases containing this exact language.

42.    On PageID#2243 of Plaintiffs' Opposition, the following text appears:

> 9    **The Ninth Circuit recently reaffirmed the VPPA's reach in *Calise v. Meta**
> 10   **Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024), holding that even partial identifiers**
> 11   **combined with viewing behavior are sufficient to constitute PII. There, as here, the**
> 12   **defendants argued that user-facing identifiers were too attenuated to trigger**
> 13   **liability. The court rejected that view, emphasizing that the VPPA protects against**
> 14   **disclosures that connect users to specific video behavior, even if the identifiers are**
> 15   **platform-specific.** The allegations here go further: Plaintiffs describe the deliberate
> 16

43. There was no VPPA claim at issue in *Calise*. The plaintiffs in *Calise* "asserted five claims against Meta: (1) negligence, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, (4) violation of California's Unfair Competition Law (UCL), and (5) unjust enrichment." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 737 (9th Cir. 2024). *Calise* does not contain any language discussing the reach of the VPPA, and the terms "personally identifiable information," "PII" and "identifiers" do not appear in that opinion.

44. On PageID#2243 of Plaintiffs' Opposition, the following text appears:

> 21
> 22
> 23
> 24
>
> The VPPA prohibits disclosure of PII "to any person" unless the disclosure falls within a narrow statutory exception—such as those made "in the ordinary course of business." 18 U.S.C. § 2710(b)(2)(D). That phrase is defined to cover

45. The term "ordinary course of business" appears in subsection (E), not (D) of the statute. 18 U.S.C. §2710(b)(2)(E).

46. On PageID#2243 of Plaintiffs' Opposition, the following text appears:

> 21
> 22
> 23
> 24
> 25
> 26
>
> The VPPA prohibits disclosure of PII "to any person" unless the disclosure falls within a narrow statutory exception—such as those made "in the ordinary course of business." 18 U.S.C. § 2710(b)(2)(D). That phrase is defined to cover only "debt collection, order fulfillment, request processing, or the transfer of ownership." 18 U.S.C. § 2710(a)(2). Courts construe this carveout narrowly to

47. The language at 18 U.S.C. §2710(a)(2) states that, "the term 'ordinary course of business' means only debt collection *activities*, order fulfillment, request processing, *and* the transfer of ownership." 18 U.S.C. §2710(a)(2).

48.    On PageID#2243 of Plaintiffs' Opposition, the following text appears:

> 21    The VPPA prohibits disclosure of PII "to any person" unless the disclosure
> 22    falls within a narrow statutory exception—such as those made "in the ordinary
> 23    course of business." 18 U.S.C. § 2710(b)(2)(D). That phrase is defined to cover
> 24
> 25    only "debt collection, order fulfillment, request processing, or the transfer of
> 26    ownership." 18 U.S.C. § 2710(a)(2). Courts construe this carveout narrowly to
> 27    prevent it from swallowing the rule. *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d
> 28    1090, 1095 (N.D. Cal. 2015).

49.    The decision in *In re Hulu Privacy Litigation*, 86 F.Supp.3d 1090 (N.D. Cal. 2015) does not discuss or interpret the "ordinary course of business" VPPA carveout found at 18 U.S.C. §2710(b)(2)(E). There is only one reference to that VPPA exception in the case: "The VPPA prohibits a 'video tape service provider' from 'knowingly' disclosing a user's 'personally identifiable information' to third parties *(with certain exceptions that do not apply here*)." *In re Hulu Priv. Litig.*, 86 F.Supp.3d at 1091.

50.    On PageID#2244 of Plaintiffs' Opposition, the following text appears:

> 8    This conduct falls outside the narrow ordinary-course safe harbor. In *Archer*
> 9    *v. NBCUniversal Media, LLC*, 2025 U.S. Dist. LEXIS 129598, at *14 (C.D. Cal.
> 10    July 2, 2025), this District held that transmitting user identifiers and video URLs to
> 11    Meta was not "ordinary course" conduct, even though the transmission occurred
> 12    through standard website infrastructure. Here, the disclosures were even more
> 13

51.    The words "ordinary course" do not appear in the text of *Archer v. NBCUniversal Media, LLC*, No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025), and *Archer* does not discuss the "ordinary course" exception to VPPA found at 18 U.S.C. §2710(b)(2)(E) or whether transmitting user identifiers and video

URLS through standard website infrastructure was "ordinary course" conduct. The court's discussion of other VPPA exceptions states: "The VPPA provides three exceptions to the disclosure prohibition, allowing disclosure of a consumer's video rental history to the consumer himself, third parties when the consumer has provided written consent, or the third party has obtained a warrant or court order. § 2710(b)(2). Here, Plaintiffs allege that the disclosure was not authorized by § 2710(b)(2) because Defendants did not notify nor obtain consent from Plaintiffs before transmitting Plaintiff's private video information to Meta. [Citation.] Therefore, the non-consensual disclosure was not authorized by § 2710(b)(2)." *Id.* at *15.

52.    On PageID#2249 of Plaintiffs' Opposition, the following text appears:

| 8  | |
|----|---|
| 9  | Section 502(c)(7) prohibits knowingly accessing a computer "in order to wrongfully control or obtain money, property, or data." Plaintiffs allege that Fenix |
| 10 | |

53.    Cal. Penal Code §502(c)(7) does not contain the quoted language. The quoted language appears at Section 502(c)(1)(B).

54.    On PageID#2249 of Plaintiffs' Opposition, the following text appears:

| 20 | |
|----|---|
| 21 | Creator. FAC ¶¶ 255–256, 260, 281, 301, 314. That is more than sufficient to |
| 22 | satisfy the statute's damages requirement at the pleadings stage. *See In re* |
| 23 | *Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 799 |
| 24 | (N.D. Cal. 2019) (CDAFA covers economic harm tied to unauthorized data use). |

The decision in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F.Supp.3d 767 (N.D. Cal. 2019) does not discuss the CDAFA, codified at Cal. Penal Code §502, in the text of the case. It was not a claim at issue in that case. The claims asserted in that case were: "[P]rivacy-based tort claims under California law for the unauthorized disclosure of private facts… intrusion into private affairs, along with a similar claim based

on the right to privacy enshrined in the California Constitution… two claims based on federal statutes: the Stored Communications Act… and the Video Privacy Protection Act… [and] a variety of other California law claims… includ[ing] breach of contract… and negligence." *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F.Supp.3d at 781-82.

55.    On PageID#2250 of Plaintiffs' Opposition, the following language appears:

| | |
|---|---|
| 14 15 16 17 18 | Terms of Service foreclose any claim of deception or loss. Motion at 10–11. But this is a merits defense, not a standing argument. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011) ("The question of standing under the UCL... is not whether a plaintiff's claim is meritorious."). Plaintiffs allege that they would |

56.    The quoted language does not appear in the text of *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011). I ran two Westlaw searches for each clause of the exact quoted language and found no cases containing this exact language.

57.    On PageID#2252-2253 of Plaintiffs' Opposition, the following text appears:

| | |
|---|---|
| 28 1 2 | argument fails under longstanding California law. "A business may not escape UCL unfairness liability merely by disclosing or disclaiming its conduct in a user agreement." *People v. McKale*, 25 Cal. 3d 626, 635 (1979). The issue is not |

58.    The quoted language does not appear in the text of *People v. McKale*, 25 Cal.3d 626 (1979). I ran a Westlaw search for the exact quoted language and found no cases containing this exact language.

59.    Attached hereto as Exhibit A is a true and correct copy of excerpts from the certified transcript of the August 7, 2025 hearing in this action before United States Magistrate Judge Christensen. I was present for this hearing and made an appearance on behalf of Fenix. At my direction, a legal assistant created this exhibit from excerpts of the

certified transcript. I have personally reviewed this transcript and know it to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 18, 2025, in Los Angeles, California.


By: _____ */s/ Or-el S. Vaknin* _____
                            Or-el S. Vaknin

15

# EXHIBIT A

<pre>
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                   SOUTHERN DIVISION - SANTA ANA

 3

 4   N.Z., et al.,              )  Case No. SACV 24-1655-FWS(SSCx)
                                )
 5        Plaintiffs,           )  Los Angeles, California
                                )  Thursday, August 7, 2025
 6            v.                )  1:31 P.M. to 2:05 P.M.
                                )
 7   FENIX INTERNATIONAL        )  VIDEOCONFERENCE
     LIMITED, et al.,           )
 8                              )
          Defendants.           )
 9   _____)

10

11

12                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE STEPHANIE S. CHRISTENSEN
13                 UNITED STATES MAGISTRATE JUDGE

14

15   Appearances:              See Page 2

16   Deputy Clerk:             Teagan Snyder

17   Court Reporter:           Recorded; CourtSmart

18   Transcription Service:    JAMS Certified Transcription
                               16000 Ventura Boulevard #1010
19                             Encino, California  91436
                               (661) 609-4528
20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
</pre>

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs:        Hagens Berman Sobol Shapiro LLP
                                By:  LEONARD W. ARAGON
 4                              11 West Jefferson Street, Suite 1000
                                Phoenix, Arizona  85003
 5                              (602) 840-5900
                                leonard@hbsslaw.com
 6
                                Timoney Knox LLP
 7                              By:  KEITH T. VERNON
                                1717 K Street NW, Suite 900
 8                              Washington, D.C.  20006
                                (202) 349-9864
 9                              kvernon@timoneyknow.com

10

11   For the Defendants:        Skadden, Arps, Slate, Meagher and
                                Flom LLP
12                              By:  JASON D. RUSSELL
                                2000 Avenue of the Stars, Suite 200N
13                              Los Angeles, California  90067
                                (213) 687-5328
14                              jason.russell@skadden.com

15                              Skadden, Arps, Slate, Meagher and
                                Flom LLP
16                              By:  HILLARY A. HAMILTON
                                     OR-EL VAKNIN
17                              2000 Avenue of the Stars, Suite 200N
                                Los Angeles, California  90067
18                              (213) 687-5000
                                hillary.hamilton@skadden.com
19                              or-el.vaknin@skadden.com

20

21

22

23

24

25
```

1  fact that neither Fenix defendant is incorporated in or has a

2  principal place of business in California.  So that's

3  irrelevant, and there's plenty of cases -- and Your Honor

4  knows them better than I -- that say where discovery won't

5  advance a decision, they shouldn't get it, it's a burden, and

6  there's no need for it.

7        And for the more limited discovery that one could

8  reasonably argue -- they say that they need additional

9  discovery with respect to marketing efforts in California.

10 First, we answered that discovery; but second, even if we

11 didn't answer it completely, that's where the timeliness

12 argument comes in, Your Honor.  The only relevance of

13 jurisdictional discovery is to deal with the motion, and so

14 they had plenty of time to come into court and say, "You know

15 what?  We think their discovery responses are inadequate.  We

16 can't meaningfully oppose."  They didn't do either of those

17 things.  In fact, their brief makes clear they think the

18 discovery they got does adequately provide a record for them

19 to oppose our motion, and so now they're asking to

20 essentially roll back the clock and do what they should have

21 done months ago.

22        And that is our second argument as to why it is

23 Your Honor -- Your Honor, I think, has discretion to deny the

24 discovery under those circumstances, particularly a

25 deposition that wasn't even noticed until 2 1/2 weeks after

23

 1  they filed their opposition brief.  They certainly could have

 2  issued a deposition notice a long time ago.  And that puts

 3  aside the fact that the individual that they seek to depose

 4  -- they have his deposition from another case on these

 5  issues.  That's the reason we provided it, to essentially

 6  eliminate the need to do again what they've already done.

 7       THE COURT:  All right.  Very well, Mr. Russell.

 8  Thank you.  I understand your position.  You argued very

 9  eloquently.

10       Mr. Aragon, what say you in response?

11       MR. ARAGON:  I just have a couple points to make.

12       General jurisdiction is a red herring, again.

13  Specific jurisdiction -- what they do in California, what

14  actions they take in California -- is the information we

15  want.  That's very clear.  We've explained this to them.

16  General jurisdiction -- who cares.  It's what they do in

17  California under specific jurisdiction.

18       They're telling me I have to seek leave from the

19  court to conduct discovery even though full discovery is

20  open.  That argument makes no sense.

21       They said we were not diligent -- argument makes no

22  sense.  We filed prior to the motion being filed.  We asked

23  for that information prior to the motion being filed.  The

24  only reason we noticed a 30(b)(6) deposition is because we

25  haven't been getting documents.  So we figured we'll take

1

2

3

4

5

6

7                              CERTIFICATE

8        I certify that the foregoing is a correct transcript

9    from the electronic sound recording of the proceedings in the

10   above-entitled matter.

11

12   /s/ Julie Messa_____    August 10, 2025_____
     Julie Messa, CET**D-403          Date
13   Transcriber

14

15

16

17

18

19

20

21

22

23

24

25