1  JASON D. RUSSELL (SBN 169219)
   jason.russell@skadden.com
2  PETER B. MORRISON (SBN 230148)
   peter.morrison@skadden.com
3  HILLARY A. HAMILTON (SBN 218233)
   hillary.hamilton@skadden.com
4  RAZA RASHEED (SBN 306722)
   raza.rasheed@skadden.com
5  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   2000 Avenue of the Stars, Suite 200N
6  Los Angeles, California 90067
   Telephone:  (213) 687-5000
7  Facsimile:  (213) 687-5600

8  Attorneys for Specially Appearing Defendants
   Fenix International Limited and Fenix Internet LLC
9
   *Additional Counsel appear on Signature Block*
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  SOUTHERN DIVISION

| | |
|---|---|
| 14  N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated, | CASE NO.: 8:24-cv-01655-FWS-SSC |
| 16 | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE CLAIMS OF NON-CALIFORNIA DEFENDANTS** |
| 17                              Plaintiffs, | |
| 18                    v. | |
| 19  FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC, | Judge:       Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:        September 4, 2025<br>Time:        10 a.m. |
| 24                              Defendants. | |

27
28

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT ........................................................................................... 3

I.    The Court Has Discretion to Strike the Non-California Plaintiffs'
      Allegations as Conflicting With the Court's Prior Dismissal Order ....... 3

II.   The Court's Prior Order Already Dismissed the Non-California
      Plaintiffs' Claims ......................................................................... 4

III.  The Forum-Selection Clause Governs Disputes Between Agency
      Defendants and Non-California Plaintiffs ........................................ 5

      A.    The Agency Defendants and Non-California Plaintiffs Both
            Agreed to the Forum-Selection Clause. ................................ 5

      B.    The Non-California Plaintiffs Are Bound to the Forum-
            Selection Clause by Principles of Equitable Estoppel. ............. 8

CONCLUSION ...................................................................................... 13

CERTIFICATE OF COMPLIANCE ......................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ballard v. Bank of America, N.A.*,
    No. SACV 12-1698-JST (JPRx),
    2013 WL 12136798 (C.D. Cal. Apr. 30, 2013) ......................................... 3

*Briceno v. Scribner*,
    555 F.3d 1069 (9th Cir. 2009) ................................................................. 11

*Casville Investments, Ltd. v. Kates*,
    No. 12 CIV. 6968(RA),
    2013 WL 3465816 (S.D.N.Y. July 8, 2013) .............................................. 7

*Franklin v. Community Regional Medical Center*,
    998 F.3d 867 (9th Cir. 2021) ............................................................ *passim*

*Garcia v. Pexco, LLC*,
    11 Cal.App.5th 782 (2017) ................................................................. 9, 10

*Gonzalez v. Nowhere Beverly Hills LLC*,
    107 Cal.App.5th 111 (2024) .............................................................. 12, 13

*Holland America Line Inc. v. Wartsila North America, Inc.*,
    485 F.3d 450 (9th Cir. 2007) .................................................................... 8

*Jarboe v. Hanlees Auto Group*,
    53 Cal.App.5th 539 (2020) ................................................................ 12, 13

*Moretti v. Hertz Corp.*,
    No. C 13-02972 JSW,
    2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ................................... 2, 6, 7

*Read v. Cenlar FSB*,
    No. EDCV21504JGBSPX,
    2022 WL 2102116 (C.D. Cal. Jan. 7, 2022) ............................................ 3

*Shoals v. Owens & Minor Distribution*, Inc.,
    No. 2:18-CV-2355 WBS EFB, 2
    018 WL 5761764 (E.D. Cal. Oct. 31, 2018) ......................................... 10

*Soltero v. Precise Distribution, Inc.*,
    102 Cal.App.5th 887 (2024) .............................................................. 11, 12

ii

*Soper v. United Airlines, Inc.*,
    No. 8:23-CV-02325-FWS-ADS,
    2024 WL 4800082 (C.D. Cal. Sept. 4, 2024) ............................................................. 4

*Soto v. O.C. Communications, Inc.*,
    No. 17-CV-00251-VC,
    2018 WL 10534324 (N.D. Cal. Nov. 21, 2018) ........................................................ 10

*Sun Bright Assets N.V. v. Auyeung*,
    No. 2:24-cv-10249-MWC (BFMx),
    2025 WL 1421292 (C.D. Cal. Mar. 21, 2025) ........................................................ 10

*Ustian v. Ustian*,
    No. 2:22-CV-08845-SPG-MAA,
    2024 WL 5371342 (C.D. Cal. Oct. 29, 2024) ........................................................ 1, 3

*Zaklit v. Global Linguist Solutions, LLC*,
    No. CV 13-08654-MMM (MANx),
    2014 WL 12521725 (C.D. Cal. Mar. 24, 2014) ........................................................ 6

**RULES**

Fed. R. Civ. P. 12 ................................................................................................................ 1, 3, 4

1

## **PRELIMINARY STATEMENT**[1]

2    In their Motion to Strike, Defendants established, and Plaintiffs do not dispute, that:

3    (1) the Court dismissed claims brought by B.L., S.M., and A.L. (the "Non-California

4    Plaintiffs") pursuant to the Forum-Selection Clause found in the OnlyFans Terms of

5    Service ("Terms"), (Mot. 1-2); (2) the Non-California Plaintiffs are "Users" and Agency

6    Defendants are "business Users" within the meaning of the Terms, (*id.* at 3 (citing ECF 60-

7    1, PageID#355)); and (3) all Users agreed to a binding Forum-Selection Clause placing

8    "exclusive jurisdiction" with "the courts of England and Wales," (*id.* at 3 (citing

9    PageID#366-67)). Defendants also established that Plaintiffs are bound to litigate their

10    claims against the Agency Defendants in the courts of England and Wales, because their

11    claims against the Agency Defendants are inextricably linked to their claims against the

12    Fenix Defendants. These propositions show that the Non-California Plaintiffs have no right

13    to continue this case against the Agency Defendants. In defiance of these findings,

14    Plaintiffs' Counsel amended and retained the purported claims from the Non-California

15    Plaintiffs. This they may not do. Rather, they must respect the Court's ruling and take their

16    claims to the courts of England and Wales and their claims in the Amended Complaint

17    should be stricken.

18    The Non-California Plaintiffs' arguments in opposition lack merit.

19    ***First***, the Non-California Plaintiffs argue that the Motion is procedurally improper

20    because the Court lacks the power to strike allegations that conflict with its forum non

21    conveniens order. (ECF 138, Opposition ("Opp'n") at 5.) But that is nonsense. Federal

22    Rule of Civil Procedure 12(f) permits the Court to strike "immaterial" and "impertinent"

23    matters from a complaint. It is impertinent to assert claims the Court has previously barred,

24    and barred claims are, by definition, immaterial. The Court thus has ample authority to

25    strike the non-California Plaintiffs' allegations. *See, e.g.*, *Ustian v. Ustian*, 2024 WL

26    5371342, at *3 (C.D. Cal. Oct. 29, 2024) (striking claims and parties where the plaintiff

27
28    ---
[1]    Capitalized terms have the same meaning that they had in Defendants' Motion to
Strike (ECF 123, "Motion" or "Mot."). Unless otherwise noted, all emphasis is added, and
all citations, brackets, and internal quotation marks are omitted from quoted material.

1  "completely disregarded the Court's" prior dismissal order).

2  **Second**, the Non-California Plaintiffs argue that the claims are not barred by the
3  logic of the Court's prior forum non conveniens order. (Opp'n 6-7.) Not so. As Defendants
4  explained in their Motion, the Fenix Defendants asked for the entire action to be dismissed;
5  Plaintiffs argued in opposition that the Forum-Selection Clause would not apply to the
6  Agency Defendants; the Fenix Defendants rebutted that argument; and the Court granted
7  the relief the Fenix Defendants requested. (Mot. 3-4.) The parties' litigation history
8  demonstrates that the Court's order should be construed as concluding that the Forum-
9  Selection Clause applies to the Non-California Plaintiffs' claims against the Agency
10  Defendants.

11  **Third**, the Non-California Plaintiffs argue that they are not bound to litigate their
12  claims against the Agency Defendants in the courts of England and Wales because their
13  contracts are only with Fenix, and not separately the Agency Defendants. (Opp'n 8-10.)
14  Not so. Plaintiffs do not seriously dispute that they are bound by the Terms, which require
15  *all* users bringing claims "arising out of or in connection with... [their] use of OnlyFans
16  (including, in both cases, non-contractual disputes or claims)" to litigate in the courts of
17  England and Wales. (ECF 60-1, PageID#366-67.) Plaintiffs cannot escape this
18  commitment by bringing claims against Defendants other than the Fenix Defendants. *See*
19  *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *4 (N.D. Cal. Apr. 11, 2014) (allowing non-
20  signatory defendants to invoke the forum-selection clause because they and the claims
21  asserted against them were contemplated by the terms of use).

22  **Finally**, the Non-California Plaintiffs argue that the Forum-Selection Clause does
23  not apply to their claims against the Agency Defendants under principles of equitable
24  estoppel because they have not asserted breach of contract claims against the Agency
25  Defendants. (Opp'n 10-13.) But Ninth Circuit authority holds that a plaintiff can be bound
26  by a forum-selection clause when his claims against non-signatory defendants "are based
27  on the same facts and [] inherently inseparable from... claims against" a signatory
28  defendant—not just when the plaintiff asserts a claim for breach of contract. *Franklin v.*

2

1  *Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021). Plaintiffs provide no
2  convincing basis for ignoring that authority.

3         For these reasons, and those explained below and in the Motion, the Court should
4  strike the Non-California Plaintiffs' claims and allegations from the FAC.

5                                    <u>**ARGUMENT**</u>

6  **I.    <u>The Court Has Discretion to Strike the Non-California Plaintiffs' Allegations</u>**
7        **<u>as Conflicting With the Court's Prior Dismissal Order</u>**.

8         Defendants moved to strike allegations from the First Amended Complaint ("FAC"),
9  in whole or in part, to the extent they reference the Non-California Plaintiffs or their claims.
10  (Mot. 6 (asking the Court to strike FAC ¶¶24, 32-38, 48, 50, 52, 53, 132, 175-76, 184, 187,
11  193-204, 207, 208, 212, 213, 215, 222-31, 234, 239-49, 279-323, 325-26, 354, 361, 405-
12  18).)

13         In response, the Non-California Plaintiffs argue that "Rule 12(f), governing motions
14  to strike, does not provide for" the "dismissal of claims or application of forum non
15  conveniens." (Opp'n 5.) Their argument strains credulity. Rule 12 authorizes a court to
16  strike "any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f).
17  There can be no serious debate that pursuant to Rule 12 this Court "has discretion in
18  determining whether to strike matter from a pleading." *Read v. Cenlar FSB*, 2022 WL
19  2102116, at *2 (C.D. Cal. Jan. 7, 2022). Courts in this District regularly strike impertinent
20  and immaterial claims and allegations from amended complaints. *See, e.g., Ustian*, 2024
21  WL 5371342, at *3 (striking claims that conflicted with prior court order on amending
22  complaint); *see also Ballard v. Bank of Am., N.A.*, 2013 WL 12136798, at *1 (C.D. Cal.
23  Apr. 30, 2013) (striking claim in amended complaint that conflicted with prior court order's
24  dismissal of claim). Plaintiffs offer no contrary authority and there is none to suggest a
25  court cannot strike claims it previously dismissed. Were it otherwise, a court's ruling on a
26  motion to dismiss would be meaningless because a plaintiff would invariably simply ignore
27  that order, secure in the knowledge that the court allegedly had no power to enforce its
28  determination that a claim lacked merit.

Here, the Court has *already dismissed* the Non-California Plaintiffs' claims pursuant to forum non conveniens. (*See* ECF 117, PageID#1519 (granting Motion to Dismiss as to Non-California Plaintiffs).) The Non-California Plaintiffs' allegations are therefore impertinent and immaterial, and should be stricken in order to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Soper v. United Airlines, Inc.*, 2024 WL 4800082, at *3 (C.D. Cal. Sept. 4, 2024) (Slaughter, J.). The Non-California Plaintiffs' attempt to evade the Court's order by improperly seeking to limit this Court's authority under Rule 12(f) thus fails.

## II.   The Court's Prior Order Already Dismissed the Non-California Plaintiffs' Claims.

The Motion explained that both the Non-California Plaintiffs and Agency Defendants are "Users" within the meaning of the Terms, and that this Court dismissed the Non-California Plaintiffs' claims in its April 9, 2025 Order ("Order," ECF 117) pursuant to the Forum-Selection Clause "applicable to OnlyFans *users.*" (Mot. 2 (citing ECF 117, PageID#1507).) In response, Plaintiffs claim that "the Court cabined its reasoning [in the Order] to the Fenix Defendants." (Opp'n 6.) Plaintiffs are wrong.

This Court has already heard Plaintiffs' arguments, and evidently rejected them. After Fenix filed a Motion to Dismiss asking the Court to dismiss Plaintiffs' claims pursuant to forum non conveniens, the Agency Defendants filed notices of non-opposition that "contend[ed] it should be granted." (ECF 88; *see also* ECF 86, 90, 91 (notices of non-opposition).) Plaintiffs opposed dismissal, arguing that dismissal of only Fenix would result in "splintered, piecemeal litigation." (ECF 85, PageID#795 (FNC opposition).) Fenix pointed out on reply that dismissal would equally apply to Agency Defendants, who—as "Users" under the Terms—"are bound by the same Forum-Selection Clause as Plaintiffs." (ECF 95, PageID#898.) The Court, in its Order, granted the relief sought in the Motion to Dismiss after determining that the Forum-Selection Clause governed Plaintiffs' claims that "Agency Defendants engaged in various fraudulent practices and disseminated confidential or private information without Plaintiffs' consent when… creating content," and dismissed

4

1  the Non-California Plaintiffs' claims. (ECF 117, PageID#1509-10.) The Court has already

2  decided this issue in Defendants' favor, and should strike the Non-California Plaintiffs'

3  immaterial and impertinent allegations.

4  **III.    The Forum-Selection Clause Governs Disputes Between Agency Defendants**

5  **and Non-California Plaintiffs.**

6  The Motion demonstrated that the Non-California Plaintiffs and Agency Defendants

7  are both "Users" subject to the Terms, which contain a valid and enforceable forum-

8  selection clause, and that Plaintiffs' claims against the Agency Defendants are therefore

9  governed by the Forum-Selection Clause. (Mot. 3-4.) Defendants further demonstrated that

10  the Agency Defendants can also invoke the Forum-Selection Clause against the Non-

11  California Plaintiffs, because those Plaintiffs' claims are intimately intertwined with the

12  Terms. (Mot. 4-5.)

13  In response, the Non-California Plaintiffs make two arguments. First, Plaintiffs

14  argue that the Terms "do[] not create an agreement between Users and Agencies, only an

15  agreement between each User and Fenix." (Opp'n 9.) Second, Plaintiffs assert that

16  equitable estoppel does not apply because "Plaintiffs do not seek to impose liability on the

17  Agency Defendants under the [Terms]." (Opp'n 10.) Both arguments are wrong.

18  **A.    The Agency Defendants and Non-California Plaintiffs Both Agreed to**

19  **the Forum-Selection Clause.**

20  The Motion showed, and Plaintiffs do not dispute, that Plaintiffs are "User[s] of

21  OnlyFans"—and that Creators and their agents are "business Users"—who agreed to the

22  Forum-Selection Clause found in OnlyFans' Terms. (Mot. 3-5.) In response, Plaintiffs

23  argue that the Agency Defendants "are not parties to the agreement." (Opp'n 7.) Not so.

24  The Forum-Selection Clause applies to "Fans" and "business Users" bringing claims

25  "arising out of or in connection with… [their] use of OnlyFans (including, in both cases,

26  non-contractual disputes or claims)." (ECF 60-1, PageID#366-67.) As this Court has

27  already recognized, "Plaintiffs are… *users* of the website OnlyFans" who "subscribe to

28  one or more *creators represented by [Agency Defendants]*." (ECF 117, PageID#1505.) The

5

Terms define "User" as "any user of OnlyFans, whether a Creator or a Fan or both." (ECF 60-1, PageID#355.) Plaintiffs and Agency Defendants are therefore "Fans" and "business Users" subject to the Forum-Selection Clause. And the Court has also already found that "the broad scope of the forum selection covers Plaintiffs' claims." (ECF 117, PageID#1510.) Plaintiffs cannot escape that both they and Agency Defendants are "Users" subject to the Forum-Selection Clause in the Terms.

Plaintiffs next argue, citing no caselaw, that the Terms create no agreement "between any Plaintiff and any Agency Defendant." (Opp'n 8.) Yet Plaintiffs' own allegations disagree, and the Complaint makes clear that "***Defendants'*** actions and failures to act are systemic and uniform across the class, ***as are the terms of service and other contract documents***." (FAC ¶335; *see also* FAC ¶332 (alleging injuries would have been avoided "had ***Defendants*** disclosed and/or taken action on… terms of service violations"); FAC ¶441 (alleging racketeering enterprise revolving around "[Fenix's] development and implementation of policies that… were intentionally not enforced," and "Agency Defendants'… know[ledge] that [Fenix would not take action" under the Terms).) Courts confronted with similar allegations have allowed enforcement of the forum-selection clause as to all Defendants. *See, e.g.*, *Zaklit v. Glob. Linguist Sols., LLC*, 2014 WL 12521725, at *15 n.92 (C.D. Cal. Mar. 24, 2014) (treating all defendants as parties to contract and forum-selection clause based on plaintiffs' allegations that conflated defendants and their actions).

Courts have also held that similar contracts can be enforced by multiple defendants. *See Moretti*, 2014 WL 1410432, at *4 (allowing all defendants to invoke the forum-selection clause). *Moretti* is particularly instructive, because the plaintiff there visited defendant Hotwire's website to reserve a car, was allegedly charged (without his consent) for additional insurance by defendants Hertz and Dollar, and filed a putative class action against all three. *Id.* at *1. The plaintiff agreed to the terms of service on Hotwire's website, and those terms—like those Plaintiffs and Agency Defendants agreed to—consented to "exclusive jurisdiction and venue" in another jurisdiction "for all disputes arising out of,

1  or relating to, the Terms and Conditions and use of this site." *Id.* at *3; *see also* ECF 60-1,

2  PageID#366-67 (stating that forum-selection clause is applicable to "any claim… arising

3  out of or in connection with your agreement with us or your use of OnlyFans"). The *Moretti*

4  court allowed Hertz and Dollar to enforce the forum-selection clause because, in part, the

5  Terms clearly intended to "bind Hertz and Dollar by explicitly stating an expectation of

6  compliance by all parties, *including providers*." 2014 WL 1410432, at *4. The same is true

7  of the OnlyFans Terms, which are clearly intended to bind all users, including Plaintiffs

8  and "business Users" like the Agency Defendants. (ECF 60-1, PageID#366-67.)

9      Plaintiffs argue that the Terms themselves "prohibit[] the Agency Defendants from

10  enforcing [the Terms] against Plaintiffs," ostensibly because the Terms state they "do[] not

11  give rights to any third parties." (Opp'n 9 (citing ECF 60-1, PageID#365).)[2] Plaintiffs'

12  attempt to rewrite the Terms fails. The Terms define "User" as "any user of OnlyFans,

13  whether a Creator or a Fan or both." (ECF 60-1, PageID#355.) Plaintiffs are "Users," and

14  both Plaintiffs and "business Users" like Creators and their agents agreed to the Forum-

15  Selection Clause. (*Id.*, PageID#366-67.) As a result, neither Plaintiffs nor Agency

16  Defendants are "third parties" within the meaning of the Terms, and Plaintiffs' reliance on

17  a provision about third party rights is misplaced.

18      Plaintiffs also argue in a footnote that Defendants "do not attempt to invoke" the

19  principle that "a non-signatory [may] enforce a forum[-]selection clause when the alleged

20  conduct of the nonparties is closely related to the contractual relationship between the

21  parties." (Opp'n 7 n.3.) Not so. The Motion demonstrated that "even if the Agency

22  Defendants were not already Users (and thus signatories to the forum-selection clause),"

23  they "would still be able to invoke the forum-selection clause against Plaintiffs." (Mot. 4.)

24

---

25  [2]    Plaintiffs cite only one case as support for their argument. (Opp'n 9 (citing *Casville Invs., Ltd. v. Kates,* 2013 WL 3465816, at *6 (S.D.N.Y. July 8, 2013).) The plaintiffs in

26  *Casville* sought to invoke a forum-selection clause in a contract *they* never agreed to, and which was signed by only two of the defendants. *See Casville Invs. Ltd.,* 2013 WL

27  3465816, at *5 ("Plaintiffs are not… parties to the Agreement—which was entered into by [defendant] Jason Kates… and Mark Tolstoi on behalf of [defendant] RVUE."). Here, by

28  contrast, there is no dispute that all parties, including Plaintiffs, Agency Defendants, and Fenix, all agreed to the Terms, including the Forum-Selection Clause.

Even if Agency Defendants were nonparties to the Terms, Agency Defendants may invoke the forum-selection clause because "[their] alleged conduct… is closely related to the contractual relationship." *Sun Bright Assets N.V. v. Auyeung*, 2025 WL 1421292, at *3 (C.D. Cal. Mar. 21, 2025) (citing *Holland Am. Line Inc. v. Wartsila North Am., Inc.*, 485 F.3d 450 (9th Cir. 2007)). As explained above, Plaintiffs' own allegations demonstrate that Agency Defendants' alleged conduct is "closely related" to the Terms. (*See, e.g.*, FAC ¶335 (alleging Defendants uniformly violated or ignored "the terms of service and other contract documents"); *see also* FAC ¶332 (alleging all Defendants failed to disclose or act on "terms of service violations"); FAC ¶441 (alleging racketeering enterprise revolving around "[Fenix's] development and implementation of policies that… were intentionally not enforced," and "Agency Defendants'… know[ledge] that [Fenix] would not take action" under the Terms).) Plaintiffs cannot rewrite the Agency Defendants out of both the Terms and their own Complaint.

> **B.  <u>The Non-California Plaintiffs Are Bound to the Forum-Selection Clause by Principles of Equitable Estoppel</u>**.

The Motion explained that, alternatively, binding Ninth Circuit precedent allows Agency Defendants to invoke the Forum-Selection Clause based on equitable estoppel, because Plaintiffs' claims against Agency Defendants "are based on the same facts and [] inherently inseparable from… claims against [Fenix]." (Mot. 4-5 (citing *Franklin*, 998 F.3d at 870-71.) Plaintiffs do not dispute that this Court has already found that their claims against Agency Defendants "are logically or causally connected to the Terms of Service" and "covered by the forum[-]selection clause." (ECF 117, PageID#1510.) Indeed, they could not do so if they had tried. As the Motion explains, the Non-California Plaintiffs explicitly allege that all Defendants committed a RICO violation by duping users into believing that Fenix's policies in its Terms of Service would be enforced, when (supposedly) Fenix and the Agency Defendants had agreed that the Terms would not be enforced so that the Agency Defendants could take advantage of users. (FAC ¶¶439-46; Mot. 4-5.) Because the question of "whether [the Non-California Plaintiffs] can maintain

1   liability against the" Agency Defendants cannot "be answered without reference" to the
2   Terms, the Non-California Plaintiffs are equitably estopped from disclaiming the Terms'
3   Forum-Selection Clause. *Franklin*, 998 F.3d at 876.

4           In response, the Non-California Plaintiffs argue that equitable estoppel only applies
5   when the plaintiff brings a breach of contract claim against the defendants seeking to
6   invoke the forum-selection clause. (Opp'n 10.) The Non-California Plaintiffs claim that
7   because they have not asserted a breach of contract claim against the Agency Defendants,
8   those Defendants cannot invoke the Forum-Selection Clause. (*Id.*) But *Franklin* squarely
9   forecloses this argument, holding that under California law, a plaintiff can be bound by a
10  forum-selection clause when his claims against non-signatory defendants "are based on the
11  same facts and [] inherently inseparable from… claims against" a signatory defendant.
12  *Franklin*, 998 F.3d at 870-71.

13          Recognizing that *Franklin* dooms their position, Plaintiffs argue that *Franklin*
14  should be disregarded based on lower court decisions criticizing *Garcia v. Pexco, LLC*, 11
15  Cal.App.5th 782 (2017), on which *Franklin* relied. (Opp'n 12.) In *Garcia*, a plaintiff signed
16  a contract with a temporary staffing company (Real Time) that contained an arbitration
17  clause, and was then assigned to work at another company (Pexco). *Garcia*, 11 Cal.App.5th
18  at 784. The plaintiff then sued Real Time and Pexco for statutory violations of the Labor
19  Code and unfair business practices pertaining to his time at Pexco. *Id.* at 785. The plaintiff
20  sought to prevent Pexco from invoking the arbitration clause as a nonsignatory by arguing
21  (as Plaintiffs do here) that his claims were not "intertwined" with the arbitration clause
22  because he was "not seeking to enforce the terms and conditions of his employment
23  contract containing the arbitration clause." *Id.* at 786. The *Garcia* court rejected this
24  argument, noting that the plaintiff's claims against the nonsignatory (just like Plaintiffs'
25  claims in this case) were "based on the same facts alleged against [the signatory
26  defendant]." *Id.* at 788. The Ninth Circuit in *Franklin* treated *Garcia* as an authoritative
27  statement of California law, and held that it "not an outlier case," and in fact is perfectly
28  "consistent with Ninth Circuit precedent on equitable estoppel." *Franklin*, 998 F.3d at 871,

1  873.

2   Plaintiffs argue that *Franklin*'s reasoning "has been rejected by several courts," and

3  then cite two 2018 federal district court cases that purportedly criticized *Garcia*. (Opp'n

4  12); *see Shoals v. Owens & Minor Distribution*, *Inc.*, 2018 WL 5761764, at *9 (E.D. Cal.

5  Oct. 31, 2018); *Soto v. O.C. Commc'ns, Inc.*, 2018 WL 10534324, at *2 (N.D. Cal. Nov.

6  21, 2018). But, of course, the Ninth Circuit's decision in *Franklin* post-dates *Shoals* and

7  *Soto*, and therefore overrules any suggestion in those cases that courts in this Circuit should

8  not follow *Garcia*'s conception of equitable estoppel. Indeed, *Franklin* noted that "some

9  federal district courts have disagreed with *Garcia*'s result"—the same argument Plaintiffs

10  have asserted here—but disregarded those decisions because "the opinions of other federal

11  district judges on a question of state law do not constitute convincing evidence that the

12  state supreme court would decide an issue differently" than *Garcia* did. *Franklin*, 998 F.3d

13  at 874 n.9.

14   In any event, neither *Shoals* nor *Soto* actually supports Plaintiffs' position. *Shoals* is

15  distinguishable because the plaintiff in that case "ha[d] a distinct factual basis for each

16  claim as to each defendant," and thus claims against the non-signatory defendants were not

17  intertwined with the claims against the signatory defendant. *Shoals*, 2018 WL 5761764, at

18  *9. Here, by contrast, Plaintiffs allege that all Defendants are liable because they used the

19  Terms to deceive Users into utilizing OnlyFans' chat services. And in *Soto*, the Court

20  denied enforcement of an arbitration clause without prejudice because "the parties'

21  briefing" was "inadequate" and had not "adequately addressed" the equitable estoppel

22  issue—not because it found that equitable estoppel only applies when the plaintiff asserts

23  a breach of contract claim against non-signatory defendants. *Soto*, 2018 WL 10534324, at

24  *2.

25   Just last week, another federal district court in this Circuit, considering similar

26  factual circumstances and arguments, allowed a nonsignatory to enforce a contractual

27  arbitration provision pursuant to the doctrine of equitable estoppel. *See Bender v. Twilio,*

28  *Inc.*, 2025 WL 2308484, at *8 (N.D. Cal. Aug. 11, 2025). The plaintiff in that case alleged

Wiretap, CIPA, and CDAFA claims against the defendant for a software development kit the defendant had provided to Calm.com. *Id.* at *1. The plaintiff had signed an arbitration agreement with Calm.com, which the defendant moved to enforce. *Id.* The district court applied the doctrine of equitable estoppel (citing *Franklin*), and determined that the plaintiff's claims were "intimately founded in and intertwined with" the Calm.com Terms of Service because those Terms governed "how Calm.com may share user information with third parties… and whether [the plaintiff] consented to such transfer." *Id.* at 6. The court also rejected arguments identical to Plaintiffs' here, concluding that: (1) the court could not and would not depart from binding Ninth Circuit precedent laying out the elements of equitable estoppel, (2) equitable estoppel applied even where the Terms limited the agreement to signatories and provided no benefits to third parties, and (3) the claims were bound up with the Terms. *Id.* at *6-7. As the court explained, "the linchpin for equitable estoppel is equity—fairness," and the plaintiff "could have sued Calm.com on essentially the same set of allegations, but would have been required to arbitrate those claims… [e]quitable estoppel prevents such attempts to artfully plead around an inconvenient arbitration agreement." *Id.* at *7. The same is true here: Plaintiffs have sued Fenix, had their claims dismissed pursuant to a binding forum-selection clause, and cannot artfully plead around that to sustain claims against Agency Defendants.

Plaintiffs also cite the California Court of Appeal's decision in *Soltero v. Precise Distribution, Inc.*, 102 Cal.App.5th 887 (2024), which "decline[d] to follow *Garcia*'s equitable estoppel holding," as a basis for ignoring *Franklin*. (Opp'n 11-12.) But *Soltero* was not "decided by the California Supreme Court, which has yet to address this issue." *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009). A split among the various districts and divisions of the Court of Appeal is not, by itself, a sufficient justification to overturn Ninth Circuit precedent construing California law. *See id.* at 1080-82 (declining to overturn prior Ninth Circuit interpretation of state law where there was a split among panels of the California Court of Appeal). That is particularly true here, because at least one other panel of the Court of Appeal has concluded that *Soltero* "erred" and broke from

California precedent by declining to follow *Garcia*, putting *Soltero* in the minority. *See Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal.App.5th 111, 127 (2024). Thus, *Soltero* does not allow this Court to ignore *Franklin*.

Doubly so because *Soltero* is distinguishable. In *Soltero*, the court declined to invoke equitable estoppel to require the plaintiff to arbitrate with a nonsignatory to the contract containing the arbitration clause because the plaintiff was "***only suing the nonsignatory***," and had "foregone any claims against [the signatory]." 102 Cal.App.5th at 897. Here, Plaintiffs are suing ***both*** Fenix and Agency Defendants, and alleging a joint enterprise revolving around "cooperat[ion] on a common purpose." (FAC ¶362.) Thus, *Soltero* is inapposite.

Finally, Plaintiffs rely on *Jarboe v. Hanlees Auto Grp.*, 53 Cal.App.5th 539, 554-55 (2020), to argue that the Court cannot invoke equitable estoppel because "'the precise nature of the relationship' between the Fenix Defendants and the Agency Defendants 'is unproven in this record.'" (Opp'n 13.) But *Jarboe* is distinguishable and dubious. In *Jarboe*, the court held that the defendant had not shown that the non-signatory's claims were intimately intertwined because the defendant relied on "boilerplate allegations" treating all defendants interchangeably. 53 Cal.App.5th at 554. Here, by contrast, Plaintiffs pled in detail that the Fenix and Agency Defendants have distinct roles in the same alleged scheme of using the Terms and violations of the Terms to defraud OnlyFans users. (FAC ¶¶439-46; Mot. 4-5.) Thus, *Jarboe* is distinguishable.

Moreover, the case is dubious because it seemed to fault the non-signatory defendants for not admitting or offering evidence to prove that they engaged in concerted illegal conduct with the signatory defendant. *Jarboe*, 53 Cal.App.5th at 651. As the *Gonzalez* court held in rejecting *Jarboe* as wrongly decided, requiring the Fenix and Agency Defendants to offer proof that they conspired together (a conspiracy that, contrary to Plaintiffs' allegations, simply did not occur): (1) asks the wrong question, since the "equitable estoppel analysis focuses not on the relationships of the parties but the interrelatedness of the plaintiff's claims and obligations arising from an agreement

1 containing [a forum-selection clause]"; (2) "puts the defendant in an inequitable bind—

2 admit a contested issue or eschew" its contractual rights; and (3) confuses the issue of

3 whether the Fenix and Agency Defendants conspired together with the question of "what

4 forum that issue should be decided." *Gonzalez*, 107 Cal.App.5th at 125. Thus, the Court

5 should decline to follow *Jarboe* here for these reasons as well.

6 <u>**CONCLUSION**</u>

7      The Court should strike the allegations in FAC ¶¶24, 32-38, 48, 50, 52, 53, 132, 175-

8 76, 184, 187, 193-204, 207, 208, 212, 213, 215, 222-31, 234, 239-49, 279-323, 325-26,

9 354, 361, and 405-18 in whole or in part as reflected in Appendix A.

10

11 DATED: August 18, 2025        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

12          By: _____*/s/ Jason D. Russell*_____

13                    JASON D. RUSSELL
              *Attorneys for Specially Appearing Defendants*

14             Fenix International Limited and Fenix Internet LLC

15          ***All other signatories listed, and on whose behalf the***
          ***filing is submitted, concur in the filing's content and***
         ***have authorized the filing.***

16

17          KINGFISHER LAW APC

18          By: _____*/s/ Nithin Kumar*_____

19                     NITHIN KUMAR
                *Attorneys for Defendant*

20                   Content X, Inc.

21          DENTONS US LLP

22

23          By: _____*/s/ Michael Gehret*_____

24                    MICHAEL GEHRET
                *Attorneys for Defendant*

25                   Elite Creators LLC

26

27

28

BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP

By: _____/s/ Oliver Rocos_____
OLIVER ROCOS
*Attorneys for Defendant*
Moxy Management

CONSTANGY BROOKS SMITH & PROPHETE LLP

By: _____/s/ Younjin Lee_____
YOUNJIN LEE
*Attorneys for Defendant*
Verge Agency Inc.

THE JACOBS LAW FIRM, PC

By: _____/s/ Matthew Jacobs_____
MATTHEW JACOBS
*Attorneys for Defendants*
Unruly Agency LLC and Behave Agency LLC

14

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 4,310 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: August 18, 2025          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
                    *Jason D. Russell*
                    JASON D. RUSSELL
         *Attorneys for Specially Appearing Defendants*
         Fenix International Limited and Fenix Internet LLC