JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC<br><br>**(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OR ALTERNATIVELY CERTIFICATION OF AN INTERLOCUTORY APPEAL; and**<br><br>**(2) DECLARATION OF OR-EL S. VAKNIN IN SUPPORT.**<br><br>Judge:   Hon. Fred W. Slaughter<br>Courtroom:   10D<br>Date:   September 4, 2025<br>Time:   10:00 a.m. |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    The Court Should Partially Reconsider Its FNC Order Based on *EpicentRx II*, and Grant Fenix's FNC Motion in Its Entirety .................... 2

    II.   Alternatively, the Court Should Certify Its FNC Order to the Ninth Circuit ................................................................................... 9

CONCLUSION ........................................................................................................ 13

CERTIFICATE OF COMPLIANCE ....................................................................... 14

# TABLE OF AUTHORITIES

**CASES**  Page(s)

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
  109 F.4th 1132 (9th Cir. 2024) ............................................................................. 6

*America Online, Inc. v. Superior Court*,
  90 Cal.App.4th 1 (2001) ............................................................................... *passim*

*California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*,
  766 F.2d 1319 (9th Cir. 1985) ............................................................................. 8

*City of San Diego v. Monsanto Co.*,
  310 F.Supp.3d 1057 (S.D. Cal. 2018) ................................................................ 13

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ............................................................................................ 1

*Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*,
  28 F.4th 956 (9th Cir. 2022) ............................................................................... 8

*Discover Bank v. Superior Court*,
  36 Cal.4th 148 (2005) ......................................................................................... 7

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) ............................................................................ 6

*Effron v. Sun Line Cruises, Inc.*,
  67 F.3d 7 (2d Cir. 1995) .................................................................................... 12

*EpicentRx, Inc. v. Superior Court*,
  No. S282521,
  2025 WL 2027272 (Cal.) ............................................................................ *passim*

*Ford v. Brown*,
  319 F.3d 1302 (11th Cir. 2003) ........................................................................ 12

*Gemini Techs., Inc. v. Smith & Wesson Corp.*,
  931 F.3d 911 (9th Cir. 2019) .............................................................................. 7

*Health Net of California, Inc. v. Department of Health Services*,
  113 Cal.App.4th 224 (2003) ............................................................................. 12

*In re Pacific Gas & Electric Co.*,
  280 B.R. 506 (N.D. Cal. 2002) ................................................................................ 12

*Loritz v. CMT Blues*,
  271 F.Supp.2d 1252 (S.D. Cal. 2003) ..................................................................... 10

*Massachusetts v. United States*,
  333 U.S. 611 (1948) .................................................................................................. 8

*Mata v. Avianca, Inc.*,
  678 F.Supp.3d 443 (S.D.N.Y. 2023) ........................................................................ 1

*Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc.*,
  215 F.R.D. 581 (D. Ariz. 2003) ................................................................................ 9

*Planned Parenthood of the Great Northwest and the Hawaiian Islands v. Wasden*,
  564 F.Supp.3d 895 (D. Idaho 2021) ......................................................................... 9

*Severo v. Forest River Inc.*,
  No. B336863,
  2025 WL 2218061 (Cal. Ct. App. Aug. 5, 2025) ................................................ 5, 10

*Stewart v. Wachowski*,
  574 F.Supp.2d 1074 (C.D. Cal. 2006) ...................................................................... 9

*Stiner v. Brookdale Senior Living, Inc.*,
  383 F.Supp.3d 949 (N.D. Cal. 2019) ...................................................................... 11

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959) .................................................................................... 8

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988) ................................................................................................ 12

*Vazquez v. Superior Court*,
  4 Cal.3d 800 (1971) .................................................................................................. 6

*Verthelyi v. PennyMac Mortgage Investment Trust*,
  No. CV 24-05028-MWF (JCX),
  2025 WL 1720193 (C.D. Cal. May 5, 2025) .......................................................... 11

**STATUTES**

28 U.S.C. §1292 ................................................................................................. *passim*

Cal. Civ. Code §1668 ................................................................................................. 7

Cal. Civ. Code §1751 ................................................................................................. 3

California Code Civ. Proc. §631 ............................................................................... 5

**RULES**

Federal Rule of Civil Procedure 54 ......................................................................... 12

**OTHER AUTHORITIES**

Edward H. Cooper, 16 Federal Practice & Procedure Jurisdiction § 3930
   (3d ed. May 2025 update) .................................................................................. 11

# PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition ("Opp'n") cites 18 cases in attempting to argue that the Court should decline to partially reconsider its FNC Order, or certify an interlocutory appeal, in response to the California Supreme Court's recent decision in *EpicentRx, Inc. v. Superior Court*, --- P.3d ---, No. S282521, 2025 WL 2027272 (Cal.) ("*EpicentRx II*"). As discussed in detail below and in the accompanying Declaration of Or-el S. Vaknin, Plaintiffs attributed false, AI-hallucinated quotations or holdings to at least *11* of those cases. This is the third distinct filing over a monthlong period in which Plaintiffs have used non-existent quotations to attempt to defeat Fenix's requests for relief. (*See* Vaknin Declaration in Support of Fenix MTD Reply (collecting prior AI hallucinations).) This pattern of submitting false, AI-generated law is an "abuse of the judicial system" that harasses Fenix and wastes the Court's time and resources. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990); *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 461 (S.D.N.Y. 2023) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."). It must be stopped. The Court should disregard Plaintiffs' latest tainted efforts and grant the Motion.

Setting aside Plaintiffs' paucity of legitimate authority in support, their arguments fail to overcome Fenix's showing that the Court should either dismiss this case or certify the Court's FNC Order to the Ninth Circuit. Plaintiffs do not dispute and thus concede that *EpicentRx II* overturned the cases the Court relied upon to reach its prior conclusion that California law prohibits forum-selection clauses picking jurisdictions that do not guarantee civil jury trials. *See EpicentRx II*, 2025 WL 2027272, at *1 (holding that a "forum[-]selection clause is not unenforceable" under California law "simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy"). Instead, Plaintiffs' core

---

[1] Capitalized terms have the same meaning in this brief as they did in Fenix's Motion for Partial Reconsideration or Alternatively Certification of an Interlocutory Appeal. (ECF 147, "Motion" or "Mot.") Unless otherwise noted, all emphasis is added, and all citations, brackets, footnotes, and internal quotation marks are omitted from all quoted material for ease of reading.

argument against reconsideration and certification is that *EpicentRx II* left in place the Court's conclusion that under *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1 (2001), California courts prohibit forum-selection clauses selecting jurisdictions that do not guarantee California-style opt-out class actions. (Opp'n 7-8.)

Plaintiffs are wrong. *EpicentRx II* read *America Online* as limited to situations where the plaintiff asserts claims under statutes that void agreements that could diminish a plaintiff's substantive rights. *See* 2025 WL 2027272, at *10 ("The *America Online* court held that these provisions ran afoul of the CLRA's antiwaiver provision."); *id.* at *12 (declining to apply *America Online* without a statute that "explicitly or implicitly voids a private agreement that waives a substantive statutory right"). Plaintiffs do not assert any such claims here, meaning that *America Online* does not apply. (Mot. 9-11.) Moreover, *EpicentRx II* explained at great length that California courts will deny enforcement of forum-selection clauses on public policy grounds *only* when the policy is firmly grounded in positive law—typically a statute. *See* 2025 WL 2027272, at *6-8 (explaining, among other things, that "courts are reluctant to decline enforcement of contractual provisions on public policy grounds, especially where no statute or constitutional provision directly speaks to the issue"). That analysis militates against reading *America Online* as establishing a general, judicially-created policy against forum-selection clauses selecting jurisdictions without California class actions, untethered to any statute declaring such a policy.

At bottom, *EpicentRx II* removed the public policy bases on which the Court previously denied Fenix's FNC Motion. The Court should partially reconsider its FNC Order and dismiss this case. At a minimum, the Court should certify this important, outcome-determinative legal issue to the Ninth Circuit.

## ARGUMENT

### I. The Court Should Partially Reconsider Its FNC Order Based on *EpicentRx II*, and Grant Fenix's FNC Motion in Its Entirety

The Court's FNC Order concluded that enforcing the Forum-Selection Clause against the two Plaintiffs who live in California would violate California public policy

2

because the courts of England and Wales do not have civil jury trials, or California-style opt-out class actions. (ECF 117 at PageID#1513-16.) *EpicentRx II* overturns both rationales. As to civil jury trials, the California Supreme Court held that a "forum[-]selection clause is not unenforceable" under California law "simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy." *EpicentRx II*, 2025 WL 2027272, at *1. And as to opt-out class actions, the court made clear that *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1 (2001)—the case Plaintiffs and the Court relied upon for California's policy in favor of consumer class actions—applies *only* when the plaintiff asserts a claim under state statutes that void contracts which may diminish a consumer's substantive rights. *Id.* at *10-12. Because Plaintiffs do not assert any claims covered by a statutory anti-waiver provision, California does not have any public policy that would prohibit the Court from enforcing the Forum-Selection Clause against the two California Plaintiffs. The Court should partially reconsider its FNC Order based on *EpicentRx II*, and grant Fenix's FNC Motion in its entirety.

Plaintiffs concede that after *EpicentRx II*, it is no longer proper for the Court to decline to enforce the Forum-Selection Clause because the courts of England and Wales do not guarantee civil jury trials. But they argue that the lack of opt-out class actions in English and Welsh courts remains a sufficient basis to partially deny the FNC Motion. Plaintiffs' arguments lack merit.

***First***, Plaintiffs argue that *America Online*'s decision not to enforce a Virginia forum-selection clause based on Virginia's lack of consumer class actions was based on two independent sources of law: (1) the Consumer Legal Remedies Act's statutory anti-waiver provision, Cal. Civ. Code §1751, which provides that "[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void," Cal. Civ. Code §1751; and (2) a general public policy that the *America Online* court invented as a matter of common law rulemaking. (Opp'n 5-6.) Plaintiffs argue that while *EpicentRx II* made clear that statutory anti-waiver provisions create a public policy against

3

forum-selection clauses only when, like the CLRA, they contain language "void[ing]" contracts, *EpicentRx II*, 2025 WL 2027272, at *12, the California Supreme Court's decision did not address *America Online*'s judicially-invented public policy in favor of consumer class actions. (Opp'n 5-6.) Accordingly, Plaintiffs argue that even after *EpicentRx II*, *America Online* creates a public policy against enforcing any forum-selection clauses designating the multiple states and hundreds of countries that do not guarantee opt-out class actions.[2] (Opp'n 7-8, 10-11.)

Plaintiffs' argument cannot be squared with *EpicentRx II*'s reasoning.

The California Supreme Court read *America Online* as turning solely on the CLRA's statutory antiwaiver provision, not a judicially-created public policy rule divorced from any California statute. As the court explained:

> In *America Online*, a plaintiff brought claims against an internet service provider, including under California's Consumers Legal Remedies Act. The plaintiff's agreement with the provider contained a forum[-]selection clause and choice of law clause in favor of Virginia. ***The America Online court held that these provisions ran afoul of the CLRA's antiwaiver provision*** because they would force plaintiffs to allege claims under Virginia's scheme for consumer protection, which was far less favorable to plaintiffs than the CLRA.

---

[2]   One reason the California Supreme Court held that California does not have a public policy against forum selection clauses picking non-civil jury jurisdictions is that most countries do not guarantee civil jury trials, and thus embracing such a public policy would effectively preclude parties from agreeing to litigate in foreign forums. *See EpicentRx II*, 2025 WL 2027272, at *10 ("Under plaintiff's theory, any litigant who can satisfy California's jurisdiction and venue requirements could maintain an action in California so long as the litigant invokes the right to a jury trial, notwithstanding an agreement to litigate its claims in a foreign forum, if the litigant could show its jury trial rights in the foreign forum would be impaired. Because civil jury trials are highly atypical outside the United States, California would become a magnet for such foreign disputes — again, notwithstanding the fact that the litigants have expressly agreed to submit to a foreign forum."). The same rationale is equally applicable to Plaintiffs' purported pro-consumer class action policy. The vast majority of countries (and two U.S. states—Virginia and Mississippi) do not permit California-style opt-out class actions. (*See* Mot. 15.) Thus, embracing Plaintiffs' position would mean that California consumers cannot enter enforceable agreements to litigate in most of the world's jurisdictions. (*See id.*)

*Id.* at *10. The California Supreme Court went on to explain that *America Online*'s rationale applies only when the plaintiff's claims are shielded by a statute that "explicitly or implicitly voids a private agreement that waives a substantive statutory right." *Id.* at *12. Thus, the California Supreme Court read *America Online* as limited to cases involving a CLRA-like antiwaiver provision. At least one panel of the California Court of Appeal has read *EpicentRx II* the same way. *See Severo v. Forest River Inc.*, 2025 WL 2218061, at *3 n.2 (Cal. Ct. App. Aug. 5, 2025) (explaining that *EpicentRx II* "left standing cases, including" *America Online*, "which struck down forum selection clauses based on substantive, *statutory* provisions rendering void the waiver of specific rights" (emphasis in original)). Accordingly, after *EpicentRx II*, Plaintiffs cannot rely on *America Online* to argue that California has a general, judicially-declared policy against enforcing forum-selection clauses that would require a consumer to litigate in jurisdictions that do not permit California-style opt-out class actions.

Plaintiffs' argument is also fundamentally at odds with *EpicentRx II*'s reasoning and result. The issue in *EpicentRx II* was "whether the lower courts were correct to decline enforcement of the forum[-]selection clause on public policy grounds based solely on the clause's impact on plaintiff's jury trial right." *Id.* at *13. The California Supreme Court assumed as a basic premise of its opinion that such a public policy must arise, if at all, from California Code of Civil Procedure §631—a statute providing that "a jury may only be waived" after a lawsuit is initiated, or when a party fails to request one, appear at trial, or pay jury fees. But the Court held that while §631 expressed a public policy against enforcing pre-dispute jury trials waivers **in California**, it was not sufficient to create "a strong public policy against forum[-]selection clauses or agreements to litigate in a jurisdiction that does not recognize the same civil jury trial right," a separate question subject to "distinct" "considerations." *EpicentRx II*, 2025 WL 2027272, at *13. It would be counterintuitive to hold that §631 was not enough to establish a public policy against requiring Californians to litigate in jurisdictions that do not recognize civil jury trials, if California courts (like the *America Online* panel) could simply declare one based on no

5

statutory authority at all. Thus, the California Supreme Court's approach in *EpicentRx* indicates that *America Online* did not—and could not—invent a general, judicially-created public policy against any forum-selection clause picking a jurisdiction that cannot accommodate California-style opt-out class actions.

**Second**, Plaintiffs argue that two other cases—*Vazquez v. Superior Court*, 4 Cal.3d 800 (1971), and *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam)—also declare a public policy against forum-selection clauses selecting non-class action jurisdictions. (Opp'n 5-6.) Although Plaintiffs do not say so explicitly, presumably Plaintiffs' point is that their pro-class action policy is not just a product of *America Online*, and thus survives even if *EpicentRx II* limited *America Online*.

But Plaintiffs' cases do not support their argument. *Vazquez* held that courts cannot bar consumer class actions based on public policy considerations since the California Legislature has authorized them; not that California has a public policy that voids any forum-selection clause that could interfere with consumer class actions. *See* 4 Cal.3d at 818 ("We could not possibly hold, in the face of" language in the CLRA authorizing class actions "that public policy considerations compel refusal to entertain consumers' class actions which may be maintained under other provisions of law."). And as Fenix explained in the Motion (at 11 n.3), *Doe 1* was simply applying *America Online*. *See* 552 F.3d at 1084. The Ninth Circuit's "precedent interpreting state law… is only binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024). *EpicentRx II* demonstrates that the Ninth Circuit's interpretation of *Doe 1* was incorrect; thus, the Court must follow *EpicentRx II*'s interpretation of *America Online* to the extent it conflicts with *Doe 1*. Plaintiffs failed to respond to this point, presumably because they have no response.

**Third**, Plaintiffs argue that California public policy may arise from caselaw rather than statutes, and thus *America Online* should be interpreted as declaring a general pro-consumer class action policy separate and apart from its reliance on the CLRA's anti-

6

waiver provision. (Opp'n 9.) But *EpicentRx II* explained in a multi-page section of its opinion titled "Forum Selection and Public Policy," that: (1) the public policy exception "does not give courts unbounded discretion to decline to enforce otherwise valid forum[-]selection clauses"; (2) "courts are reluctant to decline enforcement of contractual provisions on public policy grounds, ***especially where no statute or constitutional provision directly speaks to the issue***"; (3) "[f]reedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions"; (4) "[n]o court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds"; and (5) because of "the importance of enforcing forum[-]selection clauses," in "all but the most unusual cases … the interest of justice is served by holding parties to their bargain." *EpicentRx II*, 2025 WL 2027272, at *7-8. The court's reasoning suggests that *America Online* should not be read as declaring a general public policy untethered to the statute upon which it relied.

Plaintiffs' attempt to use AI hallucinations to support their argument fails. Plaintiffs cite "*Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019)," for the proposition that "public policy grounds for declining to enforce a forum-selection clause need not be codified in statute," but may instead be "judicially declared." (Opp'n 9.) But none of the quoted language appears in the Ninth Circuit's opinion. To the contrary, *Gemini Technologies* declined to enforce a forum-selection clause based on "an Idaho statute that clearly states a strong public policy," rather than any judicial rule. 931 F.3d at 916. Plaintiffs also quote "*Discover Bank v. Superior Court*, 36 Cal.4th 148, 160 (2005)," for the proposition that "[p]ublic policy may be found in … judicial decisions as well as in constitutions and statutes." (Opp'n 9.) But once again, the "quoted" language appears to be a machine-generated fiction. Moreover, *Discover Bank* declined to enforce a class action waiver based on a statute (Cal. Civil Code §1668), not any judicially-create public policy. *See* 36 Cal.4th at 161, 163.

**Fourth**, Plaintiffs argue that the Court has discretion to deny reconsideration even if it agrees that *EpicentRx II* overturned the rationales the Court relied upon for the

7

California public policy analysis in its FNC Order. (Opp'n 11, 13.) But Plaintiffs fail to cite authority supporting their argument. Plaintiffs repeatedly quote "*Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018)," as providing that public policy determinations are "case-specific" and "entrusted to the trial court's discretion." (Opp'n 4, 11, 13.) But none of that language appears in the opinion, which enforced a forum-selection clause and said nothing about the scope of the district court's discretion. Plaintiffs also repeatedly quote "*Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 964 (9th Cir. 2022)," for the proposition that the "weight to be given to a state's public policy" is "for the trial court to determine." (Opp'n 11; *see also id.* 4 (similar).) Once again, none of that language appears in *Depuy*, suggesting that Plaintiffs again failed to check their AI-generated research before filing the Opposition.

Even if the Court has the discretion that Plaintiffs claim, Plaintiffs fail to explain *why* the Court should exercise its discretion to deny reconsideration. The Court enforced the Forum-Selection Clause against the three non-California Plaintiffs, but declined to enforce it against the two California Plaintiffs on public policy grounds. Because *EpicentRx II* overturns those public policy grounds, Plaintiffs offer no reason to treat the California Plaintiffs any differently than the non-California Plaintiffs.

*Finally*, Plaintiffs rely on several AI-hallucinated authorities in various sections of their brief. The Court should reject Plaintiffs' tainted arguments out of hand. These include:

- Plaintiffs quote "*United States v. Woodbury*, 263 F.2d 784, 788 (9th Cir. 1959)," as holding that where an order rests on two alternate holdings, "even if one of the two grounds were erroneous, the judgment must be affirmed on the other ground." (Opp'n 10.) *Woodbury* does not contain the quoted language.

- Plaintiffs quote "*Massachusetts v. United States*, 333 U.S. 611, 623 (1948)," as holding that "[w]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum, and each is the judgment of the

8

court and of equal validity with the other." (Opp'n 10.) Once again, *Massachusetts* does not contain this language.

- Plaintiffs quote "*California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1323 (9th Cir. 1985)," as holding that "[b]ecause either ground independently supports the judgment, we may affirm on the basis of either." (Opp'n 10.) Yet again, that language is nowhere in the opinion.

- Plaintiffs quote "*Stewart v. Wachowski*, 574 F.Supp.2d 1074, 1117 (C.D. Cal. 2006)," as stating that a party seeking reconsideration must "demonstrate a material factual or legal difference" that is "of such consequence that it would have changed the prior decision." (Opp'n 3.) *Stewart* does not contain that language.

- Plaintiffs quote "*Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc.*, 215 F.R.D. 581, 583 (D. Ariz. 2003)," as stating that the court denied reconsideration because it "would not alter the Court's prior reasoning or result." (Opp'n 3-4.) That, too, seems to be AI-hallucinated language.

- Plaintiffs quote *Planned Parenthood of the Great Northwest and the Hawaiian Islands v. Wasden*, 564 F.Supp.3d 895, 901 (D. Idaho 2021), as stating that a Supreme Court decision "did not change the applicable … standard," and therefore "did not alter [the] Court's prior ruling." (Opp'n 4.) That language appears to be AI-hallucinated as well.

## II. Alternatively, the Court Should Certify Its FNC Order to the Ninth Circuit

The Court may certify an interlocutory order for appeal to the Ninth Circuit when it finds "that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Whether California has a general public policy against all forum-selection clauses designating jurisdictions without California-style class action procedures is a

9

question of law. (Mot. 12-13.) There are substantial grounds for difference of opinion on that question, since *EpicentRx II* either overrules (or at least casts significant doubt on) the Court's prior reading of *America Online*, several courts have read *America Online* the same way Fenix and the California Supreme Court did, and the Court's holding that California consumers are never subject to forum-selection clauses selecting jurisdictions without California-style opt-out class actions would exclude most of the world's jurisdictions. (Mot. 13-15.) Certifying the Court's FNC Order would materially advance this litigation's termination, because if the Ninth Circuit agrees with Fenix, this case will be dismissed. (Mot. 17.) Accordingly, if the Court does not grant reconsideration and dismiss the California Plaintiffs' claims, it should at a minimum certify its FNC Order to the Ninth Circuit pursuant to §1292(b).

Plaintiffs' arguments to the contrary lack merit.

***First***, Plaintiffs argue that there is no controlling question of law or substantial grounds for difference of opinion because *America Online* declares a general policy against requiring California consumers to litigate in jurisdictions without California-style class actions, and *EpicentRx II* did not overrule or limit that public policy. (Opp'n 14.) But as explained above, Plaintiffs are incorrect; *EpicentRx II* indicated that *America Online* turned on the CLRA's anti-waiver provision, and does not apply when, as here, the plaintiff's claims are not covered by a similar provision. (*See supra*, §I; Mot. 9-11.) Indeed, the California Court of Appeal has also read *EpicentRx II* as limiting *America Online* to situations where the plaintiff asserts a claim covered by a CLRA-like anti-waiver provision. *See Severo*, 2025 WL 2218061, at *3 n.2 (explaining that *EpicentRx II* "left standing cases, including" *America Online*, "which struck down forum selection clauses based on substantive, *statutory* provisions rendering void the waiver of specific rights" (emphasis in original)).

Plaintiffs cite "*Loritz v. CMT Blues*, 271 F.Supp.2d 1252, 1256 (S.D. Cal. 2003)," and describe the case as "rejecting certification where the issue was application of established law to case-specific facts." (Opp'n 14.) This may be another AI hallucination.

10

*Loritz* does not continue onto page 1256 of the *Federal Supplement*. And the *Loritz* court denied certification because the "factual and legal issues in [the] case [were] not complex," "would not necessitate protracted and expensive litigation," and the moving party failed to cite any law undermining the Court's analysis—not because the case merely involved applying settled law to case-specific facts. *Loritz*, 271 F.Supp.2d at 1255. In any event, *Loritz* is distinguishable. Here, permitting this complex putative class action to proceed would result in protracted and expensive litigation in the wrong forum, and *EpicentRx II* provides a powerful basis to disagree with the Court's California public policy conclusion.

**Second**, Plaintiffs argue that that the Court cannot certify an interlocutory appeal because a ruling in Fenix's favor on the FNC Motion would not dispose of the entire case. Specifically, Plaintiffs claim that the Agency Defendants cannot invoke the Forum-Selection Clause, and would thus remain in this Court even if Plaintiffs were compelled to pursue their claims against Fenix in the courts of England and Wales. (Opp'n 15.) But as Defendants explained in their reply in support of their Motion to Strike, the Agency Defendants can invoke the Forum-Selection Clause because they are direct parties to the Terms and under principles of equitable estoppel. (*See generally* Motion to Strike Reply.) Plaintiffs are wrong—a ruling in Fenix's favor on the FNC Motion would dispose of the entire case.

Moreover, Plaintiffs' legal premise is faulty. An interlocutory appeal may materially advance the case's ultimate termination "when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings"—not just when a ruling in the defendant's favor would end the case altogether. *Verthelyi v. PennyMac Mortgage Investment Trust*, 2025 WL 1720193, at *3 (C.D. Cal. May 5, 2025); Edward H. Cooper, 16 *Federal Practice & Procedure Jurisdiction* § 3930 (3d ed. May 2025 update) (certification appropriate when doing so would "at least curtail[] and simplify[] pretrial or trial").

Plaintiffs' authorities do not support their argument. In *Stiner v. Brookdale Senior Living, Inc.*, 383 F.Supp.3d 949 (N.D. Cal. 2019), the court declined to certify its decision

on two claims for appeal, because the defendant did not move to certify remaining claims that would generate "the same or very similar discovery." *Id*. at 958. Here, by contrast, if Fenix prevails on the FNC Motion, that would end the case. Moreover, even if Plaintiffs were correct that some Agency Defendants would be required to litigate in this Court, removing Fenix would at least substantially simplify the case by eliminating two major parties (not to mention several claims that are asserted only against Fenix).

Plaintiffs cite "*In re Pacific Gas & Electric Co.*, 280 B.R. 506, 522 (N.D. Cal. 2002)," with an explanatory parenthetical stating "exceptional circumstances [are] required for §1292(b) certification." (Opp'n 15.) This appears to be yet another AI hallucination. Plaintiffs cite page 522, but *Pacific Gas* ends at page 516. The case does not appear to contain the discussion Plaintiffs attribute to it. *Pacific Gas* is also simply irrelevant. The case dealt with certification of a partial final judgment under Federal Rule of Civil Procedure 54(b), not an interlocutory appeal under 28 U.S.C. §1292(b), and it upheld the bankruptcy court's decision to issue a partial final judgment on a preemption claim. *Id*. at 515.

***Third***, Plaintiffs argue that "forum non conveniens rulings that turn on the balancing of public- and private-interest factors are inherently fact-bound and discretionary, not 'pure' legal questions appropriate for interlocutory review." (Opp'n 15.) That is simply wrong. The Supreme Court has held "that the denial of a motion to dismiss on the ground of *forum non conveniens*" is frequently appropriate for interlocutory review under §1292(b). *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529-30 (1988); *see also Ford v. Brown*, 319 F.3d 1302, 1304 n.2 (11th Cir. 2003) (granting review of denial of forum non conveniens dismissal under §1292(b)); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 8 (2d Cir. 1995) (granting review of failure to enforce forum-selection clause under §1292(b)). Moreover, the only question left here is whether California has a general public policy against all forum-selection clauses designating jurisdictions without California-style class action procedures. As the Motion explained (at 12-13), that is a pure question of law, and Plaintiffs provide no authority holding otherwise. *See Health Net of California, Inc. v.*

*Department of Health Services*, 113 Cal.App.4th 224, 232 (2003) ("the issue of whether a contractual provision is contrary to public policy, or a statute which embodies such public policy, is a question of law").

Plaintiffs' case, *City of San Diego v. Monsanto Co.*, 310 F.Supp.3d 1057 (S.D. Cal. 2018), says nothing to the contrary. There, the court declined to consider the question of whether the plaintiff was required to exhaust its administrative remedies before filing suit because that legal question turned on a disputed fact: whether there were overlapping costs in multiple proceedings that triggered the exhaustion requirement. *Id.* at 1065. Here, by contrast, determining whether *America Online* prohibits forum-selection clauses selecting jurisdictions without California-style class actions is a pure question of law that does not turn on any case-specific disputed factual questions.

## CONCLUSION

The Court should partially reconsider its FNC Order, enforce the Forum-Selection Clause, and dismiss this action. In the alternative, the Court should certify its FNC Order to the Ninth Circuit pursuant to 28 U.S.C. §1292(b).

DATED: August 18, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Jason D. Russell*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 4,478 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: August 18, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Jason D. Russell*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC