Matthew Jacobs (SBN 331916)
THE JACOBS LAW FIRM, PC
5743 Corsa Ave, Suite 208
Westlake Village, CA 91362
(805) 601-7504
matt@jacobslawfirm.com

*Attorney for Defendants Unruly Agency LLC and Behave Agency LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO. 8:24-cv-01655-FWS-SSC

**REPLY OF UNRULY AGENCY LLC AND BEHAVE AGENCY LLC IN SUPPORT OF MOTION TO DISMISS**

Date: September 4, 2025
Time: 10:00 a.m.
Crtrm.: 10D

Assigned to Hon. Fred W. Slaughter

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Fail to Plead RICO or RICO Conspiracy ..... 2

1. The Absence of Any Alleged Coordination Between Defendants Dooms Plaintiffs' RICO Claims ..... 2

2. Plaintiffs Fail to Plead Actionable RICO Conduct ..... 6

3. Plaintiffs Fail to Plead a Concrete Injury ..... 7

B. Plaintiffs Fail To Plead A VPPA Claim ..... 8

1. Plaintiffs Fail to Allege that Unruly Is a "Video Tape Service Provider" ..... 8

2. Plaintiffs Cannot Be "Subscribers" Because They Did Not Obtain Videos from Unruly-Managed Creators or Unruly ..... 10

3. Unruly Did Not Disclose PII To Chatters ..... 12

4. The "Ordinary Course Of Business" Exception Applies ..... 13

C. Unruly Did Not Violate CIPA or The Wiretap Act ..... 14

1. Unruly Does Not Intercept Fans' Communications ..... 14

2. Creators Consented to Unruly Receiving Fans Communications ..... 16

3. Unruly's "Impersonation" Defense Does Not Misstate The Law ..... 17

4. Plaintiffs Fail to State a CIPA "Use" Violation ..... 18

D. Unruly Did Not Violate CDAFA (Cal. Penal Code § 502) By Accessing Creators' Accounts ..... 19

1. Chatters Did Not Access Fans' Inboxes ..... 19

2. Plaintiffs Misapply Section 502(c)(3) ..... 20

3. Plaintiffs Misstate Section 502(c)(7) ..... 20

4. Plaintiffs Do Not Adequately Allege That They Suffered Economic Harm ..... 21

E. The Forum Selection Clause Bars Plaintiffs' Claims ..... 21

III. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Cases**

*Alaska v. Express Scripts, Inc.*,
2025 WL 755436 (D. Ak. Mar. 10, 2025) .......... 3

*Archer v. NBCUniversal Media, LLC*,
2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) .......... 13, 14

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) .......... 3

*Boyle v. U.S.*,
556 U.S. 938 (2009) .......... 2, 3, 6

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 8

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) .......... 11

*CBC Framing, Inc. v. Flores*,
No. CV 08-00150, 2008 WL 11337555 (C.D. Cal. Sept. 22, 2008) .......... 5

*Clemons v. Waller*,
82 F. App'x 436 (6th Cir. 2003) .......... 18

*Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 18

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) .......... 6

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 16

*Doan v. Singh*,
617 Fed.App'x. 684 (9th Cir. 2015) .......... 5

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979, 984 (9th Cir. 2017) .......... 12, 13

*Esparza v. Gen Digital Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 16

*Gardner v. Starkist Co.*,
418 F. Supp. 3d 443 (N. D. Cal. 2019) .......... 5, 6

*Gomez v. Guthy-Renker, LLC*,
Case No. EDCV 14-01423 JGB, 2015 WL 4270042 (C.D. Cal. July 13, 2015) .... 4

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .... 14, 19

*Hernandez v. Chewy, Inc.*,
Case No. 2:23-cv-05620 HDV, 2023 WL 9319236, (C.D. Cal. Dec. 13, 2023) .... 8

*In re Google Inc. Gmail Litigation*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)); .... 17

*In re Hulu Privacy Litigation*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .... 10, 14

*In re Nickelodeon Consumer Priv. Litig.*,
MDL No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014). .... 12

*In re Outlaw Lab., LP Litig.*,
No. 18-CV-840-GPC, 2020 WL 5552558 (S.D. Cal. Sept. 16, 2020) .... 5

*In re Vizio, Inc., Consumer Privacy Litigation*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017), .... 10, 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .... 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 17

*LD v. United Behavioral Health*,
508 F. Supp. 3d 583 (N.D. Cal. 2020) .... 2

*Mata v. Zillow Group., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .... 16

*Moore v. Kayport Package Express., Inc.*,
885 F.2d 531 (9th Cir. 1989) .... 7

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .... 7

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .... 3

*Oscar v. Univ. Students Co-Operative Ass'n*,
965 F.2d 783 (9th Cir.1992) .... 7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .... 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)....................6

*Seeber v. United States*,
329 F.2d 572 (9th Cir. 1964))....................18

*Shaw v. Nissan N. Am. Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016)....................4

*United States v. Pasha*,
332 F.2d 193 (7th Cir. 1964),....................18

*United States v. Turkette*,
452 U.S. 576 (1981)....................2

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008)....................6

*Wimo Labs LLC v. eBay Inc.*,
No. SACV 15-1330-JLS, 2016 WL 11507382 (C.D. Cal. Jan. 28, 2016).....................4

**Statutes**

18 U.S.C. § 1343....................6

18 U.S.C. § 2710....................11, 12, 14

Cal. Penal Code § 502....................19, 20, 21

**Rules**

Federal Rule of Civil Procedure 9(b)....................6

# I. INTRODUCTION

Defendants Unruly Agency LLC and Behave Agency LLC (together, "Unruly") respectfully file this reply memorandum of points and authorities in further support of their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion" or "Mot.," ECF 126) and in response to Plaintiffs' opposition ("Opposition," ECF 142). For the reasons set forth in Unruly's Motion and below, all of Plaintiffs' claims should be dismissed with prejudice.

- **RICO and RICO Conspiracy.** The foundation of a civil RICO claim is that defendants form an enterprise and then coordinate with it to pursue a common purpose. But here, Plaintiffs allege that the supposed RICO enterprise was formed four years *before* Unruly even existed. Plaintiffs also fail to allege facts showing OnlyFans even knew Unruly (or any Agency Defendant) existed, that any Agency Defendant knew any other Agency Defendant existed, that any enterprise member had a single communication with any other coordinating alleged RICO activity, or that the members even shared a common purpose. At best, Plaintiffs allege only that various defendants acted independently in pursuit of their own economic interests, which has never been held to violate RICO.
- **Video Privacy Protection Act ("VPPA").** The VPPA governs only the nonbusiness disclosure of personally identifying information ("PII") by videotape providers. Plaintiffs fail to allege that Unruly is a videotape provider, that it ever possessed PII, or that any disclosure was wrongful.
- **California Penal Code § 502.** Plaintiffs Section 502 claim fails as a matter of law because the statute applies only to "unauthorized" use, and Plaintiffs allege Unruly was authorized to use Creators' accounts. Plaintiffs also fail to allege any compensable damages.
- **California Invasion of Privacy Act ("CIPA") and Electronic Communications Privacy Act ("Wiretap Act").** These claims fail because

Plaintiffs nowhere allege Unruly tapped any wire or "intercepted" any communication. Mere impersonation of another, which is all Plaintiffs allege, is not actionable under either statute. Plaintiffs' Wiretap Act claim also fails because the Creators consented to any alleged "interception."

## II. ARGUMENT[1]

### A. Plaintiffs Fail to Plead RICO or RICO Conspiracy

Plaintiffs fail to plead any element of a RICO claim. In their Opposition, Plaintiffs claim, for example, that it is irrelevant that the RICO enterprise allegedly began years before Unruly (or any other Agency Defendant) was formed—and equally irrelevant that none of the Agency Defendants knew each other. In so arguing, Plaintiffs ignore that the foundation of any RICO claim is a "group of persons *associated together* for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). Without factual allegations of association (*e.g.*, communications between alleged enterprise), Plaintiffs have done nothing more than allege that Unruly acted "independently and without coordination" with others, *Boyle v. U.S.*, 556 U.S. 938 at 947 n.4 (2009), and the Supreme Court has made clear that such allegations are "insufficient to adequately plead a RICO enterprise." *Id.*

#### 1. The Absence of Any Alleged Coordination Between Defendants Dooms Plaintiffs' RICO Claims

a. Plaintiffs Concede They Must Plead Coordination Between RICO Defendants

The cases Plaintiffs cite confirm that RICO plaintiffs must plead coordination between alleged enterprise members:

[1] In the interest of efficiency and to avoid repetition with codefendants' reply memoranda, this memorandum focuses primarily on allegations against Unruly and incorporates (often verbatim) legal arguments asserted in Defendant Moxy Management's August 18, 2025 reply in support of its Motion to Dismiss (ECF 171).

- In *LD v. United Behavioral Health*, 508 F. Supp. 3d 583, 602 (N.D. Cal. 2020) (*see* Opposition ("Opp.") at 9), the court found a RICO claim properly pled because plaintiffs alleged "*facts* that raise the inference" that defendants, who were in direct contractual relationships with one another, had actually "collaborated and conspired to develop and use a database and pricing tool" to defraud plaintiffs.
- In *Boyle* (Opp. at 12), plaintiffs alleged that the RICO activity "was typically carried out by a group of participants *who met beforehand to plan the crime*, gather tools (such as crowbars, fishing gaffs, and walkie-talkies), and *assign the roles that each participant would play* (such as lookout and driver)." 556 U.S. at 941 (emphases added).
- In *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 938, 941 (N.D. Cal. 2013) (Opp. at 12), the court upheld RICO enterprise allegations based in part on the detailed allegations of coordination between Wells Fargo and its affiliate to overcharge Wells Fargo's customers.
- In *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (Opp. at 9), the Ninth Circuit emphasized the existence of formal contractual relationships, coordinated marketing efforts, and extensive data transfers between the parties when determining that plaintiff had adequately pled coordination in furtherance of a common scheme.
- In *Alaska v. Express Scripts, Inc.*, 2025 WL 755436, at *15 (D. Ak. Mar. 10, 2025) (Opp. at 21), plaintiffs "allege[d] relationships between Express Scripts and other enterprise members both through informal associations and through formal organizations such as the Pharmaceutical Care Management Association."

Plaintiffs do not (because they cannot) cite a single case where a court found a RICO enterprise adequately pled absent allegations that putative enterprise members had ever spoken with one another.

b. Plaintiff's Failure to Allege Coordination Prevents Them from Showing Structure or Common Purpose

Despite (at least implicitly) conceding that RICO claims require allegations of coordination, Plaintiffs fail to identify so much as a *single* alleged communication between Unruly and any other supposed member of the enterprise.

In *Shaw v. Nissan N. Am. Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016), for example, the court dismissed a RICO claim because plaintiff failed to allege facts establishing communications or coordination. The *Shaw* court contrasted the pleading deficiencies in that case with the complaint in *Takata Airbag*, which included "pages of references to specific communications" showing the defendants "acting as an enterprise" and "engaged in a collaborative scheme to defraud." *Id.*

Similarly, in *Wimo Labs LLC v. eBay Inc.*, the court dismissed a RICO claim because in that case (like this one) there were no allegations enterprise members "were even aware of one another's existence as participants in a scheme to defraud," much less any allegations that they communicated in such a way that suggested "they combined as an enterprise in furtherance of a fraudulent or unlawful purpose." Case No. SACV 15-1330-JLS (KESx), 2016 WL 11507382, at *4 (C.D. Cal. Jan. 28, 2016); *see also Gomez v. Guthy-Renker, LLC*, Case No. EDCV 14-01423 JGB (KKx), 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015) (dismissing RICO claim that sought to transform "routine commercial relationships" into a RICO enterprise, stressing that "[c]ourts have overwhelmingly rejected" such attempts).[2]

---

[2] Similar holdings abound. *See, e.g.*, *Doan v. Singh*, 617 Fed.App'x. 684, 686 (9th Cir. 2015) ("[D]efendants are variously alleged to have 'conspired,' 'assisted,' 'colluded,' or 'help[ed].' Still, it is not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit. These bare assertions of a pattern of racketeering activity do not establish an enterprise and they do not, therefore, satisfy Plaintiffs' burden."); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N. D. Cal. 2019) (that the *seller* of canned tuna misrepresented it was "dolphin safe" did not mean plaintiff was able to plead a RICO scheme including the fisherman, importers, storers, canners and processors absent allegations they had collaborated in a structure with a common purpose);

In their Opposition, Plaintiffs do not even attempt try to distinguish any of those authorities. Indeed, Plaintiffs inadvertently *support* these cases by citing *CBC Framing, Inc. v. Flores*, No. CV 08-00150, 2008 WL 11337555 (C.D. Cal. Sept. 22, 2008). *See* Opp. at 13. In *CBC Framing*, the plaintiff alleged that a group of managers submitted false paysheets containing hours for employees who had done no work and then collected the pay for themselves. *Id.* at *2–4. The court dismissed the original complaint in part because plaintiff "did not even allege that defendants knew one another," and therefore cannot have plead "that they had any kind of common purpose, organization or function." *Id.* at *7.

c. Plaintiffs Allege Only that Defendants Acted Independently and in Their Own Self-Interest

Where members of a RICO enterprise do not know one another and have no contact or communication, their alleged actions are independent and uncoordinated. The Supreme Court has made clear that allegations (like those in the FAC) that "'several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates' are not enough to show membership in an enterprise." *Boyle*, 556 U.S. at 947 n.4; *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N. D. Cal. 2019).

To sustain a RICO claim, a plaintiff must plead facts showing a defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original)). Merely asserting that Unruly as was "involved" in an enterprise in insufficient absent, at minimum, allegations that it had "some part in directing its affairs." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). As any teacher,

---

*In re Outlaw Lab., LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 5552558, at *15 (S.D. Cal. Sept. 16, 2020) (noting RICO claims fail where "allegations or facts did not provide a basis from which to find the RICO members acted in concert to do anything more than perform routine commercial activities").

coach, or parent knows, direction requires communication. Absent communication, Unruly could only have been (allegedly) acting for itself.

Plaintiffs' failure to plead any coordination between Unruly and any other defendant is fatal to their RICO claims.

### 2. Plaintiffs Fail to Plead Actionable RICO Conduct

As detailed in Unruly's Motion, Plaintiffs' assertion that Unruly engaged in the RICO predicate act of wire fraud under 18 U.S.C. § 1343 (FAC ¶382) was baseless. Mot. at 9-10. Rather than meaningfully addressing Unruly's arguments, Plaintiffs instead assert that Unruly "committed numerous predicate acts" before identifying only two: (1) providing "Chatter services, employing Chatters to impersonate the Creator and communicate with Fans without the Fans' knowledge"; and (2) being "sued by one of its Creators who[] claimed to be unaware of the fact that Unruly's Chatters were impersonating her." Opp. 16-17. Those allegations are insufficient.

With respect to these alleged "predicate acts," FRCP 9(b) requires Plaintiffs to do more than allege that someone misled someone else. Instead, a plaintiff stating a fraud claim must plead the "who, what, when, where, and how" of the supposed deception. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). Plaintiffs conclusory claim that Unruly engaged in "[s]ystematic [i]mpersonation," Opp. at 16, only underscores its failure to allege the specificity Rule 9(b) requires. Injecting the word "systematically" into "information and belief" allegations of "impersonation" is no substitute for alleging "who, what, when, where, and how" concerning the supposed impersonation. *Moore v. Kayport Package Express., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[A]llegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)."); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) ("[A]llegations 'based on information and belief may suffice,' 'so long as the allegations are accompanied by a statement of facts upon which the belief is founded.'").

Plaintiffs' failure to plead *any* facts supporting that Unruly committed a predicate act is, alone, fatal to its RICO claim.

**3. Plaintiffs Fail to Plead a Concrete Injury**

RICO plaintiffs are required to plead facts showing that the RICO scheme caused it "concrete financial loss." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992). Plaintiffs have failed to do so here because they have not shown that any of the "Premium Content Fees" were paid as a result of any alleged fraud rather than for other reasons.

Plaintiffs allege they were defrauded into believing they would have "authentic" interactions with Creators. But Premium Content Fees were paid for reasons *other than* to speak to Creators. For example, Plaintiffs concede that Pay-Per-View charges, which fall within Premium Content Fees, were paid to view explicit pictures. FAC ¶111. And Creator Tips were paid for "custom content, special requests, advice, recipes, lessons, or almost anything else," but not for talking to a Creator. *Id.* ¶72. Plaintiffs' claim that they paid Premium Content Fees to talk to Creators is plainly false given that some Plaintiffs *are still subscribed to Creators* despite alleging Chatters operate their accounts. *See, e.g.*, *id.* ¶404, 419 (alleging R.M. is still subscribed to Chyanne Burden).

In their Opposition, Plaintiffs correctly state that overpayment *can* constitute a compensable RICO loss. Opp. at 18. But the issue is not the law; it is the facts Plaintiffs have—or more accurately have not—alleged. According to Plaintiffs' own allegations, Premium Content Fees and Subscription Fees were paid for reasons *other than* to interact with Chatters. FAC ¶¶ 72, 111. Such damages cannot therefore form the basis of a RICO claim. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 980-81 (9th Cir. 2008) (RICO claim dismissed where plaintiff failed to plead the alleged RICO activity, rather than other acts, caused it any financial loss).

Seemingly recognizing the inadequacy of their allegations, Plaintiffs identify a new category of loss in their Opposition; "Misrepresented Digital Content." Opp. at 19. But, again, Plaintiffs fail to show any misrepresentation that could make that wrongful and, therefore, constitute an actionable loss. Plaintiffs' failure to plead facts connecting the alleged RICO fraud to their alleged harm is yet another reason their RICO claim fails.

### B. Plaintiffs Fail To Plead A VPPA Claim

#### 1. Plaintiffs Fail to Allege that Unruly Is A "Video Tape Service Provider"

As detailed in Unruly's Motion, it is not a "video tape service provider" under the VPPA. Mot. 13-14; *see also Hernandez v. Chewy, Inc.*, Case No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236, at *3 (C.D. Cal. Dec. 13, 2023) ("[C]ourts in the Ninth Circuit have recognized consistently that delivering video content must be central to the defendant's business or product for the VPPA to apply."). Neither Plaintiffs' citations to the FAC nor case law support a contrary conclusion.

Plaintiffs fail to identify any allegations establishing that Unruly is a video tape service provider. Their contention that the FAC alleges that "videos were delivered via unlock links, PPV tips, and custom video transactions—each orchestrated by agency personnel operating through Creator accounts" is unsupported by the FAC paragraphs they cite. Opp. at 22 (citing FAC ¶111-112, 452, 455). The FAC does not contain the phrase "unlock links" or anything similar. And although paragraphs 111-112 address "PPV" or "custom" content, the former makes no reference to agencies at all, while the latter refers only to hypothetical generic conduct undertaken by hypothetical generic agencies, not the Agency Defendants.

Plaintiffs' contention that "[t]he agencies managed chat interactions that prompted video unlocks and upsells, often using preloaded scripts and pricing tiers, in ways designed to maximize Fan spending" is similarly unhelpful. *Id.* (citing FAC

¶¶ 222–227). FAC ¶¶ 222-227 concern only Agency Defendant Context X and do not reference video unlocks, upsells, scripts, pricing tiers, or attempts to maximize Fan spending.

Plaintiffs' only allegations supporting their claim that Agency Defendants are "video tape service providers" are those found at paragraphs 452 and 455 of the FAC. *See* FAC ¶ 452 ("Each of the Agency Defendants is engaged in the business of selling and/or delivering audiovisual materials . . . ."); *id.* ¶ 455 ("Plaintiffs and Class Members purchased RC Content directly from the Agency Defendants[.]") But those allegations are wholly conclusory and internally inconsistent. Plaintiffs cannot plausibly contend that any Plaintiff or Fan purchased content directly from the Agency Defendants. In fact, the FAC is premised on the theory that Plaintiffs purchased content through the OnlyFans platform by paying OnlyFans or Creators. *See, e.g.*, FAC ¶¶ 9, 42, 62, 69; *see also id.* ¶ 325-326 (defining Nationwide Class and California Sub-Class as all US and CA residents "who had a Fan account on OnlyFans and paid Premium Content Fees to any Creator"). There is no allegation in the FAC that any Fan paid money directly to Unruly or any other Agency Defendant. Thus, Plaintiffs (false) claim in that Fans purchased content directly from the Agency Defendants, *see* FAC ⁋ 455, contradicts other allegations. Other than their conclusory, unsupportable, and inconsistent allegations in FAC ⁋⁋ 452 and 455, Plaintiffs nowhere allege that they obtained, or even viewed, any audiovisual content from Unruly.

The cases Plaintiffs cite do not support its claim that Unruly is a "video tape service provider." Plaintiffs claim that *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017), supports the proposition that someone can be a video tape service provider "even if they deliver content through a third-party platform." Opp. at 22. But *Vizio* is easily distinguishable. In finding that Vizio was a video tape service provider, the court relied on plausible allegations that consumers paid Vizio a premium for its Smart TVs, and that Vizio

advertised its streaming-enabled Smart TVs as "a passport to a world of entertainment" and entered contracts with "content providers to enable consumers to access their programming on Vizio's Smart TVs." *Vizio*, 238 F. Supp. 3d. at 1222. No similar allegations exist here Unlike Vizio, which profited directly via the sale of its Smart TVs, Agency Defendants never received payment directly from any consumer. *See* FAC ¶¶9, 42, 62, 69, 185.

Plaintiffs next cite *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015), incorrectly describing its holding as: "streaming platform liable under VPPA for disclosures tied to its embedded video player." Opp. at 22. Not so. The *Hulu* opinion Plaintiffs cite is an order granting summary judgment *in favor of Hulu* on the plaintiffs' VPPA claim. 86 F. Supp. 3d at 1105. Regardless, Hulu's service bears no resemblance to the Agency Defendants. As the *Hulu* order explains, Hulu offered video content from its own website and had its own paid subscription service. *See id.* at 1092 (describing Hulu's product offerings and services). Plaintiffs do not come close to alleging that the Agency Defendants offered anything similar.

**2. Plaintiffs Cannot Be "Subscribers" Because They Did Not Obtain Videos from Unruly-Managed Creators or Unruly**

Even if Unruly were a video tape service provider (which it is not), it would still not be liable under the VPPA because Plaintiffs fail to establish that they are "subscribers" under the statute.[3] That failure dooms Plaintiffs claim for two reasons.

*First*, Plaintiffs are not "subscribers" because, as discussed above, they did not view or obtain any video content from Unruly or Unruly-affiliated Creators. The VPPA prohibits disclosure of "personally identifiable information of any consumer," which "includes information which identifies a person as having *requested or obtained specific video materials or services* from a video tape service

[3] The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiffs do not claim that they are "renter[s]" or "purchasers."

provider." *See* 18 U.S.C. §§ 2710(a)(3) & (b)(1) (emphasis added). As the court in *Carter* explained, the VPPA "provides for an action by a renter, purchaser of [*sic*] subscriber *of audio visual materials, and not a broader category of consumers*." *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023) (emphasis added). "[A] customer's *non-video transactions play no part* in a defendant's liability under the VPPA." *Id.* (emphasis added). Accordingly, to qualify as "subscribers," Plaintiffs must have obtained some video content from Unruly or its affiliated Creators. But, as explained above, Plaintiffs never allege that Unruly (or Unruly-affiliated creators) ever provided audiovisual materials. Plaintiffs therefore are not "subscribers" under the VPPA.

*Second*, even if Plaintiffs did obtain video content from Unruly-affiliated Creators (which they do not allege), Plaintiffs would still not be "consumers" or "subscribers" of *Unruly's* services. The *Vizio* decision Plaintiffs cite explains that "[t]he VPPA applies only if the consumer is a 'renter, purchaser, or subscriber of goods or services' *from the video tape service provider*," in this case allegedly Unruly. *In re Vizio*, 238 F. Supp. 3d at 1222 (emphasis added). Such a showing is made by a direct exchange of value between a plaintiff and the video tape service provider. *Id.* at 1223 (plaintiffs were "subscribers" where they paid video tape service provider a premium for its Smart TV); *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) (plaintiffs were subscribers where one had a paid account with video tape service provider and other provided personal information, including name and email address, in exchange for access). But Plaintiffs were users only of *OnlyFans* and "subscribed to *Creator Accounts*." *ee, e.g.*, FAC ¶¶250, 263, 279, 291, 308-309 (emphasis added). They have not pled that they obtained videos directly from Unruly or directly provided anything of value to Unruly in exchange for videos. Indeed, all monetary transactions were between Fans and Creators or OnlyFans, and the putative classes in this case consist of those Fans "who paid Premium Content Fees to any Creator." *See, e.g.*, FAC ¶¶9, 42, 62, 69,

325-326. For these reasons, too, Plaintiffs are not "subscribers" under the VPPA and cannot assert a VPPA claim.

### 3. Unruly Did Not Disclose PII To Chatters

Unruly is not liable under the VPPA because it did not disclose PII to Chatters. *See* 18 U.S.C. § 2710)(b)(1). As detailed in the Motion, PII is limited to "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior," and does not include "information" that "*cannot* identify an individual unless it is combined with other data" through a method "an ordinary person could not use. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984, 986 (9th Cir. 2017). Thus, "anonymous usernames" are not PII because they do not "identify an actual, identifiable person and link that person to a specific video choice." *In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *12 (D.N.J. July 2, 2014).

Plaintiffs argue that Unruly disclosed Fans' PII by providing Chatters with Fans' "purchase and viewing data," "individual viewing histories," and "usernames or account handles." Opp. at 23-24. Even granting Plaintiffs such a liberal reading of their pleadings,[4] that information is not PII under established law.

Plaintiffs' claim that the VPPA "covers disclosures of platform-specific identifiers—such as usernames or account handles—when paired with viewing behavior in a way that would allow an ordinary observer to associate the individual with particular video content" does not save their claim. Opp. 23-24 (citing *Archer v. NBCUniversal Media, LLC*, 2025 U.S. Dist. LEXIS 129598, at *11-12 (C.D. Cal. July 2, 2025) and *Eichenberger*, 876 F.3d at 985). Plaintiffs have not alleged any facts suggesting Chatters can use Plaintiffs' platform-specific identifiers in

[4] As Unruly's Motion explains, the FAC only alleges that Chatters were provided with Fans' "communication history," which displays only "the Fan's username" and not their real name. Mot. at 14 (citing FAC ¶¶449-451).

conjunction with Plaintiffs' (nonexistent[5]) viewing behavior to identify Plaintiffs as an ordinary observer could—that is, without added information or effort.

Similarly, Plaintiffs' allegation that a Fan's username "can be used by anyone to locate and view the Fan's profile on OnlyFans" (FAC ¶450) is insufficient, as Plaintiffs do not plead that their OnlyFans profiles contain information that would allow Chatters to discern their true identity. *See Ghanaat*, 689 F. Supp. 3d at 720 (N.D. Cal. 2023) (dismissing VPPA claims where unique identifier led to plaintiffs' Facebook profiles but plaintiffs "d[id] not allege their Facebook profiles contain any personal information, such as their names or email addresses").

Accordingly, Plaintiffs have not shown that Unruly provided PII to Chatters.

**4. The "Ordinary Course Of Business" Exception Applies**

As detailed in Unruly's Motion, any alleged disclosure by it of Plaintiffs' PII was lawful under the VPPA's "ordinary course of business" exception because any such use was for "order fulfillment [and] request processing." MTD at 15 (quoting 18 U.S.C § 2710(b)(E)). As Plaintiffs fatally concede, Chatters "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content" and disclose information to Unruly and/or the Creator *for the purpose of fulfilling the request*. *Id.* (quoting FAC ¶112(b)-(d)).

Plaintiffs cite *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015), for the proposition that "[c]ourts construe this exception narrowly to avoid swallowing the rule." Opp. at 25. But *In re Hulu* makes no mention of the VPPA's "course of ordinary business" exception *at all*. *See generally* 86 F. Supp. 3d 1090. Similarly, Plaintiffs cite *Archer* to support their argument that "[t]his District recently held that disclosures of user and video data to a third party (Meta) were not protected by the 'ordinary course' exception, even when transmitted through built-in

[5] Plaintiffs do not allege that they received any videos from any Unruly-affiliated Creator and, therefore, they have no "viewing behavior."

platform tools." Opp. at 25. But again, the *Archer* decision does not mention the "ordinary course of business" exception at all. *See* 2025 U.S. Dist. LEXIS 129598, at *15 (C.D. Cal. July 2, 2025).

**C. Unruly Did Not Violate CIPA or The Wiretap Act**

**1. Unruly Does Not Intercept Fans' Communications**

Unruly can only be liable under CIPA or the Wiretap Act if it intercepted Plaintiffs' communications with Creators while those communications *were in transit*, not after they arrived in Creators' inboxes. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1124 (C.D. Cal. 2024) and *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002). Unruly did not intercept Plaintiffs' communications while they were in transit because, as Plaintiffs allege, Creators gave Unruly and its Chatters "direct access" to their OnlyFans accounts, *see* FAC ¶¶103-104, ¶112(b)-(c), and Chatters communicated with Fans "through the OnlyFans account[s]," *id.* ¶112c.

Plaintiffs do not dispute that interception must occur while communications are in transit. *See* Opp. at 26-27. Instead, they contend that their pleadings are sufficient to show that such interception occurred. *Id.* at 28. Plaintiffs specifically to FAC ⁋⁋ 122, 123, 124, 492, and 493 in an attempt to convince the Court that they sufficiently plead interception. FAC ⁋⁋ 123 and 124 allege that CRM tools intercept messages contemporaneously with their transmittal. But those allegations are conclusory and are contradicted by the other paragraphs Plaintiffs cite, which expressly state that the CRM tools obtain Fans' communications *from Creators' inboxes*. *See* FAC ¶ 123 ("Defendants generally use CRM tools that *access the Creator's OnlyFans account* and then *mirror a live session* inside a multi-seat dashboard.") (emphasis added); *id.* ¶ 493 ("[O]ne popular CRM platform openly advertises that it mimics user behavior to simultaneously divert all messages *from the Creator's OnlyFans account* to the CRM platform in real time.") (emphasis added); *see also id.* ¶ 492 (omitting any discussion of interception).

A CRM tool that obtains Fans' communications from Creators' inboxes is, by definition, not intercepting those communications in transit. The dissonance in Plaintiffs' allegations is most evident in FAC ⁋ 491, which states, "The messages are *intercepted* and *then simultaneously diverted from the Creators OnlyFans inbox* to a CRM platform . . . ." (Emphasis added). It is unclear how messages can be both *intercepted* and *diverted from a Creator's inbox*.

Plaintiffs also fail to plead that Unruly specifically engaged in interception through a CRM tool. Plaintiffs' allegations regarding CRM tools contain no concrete allegations about Unruly's conduct. *See* FAC ¶¶120-128. The FAC merely alleges that "[o]n information and belief, the Agency Defendants generally use CRM tools." *Id.* ¶122. The FAC does not provide any basis for Plaintiffs' information or belief that *any* Agency Defendant uses a CRM. More critically, the FAC does not allege that Unruly uses any of the CRM tools mentioned by Plaintiffs. Reliance on such generalized allegations about what "the Agency Defendants" purportedly do, based solely on undisclosed information and belief, cannot sustain Plaintiffs' claim.

The cases Plaintiffs cite undermine their interception-related claims because the plaintiffs in those cases (unlike Plaintiffs here) plausibly alleged how messages could have been intercepted before arriving in the intended recipient's inbox. *See* Opp. at 27 (*citing Mata v. Zillow Group., Inc*., 2024 WL 5161955, at *1 (S.D. Cal. Dec. 18, 2024) (alleging that the defendant included third-party trackers on its website that notified the third party when plaintiff watched videos); *Esparza v. Gen Digital Inc*., No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) (alleging defendant allowed third-party spyware provider to install software on defendant's website that rerouted users' chat communications to spyware provider's servers and allowed spyware provider to share data with others); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023) (alleging that defendant routed chats with its website through a third party's servers

and third party could and did access the content of chats)). In each of these cases, the plaintiffs alleged that third-party software was integrated into the websites from which information was intercepted or that that the plaintiffs' messages had been routed to third-party servers. No such allegations exist here.

**2. Creators Consented to Unruly Receiving Fans Communications**

Even if Unruly received Fans' communications with Creators, such receipt would not be actionable under the Wiretap Act because Creators consented to it. Plaintiffs offer three contentions for why Creators' consent does not bar Plaintiffs' CIPA and Wiretap Act claims.[6] In doing so, Plaintiffs seemingly fail to understand that Agency Defendants contend that such consent bars only Plaintiffs' Wiretap Act claim, because the Wiretap Act is a one-party-consent statute. *See* 18 U.S.C. § 2511(2)(d). Plaintiffs' contentions are unconvincing even if applied just to that claim.

*First*, Plaintiffs' contention that "consent is a fact intensive inquiry, not ripe for adjudication at the 12(b)(6) stage" (Opp. at 30) ignores that Unruly's assertion of this defense is based on *Plaintiffs' own allegations* that Unruly, "[w]orking in partnership with their Creators—*often with full permission and authority from those Creators—. . . contract with chatters to conduct most, if not all, of the communications between the Creators and the Fans.*" FAC ¶104 (emphasis added); *see id.* ¶4 (alleging Agency Defendants operate "OnlyFans accounts…at the request of and with the consent of the Creators"). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiffs' own allegations impel dismissal of their Wiretap Act claim.

---

[6] Plaintiffs' third contention relies on the party exception to CIPA and the Wiretap Act. Opp. at 31. For purposes of its Motion, Unruly does not—and need not—claim that the party exception applies.

*Second*, Plaintiffs' contention that "consent is not a defense where the communication is intercepted for the purpose of committing any criminal or tortious act" relies on a misapplication of that exception—and presupposes that Plaintiffs have sufficiently pled a RICO violation. *See* Opp. at 30 (*quoting R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024)). s *R.C.* acknowledges, "[a]lleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously, . . . [and] cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." 733 F. Supp. 3d at 901 (quoting *In re Google Inc. Gmail Litigation*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (holding crime-tort exception inapplicable where complaint alleged purpose of the interception was not "to perpetuate torts on millions of Internet users, but to make money"). Plaintiffs allege that Agency Defendants intercepted Fans' communications to solicit Premium Content Fees, not to perpetuate torts. *See, e.g.*, FAC ¶¶ 481, 490, 494. Because Plaintiffs have failed to sufficiently plead that Unruly violated RICO—or any other law, for that matter—the crime-tort exception is inapplicable.

**3. Unruly's "Impersonation" Defense Does Not Misstate The Law**

The FAC is replete with allegations that Agency Defendants used Chatters to "impersonate" Creators. *See, e.g.*, FAC ¶¶ 179, 188, 200, 216, 227, 235, 246. But impersonation is not interception under the Wiretap Act and (impliedly) CIPA. *See Clemons v. Waller*, 82 F. App'x 436 (6th Cir. 2003), *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964), and *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015)). Plaintiffs make no attempt to grapple with *Clemons* or *In Re Google Inc. Cookie Placement Consumer Priv. Litig.* (*see* Opp. at 31-32), both of which expressly hold that impersonation is not interception.

Instead, Plaintiffs attempt to distinguish *Pasha* from this case through faulty reasoning and by obscuring its holding. *See* Opp. 31-32. Plaintiffs specifically claim that *Pasha*'s holding is rooted in that fact that "there was no tampering with the established means of communication" by the impersonators, or "[i]n other words, because the [impersonators] did not actually 'intercept' the call, there could be no violation of the Wiretap Act." *Id.* at 32. That miss the point. Unruly does *not* contend that impersonation vitiates liability when interception occurs. It simply makes the point that impersonation, standing alone, is not interception under CIPA or the Wiretap Act. That rule is expressly stated in the portion of *Pasha*'s holding that Plaintiffs intentionally omit: "We believe that ***impersonation of the intended receiver is not an interception*** within the meaning of the statute." *Pasha*, 332 F.2d at 198 (citing *Seeber v. United States*, 329 F.2d 572 (9th Cir. 1964)) (emphasis added).

Plaintiffs' further attempt to distinguish *Pasha* from this case on the grounds that Agency Defendnats' alleged use of CRM platforms "constitutes interception" is irrelevant because, as noted above, Plaintiffs does not adequately allege that Agency Defendants intercept communications.

**4. Plaintiffs Fail to State A CIPA "Use" Violation**

For Unruly to have improperly "used" information under the third clauses of Cal. Penal Code Section 631(a), it must have first improperly obtained that information in violation of the first or second clauses of Section 631(a). *See Heiting*, 728 F. Supp. 3d at 1123. For all the reasons discussed above, Plaintiffs did not intercept Fans' communications in violation of CIPA, and Plaintiffs therefore fail to state a CIPA "use" violation.

**D. Unruly Did Not Violate CDAFA (Cal. Penal Code § 502) By Accessing Creators' Accounts**

Plaintiffs' claim that they have adequately pled a CDAFA claim under Cal. Penal §§ 502(c)(2), (3), and (7) overlooks their own self-defeating allegations.[7] Opp. at 32-34. Plaintiffs *expressly alleged* that Unruly had "full permission and authority" to access their affiliated-Creators' accounts and view "Plaintiffs' and Class Members' private messages." *See, e.g.*, FAC ¶¶ 4, 104, 190, 467. Because the CDAFA provisions relied on by Plaintiffs require access without permission, their CDAFA claim necessarily fails. Instead of addressing that flaw, Plaintiffs reference nonexistent allegations, misstate the statute, and misconstrue applicable case law.

**1. Chatters Did Not Access Fans' Inboxes**

In addressing their Section 502(c)(2) claim, Plaintiffs claim they alleged that "Agency-employed Chatters accessed ***Fan inboxes***," not merely Creators' inboxes. Opp. at 33 (emphasis added). That is absolutely false. The paragraphs Plaintiffs cite contain *no allegation that Unruly accessed inboxes other than those of its affiliated Creators*, nor do any other of the 525 paragraphs in the FAC. Plaintiffs pretend they have alleged that Unruly accessed inboxes it did not have permission to access, and thus acted unlawfully, because their claim as actually pled fails as a matter of law.

Plaintiffs attempt to circumvent this fatal defect by relying on *People v. Childs*, 220 Cal. App. 4th 1079, 1100 (2013), for the proposition that "CDAFA does not turn on whether an entity has system credentials" but rather "on whether the user consented to the access and use."[8] Opp. at 33. Even if true, that proposition does not support Plaintiffs' claim because they are not the referenced "users." Plaintiffs claim

---

[7] To the extent Plaintiffs attempt to plead a claim against Unruly under Cal. Penal Code § 502(c)(6), that claim fails for the same reasons Plaintiffs' claims under CDAFA's other provisions fail. *See* FAC ¶471.

[8] *Childs* does not address a violation of Section 502(c)(2). *See Childs*, 220 Cal. App. 4th at 1100-01 (analyzing violation of Section 502(c)(5)).

that senders of content (*i.e.*, Plaintiffs/Fans) rather than the owners of the inboxes that Unruly accesses (*i.e.*, Creators) are the "users" with the power to limit Unruly's access to and use of content. *See id.* But that contravenes the law, as only an owner of impermissibly accessed or used data has a claim under CDAFA. *See* Cal. Penal Code § 502(e)(1) (authorizing civil cause of action by "owner or lessee of . . . data"). Plaintiffs do not explain in the FAC or Opposition how they "own" the contents of a Creator's inbox, and they cite no case for the proposition that the sender of a message has an ownership interest in the message once it arrives in the intended recipient's inbox. Plaintiffs' Section 502(c)(2) claim therefore fails.

**2. Plaintiffs Misapply Section 502(c)(3)**

Plaintiffs' contention that Agency Defendants violated Section 502(c)(3) because they "'caused' the [OnlyFans] platform to be used without permission by misrepresenting who was on the other side of the exchange" stretches Section 502(c)(3) far beyond its intended reach. *See* Opp. at 34. As Plaintiffs correctly note, Section 502(c)(3) prohibits "[k]nowingly and without permission using or causing to be used any computer services." Because Unruly's alleged use was, as already noted, expressly *with the permission* of its affiliated Creators, Unruly cannot have violated this provision. Nothing in the provision's language suggests that the permission can somehow be negated by misrepresenting one's identity while using a computer service, and Plaintiffs cite no legal authority for that proposition.

**3. Plaintiffs Misstate Section 502(c)(7)**

In addressing their Section 502(c)(7) claim, Plaintiffs erroneously cite that provision as stating that it "prohibits accessing a computer 'in order to wrongfully control or obtain money, property, or data.'" Opp. at 34. That is not what the statute says.[9] *See* Cal. Penal Code § 502(c)(7) (imposing liability on anyone who

[9] Plaintiffs seem to be partially quoting Section 502(c)(1). But even that provision hinges on unauthorized use. *See* Cal. Penal Code § 502(c)(1) (imposing liability on anyone who "[k]nowingly accesses and without permission . . . uses any data, computer, computer

"[k]nowingly ***and without permission*** accesses or causes to be accessed any computer, computer system, or computer network"). CDAFA is not some generalized set of rules that governs all the ways in which a computer may be lawfully used. Rather, it sets limits on how individuals and entities may access and use computer systems, accounts, and data belonging to others. When access occurs pursuant to permission, as Plaintiffs allege occurred here, CDAFA does not apply. Plaintiffs therefore do not have a CDAFA claim.

#### 4. Plaintiffs Do Not Adequately Allege That They Suffered Economic Harm

Finally, Plaintiffs' CDAFA claim also fails because they do not show that they have suffered damages due a violation of CDAFA. Plaintiffs fail to address the law making clear that "invasion of privacy" and "emotional distress" do not qualify as damages under CDAFA, and thereby concede that point. Opp. at 34-35. They instead focus on economic harm, claiming that they "paid subscription fees, tipped impersonators, and purchased premium content" due to Unruly's alleged deceit, resulting in "a direct economic loss caused by unauthorized access and use of user data." Their claim fails for the same reasons they fail to plead an economic injury under RICO. *See* Section II.A.3, *supra*.

### E. The Forum Selection Clause Bars Plaintiffs' Claims

Unruly incorporates by reference the arguments made in the Reply in Support of Defendants' Motion to Strike Claims of Non-California Defendants (ECF 166).

---

system, or computer network in order to . . . wrongfully control or obtain money, property, or data."). Although Plaintiffs' CDAFA cause of action is not brought under Section 502(c)(1) (*see* FAC ¶¶466-475), Unruly's permission to access Creators' accounts defeats it regardless.

## III. CONCLUSION

For the foregoing reasons and those stated in Unruly's Motion, Unruly respectfully requests that the Court grants its Motion in full and without leave to amend.

DATED: August 18, 2025

The Jacobs Law Firm, PC

By: [signature]
Matthew Jacobs

*Attorney for Unruly Agency LLC and Behave Agency LLC*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Unruly Agency LLC and Behave Agency LLC, certifies that this brief contains 6,717 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: August 18, 2025

The Jacobs Law Firm, PC

By: ______________________
Matthew Jacobs

*Attorney for Unruly Agency LLC and Behave Agency LLC*