1  Nithin Kumar (SBN 300607)
     nithin@kingfisherlawapc.com
2  KINGFISHER LAW APC
   P.O. Box 492415
3  Los Angeles, California 90024
   T: (408) 930-3580
4
   Attorneys for Defendant Content X, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>     Plaintiff,<br><br>    vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>     Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**REPLY IN SUPPORT OF DEFENDANT CONTENT X, INC.'S MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:  September 4, 2025<br>Time:  10:00 a.m.<br>Dept.:  10D<br><br>Assigned to Hon. Fred W. Slaughter |

REPLY IN SUPPORT OF CONTENT X, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ………………………………………….…….…….. 1

IV. DISCUSSION………………………………………………………….… 2

    A. Plaintiffs Have Failed to Allege a RICO Violation by Content X…. 2

        1. The FAC Does Not Allege that Content X Directed the RICO Enterprise's Affairs ………………………............................ 2

        2. The Complaint Does Not Allege that Content X Directed or Participated in Any Alleged Racketeering Activity ……………. 3

        3. Plaintiffs Have Not Alleged a RICO Enterprise ……………….. 4

    B. The VPPA Claim Against Content X Should Be Dismissed…....….. 5

    C. Content X Did Not Violate the Wiretap Act, CIPA or CDAFA Because the Creators Authorized Access to Their Accounts ………. 9

IV. CONCLUSION ……………………………………………………………… 10

## I. INTRODUCTION

In their Consolidated Opposition to the Agency Defendants' Rule 12(b)(6) motions, Plaintiffs altogether fail to respond to several of Content X's substantive arguments. For example, Plaintiffs offer no response to the argument that the FAC fails to allege *any* specific misrepresentations made by Content X sufficient to constitute a predicate act of wire fraud. (Mot. at 9-12.) Likewise, the Opposition does not address Content X's arguments that the VPPA only applies where "delivering video content" is "central to the defendant's business," or that information constitutes VPPA PII only where it reveals a specific person's identity. (*Id.* at 13-16.) In several instances, Plaintiffs also simply ignore controlling Ninth Circuit precedents, such as those holding that an "interception" does not occur "in transit" when stored communications are accessed after they have arrived at their destination. (*Id.* at 18 (citations omitted).) Given Plaintiffs' tacit concessions on these crucial points, the Court can and should dismiss each of the causes of action asserted against Content X.

With respect to the issues that are addressed in the Opposition, Plaintiffs arguably fare worse, as their own arguments confirm why the Agency Defendants' Rule 12(b)(6) motions should be granted. On the RICO claims, Plaintiffs provide no valid excuse for the FAC's failure to plead *any* communications or coordination between *any* members of the alleged enterprise and thus fail to establish that Agency Defendants' alleged conduct constitutes anything other than nonactionable "parallel conduct." (Opp. at 9-12, 20-21.) The Opposition also distorts the VPPA beyond all recognition in attempting to argue that Plaintiffs qualify as "subscribers" of the Agency Defendants' services, as well as by arguing that the Agency Defendants "disclosed" Plaintiffs' information by providing it to their own employees. (*Id.* at 22-23, 25.) Lastly, Plaintiffs ignore their own allegations that Creators authorized the Agency Defendants' access to their OnlyFans accounts—thus defeating statutory claims based on unauthorized access—and instead invent entirely new consent requirements that do not exist in any statute. (*Id.* at 29-31, 33.)

## II. DISCUSSION

### A. Plaintiffs Have Failed to Allege a RICO Violation by Content X

Plaintiffs' RICO claims should be dismissed for a plethora of different reasons that are thoroughly addressed in Content X's motion and the other Defendants' briefs. For the purposes of this Reply brief, Content X highlights three arguments, each of which is dispositive. Plaintiffs' RICO claims fail because the FAC does not allege that Content X either directed the enterprise's racketeering activity or participated in any racketeering activity itself. Additionally, because the FAC does not allege any form of coordination between Content X and the other Agency Defendants, Plaintiffs fail to establish the existence of a RICO enterprise as a matter of law.

#### 1. The FAC Does Not Allege that Content X Directed the RICO Enterprise's Affairs

Plaintiffs do not deny their obligation to establish that "the Agency Defendants' [sic] must have had a role in directing the enterprise's affairs." Opp. at 6. Because Plaintiffs have utterly failed to explain how Content X directed the alleged enterprise's affairs, however, the RICO claims against Content X must be dismissed.

Content X's moving papers explain that the FAC falls short because it "does not allege any form of communication, direct or indirect, between Content X and other defendants," and therefore "cannot establish that Content X directed, operated or managed any of the affairs of the purported enterprise other than its own." Mot. at 10 (citing *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008)). In response, Plaintiffs argued that the Agency Defendants provided such direction "by directing professional chatters to impersonate Creators." Opp. at 13; *see id.* at 7-8. But a defendant who merely directs the activities of its own employees does not suffice. In *Reves*, the U.S. Supreme Court held that "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (emphasis in original); *see Walter v. Drayson*, 538 F.3d at 1247-48 ("Like the accounting firm in

*Reves*, [defendants] were not acting under direction from [other defendants]"). Thus, Content X's hiring and direction of Chatters—who are alleged to be Content X's own employees (FAC ¶ 227)—cannot qualify as directing the alleged RICO enterprise's affairs. Because Plaintiffs do not identify any other manner in which Content X purportedly directed the conduct of the other defendants, the RICO claims against Content X must be dismissed.

## 2. Plaintiffs Have Not Adequately Alleged Any Fraudulent Conduct by Content X

Content X also previously argued that "[Plaintiffs] fail to identify any specific fraudulent conduct by Content X" and that "the only purported 'racketeering activity' attributed to Content X is neither fraudulent nor related in any way to the alleged 'Chatter Services' scheme." Mot. at 10. Content X explained in its moving papers that the only statements attributed to Content X in the FAC were not fraudulent, and that the general allegation that the Agency Defendants engaged in the Chatter Scheme is insufficient to satisfy Rule 9(b)'s heightened pleading standard. *Id.* at 11-12.

Plaintiffs wholly ignored these arguments made by Content X. In their Opposition, the only alleged "racketeering activity" that Plaintiffs attributed to Content X is as follows:

- "Content X provides Chatter services, employing Chatters to impersonate the Creator and communicate with Fans without the Fans' knowledge."
- According to a former Creator, "The way they would answer messages was super lazy [and] super robotic."

Opp. at 17 (citing FAC ¶¶ 227-228). Neither of these allegations constitute actionable wire fraud or any other type of predicate act under the RICO statute. The mere allegation that Content X provided Chatter services does not mean that Content X necessarily made any false statements regarding the true identity of the Chatters. And even if it did, such a broad, generalized allegation falls well short of satisfying the

3
REPLY IN SUPPORT OF CONTENT X, INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

stringent requirements of Rule 9(b). *See California Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009) ("To satisfy Rule 9(b), a RICO complaint must 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'").

Plaintiffs' inability to identify any specific fraudulent representations by Content X, much less multiple instances of wire fraud or any other predicate act, is fatal to their RICO claims.

### 3. Plaintiffs Have Not Alleged a RICO Enterprise

As the other Defendants all argue in their respective briefs, Plaintiffs have plainly failed to adequately allege the existence of a RICO enterprise. In its moving papers, Content X noted that "[c]ourts have repeatedly rejected RICO claims alleging an enterprise based on a 'rimless hub-and-spoke conspiracy'" without "any form of cooperation or coordination between any of the defendants." Mot. at 5-7. Content X further explained that courts frequently dismiss RICO claims based only on "parallel conduct" without any showing of cooperation or coordination. (*Id.*; *see, e.g.*, *Doan v. Singh*, 617 F. App'x 684, 868 (9th Cir. 2015) (plaintiffs did not explain how defendants "conspired," "assisted," "colluded," or "helped" one another); *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (allegations that defendants were "associated in a manner directly related to their own primary business activities" are insufficient to establish RICO enterprise); *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3 (C.D. Cal. Jan. 28, 2016) (RICO claim failed to allege facts demonstrating that purported enterprise members "cooperated with each other" or "coordinated their behavior"); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *9 (C.D. Cal. June 29, 2012) (rejecting "rimless hub-and-spoke structure" where "entities engaged in bilateral business dealings with Countrywide but in sharp competition with each other"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (RICO claim alleging "nothing more than parallel conduct by separate actors" does not suffice).

In response, Plaintiffs conceded that "RICO's structural element requires a 'relationship among those associated with the enterprise.'" Opp. at 12 (citing *Boyle v. United States,* 556 U.S. 938, 946). Moreover, Plaintiffs made no attempt to distinguish any of the legal authorities extensively cited in the various motions to dismiss.[1] Instead, Plaintiffs blatantly mischaracterize Content X and the other Defendants' positions to construct an obvious strawman argument. Plaintiffs argue that Plaintiffs are not required to prove that "all the members of the RICO enterprise knew each other" or "identify specific communications" between them. (Opp. at 20-21). Of course, none of the Defendants have adopted such an extreme position. Rather, the point is that Plaintiffs must allege *some* communication between the alleged members in order to establish the coordination and cooperation required to establish a RICO enterprise. Thus, unless Plaintiffs can explain how members of an enterprise can "join together" and coordinate without ever knowing of or communicating with one another, the Court must dismiss the RICO claims due to Plaintiffs' failure to plead a cognizable RICO enterprise.

### B. The VPPA Claim Against Content X Should Be Dismissed

Plaintiffs' VPPA claim is riddled with legal infirmities. As an initial matter, Plaintiffs wholly failed to respond to—and thus conceded—Content X's arguments that Content X is not a "Video Tape Service Provider" because delivering video content is not central to its business, and that the information at issue does not

---

[1] On page 20 of their Opposition, Plaintiffs improperly cite to two unpublished cases in violation of Ninth Circuit Rule 36-3. *See* Opp. at 20. More importantly, none of the three cases cited by Plaintiffs involved RICO claims as the Opposition falsely asserts. Instead, each of these cases involved conspiracy claims under federal criminal statutes, none of which impose anything akin to RICO's associated-in-fact enterprise requirement. *See United States v. [C]arrazco-Gutierrez*, 168 F.3d 502 (9th Cir. 1999) (unpublished case involving conspiracy to traffic cocaine); *United States v. Vargas*, 19 F.3d 32 (9th Cir. 1994) (unpublished case involving conspiracy to distribute methamphetamine); *United States v. Friedman*, 445 F.2d 1076 (9th Cir. 1971) (affirming conviction for conspiracy to obtain grand jury testimony).

constitute VPPA PII because it does not allow an ordinary person to identify any specific individual. *See* Mot. at 13-16. Moreover, Plaintiffs' argument that they were "subscribers" of the Agency Defendants twists the plain meaning of the VPPA and is not supported by any legal authority. Opp. at 22-23. Finally, Plaintiffs' argument that Content X and Agency Defendants violated the VPPA by disclosing information to Chatters contradicts Plaintiffs' own allegations in the FAC that the Chatters were not "third parties," but were employed by the Agency Defendants. *Id.* at 23-25. For each of these independent reasons, the Court should dismiss the VPPA claims.

    ***First***, Plaintiffs acknowledge that the VPPA's definition of a "Video Tape Service Provider" only applies to businesses that provide video content "as a central feature of their commercial model." Opp. at 21; *see In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("[F]or the defendant to be 'engaged in the business' of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose."). The FAC, however, alleges that Content X's business was to manage Creators' accounts and facilitate chatters, FAC ¶¶ 222-231—not primarily to deliver video content. Indeed, the FAC only describes the delivery of ***photographs*** from Creators managed by Content X, not videos.[2] Because the allegations in the FAC do not establish that delivering video content was a "central feature" of its business model, the VPPA claim against Content X should be dismissed. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (dismissing VPPA claim because the "handful of generalized allegations saying [defendant] shares video titles" with third parties were unsupported by "specific

---

[2] The Opposition cites to paragraphs 222 to 227 of the FAC—all of which discuss Content X's business—for the claim that "agencies managed chat interactions that prompted video unlocks and upsells, often using preloaded scripts and pricing tiers." Opp. at 22. However, not only do paragraphs 222 to 227 state no such thing, but there also are no such allegations located anywhere else in the FAC. As such, they must be disregarded and not considered by the Court.

allegations").

**Second**, Plaintiffs completely fail to respond to Content X's argument that the VPPA's definition of PII only applies to information "readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). The Opposition contains no discussion of this crucial element of Plaintiffs' claim. *See* Opp. at 23-25. There is no allegation in the FAC that any of the Agency Defendants ever received information that revealed the identities of Plaintiffs or any other OnlyFans user. The mere fact that the Agency Defendants may have had access to unique identifiers such as Plaintiffs' username does not mean that they received, much less disclosed, VPPA PII. *See, e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *12 (N.D. Cal. Apr. 28, 2014) ("[T]he issue is whether a unique identifier—without more—violates the VPPA. It does not."); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *12 (D.N.J. July 2, 2014) ("anonymous usernames" are not VPPA PII because they do not "identify an actual, identifiable person and link that person to a specific video choice"). For this reason alone, the VPPA claim must be dismissed.

**Third**, Plaintiffs argue that they qualify as "consumers" under the VPPA as "subscribers" to Content X and the other Agency Defendants' services. This is pure sophistry. Even assuming Content X was a "Video Tape Service Provider," Plaintiffs did not "subscribe" to or otherwise "consume[]" services provided by the Agency Defendants. Plaintiffs were subscribers to the OnlyFans platform and/or Creators— but not the Agency Defendants. Indeed, Plaintiffs allege they were entirely unaware of the Agency Defendants' existence; they cannot simultaneously allege that they were also the Agency Defendants' customers.

Neither of the cases cited by Plaintiffs support their contorted position. In *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023), the court found that both plaintiffs were "subscribers" of the defendant because they "registered for accounts with defendant by providing, among other information, their name and

email address," and then visited and watched videos on the defendant's website. *Id.* at 721-22. *Ghanaat* is plainly inapposite as Plaintiffs do not allege they registered for accounts with Content X or interacted with Content X in any way. In *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015), the Eleventh Circuit held that the plaintiff's acts of downloading and using a free mobile device application from the Cartoon Network did not make him a "subscriber." *Id.* at 1257. The court construed the term "subscriber" to "involve[] some type of commitment, relationship, or association (financial or otherwise) **between a person and an entity**," and went on to hold that no such subscription was established because the plaintiff did not "sign up for or establish an account," "make any payments," "become a registered user," "receive a Cartoon Network ID," "establish a Cartoon Network profile," or "sign up for any periodic services or transmissions." *Id.* at 1256-57 (emphasis added). Likewise, Plaintiffs did nothing to create any form of "commitment, relationship, or association" with Content X (as opposed to OnlyFans or a specific Creator). Thus, Plaintiffs' own cases do not support that they are "subscribers" within the meaning of the VPPA with respect to claims asserted against Content X.

*Fourth*, in its moving papers, Content X questioned to whom Plaintiffs were alleging Content X had disclosed VPPA PII. Mot. at 16. In the Opposition, Plaintiffs attempted to answer that question by pointing to the Agency Defendants' Chatters and describing them as "non-essential third parties." Opp. at 24-24. Plaintiffs' position, however, contradicts their own allegations that the Creators were employees of Content X and the other Agency Defendants (FAC ¶ 227)—not "third parties." As the Chatters were employees of the Agencies, there can be no unlaw "disclosure" by Content X to itself. At most, such an internal disclosure would fall within the VPPA's exception that allows disclosures to be made in the "ordinary course of business." 18 U.S.C. § 2710(b)(2)(E).

### C. Content X Did Not Violate the Wiretap Act, CIPA or CDAFA Because the Creators Authorized Access to Their Accounts

Each of Plaintiffs claims under the Wiretap Act, CIPA and the CDAFA claim for the same fundamental reason: according to Plaintiffs' own allegations, the Creators fully authorized the Agency Defendants to access their OnlyFans accounts and the information stored there. *E.g.*, FAC ¶¶ 4, 104. Regardless of whether Plaintiffs consented to the Agency Defendants' access to their communications, the Creators' consent and authorization is sufficient to defeat the Wiretap Act claim. Likewise, Plaintiffs' own allegation of consent and authorization from the Creators defeats their CDAFA claim, which "require[s] that a defendant's access of the computer system at issue be 'without permission.'" *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (citing Cal. Penal Code § 502). Again, it is irrelevant whether Plaintiffs provided their authorization, as the computers at issue are the OnlyFans servers that store the Creators' account information, and the Creators allegedly authorized the Agency Defendants' access to those servers and information.

Plaintiffs' claims under CIPA fail for a related reason: the Agency Defendants only access the information once it has been transmitted to OnlyFans' servers and not while it is still in transit. *See* FAC ¶ 112(b) n.45 (alleging that Agency Defendants "directly access[ed]" Creators accounts to read and respond to the stored messages). In their Opposition, Plaintiffs fail to address much less distinguish the binding Ninth Circuit precedents cited in Content X's moving papers holding that the communication must be acquired "during transmission," and not by accessing stored data. *See* Mot. at 18 (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077-78 (9th Cir. 2004); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-78 (9th Cir. 2002). Plaintiffs cannot simply assert conclusory allegations that an "interception" occurs in transit without providing any factual detail as to "how or when" such interception occurs. *See Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1109-10 (C.D. Ca. 2024) (dismissing CIPA claim for lack of "detail to support an inference of in transit

interception"); *Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) ("Though Plaintiff alleges in general terms the interception occurs through software embedded in Defendant's website, she does not include additional factual details establishing when the interception occurs."). Because Plaintiffs do not include any factual allegations explaining how such communications are intercepted in transmit, Plaintiffs cannot rely on their own *ipse dixit* to survive a motion to dismiss.

## V. CONCLUSION

For all of the reasons stated herein and in its moving papers, Content X respectfully requests that the Court grant this Motion to Dismiss each of the claims asserted against Content X in the First Amended Complaint.

Respectfully submitted,

DATED: August 18, 2025        KINGFISHER LAW APC

By:     */s/ Nithin Kumar*
        Nithin Kumar
        Attorneys for Defendant Content X, Inc.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Content X, Inc. certifies that this brief contains 3,164 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 18, 2025          KINGFISHER LAW APC

By:    */s/ Nithin Kumar*
       Nithin Kumar
Attorneys for Defendant Content X, Inc.