Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br>     Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS**<br><br>Judge:   Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date:   September 25, 2025<br>Time:   10:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 25, 2025, at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiffs N.Z., R.M., B.L., S.M., and A.L. ("Plaintiffs") will and hereby do move for an order granting Plaintiffs leave to withdraw ECF Nos. 138, 141, 142, and 158, and file corrective briefs.

This request is based on this Notice, the attached Memorandum of Points and Authorities, and Declaration of Robert B. Carey.

On August 20, 2025, Plaintiffs' counsel conferred with Defendants Fenix International Limited's and Fenix Internet LLC's (collectively, "Fenix") counsel via Zoom, under Local Rule 7-3, to explain what had occurred to cause the errors and to meet and confer about whether Fenix opposed Plaintiffs' forthcoming Motion for Leave to Withdraw ECF Nos. 138, 141, and 158, and File Corrective Briefs ("Motion"). Fenix stated that they would oppose Plaintiffs' Motion.

As more fully described in the accompanying Memorandum in Support, this Motion is made upon the grounds that good cause exists to allow Plaintiffs to withdraw ECF Nos. 138, 141, 142, and 158, and file corrective briefs. This Motion is based on this Notice and the Memorandum in Support, as well as all papers and pleadings on file herein, and such arguments as the Court may permit.

DATED this 28th day of August, 2025.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Robert B. Carey*
    Robert B. Carey

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION ........................................................................................ 1

II.     FACTS ......................................................................................................... 1

     A.      Hagens Berman has a long-standing co-counsel
          relationship with Celeste Boyd. ....................................................... 1

     B.      Ms. Boyd, under the duress of a family tragedy, decided
          to use ChatGPT. ................................................................................ 2

     C.      Hagens Berman failed in their supervision of Ms. Boyd .................... 5

     D.      Hagens Berman apologizes and will endeavor to rectify
          their mistake. ..................................................................................... 6

III.    ARGUMENT ............................................................................................... 7

     A.      Undersigned counsel was not attempting to deceive the
          Court or Fenix and the motions should be heard on the
          merits. ................................................................................................ 7

     B.      Plaintiffs propose corrections that will minimize the
          prejudice to Fenix. .......................................................................... 12

          1.      Response to the RFJN. ........................................................ 12

          2.      Response to the Fenix MTD. ............................................... 13

          3.      Response to the Fenix Defendants' Motion for
               Reconsideration. .................................................................. 17

     C.      Plaintiffs corrected their Response to the Agencies'
          MTDs for full transparency. ........................................................... 19

IV.     CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. NBCUniversal Media, LLC*,
  2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) ............................ 14, 15

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025) ............................................................................. 15

*Brown v. Google LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................ 15

*Calise v. Meta Platforms, Inc.*,
  103 F.4th 732 (9th Cir. 2024) ....................................................................... 14, 15

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
  No. C10-861 RSM,
  2011 WL 31862 (W.D. Wash. Jan. 3, 2011) .......................................... 13, 15, 16

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ........................................................................................ 8, 9

*Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*,
  28 F.4th 956 (9th Cir. 2022) ......................................................................... 18, 19

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005) ........................................................................................ 18

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) ............................................................................ 14

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243 (N.D. Cal. 2022) .............................................................. 14

*EpicentRx, Inc. v. Superior Court*,
  No. S282521, 2025 WL 2027272 (July 21, 2025) ....................................... 12, 17

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................... 14, 15

-iii-

*Gemini Technologies, Inc. v. Smith & Wesson Corp.*,
   931 F.3d 911 (9th Cir. 2019) ....................................................................... 18, 19

*In re Hulu Privacy Litigation*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................................................... 14, 15

*In re JUUL Labs, Inc., Marketing, Sales Practices & Products*
   *Liability Litigation*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................. 15

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ...................................................................................... 15

*Lacey v. State Farm Gen. Ins. Co.*,
   No. CV 24-5205 FMO,
   2025 WL 1363069 (C.D. Cal. May 5, 2025) ................................................. 9, 12

*Loritz v. CMT Blues*,
   271 F. Supp. 2d 1252 (S.D. Cal. 2003) ............................................................ 19

*Massachusetts v. United States*,
   333 U.S. 611 (1948) .......................................................................................... 19

*Mata v. Avianca, Inc.*,
   678 F. Supp. 3d 443 (S.D.N.Y. 2023) ............................................................ 8, 12

*Mavy v. Comm'r of Soc. Sec. Admin.*,
   No. CV-25-00689-PHX-KML (ASB),
   2025 WL 2355222 (D. Ariz. Aug. 14, 2025) ............................................... 10, 11

*Mendoza v. Amalgamated Transit Union International*,
   30 F.4th 879 (9th Cir. 2022) ............................................................................. 14

*Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian*
   *Nation*,
   331 F.3d 1041 (9th Cir. 2003) .......................................................................... 18

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ...................................................................................... 16

*In re Pacific Gas & Electric Co.*,
   280 B.R. 506 (N.D. Cal. 2002) ......................................................................... 19

*People v. McKale*,
    25 Cal. 3d 626 (1979) ................................................................ 15, 16

*Planned Parenthood of the Great Northwest & the Hawaiian Islands v.*
    *Wasden*,
    564 F. Supp. 3d 895 (D. Idaho 2021) ................................................ 18

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2006) .............................................. 18

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ................................................... 18, 19

*United States v. Woodbury*,
    263 F.2d 784 (9th Cir. 1959) ........................................................ 18

*California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
    766 F.2d 1319 (9th Cir. 1985) ...................................................... 18

**Statutes**

18 U.S.C. § 2710 ................................................................... 16

Cal. Penal Code § 502 ............................................................. 17

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE
CORRECTIVE BRIEFS

011194-11/2686242 V1                              Case No: 8:24-cv-01655-FWS-SSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs request leave to withdraw ECF Nos. 138, 141, 142,[1] and 158, and file corrective briefs. The corrected briefs and redlines of those briefs are attached as Exhibits 2–9 to the Declaration of Robert B. Carey. After reviewing Fenix's replies and supporting declarations to their Request for Judicial Notice, Motion to Dismiss, and Motion for Reconsideration, undersigned counsel performed a thorough review of all the briefs they recently filed in this case and performed an internal investigation to determine how hallucinated cites ended up in the briefs. In performing that investigation, they determined that an attorney who has not appeared in this action, but has been working in a co-counsel capacity, used artificial intelligence ("AI") to draft portions of the response briefs. Plaintiffs file this motion to explain what happened to the Court and to request permission to withdraw the previously filed responsive briefs and file corrective briefs so the case may be decided on the merits.[2]

## II.    FACTS

### A.    Hagens Berman has a long-standing co-counsel relationship with Celeste Boyd.

Hagens Berman, and in particular Robert Carey, has had a professional relationship with Celeste Boyd for well over ten years. Declaration of Robert B. Carey ("Carey Decl.") ¶ 5. Ms. Boyd is a Yale-educated lawyer who has practiced

---

[1] As explained in Section III.C. below, Plaintiffs did not confer with the Agency Defendants about moving to file a corrective brief for ECF No. 142. Because they discovered some AI errors in the course of their investigation, they include it here for full transparency.

[2] Plaintiffs acknowledge that they had indicated to the Court their intent to file this motion on August 27, 2025. In finalizing the filing, however, they wished to take additional time to confirm the accuracy of their representations, and therefore are submitting it the following morning after completing those checks.

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS

law for twenty years. Declaration of Celeste H.G. Boyd ("Boyd Decl.") ¶ 12. Ms. Boyd's primary tasks in working with Hagens Berman included being a legal analyst and brief writer. Carey Decl. ¶ 5. She has researched and written briefs on sophisticated matters requiring meticulous attention to detail and advanced legal analysis. *Id.* During that time she has worked in a co-counsel capacity with Hagens Berman, as well as with lawyers at other firms on joint litigation teams. *Id.* Her contributions have been valued by all attorneys who have worked with her.[3] *Id.*

During the time Ms. Boyd worked with Hagens Berman, Mr. Carey found her work product to be exemplary, professional, meticulously researched, and sophisticated in its level of legal analysis. *Id.* ¶ 6. Her written work has consistently shown the highest standards of legal scholarship and attention to detail that one would expect from an attorney of her caliber and educational background. *Id.* Mr. Carey has never found Ms. Boyd prone to avoiding work. *Id.*

Hagens Berman has never had an issue like this with Ms. Boyd's work, nor has anyone Mr. Carey knows who has worked with her professionally. *Id.* ¶ 7. The errors identified in the subject briefs are completely inconsistent with Ms. Boyd's established track record and professional standards, where she thoroughly researches issues and provides work product that is thoroughly vetted and cite-checked. *Id.*

**B.    Ms. Boyd, under the duress of a family tragedy, decided to use ChatGPT.**

Given Ms. Boyd's ability to handle complex legal issues, she was tasked with helping draft, compile, and finalize the Response to Fenix's Motion to Dismiss ("Response to the Fenix MTD"), Response to Fenix's Request for Judicial Notice

---

[3] One co-counsel in an unrelated case called Mr. Carey when he heard the news and said he planned to send something to the Court so it understood Ms. Boyd's level of work and commitment to providing the best work product possible. Carey Decl. ¶ 5.

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE
CORRECTIVE BRIEFS

and Defendants Motion to Strike ("Response to the RFJN"), and Consolidated Response to the Agency Defendants' Motions to Dismiss ("Response to the Agencies' MTDs"). Carey Decl. ¶ 8. Co-counsel at Tycko & Zavareei LLP ("Tycko") and Dorsey & Whitney LLP ("Dorsey") drafted portions of those briefs and sent them to Ms. Boyd, who then incorporated and compiled the briefs. *Id.* ¶ 9. Neither firm used AI to draft their portions of the briefs, nor were they involved in finalizing the briefs.[4] *Id.* Hagens Berman conferred extensively with Ms. Boyd in developing the arguments, but when the filing deadline arrived, Ms. Boyd was still editing her sections of all three briefs and merging other sections. *Id.* ¶ 11. Given the delay and the quality of her work, Hagens Berman did not perform a full cite-check on her work.[5] *Id.* ¶¶ 11, 23.

Ms. Boyd was also later tasked with drafting and assisting with finalizing the Response to Fenix's Motion for Reconsideration.[6] *Id.* ¶ 13. Hagens Berman was tasked with finalizing the briefs jointly with Ms. Boyd and filing them. *Id.* Hagens Berman conferred extensively with Ms. Boyd in developing the arguments, but when the filing deadline arrived, Ms. Boyd was still editing her sections of all three briefs and merging other sections. *Id.* ¶ 13. Ms. Boyd was drafting and editing the brief the day it was due. *Id.* Given the last-minute drafting and editing, Hagens

---

[4] Timoney Knox LLP ("Timoney") was not involved in drafting or finalizing the briefs. Carey Decl. ¶ 9.

[5] Undersigned counsel notes that Christopher Pitoun of Hagens Berman, who is acting as local counsel in this case, was not involved in the drafting or filing of these briefs.

[6] Dorsey and Timoney were not involved at all in the drafting or finalizing of the Response to the Motion for Reconsideration. Tycko provided some portions, but did not use AI in any of its drafting and had no involvement in finalizing or filing the Response. Carey Decl. ¶ 13. Hagens Berman was tasked with finalizing the briefs jointly with Ms. Boyd and filing them. *Id.*

Berman again did not cite check Ms. Boyd's work given her history of excellence. *Id.*

At the time these briefs were being written, Ms. Boyd was dealing with some personal issues, including her father being in hospice and his ultimate death just days after the Response to the Motion for Reconsideration was filed. Boyd Decl. ¶¶ 6–13. She had previously used ChatGPT as a sounding board, specifically to help her organize outlines, draft narratives, and solidify arguments. *Id.* ¶ 16. She knew that in using ChatGPT, she had to develop processes to supervise its output, including thoroughly checking everything it produced. *Id.* ¶ 17. In dealing with the rapid decline of her father's health, Ms. Boyd proceeded to use it to draft portions of the briefs, analyze the legal research she performed, and combine and shorten work provided by other attorneys on the case. *Id.* ¶¶ 18–19. Ms. Boyd believed she could control the AI—giving the tool explicit instructions that would prevent it from hallucinating—and check it at the end of the process. She knew that a critical part of the process was to check everything at the end, but she failed to do that here. *Id.* ¶ 17. Because she was dealing with a personal crisis, she ran out of time and did not check her work. *Id.* ¶ 18. Regrettably, and to the detriment of those listed as Plaintiffs' counsel on the case, she did not inform Hagens Berman or any other co-counsel of her use of AI or advise them that her work had not been adequately checked. *Id.* ¶ 19.

Ms. Boyd's use of ChatGPT resulted in four categories of errors, as detailed below in Section III.B. While Ms. Boyd does not know exactly how all of these errors occurred, they were the result of her using ChatGPT. Boyd Decl. ¶ 22–26. To the extent she could explain her errors, those are identified in Appendix A to her declaration ("Boyd Decl. App. A"). First, there was a single hallucinated case across three briefs. As Ms. Boyd explains, that hallucination came from putting a placeholder in her brief that she needed to find a case, and that ChatGPT filled in

without her requesting it do so. Boyd Decl. App. A. Second, there are cases that were cited for the correct proposition, but the quotation or parenthetical was incorrect. Third, there were cases that exist, but cited for the wrong proposition. And fourth, there was an incorrect record cite that resulted in bad argument. That was caused by Ms. Boyd asking ChatGPT to draft an argument based on the Court's Order found at ECF No. 117.[7]

While undersigned counsel was aware that Ms. Boyd's father was having medical issues, they were unaware of the toll it was taking on her. Carey Decl. ¶ 15. During conferences there was nothing unusual in Ms. Boyd's work during the briefing process or during counsel's many conferences on the legal issues, where she was immersed in the facts of the case and the case law surrounding the legal issues. *Id.* Ms. Boyd did not inform undersigned counsel of her difficulties, nor did she request help. *Id.* ¶ 16; Boyd Decl. ¶ 19. Ms. Boyd also did not inform undersigned counsel that she was using AI in any capacity. Boyd Decl. ¶ 19.

**C.      Hagens Berman failed in their supervision of Ms. Boyd.**

Hagens Berman did not perform a thorough cite-check of Ms. Boyd's work before filing the final briefs with the Court. Carey Decl. ¶¶ 10–11, 13, 23. Hagens Berman's standard practice is to proof and check sections or contributions by other firms on our litigation team, but because of the close relationship, long history, and Ms. Boyd's role on the project, we did not check her work, just sections from other firms. *Id.* ¶ 10. We failed to undertake a full cite-check of her work for two reasons. First, Hagens Berman had a long-standing relationship with Ms. Boyd, where her performance and work product over the years was impeccable. In working with Ms. Boyd for over ten years, Hagens Berman had the opportunity to review dozens of her briefs and in that time, she has never written a brief that was not accurately and

---

[7] Plaintiffs will be filing a Notice of Withdrawal of Opposition to the Request for Judicial Notice.

thoroughly cite checked. *Id.* ¶¶ 5–7. In short, undersigned counsel trusted the quality of her work—just like they would for any attorney they had a long-standing relationship with—based on her past performance and knowledge of her wok product. Second, the briefs were still being drafted the day they were due, and undersigned counsel simply did not have the time they needed to perform a full cite-check, but Mr. Carey did perform a spot check to ensure certain cases were real and pertained to the subject. Carey Decl. ¶¶ 11, 13, 23. Undersigned counsel takes full responsibility for that failure.

**D.    Hagens Berman apologizes and will endeavor to rectify their mistake.**

Undersigned counsel acknowledges that the errors that occurred represent an unfortunate departure from both Ms. Boyd's established professional standards and Hagens Berman's quality control procedures. Carey Decl. ¶ 17. Undersigned counsel accepts responsibility for its role in not implementing further safeguards that might have caught these issues before filing. *Id.* Undersigned counsel has apologized to counsel for Fenix and apologizes to the Court. *Id.* ¶ 18. Hagens Berman is not a firm that takes shortcuts and the many lawyers that helped on this case did not do so—undersigned counsel's previous work with this Court shows that the firm tries to produce quality briefs for the Court. *Id.* Ms. Boyd's biggest mistake was just not telling undersigned counsel, because each Plaintiffs' counsel who has appeared in this case feels terrible that she did not feel she could come to any member of the team for help, support, or relief on her assignments. *Id.* ¶ 16.

Hagens Berman is and will be implementing corrective measures so this does not happen in the future. While Hagens Berman has had an AI policy since 2023—prohibiting the use of generative AI for legal research or writing and requiring attorneys and paralegals to review and comply with all courts' AI requirements—it does not have any specific policies regarding co-counsel's use of AI. *Id.* ¶ 20. As such, Hagens Berman has tasked its Management Committee with reviewing its

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS

existing AI policies and creating new policies to address the use of AI by co-counsel and contractors. *Id.* ¶ 20. Hagens Berman also plans on organizing in-house training to address the responsible use of AI in legal practice and reinforce best practices for review. *Id.* ¶ 21. Undersigned counsel is also reviewing their internal procedures to ensure their quality control catches any issues in the future, and will reach out to experts in the area to help establish procedures for handling situations where deadlines and processes collide for reasons somewhat outside their control. *Id.* ¶ 22.

Last, all Plaintiffs' counsel that have appeared in this case are cognizant of the Court's requirements regarding the use of AI set forth in Section VIII.h of the Court's Standing Order. When undersigned counsel filed the relevant briefs, Mr. Carey believed he had complied with Section VIII.h because he was not aware that AI had been used to generate any part of Plaintiffs' briefs. *Id.* ¶ 23. Mr. Carey is now aware that the briefs did not comply with the Court's standing order and takes responsibility for that failure. *Id.* ¶ 24. In drafting the proposed corrective briefs, undersigned counsel made minimal changes or withdrew superfluous assertions to avoid prejudicing Fenix. *Id.* While AI was not used in the drafting of the corrected portions of the briefs, AI was used in the original briefs. *Id.* In correcting their errors, undersigned counsel also undertook a review of the Response to the Agencies' MTDs—as AI had been used to draft that brief—and found some minimal errors there as well. To provide full transparency to the Court, they provide a corrective Response to the Agencies' MTDs.

## III.   ARGUMENT

### A.   Undersigned counsel was not attempting to deceive the Court or Fenix and the motions should be heard on the merits.

As explained in detail above, undersigned counsel was not trying to mislead the Court or prejudice Fenix. These errors were not intentional, but were made by an attorney dealing with a family tragedy and personal struggles. Rather than share

1   those struggles with undersigned counsel, she used ChatGPT to help her without
2   letting undersigned counsel know. Undersigned counsel accepts responsibility for
3   not thoroughly checking her work, but they also had no indication—based on over a
4   decade of working with Ms. Boyd—that her work would require the level of review
5   that, in retrospect, was needed here.

6          Fenix cites *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023),
7   which found that "[a]n attempt to persuade a court or oppose an adversary by
8   relying on fake opinions is an abuse of the adversary system." Here, undersigned
9   counsel is not attempting to persuade the Court or oppose Fenix by relying on fake
10  opinions. In *Mata*, the attorney who drafted the brief used ChatGPT, admitted he
11  could not find at least one of the cited cases, but relied on it anyway *Id.* at 451.
12  Additionally, the attorneys in that case did nothing to "come[] clean about their
13  actions" and made no attempt to correct their errors. *Id.* at 449. In fact, those
14  attorneys waited more than two months to address their mistakes, after the court
15  issued an order to show cause. *Id.* (errors were identified by opposing counsel on
16  March 15 and attorneys waited until May 25 "to dribble out the truth" after an order
17  to show cause). Last, those attorneys never sought to withdraw the brief "or advise
18  the Court that it may no longer rely upon it." *Id.* at 459.

19         Here, undersigned counsel immediately made efforts to explain to the Court
20  how the errors occurred and to withdraw and replace the briefs. As soon as Fenix
21  filed its replies and supporting declarations, Hagens Berman undertook an
22  investigation to figure out what occurred, contacted counsel for Fenix to explain the
23  situation, and notified the Court of their error and that they would be filing a motion
24  to correct their briefing as soon as possible under the local rule. These actions all
25  occurred withing three days of Fenix's filing.

26         Fenix cites *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 389–90 (1990),
27  where a law firm was sanctioned for performing an inadequate investigation before

28

filing an antitrust suit. There the court found that [t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction." *Id.* at 398. The attorneys in that case performed a cursory and inadequate investigation before filing their complaint. *Id.*at 389. Here, undersigned counsel did not bring a frivolous lawsuit—Plaintiffs' First Amended Complaint demonstrates an extensive investigation—and they immediately sought to correct the briefs in a way that will not prejudice Fenix.

Fenix next cites *Lacey v. State Farm Gen. Ins. Co.*, No. CV 24-5205 FMO (MAAX), 2025 WL 1363069, at *3 (C.D. Cal. May 5, 2025) for the proposition that "no reasonably competent attorney should out-source research and writing to this technology – particularly without any attempt to verify the accuracy of that material." Undersigned counsel does not disagree with that proposition, but notes the factual circumstances are different here. In *Lacey*, the Plaintiff was represented by two law firms: Ellis George and K&L Gates. An attorney at Ellis George used "various AI tools to generate an 'outline' for" a supplemental discovery brief, which contained "problematic legal research." *Id.* at *1. The outline was then sent to K&L Gates without informing them of the use of AI. *Id.* at *2. K&L Gates then incorporated that research into the brief. *Id.* at *2. The magistrate judge then discovered that two authorities were inaccurate and emailed the lawyers at K&L Gates. The lawyers then re-submitted the briefs without the two cites, claiming the errors were inadvertent, but leaving the "AI-generated problems in the body of the text." *Id.* Only later did the magistrate judge "discover that Plaintiff's lawyers used AI – and re-submitted the brief with considerably more made-up citations and quotations beyond the two initial errors – until [he] issued a later OSC soliciting a more detailed explanation." *Id.* While the Court did strike the supplemental briefing regarding on the discovery issue, it did so because "(a) the initial undisclosed use of AI, (b) the failure to cite-check the Original Brief, and (perhaps most egregiously),

(c) the re-submission of the defective Revised Brief without adequate disclosure of the use of AI." *Id.* at 4. Here, undersigned counsel immediately disclosed the use of AI, once they became aware of it, and are seeking to submit corrective briefs.

Last, Fenix cites *Mavy v. Comm'r of Soc. Sec. Admin.*, No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222, at *6 (D. Ariz. Aug. 14, 2025), to argue that Plaintiffs outsourced their legal research to AI, failed to review and correct the errors, and failed to tell the Court they were using AI. Undersigned counsel admit they did not review the inserts from Ms. Boyd thoroughly enough and catch the errors before filing, and they take full responsibility for that failure. But they did not know AI was being used at the time of filing and they never outsourced their legal research to AI. The facts of *Mavy* are also distinguishable. The signing attorney in *Mavy* outsourced all the writing to a contract attorney, that contractor was supervised by a second attorney, and it is unclear what role the signing attorney took in reviewing the final brief. *Id.* at *2 (signing counsel and the attorney supervisor "discussed the brief, reviewed it prior to signing and submission"). *Id.* Here, the attorney who wrote the brief was a long-time co-counsel of Hagens Berman and had over the ten years they worked together, produced quality cite-checked work. Additionally, Mr. Carey worked closely with Ms. Boyd on many of the sections, and he and other attorneys at Hagens Berman reviewed the briefs in full, were familiar with the legal arguments and the majority of the opinions cited— providing them confidence the cases were not hallucinated—but failed to perform a detailed cite-check. Carey Decl. ¶ 11. Mr. Carey also spot-checked portions of the brief when he became aware of issues with some record cites in the briefs, to ensure AI had not been used. *Id.* ¶ 23.

Hagens Berman and Ms. Boyd have also been forthcoming about how AI was used and what issues it caused. This is distinguishable from *Mavy*, where the signing attorney "has not explicitly admitted to using AI to prepare her Opening

Brief. Instead, Counsel points to Contractor's similar failure to make such an admission and states 'the inability to verify the sources raised concerns that AI-generated text may have been improperly included in the draft.'" *Mavy*, 2025 WL 2355222, at *5 (D. Ariz. Aug. 14, 2025).

Additionally, the severity and number of the mistakes in *Mavy* are distinguishable.[8] There, counsel cited nineteen cases, three did not exist and only "5 to 7 of those cases exist <u>and</u> appear as quoted or generally stand for the proposition for which they are cited." *Id.* at 4–5. Here, Plaintiffs cited fifty-seven cases in their Response to the Fenix MTD. Of those fifty-seven cases, one case cite was fictitious and six cases were cited for an incorrect proposition. Of those six cases, four were properly cited for other propositions in the brief. There were also seven cases that were cited for the correct proposition, but the quote or parenthetical was inaccurate. Thus, only three of fifty-seven cases were generated by AI—the remaining cases had been researched and vetted by counsel.

Last, Plaintiffs cite seventeen cases in their Response to the Motion for Reconsideration. The errors generated by AI resulted in six cases being cited for an incorrect proposition. Three of those six cases were cited for other, correct, propositions in the brief. The remaining errors identified by Fenix were cases that were cited for the correct proposition, but the quote or parenthetical was incorrect. Furthermore, as described more fully below, the majority of the miscites were for basic legal propositions.

Here, Fenix argues that the Court should grant their motions as a sanction to Plaintiffs. But such a harsh result is not warranted here, because such a sanction would result in the dismissal of Plaintiffs' claims. "[B]ecause the purpose of

---

[8] All of the cases cited in Plaintiffs' Response to the RFJN were accurate. The use of AI resulted in a false quote from the Court and an erroneous argument. Plaintiffs will withdraw their Response to the RFJN.

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS

imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve the goal." *Mata*, 678 F. Supp. 3d at 465–66 (citations omitted). Additionally, "[w]hether that conduct supports the imposition of various types of sanctions requires a fact- and circumstance-specific analysis." *Lacey*, 2025 WL 1363069, at *3. Here, the errors were not intentional and Plaintiffs should not be punished for a mistake made by their counsel, particularly where counsel has been forthcoming with the Court and opposing counsel. Additionally, the errors do not affect a large portion of the arguments at issue. In the Response to the Fenix MTD, most of the changes involve the VPPA claim. The arguments on the remaining claims have minimal changes. The errors do not affect the main argument in the Response to the Motion for Reconsideration—that reversal is warranted under *EpicentRx, Inc. v. Superior Court*, No. S282521, 2025 WL 2027272 (July 21, 2025). Finally, in moving to file corrective briefs, Plaintiffs want to give Fenix the opportunity to file a response, which will ensure there is a decision on the merits.

**B.    Plaintiffs propose corrections that will minimize the prejudice to Fenix.**

Plaintiffs' proposed changes consist of deleting any false cites and their accompanying arguments and correcting the citation errors and parentheticals. With one very minor exception—a case relied on heavily by Plaintiffs and the Court in the original forum non conveniens briefing and decision—Plaintiffs are not asking to substitute any of the erroneous citations with new cases.

**1.    Response to the RFJN.**

As outlined above, Plaintiffs Response to the RFJN contained a false quote attributed to the Court, which included an entire argument based on a false premise. ECF No. 138 at 13–14. Ms. Boyd relied on AI to summarize the Court's order and draft an argument. Boyd Decl. App. A. To avoid any prejudice to Fenix, Plaintiffs will be withdrawing their opposition to Fenix's Request for Judicial Notice. In

finalizing all the briefs that were due on July 17, 2025, undersigned counsel undertook an extensive and thorough review of all record citations. Carey Decl. ¶ 12. During that review they found several erroneous cites to the record, which were new to them, and they corrected those. *Id.* Because of the number of firms that were involved in drafting these briefs, they did not know where the errors had come from. *Id.* They raised the errors with Ms. Boyd, and she maintained that she did not know how they happened. *Id.* Undersigned counsel speculated that perhaps the errors had come from citing to the wrong complaint. *Id.* Undersigned counsel thought they had caught and corrected all the record cites, but unfortunately they missed this one.[9] Fenix does not point out any additional record cites that were made in error. Undersigned counsel acknowledges that this particular error was egregious, and for that reason Plaintiffs are willing to withdraw their remaining arguments to the RFJN, even though those arguments were sound. Undersigned counsel also ran a full cite-check of the Response to the Motion to Strike, which was consolidated with the Response to the RFJN. Plaintiffs have made three small citation corrections to that portion of the brief as well for full transparency.

### 2.    Response to the Fenix MTD.

Undersigned counsel has done a thorough review of Plaintiffs' Response to the Fenix MTD. They have identified five categories of errors that they seek to fix with minimal prejudice to Fenix.

First, there is one cited case that does not exist.[10] Plaintiffs cite *Doe v. Match Group*, 2022 WL 4551660, at 6 (C.D. Cal. Aug. 12, 2022), for the proposition that a forum-selection clause is not enforceable where the gravamen of the action is

---

[9] As explained elsewhere in this motion, Mr. Carey also undertook a spot check of the legal authority to ensure AI had not been used. Carey Decl. ¶ 23.

[10] Fenix argues there are two "decisions that do not exist." ECF. No. 163 at 1. But as explained below, *Cascade Yarns* is a real case that Fenix claims to have reviewed.

fraud. ECF No. 141 at 13. Plaintiffs did not use AI to find a cite for this proposition, which is an established principle of law. Rather, Ms. Boyd put a note in her original draft that she needed to plug in a citation and that note was replaced with a fake cite by ChatGPT. Boyd Decl. App. A. Plaintiffs request permission to replace the cite with "*Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009) ("California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law.")." Plaintiffs cited *Doe 1 v. AOL* for this identical proposition in their Response in Opposition to Fenix's Motion to Dismiss for Forum Non Conveniens. ECF No. 85 at 8. Likewise, Fenix responded to that argument and the Court relied on it in denying Fenix's motion in part. ECF No. 95 at 13; ECF No. 117 at 10.

Second, there are six cases that exist, but do not stand for the proposition they were cited for: *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022) (ECF No. 141 at 19); *Mendoza v. Amalgamated Transit Union International*, 30 F.4th 879 (9th Cir. 2022) (ECF No. 141 at 24); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) (ECF No. 141 at 31); *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (ECF No. 141 at 31); *Archer v. NBCUniversal Media, LLC*, 2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) (ECF No. 141 at 32); *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) (ECF No. 141 at 37). Plaintiffs have deleted each of those citations, and where appropriate, deleted the accompanying argument.

*Roblox*, 602 F. Supp. 3d at 1252, was cited to support Plaintiffs' breach-of-contract claim, along with another case. Plaintiffs have deleted *Roblox* and will rely on the remaining case, which will avoid any prejudice to Fenix. Similarly *Mendoza*, 30 F.4th at 889, was cited to support Plaintiffs' fraud case, along with another case. Plaintiffs have deleted *Mendoza* and will rely on the remaining case, which will

-14-

again avoid further prejudice to Fenix. These cases appear to have been added by ChatGPT to accompany existing citations. Boyd Decl. App. A

Plaintiffs' discussion of *Calise*, 103 F.4th 732, as it relates to the VPPA, has been deleted in its entirety, to avoid any prejudice to Fenix. In drafting the brief, Ms. Boyd put a note to "find a case on partial identifiers." Boyd Decl. App. A. ChatGPT appears to have filled that in with *Calise*, another case Plaintiffs cited in their brief.

Plaintiffs cite *In re Hulu*, 86 F. Supp. 3d at 1095 and *Archer*, 2025 U.S. Dist. LEXIS 129598, at *14, to argue that "the ordinary course of business" carveout in the VPPA is construed narrowly. As Plaintiffs do not cite any other cases for that proposition, they have deleted those references and related arguments in their entirety.

Plaintiffs cite *In re Facebook*, 402 F. Supp. 3d at 799, to show that CDAFA includes economic harm. But as the text of the statute already states this on its face and is included in the Response, Plaintiffs request that they be allowed to replace that cite with the already cited statute.

Third, Plaintiffs cite seven cases where the case stands for the proposition it was cited for, but include inaccurate quotes: *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (ECF No. 141 at 9); *Cascade Yarns, Inc. v. Knitting Fever, Inc.,* No. C10-861 RSM, 2011 WL 31862 (W.D. Wash. Jan. 3, 2011)[11] (ECF No. 141 at 11); *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) (ECF No. 141 at 18–19); *In re JUUL Labs, Inc., Marketing, Sales Practices & Products Liability Litigation*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) (ECF No. 141 at 24); *In re Facebook*, 402 F. Supp. 3d 767 (ECF No. 141 at 31); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (ECF No. 141 at 38); *People v. McKale*, 25 Cal. 3d

---

[11] Plaintiffs include the correct cite here for *Cascade Yarns*, but address how the wrong cite ended up in the Response to the Fenix MTD below.

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS

626 (1979) (ECF No. 141 at 40–41). As each of these cases support the proposition they are cited for—and in six of the seven cases the misstatement occurred in a parenthetical—Plaintiffs request leave to file a corrective brief to correct the parentheticals.[12] Because Fenix has already reviewed and responded to these cases, replacing the parentheticals will not be prejudicial to Fenix. And Fenix will have the opportunity to respond to the changes.

Fourth, Plaintiffs had some errors in citations, specifically two cases and some subsections of the statutes. Fenix argues that *Cascade Yarns* does not exist, stating that the quoted language "does not appear in the *Cascade Yarns* January 3, 2011 order." ECF. No. 164 at 3 ¶ 13. Plaintiffs' citation had the correct case name and order date, but the Westlaw cite was wrong. When Dorsey & Whitney sent over their portions of the briefs, the citation for *Cascade Yarns*, was correct, as was the parenthetical. Carey Decl. ¶ 10 The original cite read: "*See Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2011 U.S. Dist. LEXIS 279, at *28 (W.D. Wash. Jan. 3, 2011) ("Taking these allegations as true, the Court can infer from the specific acts and relationships alleged in the Amended Complaint that an agreement existed between these parties.")". *Id.* Ms. Boyd fed the citation into ChatGPT and asked it shorten the parenthetical. Boyd Decl. App. A. The resulting citation was incorrect and it changed the parenthetical to: "an agreement may be inferred from the specific acts and relationships alleged." Had ChatGPT not added quotation marks, the parenthetical would have been correct.

Plaintiffs have also corrected the other citations that were incorrect, including the correct citation for *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011), adding a missing subsection to 18 U.S.C. § 2710, and correcting a

---

[12] In *McKale* the fake quote appears in the text of the motion. Plaintiffs propose deleting that quote and adding an accurate parenthetical.

PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE
CORRECTIVE BRIEFS

subsection of Cal. Penal Code § 502. Fenix had no problem identifying the correct citations and therefore cannot claim any prejudice by these errors.

Fenix last argues that Plaintiffs responded to arguments it did not make or complains about Plaintiffs' characterization of Fenix's arguments. Two arguments—about whether the Agency Defendants are video service providers and Plaintiffs are consumers under the VPPA—were inadvertently copied over from the Response to the Agencies' MTDs and included in the Response to the Fenix MTD. This error does not prejudice Fenix in any way, but out of an abundance of caution, Plaintiffs have deleted those arguments. Plaintiffs have also corrected one additional statement that Fenix has taken issue with, changing "these allegations amount to mere omissions or passive indifference" to "these allegations are insufficient," to remove any potential prejudice to Fenix.

Finally, undersigned counsel performed a thorough cite-check on the Proposed Corrective Response to the Fenix MTD and fixed any errors to ensure their remaining cites were completely accurate.

### 3.    Response to the Fenix Defendants' Motion for Reconsideration.

Plaintiffs have done a detailed review of the issues raised by Fenix regarding Plaintiffs' Response to the Fenix Defendants' Motion for Reconsideration ("Reconsideration Response"). Plaintiffs note that their discussion of *EpicentRx, Inc. v. Superior Court*, 2025 WL 2027272 (Cal. July 21, 2025)—the basis of Fenix's Motion for Reconsideration—was accurate and did not contain any AI errors. Plaintiffs identify two issues that resulted from Ms. Boyd's use of AI. First, there are nine cited cases that stand for propositions they were cited for, but contain inaccurate quotes. Second, there were six cases that exist, but do not stand for the proposition they were cited for.

Plaintiffs cited six cases for the incorrect proposition. Three of the cases were cited for the unremarkable proposition that review is left to the discretion of the

trial court: *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018) (ECF No. 158 at 4, 13); *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956 (9th Cir. 2022) (ECF No. 158 at 4); and *Gemini Technologies, Inc. v. Smith & Wesson Corp.*, 931 F.3d 911 (9th Cir. 2019) (ECF. No. 158 at 4). While that proposition is not controversial,[13] Plaintiffs will delete those cases and their related arguments to avoid any prejudice to Fenix. Two cases were cited for the proposition that when an order rests on two independent grounds, eliminating one does not compel a different result: *California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319 (9th Cir. 1985)[14] (ECF No. 158 at 10); and *United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) (ECF No. 158 at 10). Plaintiffs cite an additional case that does stand for that proposition, so they have deleted both of these cites to avoid prejudice to Fenix. Last, Plaintiffs cite *Discover Bank v. Superior Cour*t, 36 Cal. 4th 148 (2005), to support another case that public policy may be judicially declared. ECF No. 158 at 9. As Plaintiffs have a case to support that proposition, they have deleted *Discover Bank*.

Four of the six cases were cited for a different, but correct proposition, in the response, and in the case of *Discover Bank*, related to the arguments being made but were not cited for the correct proposition. It appears that ChatGPT attributed false quotes to those cases. As explained above, Ms. Boyd did not check the cases and did not inform undersigned counsel that she had not performed a cite-check.

Plaintiffs cited nine cases for the correct proposition, but the parentheticals are inaccurate: *Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D. Cal. 2006) (ECF No. 158 at 3); *Planned Parenthood of the Great Northwest & the Hawaiian Islands*

---

[13] *See Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Whether or not to grant reconsideration is committed to the sound discretion of the court.").

[14] Ms. Boyd admits that this is a case ChatGPT suggested to her and she did not check it. Boyd Decl. App. A.

*v. Wasden*, 564 F. Supp. 3d 895 (D. Idaho 2021) (ECF No. 158 at 4, 12); *Gemini Technologies, Inc. v. Smith & Wesson Corp.*, 931 F.3d 911 (9th Cir. 2019) (ECF. No. 158 at 9); *Massachusetts v. United States*, 333 U.S. 611 (1948) (ECF No. 158 at 10); *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018) (ECF No. 158 at 11); *Depuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956 (9th Cir. 2022) (ECF No. 158 at 11); *Loritz v. CMT Blues*, 271 F. Supp. 2d 1252 (S.D. Cal. 2003) (ECF No. 158 at 14); and *In re Pacific Gas & Electric Co.*, 280 B.R. 506 (N.D. Cal. 2002) (ECF No. 158 at 15). Plaintiffs request leave to file corrective briefs that reflect correct parentheticals or quotations. Because Fenix has already reviewed and responded to these cases, replacing the parentheticals will not be prejudicial to Fenix. And Fenix will have the opportunity to respond to the changes.

## C.   Plaintiffs corrected their Response to the Agencies' MTDs for full transparency.

In the process of drafting this motion, undersigned learned that Ms. Boyd had used AI in her work on the Response to the Agencies' MTDs. As they were getting ready to file this motion, they performed a thorough cite-check of Plaintiffs' Response to the Agencies' MTDs as well, to ensure there were no AI errors. In doing so they found some errors and corrected them for full transparency. Because of the timing of these changes, Plaintiffs have not met and conferred with counsel for the Agency Defendants before bringing this motion. Plaintiffs understand they have not complied with the meet and confer requirements of L.R. 7-3. But Plaintiffs wanted to be fully transparent with this Court and include a redline of those changes with this motion. Plaintiffs can bring a separate motion, that complies with L.R.7-3 if the Court requests, and are ready to separately move for permission to file a corrective Response to the Agencies' MTDs after a meet and confer.

As the attached redline shows, Plaintiffs deleted four cases that appear to be the result of AI. Two of those cases were the second cited case for the same

-19-

proposition, so there is no prejudice to the Agency Defendants. The third deleted case supported a single-sentence argument. Plaintiffs also deleted the argument to avoid prejudice to the Agency Defendants. The fourth case that was deleted was a standalone case, but it was superfluous because the statute that was cited supports the same proposition (as the changes reflect). Last, Plaintiffs found some minor errors in some of the citations or quotations and corrected them.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs leave to withdraw ECF Nos. 138, 141, 142, and 158, and file corrective briefs.

DATED: August 28, 2025          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,673 words which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: August 28, 2025

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey