Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email:  christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>Hon. Fred W. Slaughter<br><br>**DECLARATION OF ROBERT B. CAREY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS**<br><br>Judge:      Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date:        September 25, 2025<br>Time:       10:00 a.m. |

I, Robert B. Carey, hereby declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of Arizona, and I have been admitted pro hac vice in this Court. I am a partner at Hagens Berman Sobol Shapiro LLP, and have appeared in this case as one of the counsel of record for Plaintiffs in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this declaration on behalf of Plaintiffs in support of Plaintiffs' Motion for Leave to Withdraw ECF Nos. 138, 141, 142, and 158, and File Corrective Briefs ("Motion") and to provide context regarding the professional relationship and work history of attorney Celeste H.G. Boyd in connection with the hallucinated citations and parentheticals raised by Defendants Fenix International Limited and Fenix Internet LLC (collectively, "Fenix") in ECF Nos. 164 and 165, filed on August 18, 2025.

3. On July 17, 2025, Plaintiffs filed their Response in Opposition to Defendants' Motion to Strike Claims of Non-California Defendants and Fenix Defendants' Motion for Request for Judicial Notice (ECF No. 138) ("Response to the RFJN"); their Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue (ECF No. 141) ("Response to the Fenix MTD"); and their Consolidated Response in Opposition to the Agency Defendants' Motions to Dismiss the First Amended Complaint (ECF No. 142) ("Response to the Agencies' MTDs").

4. On August 11, 2025, Plaintiffs filed their Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion for Partial Reconsideration or Alternatively Certification of an Interlocutory Appeal (ECF No. 158) ("Response to the Motion for Reconsideration").

**Professional Relationship with Ms. Boyd**

5. I have worked professionally with Ms. Boyd on high-end, complex litigation matters for more than ten years. Throughout this extended professional relationship, she has served as co-counsel on cases where her primary tasks included being a legal analyst and brief writer on sophisticated matters requiring meticulous attention to detail and advanced legal analysis. During our decade-plus collaboration, Ms. Boyd has worked not only with many senior lawyers in our firm in a co-counsel capacity, but also with respected lawyers at other firms on joint litigation teams. Her contributions have consistently been valued by all attorneys who have worked with her. One co-counsel in another case called me when he heard the news and said he planned to send something to the Court so it understood her level of work and commitment to providing the best work product possible.

6. In my time working with her, I have found her work product to be exemplary, professional, meticulously researched, and sophisticated in its level of legal analysis. Her written work has consistently shown the highest standards of legal scholarship and attention to detail that one would expect from an attorney of her caliber and educational background. In my experience, Ms. Boyd is prone to overwork issues, seeking perfection that might never come, and not one to avoid work.

7. My firm and I have never had any issue such as this with Ms. Boyd's work, nor has anyone I know who has worked with her professionally. The errors identified in the subject briefs are completely inconsistent with her established track record and professional standards, where she thoroughly researches issues and provides work product that is thoroughly vetted and cite checked.

**Ms. Boyd's Role in the Subject Briefing**

8. On July 17, 2024, Plaintiffs were filing three responsive briefs: Response to the Fenix MTD, Response to the RFJN, and Response to the Agencies'


MTDs. Ms. Boyd was helping compile, complete, and finalize these briefs, and at some level she was responsible for helping us check the briefs, and in particular checking her own work (work she had always checked accurately in the past), and get them into final form.

9. Co-counsel at Tycko & Zavareei LLP ("Tycko") and Dorsey & Whitney LLP ("Dorsey") drafted portions of those briefs and sent them to Ms. Boyd, who then incorporated and compiled the briefs. Neither firm used AI to draft their portions of the briefs, nor were they involved in finalizing the briefs. Timoney Knox LLP ("Timoney") was not involved in drafting or finalizing the briefs.

10. Our standard practice is to proof and check sections or contributions by other firms on our litigation team, but because of the close relationship, long history, and her role on the project of helping finalize the brief for filing, we did not thoroughly cite check her work, just sections from other firms. For example, when Dorsey & Whitney sent over their portions of the briefs, the citation for *Cascade Yarns*, was correct, as was the parenthetical. The original cite read: "*See Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2011 U.S. Dist. LEXIS 279, at *28 (W.D. Wash. Jan. 3, 2011) ("Taking these allegations as true, the Court can infer from the specific acts and relationships alleged in the Amended Complaint that an agreement existed between these parties.")".

11. Our firm conferred extensively with Ms. Boyd and our co-counsel, internal and external, in developing the arguments, but when the filing deadline arrived, Ms. Boyd was still editing her sections of all three briefs and merging other sections. This was occurring while undersigned counsel was trying to review, check, and finalize the briefs—briefs that totaled over 90 pages. At 11 p.m. she was instructed by undersigned counsel to stop editing the briefs so they could be finalized and filed. I, along with other partners, reviewed the briefs in full. Given Ms. Boyd's previous work quality and my involvement with previous iterations

-3-
CAREY DECL. ISO PLS.' MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS
Case No: 8:24-cv-01655-FWS-SSC

1  (which were very close to final), I did not think that forgoing a full cite-check would be problematic.

12. During the review process, we performed an extensive and thorough review of all record citations. During that review we found multiple errors, which we fixed. Because of the number of firms that were involved in drafting these briefs, we did not know where the errors had come from. We raised these errors with Ms. Boyd, and she maintained that she did not know how they happened, and did not mention her use of AI to us at that time. We speculated that perhaps the errors had come from citing to the wrong complaint but did not suspect Ms. Boyd had used AI.

13. Ms. Boyd was responsible for drafting and assisting in finalizing Plaintiffs' Response to the Motion for Reconsideration. Hagens Berman was tasked with finalizing the briefs jointly with Ms. Boyd and filing them. We once again conferred extensively with Ms. Boyd in developing the arguments. Dorsey and Timoney were not involved at all in the drafting or finalizing of the Response to the Motion for Reconsideration. Tycko provided some portions, but did not use AI in any of its drafting and had no involvement in finalizing or filing the Response. On August 11, 2025, the day Plaintiffs filed their Response, Ms. Boyd was drafting and editing the brief. Given the last-minute drafting and editing, Hagens Berman again did not cite check Ms. Boyd's work, given her history of excellence.

14. We erred by not thoroughly checking her work on these briefs, a gap in our quality-control procedures we must fix for the future. This decision was based on our longstanding confidence in her work product and our knowledge of her performance over the years, where she consistently performed thorough cite-checks of her work. In working with her for over ten years, Ms. Boyd has contributed to dozens of briefs for Hagens Berman, especially in finalizing and

ensuring the law is locked in. She has never given us a brief that was not original work-product and thoroughly cite checked.

15. Unfortunately, no one on our team had any sign of Ms. Boyd's personal pressures or the difficult circumstances she was navigating during the preparation of these briefs. We were aware her father was having medical issues, but we didn't notice anything unusual in her work during the briefing process or during many of our conferences on legal issues, where she was immersed in the facts of the case and the case law surrounding the legal issues.

16. Ms. Boyd's biggest mistake was just not telling us because each of us on this team feels terrible that she did not feel she could come to us for help, support, or relief on her assignments.

**Acknowledgment**

17. The errors that occurred represent an unfortunate departure from both Ms. Boyd's established professional standards and our firm's quality control procedures. I accept responsibility for my role in not seeking leave so we could implement our own safeguards that would have caught these issues before filing.

18. I have apologized to opposing counsel and we apologize to the Court for this lapse. We as a firm do not take shortcuts and the many lawyers that helped on this case did not do so—and I think our previous work with this Court shows we try to provide quality analysis and legal research to assist the Court.

**Corrective measures we will undertake.**

19. While Hagens Berman has had an AI policy since 2023—prohibiting the use of generative AI for legal research or writing and requiring attorneys and paralegals to review and comply with all court's AI requirements—it does not have any specific policies regarding co-counsel's use of AI. None of the HB attorneys on this case use AI to do legal research or legal writing. Ms. Boyd should have understood this, as I had expressed our policy to her because of her ongoing

relationship with our firm. Going forward, I will ensure that co-counsel understand our policy and agree to meet it or already have one of their own.

20. Hagens Berman has tasked its Management Committee with reviewing its existing AI policies and creating new policies to address the use of AI by co-counsel and contractors.

21. Hagens Berman also plans on organizing in-house training to address the responsible use of AI in legal practice and reinforce best practices for review.

22. I am also reviewing our internal procedures to ensure our quality control catches any issues in the future, and will reach out to experts in the area to help establish procedures for handling situations where deadlines and processes collide for reasons somewhat outside of our control.

**Compliance with the Court's rules regarding the use of artificial intelligence.**

23. All Plaintiffs' counsel appearing in this case are aware of the Court's requirements regarding the use of artificial intelligence set forth in Section VIII.h of the Court's Standing Order. When we filed the relevant briefs, it was my understanding that we had complied with Section VIII.h because I was not aware that artificial intelligence had been used to generate any part of our briefs. In the early evening of July 17, my staff identified some inaccurate citations to paragraphs in the First Amended Complaint, which was very odd for my team. We conferred to try to figure out what happened and how. We thought it could have been from a previous draft of the complaint and numbering had changed, or from the complaint in a parallel case we are litigating, or perhaps from someone using AI—and I remarked to a partner, "CB [Celeste] would never" use AI, but to help ensure AI was not used, I went to my computer and ran reporter cites from the brief to confirm the cases pulled up were the same names and subject matter that was in the brief. And they all checked out, but I did not check the parenthetical quotes because my understanding of AI at the time was that it produced fake cases or holdings. I

thought this was a reasonable approach to negate any possibility that someone had used AI to draft the brief, especially at such a late stage. So, we fixed the complaint citations and proceeded to finalize the briefs and file.

24. I am now aware that the briefs did not comply with Section VIII.h of the Court's Standing Order and apologize to the Court and take responsibility for that failure.

25. In drafting the concurrently filed corrective briefs, Plaintiffs' counsel sought to make minimal changes or withdraw superfluous assertions to avoid prejudice to Fenix. Counsel did not use AI to draft the corrected portions of the briefs, I acknowledge that AI was used to draft the original briefs.

26. I hereby certify that I have verified the full content of the corrective briefs are accurate and any originally artificially generated content complies with my obligations under Rule 11 of the Federal Rules of Civil Procedure.

27. Attached as Exhibit 1 is the declaration of Celeste H.G. Boyd.

28. Attached as Exhibit 2 is a true and correct copy of Plaintiffs' [Proposed] Corrective Consolidated Response in Opposition to Defendants' Motion to Strike Claims of Non-California Defendants and Fenix Defendants' Motion for Request for Judicial Notice, previously filed at ECF No. 138.

29. Attached as Exhibit 3 is a true and correct redlined copy of Plaintiffs' [Proposed] Corrective Consolidated Response in Opposition to Defendants' Motion to Strike Claims of Non-California Defendants and Fenix Defendants' Motion for Request for Judicial Notice.

30. Attached as Exhibit 4 is a true and correct copy of Plaintiffs' [Proposed] Corrective Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue, previously filed at ECF No. 141. This

response contains material that was designated confidential by Fenix, so this is the public, redacted version of this corrective brief.

31. Attached as Exhibit 5 is a true and correct redlined copy of Plaintiffs' [Proposed] Corrective Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue.

32. Attached as Exhibit 6 is a true and correct copy of Plaintiffs' [Proposed] Corrective Consolidated Response in Opposition to the Agency Defendants' Motions to Dismiss the First Amended Complaint, previously filed at ECF No. 142.

33. Attached as Exhibit 7 is a true and correct redlined copy of Plaintiffs' [Proposed] Corrective Consolidated Response in Opposition to the Agency Defendants' Motions to Dismiss the First Amended Complaint.

34. Attached as Exhibit 8 is a true and correct copy of Plaintiffs' [Proposed] Corrective Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion for Partial Reconsideration or Alternatively Certification of an Interlocutory Appeal, previously filed at ECF No. 158.

35. Attached as Exhibit 9 is a true and correct redlined copy of Plaintiffs' [Proposed] Corrective Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion for Partial Reconsideration or Alternatively Certification of an Interlocutory Appeal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of August, 2025, in Phoenix, Arizona.

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ Robert B. Carey
Robert B. Carey