Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email:  christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>Hon. Fred W. Slaughter<br><br>**DECLARATION OF ROBERT B. CAREY IN SUPPORT OF PLAINTIFFS' MOTION CONTINUANCE OF HEARING**<br><br>Judge:     Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date:      September 25, 2025<br>Time:      10:00 a.m. |

I, Robert B. Carey, hereby declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of Arizona, and I have been admitted pro hac vice in this Court. I am a partner at Hagens Berman Sobol Shapiro LLP, and have appeared in this case as one of the counsel of record for Plaintiffs in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I submit this declaration on behalf of Plaintiffs in support of Plaintiffs' Motion for Continuance of Hearing ("Motion"), and to provide the reasons for the requested continuance.

3. There has been one previous stipulation filed by the parties to continue the hearing date regarding the Fenix Defendants' Motion for Reconsideration. The Court granted the parties' stipulation. ECF No. 151.

4. There has been one previous stipulation filed by the parties to continue the hearing date regarding the Defendants' Motions to Dismiss. The Court granted the parties' stipulation. ECF No. 133.

5. On July 17, 2025, Plaintiffs filed their Response in Opposition to Defendants' Motion to Strike Claims of Non-California Defendants and Fenix Defendants' Motion for Request for Judicial Notice (ECF No. 138) ("Response to the RFJN"); their Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue (ECF No. 141) ("Response to the Fenix MTD"); and their Consolidated Response in Opposition to the Agency Defendants' Motions to Dismiss the First Amended Complaint (ECF No. 142) ("Response to the Agencies' MTDs").

6. On August 11, 2025, Plaintiffs filed their Response in Opposition to Fenix International Limited's and Fenix Internet LLC's Motion for Partial

Reconsideration or Alternatively Certification of an Interlocutory Appeal (ECF No. 158) ("Response to the Motion for Reconsideration").

7. On August 18, 2025, the Fenix Defendants filed their replies and supporting declarations, which alerted Plaintiffs' counsel to the fact that there were hallucinated citations and parentheticals in Plaintiffs' response briefs.

8. On August 19, 2025, Plaintiffs' counsel contacted counsel for the Fenix Defendants to request a meet and confer.

9. Plaintiffs' counsel met with Fenix's counsel on August 20, 2025, via Zoom, to discuss the AI-generated content, Plaintiffs' plan to seek leave to file corrective briefing, and a continuance of the upcoming hearing scheduled for September 4, 2025. The Fenix Defendants opposed Plaintiffs' efforts to continue the hearing, and stated that they would oppose any motion filed by Plaintiffs seeking leave to file corrective briefing.

10. Upon reaching impasse, Plaintiffs prepared and filed a Notice of Intent to Seek Leave to File Corrective Briefs regarding ECF Nos. 138, 141, and 158 ("Notice") (ECF No. 175) on August 21, 2025. At that time, Plaintiffs were not aware that they would also need to seek leave to file corrective briefing regarding ECF No. 142.

11. After the Zoom conference, Plaintiffs by rule had to wait 7 days before being allowed to file their Motion under Local Rule 7-3.

12. On August 28, 2025, Plaintiffs filed a Motion for Leave to Withdraw ECF Nos. 138, 141, 142, 158, and File Corrective Briefing ("Corrective Briefing Motion") (ECF No. 176).

13. These briefs contained AI-generated content.

14. I was not aware that AI was used in the briefing until August 18, 2025, and failed to identify the use of AI in the briefs before they were filed.

15. I do not use AI for legal writing or legal research, nor does anyone in my office, where the firm policy prohibits such use.

16. I was immersed in the development and drafting of the briefs, and, once advised that some citations to the First Amended Complaint were inaccurate, I spot cite-checked cases on July 17, to ensure that there were no "fake" cases.

17. I take full responsibility for the errors, and I engaged in the following acts after learning of the AI-generated content in the briefs: (1) an investigation as to how and why AI was used in the briefs, (2) how and why internal review policies and procedures failed to catch the use of AI in the briefs, (3) began the process of updating internal policies and procedures to ensure that similar incidents do not occur in the future, and (4) improve the education of firm personnel on the risks of using AI and the implementation and proper use of procedures to identify improper use of AI.

18. Under my direction, Hagens Berman also prepared corrective briefs that: (1) removed erroneous cases and their accompanying arguments; (2) corrected quotations or parentheticals that were inaccurate due to the use of AI, but the case otherwise stood for the cited propositions; (3) removed erroneous record cites or summaries of the record; and (4) performed a full cite check and corrected any other minor citation errors.

19. Plaintiffs did not add additional arguments or case law to the corrective briefs that was not already before the Court.

20. The Corrective Briefing Motion seeks leave to (1) correct any citations that were miscited, (2) delete citations and arguments that do not support the proposition stated, (3) delete any erroneous record cites and arguments, and (4) correct any other miscellaneous errors in the legal citations that occurred because of the use of AI.

21. Plaintiffs are not seeking leave to add new arguments.

22. Once notified, we immediately began investigating what had occurred and started the process of seeking leave to file corrective briefs.

23. We also prepared a request for continuance and notified the Court on August 27, 2025, that we would be filing it, the first day we could file it under the Local Rules.

24. The Court's deputy responded the following day and instructed undersigned counsel to "e-file the appropriate request/application/motion/petition and a proposed order in CM/ECF for the court's consideration."

25. We worked diligently on correcting the briefs and preparing Plaintiffs' Corrective Briefing Motion.

26. I tasked Michella Kras, with the assistance of an associate at the firm, Tory Beardsley, with reviewing the affected briefs in detail, identifying mistakes, and fixing mistakes with the least amount of prejudice to Defendants. I also participated in and supervised this process. This was a time-consuming process given the length of the briefs and the importance of reviewing every case cited in almost 100 pages of briefing.

27. Ms. Kras was also tasked with drafting the Corrective Briefing Motion, a fact intensive motion that required an understanding of what was wrong with the briefing, how the firm could fix it, and investigating how the mistakes occurred.

28. At the same time, I was working with co-counsel to determine what work each person performed and how AI-generated content made it into the briefing.

29. To complicate matters, the attorney who turned out to be responsible for writing the briefs containing AI generated content was dealing with the decline and mid-August death of her father, which—in addition to affecting her work, as noted in our Corrective Briefing Motion—has affected her mental health and made it difficult for her to provide the required information about how she used AI and what caused the mistakes. In fact, she was still out of town at her father's funeral when asked to recreate what she had done.

30. Ms. Kras and I worked diligently with Ms. Boyd—providing specific examples of what errors to focus on—so that she could provide a declaration to the Court. Despite our best efforts, we did not receive a completed declaration from Ms. Boyd until just past 11:00 p.m. on August 27, the day we intended on filing the Corrective Briefing Motion, delaying the filing by a day.

31. Because of the time it took to investigate and file the Motion for Leave to File Corrective Briefs, neither I nor my team have been able to properly prepare for the hearing, a task further complicated because undersigned counsel is—except for critical wind-down work that only she can provide given her role from the case's inception, including an eight-month investigation—concluding its professional relationship with Ms. Boyd, who otherwise would have been an integral member of the argument-preparation team and essential for the September 4 hearing.

32. The parties are actively engaged in discovery on the very issues raised in the Motion to Dismiss.

33. Plaintiffs served discovery on the Fenix Defendants on May 5, 2025, and July 29, 2025. After receiving Plaintiffs' discovery request on May 5, 2025, the Fenix Defendants objected to full discovery but agreed to provide materials related to jurisdictional issues. Plaintiffs and the Fenix Defendants, however, disagreed on exactly what needed to be produced.

34. An IDC was held before Judge Christensen on August 7, 2025. Following the IDC, the Fenix Defendants agreed to produce additional discovery related to the jurisdictional issues raised in the Motion to Dismiss. The parties also agreed to consider whether a deposition of a 30(b)(6) witness would be necessary after reviewing the documents. Notably, the deposition was noticed well in advance of the hearing, but the parties agreed to table the deposition pending the production and review of documents. Defendants said they "could likely provide some of the

1  [documents] by the 27th, and likely all of it by Labor Day." Nothing has been
2  produced.

3      35.    Similarly, the Agency Defendants refused to engage in discovery at
4  all—granting themselves a stay from the Court's discovery order until resolution of
5  the motions to dismiss. Only after learning of Judge Christensen's statements at the
6  IDC did the Agency Defendants finally agree to substantively respond to discovery.
7  Most Agency Defendants agreed to "substantively respond" to discovery between
8  August 13–18, 2025, months after Plaintiffs first served discovery requests on them
9  on May 5, 2025.

10      36.    In short, the parties are engaged in active discovery—including
11  discovery related to the motions currently scheduled to be heard on September 4,
12  2025.

13      37.    Defendants oppose the motion for continuance, claiming that it would
14  be improper to further delay the resolution of the various motions.

15      I declare under penalty of perjury under the laws of the United States that the
16  foregoing is true and correct.

17      Executed this 28th day of August, 2025, in Phoenix, Arizona.

        HAGENS BERMAN SOBOL SHAPIRO LLP

        By */s/ Robert B. Carey*
          Robert B. Carey