Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
       leonarda@hbsslaw.com
       michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br>               Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS**<br><br>Judge:     Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date:      September 25, 2025<br>Time:      10:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   FACTS ........................................................................................... 1

III.  ARGUMENT .................................................................................. 9

      A.   Fenix's claims of sanctionable conduct are overstated......................... 9

           1.   Fenix has not shown that every Plaintiffs' counsel must
                be sanctioned or shown that Mr. Carey's conduct was
                intentional. ................................................................. 9

           2.   Striking the responses, which would result in a
                dismissal, is not supported in this case. ..................... 13

           3.   It would be unfair to sanction Plaintiffs through
                dismissal. ................................................................... 16

      B.   Plaintiffs' proposed corrections are not prejudicial............................ 17

           1.   Fenix cannot show that the corrected briefs are
                prejudicial. ................................................................. 17

           2.   Undersigned counsel had an obligation to correct the
                briefing and be forthcoming with the Court. ............... 18

           3.   The proposed corrective briefs also reduce any
                prejudice to the Court. ............................................... 19

IV.   CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. NBCUniversal Media, LLC*,
   2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) ................................... 6

*Briskin v. Shopify*,
   135 F.4th 739 (9th Cir. 2025) ................................................................. 14

*ByoPlanet International, LLC v. Johansson*,
   No. 0:25-CV-60630,
   2025 WL 2091025 (S.D. Fla. July 17, 2025) ...................................... 18

*Calise v. Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ................................................................. 6

*EpicentRx, Inc. v. Superior Court*,
   2025 WL 2027272 (Cal. July 21, 2025) .............................................. 15

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................. 6

*Giebelhaus v. Spindrift Yachts*,
   938 F.2d 962 (9th Cir. 1991) ................................................................. 9

*Grant v. City of Long Beach*,
   96 F.4th 1255 (9th Cir. 2024) ............................................... 13, 14, 16

*In re Hulu Privacy Litigation*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) .................................................. 6

*Johnson v. Dunn*,
   No. 2:21-CV-1701-AMM,
   2025 WL 2086116 (N.D. Ala. July 23, 2025) ................................... 18

*Matter of Kostiv*,
   No. SBC-22-O-31036,
   2024 WL 5256333 (Cal. Bar Ct. Dec. 13, 2024) .............................. 12

-ii-

*Lacey v. State Farm General Insurance Co.*,
 No. CV 24-5205 FMO,
 2025 WL 1363069 (C.D. Cal. May 5, 2025)......................................................19

*Link v. Wabash Railroad Co.*,
 370 U.S. 626 (1962) ..............................................................................16

*Mata v. Avianca, Inc.*,
 678 F. Supp. 3d 443 (S.D.N.Y. 2023) .................................................18, 19

*Mavy v. Comm'r of Soc. Sec. Admin.*,
 No. CV-25-00689-PHX-KML (ASB),
 2025 WL 2355222 (D. Ariz. Aug. 14, 2025) ...............................2, 9, 15

*Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*,
 215 F.R.D. 581 (D. Ariz. 2003)................................................................7

*Palomo v. State Bar*,
 685 P.2d 1185 (1984) ...........................................................................12

*Park v. Kim*,
 91 F.4th 610 (2d Cir. 2024) .....................................................................9

*Pavelic & LeFlore v. Marvel Entertainment Group*,
 493 U.S. 120 (1989) ..............................................................................10

*People v. Hawkins*,
 6 Cal. App. 5th 134 (2016)........................................................................8

*Pioneer Investment Services Co. v. Brunswick Associates L.P.*,
 507 U.S. 380 (1993) ..........................................................................16, 17

*Saxena v. Martinez-Hernandez*,
 No. 2:22-cv-02126-CDS-BNW,
 2025 WL 1194003 (D. Nev. April 23, 2025) ......................................17

*Simmons v. State Bar of California*,
 70 Cal. 2d 361 (1969) ...........................................................................12

*Smith v. Bayer Corp.*,
 564 U.S. 299 (2011) ..............................................................................16

-iii-

*Unioil, Inc. v. E.F. Hutton & Co.*,
    809 F.2d 548 (9th Cir. 1986) .............................................................. 10

*United States v. Boyle*,
    469 U.S. 241 (1985) ........................................................................... 16

*United States v. Hayes*,
    763 F. Supp. 3d 1054 (E.D. Cal. 2025) ............................................ 18

*Wadsworth v. Walmart Inc.*,
    348 F.R.D. 489 (D. Wyo. 2025) ....................................................... 13

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ............................................................. 14

**Other Authorities**

California Rule of Professional Conduct 1.0.1 ....................................... 11

California Rule of Professional Conduct 5.1 .......................................... 11

California Rule of Professional Conduct 5.1(b) ..................................... 11

California Rule of Professional Conduct 5.1(c)(2) ................................. 11

California Rule of Professional Conduct 5.1 cmt. ¶ (b) ........................ 11

Fed. R. Civ. P. 8 ..................................................................................... 17

Fed. R. Civ. P. 11 ........................................................................ 2, 9, 10, 13

Fed. R. Civ. P. 11(c)(4) .......................................................................... 13

# I.    INTRODUCTION

In opposing Plaintiffs' Motion for Leave to Withdraw ECF Nos. 138, 141, 142, and 158 and File Corrective Briefs ("Motion for Leave"), Defendants Fenix International Limited and Fenix Internet LLC (collectively "Fenix") ignore that Hagens Berman has an ethical duty to correct the briefing and provide full transparency to the Court. Fenix instead argues that Plaintiffs' counsel should all be sanctioned—while mischaracterizing Hagens Beman's statements—and the Court should strike the original briefs. In making these arguments, Fenix fails to address the actual corrections made to the briefing or whether those *corrections* are prejudicial to Fenix. Because Fenix cannot show that the corrections themselves are prejudicial, the Court should grant the Motion for Leave. What sanctions the Court issues related to the use of AI—and in Hagens Berman's case, the failure to follow proper procedures—is a separate question for the Court.

# II.    FACTS

Lead counsel Robert Carey, of Hagens Berman, and Celeste Boyd[1] have been transparent with this Court and opposing counsel regarding the errors that occurred, fully taking the blame for those errors and trying to correct them by requesting leave to file corrective briefs as their ethical obligations require.[2] But Fenix has used that as an opportunity to cast aspersion on all of Plaintiffs' counsel by misrepresenting, mischaracterizing, or drawing unfounded conclusions from what Plaintiffs' counsel laid out in their Motion for Leave and supporting declarations.

---

[1] Plaintiffs' counsel will file additional material on or before September 18, 2025, further addressing the Court's Order to Show Cause (ECF No. 187) as permitted in that Order.

[2] Plaintiffs acknowledge that they did not meet and confer with the Agency Defendants before filing their Motion, as argued by Defendant Elite Creators LLC ("Elite Creators"). ECF No. 183 at 1. As stated in their Motion, they included the correction to their Response to the Agency Defendants' Motions to Dismiss to provide full transparency to the Court. ECF No. 176 at 19–20.

Plaintiffs do not want to engage in an unprofessional back and forth on what occurred but instead correct the record.[3]

First, Fenix misrepresents the relationship between Hagens Berman and Celeste Boyd. Fenix refers to Ms. Boyd as a "contract attorney" in three separate arguments in their Opposition to Plaintiffs' Motion for Leave to File Corrected Briefs ("Opposition"), without the evidentiary support required by Rule 11 for any motion presented to the Court. ECF No. 185 at 1, 5, and 18. Mr. Carey's declaration specifically states that Ms. Boyd is "co-counsel" with Hagens Berman. ECF No. 176-1 ¶ 5. As such, she puts in her time on the same basis as all other co-counsel and is not paid as she goes by Hagens Berman. Declaration of Robert B. Carey ("Carey Decl.") ¶ 3.

Second, Fenix intimates that Mr. Carey knew there were "citation errors that led him to suspect improper AI use," but did nothing to correct them. ECF No. 185

---

[3] Although the Court denied Plaintiffs' Motion for Continuance, Fenix argued that Plaintiffs' counsel knew it was improper: "Unlike the Motion for Leave, most of Plaintiffs' twelve attorneys of record declined to permit their names to appear on the Motion to Continue, which strongly suggests that all counsel *except* Hagens Berman understood the problems with this maneuver." ECF No. 185 at 11. Fenix's argument is devoid of evidentiary support required by Rule 11 for a factual contention in a motion and misrepresents the record. Hagens Berman's co-counsel did not sign the Motion for Leave or the Motion to Continue. Co-counsel's signature blocks were left off first, because they did not have the chance to fully review the filings, and second, because Hagens Berman was trying to insulate co-counsel from errors and misuse of AI they were not involved in and were not responsible for. *See Mavy v. Comm'r of Soc. Sec. Admin.*, No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222, at *2 n.1 (D. Ariz. Aug. 14, 2025). ("Counsel redacts the names of other attorneys involved in drafting and editing the Opening Brief. The Court does not take issue with this approach, as Rule 11 applies to the signing attorney.") (internal citations omitted). Further, Plaintiffs did not file an *ex parte* motion to prejudice Defendants or mislead the Court; rather Plaintiffs' counsel wanted to give the other parties the opportunity to respond and gave notice to the Court's deputy that Plaintiffs intended to file such a motion, to comply with this Court's procedures on continuances, and avoid seeking *ex parte* relief.

at 9. This is incorrect and omits critical context. Mr. Carey did not discover any incorrect or fake legal citations, which is what is at issue here. Rather, in finalizing the briefs, his team at Hagens Berman discovered there were errors in the "record citations" and assumed the mistakes had come from citing to the wrong complaint. ECF No. 176-1 ¶ 12. Mr. Carey clarifies that the "inaccurate citations [were] to paragraphs in the First Amended Complaint" and again reiterates that he "thought it could have been from a previous draft of the complaint and numbering had changed, or from the complaint in a parallel case we are litigating, or perhaps from someone using AI." *Id.* ¶ 23. Mr. Carey raised the issue with Ms. Boyd and she maintained she did not know what had happened. *Id.* ¶ 12. Even then, Mr. Carey did not suspect Ms. Boyd of using AI. *Id.* But to be sure that none of Hagens Berman's other co-counsel used AI, and not understanding where the material originated, he "ran reporter cites from the brief to confirm the cases pulled up were the same names and subject matter that was in the brief." *Id.* ¶ 23. Because they "checked out," Mr. Carey "did not check the parenthetical quotes because [his] understanding of AI at the time was that it produced fake cases or holdings." *Id.* Mr. Carey's error was one of process—in not checking every citation before filing, not an intentional disregard for the use of AI. The presence of inaccurate record cites—generally created by multiple people or filled in by staff reviewing case documents—did not alert Hagens Berman to the use of AI legal citations, as legal research is a completely different process.

Third, Fenix claims that Mr. Carey's statements to the press were inconsistent with what he told the Court. ECF No. 185 at 1, 8–9. Fenix states that Mr. Carey told the press that he did not believe he needed to check Ms. Boyd's work, but then told the Court "his team discovered citation errors that led him to suspect improper AI use." *Id.* at 9. But Mr. Carey's declaration says the same thing he said to the press: "Given Ms. Boyd's previous work quality and my involvement with previous iterations (which were very close to final), I did not think that

-3-

forgoing a full-cite check would be problematic." ECF No. 176-1 ¶ 11. Because of the timing, Mr. Carey's staff was unable to run their normal checks, but because Ms. Boyd had, over the previous decade, always checked her own work meticulously, he did not check her work. *Id.* ¶¶ 7–11. Mr. Carey acknowledges that was an error. *Id.* ¶ 14. Mr. Carey also made the same statement regarding the Response to the Motion for Reconsideration: "Given the last-minute drafting and editing, Hagens Berman again did not cite check Ms. Boyd's work, given her history of excellence." *Id.* ¶ 13. And, as already explained, Mr. Carey's team did not discover "citation errors," but errors in the First Amended Complaint record cites. Even then he did not suspect Ms. Boyd of using AI, particularly after he confirmed that the selected cases he checked existed and involved the subject matter at issue. *Id.* ¶ 23.

Fourth, Fenix claims, "[t]he attorneys from the other three firms appearing on the briefs have said nothing at all, even though it appears they may have drafted portions of some of the submissions containing AI-hallucinations." ECF No. 185 at 4. The factual contention that the AI-hallucinations came from other co-counsel is false and lacks the evidentiary support required for statements presented via motion. Mr. Carey's declaration makes it clear that the other three firms did not use "AI to draft their portions of the briefs, nor were they involved in the finalizing of the briefs." ECF No. 176-1 ¶ 9. Mr. Carey even provides a specific example of a correct citation he received from co-counsel. *Id.* ¶ 10. And Ms. Boyd explains that she took that accurate cite and it was changed by AI. ECF No. 176-2, App. A at 12–13. To clarify, the attorneys from the other three firms did not use AI in the portions they drafted and the existence of any AI had nothing to do with their work, as Hagens Berman and Ms. Boyd were solely responsible for finalizing and filing the briefs. Hagens Berman directed and assigned the work related to these briefs and Plaintiffs' attorneys from the other firms did not have the opportunity to finalize the briefs for filing. Carey Decl. ¶ 4.

-4-

Fifth, Fenix claims that ten attorneys across Plaintiffs' counsel signed the briefs and were responsible for supervising Ms. Boyd. ECF No. 185 at 2. Only Mr. Carey's signature appears on every brief (ECF Nos. 138, 141, 142, 158), and Fenix cites nothing for its proposition that every Plaintiffs' counsel who has appeared in this case or is listed in a signature block but not the signing attorney is responsible for supervising Ms. Boyd.

Sixth, Fenix argues that Hagens Berman is blaming Fenix for its mistakes. Nothing in the Motion or the Declarations blames Fenix. ECF No. 185 at 1. Fenix takes one statement out of the Motion for Continuance to argue: "Plaintiffs claim Fenix have no right to oppose Plaintiffs' request for corrected briefing because Fenix failed to alert Plaintiffs' counsel about the AI hallucinations sooner and should have stipulated to allow them to file corrected briefs." *Id.* at 17. Plaintiffs argued in the Motion for Continuance that Fenix had "unclean hands in opposing a continuance," because they could have notified Plaintiffs of the deficiencies (particularly during the meet and confers on discovery), and Fenix cannot claim prejudice by a continuance. ECF No. 178 at 2, 11. Nowhere did they say that Fenix could not oppose the Motion or that Fenix should have stipulated to the corrective briefs.

Last, Fenix claims the errors were "the worst misuse of AI in any of the more than 200 public instances where AI was used in submissions to a United States court." ECF No. 185 at 1. In making this contention, Fenix points solely to the number of incorrect citations—claiming there were "more than 30 apparent AI hallucinations"—lumping every error together.[4] ECF No. 185 at 5. Plaintiffs do not

---

[4] Fenix cites a database of AI-hallucinated cases to show this is the worst case of AI, but that database does not appear to provide any methodology for how it records what AI was used. Fenix points to the supposed 30 AI hallucinations as being far above what is reported in other cases, but on that very website this case is listed. There it reports: "Fabricated Case Law (1)" and "Misrepresented Case Law

PLS.' REPLY ISO MOT. FOR LEAVE TO WITHDRAW ECF NOS. 138, 141, 142, AND 158, AND FILE CORRECTIVE BRIEFS

dispute the use of some AI by Ms. Boyd, but find it necessary to provide critical context to those errors—not to excuse them—but because they are highly relevant to any prejudice to Fenix as well as what sanctions are appropriate in this case.

As a preliminary issue, this was not a case where counsel used AI to do legal research, but a case where AI filled in placeholders or took existing cases found by Plaintiffs and either used them for other propositions or created fake quotations. ECF No. 176-2, App. A. As demonstrated below, 97 of the 103 cited cases are real cases, found through legal research, and are supportive of Plaintiffs' arguments.

Plaintiffs cited fifty-seven cases in their Response to the Fenix Defendants' Motion to Dismiss (ECF No. 141). Of those, one case was AI-generated (where a placeholder had been put in a brief) and six cases were cited for the wrong proposition. ECF No. 176-2, App. A; ECF No. 176 at 14. Of those six cases, four of them were cited for other propositions in the case, so they were relevant to the response and had to be reviewed by Fenix even without the errors.[5] Plaintiffs have requested leave to delete the four instances where they were miscited and have not

---

(1), Exhibits or Submissions (1)."
https://www.damiencharlotin.com/hallucinations/?q=&sort_by=-date&states=USA&period_idx=0. In other words, relying on the data reported on that website, this case does not appear to be any more egregious than most of the cases listed.

[5] *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) was cited for the incorrect proposition (ECF No. 141 at 31), but was correctly cited two additional times in the response. ECF No. 141 at 17, 20. *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) was cited for the incorrect proposition (ECF No. 141 at 31), but was correctly cited three additional times in the response. ECF No. 141 at 27, 28, 31. *Archer v. NBCUniversal Media, LLC*, 2025 U.S. Dist. LEXIS 129598 (C.D. Cal. July 2, 2025) was cited for the incorrect proposition (ECF No. 141 at 32), but was correctly cited again in the response. ECF No. 141 at 29–30. And *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) was cited for the incorrect proposition (ECF No. 141 at 37), but was correctly cited again in the response. ECF No. 141 at 31.

sought leave to replace the citations with new case law.[6] The two cases that were not otherwise cited in the response were deleted, but the propositions for which they were cited were also supported by another authority, meaning they were superfluous. ECF No. 176 at 14–15. There were seven additional cases that were cited for the correct proposition, but the quotes were inaccurate. ECF No. 176 at 15–16. In other words, in moving to file a corrective brief, only three of the cases cited were irrelevant to the motion, one of which did not exist.[7]

Plaintiffs cited eighteen cases in their Response to the Fenix Motion for Reconsideration (ECF No. 158). Of those, six cases were cited for the incorrect proposition. ECF No. 176 at 17–18. Among those six, two were not cited for any other proposition in the case. *Id.* at 18. More importantly, of the six cases cited for the incorrect proposition, three were cited for the unremarkable proposition that the court has discretion to grant reconsideration. ECF No. 176 at 17–18. That proposition does not affect Plaintiffs' substantive arguments. The other cases that were cited for the incorrect proposition were all supported by a second case. *Id.* at 18. Plaintiffs cited nine cases for the correct proposition, but the quotation or parenthetical were incorrect.[8] *Id.* at 18–19. In other words, only two of the cases that Plaintiffs cited were irrelevant to the response.

---

[6] One exception to this is replacing *In re Facebook* (ECF No. 141 at 37), with the statute that is already cited in the response. ECF No. 176-6 at 37–38.

[7] The case that did not exist was cited in Plaintiffs' venue argument, something the Court had already decided. ECF No. 141 at 13 (citing *Doe v. Match*).

[8] In their Motion, Plaintiffs noted that nine cases were cited for the correct proposition, but the quotations or parentheticals were inaccurate, listing the cases. In reviewing that filing, Plaintiffs inadvertently only listed eight of the nine cases they mention. ECF No. 176 at 18–19. Plaintiffs note here that *Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*, 215 F.R.D. 581 (D. Ariz. 2003) (ECF No. 158 at 3–4), should have been included on that list, but the corrections to that case are reflected in the proposed corrective response and on the redline filed with the Court (ECF Nos. 176-9 at 3, 176-10 at 3–4).

Plaintiffs cited forty-four cases in their Response to the Agency Defendants' Motions to Dismiss (ECF No. 142). To ensure that AI had not infected that response, Plaintiffs ran a cite check of all forty-four cases. Four cases were cited for the incorrect proposition. ECF No. 176-8 at 16, 25–26, 34. Among those, only one was not cited for any other proposition in the case. ECF No. 176-8 at 34 (deleting *People v. Hawkins*, 6 Cal. App. 5th 134 (2016)). An additional case was cited for a related proposition, but the quotation was inaccurate. *Id.* at 26. In other words, only one case Plaintiffs cited was irrelevant.

None of the cases in Plaintiffs' Response to the Motion to Strike and RFJN (ECF No. 138) were affected by AI. And Plaintiffs withdrew their objections to the RFJN because of an inaccurate record cite. ECF No. 177.

Across the four briefs (ECF Nos. 138, 141, 142, 158) Plaintiffs cited 103 cases. Of those 103 cases, one was AI-generated, discussing the standard for forum-selection clauses, which the Court had already addressed. Five cases are not cited for any other proposition in the briefs, but the proposition each case was cited for was supported by an additional authority. The remaining 97 cases support Plaintiffs' arguments, further demonstrating that this is not a situation where counsel used AI to research the legal authority that supports Plaintiffs' claims. And Plaintiffs have deleted or withdrawn any arguments that were unsupported by the existing authority. These statistics are not included here to excuse Hagens Berman's and Ms. Boyd's conduct but, instead, noted to provide clarity and context to the possible prejudice to Fenix.

## III.    ARGUMENT

**A.    Fenix's claims of sanctionable conduct are overstated.**

> **1.    Fenix has not shown that every Plaintiffs' counsel must be sanctioned or shown that Mr. Carey's conduct was intentional.**

Fenix claims Mr. Carey and related counsel[9] violated Rule 11 and failed in their supervision of Ms. Boyd. As a preliminary issue, "Rule 11 applies to the signing attorney." *Mavy*, 2025 WL 2355222, at *2 n.1  (citing Fed. R. Civ. P. 11). There is no dispute here that Mr. Carey signed all the affected briefs, and Fenix's attempt to claim that all ten attorneys signed them—because their names appeared on the briefs—has no basis in fact or law. *See Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 966 (9th Cir. 1991) ("a typewritten name is not a signature for the purpose of Rule 11"). This is precisely why Hagens Berman removed the names of co-counsel, to avoid the very arguments Fenix makes here—that all counsel should be sanctioned—an approach approved by *Mavy*. *Mavy*, 2025 WL 2355222, at *2 n.1 (finding no issue with redacting the names of other attorneys).

Fenix cites *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024), to show that "Mr. Carey and his team violated Rule 11(b)(2)." ECF No. 185 at 7. The *Park* court found: "At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park*, 91 F.4th at 615. Here, all but one case existed and 97 of the remaining 102 cases were supportive of Plaintiffs' briefs. Mr. Carey generally reviewed many of those cases or was otherwise familiar with them in his extensive experience as a class-action attorney. ECF No. 176-1 ¶ 23; Carey Decl. ¶ 6. Additionally, he routinely conferred with both Ms. Boyd and other counsel and discussed the briefing and arguments to be made. ECF No. 176-1 ¶¶ 11, 13.

---

[9] Fenix repeatedly refers to "Mr. Carey and his colleagues" or "Mr. Carey and his team." ECF No. 185 at 6–8, 14–16.

Fenix also argues that Mr. Carey's Rule 11 duties could not be trusted to a "subordinate" and are non-delegable. ECF No. 185 at 7 (citing *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125 (1989) and *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986)). As a threshold issue, the cases Fenix cites refer to the signing attorney, not every attorney listed on the case. In *Pavelic,* the court held: "Where the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed." *Pavelic*, 493 U.S. at 125. Fenix cannot claim the duty is non-delegable while asking the Court to punish every attorney listed on the filings.[10] Additionally, an attorney can rely on co-counsel. In *Unioil* the court found: "We agree that reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry." *Unioil*, 809 F.2d at 558 . "In relying on another lawyer, however, counsel must 'acquire[ ] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact.'" *Id.* (*quoting* Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 187 (1985)). While Mr. Carey did not review every single case, it cannot be said he completely delegated his duty without having a good faith basis for the filing. He was familiar with, reviewed, and read many of the cases, he was active in drafting the Complaint and First Amended Complaint, and he discussed and conferred on the at-issue briefing with Ms. Boyd and other counsel on multiple occasions, ensuring that the legal claims were tenable. ECF No. 176-1 ¶¶ 11, 13; Carey Decl. ¶ 6.

---

[10] Fenix also oddly argues that one of the 500 attorneys working at the combined Plaintiffs' firms should have performed a cite check. This ignores that, other than Ms. Boyd, Hagens Berman was the firm solely responsible for finalizing and filing the briefs (and the only firm with the opportunity to fully do so), but it also conflicts with Fenix's argument that the duty is non-delegable. Fenix cannot have it both ways. Regardless, Hagens Berman admits that it failed in its processes to check every case.

-10-

Fenix next argues that Mr. Carey, and all Plaintiffs' counsel, did not supervise Ms. Boyd in violation of the California Rules of Professional Conduct. As a preliminary issue, "whether a lawyer has direct supervisory authority over another lawyer in particular circumstances is a question of fact." CA ST RPC Rule 5.1 cmt. ¶ (b). As is true of the other firms, Ms. Boyd had a co-counsel relationship solely with Hagens Berman, and did not have a co-counsel agreement with any of the other firms.[11] Carey Decl. ¶ 3. If Mr. Carey was in a supervisory role, Rule 5.1 requires only that the supervising attorney "make reasonable* efforts to ensure that the other lawyer complies with these rules." CA ST RPC Rule 5.1(b). And the rule states that a "lawyer shall be responsible for another lawyer's violation of these rules . . . if . . . [he] knows* of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable* remedial action." CA ST RPC Rule 5.1(c)(2).[12] Here, Mr. Carey did not know about Ms. Boyd's use of AI, he had previously instructed her that Hagens Berman has a policy against its use, and she failed disclose its use to Mr. Carey (or any other Plaintiffs' counsel). ECF No. 176-1 ¶¶ 12, 19, 23. Additionally, Mr. Carey's efforts were reasonable considering the circumstances. He had a long history of working with Ms. Boyd, she was a highly skilled lawyer who had previously proven herself, and she never disclosed her use of AI, even when asked about the record cites to the First Amended Complaint. *Id.* ¶¶ 5–7, 12. Hagens Berman and Ms. Boyd took full responsibility for finalizing and filing the briefs, and Hagens Berman—because it identified and fixed the record cites—did not inform other co-counsel that it discovered any incorrect record cites pre-filing. Carey Decl. ¶ 5.

---

[11] Fenix has not cited anything to show that Tycko & Zavareei LLP, Timoney Knox LLP, or Dorsey & Whitney, LLP—who, like Ms. Boyd, only have a co-counsel relationship with Hagens Berman—have a supervisory role over Ms. Boyd.

[12] "Knows" is defined as "actual knowledge" and "reasonable" means "conduct of a reasonably prudent and competent lawyer." CA ST RPC Rule 1.0.1.

Fenix's cited cases on this point are inapposite, as each involves the supervision of staff, not other lawyers. In *Palomo v. State Bar*, 685 P.2d 1185, 1191 (1984), the attorney in charge of the trust account gave an office manager complete control over banking and bookkeeping, and provided no supervision, which resulted in her depositing client funds in the payroll account. *Id.* Additionally, the attorney in that case had "serious violations of an attorney's duty to oversee client funds entrusted to his care, and to keep detailed records and accounts thereof." *Id.* *Simmons v. State Bar of California*, 70 Cal. 2d 361, 367, 450 P.2d 291, 294 (1969), involved an attorney who filed a misleading "affidavit prepared by his mother and his secretary," which he failed to correct even after it was "called to his attention by counsel for the State Bar." *Id.* The court found the "petitioner should have supervised and controlled [the affidavit's] preparation and filing." *Id.* Last, *Matter of Kostiv*, No. SBC-22-O-31036, 2024 WL 5256333, at *5 (Cal. Bar Ct. Dec. 13, 2024), involved an attorney who failed to notice his appearance, and the court found he breached his duties of supervision by not directing "his staff to ensure" he was properly listed as the attorney of record. This is not a situation where Mr. Carey had a supervisory role over a non-lawyer, who he failed to properly supervise. Rather he had a longstanding co-counsel relationship with Ms. Boyd.

Fenix's insinuation—that Plaintiffs' counsel may not have been aware of the Court's AI disclosure requirement—is also unfounded. As Mr. Carey previously disclosed, Hagens Berman has an AI policy in place, which would mean that no disclosure should ever be necessary. ECF No. 176-1 ¶ 19. In addition, Plaintiffs' counsel certified to this Court that they had reviewed this Court's procedures. ECF No. 113 at 20. Ms. Boyd was informed of Hagen's Berman's AI policies, which should have been enough to prevent her use of AI. ECF No. 176-1 ¶ 19. Fenix offers no citation to support the notion that responsibility for this issue rests with anyone other than Ms. Boyd. Dismissal is not an appropriate sanction here.

-12-

### 2. Striking the responses, which would result in a dismissal, is not supported in this case.

Fenix argues the appropriate sanction is striking the briefs and dismissing the case. Fenix ignores that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Here, Fenix cites nothing to show that dismissal is required to deter repetition. Mr. Carey and Hagens Berman did not intentionally use AI. Their error was one of process—an error they accept responsibility for and are taking steps to correct. But any sanction should be to correct and deter what was a bad process. They do not need to be deterred from using AI because they have not used it and have a policy not to, which they follow.

Any sanction in this case should be limited to Ms. Boyd and/or Mr. Carey (or Hagens Berman) and reflect the fact that Mr. Carey (or Hagens Berman) did not act in bad faith and did not set out to intentionally deceive Fenix or this Court. This same issue recently arose in *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493 (D. Wyo. 2025), where the attorneys cited nine cases in their motions in limine, but eight did not exist. The drafting attorney admitted to using AI. *Id.* at 493–94. The signing attorneys never reviewed the motions before they were filed, but instead relied on the drafting attorney, unaware that he had used AI. *Id.* The court revoked the pro hac vice status of the drafting attorney but declined to revoke the pro hac vice status of the attorney who signed the motion. *Id.* at 498. Instead, the court imposed a fine of $1,000 on the signers for breaching their Rule 11 duties. *Id.*

Additionally, Fenix's cited cites do not support a dismissal. In the rare cases where dismissal has occurred, or a filing has been struck resulting in a dismissal, it was because the underlying briefing was of little value after the errors were removed. Fenix cites *Grant v. City of Long Beach*, 96 F.4th 1255, 1256 (9th Cir. 2024), where the Ninth Circuit struck the opening brief and dismissed the appeal. There, the district court had granted summary judgment in defendant's favor and

the plaintiffs appealed. As the court found, the plaintiffs "materially misrepresent the facts and holdings of the cases they cite in the brief, but they also cite two cases that do not appear to exist." *Id.* at 1257. The court also noted that counsel "did not acknowledge the fabrications. Nor did counsel provide any other meaningful support for Appellants' claims." *Id.* The court went on to find: "Appellants' brief includes only a handful of accurate citations, almost all of which were of little use to this Court because they were not accompanied by coherent explanations of how they supported Appellants' claims. No reply brief was filed." *Id.*

This is not the case here. Of the 103 cases cited across the four briefs, 97 of them were supportive of Plaintiffs' arguments. Even if the Court was to strike every citation with an error—including those that were cited for the correct proposition but the quotation did not match—most of the arguments would remain intact.[13]

In Response to the Fenix Defendants' Motion to Dismiss, Plaintiffs' arguments are broken into twelve sections. Five of those sections do not contain a single citation error. ECF No. 176-6 (Section II.B on consent, Section II.C on § 230, Section II.E on RICO, Section II.G on § 1790, and Section II.I on CIPA). And the remaining sections are well supported by cases that were accurately cited. For example, eighteen cases are cited to support Plaintiffs' jurisdiction arguments in Section II.A. That section contains the single AI hallucinated case (on a forum selection issue previously decided by the Court), and there are two other cases that stood for the proposition, but the parenthetical was not accurate.[14] ECF No. 176-5 at 4–14. One of those cases—*Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025)—

---

[13] Plaintiffs do not address the Response to the Motion to Strike and the RFJN, because there are no legal citation errors and Plaintiffs withdrew their objection to the RFJN.

[14] Plaintiffs, on their own, fixed one additional cite—*Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023)—because the quotations were not 100% accurate.

was cited extensively throughout the argument. ECF No. 176-5 at 4–5, 7, 9. That means Plaintiffs' arguments on jurisdiction are supported by at least sixteen authorities. As another example, in the VPPA section, Plaintiffs are asking to delete any cases that suffered from AI problems—meaning the remaining arguments are valid and the Court can decide them even without the corrective briefing. *Id.* at 27–32.

Fenix points to the Response to the Motion for Reconsideration as being particularly egregious, arguing it misrepresented "11 of the 18 cases cited." ECF No. 185 at 4, 9, 15. But that number is misleading. Plaintiffs' arguments about *EpicentRx, Inc. v. Superior Court*, 2025 WL 2027272 (Cal. July 21, 2025)—the basis of Fenix's Motion for Reconsideration—were accurate and did not contain any AI errors. ECF No. 176-10 at 1–13. Additionally, all the cases cited to support their argument that interlocutory certification is inappropriate stand for the correct proposition. *Id.* at 14–16. Plaintiffs only ask to fix two parentheticals in that section. But even without those parentheticals, the arguments are sufficient for the Court to consider. And the cases that were cited for the wrong proposition were either cited for a generic proposition that will not change the case, or Plaintiffs already had cited a second case for that same proposition.

Fenix's other cited cases do not dictate dismissal or striking of the motions. In *Mavy*, 2025 WL 2355222, at *5, the court struck the opening brief because "well over the majority of the citations provided to this Court in Plaintiff's Opening Brief were fabricated, misleading, or unsupported." That is not the case here as the briefs are well supported even if the Court removes the bad citations. Additionally, the court in *Mavy* did not dismiss the plaintiff's case. Instead, the court allowed the plaintiff to hire new counsel or proceed as a self-represented party. *Id.* at *13. Likewise here, if the Court was to strike the responses, under *Mavy*, Plaintiffs would be entitled to new representation, which would start the process over. Even if the Court was to dismiss Plaintiffs, the thousands of putative class members who

-15-

have reached out to counsel could, and likely would, file a new class action. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."). Dismissing this case will only delay and prolong a decision on the merits.

### 3. It would be unfair to sanction Plaintiffs through dismissal.

Fenix's claims that the Plaintiffs should be punished by dismissal is unsupported. The only AI case that Fenix cites where the plaintiffs were dismissed outright is *Grant*, 96 F.4th 1255. But as discussed above, that was because the opening brief was not salvageable. *Id.* at 1257. Additionally, counsel in that case did not admit to the errors, did not seek to correct them, and did not even bother filing a reply brief. *Id.* It is also worth noting that the court was dismissing an appeal after a decision on the merits. *Id.* Here, Plaintiffs have not had the chance to have a decision on the merits. More importantly, counsel at Hagens Berman have admitted to their errors in not fully checking Ms. Boyd's work and in not following their own protocols. As such, Hagens Berman is seeking to correct it in a way that is the least prejudicial to Fenix and the Court.

Fenix's other cited cases do not support its argument that Plaintiffs themselves should be punished. In *Link v. Wabash Railroad Co.*, 370 U.S. 626, 627–29 (1962), the plaintiff's case was only dismissed for failure to prosecute the action, six years after the suit had been filed, three years after plaintiff had prevailed on the defendant's motion for judgment on the pleadings, and after the plaintiff's attorney intentionally failed to appear at the pretrial conference. *United States v. Boyle*, 469 U.S. 241, 242 (1985), decided "whether a taxpayer's reliance on an attorney to prepare and file a tax return constitutes 'reasonable cause' under" the Internal Revenue Code, to avoid a late filing penalty. The court found: "It requires no special training or effort to ascertain a deadline and make sure that it is met" and the late filing "is not excused by the taxpayer's reliance on an agent." *Id.* at 252. Similarly, in *Pioneer Investment Services Co. v. Brunswick Associates*

-16-

*Limited Partnership*, 507 U.S. 380, 388 (1993), the court examined whether a creditor's failure to file a timely claim in a bankruptcy constituted "excusable neglect" under the Bankruptcy Code. The court found its attorney's delay did not constitute excusable neglect. *Id.* at 396–97. But, in doing so, the court noted that there was no prejudice to the creditor because the "debtor's second amended plan of reorganization . . . takes account of respondents' claims." *Id.* at 397. In its response, Elite Creators cites one additional case to support dismissal. ECF No. 183 at 2 (citing *Saxena v. Martinez-Hernandez*, No. 2:22-cv-02126-CDS-BNW, 2025 WL 1194003, at *2–3 & n.5 (D. Nev. April 23, 2025)). In *Saxena*, the pro se plaintiff failed to file an amended complaint that complied with Rule 8, used AI to draft a brief, failed to admit to the use of AI, filed a "joint" submission without defendants' permission, and lied about participating in a Rule 26(f) conference. *Id.* at *2–3.

None of these cases are comparable to the present case. Plaintiffs have not failed to prosecute their action for years, they did not bring frivolous claims and lie to the Court, and they did not ignore deadlines. And unlike the creditor in *Pioneer Investment Services*, the Plaintiffs (and thousands of absent putative class members) would be prejudiced by a dismissal.

## B.    Plaintiffs' proposed corrections are not prejudicial.

### 1.    Fenix cannot show that the corrected briefs are prejudicial.

Fenix's claim of prejudice—in allowing Plaintiffs to file corrective briefs—is unsupported. Fenix does not address the actual corrections made to the briefs, does not acknowledge that Plaintiffs do not seek to add new cases (with a single exception already addressed by the Court), and does not acknowledge that Plaintiffs have deleted any arguments or cases that relied on bad case law or could be prejudicial. What is left after Plaintiffs make their corrections are the original arguments supported by the original cited cases. A review of the redlines shows that Fenix has less to respond to, not more.

-17-

Instead of explaining how the specific corrections prejudice Fenix, they cite several cases to show that corrective briefs are prejudicial to the opposing party. In *Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2025 WL 2086116, at *4, *16 (N.D. Ala. July 23, 2025), the court granted leave to file corrective briefs, which replaced the fake citations with new legal authority that stood for the same proposition. Here, Plaintiffs do not seek to replace or add any legal authority, except for a single case that the Court and parties previously relied on as it relates to the forum-selection clause. Fenix also cites *United States v. Hayes*, 763 F. Supp. 3d 1054, 1064 (E.D. Cal. 2025), where the attorney "submitted a fictitious or non-existent case," "knowingly made inaccurate and misleading statements in his written reply," and "knowingly made inaccurate and misleading statements" to the court. Here, Plaintiffs immediately corrected their errors and admitted to their mistakes. Last, Fenix cites *ByoPlanet International, LLC v. Johansson*, No. 0:25-CV-60630, 2025 WL 2091025, at *1 (S.D. Fla. July 17, 2025), where the lawyer "repeatedly use[d] false, fake, non-existent, AI-generated legal authorities in the drafting of complaints, motions, and other filings . . . in eight separate but related cases." This case did not involve the intentional use of AI by Hagens Berman (or any Plaintiffs' counsel from the other three firms). This is the first time Hagens Berman has been accused of using AI, and its use here resulted from Hagens Berman's process failure, not an intention to deceive the Court or Fenix.

**2.    Undersigned counsel had an obligation to correct the briefing and be forthcoming with the Court.**

One of the overriding lessons to be gleaned from the cases dealing with the use of AI, is that there is a duty for counsel to move to correct the errors and be forthcoming with the court. That is precisely what Plaintiffs' counsel have done here. In *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 449 (S.D.N.Y. 2023), the attorneys were sanctioned in part because they did not "come[] clean about their actions" or correct their errors. The attorneys never sought to withdraw the brief "or

-18-

advise the Court that it may no longer rely upon it." *Id.* at 459. Similarly in *Lacey v. State Farm General Insurance Co.*, No. CV 24-5205 FMO (MAAX), 2025 WL 1363069, at *2 (C.D. Cal. May 5, 2025), also cited by Fenix, the law firm was on notice of the problematic AI cases, but then submitted a corrected brief without admitting to using AI or deleting the "AI-generated problems in the body of the text," "and re-submitted the brief with considerably more made-up citations and quotations." In sanctioning those attorneys, the court found the most egregious error was "the re-submission of the defective Revised Brief without adequate disclosure of the use of AI." *Id.* at 4.

Hagens Berman immediately sought to correct its mistake, identify and admit to what caused the errors, and sought to file corrective briefs to ensure that the Court did not have to wade through bad citations or arguments. Plaintiffs provided redlines to the Court to make it easier for the Court to assess the arguments. Hagens Berman also intentionally corrected the briefs in a way that would be the least prejudicial to Fenix.

### 3. The proposed corrective briefs also reduce any prejudice to the Court.

Plaintiffs also moved to correct the briefs as soon as possible to reduce any prejudice to the Court. Plaintiffs did not want the Court to have to sort through the citations to figure out what was accurate before the oral argument. With that in mind, Plaintiffs immediately requested a meet and confer with Fenix, and then filed their briefs eight days later,[15] after waiting seven days as required by the Local Rules. In correcting those briefs, Plaintiffs submitted redlines of all the proposed corrective briefs (performing a full cite check on every case) so the Court could

---

[15] To ensure that everything had been checked correctly, Plaintiffs needed eight days instead of seven days to correct all the briefs. Even though the issue is moot, Fenix complains that Plaintiffs waited seven hours between filing the Motion for Leave and the Motion for Continuance. Plaintiffs assume that Fenix is unaware that the Court's CM/ECF system was experiencing an outage most of that day.

-19-

easily identify and see what cases or arguments were problematic. They also withdrew any arguments that were tainted by bad case law.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs leave to withdraw ECF Nos. 138, 141, 142, and 158, and file corrective briefs.

DATED: September 11, 2025          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,999 words which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: September 11, 2025

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey

-21-