Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email:  christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:  rob@hbsslaw.com
         leonarda@hbsslaw.com
         michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br>               Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Judge:      Hon. Fred W. Slaughter<br>Courtroom:  10D<br>Date:       September 25, 2025<br>Time:       10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ............................................................................................ 2

    A.    As Mr. Carey did not act in bad faith, sanctions against
        Mr. Carey should be limited to what is required to deter
        lack of adequate processes. .................................................................. 2

        1.    Rule 11 sanctions against Mr. Carey should be limited
            to the least severe punishment to deter the conduct. .................. 2

        2.    The Court should decline to award sanctions against
            Mr. Carey under its inherent authority because Mr.
            Carey did not act in bad faith....................................................... 7

    B.    Tycko, Dorsey, and Timoney should not be subject to any
        sanctions. ............................................................................................. 8

        1.    Tycko, Dorsey, and Timoney have not violated Rule
            11. ................................................................................................. 9

        2.    The Court should not use its inherent authority to
            sanction Tycko, Dorsey, or Timoney. ...................................... 10

    C.    The Court should decline to award sanctions against
        Hagens Berman. ................................................................................ 12

III.  CONCLUSION ....................................................................................... 15

011194-11/2686242 V1                                                    Case No: 8:24-cv-01655-FWS-SSC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benjamin v. Costco Wholesale Corp.*,
   779 F. Supp. 3d 341 (E.D.N.Y. 2025)............................................................... 3, 4

*Boyle v. U.S.*,
   556 U.S. 938 (2009) ........................................................................................ 6

*Caputo v. Tungsten Heavy Powder, Inc.*,
   96 F.4th 1111 (9th Cir. 2024)........................................................................ 5, 7

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ................................................................ 7, 10, 14

*Franco v. Cent. Transp. LLC*,
   No. EDCV191464JGBSPX,
   2022 WL 16921826 (C.D. Cal. Oct. 27, 2022) .................................................. 11

*G & G Closed Cir. Events, LLC v. Velasquez*,
   No. 1:20-CV-1736 JLT SAB, 2022 WL 348165 ................................................. 11

*Giebelhaus v. Spindrift Yachts*,
   938 F.2d 962 (9th Cir. 1991) ........................................................................... 9

*In Gauthier v. Goodyear Tire & Rubber Co.*,
   No. 1:23-CV-281,
   2024 WL 4882651 (E.D. Tex. Nov. 25, 2024)..................................................... 3

*Johnson v. Dunn*,
   No. 2:21-CV-1701-AMM,
   2025 WL 2086116 (N.D. Ala. July 23, 2025)....................................... 6, 8, 12, 13

*Kim v. CashCall, Inc.*,
   No. SA CV 17-00076-DOC,
   2021 WL 4077575 (C.D. Cal. June 11, 2021)..................................................... 11

*Lacey v. State Farm Gen. Ins. Co.*,
   No. CV 24-5205 FMO (MAAx),
   2025 WL 1363069 (C.D. Cal. May 5, 2025)................................................... 5, 12

*Lake v. Gates*,
   130 F.4th 1054 (9th Cir. 2025).................................................................. 9, 10, 14

PLS.' RESPONSE TO ORDER TO SHOW CAUSE

   

*Mata v. Avianca, Inc.*,
    678 F. Supp. 3d 443 (S.D.N.Y. 2023) .......................................... 5, 6, 8

*Mavy v. Comm'r of Soc. Sec. Admin.*,
    No. CV-25-00689-PHX-KML (ASB),
    2025 WL 2355222 (D. Ariz. Aug. 14, 2025) ...................................... 6

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ............................................... 11

*Phonometrics, Inc. v. Econ. Inns of Am.*,
    349 F.3d 1356 (Fed. Cir. 2003) ........................................... 10, 14

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW,
    2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................................... 11

*Tercero v. Sacramento Logistics, LLC*,
    No. 2:24-CV-00953-DC-JDP,
    2025 WL 2605020 (E.D. Cal. Sept. 9, 2025) ............................... 3, 5, 12

*Unioil, Inc. v. E.F. Hutton & Co.*,
    809 F.2d 548 (9th Cir. 1986) ................................................. 7

*United States v. Cohen*,
    724 F. Supp. 3d 251 (S.D.N.Y. 2024) ...................................... 2, 5, 8

*United States v. Hayes*,
    763 F. Supp. 3d 1054 (E.D. Cal. 2025) ................................. 5, 12, 14

*Versant Funding LLC v. Teras Breakbulk Ocean Nav. Enters., LLC*,
    No. 17-CV-81140,
    2025 WL 1440351 (S.D. Fla. May 20, 2025) .................................. 2, 5

*Wadsworth v. Walmart Inc.*,
    348 F.R.D. 489 (D. Wyo. 2025) ......................................... 2, 4, 13

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................*passim*

Fed. R. Civ. P. 11(c)(4) .......................................................... 2

-iii-

# I.    INTRODUCTION

Pursuant to this Court's September 4, 2025, Order to Show Cause Regarding AI-Generated Content in Opposition Briefs, ECF No. 187 ("Order to Show Cause"), Plaintiffs hereby respectfully submit a written response to address what sanctions may be appropriate in this case. In addition to submitting this response, Plaintiffs' counsel from Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), Tycko & Zavareei LLP ("Tycko"), Timoney Knox LLP ("Timoney"), and Dorsey & Whitney LLP ("Dorsey"), along with Celeste Boyd, all plan on attending the September 25, 2025, hearing on the Order to Show Cause so they may be available to answer any questions the Court may have.

Plaintiffs' counsel understands serious errors occurred in this case—both in Celeste Boyd's use of AI without verifying its accuracy and by Robert Carey and Hagens Berman in failing to fully cite check the briefs before filing them—and that some sanctions are appropriate. Such sanctions should only be issued against the attorneys who have violated their Rule 11 duties, and because Plaintiffs' counsel did not act in bad faith, the Court should decline to award any sanctions under its own inherent authority. Sanctions are unwarranted for the three firms that were not involved in drafting the AI portions of the briefing, were unaware of the use of AI, and were not involved with or assigned to finalize the briefs, specifically Tycko, Timoney, and Dorsey.[1]

Because Plaintiffs have already fully set forth the facts that led to the briefing errors, Plaintiffs will not repeat those again here.

---

[1] The Plaintiffs themselves also should not be sanctioned, as set forth in Plaintiffs' Reply in Support of Motion for Leave to Withdraw ECF Nos. 138, 141, 142, and 158, and File Corrective Briefs. ECF No. 190.

## II.    ARGUMENT

**A.    As Mr. Carey did not act in bad faith, sanctions against Mr. Carey should be limited to what is required to deter lack of adequate processes.**

### 1.    Rule 11 sanctions against Mr. Carey should be limited to the least severe punishment to deter the conduct.

As the signer and filer of the briefs, Mr. Carey acknowledges the Court may assess Rule 11 sanctions against him. Any sanction under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Mr. Carey's failure was one of procedure—he did not use AI or intentionally make misrepresentations to the Court. His failure was not running a cite check of every case or ensuring it was done before filing the briefs. Here, a monetary sanction is sufficient to deter repetition of the conduct. Courts dealing with similar situations have limited their sanctions to monetary sanctions. In *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 498 (D. Wyo. 2025), the attorney who signed, but did not draft the motion or use AI, was assessed a fine of $1,000 and the court declined to revoke his pro hac vice status. The court held that "the imposition of a fine is the least severe punishment to deter future misconduct." *Id.* In *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, No. 17-CV-81140, 2025 WL 1440351, at *5, *7 (S.D. Fla. May 20, 2025), the court issued a fine of $500 against the signing attorney, who failed to perform a check of the drafting attorneys' work. *See also United States v. Cohen*, 724 F. Supp. 3d 251, 258 (S.D.N.Y. 2024) (declining to award sanctions where the signing attorney believed cases that turned out to be AI had come from another attorney, but the client had found them through AI, and the attorney failed to check them). Similarly here, Mr. Carey did not use AI and was not aware that AI had been used,[2] but failed to ensure a complete cite check of the

---

[2] Plaintiffs previously addressed whether Mr. Carey was on notice regarding the use of AI (ECF No. 190 at 2–4), so they will not repeat those explanations here, other than to note that the errors he found were to the record cites and he did not

-2-

cases had been performed, trusting, in part, that Ms. Boyd had checked her work. Under this line of cases, a monetary sanction alone would be an appropriate sanction.[3]

Sanctions comprising fines and CLE (ordered or voluntary, as is happening here), have been issued in cases with more egregious conduct. *See In Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (attorney who used AI and did not read or confirm the existence of the cases, and who failed to correct his mistake with the court until after it issued an order to show cause, ordered to pay a $2,000 fine and attend one hour of CLE on generative AI); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 351 (E.D.N.Y. 2025) (issuing a fine of $1,000 against attorney who used AI to draft a brief, but who admitted her errors, participated in CLEs to correct conduct, and expressed regret). Here, Hagens Berman has already agreed to provide in-house training to address the responsible use of AI. ECF No. 176-1 ¶ 21. Mr. Carey, along with Leonard Aragon and Michella Kras, will be giving a presentation to the firm on October 6, 2025, entitled "The Mistakes We've Made and How to Avoid Them," addressing how to prevent the misuse of AI and how to catch it, particularly because Hagens Berman's shortcoming was not understanding how it looks or how other people may have used it. Declaration of Robert B. Carey ("Carey Decl.") ¶ 8. Mr. Carey and Hagens Berman have routinely consulted with an ethics attorney—the former chair of the American Bar Association Standing Committee on Ethics and Professional Responsibility, and who has served on committees for the State Bar of Arizona—to ensure the highest level of compliance

---

appreciate that AI could cause the types of errors in the legal citations that occurred here. ECF No. 176-1 ¶ 23.

[3] "Because the court *sua sponte* imposes sanctions, and not on any parties' motion, the monetary sanction must be paid to the court." *Tercero v. Sacramento Logistics, LLC*, No. 2:24-CV-00953-DC-JDP, 2025 WL 2605020, at *13 n.4 (E.D. Cal. Sept. 9, 2025) (citing Fed. R. Civ. P. 11(c)(4)).

with ethical rules. *Id.* ¶ 9. Mr. Carey will invite her to the Hagens Berman Phoenix office to give a presentation on ethical issues relating to AI, which he will make available by Zoom for the other Hagens Berman's offices.[4] *Id.* Even with those CLE efforts, Mr. Carey understands that the Court might determine that additional or specialized CLEs should be required.

Another important consideration is that Mr. Carey immediately admitted to the Court his part in the errors, moved to correct the errors, apologized and expressed regret to the Court and opposing counsel, and he is takings steps to ensure that these errors do not happen again. ECF No. 176; ECF No. 176-1 ¶¶ 17–22. As described more fully below, Mr. Carey has engaged separate ethics counsel, who drafted additional AI policies that will ensure that every filing is properly cite checked and will ensure that work from co-counsel complies with Hagens Berman's AI policy and is similarly cite checked. Carey Decl. ¶¶ 4, 6. Hagens Berman's Management Committee is reviewing and deciding whether to adopt these additional policies. *Id.* ¶ 5. And Mr. Carey is reviewing his office procedures regarding the timing of internal deadlines, to ensure that his team is getting work product early enough to perform the appropriate reviews before the filing deadline. *Id.* ¶ 7. Courts generally impose less severe sanctions against attorneys who take responsibility for their mistakes. In *Wadsworth*, the attorney who used AI was sanctioned $3,000, but the court found the attorney's "honesty and candor" was a "mitigating fact warranting a less severe punishment." *Wadsworth*, 348 F.R.D. at 498. *Benjamin*, another case involving the use of AI, specifically imposed a lower sanction than in similar cases because of the attorney's "candor and sincere regret." *Benjamin*, 779 F. Supp. 3d at 351. In another AI case, the court found: that the attorneys did "not attempt to minimize their behavior, . . . cover up their error or obfuscate the issue, . . . [and] accepted responsibility and apologized. Had they not

---

[4] She has also been appointed by the Arizona Supreme Court to the Arizona Steering Committee on Artificial Intelligence and the Courts. Carey Decl. ¶ 9.

PLS.' RESPONSE TO ORDER TO SHOW CAUSE

done so, and had they attempted to cover up their conduct, the Court would be imposing much more serious sanctions in this case." *Versant Funding LLC*, 2025 WL 1440351, at *6. There the court imposed a $500 fine against the signing attorney and imposed a $1,000 fine against the drafting attorney but declined to revoke his pro hac vice status. *Id.* at *7. In another AI case, the court declined to award sanctions and credited the attorney's representations that the mistake was unintentional, he would have withdrawn it immediately had he known, and he apologized and accepted responsibility. *Cohen*, 724 F. Supp. 3d at 258–59. And the Ninth Circuit recently declined to refer an attorney for sanctions, noting her cooperation, "honesty and contrition throughout these proceedings." *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1163 (9th Cir. 2024).

In contrast, when attorneys are not forthcoming with the court, they are generally subject to more serious sanctions. *See Tercero v. Sacramento Logistics, LLC*, No. 2:24-CV-00953-DC-JDP, 2025 WL 2605020, at *13 (E.D. Cal. Sept. 9, 2025) (attorney who failed to be forthcoming with the court about her obvious use of AI was assessed a $1,500 sanction, required to serve a copy of the order on her client, and was reported to the state bar); *United States v. Hayes*, 763 F. Supp. 3d 1054, 1073 (E.D. Cal. 2025) (attorney who failed to acknowledge and correct his errors related to the use of AI was sanctioned $1,500, reported to the state bar, and a copy of the order was served on all district judges and magistrate judges in the district); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 464–66 (S.D.N.Y. 2023) (sanctioning attorney who knew cases "did not exist and consciously avoided confirming that fact," issuing joint $5,000 penalty and other sanctions); *Lacey v. State Farm Gen. Ins. Co.*, No. CV 24-5205 FMO (MAAx), 2025 WL 1363069, at *4 (C.D. Cal. May 5, 2025) (imposing significant monetary sanctions after attorneys failed to be forthcoming and correct their error).

Last, Mr. Carey had a good faith basis to sign and file the briefs. He was familiar with the arguments and many of the cases, the cases he checked stood for

PLS.' RESPONSE TO ORDER TO SHOW CAUSE

the general proposition they were cited for (even though he did not verify the quotations), he was involved in drafting the Complaint, First Amended Complaint, and the briefs, and most of the cases (97 of 103 cases) supported the arguments that Plaintiffs were making in the briefs. ECF No. 176-1 ¶¶ 11, 23; ECF No. 190 at 8; ECF No. 190-1 ¶ 6. Where courts have issued more severe sanctions against the signer, it is because they failed to perform any reasonable inquiry. *See Johnson v. Dunn*, No. 2:21-CV-1701-AMM, 2025 WL 2086116, at *17 (N.D. Ala. July 23, 2025) (sanctioning signer who did not even review the motions); *Mata*, 678 F. Supp. 3d at 464 (sanctioning signer who did not read "a single case" cited in the brief and who took "no other steps on his own to check whether any aspect of the assertions of law were warranted by existing law"). Mr. Carey had a good faith basis to file the briefs, given his involvement in the drafting of the complaints and the briefs, and his familiarity with many of the cases. He acknowledges that this failure to fully check the cases (or ensure that it had been done) did waste the Court's time,[5] and for that reason, he understands that some sanctions are appropriate.

---

[5] Given the constraints and the pressures of the legal practice, attorneys do rely on other attorneys within their own firms, staff, and co-counsel. Unfortunately, that means that most attorneys will, at some point, make a mistake in not completely checking another's work or realizing AI has been used, particularly with the widespread availability of AI. Even in this matter, a fabricated quotation appears in two of the Defendants' briefs, which Plaintiffs' counsel discovered while preparing for the hearing on the motions to dismiss. In Defendant Moxy Management's Motion to Dismiss, Moxy attributed the following quote to *Boyle v. U.S.*, 556 U.S. 938 at 947 n.4 (2009): "insufficient to adequately plead a RICO enterprise." ECF No. 124 at 16–17. Defendants Unruly Agency LLC and Behave Agency LLC adopt that same quote in their Reply in Support of Motion to Dismiss. ECF No. 173 at 2. But that quotation does not appear in *Boyle.* (Based on his ethicist's review of *Mavy v. Comm'r of Soc. Sec. Admin.*, No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222 (D. Ariz. Aug. 14, 2025), Mr. Carey alerted both counsel of this issue.) Plaintiffs do not point this out to suggest that there was an intentional use of AI by Defendants, only that it is increasingly difficult to monitor these types of issues.

### 2. The Court should decline to award sanctions against Mr. Carey under its inherent authority because Mr. Carey did not act in bad faith.

Sanctions imposed under the court's inherent authority require a finding of "bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* There is nothing here to suggest that Mr. Carey acted in bad faith. While he did not fully review the case citations before filing, he was familiar with the arguments and case law, as he had been deeply involved in the investigation and development of the legal theories and briefs. ECF No. 190-1 ¶ 6. Even if Mr. Carey's failure to check all the cites was reckless—it was not—there can be no showing that his decision was frivolous, done to harass any party, or done for an improper purpose. Mr. Carey had worked with Ms. Boyd for well over a decade and had never had an issue where she did not meticulously research and check her work. ECF No. 176–1 ¶¶ 5–7. Given that history, it was neither reckless nor frivolous to rely on Ms. Boyd. *See Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986) (finding reliance on co-counsel reasonable if he has sufficient facts to certify the brief is grounded in fact). In *Caputo*, the Ninth Circuit found that an attorney did not act in bad faith for trusting other counsel about the scope of the evidence. *Caputo*, 96 F.4th at 1120. The court found the errors were largely "of omission, not commission," finding that she "ought to have exercised considerably greater care both in investigating . . . and in making representations in the appellate and motion for sanctions briefs, her conduct does not rise to the level of 'bad faith' necessary to impose sanctions." *Id.* Likewise, Mr. Carey relied on a trusted attorney, and his mistakes were of omission, not intentional. And Mr. Carey immediately sought to correct the mistake and expressed remorse, demonstrating it was not done for harassment or an improper purpose. *See id.* at 1164 (noting the attorneys' cooperation, honesty, and

PLS.' RESPONSE TO ORDER TO SHOW CAUSE

contrition). In hindsight he would do things differently, but that alone does not demonstrate bad faith.

Bad faith is generally only found when the signing attorney does not bother to review the briefs or any of the authority supporting the briefs before they are filed. In *Johnson*, the court found that the signing attorney acted in bad faith because he "made no effort whatsoever to verify the contents of the motions for himself (or even to ask someone else to check for him)." *Johnson*, 2025 WL 2086116, at *17. In addition, the attorney tried to get out of the hearing on the order to show cause, claimed he did nothing wrong, and excused his lack of oversight by making clear "that performing (or verifying) legal research for each case is not something that he requires of the team he leads." *Id.* at *17–18. Similarly in *Mata*, the attorney failed to review any of the cited cases. *Mata*, 678 F. Supp. 3d at 464. The court found: "While an inadequate inquiry may not suggest bad faith, the absence of any inquiry supports a finding of bad faith." *Id.* Here, Mr. Carey reviewed the briefs thoroughly, worked with co-counsel throughout the drafting process, and was familiar with or reviewed many of the cases. ECF No. 176-1 ¶¶ 11, 23; ECF No. 190-1 ¶ 6.

Finally, Mr. Carey's honesty with this Court and his request to correct the briefs demonstrate that he was not acting in bad faith. *See Cohen*, 724 F. Supp. 3d at 259 (finding there was no bad faith where attorney apologized and noted that he would have withdrawn the citations had he been given the opportunity).

## B.    Tycko, Dorsey, and Timoney should not be subject to any sanctions.

There is no basis or reason to sanction Tycko, Dorsey, and Timoney. Here, it is undisputed that those firms did not use AI, were not aware of the use of AI, were not responsible for finalizing the briefs, and did not review the briefs after they were finalized for filing. ECF No. 176-1 ¶¶ 9, 13. They were unaware of Ms. Boyd's personal issues, and as Hagens Berman was responsible for finalizing the briefs, Hagens Berman did not share the timing issues, record cite errors, or the

-8-

011194-11/2686242 V1                                                                    Case No: 8:24-cv-01655-FWS-SSC

decision to forego a full cite check with Tycko, Dorsey, and Timoney. Carey Decl. ¶¶ 11–12. As previously explained, Tycko and Dorsey were assigned and drafted different portions of the Responses to the Motions to Dismiss and the Motion to Strike (ECF Nos. 138, 141, 142), but did not use AI to draft them, were not involved in finalizing them after they were sent to Ms. Boyd, and they never saw the briefs after AI-generated content had been added. ECF No. 176-1 ¶ 9. Timoney was not assigned to draft or finalize those briefs. *Id.* Tycko drafted portions of the Response to Fenix's Motion for Reconsideration (ECF No. 158), but did not use AI in its drafting, was not involved in finalizing the brief, and did not review the finalized brief after AI content had been added. ECF No. 176-1 ¶ 13. Dorsey and Timoney were not involved in drafting or finalizing the Response to Fenix's Motion for Reconsideration. *Id.*

Hagens Berman, as lead counsel, was responsible for making all the assignments and finalizing the briefs. ECF No. 190-1 ¶ 4. Ms. Boyd has admitted that she alone used AI and did not inform anyone else she was using it. ECF No. 176-2 ¶¶ 18–19. And Mr. Carey has admitted that Hagens Berman was responsible for finalizing the briefs. ECF No. 176-1 ¶¶ 10–11, 13–14; ECF No. 190-1 ¶ 4. With this background, there is no basis to sanction any of the attorneys at Tycko, Dorsey, or Timoney under Rule 11 or the Court's inherent authority.

### 1.    Tycko, Dorsey, and Timoney have not violated Rule 11.

None of the attorneys at Tycko, Dorsey, or Timoney have violated Rule 11. Rule 11 applies to an "attorney who presents a 'pleading, written motion, or other paper' to the court, 'whether by *signing*, filing, submitting, or later advocating it,' certifies compliance with the enumerated requirements." *Lake v. Gates*, 130 F.4th 1054, 1060 (9th Cir. 2025) (quoting Fed. R. Civ. P. 11(b) (emphasis added by the court)). First, no attorney at Tycko, Dorsey, or Timoney signed, filed, or submitted the briefs—that their names appeared on the briefing does not constitute a signature and Hagens Berman filed the briefs. *See Giebelhaus v. Spindrift Yachts*, 938 F.2d

962, 966 (9th Cir. 1991) ("a typewritten name is not a signature for the purpose of Rule 11"); *see also Lake*, 130 F.4th at 1061 ("attorneys may be held liable for sanctions under Rule 11 if they *sign* a pleading without a reasonable basis to believe the pleadings are not frivolous and are based on facts" (emphasis added)). Second, no attorney in this case, including those at Tycko, Dorsey, or Timoney, later advocated for the portions of the briefing affected by AI. *See* Fed. R. Civ. P. 11 1993 advisory committee's notes ("a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit"); *Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1361–62 (Fed. Cir. 2003) ("oral statements that 'later advocat[e]' untenable contentions made in previously-filed papers are sanctionable under Rule 11" (quoting Fed. R. Civ. P. 11(b)). No Plaintiffs' attorneys from Tycko, Dorsey, or Timoney advocated for any meritless position, nor did they attempt to rely on any AI-generated error after learning of the errors. There is no basis to sanction Tycko, Dorsey, or Timoney under Rule 11.

### 2. The Court should not use its inherent authority to sanction Tycko, Dorsey, or Timoney.

The Court should not impose sanctions against Tycko, Dorsey, or Timoney under its inherent authority because none of those attorneys or firms acted in "bad faith or [engaged in] conduct tantamount to bad faith." *Fink*, 239 F.3d at 994. Instead, the record demonstrates that the attorneys at those firms acted with amply reasonable diligence. Each firm completed the work assigned to it without using AI. Hagens Berman had assumed responsibility for revising and finalizing the at-issue briefs, and Tycko, Dorsey, and Timoney were not told of any potential issues, including that Hagens Berman may not be able to complete its normal checks due to time constraints, that Hagens Berman had discovered record cite errors in checking one of the briefs, or of Ms. Boyd's personal circumstances. Carey Decl.

-10-

¶¶ 11–12. Furthermore, after Tycko and Dorsey submitted their portions, they did not see the finalized briefs before they were filed with the Court.

In sum, there is nothing to suggest that any attorney at those firms committed any misconduct, acted in bad faith, or acted recklessly. The attorneys at Tycko, Dorsey, and Timoney were not responsible for the inclusion of AI in the briefing or any errors in the revision and finalization process. Instead, they understood that Hagens Berman was responsible for checking citations prior to filing, and reasonably relied on them to do so. Relying on Hagens Berman, as lead counsel, to make case assignments, manage workflow, and finalize all briefing (including final cite-checking) is not reckless. Allocating the work in a class action to avoid duplicative work is a necessity "to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort." *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *8 (N.D. Cal. Apr. 16, 2007); *see also Kim v. CashCall, Inc.*, No. SA CV 17-00076-DOC, 2021 WL 4077575, at *4 (C.D. Cal. June 11, 2021) ("[T]here are no excessive, duplicative, and unnecessary attorneys' hours included in the fees. Petitioner's lead counsel has apportioned and allocated time spent on the case, and it is typical for class action litigation to have co-counsel."). This is particularly true because courts disfavor unnecessary, duplicative work when determining fee awards. "The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This District recently discounted a fee request for duplicative work, finding the "Court 'lacks compelling evidence about the need' for" the duplicative work. *Franco v. Cent. Transp. LLC*, No. EDCV191464JGBSPX, 2022 WL 16921826, at *5 (C.D. Cal. Oct. 27, 2022) (quoting *Curtin v. Cnty. of Orange*, 2018 WL 10320668, at *14 (C.D. Cal. Jan. 31, 2018)); *see also G & G Closed Cir. Events, LLC v. Velasquez*, No. 1:20-CV-1736 JLT SAB, 2022 WL 348165, at *4 (E.D. Cal. Feb. 4, 2022 ("courts decline to award fees for duplicative tasks"). Mr. Carey, as

-11-

the lead counsel in this case, determined how to allocate the work. As a result, the Court should decline to issue sanctions against Tycko, Dorsey, or Timoney, who were not instructed by Hagens Berman to review or finalize these briefs.

Indeed, absent some affirmative misconduct on the part of co-counsel, courts have declined to issue sanctions against firms who merely appear on the briefs or are named as co-counsel. In *Johnson*, the court declined to issue sanctions under its inherent authority against two attorneys who were named as counsel, but did not draft, revise, or review the motions that contained AI-generated cases. *Johnson*, 2025 WL 2086116, at *14; *see also Tercero*, 2025 WL 2605020, at *13 (noting that the signing/drafting attorney was "not Plaintiff's only counsel of record," but not discussing or awarding any sanctions against such co-counsel); *Hayes*, 763 F. Supp. 3d at 1062 n.3 (only sanctioning the drafter of the motion where "there has been no indication or suggestion that any other individual from the Federal Defender's Office was involved in or responsible for the conduct"). Here, no attorney at Tycko, Dorsey, or Timoney was responsible for reviewing or checking the full briefs before they were filed, any drafting done by Tycko and Dorsey was done without the use of AI, and Timoney was not assigned to draft any portions of the briefs. It is only where co-counsel contributes to the error that sanctions have been imposed. *See*, *e.g.*, *Lacey*, 2025 WL 1363069, at *4 (sanctioning both law firms because both were involved in drafting the briefs and both "firms had adequate opportunities – before and after their error had been brought to their attention – to stop this from happening"). As Tycko, Dorsey, and Timoney did not contribute to the errors that occurred here, any sanctions under the Court's inherent authority would be inappropriate.

## C.    The Court should decline to award sanctions against Hagens Berman.

The Court should also decline to sanction Hagens Berman or the other attorneys from Hagens Berman who have appeared in this case.

-12-

Hagens Berman already has an AI policy that prohibits its attorneys from using generative AI for legal research or writing. And the firm is taking steps to ensure this does not happen again. Mr. Carey asked ethics counsel to review Hagens Berman's AI policy, given these issues, and to draft a revised AI policy, which he did. Carey Decl. ¶ 4. At the request of Mr. Carey, the Management Committee is reviewing the proposed changes to its AI policies, addressing the very issues that occurred here. *Id.* ¶ 5. One of the proposed changes is that co-counsel will need to agree to comply with the AI policy. *Id.* ¶ 6. The revised policy also ensures that either the drafting attorney or co-counsel provide a Quick Check (via Westlaw) or a BriefCheck (via Lexis) along with the final draft brief, to be saved in the file. *Id.* The signing attorney will also be required to ensure that the check was done and verify its results. *Id.* As described above, Hagens Berman already has one in-house presentation planned on how to prevent the misuse of AI and how to catch it. *Id.* ¶ 8. And Mr. Carey is planning a second CLE on ethics issues related to AI. *Id.* ¶ 9. Courts have declined to sanction firms that have faced this very situation. In *Johnson*, the court declined to issue sanctions where it found the firm "acted reasonably in its efforts to prevent this misconduct and doubled down on its precautionary and responsive measures when its nightmare scenario unfolded." *Johnson*, 2025 WL 2086116, at *16. And in *Wadsworth*, the court found that the firm "trained its employees to not use the AI software in the way [the respondent] used it" and that the firm "has since implemented an additional acknowledgement prior to using its AI software that '[u]sers must independently verify' any AI-generated information before using or relying on it." *Wadsworth*, 348 F.R.D. at 499. The court noted that any sanctions it might have imposed would be similar to those measures, thus no sanctions were necessary. *Id.* Here, Hagens Berman already has an AI policy in place, and it is reviewing that policy to ensure that no AI is used or makes it through the review process in the future.

The Hagens Berman attorneys who have appeared in this case, Leonard Aragon and Michella Kras (and local counsel Christopher Pitoun), are subject to (and follow) the firm's AI policy. ECF No. 176-1 ¶ 19. And Ms. Boyd has admitted that the AI-generated content that ended up in the briefing came from her use of ChatGPT. ECF No. 176-2 ¶¶ 18–19. Like the attorneys at Tycko, Dorsey, and Timoney, Mr. Aragon, Ms. Kras, and Mr. Pitoun did not sign, file, or submit the briefs, subjecting them to Rule 11 sanctions. *See Lake*, 130 F.4th at 1060 (reiterating Rule 11 applies when an attorney files, signs, or submits a brief). Nor did they rely on the AI-generated conduct in any argument before the Court, as would be required for Rule 11 sanctions. *See Phonometrics, Inc.*, 349 F.3d at 1361–62 ("oral statements that 'later advocat[e]' untenable contentions made in previously-filed papers are sanctionable under Rule 11"). Mr. Aragon's arguments to the Court at the September 4, 2025 hearing were based on existing authority, not any of the AI-generated content. And Ms. Kras has not made any statements to the Court affirming the AI-generated content. Rather, both Mr. Aragon and Ms. Kras have assisted Mr. Carey in his efforts to correct the errors with the Court. And Mr. Pitoun, who agreed to act as local counsel on behalf of his partners, had no involvement in the drafting or review of these briefs. Carey Decl. ¶ 14.

To impose sanctions under its inherent authority, the Court would have to find that Mr. Aragon and Ms. Kras acted in bad faith. *Fink*, 239 F.3d at 994. There is no evidence of bad faith here. Simply put, Mr. Aragon and Ms. Kras were not tasked with drafting or compiling the briefing, they did not use AI, and they were not aware that it was being used. Carey Decl. ¶ 13; ECF No. 176-2 ¶ 19. *See Hayes*, 763 F. Supp. 3d 1054, 1062 n.3 (only sanctioning the drafter of the motion where "there has been no indication or suggestion that any other individual from the Federal Defender's Office was involved in or responsible for the conduct"). And Mr. Pitoun did not act in bad faith by trusting his partners at Hagens Berman. Given

there is no indication that Mr. Aragon, Ms. Kras, or Mr. Pitoun acted in bad faith, the Court should decline to issue any sanctions against them.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court take into consideration their above statements in issuing any sanctions.


DATED: September 18, 2025        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        leonarda@hbsslaw.com
        michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
David A. McGee (*pro hac vice*)
Shana H. Khader (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950

-15-

Email: agold@tzlegal.com
dmcgee@tzlegal.com
skhader@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (pro hac vice)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215)540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

*Counsel for Plaintiffs*

-16-

PLS.' RESPONSE TO ORDER TO SHOW CAUSE

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,218 words which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: September 18, 2025

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey

-17-

011194-11/2686242 V1

Case No: 8:24-cv-01655-FWS-SSC