UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

<u>Damian Velazquez for Rolls Royce Paschal</u>                    <u>        N/A        </u>
             Deputy Clerk                                              Court Reporter

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

          Not Present                                              Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTIONS
          TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [121,
          124-129] AND GRANTING IN PART AND DENYING IN PART
          DEFENDANTS' MOTION TO STRIKE [123]**

          In this case, Plaintiff N.Z., Plaintiff R.M., Plaintiff B.L., Plaintiff S.M., and Plaintiff A.L.
(collectively, "Plaintiffs") allege claims against Defendant Fenix International Limited ("Fenix
International"), Defendant Fenix Internet LLC ("Fenix Internet"), Defendant Boss Baddies,
LLC, Defendant Moxy Management ("Moxy"), Defendant Unruly Agency LLC, Defendant
Dysrpt Agency, Defendant Behave Agency LLC, Defendant A.S.H. Agency, Defendant
Context X, Inc., Defendant Verge Agency, Inc., and Defendant Elite Creators LLC related to
alleged Chatter Scams. (*See generally* Dkt. 118 ("First Amended Complaint" or "FAC").)
Before the court are several motions: (1) Fenix International and Fenix Internet's ("Fenix
Defendants") Motion to Dismiss, (Dkt. 121); (2) Moxy's Motion to Dismiss, (Dkt. 124);
(3) Elite Creators LLC's Motion to Dismiss, (Dkt. 125); (4) Unruly Agency LLC and Behave
Agency LLC's Motion to Dismiss, (Dkt. 126); (5) Content X, Inc.'s Motion to Dismiss, (Dkt.
127); (6) Verge Agency, Inc.'s Motion to Dismiss, (Dkt. 128); (7) Content X, Inc.'s Motion to
Dismiss for Forum Non Coveniens, (Dkt. 129); and (8) Fenix Defendants, Content X, Inc., Elite
Creators LLC, Moxy, Verge Agency Inc., Unruly Agency LLC, and Behave Agency LLC's
Motion to Strike Claims of Non-California Plaintiffs, (Dkt. 123). These matters are fully
briefed. (Dkts. 122, 138, 140-43, 145, 163-66, 169-71, 173-74, 177.) The court held a hearing
on these matters on September 4, 2025. (Dkt. 186.) Based on the state of the record, as applied
to the applicable law, the Motions to Dismiss are **GRANTED** and the Motion to Strike is
**GRANTED IN PART AND DENIED IN PART**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

## I.    Background

### A.    Summary of the First Amended Complaint's Allegations[1]

OnlyFans is a social media platform known for hosting sexually oriented content with hundreds of millions of users ("Fans").  (FAC ¶ 3.)  Fans pay for the privilege of communicating personally and directly with specific people who post content on the platform ("Creators").  (*Id.*)  Fenix International is a private limited company that owns and operates the OnlyFans website and social media worldwide through various subsidiaries.  (*Id.* ¶ 39.)  Fenix Internet is a Delaware limited liability company and wholly owned subsidiary of Fenix International.  (*Id.* ¶ 42.)  Upon information and belief, Fenix Internet directly or indirectly collects and receives all OnlyFans-related payments from United States users at the direction of Fenix International.  (*Id.*)

Plaintiffs are residents of California, Tennessee, Georgia, and Wisconsin and users of the website OnlyFans.  (*Id.* ¶¶ 28-38.)  Plaintiffs allegedly used and/or subscribed to the OnlyFans website for various periods between 2018 to 2025.  (*See, e.g.*, *id.* ¶ 250 (Plaintiff N.Z. used OnlyFans from 2020 to present); ¶ 263 (Plaintiff R.M. used OnlyFans from 2019 to 2023); ¶ 279 (Plaintiff B.L. used OnlyFans from 2020 to present); ¶ 291 (Plaintiff S.M. used OnlyFans from 2018 to 2024); ¶ 308 (Plaintiff A.L. used OnlyFans from 2021 to 2024).)  As OnlyFans users, Plaintiffs subscribe to one or more creators represented by Boss Baddies, LLC, Moxy, Unruly Agency LLC, Dysrpt Agency, Behave Agency LLC, A.S.H. Agency, Context X, Inc., Verge Agency, Inc., and Elite Creators LLC (collectively, "Agency Defendants").  (*Id.* ¶¶ 25, 46-54.)

OnlyFans' core promise of its platform and marketing hinges on the authenticity of the personal interaction between Fans and Creators.  (*Id.* ¶ 81.)  On the website's "about" page, it

---

[1] For purposes of the Motions to Dismiss, the court "accept[s] factual allegations in the [First Amended Complaint] as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                              Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

promises the following: "OnlyFans is the 18 + subscription platform empowering creators to own their full potential, monetize their content, and develop authentic connections with their fans." (*Id.* ¶ 82.) In addition, one of OnlyFans' "Core Values" is the following: "Giving creators control to own and monetize their content and to foster authentic relationships with their followers and fanbase." (*Id.* ¶ 84.) Also, OnlyFans urges Fans to subscribe to specific Creators using the following language: "SUBSCRIBE AND GET THESE BENEFITS: Full access to this user's content [/] Direct message with this user [/] Cancel your subscription at any time." (*Id.* ¶ 88.) OnlyFans' social media actively endorses, publishes, and emphasizes opportunities to direct message and build authentic relationships with Creators. (*Id.* ¶ 91.)

Agency Defendants sell their services to OnlyFans Creators with promises that they can increase a Creator's revenue exponentially while ensuring the Creators have no real role in the communications with their Fans. (*Id.* ¶ 101.) Once a Creator engages an agency to operate his or her account, the agency takes over and operates all aspects of the Creator's account. (*Id.* ¶ 103.) Without the Fans' knowledge, agencies contract with Chatters to conduct most, if not all, of the communications between the Creators and the Fans. (*Id.* ¶ 104.) In addition, agencies provide Chatters with scripts which give a specific workflow to follow to maximize the amount of money they extract from Fans. (*Id.* ¶ 110.)

This case centers around what Plaintiffs call "Chatter Scams," in which Fans believe they are chatting directly with the Creator, but are actually chatting with someone else. In recent years, companies have developed specialized tools to facilitate the use of a single OnlyFans account by multiple people such as Chatters. (*Id.* ¶ 120.) For example, Supercreator, CreatorHero, Infloww, and OnlyMonster are customer relationship management platforms ("CRM") designed to allow agency members to access OnlyFans accounts simultaneously to manage Creator accounts and facilitate the Chatter Scams. (*Id.* ¶ 121.) Agency Defendants use CRM tools to access the Creator's OnlyFans account and mirror a single live session inside a multi-seat dashboard. (*Id.* ¶ 122.) Using these tools, Chatters are able to read and answer messages without opening the official OnlyFans interface in a visible browser tab. (*Id.*) Put differently, Fan messages sent to a Creator's account are simultaneously intercepted, diverted and routed through the CRM platform, where a Chatter impersonating the Creator can then respond to the Fan through the Creator's account, allowing the Chatter to interact with the Fan,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

solicit subscribers and tips, sell content from the Creator's Vault, and/or obtain Fans' requests for specific "custom" content. (*Id.* ¶ 124.)

OnlyFans is aware of the use of CRM software on its platform—as well as the fact that the use of such software violates OnlyFans' Terms of Service—but chooses to do nothing to prevent the use of such software to continue profiting from the increased revenues facilitated by the CRM software. (*Id.* ¶ 128.) OnlyFans also tracks information on message traffic between Fans and Creator accounts that would indicate the use of Chatters, even where agencies attempt to hide the location of their Chatters. (*Id.* ¶ 143.) OnlyFans knew, and should have known, that its Creators were using Chatters to engage with Fans—including based on the revenue being generated by those Creators; the number of direct messages with Fans; the number of different login sessions to a given Creator's account; and the number of Fan complaints (which OnlyFans ignored). (*Id.* ¶ 156.)

In sum, Plaintiffs allege that Fenix Defendants, in cooperation with the Agency Defendants, operate a fraudulent scheme whereby Fenix Defendants charge OnlyFans subscribers to communicate directly with creators, purport to connect subscribers with creators, and instead connect subscribers with "professional chatters" hired to impersonate creators and convince users to spend more money on the website. (*See, e.g.*, *id.* ¶¶ 1-18.) The "Chatter Scams" allegedly involve "massive breaches of confidentiality and privacy violations" and violate OnlyFans' Terms of Service and Privacy Policy by distributing subscribers' "intimate communications and private and/or personal information" to unauthorized parties. (*See, e.g.*, *id.* ¶¶ 5, 155-71.)

Plaintiffs bring this putative class action for (1) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) RICO conspiracy, (3) violation of the Federal Video Privacy Protection Act ("VPPA"), (4) violation of the California Comprehensive Data Access and Fraud Act ("CDAFA"), (5) violation of California's Invasion of Privacy Act ("CIPA"), (6) violation of the Federal Wiretap Act, (7) breach of contract, (8) fraud and fraud by concealment, (9) deceit, (10) violation of California's False Advertising Law ("FAL"), and (11) violation of California's Unfair Competition Law ("UCL"). (*See generally id.* ¶¶ 355-546.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### B.    The OnlyFans Terms of Service

The Terms of Service govern the relationship between Fenix Defendants and users.  (Dkt. 60-1 (Declaration of Lee Taylor, "Taylor Decl.") ¶ 12, Ex. A ¶ 1.)  Starting in July 2018, OnlyFans has required users to agree to the Terms of Service when creating an account on the website; users create an account by filling out their name, email, and password, and then clicking a "sign up" button.  (Taylor Decl. ¶¶ 22-27, Ex. C.)  The "sign up" button appears above text stating, "[b]y signing up you agree to our Terms of Service and Privacy Policy[] and confirm that you are at least 18 years old."  (*Id.* ¶¶ 22-26, Ex. C.)  The phrases "Terms of Service" and "Privacy Policy" appear in blue and contain hyperlinks to the relevant policies. (*Id.* ¶ 24, Ex. C.)

OnlyFans employs a similar process for amendments to the Terms of Service.  For the December 2021 amendment, OnlyFans sent all users a message through the website before the amendment took effect, which stated the Terms of Service were being updated, listed the effective date of the update, shared a hyperlink to the updated Terms of Service, summarized the relevant changes, and informed users that they agree to comply with the updated terms by continuing to use OnlyFans.  (*Id.* ¶¶ 28-29, Ex. D.)  OnlyFans also sent users an alert on the first day they logged into the website after the amendment went into effect stating: "Our Terms of Service have been updated on December 15, 2021.  To continue using our service, please confirm you have read and agree with our Terms of Service."  (*Id.* ¶¶ 31-33, Ex. E.)  The alert contained a hyperlink to the updated Terms of Service and required users to click "accept" to continue using the website.  (*Id.* ¶ 33.)

The Terms of Service include a forum selection clause and choice-of-law provision applicable to OnlyFans users, which state, in pertinent part:

> <u>Consumers - Law</u>: If you are a consumer, your agreement with us is governed by English law and English law will apply to (i) any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans, and (ii) any claim that we have against you that arises out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                     Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

claims).  You will also be able to rely on mandatory rules of the law of
the country where you live.

Consumers - where claims must be brought:
. . .
If you are a consumer resident **outside** of the United Kingdom or the
European Union, any claim which you have or which we have arising
out of or in connection with your agreement with us or your use of
OnlyFans (including, in both cases, non-contractual disputes or claims)
must be brought in the courts of England and Wales.
If you are a Consumer resident in the United States with claims
exclusively against Fenix Internet LLC, a wholly-owned subsidiary of
Fenix International Limited, located at 1000 N. West Street, Suite 1200,
Wilmington, Delaware, 19801, you may pursue your consumer claim
in an appropriate case in a court of jurisdiction in Wilmington,
Delaware.
. . .

(*Id.*, Ex. A ¶ 16(a).)

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a
claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "[C]ourts must consider the
complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule
12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by
reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues
& Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule
12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a
Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                     Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### B.    Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). In evaluating a motion to strike, the court accepts the nonmoving party's allegations as true and liberally construes the pleadings in the nonmoving party's favor. *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 809 (N.D. Cal. 2019); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1095 (S.D. Cal. 2016).

## III.    Analysis

The court considers (1) whether the court has personal jurisdiction over the Fenix Defendants, (2) whether venue in this District is proper for R.M.'s claims, (3) the sufficiency of Plaintiffs' allegations under Rule 12(b)(6), and (4) the motion to strike.

### A.    Personal Jurisdiction over Fenix Defendants

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state can give rise to either general or specific jurisdiction. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). "Personal jurisdiction over each defendant must be analyzed separately." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Fenix Defendants move to dismiss the claims against them because the court lacks personal jurisdiction over Fenix Defendants. (Dkt. 121 at 15-21.)[2] Specifically, Fenix Defendants argue that the court lacks (1) general jurisdiction, (2) specific jurisdiction, (3) jurisdiction under 18 U.S.C. § 1965(b) and (4) jurisdiction under 18 U.S.C. § 1965(d) over Fenix Defendants, and (5) that the court should transfer claims against Fenix Internet to Delaware. (*Id.*) The court addresses each argument in turn.

### 1.    General Jurisdiction

Fenix Defendants argue that the court lacks general jurisdiction over Fenix Defendants because Fenix International is incorporated and registered in England and Wales, with its principal place of business in London, and Fenix Internet is organized and headquartered in Delaware. (*Id.* at 18.) Fenix Defendants further argue that they do not have offices, staff, other physical presence, or a registered agent for service of process in California. (*Id.*) Plaintiffs respond that Fenix Defendants' sustained commercial presence, revenue, and promotional campaign are bases for general jurisdiction. (Dkt. 140-1 at 21-22.)

"A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render them essentially at home in the forum State.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (citation modified). "[A] plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)).

The court finds the court lacks general jurisdiction over Fenix Defendants. Plaintiffs allege that Fenix Internet has "over 100 [associated members] in California." (FAC ¶ 41.) Plaintiffs further allege that Fenix Defendants co-hosted an event with one Agency Defendant. (*Id.* ¶ 6.) The court finds such allegations insufficient because the alleged contacts are not "so

---

[2] All citations in the Order refer to CM/ECF pagination. Additionally, the court has reviewed all the parties' papers and will reference the parties' arguments when they are deemed relevant to the court's analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

continuous and systematic as to render [Fenix Defendants] essentially at home" in California. *LNS Enters.*, 22 F.4th at 859 (internal quotation marks and citation omitted); *see, e.g.*, *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (finding no general jurisdiction over out-of-state corporation in Montana even though corporation had systematic infrastructure and operations and "more than 2,000 employees in Montana").

> **2.    Specific Jurisdiction**

Specific jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (internal quotation marks omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). In the Ninth Circuit, courts utilize the following three-part test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

The first factor may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). A "'purposeful availment' analysis is used for cases sounding in contract" whereas "purposeful direction" analysis is often applied in tort cases. *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (citing *Schwarzenegger*, 374 F.3d at 802).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Fenix Defendants argue that most of Plaintiffs' claims sound in tort and therefore are evaluated under the purposeful direction test while the breach of contract claim is evaluated under the purposeful availment test.  (Dkt. 121 at 18.)  Plaintiffs do not dispute that both tests are relevant here because Plaintiffs bring a breach of contract claim and tort-sounding claims.  (Dkt. 140-1 at 13 n.2.)  Accordingly, the court concludes that both the purposeful direction and purposeful availment tests are applicable here.  *See Pakootas*, 905 F.3d at 577.

> **a.    Purposeful Direction**

Under the purposeful direction test, Fenix Defendants must have "(1) committed an intentional act, (2) expressly aimed at [California], (3) causing harm [they] kn[ew] [would] likely . . . be suffered in [California]." *Schwarzenegger*, 374 F.3d at 803.

Fenix Defendants argue Plaintiffs fail to adequately allege that Fenix Defendants undertook tortious acts directly targeting California.  (Dkt. 121 at 18-20.)  Plaintiffs respond that their allegations regarding the platform design, Creator onboarding, identity verification, and a payment infrastructure that monetized impersonation-based chats are sufficient.  (Dkt. 140-1 at 14-17.)  Plaintiffs further respond that Fenix Defendants' alleged revenue and user base from California are sufficient.  (*Id.* at 14-15.)  And finally, Plaintiffs respond that Fenix Defendants engaged in promotional activities focused on California such as California-based Creators promotion, appearing at public events in California, and programs that are filmed, set, or produced in California.  (*Id.* at 15-16.)

The court finds Plaintiffs fail to adequately allege that Fenix Defendants purposefully directed their acts to California.  First, Plaintiffs argue that Fenix Defendants platform design, Creator onboarding, identity verification, and the payment infrastructure sufficiently allege targeting to California.  (Dkt. 140-1 at 14; *see e.g.*, FAC ¶¶ 8, 42, 72-73 137-141.)  Here, Plaintiffs allege that Fenix Defendants "allow[] Creators to make individual profiles through which they can share content (text, photos, and videos) with their Fans—users of the platform who can open Fan accounts, subscribe to specific Creators' profiles (often for a monthly fee), and respond to Creators' content in the form of comments and/or 'likes.'" (*Id.* ¶ 8.)  Plaintiffs also allege that Fenix Internet "directly or indirectly collects and receives all OnlyFans-related payments from Fans located in the United States" and remits payments to Creators.  (*Id.* ¶ 42.)

**CIVIL MINUTES – GENERAL**                                                    **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

To support Plaintiffs' contention, Plaintiffs also point to Fenix Defendants' revenue and user count. (Dkt. 140-1 at 14-15.)  The court finds that Plaintiffs fail to adequately allege express aiming because the alleged conduct merely relates to the operation and accessibility of the OnlyFans Website, without alleged targeting to California.  *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 752 (9th Cir. 2025) ("'[S]omething more' than mere passive nationwide accessibility was required to show express aiming at the forum state."); *see also, e.g.*, *Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734, at *4 (C.D. Cal. May 2, 2024) (finding plaintiffs' assertions that a significant number of California residents visited and purchased subscriptions through the website are insufficient to demonstrate defendant exhibited an intent to cultivate an audience in the forum).  Although garnering a large user base and generating high revenue from a forum state may be the result of, or even support finding, express aiming, the court is not persuaded that it is sufficient to allege express aiming as to the claims at issue.  Put differently, the court is not persuaded that Plaintiffs' alleged purchases and subscriptions to OnlyFans sufficiently alleges that Fenix Defendants expressly aimed at California such that they may be liable for the Chatter Scams.  *See Briskin*, 135 F.4th at 758 (holding that an interactive platform "expressly aims" its wrongful conduct toward a forum state when its contacts are *its own choice* and not "random, isolated, or fortuitous").  Second, Plaintiffs argue that Fenix Defendants promoted California-based Creators, appeared at public events in California, and even produced a California program. (Dkt. 140-1 at 15-16.)  The court finds Plaintiffs fail to adequately allege their claims arise out of Fenix Defendants' promotional conduct that was expressly aimed at California.  *See Briskin*, 135 F.4th at 751; *Schwarzenegger*, 374 F.3d at 803.  For example, Plaintiffs state that Keily Blair, the CEO of OnlyFans, appeared at public events in California to promote OnlyFans' business model and strategy in 2022, 2024, and 2025. (Dkt. 140-1 at 15-16.)  Plaintiffs also point to OnlyFans TV programs filmed, set, or produced in California. (*Id.* at 16; *see e.g.*, FAC ¶ 133.)  Although the alleged promotional activities may allege express aiming at California, the court finds that Plaintiffs fail to adequately allege how these promotional activities "cause[] harm that the [Fenix Defendants] know[] will be suffered in the forum state," particularly with Plaintiffs' subscriptions and purchases prior to these promotions. *Briskin*, 135 F.4th at 751; *see also Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023) ("We have long understood that for an injury to arise out of a defendant's forum contacts required but for causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action." (citation modified)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                           Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### b.    Purposeful Availment

"A contract alone does not automatically establish minimum contacts in the plaintiff's home forum. Rather, there must be actions by the defendant *himself* that create a substantial connection with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (citation modified). Plaintiffs argue that Fenix Defendants' alleged activities directed at California also allege Fenix Defendants' purposeful availment of the privileges of doing business in California. (Dkt. 140-1 at 17.) Because the court finds Plaintiffs fail to adequately allege contacts that cause the harms at issue, *see* Section III.A.2.a, *supra*, the court finds that Plaintiffs purposeful availment theory fails for the same reasons.

### 3.    18 U.S.C. § 1965(b)

"Congress authorized nationwide service of process under the RICO statute if 'the ends of justice require that other parties residing in any other district be brought before the court.'" *Doe v. Walmart Inc.*, 2019 WL 499754, at *6 (N.D. Cal. Feb. 8, 2019) (citing 18 U.S.C. § 1965(b)). "In order to establish personal jurisdiction under Section 1965(b), Plaintiffs must show: (1) the [c]ourt has personal jurisdiction over at least one of the participants in the action; (2) there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators; and (3) the facts show a *single nationwide* RICO conspiracy exists." *Gilbert v. Bank of Am.*, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014) (citing *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)).

Fenix Defendants argue that 18 U.S.C. § 1965(b) does not confer personal jurisdiction over Fenix Defendants because Plaintiffs fail to allege a nationwide RICO Conspiracy. (Dkt. 121 at 15-16.) Plaintiffs respond that they adequately alleged a nationwide RICO Conspiracy. (Dkt. 140-1 at 19-21.) Because the court finds that Plaintiffs fail to adequately allege a nationwide RICO Conspiracy, *see* Section III.C.2, *infra*, the court finds that Plaintiffs fail to adequately allege personal jurisdiction over Fenix Defendants under 18 U.S.C. § 1965(b). *See Butcher's Union*, 788 F.2d at 539.

**CIVIL MINUTES – GENERAL**                                                          **13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01655-FWS-SSC                                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### 4.      18 U.S.C. § 1965(d)

Under 18 U.S.C. § 1965(d), "[a]ll other process in any action or proceeding under this
chapter may be served on any person in any judicial district in which such person resides, is
found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(d).

Fenix Defendants argue that 18 U.S.C. § 1965(d) does not provide a vehicle for a court to
exercise personal jurisdiction over a defendant.  (Dkt. 121 at 17.)  Plaintiffs respond that 18
U.S.C. § 1965(d) permits nationwide jurisdiction and serves as an alternative basis for
exercising personal jurisdiction in this case.  (Dkt. 140-1 at 21 n.12.)  The court agrees with
Fenix Defendants.  The court concludes that 18 U.S.C. § 1965(d) does not provide a vehicle for
the court to exercise personal jurisdiction.  *See Mir v. Greines, Martin, Stein & Richland*, 2015
WL 4139435, at *12 n.15 (C.D. Cal. Jan. 12, 2015), *aff'd*, 676 F. App'x 699 (9th Cir. 2017)
("Some courts have concluded that § 1965(d), not (b), is the source of nationwide jurisdiction
over RICO defendants.  In the Ninth Circuit, however, subsection (b) is the source of that
jurisdiction.  Therefore, plaintiff's invocations of § 1965(d) to support jurisdiction are
unavailing." (citations omitted)); *Walmart*, 2019 WL 499754, at *7 ("However, Plaintiffs fail to
cite, and the Court does not find, any Ninth Circuit authority holding that 18 U.S.C. §§ 1965(a)
and 1965(d) are nationwide service of process provisions.  Moreover, no court has found that
these statutory provisions confer jurisdiction.").

### 5.      Transferring Claims Against Fenix Internet

Fenix Defendants argue that the court should transfer Plaintiffs' claims against Fenix
Internet to Delaware, where it is subject to general jurisdiction, which would comport with the
forum-selection clause in the Terms of Service.  (Dkt. 121 at 21.)  "Contract terms are to be
given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties
must be ascertained from the contract itself.  Whenever possible, the plain language of the
contract should be considered first."  *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d
649, 668 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) (citing *Klamath
Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)).  Here, the
Terms of Service provide the following: "If you are a Consumer resident in the United States
with claims exclusively against Fenix Internet LLC, a wholly-owned subsidiary of Fenix

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                      Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

International Limited, located at 1000 N. West Street, Suite 1200, Wilmington, Delaware,
19801, you may pursue your consumer claim in an appropriate case in a court of jurisdiction in
Wilmington, Delaware." (Dkt. 60-1 at 22.)  The court is not persuaded that the Terms of
Service compel the court to transfer Plaintiffs' claims against Fenix Internet because the Terms
of Service do not require Plaintiffs to litigate in Delaware, nor are Plaintiffs pursuing claims
exclusively against Fenix Internet. (*See generally id.*)  Accordingly, the court **DECLINES** to
transfer Plaintiffs' claims against Fenix Internet to Delaware.

        In sum, the court finds Plaintiffs fail to adequately allege that the court may exercise
(1) general jurisdiction, (2) specific jurisdiction, (3) jurisdiction under 18 U.S.C. § 1965(b), and
(4) jurisdiction under 18 U.S.C. § 1965(d) over Fenix Defendants, and (5) the court is not
persuaded that the court should transfer Plaintiffs' claims against Fenix Internet to Delaware.
Because Plaintiffs fail to adequately allege a basis for the court to exercise personal jurisdiction
over Fenix Defendants, the court **DISMISSES** Fenix Defendants from this case.  However, the
court will grant **LEAVE TO AMEND** to cure these deficiencies, and the court will evaluate the
adequacy of Plaintiffs' allegations regarding venue and Plaintiffs' claims.

        **B.      Venue as to R.M.**

        Fenix Defendants argue that Plaintiffs fail to adequately allege this District is the
appropriate venue for R.M. (Dkt. 121 at 33-34.)  Plaintiffs respond that venue is proper as to
R.M. because he resides in California and asserts claims that arise from deceptive conduct
orchestrated by a California-facing platform. (Dkt. 140-1 at 22-23.)  A civil action may be
brought in "a judicial district in which a substantial part of the events or omissions giving rise to
the claim occurred, or a substantial part of property that is the subject of the action is situated."
28 U.S.C. § 1391(b)(2).  "The Ninth Circuit has held that the 'substantial part' standard of
§ 1391(b)(2) is satisfied when 'at least one of the harms suffered by plaintiffs was felt' in the
venue." *Givens v. Banner Bank*, 2018 WL 11471567, at *3 (N.D. Cal. Aug. 14, 2018) (citing
*Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001)).  Plaintiffs allege that "R.M. is
currently a resident and citizen in Folsom, California, but during the time period at issue," "he
was a resident of El Dorado Hills, California." (FAC ¶ 30.)  Both Folsom and El Dorado Hills,
California, are in Northern California, and are not part of the Central District of California.  The
court finds Plaintiffs fail to adequately allege that the Central District of California is the proper

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

venue for R.M.'s claims because Plaintiffs fail to allege events or omissions relevant to R.M.'s claims occurring in this District, R.M. does not reside in this District, and Plaintiffs allege harm suffered by R.M. occurring outside this District. *See* § 1391(b)(2); *Myers*, 238 F.3d at 1076. Accordingly, R.M. is **DISMISSED** from the case. However, the court will grant **LEAVE TO AMEND**.

### C.    Sufficiency of Allegations

The court analyzes (1) 47 U.S.C. § 230 immunity, and the sufficiency of Plaintiffs' claims for (2) RICO and RICO Conspiracy, (3) violation of VPPA, (4) violation of CIPA and federal wiretap statutes, (5) California Penal Code § 502, (6) breach of contract, (7) fraud, and (8) violations of the UCL and FAL.

### 1.    47 U.S.C. § 230

The Ninth Circuit has created a three-prong test for Section 230 immunity. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). "Immunity from liability exists for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider. When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id.* (internal quotation marks omitted).

Fenix Defendants argue that Plaintiffs' claims are barred under Section 230 because Fenix International merely facilitates the connection between online users to a common database and qualifies as an interactive computer service. (Dkt. 121 at 22.) Fenix Defendants further argue that Plaintiffs' claims regarding Fenix Defendants' representations about the communications with Creators are too general to be enforced. (*Id.* at 23.) Plaintiffs respond that their claims do not treat Fenix Defendants as a publisher, nor do Plaintiffs' claims relate to information provided by third parties. (Dkt. 140-1 at 25.) Specifically, Plaintiffs respond that the allegations arise from Fenix Defendants' direct statements and conduct rather than their management of third-party content. (*Id.* at 25-27.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court finds that Plaintiffs' claims are not barred to the extent they rely on Fenix Defendants' own representations about promising authentic relationship between Fans and Creators. Plaintiffs allege that OnlyFans' marketing on social media sites "often and repeatedly endorsed, published, and emphasized the opportunity to 'direct message,' 'DM,' directly 'chat,' chat '1 on 1,' and build personal and authentic relationships with specific Creators." (FAC ¶ 91.) Plaintiffs also allege that Fenix Defendants knew about the Chatter Scams and promoted the fraud. (*See e.g., id.* ¶¶ 7, 13-14.) As the Ninth Circuit has held, Fenix Defendants "lose § 230 immunity to the extent that Plaintiffs' claims seek to treat it as the publisher or speaker of its *own* content—or content that it created or developed in whole or in part—rather than the publisher or speaker of entirely third-party content." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 744 (9th Cir. 2024). The court finds that Plaintiffs' claims regarding Fenix Defendants' own representations are not barred under Section 230. *See id.* The court is not persuaded that Fenix Defendants' alleged role in the Chatter Scams hinges on a "monitoring obligation" to exclude material, but rather focuses on Fenix Defendants' fulfillment of the alleged promises and representations. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 643 (9th Cir. 2025). However, to the extent Plaintiffs seek to hold Fenix Defendants liable for "facilitating communication" between Plaintiffs and Agency Defendants, the court finds that Plaintiffs' claims are barred. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1152-53 (9th Cir. 2025). Accordingly, Plaintiffs' claims are **DISMISSED** to the extent Plaintiffs seek to hold Fenix Defendants liable for facilitating communication among users.

### 2.     RICO and RICO Conspiracy Claims

"The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E.*, 751 F.3d at 997 (citing 18 U.S.C. § 1962(c)).

### a.     RICO Enterprise

"To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

necessary to accomplish the purpose." *Id.* (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

First, Moxy argues that the alleged RICO enterprise was formed before its members even existed. (Dkt. 124 at 13-14.) Second, Moxy argues that Plaintiffs fail to allege Fenix Defendants knew about the Agency Defendants or that the Agency Defendants knew each other. (*Id.* at 14-15.) Moxy further argues Plaintiffs only allege that OnlyFans knew one Agency Defendant in 2023. (*Id.* at 14.) Third, Moxy argues that Plaintiffs fail to allege coordination among members of the alleged RICO enterprise. (*Id.* at 15-17.) Fourth, Moxy argues Plaintiffs' failure to allege knowledge of the "Chatter Scams" precludes them from alleging a common purpose. (*Id.* at 17-18.) Fifth, Moxy argues Plaintiffs' alleged common purpose is merely a routine business activity that is in the individual member's economic self-interest. (*Id.* at 18.)

Plaintiffs respond that Fenix Defendants and Agency Defendants have functional coordination and an organizational structure where Fenix Defendants provide the technological infrastructure and promises authenticity of personal interaction while Agency Defendants direct professional chatters to impersonate Creators using CRM platforms. (Dkt. 142 at 19-20.) Plaintiffs further respond that Fenix Defendants created the OnlyFans ecosystem while Agency Defendants acted in furtherance of the fraudulent enterprise, in their individual roles. (*Id.* at 14-15, 19-20.) Additionally, Plaintiffs respond that Fenix Defendants and Agency Defendants are engaged in the scheme to extract premium content fees from Fans. (*Id.* at 16-19.) And finally, Plaintiffs respond that the Agency Defendants participated in the Chatter Scams prior to Agency Defendants' corporate formations. (*Id.* at 20-22.)

The court finds that Plaintiffs fail to adequately allege a RICO enterprise between Fenix Defendants and Agency Defendants. Plaintiffs allege that Fenix Defendants "communicated to Plaintiffs and the Class Members on the various platforms, including its website that they will be able to 'direct message' with Creators, chat '1 on 1' with the Creators, and build 'genuine' and 'authentic' connections." (FAC ¶ 365.) Plaintiffs further allege that "Agency Defendants implemented the Chatter Scams on behalf of the Creators they represent to convince Fans they were direct messaging with the Represented Creators and receiving the promised '1 on 1,' chats, 'direct messaging,' or 'authentic' experience, when in fact the Fans were speaking with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

third parties without their knowledge." (*Id.* ¶ 367.) The court finds such allegations insufficient because Plaintiffs fail to allege facts that Fenix Defendants and Agency Defendants combined as an enterprise in furtherance of the Chatter Scams. The court is not persuaded that Plaintiffs sufficiently allege coordination among the members, particularly where Plaintiffs do not allege facts that Fenix Defendants and Agency Defendants were "even aware of one another's existence as participants in a scheme to defraud" starting in 2017. *See Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3-4 (C.D. Cal. Jan. 28, 2016). The court also finds that Plaintiffs fail to adequately allege a common purpose. Plaintiffs allege that the RICO enterprise existed for "the common purpose of fraudulently increasing the amount and number of Premium Content Fees each Fan pays." (FAC ¶ 376.) The court finds such allegations insufficient because the alleged common purpose, without additional allegations of coordination, appears to be the ordinary business purpose of increasing revenue. *See In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose. The challenge for Plaintiffs is to set forth sufficient allegations to distinguish ordinary business conduct from fraudulent conduct. Pleading by adjective does not comply with Rule 9(b)."); *see also, e.g.*, *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1051, 1057 (C.D. Cal. 2016) (finding allegations that defendants agreed to conceal the scope and nature of the defects without specific facts, such as references to specific communications, insufficient to state a common purpose); *Uce v. Oral Aesthetic Advoc. Grp., Inc.*, 2024 WL 3050720, at *7 (C.D. Cal. Feb. 23, 2024) (finding allegations that defendants were paid referral fees pursuant to an agreement insufficient to state a common purpose under RICO); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (finding mere allegations of defendants fraudulently associated in a manner directly related to their own primary business activities insufficient to state a claim under § 1962(c)). The court finds Plaintiffs' allegations, without more, insufficient to sufficiently allege an enterprise. Accordingly, Plaintiffs' claim for violation of the RICO Act is **DISMISSED**.

**b.      Conduct in Furtherance of RICO Scheme**

"In the Ninth Circuit, to assess whether a defendant had a sufficient role in operation or management to meet the standard of § 1962(c), courts consider whether the defendant (1) gave

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

or took directions; (2) occupied a position in the chain of command through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is vital to the mission's success." *Tatung Co., Ltd. v. Hsu*, 2015 WL 11072178, at *20 (C.D. Cal. Apr. 23, 2015) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)) (citation modified). "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018). "Racketeering activity" is defined as "the commission of a predicate act that is one of an enumerated list of federal crimes." *Id.* at 1076. In addition, "[w]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012); *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004). Here, Plaintiffs' RICO claim is based on wire fraud. (FAC ¶ 382 ("To carry out, or attempt to carry out the scheme to defraud, Defendants conducted or participated in the conduct of the affairs of the Content Fraud Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), that employed the use of the wire facilities, in violation of 18 U.S.C. § 1343.").)

Moxy argues that Plaintiffs fail to allege Moxy gave or took directions.[3] (Dkt. 124 at 19.) Moxy further argues that Plaintiffs fail to adequately allege Moxy engaged in a wire fraud. (*Id.* at 19-21.) Plaintiffs respond that OnlyFans and Agency Defendants engaged in a pattern of racketeering by misrepresenting the nature of fan-creator reactions, falsely promising authentic reactions, and using Chatters to impersonate Creators. (Dkt. 142 at 22-25.)

The court finds that Plaintiffs fail to sufficiently allege Agency Defendants committed wire fraud with particularity. Plaintiffs allege that "Moxy's marketing emphasizes its ability to help Creators 'increase engagement with their fans and followers exponentially.'" (FAC ¶ 183.) Plaintiffs further allege that "Moxy provides Chatter services, employing Chatters to impersonate the Creator and communicate with Fans without the Fans' knowledge" and "will respond to messages on Paid Content Platforms on behalf of [the Creator]." (*Id.* ¶¶ 188-89.) Similarly, Plaintiffs allege that "Content X provides Chatter services, employing Chatters to

---

[3] Other Agency Defendants raise similar arguments to Moxy. (*See, e.g.*, Dkt. 125 at 14-17; Dkt. 126 at 15-18; Dkt. 127 at 18-21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                           Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

impersonate the Creator and communicate with Fans without the Fans' knowledge," (*id.* ¶ 227), that a post on the "VIP" page for Verge creator Mikayla Demaiter stated, "Here I'll be posting my most exclusive content, as well as the only place I will be responding to all my messages! Tip $100 to join VIP for unlimited FREE chat and MOST exclusive content," (*id.* ¶ 242), and that Creators Inc. creator stated, "I personally reply to every message, so messages with tips attached get priority! Please be patient if there isn't one!" (*id.* ¶ 176). Although Plaintiffs generally allege the Creators' representations of authentic communications online, the court finds that such allegations are insufficient to sufficiently allege wire fraud with particularity. Plaintiffs do not sufficiently allege the circumstances of such representations as it relates to Plaintiffs' claims, particularly which specific representations by Agency Defendants were relied on by Plaintiffs. (*See generally id.*) The court finds Plaintiffs fail to adequately allege the "who, what, when, where, and how" of the alleged fraud conducted by Moxy. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). Again, Plaintiffs do not allege the circumstances of specific representations made by Moxy to Plaintiffs that gave rise to Plaintiffs' claims. The court finds Plaintiffs allegations that, "on information and belief," Plaintiffs paid money to subscribe to Moxy-affiliated Creators, (FAC ¶¶ 187), insufficient to allege Plaintiffs' wire fraud theory with particularity. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[A]llegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)."); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019) ("Allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded." (citation modified)).[4]

### c.     RICO Conspiracy Claim

Moxy argues that Plaintiffs failed to state a RICO conspiracy claim because Plaintiffs failed to state a RICO claim. (Dkt. 124 at 23.) The court agrees. *See*, *Khalid v. Microsoft Corp.*, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023) ("Because [plaintiff] failed to state a

---

[4] Because Plaintiffs fail to adequately allege a RICO claim, the court need not consider Defendants' arguments regarding the amount of damages Plaintiffs suffered because of the alleged RICO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

RICO claim under § 1962(c), he also failed to state a RICO conspiracy claim under § 1962(d).").  Accordingly, Plaintiffs' RICO conspiracy claim is **DISMISSED**.

### 3. VPPA Claim

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person."  18 U.S.C. § 2710(b)(1).

### a. Video Tape Service Provider

"[T]he term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

The court finds that Plaintiffs adequately allege Fenix Defendants and Agency Defendants are video tape service providers.  Plaintiffs allege that Agency Defendants delivered videos through unlock links, PPV tips, and custom video transactions—each orchestrated by agency personnel operating through Creator accounts.  (*See, e.g.*, FAC ¶ 111 ("It is very common for Fans to request custom videos from Creators—often spending hundreds of dollars for a single video."); *id.* ¶ 112 (describing Agency Defendants' facilitation of custom video content); *id.* ¶ 455 ("Plaintiffs and Class Members purchased RC Content directly from the Agency Defendants, whose revenues are directly related to the amount of content purchased by Fans[.]")  Plaintiffs further allege that Fenix Defendants "are also engaged in the business of selling and/or delivering audiovisual materials" and that "[t]he entire purpose of the OnlyFans platform is to deliver content from Creators to Fans." (*Id.* ¶ 453.)  The court finds that such allegations are sufficient to allege Fenix Defendants and Agency Defendants are video tape service providers because they are in the business of delivering video content to Fans and structure their business on these interactions.  *See* 18 U.S.C. § 2710(a)(4); *see also Cole v. LinkedIn Corp.*, 2025 WL 2963221, at *3 (N.D. Cal. Oct. 20, 2025) (observing that multiple courts in the Northern District of California found a defendant regularly delivering video content to users and maintaining a cache of such content sufficient to allege defendant is a video tape service provider); *see also, e.g., Archer v. NBCUniversal Media, LLC*, 794 F. Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

3d 716, 721 (C.D. Cal. 2025) (finding plaintiff sufficiently alleged defendants are video tape service providers where plaintiff alleges that defendant "sells prerecorded video materials to consumers, including movies, television shows, and more").

### b.    Consumers

"[T]he term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

The court finds Plaintiffs adequately allege that they are consumers under the VPPA. Plaintiffs allege that they subscribed to Creator accounts and paid for access to PPV videos, which were sent through chat and message-based unlocks.  (FAC ¶ 111 ("The interactions that often garner the most money are those in which a Fan pays for 'custom' PPV content created (ostensibly) specifically for that individual Fan.  It is very common for Fans to request custom videos from Creators—often spending hundreds of dollars for a single video."); *id.* ¶¶ 260, 276, 288, 305, 321, 414, 416, 455 (examples of Plaintiffs purchasing video content).)  Accordingly, the court finds that Plaintiffs adequately allege they are consumers under the VPPA.  *See* 18 U.S.C. § 2710(a)(1); *see also, e.g.*, *LinkedIn Corp.*, 2025 WL 2963221, at *4 (finding that plaintiff is a consumer under the VPPA because she subscribed to LinkedIn to watch video content to which she would otherwise have lacked access).

### c.    Knowing Disclosure

"[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  "The Ninth Circuit has adopted the ordinary person standard to determine what constitutes PII under the VPPA.  Under this standard, PII means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."  *Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) (citation modified) (citing *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984-85 (9th Cir. 2017)).

---

**CIVIL MINUTES – GENERAL**                                              **23**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court finds that Plaintiffs fail to adequately allege the information disclosed was PII. Plaintiffs allege that, each time a Fan interacts with a Creator's account, the platform collects and transmits sufficient information to identify the specific Fan, including Fan's username, which can be used to locate and view the Fan's profile.  (FAC ¶ 450.)  Plaintiffs further allege that "any interaction related to a Fan's request for or viewing of any video content is considered [PII] about that Fan."  (*Id.*)  And finally, Plaintiffs allege that there is a "communication history viewable by Chatters."  (*Id.* ¶ 451.)  The court finds that such allegations are insufficient because the alleged information disclosed would not readily permit an ordinary person to identify the specific person.  *See Eichenberger*, 876 F.3d at 984-85; *see also, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *12 (D.N.J. July 2, 2014) (finding that the allegedly disclosed anonymous usernames do not serve "to identify an actual, identifiable person and link that person to a specific video choice"); *Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 811 (S.D.N.Y. 2025) (dismissing VPPA claim where "there are no allegations that these profiles contain any further identifying information, such as names or addresses" and plaintiffs "allege that the profiles are themselves anonymous"); *Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, at *2-3 (C.D. Cal. Sept. 27, 2024) (finding plaintiff fails to allege PII where plaintiff does not "establish that (1) her Facebook profile is publicly accessible and (2) includes sufficient identifying information").  Accordingly, Plaintiffs' VPPA claim is **DISMISSED**.

> **4.    CIPA and Federal Wiretap Claims**

Fenix Defendants argue that Plaintiffs cannot show third parties read their messages "in transit" as required by CIPA.  (Dkt. 121 at 28.)  Fenix Defendants further argue that Plaintiffs fail to allege specific facts on how Plaintiffs' communications were intercepted.  (*Id.*)  Plaintiffs respond that Agency Defendants used CRM software to intercept and divert Fan messages, allowing Chatters to take over OnlyFans accounts, to access Fans' private messages, and to impersonate Creators.  (Dkt. 142 at 33-36.)

The second clause of California Penal Code Section 631(a) requires that messages be intercepted while in transit.  *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) ("[T]he second clause only imputes liability when the defendant reads, or attempts to read, a communication that is *in transit* or *passing* over any wire, line, or cable, *or is being sent*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

*from, or received* at any place within California.") (internal quotations omitted) (emphasis in original).  "The analysis for a violation of CIPA is the same as that under the [F]ederal Wiretap Act."  *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (quoting *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014)).

The court finds that Plaintiffs fail to adequately allege their CIPA and Federal Wiretap Act claims.  Plaintiffs allege that Agency Defendants use CRM to access "the Creator's OnlyFans account and then mirror a single live session inside a multi-seat dashboard," allowing "multiple chatters read and answer DMs concurrently, without ever opening the official OnlyFans interface in a visible browser tab."  (FAC ¶ 122.)  Plaintiffs further allege that "Fan messages sent to a Creator's account are simultaneously intercepted, diverted and routed through the CRM platform, where a Chatter impersonating the Creator can then respond to the Fan through the Creator's account in order to interact with the Fan, solicit subscribers and tips, sell content from the Creator's Vault, and/or obtain Fans' requests for specific 'custom' content."  (*Id.* ¶ 124.)  Additionally, Plaintiffs allege that "the CRM tools are 'effectively cloning the Creator's inbox across several live user sessions.'"  (*Id.* ¶ 123.)  The court finds such allegations insufficient because Plaintiffs do not adequately allege that Chatters are reading these messages "in transit," but rather that Chatters are viewing the messages after they were received and mirrored from the Creator's inbox.  *See Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of CIPA claim with prejudice where defendant app received and forwarded text messages to celebrities because defendant "could have only read or attempted to read [message] after it was received . . . so the text could not have been accessed 'in transit' within the meaning of § 631(a)"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109-10 (C.D. Cal. 2023) ("Plaintiffs' allegations that the third party secretly intercepts in real time, eavesdrops upon, and stores transcripts is conclusory and does not allege specific facts as to how or when the interception takes place, which has been found to fall short of stating a plausible claim under section 631(a)." (citation modified)); *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *5 (C.D. Cal. July 29, 2024) (dismissing § 631 claim where "[p]laintiff alleges in general terms the interception occurs through software embedded in [d]efendant's website" and "does not include additional factual details establishing when the interception occurs").  Because the court finds that Plaintiffs fail to adequately allege an interception, Plaintiffs' CIPA and Federal Wiretap claims are **DISMISSED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### 5.    California Penal Code § 502 Claim

Fenix Defendants argue that Plaintiffs' Penal Code § 502 claim fails because Plaintiffs fail to allege (1) Fenix Defendants accessed Plaintiffs' data without permission by overcoming technical or code-based barriers, (2) Fenix Defendants knew any Agency Defendant was accessing chats for any creators without permission by overcoming barriers, and (3) Fenix Defendants improperly took, accessed, or used Plaintiffs' data.  (Dkt. 121 at 28-30.)  Similarly, Moxy argues that Plaintiffs' claim under California Penal Code § 502 fails because Plaintiffs allege that Moxy had permission to access their affiliated-Creators' accounts to view Plaintiffs' private messages.  (Dkt. 124 at 26-27.)

Plaintiffs respond that Fenix Defendants (1) designed a platform allowing Chatters to access Fan inboxes and messages histories without permission, (2) knowingly enabled its affiliates and contractors to access and exploit private messages, tracked by the system's metadata, (3) designed API tools and CRM integrations to allow Chatters to access user communications, and (4) knowingly allowed third parties to impersonate Creators.  (Dkt. 140-1 at 44-47; Dkt. 142 at 39-42.)

California Penal Code "Section 502 is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose."  *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).  CDAFA claims that "sound[] in fraud" are subject to Rule 9(b) pleading standards.  *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020).  "Although the CDAFA does not define the term 'without permission,' district courts have interpreted the term to require the defendant to act 'in a manner that overcomes technical or code-based barriers.'"  *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (quoting *In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011)).

The court finds that Plaintiffs fail to plausibly allege Fenix Defendants or Agency Defendants accessed Plaintiffs' data without permission by "overcom[ing] technical or code-based barriers."  *See id.*  Plaintiffs allege that Agency Defendants accessed the confidential communications by "using login credentials that were improperly shared or obtained."  (FAC ¶ 468.)  Plaintiffs further allege that Agency Defendants worked in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

partnership with their Creators, "often with full permission and authority from those Creators," "to conduct most, if not all, of the communications between the Creators and the Fans." (*Id.* ¶ 104.)  And finally, Plaintiffs allege that Fenix Defendants "knowingly facilitate[ed] or assist[ed] Agency Defendants and CRM vendors in gaining unauthorized access to the OnlyFans platform." (*Id.* ¶ 469.)  The court finds such allegations insufficient to plausibly allege that Plaintiffs' data was accessed without permission because Plaintiffs do not allege that Fenix Defendants or Agency Defendants overcame technical or code-based barriers, but rather allege that Agency Defendants had permission to access the Creators' accounts. *See Gutierrez*, 2023 WL 8939221, at *4.  Accordingly, Plaintiffs' California Penal Code § 502 is **DISMISSED**.

### 6.    Breach of Contract

Fenix Defendants argue Plaintiffs cannot assert a breach of contract claim that arises outside the integrated contract. (Dkt. 121 at 30-31.)  Plaintiffs respond that Fenix Defendants promised Plaintiffs would be able to send direct messages to the Creators they subscribed to. (Dkt. 140-1 at 27-29.)  More specifically, Plaintiffs respond Fenix Defendants represented that Plaintiffs would be able to communicate directly with Creators. (*Id.*)

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

The court finds that Plaintiffs fail to plausibly allege a breach of contract claim based on the integrated contract with Fenix Defendants.  Plaintiffs allege that, when a Fan "goes to subscribe to a Creator's page, [Fenix] Defendants promise that the Fan will be able to '[d]irect message with this' Creator." (FAC ¶ 498.)  Plaintiffs further allege Plaintiffs accepted that "promise by subscribing to that Creator, adding a payment card, and, in most cases, paying a monthly fee to OnlyFans for each Creator they subscribe to." (*Id.* ¶ 499.)  And finally, Plaintiffs allege that Fenix Defendants breached the contract by failing to provide the direct messaging with Creators. (*Id.* ¶¶ 500-02.)  However, the Terms of Service contain an integration clause that states Plaintiffs have "[n]o implied licenses or other rights are granted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

[them] in relation to any part of OnlyFans, save as expressly set out in the Terms of Service."
(Dkt. 60-1 at 21.)  Based on this record, the court is persuaded that the parties agreed to an
integrated contract and therefore Plaintiffs cannot bring contract-related claims outside the
alleged contract.  *See EPA Real Est. P'ship v. Kang*, 12 Cal. App. 4th 171, 175 (1992)
("According to this substantive rule of law, when the parties intend a written agreement to be
the final and complete expression of their understanding, that writing becomes the final contract
between the parties, which may not be contradicted by even the most persuasive evidence of
collateral agreements."); *AMC Tech., LLC v. Cisco Sys., Inc.*, 2012 WL 174949, at *6 (N.D.
Cal. Jan. 20, 2012) ("Even if Cisco's promise was clear and all the other elements of a
promissory estoppel claim met, the integration clause by its terms bars any extra-contractual
promises regarding its subject matter.").  Moreover, it appears that the Terms of Service
disclaims Fenix Defendants responsibility, stating that they "are not responsible for any
Fan/Creator Transaction" and "All Fan/Creator Transactions are contracts between Fans and
Creators."  (Dkt. 60-1 at 30); *see Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir.
2017) (affirming dismissal of breach of contract claim because the claims were barred by
defendant's terms of service which disclaimed responsibility).  Therefore, the court finds that
Plaintiffs' fail to plausibly allege a breach of contract claim.  Accordingly, Plaintiffs' breach of
contract claim is **DISMISSED**.

> **7.    Fraud and Deceit Claims**

Fenix Defendants argue Plaintiffs fail to adequately allege their fraud and deceit claims
because the Terms of Service disclosed that Creators may have an agent or third party that
assists them, and Fenix Defendants cannot control how Creators or third parties use the content
provided by Fans.  (Dkt. 121 at 31.)  Fenix Defendants further argue that Plaintiffs fail to
sufficiently allege justifiable reliance, scienter, and a measurable and specific representation by
Fenix Defendants.  (*Id.* at 31-32.)  Plaintiffs respond that they sufficiently allege fraud and
deceit with specificity.  (Dkt. 140-1 at 32-34.)

"The elements of fraud, which give rise to the tort action for deceit, are
(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of
falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and
(e) resulting damage."  *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (citation modified).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Fraud must be alleged with particularity, meaning Plaintiffs must "articulate the who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

The court finds that Plaintiffs fail to plausibly allege their fraud and deceit claims because of Fenix Defendants' disclosures. Plaintiffs allege Fenix Defendants falsely represented to Plaintiffs that if they subscribed to Creators on the OnlyFans platform, they would have "direct," "1 on 1," and "authentic" communications with those Creators. (FAC ¶ 505.) However, Fenix Defendants have explicitly disclaimed responsibility in the Terms of Service, stating Creators may "have an agent . . . or other third party" that assists them, and Fenix "cannot control" how Creators or third parties "use" content provided by Fans, "make no promises or guarantees about the accuracy or otherwise" of materials made available to Fans, and "are not responsible for reviewing or moderating Content." (Dkt. 60-1 at 15-16, 30.) Because Fenix Defendants made explicit disclosures regarding the use of third parties, its inability to control how Fan content is used, and the materials provided to Fans, the court finds that Plaintiffs fail to plausibly allege their fraud and deceit claims. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (affirming dismissal of fraud claim related to annual fees where the annual fees were within plaintiff's observation because plaintiff could discover the annual fees when he visited defendant's website and scrolled through the Terms & Disclosure); *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1152 (N.D. Cal. 2021) (dismissing fraud claim related to defendant's failure to disclose "its abilities to identify scammers, stop payments to scammers, and return funds to scam victims" where defendant's "disclaimer policy states that '[n]either Issuer nor Apple is responsible for lost or stolen [iTunes gift cards]'"). Accordingly, Plaintiffs' fraud and deceit claims are **DISMISSED**.

**8.    UCL and FAL Claims**

The court finds that Plaintiffs' UCL and FAL claims fail as they are based on the failed fraud, deceit, and CIPA theories, *see* Section III.C.4,7, *supra*. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019) ("Courts in this district have held that where the 'plaintiffs' unfair prong claims overlap entirely with their claims of fraud,' the plaintiffs' unfair prong claim cannot survive." (quoting *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Cal. Nov. 6, 2009), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011))).  Accordingly, Plaintiffs' UCL and FAL claims are **DISMISSED**.

### D.    Motion to Strike

Fenix Defendants and Agency Defendants move to strike the allegations referencing claims brought by B.L., S.M., and A.L., arguing that such allegations are covered by the forum selection clause and that equitable estoppel permits invoking the forum selection clause.  (Dkt. 123 at 4-8.)  Plaintiffs respond that the Motion to Strike is an improper vehicle to dismiss non-California plaintiffs, that Agency Defendants are not a party to Plaintiffs' contracts with Fenix Defendants, that the Terms of Service prohibit Agency Defendants from enforcing the forum selection clause against Plaintiffs, and that equitable estoppel does not apply.  (Dkt. 138 at 9-17.)

The court observes that Fenix Defendants and Agency Defendants filed the Motion to Strike, seeking to enforce the forum selection clause.  The court finds that a Motion to Strike is the improper vehicle for Defendants arguments because the allegations at issue are not "redundant, immaterial, impertinent, or scandalous matter."  *See* Fed. R. Civ. P. 12(f).  As an initial matter, the court did not find that the Forum Selection clause applied to Agency Defendants in the court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for Forum Non Conveniens.  (*See generally* Dkt. 117 ("FNC Order").)  In the FNC Order, the court only dismissed B.L., S.M., and A.L.'s claims against Fenix Defendants.  (*Id.* at 18.)  However, the court will address the arguments in the Motion to Strike along with the Motions to Dismiss Plaintiffs' claims based on the forum selection clause as the motions make similar arguments, (*see, e.g.*, Dkt. 124 at 31-32; Dkt. 128 at 7-9; Dkt. 129 at 7-9).  Accordingly, the Motion to Strike is **DENIED** to the extent it seeks to strike allegations regarding the non-California Plaintiffs.

The court is not persuaded that Agency Defendants entered into an agreement under the Terms of Service with Plaintiffs such that Plaintiffs' claims against Agency Defendants are subject to the forum selection clause.  The Terms of Service provides the following: "These Terms of Use for all Users govern your use of OnlyFans and your agreement with us."  (Dkt. 60-1 at 10.)  The Terms of Service further provides that "references to 'we', 'our', 'us' are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

references to Fenix International Limited, the operator of OnlyFans." (*Id.*) "'User' means any
user of OnlyFans, whether a Creator or a Fan or both." (*Id.* at 11.) Critically, the Terms of
Service does not include any agreement between Plaintiffs and Agency Defendants, (*see
generally id.*), and the Terms of Service provides that "[y]our agreement with us does not give
rights to any third parties," (*id.* at 21). Moreover, Fenix Defendants and Agency Defendants
fail to provide any authority to support their contract interpretation. (*See generally* Dkts. 123,
166.)

However, the court finds that dismissing the non-California Plaintiffs is warranted here.
Even where a party did not sign a contract, "the forum selection clause within that contract can
apply to" that non-signatory where its "alleged conduct is so closely related to the contractual
relationship." *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at \*5 (C.D.
Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th
Cir. 1988)); *see also Products & Ventures International v. Axus Stationary (Shanghai) Ltd.*,
2017 WL 201703, at \*7 (N.D. Cal. Jan. 18, 2017) (quoting *Holland America Line Inc. v.
Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)).[5] In the FNC Order, the court
found "the broad scope of the forum selection covers Plaintiffs' claims," which included the
non-California Plaintiffs' claims. (FNC Order at 7.) Based on the allegations, the court
concluded that "Plaintiffs' claims are logically or causally connected to the Terms of Service,
and thus the claims are covered by the forum selection clause." (*Id.*) Thereafter, the court
found the forum selection clause was valid and enforceable as to the non-California Plaintiffs'
claims and dismissed their claims against Fenix Defendants. (*Id.* at 16.) Here, Plaintiffs allege
that Fenix Defendants and Agency Defendants engaged in a RICO conspiracy to defraud
Plaintiffs into believing they were communicating with Creators, when in reality they were

---

[5] The court observes that the parties dispute the applicability of *Franklin v. Cmty. Reg'l Med.
Ctr.*, 998 F.3d 867 (9th Cir. 2021) to these facts. There, the Ninth Circuit stated that California
"allows a nonsignatory to invoke arbitration under the doctrine of equitable estoppel even when
a signatory 'attempts to avoid arbitration by suing nonsignatory defendants for claims that are
based on the same facts and are inherently inseparable from arbitrable claims against signatory
defendants.'" *Id.* at 870-71. Because the court relies on *Holland* and *Manetti-Farrow*, and it
appears that *Franklin* concerns an arbitration agreement rather than a forum selection clause,
the court declines to address the parties' arguments regarding *Franklin*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                                Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

communicating with Chatters.  (FAC ¶¶ 439-46.)  For example, Plaintiffs allege that Fenix Defendants "develop[ed] and implement[ed] [] policies that ostensibly prohibited fraudulent activity but were intentionally not enforced."  (*Id.* ¶ 441a.)  Additionally, Plaintiffs allege that Agency Defendants would create and sell digital content, knowing that Fenix Defendants would not take any action to stop or penalize such behavior.  (*Id.* ¶ 441d.)  Moreover, Plaintiffs allege that "Defendants' actions and failures to act are systemic and uniform across the class, as are the terms of service and other contract documents."  (*Id.* ¶ 335.)  Plaintiffs further allege they would not have suffered injuries and damages "had Defendants disclosed and/or taken action on the Chatter Scams and concomitant privacy and terms of service violations."  (*Id.* ¶ 332.)  And although Plaintiffs and Agency Defendants did not agree amongst each other regarding the Terms of Service, Agency Defendants did agree to the Terms of Service, operating on behalf of Creators, and therefore were aware of its provisions.  The court finds dismissal of the non-California Plaintiffs is warranted because Plaintiffs allege that Agency Defendants are engaged in a RICO conspiracy where the Terms of Service would not be enforced against them, causing the injuries that Plaintiffs allegedly suffered, and Agency Defendants were aware of the Terms of Service while operating on behalf of Creators.  *See Manetti-Farrow*, 858 F.2d at 514 n.5; *Holland*, 485 F.3d at 456; (FNC Order at 7).  Accordingly, the court **DISMISSES** non-California Plaintiffs B.L., S.M., and A.L.

E.    **Summary and Leave to Amend**

In sum, the court finds that Plaintiffs fail to adequately allege that the court may exercise (1) general jurisdiction, (2) specific jurisdiction, (3) jurisdiction under 18 U.S.C. § 1965(b), and (4) jurisdiction under 18 U.S.C. § 1965(d) over Fenix Defendants, and (5) is not persuaded that the court should transfer Plaintiffs' claims against Fenix Internet to Delaware.  The court further finds that Plaintiffs fail to adequately allege that the Central District of California is the proper venue for R.M. because Plaintiffs fail to allege events or omissions relevant to R.M.'s claims occurring in this District, R.M. does not reside in this District, and Plaintiffs allege harm suffered by R.M. occurring outside this District.  The court also finds that Plaintiffs' claims are not barred to the extent they rely on Fenix Defendants' own representations about promising authentic relationship between Fans and Creators under Section 230.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:24-cv-01655-FWS-SSC                        Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Regarding the sufficiency of the alleged claims, the court finds that Plaintiffs fail to adequately allege a RICO claim, particularly a RICO enterprise, coordination, a common purpose, or wire fraud with particularity.  Separately, the court finds that Plaintiffs adequately allege Fenix Defendants and Agency Defendants are video tape service providers and that Plaintiffs are consumers under the VPPA.  However, the court finds that Plaintiffs fail to adequately allege the information disclosed was PII under the VPPA.  The court finds that Plaintiffs fail to adequately allege their CIPA and Federal Wiretap Act claims, particularly failing to adequately allege an interception.  The court finds that Plaintiffs fail to plausibly allege Fenix Defendants or Agency Defendants accessed Plaintiffs' data without permission by overcoming technical or code-based barriers.  The court further finds that Plaintiffs fail to plausibly allege a breach of contract claim based on the integrated contract with Fenix Defendants.  The court also finds that Plaintiffs fail to plausibly allege their fraud and deceit claims because of Fenix Defendants' disclosures.  Additionally, the court finds that Plaintiffs' UCL and FAL claims fail as they are based on the failed fraud, deceit, and CIPA theories.

Regarding the Motion to Strike, the court finds that a Motion to Strike is the improper vehicle for Defendants' arguments, but the court considers the arguments in conjunction with the relevant motions to dismiss.  The court is not persuaded that Agency Defendants entered into an agreement under the Terms of Service with Plaintiffs.  However, the court finds that dismissing the non-California Plaintiffs is warranted here because Plaintiffs' claims are closely related to the Terms of Service, as it pertains to Agency Defendants.

However, because the court cannot determine at this stage that granting leave to amend would be futile, the court will grant Plaintiffs leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'") (quoting *Balistreri*, 901 F.2d at 701); *Ctr. for Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear . . . that the complaint could not be saved by any amendment.'") (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022)).  Accordingly, the court **GRANTS LEAVE TO AMEND**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.: 8:24-cv-01655-FWS-SSC                    Date: December 12, 2025
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

## IV.    Disposition

For the reasons stated above, the court **GRANTS** the Motions to Dismiss and **GRANTS IN PART AND DENIES IN PART** the Motion to Strike.  Fenix Defendants and R.M. are **DISMISSED** but Plaintiffs are **GRANTED LEAVE TO AMEND** to attempt to cure, respectively, the jurisdictional and venue deficiencies.  Plaintiffs' claims are **DISMISSED WITH LEAVE TO AMEND**.  The court **DENIES** the Motion to Strike to the extent it seeks to strike allegations regarding non-California Plaintiffs.  However, the court **GRANTS** the Motion to Strike as to dismissing the non-California Plaintiffs but **GRANTS LEAVE TO AMEND**.

If Plaintiffs believe they can cure the deficiencies described in this Order, Plaintiffs shall file any amended complaint on or before **January 2, 2026**.  Failure to file an amended complaint on or before the deadline set by the court will result in the dismissal of this action with prejudice without further notice for failure to prosecute and/or comply with a court order. *See* Fed. R. Civ. P. 41(b); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Rule 41(b) permits dismissal for failure of the plaintiff to prosecute or to comply with any order of court."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (courts may "act sua sponte to dismiss a suit for failure to prosecute") (citation modified); *Link v. Wabash R.R.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of [their] failure to prosecute cannot seriously be doubted."); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) ("[C]ourts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances."); *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002) (affirming *sua sponte* dismissal with prejudice "for failure to prosecute and for failure to comply with a court order"); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (stating "[d]istrict courts have inherent power to control their dockets" and "[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal").