JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC, <br><br> Defendants. | CASE NO.: 8:24-cv-01655-FWS-SSC <br><br> **(1) SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE;** <br><br> **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;** <br><br> <u>**FILED UNDER SEPARATE COVER:**</u> <br><br> **(3) DECLARATION OF RAZA RASHEED; and** <br><br> **(4) [PROPOSED] ORDER.** <br><br> Judge:   Hon. Fred W. Slaughter <br> Courtroom:   10D <br> Date:   March 19, 2026 <br> Time:   10 a.m. |

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026 at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Specially Appearing Defendants Fenix International Limited ("FIL") and Fenix Internet LLC (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion to dismiss the Second Amended Class Action Complaint ("2AC") filed by Plaintiffs N.Z. and R.M. (collectively, "Plaintiffs") for lack of standing, personal jurisdiction and failure to state a claim, as well as improper venue as to Plaintiff R.M. ("Motion").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (3), and (6), and is based on this Notice, the Memorandum of Points and Authorities that follows, the files and records in this action, the arguments of counsel, and any other matters the Court may properly consider. The grounds for this motion are as follows:

<u>**Article III Standing**</u>

- Plaintiffs do not allege that they were personally harmed by the purported racketeering activity described in Counts IV, VI, and VIII of the 2AC, and thus lack Article III standing to pursue those claims.

<u>**Personal Jurisdiction**</u>

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(b) because Plaintiffs do not allege a multidistrict RICO conspiracy involving all Defendants;

- The Court does not have personal jurisdiction over Fenix under 18 U.S.C. §1965(d) because that provision is not a means for a court to acquire jurisdiction;

- The Court does not have general jurisdiction over Fenix because they are not incorporated or headquartered in California, and do not otherwise have such

i

continuous and systematic contacts that they are essentially at home in California;

- The Court does not have specific jurisdiction over Fenix because they do not have sufficient minimum contacts with California, and the Plaintiffs' claims do not arise out of or relate to Fenix's connections with California.

**Failure to State a Claim**

- Section 230: 47 U.S.C. §230 bars Plaintiffs' claims because they are based on Fenix's role as the publisher of the OnlyFans website;

- Racketeer Influenced Corrupt Organizations Act ("RICO"): Plaintiffs fail to state a RICO or RICO conspiracy claim because they fail to allege the existence of a racketeering enterprise, do not plead predicate acts of racketeering, and do not plead that the Defendants formed a conspiracy to violate RICO or commit wire fraud;

- Video Privacy Protection Act ("VPPA"): Plaintiffs fail to state a VPPA claim because they fail to allege that Fenix knowingly disclosed their personal identifiable information to third parties;

- Breach of Contract, Fraud, Deceit, Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"): Plaintiffs' remaining California state law claims are each barred by OnlyFans' Terms of Service, which fatally undermine Plaintiffs' theories that Fenix misled them into purchasing chat services offered by OnlyFans Creators or had a duty to prevent other people from misleading Plaintiffs about those services.

**Improper Venue as to Plaintiff R.M.**

- Plaintiff R.M. does not reside in this District, claims he was defrauded by agency representatives located in other countries, and does not allege that any personal harms allegedly suffered by him or any material conduct by *any* Defendant (let alone Fenix) occurred in this District. Thus, his claims must be dismissed for improper venue.

ii

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 9, 2026. *See* Declaration of Raza Rasheed.

DATED: January 23, 2026     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*/s/ Jason D. Russell*_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................i

TABLE OF AUTHORITIES ....................................................................................v

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT ............................................................................................................2

I.    N.Z. AND R.M. LACK ARTICLE III STANDING TO ASSERT THEIR RICO CLAIMS SPECIFIC TO BOSS BADDIES/SIREN (COUNT IV), CONTENT X (COUNT VI), AND VERGE (COUNT VIII) ......................................................................................................2

II.   PLAINTIFF R.M. STILL FAILS TO PLEAD VENUE .........................3

III.  THE COURT STILL LACKS PERSONAL JURISDICTION OVER FENIX ......................................................................................................4

    A.   The Court Still Does Not Have Jurisdiction Under RICO ...........4

    B.   Due Process Still Prohibits Exercising Personal Jurisdiction Over Fenix ....................................................................................5

        1.   The Court Still Does Not Have General Jurisdiction ..........5

        2.   The Court Still Does Not Have Specific Jurisdiction..........6

IV.   PLAINTIFFS STILL FAIL TO STATE A CLAIM AGAINST FENIX.8

    A.   Section 230 Bars Plaintiffs' Amended Claims ............................8

    B.   Plaintiffs Still Fail to Plead RICO or RICO Conspiracy Claims.10

        1.   Plaintiffs Fail to Plead the Existence of a Racketeering Enterprise ......................................................................11

        2.   Plaintiffs Fail to Plead Conduct Furthering the Enterprise12

        3.   Plaintiffs Failed to Plead a RICO Conspiracy ...................14

    C.   Plaintiffs Still Fail to Plead a VPPA Claim ...............................14

    D.   Plaintiffs Still Fail to Plead Any Contract-Based Claims............16

    E.   Plaintiffs Still Fail to Plead Any Fraud or Deceit Claims ...........18

    F.   Plaintiffs Still Fail to Plead UCL or FAL Claims.......................20

CONCLUSION .......................................................................................................21

CERTIFICATE OF COMPLIANCE .......................................................................22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Balsam v. Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) ........................................................................... 18

*Banks v. ACS Education*,
638 F.App'x 587 (9th Cir. 2016) ....................................................................... 13

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................................... 17

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17-CV-04570 (LAK) (KHP),
2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ................................................... 15

*In re Bozic*,
888 F.3d 1048 (9th Cir. 2018) ............................................................................. 3

*Burke v. Olden*,
No. 8:22-cv-01666-FWS-JDE,
2023 WL 4157456 (C.D. Cal. May 24, 2023) ..................................................... 3

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
788 F.2d 535 (9th Cir. 1986) ......................................................................... 4, 5

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) ....................................................................... 8, 10

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ............................................................................. 13

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.*,
173 F.3d 725 (9th Cir. 1999) ............................................................................. 20

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................. 5

*Doe 1 v. Fenix International Ltd.*,
No. 24-cv-03713-CRB,
2024 WL 5505192 (N.D. Cal. Nov. 22, 2024) ..................................................... 6

v

*Doe 1 v. Twitter, Inc.*,
 148 F.4th 635 (9th Cir. 2025) ................................................................................ 8, 10

*Doe v. Grindr Inc.*,
 128 F.4th 1148 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 319 (2025) ................. 9, 10

*Dyroff v. Ultimate Software Group, Inc.*,
 934 F.3d 1093 (9th Cir. 2019) ................................................................................ 10

*Ebeid v. Facebook, Inc.*,
 No. 18-cv-07030-PJH,
 2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................ 18

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ............................................................................ 13, 14

*Estate of Bride v. Yolo Technologies, Inc.*,
 112 F.4th 1168 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1435 (2025) ..................... 8

*GECCMC 2005-C1 Plummer Street Office Ltd. Partnership v. JPMorgan Chase Bank, National Ass'n*,
 671 F.3d 1027 (9th Cir. 2012) ............................................................................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ................................................................................................. 5

*Henderson v. Gruma Corp.*,
 No. CV 10–04173 AHM (AJWx),
 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...................................................... 20

*Hodes v. Van's International Foods*,
 No. CV 09–01530 RGK (FFMx)
 2009 WL 10674101 (C.D. Cal. June 23, 2009) .................................................... 20

*In re Hulu Privacy Litigation*,
 86 F.Supp.3d 1090 (N.D. Cal. 2015) .................................................................... 15

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .............................................................................. 19

*Lewis v. Google LLC*,
 461 F.Supp.3d 938 (N.D. Cal. 2020),
 *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ............................................................... 18

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ................................................................... 5

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) .............................................................. 1, 2, 3

*Mercado v. Audi of America, LLC*,
    No. ED CV18-02388 JAK (SPx),
    2019 WL 9051000 (C.D. Cal. Nov. 26, 2019) ........................................... 3

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ................................................................. 15

*Moody v. Hot Topic, Inc.*,
    No. EDCV 23-0447 JGB (SPx),
    2023 WL 9511159 (C.D. Cal. Nov. 15, 2023) ......................................... 19

*Morton v. Twitter, Inc.*,
    No. CV 20-10434-GW-JEMx,
    2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) .......................................... 20

*Muto v. Fenix International Ltd.*,
    No. 5:22-cv-02164-SSS-DTBx,
    2024 WL 2148734 (C.D. Cal. May 2, 2024) .............................................. 6

*Paleo Certified, Inc. v. TBE Beverages, LLC*,
    No. 23-CV-2296 TWR (MSB),
    2023 WL 10407132 (S.D. Cal. Dec. 20, 2023) ......................................... 4

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................. 5, 6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................... 3

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*,
    933 F.Supp. 918 (C.D. Cal. 1996)........................................................... 20

*Therrien v. Hearst Television, Inc.*,
    No. 23-10998-RGS, 2025 WL 1208535 (D. Mass. Apr. 25, 2025),
    *appeal filed*, No. 25-01487 (1st Cir. May 21, 2025)............................... 16

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, &*
    *Products Liability Litigation*,
    826 F.Supp.2d 1180 (C.D. Cal. 2011) ................................................................................ 11

*United States v. Brooklier*,
    685 F.2d 1208 (9th Cir. 1982) .................................................................................... 11, 14

*Wasjutin v. Countrywide Bank N.A.*,
    No. CV 15–09401–MWF–JC,
    2016 WL 7443219 (C.D. Cal. June 8, 2016),
    *aff'd*, 723 F. App'x 513 (9th Cir. 2018) .................................................................. 18

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ......................................................................................... 6

*Yamashita v. LG Chemical, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ................................................................................... 2, 7, 8

## STATUTES

18 U.S.C. §1961 ..................................................................................................................... 13

18 U.S.C. §1965 ................................................................................................................... 4, 5

18 U.S.C. §2710 ..................................................................................................................... 14

28 U.S.C. §1391 ....................................................................................................................... 3

47 U.S.C. §230 ................................................................................................................. passim

## RULES

Federal Rule of Civil Procedure 8 ........................................................................................... 1

## PRELIMINARY STATEMENT

On December 12, 2025, the Court dismissed all of N.Z.'s and R.M.'s[1] claims against Fenix for lack of personal jurisdiction, failure to state a claim, and as to R.M., improper venue. (ECF 209, "Order.") While Plaintiffs added 130 pages to their Second Amended Complaint ("2AC"), the revisions were non-substantive and calculated to create the false impression that Plaintiffs made substantial changes without actually correcting the numerous defects the Court identified in its Order. Instead, Plaintiffs added: (1) more than 40 pages cataloguing every possible contact between Fenix and California that they could find, no matter how tenuous and unrelated to the claims asserted in this suit; and (2) another 80+ pages splitting their two RICO claims into nine and splitting one breach of contract claim into six, thereby duplicating their charging allegations. Plaintiffs' approach offends the Rules of Civil Procedure, which require pleadings to contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The Court should again dismiss Plaintiffs' claims for four core reasons.

*First*, the Court lacks subject matter jurisdiction over three of Plaintiffs' new claims. Plaintiffs' 2AC pleads seven claims alleging that Fenix entered into separate racketeering enterprises with seven Agency Defendants. But N.Z. and R.M. do not allege that they subscribed to Creators whose OnlyFans pages were managed by three of the Agency Defendants—Boss Baddies LLC, Content X, Inc., and Verge Agency, Inc. Accordingly, Plaintiffs do not and cannot allege that they were injured by these three purported racketeering enterprises, and thus lack Article III standing to assert Counts IV, VI, and VIII of their 2AC. *See Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022).

*Second*, the Court lacks personal jurisdiction over Fenix. The Court's Order previously found that nothing about Fenix's operation of the OnlyFans website gives rise to jurisdiction in California. (Order, PageID#3449-50.) In response, Plaintiffs added allegations claiming Fenix: hired a California resident to help drive interest in OnlyFans

---

[1] N.Z. and R.M. are the only two Plaintiffs still asserting claims against Fenix. (2AC ¶ 25.) Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material.

among adult entertainers, once had an executive who worked remotely from her home in California for a period of time, utilizes a handful of California-based vendors and contractors, and that some content for OFTV—a separate service—is produced and recorded in California. *Infra* pp. 6-8. But *none* of Plaintiffs' claims arise out of or relate to any of these contacts. Accordingly, the additional allegations do not change the Court's well-reasoned conclusion that this suit does not belong in California. *See Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023).

*Third*, Plaintiffs' claims are not plausibly pled. All of Plaintiffs' reworked claims seek to hold Fenix liable for facilitating communications among OnlyFans users or failing to monitor user interactions, which means the claims are barred by §230. Plaintiffs' RICO claims are doomed by Plaintiffs' inability to plead coordination between Fenix and the Agency Defendants, whether individually or taken together. Plaintiffs' contract claims are doomed by the OnlyFans Terms of Service's integration clause. And Plaintiffs' fraud-based claims are doomed by Fenix's disclosure and disclaimers in the Terms that encompass (and preclude) the very conduct about which Plaintiffs complain.

*Finally*, Plaintiff R.M. fails to plead a basis for venue in this District, since he resides in the Eastern District of California and still fails to assert any non-conclusory allegations that any significant conduct occurred in this District.

Plaintiffs have now made three attempts to adequately plead their claims. Although they have made the 2AC painfully verbose, Plaintiffs are no closer to stating a claim now than when this action started. Three failed attempts to plead a claim prove only that this case is meritless and should be dismissed. The Court should dismiss the Second Amended Complaint without leave to amend.

## ARGUMENT

**I.    N.Z. AND R.M. LACK ARTICLE III STANDING TO ASSERT THEIR RICO CLAIMS SPECIFIC TO BOSS BADDIES/SIREN (COUNT IV), CONTENT X (COUNT VI), AND VERGE (COUNT VIII)**

"To have standing to sue a particular defendant, a plaintiff must have experienced an injury in fact that is fairly traceable to the challenged action of that defendant." *Martinez*,

2

46 F.4th at 970. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[N]amed plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members." *Martinez*, 46 F.4th at 970. "Moreover, at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *Mercado v. Audi of Am., LLC*, 2019 WL 9051000, at *14 (C.D. Cal. Nov. 26, 2019).

Here, N.Z. and R.M. allege that Fenix entered into separate RICO conspiracies with Boss Baddies/Siren (Count IV), Content X (Count VI), and Verge (Count VIII) to misrepresent that Fans would always interact with Creators managed by those agencies, when the agencies purportedly outsourced certain Creator interactions to third parties. (2AC¶¶809-82, 958-1032, 1108-84.) But N.Z. and R.M. do *not* allege that they subscribed to any Creators managed by Boss Baddies/Siren, Content X, or Verge. (*See* 2AC¶¶452, 467 (listing the Creators N.Z. and R.M. subscribed to and which agencies represented those Creators).) N.Z. and R.M. could not have been injured by supposed RICO conspiracies that did not involve the Creators to whom they subscribed. Accordingly, they lack standing to bring Counts IV, VI, and VIII and those claims should be dismissed for lack of subject matter jurisdiction. *See Martinez*, 46 F.4th at 970.

## II.    **PLAINTIFF R.M. STILL FAILS TO PLEAD VENUE**

The Court should dismiss Plaintiff R.M.'s claims for improper venue. In a putative class action, venue must be proper as to each named plaintiff. *See In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018). Plaintiffs assert venue is proper pursuant to 28 U.S.C. §1391(b)(2) because "a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred" in this District. (2AC¶24.) To invoke this transactional theory of venue, R.M. must show "significant events or omissions material to [his] claim… occurred in the district in question." *Burke v. Olden*, 2023 WL 4157456, at *3 (C.D. Cal. May 24, 2023).

The Court previously found that R.M. failed to plead venue because he "fail[ed] to allege events or omissions relevant to [his] claims occurring in this District, [he] does not

3

reside in this District, and Plaintiffs allege harm suffered by R.M. occurring outside this District." (Order, PageID#3453-54.) To evade this finding, R.M. added allegations claiming on "information and belief" that Moxy and Unruly—the agencies managing the Creators to whom he subscribed—"devised and implemented" their third-party chat management services, and "control[led] each Represented Creator's content from [their] headquarters" in this District. (2AC¶¶372-73, 408-09.) However, Plaintiffs' conclusory new venue allegations are contradicted by more specific allegations elsewhere in the 2AC that the third-party chat managers worked "from countries like the Philippines and Venezuela" using "memo[s]" and "script[s]" tailored to each Creator, rather than under direct agency control and supervision. (2AC¶¶4, 267-79.) Accordingly, R.M. continues to fail to plead "any specific, non-conclusory allegations showing that a substantial part of the events or omissions giving rise to the claim occurred in this District," and his claims should be dismissed for improper venue. *See Paleo Certified, Inc. v. TBE Beverages, LLC*, 2023 WL 10407132, at *1 (S.D. Cal. Dec. 20, 2023) (rejecting conclusory venue allegations where other allegations made clear that events material to the claim occurred outside of the District).

## III. THE COURT STILL LACKS PERSONAL JURISDICTION OVER FENIX

### A. The Court Still Does Not Have Jurisdiction Under RICO

RICO contains special provisions for service of process in civil actions. Plaintiffs allege this "Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§1965(b) and (d)." (2AC¶23.) Not so.

*First*, as the Court previously explained, to invoke §1965(b)'s nationwide service of process provision, Plaintiffs must plead "facts" that "show a *single nationwide* RICO conspiracy exists." (Order, PageID#3451 (emphasis in original)); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). The Court previously held that "Plaintiffs fail[ed] to adequately allege a nationwide RICO Conspiracy" (Order, PageID#3451), and the 2AC does not fix this defect. Although Plaintiffs allege individual Creators worked with various agencies to manage their interactions with Fans, they do not

4

allege *Fenix* coordinated with the Creators or Agency Defendants, nor that any Creator or Agency Defendant knew about or coordinated with any other Creator or Agency Defendant, to carry out the alleged conspiracy. At best, Plaintiffs allege several entirely *separate* acts, which they claim misled Fans, rather than a single nationwide conspiracy encompassing all named Defendants. Accordingly, Plaintiffs cannot invoke §1965(b) to obtain personal jurisdiction over Fenix. *See, e.g.*, *Butcher's Union*, 788 F.2d at 539.

**Second**, the Court previously held "that 18 U.S.C. § 1965(d) does not provide a vehicle for the court to exercise personal jurisdiction." (Order, PageID#3452.) Accordingly, Plaintiffs' reliance on §1965(d) is misplaced and Plaintiffs offer no basis for reconsideration of the Court's prior adverse determination.

**B.    Due Process Still Prohibits Exercising Personal Jurisdiction Over Fenix**

Plaintiffs also cannot meet their burden to establish personal jurisdiction over Fenix under a traditional due process analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

**1.    The Court Still Does Not Have General Jurisdiction**

General jurisdiction exists when a party's contacts with the forum state are "so continuous and systematic as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is typically "at home" only within "[its] place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Court previously determined that Fenix are not subject to general jurisdiction in California (Order, PageID#3447-48), and the 2AC pleads nothing to alter that determination.

FIL is incorporated and registered in England and Wales, with its principal place of business in London. (2AC¶41.) Fenix Internet is organized and headquartered in Delaware. (ECF60-1, ¶7.) Neither entity has offices, staff, or other physical presence in California, or a registered agent for service of process here. (*Id*. ¶10.) Thus, as the Court determined, Fenix are not "at home" in California. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (rejecting general jurisdiction where these factors were absent).

5

## 2. **The Court Still Does Not Have Specific Jurisdiction**

Plaintiffs cannot demonstrate Fenix's "suit-related conduct [creates] a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017). For specific jurisdiction: (1) the defendant must "purposefully direct[] [his] activities" toward the forum or "purposefully avail[] [himself] of the benefits afforded by the forum's laws"; (2) the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction [must] comport[] with fair play and substantial justice, *i.e.*, it [must be] reasonable." *Id.* at 1023. Plaintiffs "bear[] the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802.

Echoing the conclusions reached by Judge Sykes and Judge Breyer in other OnlyFans-related cases, the Court previously determined that nothing about OnlyFans' "platform design, Creator onboarding, identity verification," chat monetization "infrastructure," "revenue and user base from California," and "promotional activities focused on California such as California-based Creators promotion, appearing at public events in California, and programs that are filmed, set, or produced in California" were sufficient to give rise to specific jurisdiction in California. (Order, PageID#3449-50); *see also Muto v. Fenix Int'l Ltd.*, 2024 WL 2148734 at *4 (C.D. Cal. May 2, 2024); *Doe 1 v. Fenix Int'l Ltd.*, 2024 WL 5505192, at *6 (N.D. Cal. Nov. 22, 2024).

In response to the Court's Order, Plaintiffs added any Fenix connection to California that they could find to their already-bloated 2AC, no matter how tenuous or unrelated to this lawsuit. Specifically, Plaintiffs added allegations that:

- Fenix hired a "webmaster and videographer from California" before January 2019 to help attract adult entertainers to OnlyFans (2AC¶¶67-93);

- Ami Gan—an independent contractor who served as Fenix's Chief Marketing Officer from September 2020 to December 2021 before becoming its CEO from December 2021 to July 2023—allegedly worked for Fenix remotely from Los Angeles before moving to Miami (2AC¶¶94-99);

- Fenix Internet utilized a handful of independent contractors who worked from

6

California, worked with a California-based accountant, and issued IRS Form 1099s to Creators living in California (2AC¶¶108-11);

- Fenix maintains an account at an online bank that lists a California business address, and contracts with widely-used Internet services vendors that are based in California (2AC¶¶119-24); and

- Some content for the OFTV platform—a separate service and website—is filmed in California (2AC¶¶139-200).

None of these allegations changes the jurisdictional calculus. As the Court previously explained, to allege specific jurisdiction, the plaintiffs' "claim must be one which arises out of or relates to the defendant's forum-related activities." (Order, PageID#3448.) The Ninth Circuit has "long understood that for an injury to arise out of a defendant's forum contacts" there must be "but for causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action." *Yamashita*, 62 F.4th at 504. "[R]elatedness" also "requires a close connection between contacts and injury." *Id.* at 506. Plaintiffs must allege that Fenix's forum contacts "cause harm that [Fenix] know will be suffered in the forum state." (Order, PageID#3450.)

None of Plaintiffs' claims arise out of or relate to the California contacts Plaintiffs added to the 2AC. Plaintiffs allege that Fenix violated various duties to Plaintiffs by telling them they could have "authentic" chats with Creators, while purportedly knowing some Creators were using third parties to manage their Fan interactions and failing to monitor and stop that activity. (2AC¶¶263-339.) The Court has already found that Plaintiffs' claims do not arise out of or relate to "[OF]TV programs filmed, set, or produced in California." (Order, PageID#3450.) And the same is true of Plaintiffs' other allegations. Nothing in Plaintiffs' claims arises from or has a close connection with (1) Fenix's alleged use of a California resident in the late 2010s to increase OnlyFans' popularity with adult entertainers; (2) a Fenix executive allegedly working remotely from Southern California for a few years before relocating to Miami; (3) the handful of independent contractors and vendors associated with Fenix Internet's payment processing activities; or (4) Fenix's use

7

of an online bank and other vendors that maintain California addresses. Accordingly, *none* of Plaintiffs' new allegations alter the Court's prior conclusion that Fenix are not subject to specific jurisdiction in California. *See Yamashita*, 62 F.4th at 506-07.

## IV.   PLAINTIFFS STILL FAIL TO STATE A CLAIM AGAINST FENIX

### A.   Section 230 Bars Plaintiffs' Amended Claims

As the Court recognized, 47 U.S.C. §230 immunizes "(1) a provider… of an interactive computer service (2) whom a plaintiff seeks to treat… as a publisher or speaker (3) of information provided by another information content provider," and "[w]hen a plaintiff cannot allege enough facts to overcome [§]230 immunity, [his] claims should be dismissed." (Order, PageID#3454.) The Court further found "Plaintiffs' claims are not barred to the extent they rely on Fenix['s] own representations about promising authentic relationship[s] between Fans and Creators" but dismissed claims "seek[ing] to hold Fenix… liable for facilitating communication between Plaintiffs and Agency Defendants." (*Id*., PageID#3455.)

*Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024), held that a court must first consider (1) whether the "right" a plaintiff seeks to enforce "springs from something separate from the defendant's status as a publisher, such as from an agreement," and then (2) whether the "duty" owed by the defendant "obliges [it] to monitor third-party content— or else face liability," which "is barred by §230(c)(1)." *Id*. at 742. "A claim that obliges the defendant to monitor third-party content to avoid liability *also* treats the defendant as a publisher." *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 640 (9th Cir. 2025).

The *Twitter* court held plaintiffs' claims alleging Twitter "monetize[d]" unlawful content were barred by §230 because "the only way for Twitter to avoid" liability "would be to remove third-party posts—a quintessential publishing activity" and "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune." *Id*. at 643; *see also Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (affirming this Court's dismissal of product liability claims arising from users' bullying posts because plaintiffs were "essentially faulting [website]

8

for not moderating content in some way, whether through *deletion, change, or suppression*"). For these reasons, Plaintiffs' amended claims do not survive §230.

*First*, Plaintiffs' minimally-revised VPPA claim still seeks to hold Fenix liable for allegedly disclosing PII "[t]hrough its platform, which *facilitates the communication of information between Fan and Creator accounts*." (*Compare* 2AC¶1213 *with* FAC¶461.) Plaintiffs' VPPA claim is barred by §230 and this Court's Order. (Order, PageID#3454-55.) Plaintiffs' amended RICO claims are similarly barred because each is premised on Fenix's alleged "active[] facilitat[ion]" of agencies' use of third parties to communicate with users on the platform, and failure to "actively police the platform's network activity." (2AC¶¶585, 677-79, 751-53, 825-27, 899-901, 974-76, 1049-51, 1124-26, 1186.)

*Second*, Plaintiffs assert Fenix breached a contractual "promise" that "[w]e will use reasonable care and skill in providing OnlyFans" by allegedly permitting agencies to use third parties "to impersonate Creators," and "collect[ing] data sufficient to identify"—but "fail[ing] to act on this information" by "exercis[ing] their contractual enforcement powers" against—agency-operated accounts. (2AC¶¶1222-23.) Plaintiffs also claim they are third-party beneficiaries of Fenix's contracts with Creators, which were allegedly breached by Fenix "permitting shared credentials" which allegedly "facilitat[ed]" the Creators' use of third parties to message Fans. (*Id*. ¶1270.) These claims "necessarily implicate [Fenix's] role as a publisher of third-party content" and facilitator of communications between users and agencies, and "require [Fenix] to monitor third-party content" to avoid liability. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025). That is, "the only way for [Fenix] to avoid" liability "is by monitoring Plaintiffs' alleged communications with Creators to determine if any third parties are being used and then "deciding whether to exclude material that [the Creators] seek to post online"—conduct which "is perforce immune" under §230. *Twitter*, 148 F.4th at 643.[2]

---

[2] Plaintiff further asserts Fenix "provided tools specifically intended *to facilitate*" Creator use of third parties (2AC¶¶1223), but those allegations can also be disregarded as "features and functions of [OnlyFans] that were meant to facilitate the communication and content of others" which are "content neutral on their own." *Grindr*, 128 F.4th at 1153; *see also Dyroff v. Ultimate Software Group, Inc.,* 934 F.3d 1093, 1098-99 (9th Cir. 2019) (same).

***Third***, to the extent Plaintiffs' amended RICO, contract, and misrepresentation claims are based on allegations that Fenix represented that users can "'direct message'…, chat '1 on 1'…, and build 'genuine' and 'authentic' connections" with Creators, they are also precluded by §230. (2AC¶¶580, 673, 747, 821, 895, 970, 1045, 1120, 1231, 1241, 1252, 1257, 1270, 1272-73, 1292, 1300, 1319, 1323.) That Fenix allegedly made these representations, and not third parties, does not end the §230 analysis. Rather, under *Calise* and *Twitter*, the Court must consider whether these claims "oblige[] [Fenix] to monitor third-party content to avoid liability"—if they do, Fenix must be "treat[ed]… as a publisher." *Twitter*, 148 F.4th at 640.

The *Calise* court held §230 barred fraud-based claims asserting Meta was "(at least constructively) aware that certain parties are profiting by posting fraudulent third-party ads" on Facebook because "to avoid liability here, Meta… would need *to actively vet and evaluate third party ads*." 103 F.4th at 736-37, 743-44. Here, to avoid liability for claims based on representations that Plaintiffs would be communicating directly with Creators, Fenix would be obligated to "actively vet and evaluate" every single Creator message to Fans for the purpose of ensuring that Fenix's alleged representations regarding that content were true. *Id*. at 744. Plaintiffs' claims necessarily *require* Fenix to monitor third-party communications "or else face liability" and are "barred by §230(c)(1)." *Id*. at 742.

### B.    Plaintiffs Still Fail to Plead RICO or RICO Conspiracy Claims

Plaintiffs allege nine RICO claims: one claim alleging that Fenix joined an enterprise with all of the Agency Defendants to defraud Fans (Count I), one claim alleging that the Fenix and the Agency Defendants conspired to defraud Fans (Count IX), and seven claims alleging in the alternative that if Fenix did not conspire with all of the Agency Defendants together, it entered into separate enterprises with each of the individual Agency Defendants (Counts II-VIII). To state a RICO claim, a plaintiff must allege: "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity." (Order, PageID#3455.) To state a claim for RICO conspiracy, Plaintiffs must also allege "the assent of each defendant" to the conspiracy. *United States v. Brooklier*,

10

685 F.2d 1208, 1222 (9th Cir. 1982). RICO claims based on allegations of wire fraud, like those here, must be pleaded with particularity pursuant to Rule 9(b). *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). Plaintiffs fail to sufficiently allege any of their nine RICO claims.

**1.      Plaintiffs Fail to Plead the Existence of a Racketeering Enterprise**

"To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." (Order, PageID#3455-56.)

*First*, Plaintiffs fail to allege that Fenix and the Agency Defendants had a sufficient common purpose. As the Court explained, RICO plaintiffs must plead facts distinguishing the purported enterprise's conduct and objectives from "the ordinary business purpose of increasing revenue." (Order, PageID#3456-57); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liability Litig.*, 826 F.Supp.2d 1180, 1202-03 (C.D. Cal. 2011).

Here, Plaintiffs allege that each of the purported RICO schemes had "the common purpose of fraudulently increasing the amount and number of Premium Content Fees each Fan pays." (2AC¶¶577, 593, 670, 685, 744, 759, 818, 833, 892, 907, 967, 982, 1042, 1057, 1117, 1132.) However, as the Court previously explained in rejecting these identical allegations, Plaintiffs' alleged common purpose is "insufficient because the alleged common purpose, without additional allegations of coordination, appears to be the ordinary business purpose of increasing revenue." (Order, PageID#3457.) Plaintiffs failed to add additional allegations distinguishing Fenix's conduct from their ordinary, day-to-day business activities of running the OnlyFans website, or the Agency Defendants' conduct from their ordinary, day-to-day activities of assisting Creators in managing their business interests and public relations. Accordingly, the Court should again hold that Plaintiffs' common purpose allegations are insufficient to state a claim. (*See id.* (collecting cases).)

*Second*, Plaintiffs fail to allege that Fenix and the Agency Defendants worked together to form an unlawful organization. As the Court previously explained, to allege a

11

RICO enterprise, Plaintiffs must "allege facts that Fenix Defendants and Agency Defendants combined as an enterprise in furtherance" of the alleged scheme to defraud Fans, which requires alleging "coordination among the members" of the purported enterprise. (Order, PageID#3457.)

Here, Plaintiffs fail to allege any coordination between Fenix and the Agency Defendants, either individually or collectively. Boiled down, Plaintiffs allege that Fenix created a platform that allowed the Agency Defendants' use of third parties to manage Creator interactions and failed to stop the Agency Defendants' activities. (2AC¶¶263-339.) But as the Court explained in rejecting this theory, these allegations fail to "sufficiently allege coordination among the members" of the supposed enterprise, "particularly where Plaintiffs do not allege facts that Fenix Defendants and Agency Defendants were even aware of one another's existence as participants in a scheme to defraud starting in 2017." (Order, PageID#3457.)

In response to the Order, Plaintiffs added further allegations claiming that Fenix either must have known about the Agency Defendants' activities from scrutinizing internal activity logs, or else been willfully ignorant about those activities. (2AC¶¶305-12.) Even taken at face value, those allegations do not cure the problem recognized by the Court. Plaintiffs do not allege that Fenix coordinated its supposed activities with the Agency Defendants, or that Agency Defendants knew that Fenix was intentionally operating OnlyFans in a way that would allow the Agency Defendants to defraud Fans. Without facts showing that any of the Defendants were aware of and coordinated to accomplish the supposed enterprise, Plaintiffs' RICO claims fail as a matter of law. (Order, PageID#3457 (collecting cases).)

### 2. **Plaintiffs Fail to Plead Conduct Furthering the Enterprise**

"A pattern of racketeering activity requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. §1961(1)." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). Here, the only statutorily permissible RICO predicates Plaintiffs

12

claim are alleged acts of wire fraud.[3] (2AC¶¶599, 691, 765, 839, 913, 988, 1063, 1138.) To plead a RICO claim based on wire fraud, Plaintiffs must allege: "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Moreover, in assessing whether purported wire fraud was in furtherance of a RICO scheme, "courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the chain of command through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is vital to the mission's success." (Order, PageID#3457-58.) Plaintiffs fail to adequately plead that Fenix committed predicate acts to further any RICO scheme.

*First*, Plaintiffs fail to plead that Fenix committed wire fraud. As the Court previously explained, Plaintiffs' theory that Fenix defrauded fans through social media posts and other channels into thinking that they would always communicate directly with Creators fail "because of Fenix Defendants' disclosures." (Order, PageID#3467.) Fenix "explicitly disclaimed responsibility in the Terms of Service, stating Creators may 'have an agent … or other third party' that assists them, and Fenix 'cannot control' how Creators or third parties 'use' content provided by Fans, 'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans, and 'are not responsible for reviewing or moderating Content.'" (*Id.*) In light of these disclosures, Fenix did not defraud Fans and could not have intended to defraud Fans because it disclosed and disclaimed responsibility for the very practices about which Plaintiffs complain. (*Id.*) Plaintiffs could not, and thus did not, add any allegations to the 2AC that would allow them to evade these dispositive disclosures.

*Second*, even if Plaintiffs had successfully pled that Fenix committed wire fraud—

---

[3] Although Plaintiffs allege additional acts supposedly relevant to their RICO claims (*see, e.g.*, 2AC¶644), none fall under the list of permissible RICO predicates under §1961(1). *See Banks v. ACS Educ.*, 638 F.App'x 587, 589-90 (9th Cir. 2016) (affirming dismissal of RICO claim because violations of statutes not listed within 1961(1) do not constitute racketeering activity).

which they have not—they failed to plead that such conduct was in furtherance of a racketeering enterprise. Plaintiffs do not allege that Fenix gave or took directions to or from the Agency Defendants, had any formal role in the enterprise, or knowingly took any actions to make it easier for the Agency Defendants to defraud Fans. *Eclectic Props*, 751 F.3d at 997.

### 3. Plaintiffs Failed to Plead a RICO Conspiracy

Plaintiffs' RICO conspiracy claim fails, as well. ***First***, because Plaintiffs fail to sufficiently plead any of their eight RICO claims, their conspiracy claim also necessarily fails. (Order, PageID#3458-59.) ***Second***, Plaintiffs fail to plead "the assent of each defendant" to the supposed conspiracy. *Brooklier*, 685 F.2d at 1222. As explained above, Plaintiffs fail to plead that any Defendant was subjectively aware of or intentionally joined a RICO enterprise. *See supra* pp. 11-14.

### C. Plaintiffs Still Fail to Plead a VPPA Claim

The VPPA prohibits "knowingly disclos[ing], to any person, personally identifiable information [PII] concerning any consumer" of a video tape service provider. 18 U.S.C. §2710(b)(1). The Court dismissed Plaintiffs' claim because their allegation that "the platform collects and transmits sufficient information to identify the specific Fan" was "insufficient because the alleged information disclosed would not readily permit an ordinary person to identify the specific person." (Order, PageID#3462.)

Plaintiffs try to bolster the same vague allegation and overcome this Court's ruling by asserting that "the OnlyFans platform allows *Fans to share* their personal information over chat," that "R.M shared his full legal name in the chat with the Creators that he subscribed to" and, somewhat unintelligibly, that "N.Z. and S.M. shared their full names and provided photos of his [*sic*] face in the chat with Creators that he [*sic*] subscribed to." (2AC¶¶1197, 1199-1200.) But this does not help Plaintiffs because they expressly acknowledged and agreed that their "Content may be viewed by individuals that recognise [their] identity" and Fenix are "not in any way… responsible" if Plaintiffs "are identified from [their] Content." (ECF 60-1, PageID#359.)

14

Moreover, Plaintiffs cannot assert claims against an entity tangentially related to a purported disclosure if that entity does not actually control the disclosure. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("The lawfulness of this disclosure cannot depend on circumstances outside of [defendant's] control."). Plaintiffs never allege Fenix have "taken the affirmative act of disclosing" any PII. *Id.* Instead, Plaintiffs allege actions by "management agencies" outside Fenix's control—"on behalf of and at the direction of the *Creators*"—and allege Fenix "disclosed Plaintiffs'… [PII] to unauthorized third parties" *only by* "facilitat[ing] the communication of information between Fan and Creator [OnlyFans] accounts." (2AC¶¶263, 1213.) Plaintiffs also assert the "personal information" they shared in chats was "stored and maintained on the OnlyFans platform," but neglect to explain how that storage "affirmative[ly]… disclos[ed]" their PII. (2AC¶¶1197-98.) Plaintiffs' acknowledgment that Fenix's only purported role is to "facilitat[e]" disclosures by others ends their claim.

Nor do Plaintiffs plead facts indicating Fenix "knowingly" disclosed Plaintiffs' PII. "[K]nowingly connotes actual knowledge" and "means consciousness of transmitting the private information." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1095 (N.D. Cal. 2015). Plaintiffs assert Fenix "*should know*" Creators used others to manage their interactions or were "intentionally ignorant." (2AC¶¶292, 300.) But what Fenix "should know" is irrelevant to the VPPA: there are no allegations establishing Fenix had *actual knowledge of a specific disclosure* of PII made by a Creator to an agency. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) (plaintiff must prove defendant "knew that a third party would actually link information it had with other information conveyed and become aware that a particular person had in fact purchased a particular video").

Finally, federal courts routinely hold "[v]ideo tape service providers may use third parties in their business operations without giving rise to liability under the VPPA." *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535, at *4 (D. Mass. Apr. 25, 2025). The *Therrien* court held that defendant's disclosure of plaintiff's email address to a third

15

party "was incident to order fulfillment or request processing" because the third party was a vendor assisting "in sending push alerts…, newsletters and updates" to the plaintiff at his request. *Id.* at \*4. As such, even if the email address was PII, "its disclosure to [the vendor] falls within the ordinary course of business exception." *Id.*

Here, Plaintiffs' acknowledgement that Fenix was merely "facilitat[ing] the communication of information between Fan and Creator accounts" (2AC¶1213) confirms Fenix's alleged actions were "incident to order fulfillment or request processing" and within the ordinary course of business exception. *Therrien*, 2025 WL 1208535, at \*4.

### D.    Plaintiffs Still Fail to Plead Any Contract-Based Claims

This Court dismissed Plaintiffs' breach of contract claim premised on Fenix's alleged "promise[s] Plaintiffs would be able to send direct messages to the Creators they subscribed to" and "communicate directly with Creators" because "the Terms… contain an integration clause that states Plaintiffs have 'no implied licenses or other rights are granted to them in relation to any part of OnlyFans, save as expressly set out in the Terms.'" (Order, PageID#3465-66.) Plaintiffs' amended breach of contract claims fare no better.

Plaintiffs allege an amended breach of contract claim predicated on the same "direct message" representation on the website they alleged in the FAC (FAC¶498), which Plaintiffs assert "is an agreement between FIL and Fans about what the OnlyFans platform provides," and, in the alternative, that the "direct message" representation constituted an "implied in fact" contract "not addressed" in the Terms. (2AC¶¶1231-33, 1241-46.) But the integration clause states that the Terms "form the entire agreement between [Fenix] and [Plaintiffs] regarding [their] access to and use of OnlyFans." (ECF 60-1, PageID#365.) Because Plaintiffs' amended claims reiterate the same allegations this Court already rejected and ignore the integrated contract, they should be dismissed for the same reasons.

Plaintiffs' new promissory estoppel claim—also pled "in the alternative" and premised on the same "direct message" representation allegedly "not part" of the Terms (SAC¶¶1256-59)—is likewise barred. As the Court noted, even if "all the other elements of a promissory estoppel claim [are] met, the integration clause by its terms bars any extra-

16

contractual promises." (Order, PageID#3466.) The alleged extra-contractual promises Plaintiffs cite thus cannot form the basis for a promissory estoppel claim.

As noted above, Plaintiffs also assert a new breach claim based on an alleged Fenix "promise" that "[w]e will use reasonable care and skill in providing OnlyFans to you," which Fenix allegedly breached by allowing and "enabling" the Agency Defendants to use third parties "to impersonate Creators," and "collect[ing] data sufficient to identify" those accounts, but "fail[ing] to act on this information." (2AC¶¶1222-23.) Plaintiffs' description of the "promise" tellingly omits that it appears in the following bolded provision in the Terms: "**What we are not responsible for**: We will use reasonable care and skill in providing OnlyFans to you, *but there are certain things which we are not responsible for*, as follows." (ECF 60-1, PageID#359 (first emphasis in original).) The *same provision* states Fenix "are not responsible for reviewing or moderating Content," "cannot control and will not be responsible to [Plaintiffs] for the use which other [u]sers or third parties make" of content Plaintiffs upload to OnlyFans, and "are under no obligation to monitor Content or to detect breaches of the Terms." (*Id*. PageID#359-60.)

As the Ninth Circuit has repeatedly held, a "general monitoring policy… on the part of an interactive computer service… does not suffice for contract liability" which "makes it easy for" such a service "to avoid liability: *it need only disclaim any intention to be bound*." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1108 (9th Cir. 2009). Here, as the Court observed, Fenix disclaimed liability for the monitoring conduct Plaintiffs complain about. (Order, PageID#3466-67.) Plaintiffs' new breach claim can also be dismissed.

Plaintiffs' cursory breach of implied covenant claim based on the "direct message" representation and on Fenix's alleged refusal to "enforce platform rules" to stop alleged third-party activity likewise fails. (2AC¶1252.) The implied covenant of good faith and fair dealing "is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Wasjutin v. Countrywide Bank N.A.*, 2016 WL 7443219, at *3 (C.D. Cal. June 8, 2016). Here, Plaintiffs impermissibly seek to "impose substantive duties… on [Fenix] beyond those incorporated

17

in the specific terms of their agreement." *Lewis v. Google LLC*, 461 F.Supp.3d 938, 961 (N.D. Cal. 2020). Indeed, as shown, the actions Plaintiffs are targeting were "authorized by the parties' agreements." *Id.* at 962 (dismissing implied covenant claim where actions were permitted by contract); *see also Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (same). Plaintiffs cannot circumvent the integrated contract and impose additional duties on Fenix that their agreement expressly disclaims.

Finally, Plaintiffs assert a breach claim as alleged "third-party beneficiaries" of the Creator Terms of Use, which Plaintiffs claim Fenix breached by "knowingly permitting" Creators to use third parties to communicate with Plaintiffs. (2AC¶¶1269-70.) "The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012). To maintain a claim as a third-party beneficiary, "the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Id*. at 1033-34. Any contract containing a clause that "relinquishes all third party rights… unambiguously manifests an intent *not* to create any obligations to third parties." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161, 1163 (9th Cir. 2010) (emphasis in original).

Here, the Terms expressly disclaim any third-party beneficiaries in the Terms of Use for All Users, which states "[y]our agreement with us *does not give rights to any third parties*" and that Fenix "reserve all rights not expressly granted to you." (ECF 60-1, PageID#355, 365.) Moreover, the Terms of Use for Creators that Plaintiffs seek to invoke for their own benefit expressly states that Fenix's "relationship is with [Creators], and not with any third party." (*Id*. PageID#374.) Plaintiffs' third-party beneficiary claim is thus plainly foreclosed by the Terms.

### E.    Plaintiffs Still Fail to Plead Any Fraud or Deceit Claims

This Court found "Plaintiffs fail to plausibly allege their fraud and deceit claims because" Fenix "explicitly disclaimed responsibility in the Terms of Service, stating

18

Creators may 'have an agent... or other third party' that assists them, and Fenix 'cannot control' how Creators or third parties 'use' content provided by Fans, 'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans, and 'are not responsible for reviewing or moderating Content.'" (Order, PageID#3467.) The Court collected authority establishing Plaintiffs cannot allege Fenix misrepresented information that was disclosed. (*See id.* (collecting cases).)

Plaintiffs' deceit claim is unchanged (*compare* 2AC¶¶1290-97 *with* FAC¶¶527-34), and their minimal revisions to their fraud claim do not overcome this fatal flaw—indeed, both Plaintiffs allege they were "aware that management agencies existed" and were used by Creators on the platform (2AC¶¶460, 476)—so their claims again fail. They also fail because Plaintiffs failed to correct other glaring deficiencies in their pleading.

***First***, Plaintiffs still fail to satisfy their Rule 9(b) obligations to "articulate the who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Plaintiffs added a handful of allegations that they saw and "justifiably relied" on some "direct message" representations when subscribing to various Creators, but admit they do not recall and cannot plead when, where, and how they saw them. (2AC¶¶1273, 1276-83 & nn.212-13.) And Plaintiffs reproduce—but *still* do not plead they ever saw or relied on—the same marketing statements buried on OnlyFans' website and a few extra Twitter posts (dated *after* this action was filed),[4] tacitly acknowledging neither Plaintiff can "specify when he was exposed to them or which ones he found material." *Kearns*, 567 F.3d at 1126; *see also Moody v. Hot Topic, Inc.*, 2023 WL 9511159, at \*7 (C.D. Cal. Nov. 15, 2023) (dismissing misrepresentation claims where plaintiffs failed to "provide the particulars of their own experience reviewing or relying upon any representations").

***Second***, "merely conclusory" allegations of "scienter and intent to defraud" fail to state a claim. *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at \*3 (C.D. Cal. June 23, 2009). Plaintiffs allege Fenix "*should know* about" Creators' use of third parties "by

---

[4] (*Compare* 2AC¶¶218-231, 454, 469 *with* FAC¶¶81-92, 251, 264.)

19

monitoring its own network logs" (2AC¶300 (emphasis in original)), and vaguely contend "*many*… Creators" (*id*. ¶1284) used third parties to communicate with Fans. These allegations are plainly insufficient.

***Third***, Plaintiffs cannot base a fraud claim on a "vague and subjective" statement that is "not a specific and measurable claim." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Representations about "foster[ing] authentic relationships" and "authentic connections" (2AC¶¶219, 221) are (still) non-actionable as a matter of law because they are "incapable of objective verification and not expected to induce reasonable consumer reliance." *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F.Supp. 918, 931 (C.D. Cal. 1996); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at \*11 (C.D. Cal. Apr. 11, 2011) (statements promising "[a]uthentic [t]radition" were too vague to be actionable).

## F.    Plaintiffs Still Fail to Plead UCL or FAL Claims

The Court dismissed Plaintiffs' UCL and FAL claims because "they are based on the failed fraud, deceit, and CIPA theories." (Order, PageID#3467-68.)[5] Other than abandoning their CIPA claim, Plaintiffs' UCL claim is unchanged in the 2AC (*compare* 2AC¶¶1315-28 *with* FAC¶¶535-46). And because Plaintiffs' only addition to their FAL claim is pasting in the "direct message" allegations *from their fraud claim* (*compare* 2AC¶¶ 1277-83 & nn.212-13 *with* ¶¶1305-12 & nn.214-15), dismissal is again warranted.

---

[5] Moreover, to the extent Plaintiffs' UCL claim is based on Fenix's alleged failure to "enforc[e] their policies and [Terms]… or ensur[e] the Creators are engaging in direct communications with the Fans" (2AC¶1319(c)), it fails because the Terms make clear Fenix "are under no obligation to monitor Content or detect breaches of the Terms," or ensure Creators are personally interacting with Fans. *Supra,* §II.D-E; *see also Morton v. Twitter*, 2021 WL 1181753, at \*5 (C.D. Cal. Feb. 19, 2021) (dismissing UCL claims where social media platform terms of service "specifically disclaim[ed]" responsibility for actions by third parties using the platform).

# CONCLUSION

The Court should dismiss the 2AC for lack of subject matter and personal jurisdiction, failure to state a claim, and/or improper venue.

DATED: January 23, 2026        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:_____/s/ Jason D. Russell_____
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

21

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,996 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: January 23, 2026        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*Jason D. Russell*_____
                    JASON D. RUSSELL
            *Attorneys for Specially Appearing Defendants*
          Fenix International Limited and Fenix Internet LLC

22