Oliver Rocos - State Bar No. 319059
orocos@birdmarella.com
Bill L. Clawges - State Bar No. 345908
bclawges@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Moxy Management

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO. 8:24-cv-01655-FWS-SSC

**DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Filed Concurrently with [Proposed] Order

Date: March 19, 2026
Time: 10:00 a.m.
Crtrm.: 10D

Assigned to Hon. Fred W. Slaughter

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Fred W. Slaughter, United States District Judge of the Central District of California, Southern Division, in Courtroom 10D, Defendant Moxy Management ("Moxy") will, and hereby does, move for an order dismissing the Class Action Complaint (the "Complaint") against Moxy pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for the following reasons:

**RICO And RICO Conspiracy** – Plaintiffs fail to state a RICO or RICO conspiracy claim because they have failed to allege the existence of a racketeering enterprise, do not plead that Moxy engaged in any conduct in furtherance of any such enterprise, or that Plaintiffs suffered recoverable damages.

**Video Privacy Protection Act** – Plaintiffs fail to state a claim under this statute because they fail to allege facts showing that Moxy ever possessed any personally identifiable information covered by the statute or that Moxy ever knowingly disclosed any such information outside of its ordinary course of business.

**Unfair Competition Law** – Plaintiffs' Unfair Competition Law claim is based on the exact same alleged conduct supporting their other claims. Just as those other claims fail, so too does this claim.

Moxy further will, and hereby does, move for an order dismissing the claims brought by Plaintiffs B.L., S.M., and A.L. in the SAC against Moxy on the basis of forum non conveniens because, as this Court previously found, their claims fall within the ambit of the forum selection clause in the Terms of Service agreed between Plaintiffs and Fenix Defendants and so cannot be brought here.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the reply papers, the pleadings on file, and such other evidence

and argument as the Court may receive. Pursuant to Local Rule 7-3, on January 9, 2026, counsel for Moxy met and conferred with counsel for Plaintiffs to discuss the grounds for its motion.

DATED: January 23, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________
Oliver Rocos
Attorneys for Defendant Moxy Management

# TABLE OF CONTENTS

Page


NOTICE OF MOTION .......... 2

TABLE OF CONTENTS .......... 4

MEMORANDUM OF POINTS AND AUTHORITIES .......... 9

I. INTRODUCTION .......... 9

II. PROCEDURAL HISTORY .......... 11

III. FACTUAL BACKGROUND .......... 12

IV. LEGAL STANDARDS .......... 12

V. NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE BASIS OF FORUM NON CONVENIENS .......... 13

VI. PLAINTIFFS FAIL TO PLEAD A CIVIL RICO VIOLATION .......... 14

A. Plaintiffs Continue To Fail To Plead A RICO Enterprise .......... 15

1. A RICO Scheme Cannot Exist Before Its Members Exist .......... 15

2. Plaintiffs Again Fail To Plead Any Coordination Between The Supposed Enterprise Members .......... 16

3. Plaintiffs Continue To Fail To Plead A Common Purpose .......... 18

B. Moxy Did Not Engage In Any Conduct In Furtherance Of The Alleged RICO Scheme .......... 19

1. Plaintiffs Have Not Alleged Moxy Committed A Predicate Act .......... 19

2. Moxy Did Not Give Or Take Directions From Anyone .......... 21

3. Fenix Defendants' Alleged Fraudulent Acts Cannot Be Imputed To Moxy .......... 22

C. Plaintiffs Have Failed To Allege The Purported RICO Activity Caused Them Any Damages .......... 22

VII. PLAINTIFFS FAIL TO PLEAD A RICO CONSPIRACY .......... 24

VIII. PLAINTIFFS FAIL TO PLEAD MOXY VIOLATED THE VPPA .......... 24

A. Moxy Did Not Collect Any PII As Defined By The VPPA .......... 24

B. Moxy Did Not Knowingly Disclose PII .......... 25

C. Any "Knowing Disclosure" Necessarily Occurred Within

Moxy's "Ordinary Course of Business" And Is Inactionable .............. 26
IX. PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS ........................... 27
X. CONCLUSION ........................................................................ 28
CERTIFICATE OF COMPLIANCE........................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Actimmune Mktg. Litig.*,
No. C08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) .......... 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12, 13

*Blue Oak Med. Grp. v. State Comp. Ins. Fund*,
809 F. App'x 344 (9th Cir. 2020) .......... 19

*Boyle v. U.S.*,
556 U.S. 938 (2009) .......... 19

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 23

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) .......... 23

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .......... 18

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) .......... 21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 14, 15

*Gardner v. Starkist Co.*,
418 F. Supp. 3d 443 (N.D. Cal. 2019) .......... 22

*In re Hulu Priv. Litig.*,
86 F.Supp.3d at 1095 .......... 24, 25

*In re Hulu Priv. Litig.*,
No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 26

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........ 13

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 26

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ........ 17, 20

*Nguyen v. Elsevier Inc.*,
No. 25-CV-00825-NC, 2025 WL 2901059 (N.D. Cal. Oct. 7, 2025) ........ 26

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ........ 16

*Oscar v. Univ. Students Co-Operative Ass'n*,
965 F.2d 783 (9th Cir.1992) ........ 22

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 13

*Punian v. Gillette Co.*,
Case No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ........ 28

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ........ 19

*Shaw v. Nissan N. Am., Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016) ........ 18

*Sterk v. Redbox Automated Retail LLC*,
770 F.3d 618 (7th Cir. 2014) ........ 27

*U.S. v. Turkette*,
452 U.S. 576 (1981) ........ 15

*Uce v. Oral Aesthetic Advoc. Grp., Inc.*,
No. CV 23-3186-CBM-MRWx, 2024 WL 3050720 (C.D. Cal. Feb. 23, 2024) ........ 22

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ........ 21

*Wimo Labs LLC v. eBay Inc.*,
Case No. SACV 15-1330-JLS, 2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) .......... 17

**Federal Statutes**

18 U.S.C.
§ 1343 .......... 19
§1961(3) .......... 16
§1962(c) .......... 16, 19, 24
§ 2710(a)(2) .......... 10, 26
§ 2710(a)(3) .......... 10, 24
§ 2710(b)(1) .......... 24
§ 2710(b)(1), (a)(3) .......... 25
§ 2710(b)(2)(E) .......... 10
§ 2710(b)(E) .......... 26

Video Privacy Protection Act (VPAA) .......... *passim*

**California Statutes**

Cal. Bus. & Prof. Code
§ 17200 .......... 27

California Penal Code
§ 502 .......... 11

**Other Authorities**

Fed. R. Civ. Proc. 9(b) .......... 19, 20

Fed. R. Civ. Proc. 12(b)(6) .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On December 12, 2025, this Court issued a 34-page ruling (the "Order") dismissing all of Plaintiffs' claims. The Court was explicit as to why the claims failed, and gave Plaintiffs leave to amend to address those flaws. Unsurprisingly, however, Plaintiffs have pled no new factual allegations in their Second Amended Complaint ("SAC") to remedy the defects the Court identified. They have instead merely rearranged and pointlessly repeated ad nauseum the same flawed allegations, managing not to add even a scintilla of substance in the nearly ***800 new paragraphs***.

As to their RICO claims, Plaintiffs fail to allege *any* new facts to address this Court's finding that they had not pled that Defendants were engaged in a RICO enterprise. As before, there are no allegations any Defendant even knew any other Defendant existed, much less that they communicated or coordinated their activity or shared a common purpose. Plaintiffs have, again, pled facts that show only that each Defendant was acting in its own economic self-interest. As to a predicate act, Plaintiffs do not plead any particularized allegations detailing Moxy's alleged wire fraud, which the law and this Court are clear must be pled, and instead repeated the *exact same* flawed allegations in their First Amended Complaint ("FAC").

Seemingly recognizing they had to change *something* to pretend they had responded to the Order, Plaintiffs splintered their single RICO claim into eight separate claims. They now assert at Counts I-XIII a combined RICO claim against all Defendants and then seven separate RICO claims between the Fenix Defendants and different individual Agency Defendants. But repetition does not remedy the defects, it multiplies them.

As to their claim under the Video Privacy Protection Act ("VPPA"), Plaintiffs similarly plead no relevant new facts, and it remains defective in multiple respects. *First*, Plaintiffs' allegation that Moxy collected their personally identifiable information because they provided their names, social media accounts, and even

pictures of themselves to chatters misunderstands the statute. The VPPA is not a general purpose privacy statute, but protects only personal information that identifies "a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). Plaintiffs have not, and cannot, plead that any of them ever requested or obtained any video materials from Moxy. That is fatal because it means that any personal information they disclosed is not covered by the statute. *Second*, even if the VPPA *could* cover such information, Moxy is only liable if it *knowingly disclosed* PII to chatters. Plaintiffs are clear that it was *they* who disclosed their information to chatters, *not Moxy*. Without a conscious disclosure, Moxy cannot be liable. *Third*, a defendant cannot be liable under the VPPA for disclosing PII in the "ordinary course of business" for "order fulfillment [and] request processing." 18 U.S.C. § 2710(a)(2), (b)(2)(E). Because Plaintiffs readily concede that chatters used PII to obtain and fulfill Plaintiffs' orders, Moxy has an absolute defense.

Plaintiffs' final claim is brought under California's Unfair Competition Law claim and is new to the SAC. It fails because it is derivative of Plaintiffs' other claims, which are each defective.

Finally, the Court previously dismissed Plaintiffs B.L., S.M., and A.L. (the "Non-California Plaintiffs") from this action on the basis of forum non conveniens because their claims fall within the ambit of the forum selection clause in the Terms of Service agreed to by Plaintiffs and Fenix Defendants. Despite that clear ruling, Plaintiffs have pled no new allegations in the SAC to even attempt to address this fatal defect. Accordingly, the Non-California Plaintiffs should be dismissed.

It is highly doubtful that the individual Plaintiffs had any meaningful input into the amendments. Instead, the SAC is clearly a product of their counsel and a continuation of their counsel's cavalier attitude to this Court's rulings and cynical approach to litigation. They have not even attempted to remedy the many flaws this Court identified at some length in the Order, and have instead filed an excessively long pleading seemingly to force Defendants (and thereby the Court) to waste more

resources on meritless litigation.

This Court has been more than generous enough to Plaintiffs. It should now dismiss their frivolous claims with prejudice.

## II. PROCEDURAL HISTORY

Plaintiffs filed this action on July 29, 2024. [Dkt. 1.] On April 9, 2025, the Court partially granted Fenix Defendants' motion to dismiss for forum conveniens, dismissing the claims of out-of-state Plaintiffs B.L., S.M., and A.L. against Fenix Defendants on the basis that their claims were subject to the forum selection clause in the Terms of Service they had agreed with Fenix Defendants. [Dkt. 117.] Plaintiffs filed their First Amended Complaint on April 23, 2025, [Dkt. 118], Defendants moved to dismiss on May 23, 2025, [Dkt. 121-129], Plaintiffs opposed on July 17, 2025, [Dkt. 138-143], and Defendants replied on August 18, 2025 [Dkt 163-174].

On September 4, 2025, the Court issued an Order to Show Cause ("OSC") why Plaintiffs' counsel should not be sanctioned for having misused artificial intelligence in its opposition to Defendants' motions to dismiss. [Dkt. 187]. The Court heard oral argument on Defendants' motions to dismiss on September 4, 2025, and on the OSC on September 25, 2025.

On December 12, 2025, the Court sanctioned Plaintiffs' counsel for their use of artificial intelligence. [Dkt. 207]. The Court also granted in full Moxy's motion to dismiss, detailing in a 34-page Order the many flaws in each of Plaintiffs' claims. [Dkt. 209.] The Court gave Plaintiffs leave to amend.

On January 2, 2026, Plaintiffs filed the SAC. [Dkt. 216-218.] The SAC is 1328 paragraphs long—782 paragraphs longer than the FAC. Plaintiffs dropped their claims under the California Invasion of Privacy Act, the Federal Wiretap Act, and California Penal Code § 502, but maintained their other claims under RICO and the VPPA and added a new claim for violation of California's Unfair Competition Law.

On January 9, 2026, the parties met and conferred as to their intended motions to dismiss but were unable to resolve their differences.

## III. FACTUAL BACKGROUND[1]

Fenix International Limited and Fenix Internet LLC (collectively, the "Fenix Defendants") operate OnlyFans, a platform on which individuals ("Creators") can create, share, and monetize content they offer to others ("Fans") and on which Fans can direct-message Creators' accounts. *Id.* ¶¶ 8-9, 15. Moxy Management ("Moxy") is a management and consulting company formed in 2021 that provides services to Creators on OnlyFans. SAC ¶¶ 362-365.

Plaintiffs allege they are five individuals who wanted the fantasy of an intimate relationship with certain Creators by exchanging direct messages. *Id.* ¶¶ 27, 30-40, 452-537. Plaintiffs concede Creators have "subscriber bases so large" it would be "physically impossible for a single individual" to interact with Fans "on a direct personal basis." *Id.* ¶ 376. Plaintiffs nonetheless claim they were somehow "duped" into thinking they were talking directly to Creators, when they allegedly were instead talking to "chatters" Moxy and the other defendant agencies (collectively, the "Agency Defendants") engaged to impersonate Creators. *See, e.g.*, *id.* ¶ 461. Apparently disappointed their fantasy was just that, *a fantasy*, Plaintiffs now claim they were duped.

Of the five individual Plaintiffs, three live outside of California—Plaintiffs B.L. (Tennessee), S.M. (Georgia), and A.L. (Wisconsin). *Id.* ¶¶ 34, 36, 38.

## IV. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Additional facts relevant to the specific claims are set forth in the argument sections below.

defendant is liable for the misconduct alleged." *Id.*

Generally, a court accepts factual allegations as true and views them in the light most favorable to plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation" and will accept such a conclusion only where it is adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 664, 678-79.

## V. NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE BASIS OF FORUM NON CONVENIENS

In the Order, the Court ruled that the forum selection clause in the OnlyFans Terms of Service ("Terms of Service") barred claims by the Non-California Plaintiffs B.L., S.M., and A.L. against Moxy. Order at 30-31. Yet, Plaintiffs have pled ***no new allegations*** in the SAC that would justify a different outcome on this issue. Instead, they have pled ***the exact same allegations***, apparently hoping the Court reaches a contradictory decision this time around. The Court should not do so.

This Court previously held that although Moxy was not a signatory to the Terms of Service contract, "the forum selection clause within that contract can apply to that non-signatory where its alleged conduct is so closely related to the contractual relationship." Order at 31 (internal quotations omitted) (citing *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988))). The Court continued on to find that Moxy's alleged conduct *was* "logically or causally connected to the Terms of Service," such that the claims asserted against it "are covered by the forum selection clause." *Id.* In particular, Plaintiffs' allegations at paragraphs 332, 335, 441a, 441d of the FAC were that Moxy is "engaged in a RICO conspiracy where the Terms of Service would not be enforced against them, causing the injuries that Plaintiffs allegedly suffered, and Agency Defendants were aware of the Terms of Service while operating on behalf of the Creators." *Id.* at 32. As a

consequence, the forum selection clause barred the Non-California Plaintiffs from bringing the Action in this forum and they were dismissed.[2]

Critically, each of the paragraphs in the FAC on which the Court relied to reach its conclusions are precisely replicated in the SAC: (1) paragraph 332 is now 547; (2) paragraph 335 is 550; (3) paragraph 441a is 1187a; and (4) paragraph 441d is 1187d. Because the allegations the SAC are identical to those in the FAC, the outcome should be identical too: claims by the Non-California Plaintiffs should be dismissed.

## VI. PLAINTIFFS FAIL TO PLEAD A CIVIL RICO VIOLATION

To plead a RICO claim, a plaintiff must plausibly allege the defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). As before, Plaintiffs have failed to do so.

In its Order, the Court found that Plaintiffs had failed to plead a RICO claim on two distinct bases. *First*, Plaintiffs "fail[ed] to adequately allege a RICO enterprise between Fenix Defendants and Agency Defendants" because they (1) had not, among other things, "allege[d] facts that Fenix Defendants and Agency Defendants were 'even aware of one another's existence as participants in a scheme to defraud'"; and (2) "the alleged common purpose, without additional allegations of coordination, appear to be the ordinary business purpose of increasing revenue." Order at 18-19.

*Second*, Plaintiffs "fail[ed] to sufficiently allege Agency Defendants committed wire fraud with particularity" because they (1) "do not sufficiently allege the

[2] To the extent Plaintiffs argue Moxy cannot rely on the forum selection clause because the Terms of Service state that they "do[] not give rights to any third parties," SAC ¶ 235, that argument is not new and is meritless. The Court noted that clause in the Order and relied upon it to conclude that Moxy lacked a *contractual* basis for its argument. Order at 31. The Court nonetheless dismissed the Non-California Plaintiffs' claims because their claims arise out of the Terms of Service that contains the forum selection clause. *Id.* Having relied on the Terms of Service for their claims against Moxy, Plaintiffs cannot now ignore terms therein it finds unfavorable.

circumstances of [the supposed] representations"; (2) do not allege "which specific representations by Agency Defendants were relied on by Plaintiffs"; and (3) had alleged only "on information and belief" that Plaintiffs paid money to Moxy-affiliated Creators, which is "insufficient to allege Plaintiffs' wire fraud theory with particularity." *Id.* at 20-21.

Despite being given leave to amend their RICO claims to address these specific issues, Plaintiffs ***have not pled any new facts*** in an attempt to do so. They have instead simply reorganized the same insufficient allegations into eight different RICO causes of action. What was once just a single count is now Counts I-VIII, with RICO enterprises supposedly existing between all Defendants and between seven individual Agency Defendants and the Fenix Defendants. Quantity is not substitute for quality. The RICO claims fail for the exact same reasons they failed before.

## A. Plaintiffs Continue To Fail To Plead A RICO Enterprise

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" that violates the RICO statute. *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Accordingly, Plaintiffs must plead *at least* (1) "a common purpose," (2) "a structure or organization," and (3) "longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997.

As in the FAC, Plaintiffs allege in the SAC a so-called "Content Fraud Enterprise" comprising Fenix Defendants, Moxy and the other Agency Defendants, and their "Represented Creators." SAC ¶ 576. Just as Plaintiffs' allegations were insufficient before, so too are those same allegations insufficient now.

### 1. A RICO Scheme Cannot Exist Before Its Members Exist

As in the FAC, the alleged RICO schemes supposedly were formed before its participants were incorporated. The supposed RICO enterprise involving all Defendants allegedly "has been ongoing since approximately 2016," SAC ¶ 594, but no ***Agency Defendant even existed until 2020***. *Id.* ¶¶ 50-56 (alleging Unruly Agency, Dysrpt Agency, Behave Agency, and Content X formed in 2020; Moxy, A.S.H.

Agency, Verge Agency, and Boss Baddies formed in 2021; and Elite Creators formed in 2022). That impossibility is only magnified with respect to the Moxy-specific RICO scheme in Count III, which alleges Moxy formed a RICO scheme with Fenix Defendants in 2016—***five years before it was incorporated***. *Id.* ¶ 760. This absurd allegation highlights the frivolousness of Plaintiffs' RICO claim. A RICO enterprise cannot exist *before* its members exist. *See* 18 U.S.C. 1962(c) (requiring existence of a "person" for RICO liability); 18 U.S.C. 1961(3) ("'person' includes any individual or entity capable of holding a legal or beneficial interest in property").

To the extent Plaintiffs argue the enterprise existed prior to 2020 between Fenix Defendants and the Creators that allegedly are now represented by Agency Defendants, there are no allegations supporting that argument.[3] On the contrary, Plaintiffs allege that the supposed "Chatter Scams" underlying the RICO claims were implemented by the Agency Defendants, which they cannot have done prior to their formation. SAC ¶ 582; *see also id.* at ¶ 602 (alleging Fenix Defendants' predicate acts began in 2021).

The supposed RICO enterprise cannot have existed as a matter of fact and law.

**2. Plaintiffs Again Fail To Plead Any Coordination Between The Supposed Enterprise Members**

Plaintiffs' allegations regarding the purported RICO enterprise *after* the Agency Defendants were incorporated fare no better. In order to plead coordination, Plaintiffs must allege "'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). As before, however, Plaintiffs fail to plead facts showing any Defendant knew any other Defendant existed, let alone that any Defendant *ever* communicated with any other Defendant.

As to Fenix Defendants' knowledge of the Agency Defendants, Plaintiffs again

[3] Plaintiffs do not, for example, plead that any of the allegedly Moxy-affiliated Creators used the OnlyFans platform between 2016 and 2020.

generally allege only that Fenix Defendants knew content creators could use agencies. SAC ¶¶ 293, 313-317. The sole factual allegation to support Plaintiffs' conclusory assertion that Fenix Defendants were "aware of Agency Defendants" *in particular* remains that in July 2023, *one* of the Agency Defendants collaborated with the Fenix Defendants. *Id.* ¶ 6 (alleging event with Creators Inc.). That is *the exact same* allegation that was insufficient in the FAC and it remains insufficient now: Fenix Defendants' knowledge that *one* Agency Defendant existed in 2023 says nothing about whether Fenix Defendants knew a *different* agency, Moxy (or any other Agency Defendant), existed at any time before this action was filed. Order at 19. As to the Agency Defendants' knowledge of each other's existence, the SAC remains totally, and fatally, silent.

As to inter-Defendant communications, it is telling that Plaintiffs *nowhere* allege in their 1328-paragraph pleading any instance of any Defendant ever communicating with any other Defendant at any time. Plaintiffs' conclusory claims that there is "coordination of activities between the [Fenix] Defendants and the Agency Defendants," SAC ¶ 595, and unspecified "communications," SAC ¶ 644, are insufficient as a matter of law. *Wimo Labs LLC v. eBay Inc.*, Case No. SACV 15-1330-JLS (KESx), 2016 WL 11507382, at *3 (C.D. Cal. Jan. 28, 2016) (absence of allegations of actual coordination between alleged enterprise members meant "Plaintiff fail[ed] to allege any facts suggesting that they combined as an enterprise in furtherance of a fraudulent or unlawful purpose").[4] Even Plaintiffs concede that at

[4] Rather than alleging *coordination*, Plaintiffs repeatedly allege Fenix Defendants had policies *against* the Agency Defendants' supposed use of chatters. *See* SAC ¶ 331 ("None of what agencies (including Agency Defendants) are doing to perpetuate the Chatter Scams is actually 'allowed' by OnlyFans' [Terms of Service]"); *id.* ¶ 293 (Fenix Defendants' "policies contain specific terms" that "prohibit Creators from allowing anyone else to even access their accounts," such as chatters). These allegations that Defendants were at odds with one another contradict Plaintiffs' conclusory coordination allegations and doom their RICO claim. *Shaw v.*

*best*, their allegations merely "support[] an ***inference*** that OnlyFans is acting intentionally to facilitate Chatter Scams." *Id.* ¶ 328 (emphasis added); *see also id.* ¶ 262 (alleging Fenix Defendants merely "overlooked or permitted" the use of chatters, rather than coordinated with Agency Defendants on their use). RICO coordination requires more than mere inactivity. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018) (merely "failing to stop illegal activity[ ] is not sufficient" basis for RICO scheme).

As this Court *already held*, the absence of allegations that any Defendant knew any other Defendant existed or ever communicated with another Defendant means Plaintiffs cannot and have not pled they formed a RICO enterprise. Order at 19 (citing *Wimo Labs*, 2016 WL 11507382, at *3-4 (RICO claim failed absent allegations enterprise members "were even aware of one another's existence as participants in a scheme to defraud.")). There is nothing new in the SAC that could warrant a change in that conclusion.

**3. Plaintiffs Continue To Fail To Plead A Common Purpose**

There are no new allegations in the SAC that could change this Court's prior conclusion that Plaintiffs have failed to plead Defendants shared a common purpose.

The conclusory allegation that Defendants shared the "common purpose of fraudulently increasing the amount and number of Premium Content Fees each Fan pays" remains unsupported by any facts at all. SAC ¶ 593. As this Court previously held, Plaintiffs' failure to plead any facts showing that Defendants even knew each other existed, much less that they coordinated in any way, means they have pled only that each Defendant was acting independently in pursuit of its own economic self-interest. Order at 19 ("the alleged common purpose, without additional allegations or

---

*Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016) (plaintiff failed to plead coordination where RICO enterprise members took steps that conflicted with the alleged common purpose).

coordination, appears to be the ordinary business purpose of increasing revenue.") (collecting citations); *see also Boyle v. U.S.*, 556 U.S. 938, 947 n.4 (2009) (even proof that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . would not be enough to show that the individuals were members of an enterprise.").

Plaintiffs' failure to even attempt to allege any new facts addressing this deficiency in their pleading is an implicit concession their RICO claim lacks merit.

**B. Moxy Did Not Engage In Any Conduct In Furtherance Of The Alleged RICO Scheme**

RICO liability requires that "the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). "In the Ninth Circuit, to assess whether a defendant had a sufficient role in operation or management to meet the standard of § 1962(c), courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the 'chain of command' through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is 'vital' to the mission's success." Order at 19-20 (citing *Tatung Co., Ltd. v. Hsu*, 2015 WL 11072178, at *20 (C.D. Cal. Apr. 23, 2015)).

Plaintiffs' RICO claims are based on alleged wire fraud under 18 U.S.C. § 1343. SAC ¶¶ 599, 765. Yet, Plaintiffs fail to allege any new facts that could avoid this Court's prior ruling that they have not pled the supposed fraud with particularity.

**1. Plaintiffs Have Not Alleged Moxy Committed A Predicate Act**

Under F.R.C.P. 9(b), Plaintiffs must plead wire fraud with particularity. *Blue Oak Med. Grp. v. State Comp. Ins. Fund*, 809 F. App'x 344, 345 (9th Cir. 2020). They again fail to do so.

The *only* alleged fraudulent acts by Moxy in particular are supposed "communications through the internet to Plaintiffs and Class Members" by chatters,

"falsely representing they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees." SAC ¶¶ 621, 788. Specifically, Plaintiffs allege they paid money to subscribe to the accounts of four Moxy-affiliated Creators: i) Plaintiff B.L. subscribed to Briana Armbruster on November 28, 2023; ii) Plaintiff S.M. subscribed to Kaitlyn Krems and Breckie Hill in 2023; and iii) Plaintiff R.M. subscribed to Chyanne Burden on July 16, 2020; and iv) Plaintiff N.Z. "paired Breckie Hill $10 on April 3, 2023." *Id.* ¶¶ 621-622, 788. These allegations do not satisfy Plaintiffs' burden to plead fraud with particularity.

As an initial matter, Plaintiffs only allege Moxy represented these four Creators "on information and belief." SAC ¶ 265. Because Plaintiffs *do not* support those allegations with any supporting facts, the allegations fail as a matter of law—just as they did with respect to the FAC. Order at 21 (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[A]llegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)."); *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) ("[A]llegations 'based on information and belief may suffice,' 'so long as the allegations are accompanied by a statement of facts upon which the belief is founded.'"). Indeed, Plaintiffs allegations are demonstrably *false* in at least one respect—Moxy cannot have represented Chyanne Burden in 2020 (SAC ¶ 641) because it was not even formed until 2021 (*id.* ¶ 49).

Further, Plaintiffs do not allege facts supporting that there was a misrepresentation by Moxy *at all*. *Id.* ¶¶ 621, 788. The only alleged representation in the entire pleading by a supposed Moxy-affiliated Creator is as follows: Plaintiff S.M. "confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and *they all said* it was them replying to messages and/or denied using chatters."[5] *Id.* ¶ 511 (emphasis added). That allegation *still* lacks the minimum

[5] There is *no allegation anywhere* that any Creator allegedly affiliated with Moxy

information of "who, what, when, where, and how" required to support a fraud claim. *See* Order at 21 (citing *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023)). Perhaps more importantly, there is no allegation that any such response by Kaitlyn Krems and Breckie Hill (the two Moxy-affiliated Creators) *was false*, *i.e.*, that the response was in fact from a chatter (or that they ever even used chatters). That failure is particularly important given that Plaintiffs concede *Creators did speak directly with Fans*, such that the communication could have come from Ms. Krems and/or Ms. Hill and thus been true. SAC ¶ 266 ("agencies contract with chatters to conduct most" *but not all* of the communications "between the Creators and the Fans"). If more was needed, Plaintiffs also still fail to identify which supposed representation(s) by Moxy they relied upon and that caused their alleged damages. Order at 21.

While Plaintiffs generally assert other supposed "fraudulent" acts, their failure to allege any specifics regarding those acts also precludes them from being able to rely on such acts in support of their RICO claim. SAC ¶ 644, 792 (listing alleged acts undertaken by "Defendants" generally); *Coronavirus Rep.*, 85 F.4th at 958.

In short, Plaintiffs have failed to allege any *new* facts in the SAC that remedy the fatal flaws this Court already identified.

**2. Moxy Did Not Give Or Take Directions From Anyone**

In addition to failing to plead that Moxy itself engaged in any fraudulent act, the absence of any allegation Moxy ever communicated with Fenix Defendants or the other Agency Defendants, *see supra* Section VI.A.2., means Plaintiffs cannot have pled that Moxy did anything to direct or participate in the conduct of the enterprise's affairs more generally. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (although plaintiff had shown defendant was "involved" in enterprise, RICO claim

---

other than Kaitlyn Krems and Breckie Hill ever represented to any Plaintiff that they were the individuals talking to a Plaintiff and not a chatter, or that they denied using chatters. Accordingly, no other Plaintiff can have alleged any fraud by Moxy.

nonetheless failed due to absence of allegations showing defendant had "some part in directing its affairs").

**3. Fenix Defendants' Alleged Fraudulent Acts Cannot Be Imputed To Moxy**

Even assuming Plaintiffs *have* sufficiently plead that the Fenix Defendants misrepresented that all communications were authentically with Creators and not chatters (SAC ¶¶ 601, 767), Plaintiffs have failed to show such conduct should be imputed to Moxy. The mere performance of legitimate business activities that *another* might use in a fraudulent manner is not conduct in furtherance of a RICO enterprise. *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (that the *seller* of canned tuna misrepresented it was "dolphin safe" did not mean the fisherman, importers, storers, canners and processors had engaged in fraudulent RICO conduct); *Uce v. Oral Aesthetic Advoc. Grp., Inc.*, No. CV 23-3186-CBM-MRWx, 2024 WL 3050720, at *5 (C.D. Cal. Feb. 23, 2024) (alleged RICO scheme members did not commit RICO conduct where they "[s]imply perform[ed] services for the enterprise"). The allegation that Moxy's supposed use of chatters made the Fenix Defendants' alleged misrepresentation of authenticity untrue does not amount to actionable RICO conduct by Moxy.

**C. Plaintiffs Have Failed To Allege The Purported RICO Activity Caused Them Any Damages**

Finally, to plead a RICO claim Plaintiffs must allege the RICO scheme caused them "concrete financial loss." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992). Plaintiffs fail to do so.

Plaintiffs allege they were harmed because they spent money on "Premium Content Fees," including paying more than they would have had they known about chatters, and their "lost expectation" of speaking directly with Creators. SAC ¶¶ 655-659, 803-807.

The mere "lost expectation" of talking to a chatter rather than a Creator is not

compensable because it is not a concrete financial loss. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (disappointment at not obtaining the outcome hoped for was not a compensable injury under RICO).

Plaintiffs have also failed to allege facts showing they suffered any financial harm. Plaintiffs define "Premium Content Fees" as "Subscription Fees, charges for PPV Content, and Creator Tips"—*i.e.*, *all* the fees Plaintiffs spent on any content *for any reason*, such as to access explicit pictures, not solely for talking to Creators. SAC ¶ 213. Importantly, Subscription Fees certainly *were not* paid for the sole purpose of talking to Creators because some Plaintiffs *are still subscribed to Creators* despite alleging chatters operate their accounts. *See, e.g.*, *id.* ¶ 641d. (alleging R.M. is still subscribed to Chyanne Burden).

As to "PPV" or "Pay-Per-View" charges, these comprise the lion's share of the Premium Content Fees but are paid to view explicit pictures, *not to speak to Creators*. *Id.* ¶ 209. PPV charges are irrelevant because Plaintiffs (1) do not allege any supposed RICO activity regarding PPV content, and (2) do not allege the PPV content was fraudulent in any way (it was not). *Id.* ¶¶ 578-581; *see also id.* ¶¶ 622-642 (alleging subscription payments were fraudulent, but not alleging anything wrongful about PPV charges). The same is true for Creator Tips, which Plaintiffs allege were paid for a multitude of reasons *other than* because Plaintiffs believed they were talking to a Creator. *Id.* ¶ 209 (alleging tips were paid for "custom content, special requests, advice, recipes, lessons, or almost anything else").

Because the alleged Premium Content Fees purportedly were paid for reasons *other than* to talk directly with Creators, Plaintiffs have failed to plead their alleged financial harm either happened or was caused by the alleged RICO activity. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 980-81 (9th Cir. 2008) (RICO claim dismissed where Plaintiff failed to plead the alleged RICO activity, rather than other acts, caused it any financial loss).

## VII. PLAINTIFFS FAIL TO PLEAD A RICO CONSPIRACY

As this Court already held, a plaintiff's failure to plead a RICO claim precludes them from pleading a RICO conspiracy claim under 18 U.S.C. § 1962(c). Order at 21-22 (citing *Khalid v. Microsoft Corp.*, No. 20-35921, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023) ("Because [plaintiff] failed to state a RICO claim . . . he also failed to state a RICO conspiracy claim")). Because Plaintiffs' RICO claim again fails, this claim fails again, too.

## VIII. PLAINTIFFS FAIL TO PLEAD MOXY VIOLATED THE VPPA

In its Order, the Court found that although Moxy was subject to the VPPA, it had not violated that statute because Plaintiffs had not pled Moxy had knowingly disclosed Plaintiffs' personally identifiable information.[6] Plaintiffs fail to allege new facts supporting that Moxy can be liable under that act.

### A. Moxy Did Not Collect Any PII As Defined By The VPPA

The VPPA prohibits the "knowing[] disclos[ure], to any person, [of] personally identifiable information [("PII")] concerning any consumer" of the video tape service provider. 18 U.S.C. § 2710(b)(1). In congruence with the purpose underlying the statute, PII is strictly circumscribed as constituting only "information which *identifies a person as having requested or obtained specific video materials or services* from a video tape service provider."[7] *Id.* § 2710(a)(3) (emphasis added). Accordingly, and although it "may seem obvious," "what is barred is disclosing information that 'identifies a person *as having requested or obtained* specific video materials'." *In re Hulu Priv. Litig.*, 86 F.Supp.3d 1090, 1096 (N.D. Cal. 2015) (emphasis in original). The VPPA does not concern or protect PII untethered to an individual's video-

---

[6] Moxy disputes that it is a video tape service provider within the meaning of the VPPA and reserves its right to argue that issue at the appropriate time.

[7] *In re Hulu Priv. Litig.*, 86 F.Supp.3d at 1095 ("The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos.")

viewing history.

Here, four of the five Plaintiffs allege that they provided specific PII, including their names and pictures of themselves, in chats that they claim were "linked to their request" for video content.[8] SAC ¶¶ 1198-1202; *see also id.* ¶ 274. Critically, however, ***none of those four Plaintiffs allege they ever requested video content from Moxy or a supposed Moxy-affiliated Creator***. *See* SAC ¶¶ 622, 627, 639-641 (describing Plaintiffs' payments, none of which include payments or requests for videos). Indeed, Plaintiffs nowhere allege that Moxy (or anyone acting on its behalf) ever requested any PII for any reason at any time, much less in connection with a request for video content. *Id.*; *see also* ¶ 1209 (alleging that at most, Agency Defendants were aware of the "*possibility* that [] PII might be disclosed") (emphasis added). Plaintiffs' general allegation that fans *can* request a video from management agencies is simply not a valid substitute for an allegation that any Plaintiff *did in fact* request or obtain a video from Moxy. *See* SAC ¶¶ 273-74. In the absence of any allegation that any Plaintiff himself actually requested or obtained a video from Moxy, any PII they provided cannot "identif[y them] *as having requested* or obtained specific video materials or services." *In re Hulu Priv. Litig.*, 86 F.Supp.3d at 1096 (emphasis in original).

Accordingly, any PII Plaintiffs allegedly disclosed falls outside the scope of the VPPA, and Plaintiffs cannot bring a claim against Moxy under that statute.

### B. Moxy Did Not Knowingly Disclose PII

Even assuming, *arguendo*, that Moxy did collect PII protected by the VPPA, Plaintiffs have still failed to allege that Moxy knowingly disclosed that PII.

To plead a claim under the VPPA, Plaintiffs must plead Moxy "knowingly disclose[d]" their PII. *See* 18 U.S.C. § 2710(b)(1), (a)(3). While the statute does not define "knowingly," "[o]ther cases involving violations of privacy statutes show that

[8] Because Plaintiff A.L. does not allege that he provided any PII, he cannot assert a claim under the VPPA at all.

in the context of a disclosure of private information, 'knowingly' means consciousness of transmitting the private information." *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *15 (N.D. Cal. Apr. 28, 2014). In other words, Moxy must have affirmatively and consciously transmitted Plaintiffs' PII to another. *See, e.g.*, *Nguyen v. Elsevier Inc.*, No. 25-CV-00825-NC, 2025 WL 2901059, at *4 (N.D. Cal. Oct. 7, 2025) (finding possible disclosure where plaintiff alleged defendant "disclosed to [a third party] in a single transmission her full name, email address, and the title of the video she viewed"). But that is *not* what Plaintiffs allege here.

Here, Moxy *did not* allegedly disclose any of Plaintiffs' PII at any time. Instead, the *only* alleged disclosure of Plaintiffs' PII was *Plaintiffs' own disclosure* to chatters "in chats" that occurred *after* Moxy allegedly had facilitated chatters' access to Creators' accounts. SAC ¶¶ 1198-1203. Moxy's actions simply cannot constitute "knowing disclosure" of Plaintiffs' PII. Indeed, courts are clear that in order for a disclosure to be knowing, the "disclosure cannot depend on circumstances outside of [defendant's] control." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

Plaintiffs seek to dramatically expand the reach of this statute far beyond its strict limits, transforming it into one of strict liability rather than the intentional action explicitly required by the statute. *See id.* (the VPPA is not "a strict liability statute"). This Court should reject Plaintiffs' attempt.

### C. Any "Knowing Disclosure" Necessarily Occurred Within Moxy's "Ordinary Course of Business" And Is Inactionable

Finally, and even if the other elements of a claim were met, Moxy's alleged disclosure of the information to chatters would be lawful because it occurred within Moxy's "ordinary course of business." 18 U.S.C. § 2710(b)(E).

Under the VPPA, the "ordinary course of business" includes "order fulfillment [and] request processing." 18 U.S.C. § 2710(a)(2). Here, Plaintiffs concede that chatters exist to "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content," SAC ¶ 274(c), which requires "Chatters to

have access to Creator Accounts on the OnlyFans platform," *id.* ¶ 1214.[9] Because the chatters receive the alleged PII as a part of their order fulfillment process, any disclosure to them is perfectly lawful. *See Sterk v. Redbox Automated Retail LLC*, 770 F.3d 618 (7th Cir. 2014) (VPPA not violated where disclosure was part of defendant's "ordinary course of business" of fulfilling orders and processing requests).

Indeed, Plaintiffs' claim that any PII disclosures are outside of Moxy's ordinary course of business is necessarily inconsistent with their claim that Moxy is a video tape service provider. So long as Moxy's "ordinary course of business" is engaging chatters to conduct the "selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators," as Plaintiffs allege it is, SAC ¶ 1204, the chatters' access to Plaintiffs' information in order to provide that content cannot violate the VPPA. Either Moxy's ordinary course of business is the communication with Plaintiffs (and other Fans) for the provision of video materials, or Moxy is not a video tape service provider. Plaintiffs cannot have it both ways.

## IX. PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

Plaintiffs invoke the "unfair" prong with respect to Moxy, alleging it "us[ed] chatters" to "impersonate" creators and "facilitate the relationship" to collect fees. SAC ¶ 1321. This is merely a repackaging of their RICO and VPPA claims under a new banner. In their RICO claim, for example, Plaintiffs allege Moxy fraudulently employed "Chatters to impersonate the Creator and communicate with Fans," which was intended to "deceive Fans and lure them into paying money for a fraudulent

[9] Plaintiffs' conclusory allegations that Moxy's supposed disclosures were not "in the 'ordinary course of business,' but were done for the purpose of illegal and fraudulent conduct" is insufficient under basic pleading standards. *See* SAC ¶ 1215.

'personal' virtual relationship and associated content." *Id.* ¶¶ 789, 795. And in their VPPA claim, Plaintiffs allege Moxy uses chatters "to manipulate Fans into purchasing additional content based on false pretenses." *Id.* ¶ 1203. Because Plaintiffs' RICO and VPPA claims fail, their UCL claim fails too. *Punian v. Gillette Co.*, Case No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (claim under UCL's unfair prong failed where the "cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the FAL, CLRA, and fraudulent prong of the UCL); *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing the UCL claim because the plaintiffs' "unfair prong claims overlap entirely with their claims of fraud"). Indeed, that was precisely the case with respect to Plaintiffs' UCL claim against Fenix Defendants in the FAC. Order at 29.

## X. CONCLUSION

Plaintiffs' Second Amended Complaint is riddled with the exact same flaws this Court already considered and ruled upon. The claims against Moxy should each be dismissed with prejudice.

DATED: January 23, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________
Oliver Rocos
Attorneys for Defendant Moxy Management

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Moxy Management, certifies that this brief contains 6560 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: January 23, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________
Oliver Rocos
Attorneys for Defendant Moxy Management