Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a Siren Agency), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),

Defendants.

Case No. 8:24-cv-01655-FWS-SSC

**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO CERTAIN AGENCY DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**

| | |
|---|---|
| Judge: | Hon. Fred W. Slaughter |
| Courtroom: | 10D |
| Date: | March 19, 2026 |
| Time: | 10:00 a.m. |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Verge's arguments—that the Non-California Plaintiffs claims should be dismissed for forum non conveniens—fail to establish that this is not the proper forum. .......... 2

1. Verge applies the wrong legal standard to its analysis. .......... 4

2. Verge is not a party to the TOS and was expressly excluded from asserting rights based on the TOS. .......... 5

3. There is no basis to apply the TOS to Verge under the closely related doctrine. .......... 6

4. Equitable estoppel does not apply to the Non-California Plaintiffs' claims against Verge. .......... 11

B. Verge, Content X, Unruly, and Behave have not shown why the VPPA and UCL claims should be dismissed. .......... 11

C. Verge, Unruly, Behave, and Content X do not show why the RICO claims against them should be dismissed. .......... 12

III. CONCLUSION .......... 14

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) .......... 5

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) .......... 8, 9

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .......... 4

*JH Portfolio Debt Equities, LLC v. Garnet Cap. Advisors, LLC*,
217CV08839CASJCX,
2018 WL 6112695 (C.D. Cal. Mar. 16, 2018) .......... 8

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 7, 8, 9

*Pirozzi v. Fiserv Corp.*,
668 F. Supp. 3d 968 (C.D. Cal. 2022) .......... 8

*Velaro, Inc. v. National Flood Services, LLC*,
No. CV 20-5078-DMG (PDX),
2021 WL 8779924 (C.D. Cal. July 7, 2021) .......... 7, 8, 9

## I. INTRODUCTION

Defendants Verge Agency, Inc. ("Verge"), Content X, Inc. ("Content X"),[1] Unruly Agency LLC ("Unruly"), and Behave Agency LLC ("Behave") (collectively, "Agency Defendants") move to dismiss the Second Amended Complaint ("SAC") (Dkt. 221). Dkts. 229–232. Plaintiffs' claims focus on the harm caused by Agency Defendants, specifically by the Chatter Scams.[2] Agency Defendants operate Creators' accounts on OnlyFans, using Chatters to impersonate Creators. Plaintiffs were promised real conversations with real Creators. However, behind the scenes, Agency Defendants took over—hiring Chatters to impersonate Creators and deliberately manipulate Plaintiffs to extract maximum value in the form of Premium Content Fees. These Chatter Scams emanated from Agency Defendants in California, where each of the Agency Defendants are located.

Only Verge makes substantive arguments seeking to dismiss the SAC, focusing entirely on whether the forum clause in the TOU dictates that Verge and Plaintiffs B.L., S.M., and A.L. (the "Non-California Plaintiffs") are required to litigate their claims in the U.K. Verge makes these arguments even though it is not a party to the TOU and Verge's principal place of business is in Los Angeles, California. Verge misconstrues the case law and the application of the TOU. As such, its motion should be denied.

---

[1] Plaintiffs note for the Court that while the Content X Motion to Dismiss did not make any substantive arguments—incorporating by reference the arguments made by co-Defendants—its motion was filed out of time.

[2] Unless otherwise defined herein, Plaintiffs adopt and use the definitions and capitalized terms from the SAC.

The remaining Agency Defendants fail to make any substantive arguments, instead relying on the arguments made by co-Defendants. As each of those motions fails, the Agency Defendants' motions also fail.

## II. ARGUMENT

### A. Verge's arguments—that the Non-California Plaintiffs claims should be dismissed for forum non conveniens—fail to establish that this is not the proper forum.

Defendant Verge argues that the forum non conveniens clause in a contract—to which they are not a party or beneficiary, and explicitly states they shall receive no rights under the contract—somehow gives them the extraordinary right to compel litigation in the U.K. This is incorrect for two reasons:

Verge first cites the contract between Plaintiffs and OnlyFans' containing a forum selection clause (the TOU) and argues that it controls the Non-California Plaintiffs' claims against Verge. But Verge ignores, either willfully or ignorantly, that the TOU explicitly states that it does not give any rights to Verge. Verge, moreover, does not claim it is party or beneficiary under the TOU or an agent of OnlyFans, and during the meet and confer that preceded the filing of the motions to dismiss, Fenix's attorney refused to confirm that Verge is an agent of OnlyFans. For these reasons, the contract between OnlyFans and Plaintiffs has no application to the Non-California Plaintiffs' claims against Verge.

Verge next argues that the forum selection clause in the agreement still applies because the Non-California Plaintiffs' claims are "closely related" to the claims covered by the agreement to which they are not a party and excluded from receiving benefits. This is incorrect for five reasons:

**First**, they are not a party to the contract and cannot receive benefits under a contract they are explicitly excluded from.

**Second**, the case law cited by Verge involves sophisticated defendants, mostly large corporations, who negotiated a contract with a forum selection clause and courts require their related corporate entities or executives to litigate in the same forum as the corporate defendant that negotiated and agreed to the forum selection clause. Here, the Non-California Plaintiffs have no claims against Fenix/OnlyFans and their claims are limited to claims against the Agency Defendants, each based in California. As such, there is no "closely related" contract to apply, let alone one negotiated at arm's length by related entities. Each Non-California Plaintiff is an ordinary consumer, not a sophisticated corporation, who never "negotiated" a forum selection clause when they entered an adhesion contract with OnlyFans, a non-party to the claims asserted by the Non-California Plaintiffs. Verge, moreover, is not a party to the TOU or a related entity under the contract. The case law cited by Verge has no application here.

**Third**, the closely related doctrine applies when it is reasonably foreseeable for a party to litigate in the chosen forum when asserting claims against a party. Here, the TOU excluded Verge from asserting rights under that contract, meaning no reasonable consumer would expect to litigate against the Agency Defendants in the U.K., as there was no basis to do so. Any reasonable consumer—such as the Non-California Plaintiffs—would expect to sue the Agency Defendants in California, Verge's home state, or their own home state.

**Fourth**, Plaintiffs are not aware of any case law applying the closely related doctrine to contracts of adhesion in a consumer context where the party seeking to

enforce the clause is excluded from the contract. Verge cites multiple cases, none of which apply to an adhesion contract in a consumer transaction, especially ones involving relatively low-dollar claims. Each case cited by Verge involves sophisticated corporate entities, or employees, who knew or should have reasonably foreseen that they would be forced to litigate in the chosen forum. Those cases have no application here.

**Fifth**, applying the forum selection clause to the Non-California Plaintiffs' claims would be contrary to public policy because: (1) it would eviscerate the rights of consumers to file suit against the Agency Defendants for any interaction tangentially involving OnlyFans; (2) the application of the clause to the Non-California Plaintiffs would, in reality, mean that individual consumers not file a claim, not that they would litigate in the U.K.; (3) granting Verge's motion would give them the ability to commit any bad act they wish without repercussion, so long as the violation is less than the cost of litigation; and (4) it would be unreasonable to force consumers to litigate in the U.K. based on a contract that does not apply or give rights to Verge, a California corporation.

**1. Verge applies the wrong legal standard to its analysis.**

It is undisputed that there is no contract between the Non-California Plaintiffs and Agency Defendants that contains a forum selection clause. As such, "to prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

Verge cites the wrong standard. It cites case law where the courts deferred to the parties' chosen forum where the "parties" to the dispute agreed to a forum selection clause. *See, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52-53 (2013) (sophisticated construction companies negotiated and entered into a contract with a forum selection clause). Here, the Non-California Plaintiffs and Verge did not enter into an agreement containing a forum selection clause, or any agreement whatsoever. The Fenix Defendants are not parties to the claims by the Non-California Plaintiffs and, as explained below, the OnlyFans TOU do not give any rights to Verge, including the right to invoke the forum selection clause.

Because there is no contractual forum selection clause between the parties, the burden to show why claims against a California corporation by U.S. citizens for actions occurring in the U.S. must be litigated in the U.K. is on Verge. And because Verge has not even attempted to meet this standard, its motion fails as a matter of law.

**2. Verge is not a party to the TOS and was expressly excluded from asserting rights based on the TOS.**

Verge's first argument is that the OnlyFans forum selection clause applies to the Non-California Plaintiffs' claims against Verge. While Verge takes pains to argue that the TOS is a binding contract between Plaintiffs and OnlyFans, that is not in dispute. In making this argument, Verge does not claim ***it*** is a party to the TOS or a beneficiary. This is because Verge's argument is contrary to the plain language in the TOS which explicitly excludes Verge from asserting rights based on the TOS. Contained within the TOS is the TOU for all Users. The TOU contains the following clause, which Verge fails to cite:

> **Your agreement with us does not give rights to any third parties**, except that the exclusions and limitations of liability in section 14 (Who is responsible for any loss or damage suffered by you?) and the terms in section 16 (Terms relating to disputes) may be enforced by our subsidiary companies, employees, owners, representatives and agents.

SAC ¶ 235 (emphasis added).[3] Under the Term's plain language, the agreement between Plaintiffs and OnlyFans does not give any rights to Verge. *Id.* The only exception is if Verge was considered a subsidiary, employee, owner, representative, or agent of OnlyFans, but OnlyFans has never asserted that the Agency Defendants, including Verge, fall under these categories. *Id.*; *see also* Declaration of Michella A. Kras at ¶¶ 3–5 (verifying, during the meet and confer process, that the Agency Defendants are not OnlyFans' agents). Because the TOS does not apply to Verge and gives no rights to Verge, there is no basis to apply the forum selection clause to Plaintiffs' claims against Verge.

**3. There is no basis to apply the TOS to Verge under the closely related doctrine.**

Despite this plain language, Verge argues that it can enforce the forum selection clause, citing the Court's Order. Dkt. 229 at 10 (citing Dkt. 209 at 32). Respectfully, the cases relied on by Verge and the Court do not support a finding that the forum selection clause applies here for four reasons:

---

[3] This is the version of the TOU that was in effect at the time Plaintiffs filed their Complaint. SAC n.132. The current version of the TOU contains substantially similar language: "Your agreement with us does not give rights to any third parties, except that each Subsidiary and our employees, owners, representatives and agents may enforce the exclusions and limitations of liability and the terms relating to disputes in our Terms of Service." ONLYFANS, Terms of Service, available at https://onlyfans.com/terms (last visited Feb. 17, 2026).

**First**, Verge and the Court cite two cases to support the finding that OnlyFans' forum selection clause in their TOS applies to the Non-California Plaintiffs' claims as a matter of law, *Velaro, Inc. v. National Flood Services, LLC*, No. CV 20-5078-DMG (PDX), 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021), and *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988). Both cases involve sophisticated entities and their related corporations where at least one corporation executed, and was bound to, a contract containing a forum selection clause, facts that are not present here. *Id.* In *Velaro*, the non-signatory was the parent corporation that purchased the company that had (1) negotiated and signed the agreement with the forum selection clause, (2) negotiated the renewal of the same contract, and (3) was the reason the contract at issue was breached. *Velaro*, 2021 WL 8779924, at *5. Under these circumstances, the court found that the forum selection clause applied to the parent corporation. *Id.* (citing *Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1082 n.6 (C.D. Cal. 2004) (holding that corporate officials that did not sign a contract were bound by a forum selection clause in the contract because the corporation signed it and the officials were "closely related to the contractual relationship")).

Similarly, in *Manetti-Farrow*, the parties to the agreement were two sophisticated corporations who distributed and sold Gucci-branded luxury products, each of whom expressly negotiated and agreed to the forum selection clause. 858 F.2d at 514–515. The non-signatories subject to the forum selection clause were related "Gucci" corporations—including Gucci America who signed a Consent and Ratification Agreement, consenting to the terms of the contract—and executives of

the Gucci conglomerate with obvious ties to Italy or located in Italy, the forum selected by the corporations. *Id.* at 510–511, 514 n.5.

In contrast, Plaintiffs are ordinary consumers who agreed to an adhesion contract with an unrelated party that expressly excluded Verge from the agreement and stated that the contract gives Verge no rights. Unlike the plaintiffs in *Mannetti-Farrow* and *Velaro*, the Plaintiffs (1) never negotiated the forum selection clause, (2) did not breach the contract giving rise to the claims, (3) have no relationship with the chosen forum, and (4) the entity trying to enforce the clause is explicitly excluded from the entire agreement, including the forum selection clause. The cases have no application here.

Verge cites three additional cases to support its position, but each suffers from the same infirmity. In *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020), the court applied a forum selection clause to owner-operator truck drivers even though only one driver had signed a contract with a forum selection clause. Unlike here, the defendant was a party to the contract containing the forum selection clause, the contract gave rights to that defendant, and at least one driver signed the contract with the forum selection clause. *Id.* at 1029. Here, Verge is not a party to the TOS, the TOS give no rights to Verge, and none of the Non-California Plaintiffs signed a contract with Verge containing a forum selection clause. *Bromlow*, like the other cases cited by Verge, are factually inapposite. *See also Pirozzi v. Fiserv Corp.*, 668 F. Supp. 3d 968, 973–74 (C.D. Cal. 2022) (applying clause to related corporate entities and executive who signed the contract for his corporation); *JH Portfolio Debt Equities, LLC v. Garnet Cap. Advisors*, *LLC*, 217CV08839CASJCX, 2018 WL 6112695, at *5 (C.D. Cal. Mar.

16, 2018) (applying forum selection clause to sophisticated corporation who negotiated clause where defendant is a signatory to clause and where claims arising from contract are closely related to claims asserted by corporation).

**Second**, the more reasoned application of the "closely related doctrine" set forth in *Mannetti-Farrow* and *Valero*, is that a forum selection clause may be enforced against a non-signatory when it is foreseeable that the non-signatory will be subject to the clause. *See Bromlow*, 438 F. Supp. 3d at 1029 (subjecting party to forum selection clause because it was foreseeable that clause would apply and claims would move to different forum). This makes sense with respect to the facts in the cases cited by Verge, involving parties, primarily large corporations, who knew or should have known that they would be subject to a lawsuit in the chosen forum. It makes no sense here where Verge seeks to enforce a forum selection clause from an unrelated company, that explicitly excludes it from the agreement, and any reasonable consumer—based on the agreement's plain language—would objectively believe that the clause would not apply to their claims against the Agency Defendants.

**Third**, Plaintiffs are aware of no case law applying the closely related doctrine to contracts of adhesion in a consumer context where the party seeking to enforce the clause is excluded from the contract, nor does Verge cite any cases involving consumer adhesion contracts. Indeed, the cases relied on by *Manetti-Farrow* and *Valero*, support Plaintiffs' position. *See, e.g.*, *Velaro*, 2021 WL 8779924, at *5 (citing *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (applying forum selection clause to dispute between airlines and diamond mining company because airline was a third

party beneficiary under the contract where Third Circuit law "has held that a forum selection clause can restrict a third-party beneficiary to the designated forum.")). Here, Verge is not a third-party beneficiary to the agreement[4] and is explicitly excluded from obtaining any rights under the agreement. The doctrine does not apply to the Non-California Plaintiffs' consumer claims.

**Fourth**, the "closely related doctrine," as applied to this case and any similar consumer case, would be anathema to public policy. If Verge, a California corporation, is correct and the OnlyFans forum selection clause applies, they would be immune from suit. No reasonable consumer can or would litigate these claims in the U.K. against Verge, and the Court's acceptance of Verge's argument would apply to all consumers not just the Non-California Plaintiffs. Verge could break the law and defraud consumers because it would be cost prohibitive and economically infeasible to litigate relatively low dollar claims in a foreign country, especially when the consumer never agreed to do so. Indeed, there is no reason to believe that Verge truly wants to litigate in the U.K. or apply U.K. law. The reality is that Verge is trying to avoid litigation, not change forums. Last, it would be unreasonable to force consumers to litigate in a forum under a contract that does not apply to Verge. There is simply no basis to apply OnlyFans' forum selection clause to the Non-California Plaintiffs' claims against Verge, a California corporation with its principal place of business in Los Angeles, California, with no known connection to the U.K.

[4] Verge does not even attempt to argue it is a third-party beneficiary of the TOS.

#### 4. Equitable estoppel does not apply to the Non-California Plaintiffs' claims against Verge.

Perhaps recognizing that the case law does not support its position, Verge makes a cursory argument that the doctrine of equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Dkt. 229 at 11. But this only confirms that Verge has not read the contract. The contract does not give Verge any rights, such as a right to litigate claims in the U.K. SAC ¶ 235. The Non-California Plaintiffs are not trying to "avoid the burdens [the] contract imposes" with respect to Verge, (Dkt. 229 at 11) (quoting *Hua Nan Com. Bank v. HSBC Bank USA, N.A.*, No. CV 10-8773 PSG (EX), 2011 WL 13217782, at *9 (C.D. Cal. May 19, 2011)), because Verge has no rights under the agreement. Equitable estoppel has no application here.

### B. Verge, Content X, Unruly, and Behave have not shown why the VPPA and UCL claims should be dismissed.

Other than Verge's arguments about the forum clause, it does not put forth any additional arguments as to why the VPPA and UCL claims should be dismissed. Instead, it incorporates by reference the arguments made by "co-defendants" citing Fenix's Motion to Dismiss (Dkt. 225) and Moxy's Motion to Dismiss (Dkt. 228). Dkt. 229 at 12 n.2. Content X, Unruly, and Behave similarly do not put forward any arguments as to why the SAC fails to state a claim against them under the VPPA and UCL. Instead, they incorporate by reference the arguments made by their co-Defendants. Dkt. 230 at iii; Dkt. 231 at 2–3; Dkt. 232 at 2. But many of the arguments made by Fenix, Moxy, and Creators Inc. are specific to the allegations against those Defendants. *See, e.g.*, Dkt. 225 at 15 (Plaintiffs do not

plead Fenix knowingly disclosed PII); Dkt. 227 at 7–10 (Plaintiffs do not allege fraudulent statements made by Creators Inc.), 17 (arguing McKinley Richardson may not have been represented by Creators Inc. and Plaintiffs do not identify any statements Creators Inc. made on her behalf); Dkt. 228 at 24–25 (Moxy did not collect PII). As such, Agency Defendants have not shown why the SAC should be dismissed as against them. To the extent the arguments apply outside the facts alleged against those co-Defendants, Plaintiffs incorporate their responses to Fenix, Moxy, Creators Inc., and Verge.

**C. Verge, Unruly, Behave, and Content X do not show why the RICO claims against them should be dismissed.**

Verge, Unruly, Behave, and Content X also fail to provide substantive responses to Plaintiffs' RICO claims, preferring instead to join other filings or incorporate by reference their previous filings. But by failing to address allegations that involve each of their agencies, the Chatters they employ, and the Creators they represent, Verge, Unruly, Behave, and Content X are unable to defeat Plaintiffs' RICO claims.

The primary problem is that Fenix, Creators Inc., and Moxy's responses make arguments specific to themselves—such as their arguments on conduct and predicate acts—which the remaining Agency Defendants cannot join because they do not advocate for them in any way. Without addressing the specific allegations against them and explaining how those allegations are insufficient, Verge, Unruly, Behave, and Content X are not benefited in any way by the responses of other Defendants.

By failing to provide responses to these claims in their own motions, Verge, Unruly, Behave, and Content X fail to present any argument that would rebut the

SAC's overwhelming allegations against them. For instance, the SAC specifically alleges that each joined and furthered the Content Fraud Enterprise:

**Verge:**

- Verge provides Chatter services, employing Chatters to impersonate Creators and communicate with Fans (SAC ¶ 446); and
- managing its Represented Creators, Verge uses deceptive taglines promising personal interactions, when in reality, it provides Chatter services. (SAC ¶¶ 1163–1167).

**Unruly and Behave (collectively, the "Unruly Defendants"):**

- As part of its representation, the Unruly Defendants emphasize the personal nature of the connection between Fans and Creators, while employing Chatters on behalf of their Represented Creators. (SAC ¶¶ 401, 407, 410–413, 938–940); and
- the Unruly Defendants utilized Chatters to communicate with Fans, including Plaintiff N.Z. Relying on those messages, N.Z. paid Stefanie Gurzanski and Nicky Gile (Unruly represented creators) collectively over $500 from June 28, 2023–November 22, 2024 (SAC ¶ 936).

**Content X:**

- Content X emphasizes the personal nature of the interactions between Fans and Represented Creators while simultaneously employing and directing Chatters to respond to Fans. (SAC ¶¶ 418, 421–422, 1011–1015).

Nothing in the responses that Verge, Unruly, Behave, and Content X incorporate by reference address these allegations, nor would they. The other

responses also fail to address the SAC's new allegations regarding the alternative, RICO conspiracies between Fenix and each of the remaining Agency Defendants. Thus, by choosing to join other pleadings, as they are free to do, the remaining Agency Defendants waived the opportunity to specifically address Plaintiffs' RICO claims against each of them.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants Content X, Inc., Verge Agency, Inc., Unruly Agency LLC, and Behave Agency LLC's Motions to Dismiss.

DATED: February 19, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B Carey*

Robert B. Carey (*pro hac vice)*
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (*pro hac vice*)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215)540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,725 words, which complies with the word limit of L.R. 11-6.1. The undersigned also certifies that all citations were checked and accurately reflect the propositions put forth which complies with this Court's Order entered on December 12, 2025 (ECF No. 207).

Dated: February 19, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey