Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a Siren Agency), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),

Defendants.

Case No. 8:24-cv-01655-FWS-SSC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT ELITE CREATORS LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Judge: Hon. Fred W. Slaughter
Courtroom: 10D
Date: March 19, 2026
Time: 10:00 a.m.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The SAC establishes colorable RICO and RICO conspiracy claims. .......... 2

1. Creators Inc. distorts the RICO pleading framework. .......... 2

2. The SAC thoroughly outlines the RICO conspiracy, Creators Inc.'s Role, and its predicate acts. .......... 4

3. The SAC alleges an Enterprise that involves Creators Inc. .......... 7

a. The common purpose uniting the Content Fraud Enterprise is clear. .......... 9

b. The Content Fraud Enterprise only exists because of the clear structure between and among its members. .......... 12

B. Plaintiffs have alleged a UCL claim against Creators Inc. .......... 16

C. The Court's Order did not limit how Plaintiffs could amend their complaint. .......... 18

D. Creators Inc. has not shown why the VPPA claim should be dismissed or that the forum clause in the TOU applies to Creators Inc. .......... 19

III. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bannon v. United States*,
156 U.S. 464 (1895) .......... 3

*Bias v. Wells Fargo*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) .......... 13

*Boyle v. United States*,
556 U.S. 938 (2009) .......... 7, 13

*Bryant v. Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007) .......... 4

*Carey v. J.A.K.'s Puppies, Inc.*,
763 F. Supp. 3d 952 (C.D. Cal. 2025) .......... 6

*CBC Framing, Inc. v. Flores*,
No. CV0800150MMMJCX,
2008 WL 11337555 (C.D. Cal. Sept. 22, 2008) .......... 13

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .......... 9

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) .......... 7

*Cordance Corp. v. Amazon.com, Inc.*,
255 F.R.D. 366 (D. Del. 2009) .......... 18

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 8, 12

*Howard v. America Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) .......... 2

*Jameson Beach Prop. Owners Ass'n v. United States*,
No. 2:13-cv-01025-MCE-AC,
2014 WL 4925253 (E.D. Cal. Sept. 29, 2014) .......... 19

*In re Jamster Mktg. Litig.*,
No. 05CV0819 JM (CAB),
2009 WL 1456632 (S.D. Cal. May 22, 2009) .......... 9

*LD v. United Behav. Health*,
508 F. Supp. 3d 583 (N.D. Cal. 2020) .......... 9

*Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*,
530 F.3d 1339 (11th Cir. 2008) .......... 16

*McFadden v. Newsome*,
No. 221CV02411DADDBP,
2022 WL 4111024 (E.D. Cal. Sept. 8, 2022) .......... 19

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 7

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) (en banc) .......... 2, 3, 4, 10

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) .......... 16

*United States ex rel. Ormsby v. Sutter Health*,
444 F. Supp. 3d 1010 (N.D. Cal. 2020) .......... 16

*RJ v. Cigna Health & Life Ins. Co.*,
625 F. Supp. 3d 951 (N.D. Cal. 2022) .......... 4, 6

*Salinas v. United States*,
522 U.S. 52 (1997) .......... 2, 3

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) .......... 4

*U.S. v. Browne*,
505 F.3d 1229 (11th Cir. 2007) .......... 15

*United States v. Aron*,
463 F.2d 779 (9th Cir. 1972) .......... 16

*United States v. Bagnariol*,
665 F.2d 877 (9th Cir. 1981) .......... 15

*United States v. Duran*,
189 F.3d 1071 (9th Cir. 1999) .......... 8

*United States v. Escalante*,
637 F.2d 1197 (9th Cir. 1980) .......... 8

*United States v. Milheiser*,
98 F.4th 935 (9th Cir. 2024) .......... 4

*United States v. Miller*,
953 F.3d 1095 (9th Cir. 2020) .......... 4

*United States v. MyLife.com, Inc.*,
499 F. Supp. 3d 757 (C.D. Cal. 2020) .......... 17, 18

*United States v. Perry*,
550 F.2d 524 (9th Cir. 1977) .......... 8

*United States v. Stapleton*,
293 F.3d 1111 (9th Cir. 2002) .......... 6

*Urista v. Bank of Am., N.A.*,
No. C11-03097-HRL,
2012 WL 10596 (N.D. Cal. Jan. 3, 2012) .......... 19

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) .......... 2

**Statutes**

18 U.S.C. § 1343 .......... 4, 5, 6

18 U.S.C. § 1961 .......... 7

18 U.S.C. § 1962 .......... 2, 3, 4, 7

**Rules**

Fed. R. Civ. P. 9 .......... *passim*

## I. INTRODUCTION

Defendant Elite Creators LLC d/b/a Creators Inc. ("Creators Inc.") moves to dismiss the Second Amended Complaint ("SAC") (Dkt. 221). Dkt. 227. Plaintiffs allege that Creators Inc. engaged in what the SAC describes as Chatter Scams.[1] Plaintiffs subscribed to Creators on the OnlyFans platform. Plaintiffs believed they were chatting with and forming relationships with these Creators, and because of that belief, subscribed to and paid Premium Content Fees. Unbeknownst to Plaintiffs, Creators Inc. was actually employing Chatters to impersonate their Represented Creators and extract money from Plaintiffs. Despite this egregious conduct, Creators Inc. argues that the claims against them should be dismissed. Each of their arguments fails. Plaintiffs have amended the SAC to state claims for RICO, UCL, and VPPA, curing any deficiencies identified by the Court. Creators Inc.'s argument about the limits of the Court's Order is also meritless. Creators Inc.'s motion to dismiss should be denied.

## II. ARGUMENT

Creators Inc. asks this Court to dismiss the RICO and UCL claims, argues Plaintiffs exceeded the Court's mandate in drafting the SAC, and adopts arguments made by its co-Defendants on the VPPA and forum clause. First, accepting the well-pleaded facts of the SAC as true, Plaintiffs have stated claims under RICO and the UCL. Second, Creators Inc. offers no authority for its interpretation of the Court's order, and case law supports that the Order granting leave to amend had no restrictions. Third, Creators Inc., in relying on failed arguments by its co-

[1] Unless otherwise defined herein, Plaintiffs adopt and use the definitions and capitalized terms from the SAC.

Defendants, has not shown why the VPPA claim should be dismissed or why the forum clause in the TOU applies to Creators Inc.

**A. The SAC establishes colorable RICO and RICO conspiracy claims.**

Creators Inc.'s primary argument is that the SAC does not say enough about its particular role in the conspiracy, specific statements that it made to fans, and that it relies too heavily on allegations made on "information and belief." Dkt. 227 at 4–10. But Creators Inc. paints with far too broad a brush, ignoring the weight of the SAC's many allegations against both it and the Content Fraud Enterprise. Creators Inc. also ignores well-settled law regarding the RICO pleading standard; namely, that "'RICO is to be read broadly'" and should "'be liberally construed to effectuate its remedial purposes.'" *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985)). This is why the Ninth Circuit has repeatedly cautioned district courts to be "mindful of *Odom*'s enjoinder ***not to be stingy in interpreting and applying RICO***." *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008) (emphasis added).

**1. Creators Inc. distorts the RICO pleading framework.**

Operating on the misguided notion that Plaintiffs must plead every single RICO element—including multiple predicate acts[2]—as if every single co-conspirator were independently operating their own Content Fraud Enterprise,

[2] Defendant generally ignores, and appears to concede, that a RICO conspiracy under 18 U.S.C. § 1962(d) does not require evidence of predicate acts, only "an agreement that is a substantive violation of RICO." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see also Salinas v. United States,* 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.").

Creators Inc. fashions its own legal standard to defeat Plaintiffs' RICO claim. But for more than 100 years, American courts have rejected similar arguments "because it would erode the common-law principle that, so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Salinas v. United States*, 522 U.S. 52, 63–65 (1997). As early as 1895, the Supreme Court confirmed that "[t]o require an overt act to be proven against every member of the conspiracy, or a distinct act connecting him with the combination to be alleged, would not only be an innovation upon established principles, but would render most prosecutions for the offense nugatory." *Bannon v. United States*, 156 U.S. 464, 469 (1895). Indeed, "[a] person, [ ] may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas v. United States*, 522 U.S. 52, 64 (1997) (citing *United States v. Rabinowich*, 238 U.S. 78, 86 (1915)).

At bottom, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, . . . He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." *Salinas*, 522 U.S. at 65. As the Ninth Circuit's Model Jury Instructions clarify, "[o]ne becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy." Model Ninth Circuit Jury Instructions, Section 8.20.

To plead a substantive RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom*, 486 F.3d at 547. To plead a RICO pattern, which is

the core of what Creators Inc. challenges, at least two predicate acts of racketeering activity—in this case, wire fraud—need to be alleged.[3] *See RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 961 (N.D. Cal. 2022); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018). "Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant." *RJ*, 625 F. Supp. 3d at 961 (cleaned up).

For its part, wire fraud (18 U.S.C. § 1343) requires the following elements: (1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deprive victims of their property. *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1264 (C.D. Cal. 2007); *United States v. Miller*, 953 F.3d 1095, 1102-03 (9th Cir. 2020); *see also United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024) (explaining that "not just any lie that secures a sale constitutes fraud, and that the lie must instead go to the nature of the bargain . . . A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction").

**2. The SAC thoroughly outlines the RICO conspiracy, Creators Inc.'s Role, and its predicate acts.**

Creators Inc.'s core premise—lack of particularized allegations regarding its role in the conspiracy—requires that the Court disregard wide swaths of the SAC, as it cannot do.[4] It makes three overlapping arguments: (i) the "only allegation that

[3] Under 18 U.S.C. § 1962(d), Plaintiffs are not required to demonstrate predicate acts, which Creators Inc. appears to concede and does not even challenge. There is no basis on this record to dismiss Plaintiffs' RICO conspiracy claim under 1962(d).

[4] A motion to dismiss "pursuant to 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Odom*, 486 F.3d at 545 (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)).

Creators Inc. had anything to do the with the alleged fraud" is "made on information and belief," (ii) "Plaintiffs failed to allege the specific content of any representation made by Creators Inc. to any Plaintiff", and (iii) "the SAC does not identify the date or content of even one fraudulent statement." Dkt. 227 at 6–7, 10. Each argument ultimately fails because it ignores the SAC's straightforward allegations.

**The SAC does far more than allege "on information and belief."** According to its *own lawsuits* against former Creators, Creators Inc. forces its represented Creators to "have trained staff members helping [Creators] to manage [their] work load in the DMs." SAC ¶ 360(d). In other words, ***in its own court filings***, Creators Inc. has admitted to the underlying scheme animating the Content Fraud Enterprise. Creators Inc. also utilizes taglines for its Creator's accounts on the OnlyFans platform that falsely promote the direct connection Fans can have with Creators. SAC ¶ 358. For instance, the OnlyFans account for one of its Creators states: "I personally reply to every message, so messages with tips attached get priority! Please be patient if there isn't one!" SAC ¶ 358(a). None of these allegations are made on "information and belief" and each is sufficient to firmly cement Creators Inc.'s role in the Content Fraud Enterprise.

**Creators Inc. conflates predicate acts with the fraudulent acts of the RICO enterprise**. Creators Inc. also argues that the SAC doesn't provide enough evidence that Creators Inc. specifically defrauded anyone. Dkt. 227 at 7–11. But in doing so, it conflates the line between "predicate acts" and the broader RICO conspiracy elements. As to predicate acts, Plaintiffs have clearly alleged more than two instances of wire fraud under 18 U.S.C. § 1343 against Creators Inc.—which

occurs whenever interstate wire transmissions are used to execute a scheme to defraud, or to obtain money or property by fraud. 18 U.S.C. § 1343; *see also United States v. Stapleton*, 293 F.3d 1111, 1116-17 (9th Cir. 2002) (explaining that each "defendant need not personally have mailed the letter or made the telephone call; the offense may be established where one acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can reasonably be foreseen"); *Carey v. J.A.K.'s Puppies, Inc.*, 763 F. Supp. 3d 952, 983–84 (C.D. Cal. 2025) ("To allege mail and wire fraud against Defendants with the required particularity of Rule 9(b), Plaintiffs must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation, and allege the role each defendant performed in the alleged fraudulent scheme involving U.S. mail and/or wire.") (internal cite and quotations omitted).

As outlined above, the SAC amply demonstrates instances in which Creators Inc. utilized interstate wires to further the overarching fraud scheme. For instance, Creators Inc.'s Represented Creators' OnlyFans accounts, which falsely promise a direct connection between Fans and Creators, are a dictionary definition of a fraudulent wire transmission. SAC ¶ 715; *see RJ*, 625 F. Supp. 3d at 963 (finding "three [verification of benefit] calls" were sufficient predicate acts for RICO claim based upon a failure to properly reimburse certain out-of-network claims at the usual and customary rate).

The SAC also makes clear that "[m]any of the precise dates of the fraudulent use of the interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records." SAC ¶ 722. This is not

surprising given Plaintiffs have no access to Creators Inc.'s internal messaging platform, the messages involving its Chatters, or its CRM platforms. In cases such as this, involving corporate fraud, the Ninth Circuit has repeatedly held that Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also, e.g.*, *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[I]n cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant."). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore*, 885 F.2d at 540.

**3. The SAC alleges an Enterprise that involves Creators Inc.**

Another of Creators Inc.'s arguments attacks the RICO enterprise element, asserting it failed to identify a common purpose, coordination among the participants, or allege that Creators Inc. had a sufficient role in the broader enterprise. Dkt. 227 at 11–15. It is wrong in fact and law. To start, there is no formal "coordination" element under 18 U.S.C. § 1962(c). Instead, a RICO enterprise consists of "any union or group of individuals associated in fact . . . proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 944-45 (2009) (internal quotations omitted); 18 U.S.C. § 1961(4). "Such a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods . . . ." *Boyle*, 556 U.S. at 948.

Moreover, a person may be a member of a conspiracy even though the person does not know all the purposes of, or participants in, the conspiracy. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir. 1980) (citing *United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir. 1977)). Likewise, Plaintiffs are not required "to prove that all of the defendants met together at the same time and ratified the illegal scheme." *United States v. Perry*, 550 F.2d 524, 533 (9th Cir. 1977). To prove a conspiracy "the evidence must show that 'each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation.'" *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999) (quoting *Kearney*, 560 F.2d at 1362) (cleaned up). [5]

In short, to demonstrate the existence of the Content Fraud Enterprise, Plaintiffs must plead that it has "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle*, 556 U.S. at 946).

---

[5] On this point in particular, Creators Inc. entirely ignores the bilateral RICO enterprise claims that Plaintiffs have added to the SAC, which are alleged against each Agency Defendant and the Fenix Defendants. SAC ¶¶ 661–1184. Creators Inc. and several other Agency Defendants repeatedly claim "not to know" any of the other Agency Defendants or co-conspirators as outlined in the broader RICO conspiracy—and while that is not a cognizable legal defense—there is no suggestion that they are not aware of OnlyFans, as alleged in the bilateral RICO claims between OnlyFans and each Agency Defendant. Accordingly, any lack of knowledge or coordination arguments are inapplicable to the bilateral RICO claims, SAC Counts II–VIII.

**a. The common purpose uniting the Content Fraud Enterprise is clear.**

Fenix and the Agency Defendants are united in their scheme to extract Premium Content Fees from Fans by fraudulently misrepresenting the nature of the relationship between Fans and Creators. Courts consistently recognize a common purpose in schemes like this where defendants collaborate to deceive customers for financial gain. *See, e.g.*, *LD v. United Behav. Health*, 508 F. Supp. 3d 583, 602 (N.D. Cal. 2020) (common purpose sufficiently alleged where defendants conspired to keep the difference between artificially low amounts United reimbursed for certain claims and the amount at which claims should have been reimbursed); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 980 (N.D. Cal. 2018) (finding allegations that defendants shared common purpose of deceiving regulators into believing certain vehicles were compliant with emission standards sufficient).

On this point, Creators Inc.'s primary argument—that the conduct alleged is merely "the ordinary business purpose of increasing revenue"—fails. Dkt. 227 at 12. **"Ordinary" talent management surely does not include hiring an army of employees or foreign contractors to impersonate Creators in private communications with Fans**. Particularly when those Fans were promised authentic, personal interactions. As a result, the law requires that Plaintiffs "set forth sufficient allegations to distinguish ordinary business conduct from fraudulent conduct." *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009); Dkt. 209 at 19.

In *Odom*, for instance, the plaintiff alleged that Microsoft and Best Buy had the common purpose to increase the number of people using Microsoft's Internet Service by fraudulent means, which Best Buy furthered by distributing Microsoft Internet Trial CD's and conveying its customers' debit and credit card information to Microsoft. *Odom*, 486 F.3d at 552. Microsoft then used the information to activate customer accounts. *Id.*

In denying the defendants' motion to dismiss for failure to plead an association in-fact enterprise, the Ninth Circuit confirmed that a coordinated effort to defraud satisfies the common purpose requirement: "[t]hese allegations are more than adequate to establish, if true, that Microsoft and Best Buy had a common purpose of increasing the number of people using Microsoft's Internet service through fraudulent means." *Id.*

Plaintiffs have similarly alleged that the Content Fraud Enterprise is doing far more than conducting "ordinary business activity"; it is instead facilitating a deliberate effort to obtain Premium Content Fees through fraudulent means:

- The OnlyFans website promises "authentic" and "meaningful" engagement and its marketing deliberately promotes personal interaction as its core value proposition. SAC ¶¶ 3, 14–15.
- OnlyFans' "about" page promises "authentic connections." SAC ¶¶ 218–219.
- Every Creator profile on the OnlyFans platform auto-generates the following tagline that cannot be modified or removed: "SUBSCRIBE AND GET THESE BENEFITS: Full access to this user's content… Direct message with this user." SAC ¶¶ 227–228.

- OnlyFans' Twitter/X account specifically promotes the ability to directly message Creators, including several posts that contain quotes from Creators touting one-to-one messaging:
  - "What I love most is the ***direct messaging***. I'm able to chat to get to know and give each person more time" SAC ¶ 230(a).
  - "Prepare for chaos and fun as @harryjowsey has joined us on OnlyFans . . . You now have the opportunity to ***chat with Harry 1 on 1*** and check out exclusive content you won't find anywhere else." SAC ¶ 230(c).
- OnlyFans markets to Agencies and actively facilitates/allows the use of CRMs to enhance the Chatter Scams:
  - OnlyFans actively markets to agencies as demonstrated in a 2019 blog post titled "Unlocking the earning potential for agencies and talent managers," describing how agencies have become "key all[ies]" and could profit from managing Creator accounts, including "assist[ing] creators on their subscriber content." SAC ¶¶ 313–316.
- The Fenix Defendants have engineered the OnlyFans website to allow Chatter Scams to proliferate, particularly through third-party CRM tools:
  - "OnlyFans actively maintains logs that would identify simultaneous message transmissions at volumes no individual could plausibly generate. . . . it is unclear how the OnlyFans platform could maintain any semblance of integrity or network security without actively accounting for the Chatter Scams." SAC ¶¶ 311–312; *see also* SAC ¶¶ 300–312.

- Creators Inc. hires, trains, and directs the Chatters who animate the scheme:
  - "Creators Inc. manages the OnlyFans accounts of its Represented Creators, who are unnamed co-conspirators. On behalf of its Creators, Creators Inc. directs Chatters to post and communicate as the Represented Creator on that Creator's account . . . surreptitiously impersonating the Creator." SAC ¶ 674.
  - "Creators Inc. is utilizing the Chatter Scams on behalf of the Creators they represent to convince Fans they are directly messaging with Creators and receiving the promised '1 on 1,' chats, 'direct messaging,' or 'authentic' experience, when in fact the Fans were speaking with third parties without their knowledge." SAC ¶ 675.
  - "Creators Inc. is engaged in the fraudulent activities described herein by controlling and distributing misleading and false digital content to Fans through the Chatter Scams on behalf of the Creators, knowing that OnlyFans Defendants were monitoring the platform but would not enforce their anti-fraud policies." SAC ¶ 677.

At 275 pages, the SAC provides painstaking detail and abundant examples of the common purpose uniting the Content Fraud Enterprise.

**b. The Content Fraud Enterprise only exists because of the clear structure between and among its members.**

Like its fellow co-conspirators, Creators Inc. also argues that Plaintiffs fail to allege any coordination between "Creators Inc. and anyone else." Dkt. 227 at 12. That is not a credible reading of the SAC—or the law, which does not consider "coordination" to be a formal enterprise element. *See Eclectic Properties E., LLC,*

751 F.3d at 997 (setting forth the elements of RICO, of which, "coordination" is not one).

To meet RICO's structural element, Plaintiffs must plead the existence of a "relationship[] among those associated with the enterprise." *Boyle*, 556 U.S. at 946. Federal courts have likewise applied a flexible standard to complex multi-party arrangements. In *Bias v. Wells Fargo*, a district court found sufficient organization where Wells Fargo, certain "'property preservation' vendors," and real estate brokers "associated together for the *common purpose* of limiting costs and maximizing profits by fraudulently concealing assessments for unlawfully marked-up fees for default-related services on borrowers' accounts." 942 F. Supp. 2d 915, 925 (N.D. Cal. 2013) (emphasis added); *see also CBC Framing, Inc. v. Flores*, No. CV0800150MMMJCX, 2008 WL 11337555, at *8 (C.D. Cal. Sept. 22, 2008) (collecting related cases). The key was their coordinated effort to achieve a shared fraudulent objective.

The same analysis applies here. The relationship between OnlyFans and the Agency Defendants evidences functional coordination and organizational structure through defined roles:

- **OnlyFans' Platform**: Fenix provides the underlying ecosystem and network infrastructure, establishing credibility by promising "the authenticity of the personal interaction between Fans and Creators."
- **The Agency Defendants' Operational Role**: The Agency Defendants operationalize the scheme by employing, training, and directing Chatters to impersonate Creators, while also implementing sophisticated CRM platforms designed to scale the Chatter Scams.

The SAC identifies each level of coordination between Fenix and the Agency Defendants: OnlyFans affirmatively markets to Agency Defendants (SAC ¶¶ 313–17), OnlyFans produces TV content featuring agency-represented Creators (SAC ¶¶ 139–99), both Fenix and the Agency Defendants enable/utilize third-party CRM tools to scale the Chatter scams (SAC ¶¶ 300–12), and Fenix deliberately refuses to police its own well-touted policies (SAC ¶¶ 300–35).

As to Creators Inc., **the SAC alleges that it is a vital member of the scheme, directing activity across all levels of the enterprise**:

- **Creators Inc. directs Represented Creators**, requiring them to cede control of their OnlyFans' account (SAC ¶ 674); Creators Inc.'s own management agreement further admits to, and requires, the use of Chatters (SAC ¶¶ 360(b)-(d));
- **Creators Inc. hires, trains, and directs Chatters**. As part of its management of Creator accounts, "Creators Inc. provides Chatter services, employing Chatters to impersonate the Creator and communicate with Fans without the Fans' knowledge." SAC ¶ 351. Creators Inc. is so committed to ensuring its Represented Creators use chatters, it sued at least one Creator for changing the password to her account. SAC ¶ 360(c).
- **Creators Inc**. **openly collaborates with OnlyFans**. OnlyFans co-hosted an event at Miami Swim Week in 2023 with Creators Inc. SAC ¶ 6. Several of Creators Inc.'s Represented Creators are featured on various OnlyFans TV programs. SAC ¶ 355. Multiple episodes of the

OnlyFans program "Off the Air TV" are filmed at the Creators Inc. Los Angeles HQ mansion. SAC ¶ 357.

These allegations are also sufficient to rebut any notion that the RICO participants are not aware of each other. The SAC clearly and repeatedly alleges that Fenix, the Creators, the Agency Defendants, and the CRM providers are all aware of each other. SAC ¶¶ 6, 291–312. For their part, the Agency Defendants necessarily know about Fenix's role because the Agencies access and utilize the OnlyFans platform to provide their core business proposition—managing Creator profiles—including utilizing the OnlyFans message platform to facilitate the Chatter Scams. SAC ¶¶ 263–281. The Agency Defendants, therefore, both understand and derive benefits from Fenix's "direct messaging" marketing. Fenix in turn knows about the Agency Defendants because it markets directly to them. SAC ¶¶ 313–317. Additionally, OnlyFans TV features Represented Creators (SAC ¶¶ 139–153), CRM tools are publicly advertised and operate with Fenix's knowledge (SAC ¶¶ 282–296), and Creators Inc. even requires that its models allow the use of Chatters on the OnlyFans platform (SAC ¶ 360(d)). In a competitive environment, it can be inferred from the allegations that Agencies are aware of each other and the chatter marketplace. *See U.S. v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007) (RICO agreement may be proven through conduct-based inferences and circumstantial evidence of the scheme showing each defendant "necessarily must have known" the others were conspiring to *participate* in the same enterprise); *United States v. Bagnariol*, 665 F.2d 877, 891 (9th Cir. 1981) (enterprise existence may be inferred from "largely or wholly circumstantial evidence"). Notably, this does not require proof that "each conspirator agreed with every other conspirator"

or "was aware of all the details of the conspiracy." *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008) (citation omitted); *see also United States v. Aron*, 463 F.2d 779, 780 (9th Cir. 1972) (RICO enterprise does not require proof "that each conspirator knew all the details or all the other members of the conspiracy.").

The one area where Plaintiffs and Creators Inc. appear to agree, is the acknowledgement that it would be sufficient to plead that Creators Inc. had a role in the Content Fraud Enterprise if it were "indispensable to the achievement of the enterprise's goals." Dkt. 227 at 14. Based upon the allegations in the SAC, that is clear. Creators Inc. is a vital member of the Content Fraud Enterprise, its role in furthering and profiting from the scheme is unmistakable.

**B. Plaintiffs have alleged a UCL claim against Creators Inc.**

Creators Inc. argues that Plaintiffs have not met the requirements of Rule 9(b) in pleading their UCL claims. "Fraud allegations must be specific enough to give the defendant notice of the particular misconduct alleged to constitute the fraud so that the defendant may defend against the charge." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 974–75 (N.D. Cal. 2015). "But statements of the time, place and nature of the alleged fraudulent activities are sufficient. Because this standard does not require absolute particularity or a recital of the evidence, a complaint need not allege a precise time frame, describe in detail a single specific transaction or identify the precise method used to carry out the fraud." *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1057 (N.D. Cal. 2020) (cleaned up). Plaintiffs are not trying to "avoid the application of Rule 9(b)" as Creators Inc.

argues (Dkt. 227 at 16),[6] but specifically added factual allegations to the SAC to meet these heightened pleading standards.

Creators Inc.'s remaining arguments focus on the allegations about a Creator managed by Creators Inc., McKinley Richardson. Creators Inc. first argues that Plaintiff N.Z. fails to allege that Creators Inc. managed Richardson at the time N.Z. interacted with her and made purchases from her. But Plaintiffs allege in multiple paragraphs of the SAC that she is represented by Creators Inc., in particular when N.Z. subscribed to her and made payments to her. SAC ¶¶ 452, 458, 1282, 1311. And in each mention of N.Z. paying Richardson, Plaintiffs note that she is represented by Creators Inc. *Id.* That Plaintiffs also note that Creators Inc. managed or at one point managed several Creators, including Richardson, does not change the more specific allegations about Creators Inc. representing Richardson at the time N.Z. subscribed and paid Premium Content Fees.

Creators Inc. next complains that Plaintiffs do not allege the "specific content of any statement Creators Inc." made on behalf of Richardson. Dkt. 227 at 17. But Plaintiffs allege that Creators Inc. impersonated the Creators and unfairly solicited the payments made by N.Z. SAC ¶¶ 1321–1322. Plaintiffs are not required to provide the exact statement the Chatters made to meet Rule 9(b). "Rule 9(b) does not require absolute particularity or a recital of the evidence. [A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *United States v.*

---

[6] Creators Inc. makes multiple arguments about why Plaintiffs' UCL claim is based in fraud. As Plaintiffs do not dispute this, they will not address those arguments.

*MyLife.com, Inc.*, 499 F. Supp. 3d 757, 761 (C.D. Cal. 2020) (quoting *United States v. UnitedHealthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)). "Moreover, Rule 9(b) 'may be relaxed as to matters within the opposing party's knowledge.' A 'pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.'" *Id.* (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Creators Inc. has all the information it needs to answer the allegations of the SAC. It knows the name of the Creator and the dates of the fraudulent interactions where its Chatters represented to N.Z. that they were Richardson.

Last, Creators Inc. claims Plaintiffs have not alleged the "who" because Plaintiffs only allege that someone other than Richardson communicated with N.Z. Dkt. 227 at 17. The "who" is a Chatter hired by Creators Inc. Plaintiffs are not required to identify the specific chatter, particularly since that information is only available to Creators Inc. and that relaxes the pleading requirements. *MyLife.com, Inc.*, 499 F. Supp. 3d at 761; *accord Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 372 (D. Del. 2009) ("[C]ourts still must apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party.") (citation omitted).

Plaintiffs have met the heightened pleading requirements of Rule 9(b).

**C. The Court's Order did not limit how Plaintiffs could amend their complaint.**

Creators Inc. argues that the Court's Order granting leave to amend the complaint did not include the ability to add new claims. Plaintiffs amended the SAC to correct the deficiencies outlined in the Order, and the changes relate to and expand on the claims in the FAC. Nevertheless, Plaintiffs had the right to add new

claims when the Court granted leave to amend. Courts in the Ninth Circuit "allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-cv-01025-MCE-AC, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014). Whether a plaintiff may add new claims determined by the specific language of the order and whether leave was granted without limitation. *See Urista v. Bank of Am., N.A.*, No. C11-03097-HRL, 2012 WL 10596, at *3, 6 (N.D. Cal. Jan. 3, 2012). Where leave is given with limitation, express language is present restricting amendment of the complaint to cure deficiencies of the claims already filed. *See, e.g.*, *McFadden v. Newsome*, No. 221CV02411DADDBP, 2022 WL 4111024, at *3-4 (E.D. Cal. Sept. 8, 2022) (granting leave to amend with express limitations).

The Court's Order did not include such limiting language. Creators Inc. quotes a portion of the Order: "Fenix Defendants and R.M. are DISMISSED but Plaintiffs are GRANTED LEAVED TO AMEND to attempt to cure, respectively, the jurisdictional and venue deficiencies[,]" but ignores the complete language of the Order, which continues, "Plaintiffs' claims are DISMISSED WITH LEAVE TO AMEND." Dkt. 209 at 34. The plain language of the Order does not limit amendment to purely jurisdictional and venue deficiencies, nor does it expressly state that no additional claims can be added. As such, Creators Inc.'s argument about the scope of the Court's Order is meritless.

**D. Creators Inc. has not shown why the VPPA claim should be dismissed or that the forum clause in the TOU applies to Creators Inc.**

Creators Inc. does not put forward any arguments as to why the SAC fails to state a claim against Creators Inc. Instead, it incorporates by reference the

arguments made by Defendant Moxy. But Moxy's arguments are specific to the allegations against Moxy. *See, e.g.*, Dkt. 228 at 25 ("Plaintiffs nowhere allege that Moxy . . . ever requested any PII" and no "allegation that any Plaintiff himself actually requested or obtained a video from Moxy"). As such, Creators Inc. has not shown why Plaintiffs' VPPA claim ***against Creators Inc.*** should be dismissed. To the extent the arguments apply outside the facts alleged against Creators Inc.—they do not—Plaintiffs incorporate their response in opposition to Moxy's Motion to Dismiss.

Last, Creators Inc. argues that the Court should dismiss the claims brought by Plaintiffs B.L., S.M., and A.L. ("Non-California Plaintiffs") under the forum clause in the TOU. In doing so, it does not make any arguments, but adopts the arguments made by Moxy. Plaintiffs incorporate by reference their responses in opposition to Moxy and Verge, which demonstrate that the forum clause has no application to the Non-California Plaintiffs' claims against Creators Inc.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Elite Creators LLC's Motion to Dismiss the Second Amended Complaint.

DATED: February 19, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Robert B. Carey*

Robert B. Carey (*pro hac vice)*
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000

Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (*pro hac vice*)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215)540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP

2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

*Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,514 words, which complies with the word limit of L.R. 11-6.1. The undersigned also certifies that all citations were checked and accurately reflect the propositions put forth which complies with this Court's Order entered on December 12, 2025 (ECF No. 207).

Dated: February 19, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey