JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Specially Appearing Defendants
Fenix International Limited and Fenix Internet LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO.: 8:24-cv-01655-FWS-SSC

**SPECIALLY APPEARING DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM, AND IMPROPER VENUE**

Judge: Hon. Fred W. Slaughter
Courtroom: 10D
Date: March 19, 2026
Time: 10 a.m.

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. PLAINTIFFS DO NOT DISPUTE THEY LACK STANDING TO ASSERT COUNT IV, COUNT VI, AND COUNT VIII .......... 2

II. PLAINTIFF R.M. DOES NOT PLEAD VENUE .......... 2

III. THE COURT LACKS PERSONAL JURISDICTION OVER FENIX .......... 3

A. The Court Does Not Have Jurisdiction under 18 U.S.C. §1965(b) .......... 3

B. The Court Does Not Have Specific Jurisdiction .......... 4

IV. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX .......... 5

A. Plaintiffs' Misrepresentation of Their Allegations Cannot Avoid §230 .......... 5

B. Plaintiffs Still Fail to Plead RICO or RICO Conspiracy Claims .......... 7

1. Plaintiffs Fail to Plead the Existence of a Racketeering Enterprise .......... 7

2. Plaintiffs Fail to Plead Racketeering Activity .......... 9

C. Plaintiffs Fail to Plead a RICO Conspiracy .......... 10

D. Plaintiffs Fail To Save Their VPPA Claim .......... 11

E. Plaintiffs Still Fail To Plead Contract-Based Claims .......... 13

F. Plaintiffs' Misguided Efforts To Dodge This Court's Order Do Not Save Their Fraud And Deceit Claims .......... 17

G. Plaintiffs' UCL And FAL Claims Fail .......... 19

CONCLUSION .......... 20

CERTIFICATE OF COMPLIANCE .......... 21

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Beagle v. Amazon.com, Inc.*,
No. C24-0316JLR,
2024 WL 4028290 (W.D. Wash. Sep. 3, 2024) .......... 12

*Bias v. Wells Fargo & Co.*,
942 F.Supp.2d 915 (N.D. Cal. 2013).......... 9

*Boyle v. United States*,
556 U.S. 938 (2009).......... 8, 9

*Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Investment, Inc.*,
788 F.2d 535 (9th Cir. 1986) .......... 3

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .......... 7

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 9

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
No. C10-861 RSM,
2011 WL 31862 (W.D. Wash. Jan. 3, 2011) .......... 4

*Chang v. US Global Systems*,
No. CV 2:18-03724-JAK (SPx),
2025 WL 735484 (C.D. Cal. Feb. 21, 2025) .......... 2

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) .......... 10

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .......... 19

*Ebeid v. Facebook, Inc.*,
No. 18-cv-07030-PJH,
2019 WL 2059662 (N.D. Cal. May 9, 2019).......... 16

*Estate of Bride ex rel. Bride v. Yolo Technologies, Inc.*,
112 F.4th 1168 (9th Cir. 2024) ........ 7

*Hodes v. Van's International Foods*,
No. CV 09-01530 RGK (FFMx),
2009 WL 10674101 (C.D. Cal. June 23, 2009) ........ 19

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ........ 6

*In re Jamster Marketing Litigation*,
No. 05cv0819 JM(CAB),
2009 WL 1456632 (S.D. Cal. May 22, 2009) ........ 8

*Lewis v. Google LLC*,
461 F.Supp.3d 938 (N.D. Cal. 2020),
*aff'd*, 851 F.App'x 723 (9th Cir. 2021) ........ 16

*Manderville v. PCG & S Group, Inc.*,
146 Cal.App.4th 1486 (2007) ........ 10

*Markels v. AARP*,
689 F.Supp.3d 722 (N.D. Cal. 2023) ........ 13

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ........ 11

*Morton v. Twitter*,
No. CV 20-10434-GW-JEMx,
2021 WL 1181753 (C.D. Cal. Feb. 19, 2021) ........ 20

*MSP Recovery Claims, Series LLC v. Avanir Pharmaceuticals, Inc.*,
No. SA CV 22-01026-DOC-KES,
2023 WL 4162338 (C.D. Cal. May 19, 2023) ........ 10

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ........ 8

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
641 F.Supp.2d 913 (N.D. Cal. 2009) ........ 14

*Rodriguez v. Sony Computer Entertainment America LLC*,
No. C 11-4084 PJH,
2012 WL 12921066 (N.D. Cal. Apr. 20, 2012) ........ 12

*Stitt v. Citibank, N.A.*,
No. 12-cv-03892-YGR,
2015 WL 75237 (N.D. Cal. Jan. 6, 2015),
*aff'd*, 748 F.App'x 99 (9th Cir. 2018) ........ 8, 9

*United States v. Brooklier*,
685 F.2d 1208 (9th Cir. 1982) ........ 7

*Wimo Labs LLC v. eBay Inc.*,
No. SACV 15-1330-JLS (KESx),
2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) ........ 9

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ........ 4, 5

*Yerkovich v. MCA, Inc.*,
11 F.Supp.2d 1167 (C.D. Cal. 1997),
*aff'd*, 211 F.3d 1276 (9th Cir. 2000) ........ 18

**STATUTES**

18 U.S.C. §1965 ........ 3, 4

47 U.S.C. §230 ........ *passim*

## INTRODUCTION

Fenix's Motion established the amended claims asserted by N.Z. and R.M. (together, "Plaintiffs") cannot survive dismissal.[1] In their Opposition, Plaintiffs appear to have replaced the imaginary authority in their previous unsuccessful attempt to save their claims with equally fantastic mischaracterizations of their allegations and the contractual terms they agreed to. The end result is the same: as this Court already recognized, the law and facts compel dismissal of Plaintiffs' amended claims.

Plaintiffs concede they lack standing to assert RICO claims against Boss Baddies/Siren, Content X, and Verge, so those claims can be summarily dismissed. And Plaintiffs still cannot show Plaintiff R.M.'s claims belong in this District or that this Court has personal jurisdiction over Fenix because they rely on (1) recycled allegations that the Court already rejected—such as Fenix's use of an online bank; and (2) new and insufficient allegations—such as Fenix's former CEO's brief remote work from Los Angeles. Neither the recycled nor the new allegations demonstrates a direct nexus between Plaintiffs' claims and Fenix's purported contacts with California.

To dodge §230, Plaintiffs mischaracterize their allegations and this Court's ruling dismissing their claims premised on Fenix's facilitation of communications between Fans and Creators. They also insist they do not seek to hold Fenix liable for purportedly failing to monitor Creator content and prevent third-party communications, while simultaneously basing their contract and fraud claims on Fenix's alleged failure to do so. Because Plaintiffs' claims require Fenix to monitor Creator communications, §230 mandates dismissal.

Plaintiffs' RICO claims fail because they still do not (because they *cannot*) allege any coordination between Fenix and the Agencies. Plaintiffs fail to show their VPPA, contract, or fraud-based claims should survive either, as they ignore and/or misrepresent contractual terms, their allegations, and this Court's order. Plaintiffs also ignore and/or

[1] Capitalized terms carry the same meaning they had in Fenix's Rule 12 motion (ECF 225, "Motion"). Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material.

misconstrue the authority cited by Fenix, instead citing a smattering of inapposite cases. And Plaintiffs ignore that their virtually unchanged UCL and FAL claims are still based on their failed fraud theories.

Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS DO NOT DISPUTE THEY LACK STANDING TO ASSERT COUNT IV, COUNT VI, AND COUNT VIII

Fenix showed Plaintiffs N.Z. and R.M. "do not allege that they subscribed to any Creators managed by Boss Baddies/Siren, Content X, or Verge," and thus lack standing to assert the claims pled in Counts IV, VI, and VIII. (Motion, PageID#4669.) Plaintiffs apparently agree, since they ignored this argument in their Opposition. The Court should grant Fenix's Motion and dismiss these three claims as unopposed. *See Chang v. US Glob. Sys.*, 2025 WL 735484, at *16 (C.D. Cal. Feb. 21, 2025) (noting "parties waive arguments by not raising them in an opposition").

### II. PLAINTIFF R.M. DOES NOT PLEAD VENUE

The Central District of California is not the proper venue for Plaintiff R.M.'s claims because he fails to allege a substantial part of the events giving rise to his claims occurred here. (Motion, PageID#4669-70.) R.M. points to allegations "on information and belief" that two of the Agency Defendants—Moxy and Unruly—controlled Creator accounts from their headquarters in this District. (ECF 236, "Opposition", PageID#4887-88; 2AC¶¶372-73, 408-09.) But as the Court previously observed, allegations based on information and belief must "[be] accompanied by a statement of facts upon which the belief is founded." (ECF 209, "Order", PageID#3459.) The Court will not find any allegations in the 2AC pleading facts substantiating Plaintiffs' belief that Moxy or Unruly did anything material to this lawsuit in this District. It will, however, find allegations claiming the Agency Defendants' management of Creator accounts occurred through third-party contractors working in Asia and Latin America. (2AC¶¶4, 267-79.) The Court should again dismiss R.M.'s claims for improper venue.

## III. THE COURT LACKS PERSONAL JURISDICTION OVER FENIX

Plaintiffs abandon their arguments that Fenix can be subject to personal jurisdiction in California under 18 U.S.C. §1965(d) or principles of general jurisdiction. But Plaintiffs continue to insist that jurisdiction is proper under 18 U.S.C. §1965(b) or principles of specific jurisdiction. Neither theory works.

### A. The Court Does Not Have Jurisdiction under 18 U.S.C. §1965(b)

Plaintiffs cannot invoke §1965(b)'s nationwide service of process provision now for the same reason they could not before: Plaintiffs fail to adequately allege facts showing "a *single nationwide* RICO Conspiracy." (Order, PageID#3451.) Although Plaintiffs allege individual Creators worked with various Agency Defendants to manage their interactions with users, they do not allege *Fenix* coordinated with the Creators or Agency Defendants, nor that any Creator or Agency Defendant knew about or coordinated with any other Creator or Agency Defendant, to carry out the alleged conspiracy. (Motion, PageID#4670-71.)

Plaintiffs insist in conclusory terms that they have pled the existence of a coordinated RICO conspiracy embracing all Defendants. (Opposition, PageID#4877-78.) As discussed below in connection with the merits of Plaintiffs' RICO claims, they have not. *See infra* §IV.B.

Plaintiffs also insist all Defendants knew about and coordinated to accomplish a single unified conspiracy. (Opposition, PageID#4877.) But that argument runs headlong into Ninth Circuit precedent. In *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535 (9th Cir. 1986), the Ninth Circuit's leading case on §1965(b), the plaintiffs brought RICO claims against 18 different defendants, arguing that several attorneys worked with four different employers to engage in separate union-busting campaigns, *id.* at 537. The Ninth Circuit held the district court could not obtain jurisdiction over defendants under §1965(b) because plaintiffs failed to "allege a single nationwide RICO conspiracy." *Id.* at 539. The court reasoned there was no single "multidistrict conspiracy" because "none of the four defendant employers had any specific knowledge of or participation in any of the other" employer's union-busting activities, even though the same lawyers coordinated "each of the individual conspiracies." *Id.* The same is true here. Plaintiffs have not even alleged *Fenix*

coordinated with any of the Agency Defendants to deceive Fans, much less that the Agencies coordinated with each other to accomplish the purported scheme. It is not hard to see why Plaintiffs cannot make those allegations—the Agency Defendants are competitors, and it makes no sense that they would cooperate with one another when they offer competing services to Creators. Accordingly, the Court should again dismiss Plaintiffs' effort to rely on §1965(b).[2]

### B. <u>The Court Does Not Have Specific Jurisdiction</u>

After the Court dismissed their previous complaint for lack of personal jurisdiction, Plaintiffs added allegations that: (1) Fenix hired a "webmaster and videographer from California" before January 2019 to help attract adult entertainers to OnlyFans (2AC¶¶69-93); (2) Ami Gan—an independent contractor who served as Fenix's Chief Marketing Officer from September 2020 to December 2021 before becoming its CEO from December 2021 to July 2023—allegedly worked for Fenix remotely from Los Angeles before moving to Miami (2AC¶¶94-99); (3) Fenix Internet utilized a handful of independent contractors who worked from California, worked with a California-based accountant, and issued IRS Form 1099s to Creators living in California (2AC¶¶108-11); (4) Fenix maintains an account at an online bank that lists a California business address, and contracts with widely-used Internet services vendors based in California (2AC¶¶119-24); and (5) some content for the OFTV platform—a separate service and website—is filmed in California (2AC¶¶139-200). But none of these additional allegations fix the jurisdictional defect because Plaintiffs' claims do not arise from or relate to these alleged California contacts. (Motion, PageID#4672-74); *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023).

Plaintiffs insist their claims arise out of and relate to Fenix's alleged contacts with California, but never explain why. Plaintiffs reference Fenix's attempts to increase

[2] *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 31862 (W.D. Wash. Jan. 3, 2011), does not support Plaintiffs' argument. There, plaintiff's complaint "describe[d] specific communications made by individual defendants and the circumstances surrounding" the formation of the alleged RICO conspiracy—exactly the type of facts Plaintiffs fail to plead here. *Id.* at *10.

OnlyFans' popularity with adult entertainers, Ms. Gan's alleged remote work from California during her tenure with Fenix, and that some OFTV programs were filmed in California, without tying their claims to those contacts. (Opposition, PageID#4875-76.) Nor do Plaintiffs cite case law or 2AC allegations supporting their position. (*See id.*)

Whatever Plaintiffs' jurisdictional theory may be, it is insufficient. The Ninth Circuit has "long understood that for an injury to arise out of a defendant's forum contacts" there must be "but for causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action." *Yamashita*, 62 F.4th at 504. "[R]elatedness" also "requires a close connection between contacts and injury." *Id.* at 506. Here, Plaintiffs claim Fenix purportedly made false statements that led them to believe they could communicate directly and have personal relationships with Creators, when some Creators were allegedly using third-party services to manage their accounts and interactions. *None* of Fenix's California contacts have anything to do with that alleged scheme. Plaintiffs do not allege that: (1) Fenix promoted any scheme to deceive Fans when purportedly attempted to market OnlyFans to California-based adult entertainers prior to 2019; (2) Ms. Gan played any role in the conduct Plaintiffs challenge; or (3) Fenix used OFTV—which does not involve Creator interactions—to perpetrate the alleged scheme. Plaintiffs could have alleged these same claims if Fenix's California contacts had never occurred. Accordingly, Plaintiffs' claims do not arise out of or relate to these newly pled contacts, and the Court should again dismiss Plaintiffs' claims for lack of jurisdiction. *See id.* at 506-07.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FENIX

### A. Plaintiffs' Misrepresentation of Their Allegations Cannot Avoid §230

Plaintiffs' §230 arguments omit both this Court's ruling dismissing their claims "seek[ing] to hold Fenix… liable for facilitating communication between Plaintiffs and Agency Defendants" and the allegations in their VPPA, RICO, and breach claims *explicitly* premising those claims on Fenix's "facilitat[ing]… communication" of information between Fans and Agencies. (Motion, PageID#4674-75.) Plaintiffs concede that they allege Fenix "operate the OnlyFans platform to disclose Plaintiffs' PII… to Agencies" in

their VPPA claim and allege in their RICO claim that Fenix "actively allows the use of CRMs… and engineered its website to allow" third parties to communicate with Fans and "knows about and facilities [*sic*] the Agency Defendants' use of [third parties] through its own network monitoring." (Opposition, PageID#4881, 4885-86; *see also id*. PageID#4895 (Fenix "actively reviews platform traffic" and "facilitates tools for" third-party communication with Fans.).)[3] Plaintiffs do not defend their breach claim alleging Fenix "permit[ted] shared credentials" which "facilitat[ed]" the Creators' use of third parties to message Fans. (Motion, PageID#4675.) These claims can thus be dismissed per the Order.

Fenix showed Plaintiffs' remaining claims premised on Fenix's representations that users will have "authentic" and "direct" communications with Creators are similarly barred by §230 as interpreted by the Ninth Circuit because they necessarily require Fenix as a publisher to "actively vet and evaluate" Creator interactions with Fans to ensure the representations are true "or else face liability." (Motion, PageID#4674-76.)

Plaintiffs claim "the duty Fenix violated is the requirement not to breach their contracts, [or] make deceptive misrepresentations and material omissions." (Opposition, PageID#4879.) Plaintiffs ignore that courts must consider "what the duty at issue *actually requires*: specifically, whether the duty would *necessarily require an internet company to monitor third-party content*." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (cited by Plaintiffs). Plaintiffs claim "Fenix need only change their own conduct to comply with their contractual promises rather than monitor third-party content," but fail to explain how Fenix can achieve such "compliance" without monitoring Creators' accounts to determine if third parties, not Creators, are interacting with Fans. (Opposition, PageID#4882.) Plaintiffs' efforts to recharacterize their claims fall particularly flat given their repeated allegations that Fenix could have, but failed to, monitor and prevent third-

[3] The allegations Plaintiffs cite prove why §230 bars their claims. (*See* Opposition, PageID#4881-82, citing 2AC¶1205 ("The entire purpose of the OnlyFans platform is to deliver content from Creators to Fans"), ¶1213 ("Through its platform, which facilitates the communication of information between Fan and Creator accounts, OnlyFans disclosed Plaintiffs'… PII to unauthorized third parties, including Agencies"), ¶644 (alleging "[p]romotion of fraudulent digital content through the OnlyFans platform to Plaintiffs").)

party activity. (*See, e.g.*, 2AC¶¶300, 304-12 (describing "digital evidence necessary to identify" third-party activity and claiming Fenix "policies and procedures… require that *it monitor and respond to the exact network activity*" at issue).

Plaintiffs also ignore that Fenix expressly disclaims responsibility "for reviewing or moderating Content," and "are under no obligation to monitor Content or to detect breaches of the" Terms of Service ("Terms"). (ECF 60-1, PageID#359.) Plaintiffs' reliance on *Estate of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168 (9th Cir. 2024) and *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024), is therefore misplaced. Those courts considered affirmative representations in defendants' terms promising to remove offending material which "manifested [defendants'] intent to be legally obligated to 'take appropriate action'" outside of §230. *Calise*, 103 F.4th at 736, 743; *see Bride*, 112 F.4th at 1173 (application "promis[ed]" new users "they would be 'banned for any inappropriate usage,'" and those sending "harassing messages" would be "unmask[ed]"). Neither case involved an express disavowal of any duty to monitor or remove user or third-party content, as Fenix showed here. Section 230 thus bars Plaintiffs' claims.

**B. <u>Plaintiffs Still Fail to Plead RICO or RICO Conspiracy Claims</u>**

To plead a RICO claim, Plaintiffs must (among other things) plead the existence of an unlawful enterprise and a pattern of racketeering activity. (Order, PageID#3455.) To plead a RICO conspiracy claim, Plaintiffs must also plead each Defendant consented to the conspiracy. *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982). Plaintiffs fail to plead these elements, and their contrary assertions are unconvincing.

**1. <u>Plaintiffs Fail to Plead the Existence of a Racketeering Enterprise</u>**

As the Court held, Plaintiffs "must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." (Order, PageID#3455-56.) Plaintiffs fail to plead Defendants worked together to achieve a common unlawful purpose because they essentially allege each Defendant engaged in their normal business operations. (Motion, PageID#4677-80.) And Plaintiffs fail to plead the supposed enterprise has any structure or organization because they do not

allege that Defendants coordinated their activities. (*Id.*) Plaintiffs' contrary arguments lack merit.

*First*, Plaintiffs again claim they have sufficiently pled a common purpose to "deceive customers for financial gain." (Opposition, PageID#4884.) But the Court has already rejected this common purpose as indistinguishable from the "ordinary business purpose of increasing revenue." (Order, PageID#3457.) Plaintiffs' remaining arguments simply reiterate allegations the Court found insufficient when it dismissed the First Amended Complaint. (*Compare* Opposition, PageID#4884-85 *with* Order, PageID#3456 (discussing common purpose centered on "promises" of "authentic" connections and "direct messaging"). As the Court explained, and Plaintiffs have refused to acknowledge, these allegations are "insufficient… without additional allegations of coordination." (Order, PageID#3457.) "Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose." *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009); (*see also* Order, PageID#3457 (collecting cases).) Plaintiffs have "offered no factual allegations to render plausible their claim that the enterprise members actually knew of the alleged fraudulent common purpose, or that they formed the enterprise to [defraud Fans]… much less that they devised a scheme to defraud [Fans] by means of false pretenses." *Stitt v. Citibank, N.A.*, 2015 WL 75237, at *5 (N.D. Cal. Jan. 6, 2015). Plaintiffs therefore fail to sufficiently plead a common purpose.[4]

*Second*, Plaintiffs fail to sufficiently allege coordination between Fenix and the Agencies. Plaintiffs correctly note that they need not allege a "hierarchy" or "long-term master plan or agreement." (Opposition, PageID#4885 (quoting *Boyle v. United States*, 556

---

[4] Plaintiffs' reliance on *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) is misplaced. Plaintiffs argue *Odom* "found plaintiffs['] allegations were sufficient to establish… a common purpose of increasing the number of people using Microsoft's Internet service through fraudulent means." (Opposition, PageID#4884 (citing *Odom*, 486 F.3d at 552).) But *Odom* found a common purpose where Best Buy allegedly "distribut[ed]" a product to customers, and "convey[ed] its customers' debit and credit card information to Microsoft," which used that information to "activate customer accounts." 486 F.3d at 552. This level of coordination was buttressed by a "cross-marketing contract" between the parties. *Id.* Plaintiffs fail to allege a similar common purpose here.

U.S. 938, 946 (2009)).) But Plaintiffs must establish more than the "functional coordination" they claim exists. (*Id.*, PageID#4886.) Proof that "several individuals, independently and without coordination, engaged in a pattern [of racketeering activity]… would not be enough to show that the individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4. While Plaintiffs need not allege a hierarchy, Plaintiffs still must "allege facts that Fenix… and Agency Defendants were even aware of one another's existence as participants in a scheme." (Order, PageID#3457 (quoting *Wimo Labs LLC v. eBay Inc.*, 2016 WL 11507382, at *3-4 (C.D. Cal. Jan. 28, 2016).) Plaintiffs fail to do so.

Plaintiffs instead rely on easily distinguished caselaw. Plaintiffs argue the "key is coordinated effort to achieve a shared fraudulent objective," citing *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 925 (N.D. Cal. 2013). (*See* Opposition, PageID#4886.) Plaintiffs ignore the next line of the opinion they quote, which explained the defendants in that case were "systematically linked through contractual and financial ties" and "act[ed] according to policies set by Wells Fargo executives." *Bias*, 942 F.Supp.2d at 925. Plaintiffs do not allege any such contractual linkage between Fenix and the Agency Defendants. And as the court further explained in *Stitt v. Citibank, N.A.*, distinguishing *Bias*, Plaintiffs "do not allege facts to support their claim that… [Fenix and Agency Defendants] in any way participated in the development of a scheme" to defraud Fans or increase revenues. *Stitt*, 2015 WL 75237, at *6 (dismissing civil RICO claim). Plaintiffs fail to allege coordination among the purported members of the alleged enterprise.

**2. <u>Plaintiffs Fail to Plead Racketeering Activity</u>**

Plaintiffs also fail to allege predicate acts of racketeering activity because they: (1) fail to plead the elements of wire fraud, the only possible RICO predicate identified in the 2AC; and (2) fail to plead any conduct in furtherance of a RICO conspiracy. (Motion, PageID#4677-80.)

Plaintiffs argue the 2AC "[identifies] *numerous* predicate acts," without identifying what they are. (Opposition, PageID#4886 (emphasis in original).) But Plaintiffs must allege a statutorily permissible RICO predicate, such as wire fraud. *See Canyon Cnty. v.*

*Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (requiring "at least two predicate acts of racketeering activity, *as defined in* 18 U.S.C. §1961(1)"). Plaintiffs do not even *try* to argue that Fenix committed wire fraud, arguing only that "deliberately misrepresenting the direct relationship Fans are told they will have" is a "predicate act[]." (Opposition, PageID#4886.) Plaintiffs do not, and cannot, establish that this supposed misrepresentation constitutes wire fraud.

Plaintiffs argue Fenix are not "shielded by any disclosures in" the Terms because parties cannot "contract[] away" their liability for fraud. (Opposition, PageID#4887 n.6 (citing *Manderville v. PCG&S Grp., Inc.*, 146 Cal.App.4th 1486, 1500 (2007)).) But Plaintiffs misstate Fenix's argument, which is that Fenix's disclosures demonstrate Fenix "could not have intended to defraud Fans because it disclosed and disclaimed responsibility for the very practices about which Plaintiffs complain." (Motion, PageID#4679.) Plaintiffs were "able to discover" the allegedly concealed fraud by "scroll[ing] through the [Terms]." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). The Court previously dismissed Plaintiffs' fraud claims on this basis, finding Fenix "made explicit disclosures regarding the use of third parties, its inability to control how Fan content is used, and the materials provided to Fans." (Order, PageID#3467.) Plaintiffs provide no reason to depart from this Court's prior finding.

### C. <u>Plaintiffs Fail to Plead a RICO Conspiracy</u>

Plaintiffs' RICO conspiracy claim fails because Plaintiffs still fail to sufficiently plead any of their eight RICO claims. (Order, PageID#3457-59.) Plaintiffs' claim also fails because, as the Motion explained, Plaintiffs failed to plead "the assent of each defendant" to the supposed conspiracy. (Motion, PageID#4680.) Plaintiffs argue an agreement "need not be express as long as its existence can be inferred." (Opposition, PageID#4877.) But Plaintiffs never allege assent to an agreement, and the Opposition provides only "conclusory accusations of an alleged agreement… [and] general statements that fail to identify the who, what, when, where and how of the misconduct charged." *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2023 WL 4162338, at *6 (C.D. Cal. May 19,

2023). Plaintiffs' RICO conspiracy claim is therefore insufficiently pled.

**D. Plaintiffs Fail To Save Their VPPA Claim**

Plaintiffs contradict the facts and the law to try to defend their VPPA claim. Plaintiffs insist Fenix did not disclose their messages "would be viewable by third parties," (Opposition, PageID#4892), but Plaintiffs do not—because they cannot—counter Fenix's showing that Plaintiffs agreed Fenix was not responsible if Plaintiffs disclosed information that revealed their identities (Motion, PageID#4680), nor do Plaintiffs have any answer to this Court's finding that the Terms disclosed "Creators may 'have an agent... *or other third party*' that assists them, and Fenix 'cannot control' how Creators *or third parties* 'use' content provided by Fans." (Order, PageID#3467; *see also* ECF 60-1, PageID#359-60, 374.) Plaintiffs then mischaracterize the definition of "Content" in the Terms as somehow excluding "message[s] with a Creator" (Opposition, PageID#4892-93), deliberately omitting that the definition encompasses anything Plaintiffs posted on the platform, including specifically "***text*** (such as comments and hashtags)… ***and any other material whatsoever***." (Opposition, PageID#4892-93; ECF 60-1, PageID#354.)

Plaintiffs try and fail to distinguish *Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) by claiming "Netflix was not liable where the disclosure was controlled by the subscriber" while here "Fenix controls what can be shared." (Opposition, PageID#4893.) Plaintiffs cite only their allegation that Fenix "allow[ed] Fans to share their personal information over chat." (*Id.* (citing 2AC¶1197).) This mischaracterizes what Plaintiffs *actually* allege: that "management agencies" outside Fenix's control shared their interactions with third parties, and Fenix's alleged disclosure was only "[t]hrough its platform, which facilitates the communication of information between Fan and Creator accounts." (2AC¶¶263, 1213.) As *Mollett* held, "[t]he lawfulness of this disclosure cannot depend on circumstances outside of [Fenix's] control," and the VPPA does not prohibit disclosures "when they are incidentally also received by third parties *as the subscriber may independently permit*." *Mollett*, 795 F.3d at 1066-67. Because Plaintiffs allegedly shared personal information with Creators (despite being informed and agreeing their interactions

might be viewed by third parties), and the Agencies then allegedly "disclosed" that information to third parties, their VPPA claim fails.

Plaintiffs claim they have adequately asserted Fenix affirmatively disclosed their PII because "Fenix collects and stores the chats" and "affirmatively created tools to allow [third parties] *to access chats*." (Opposition, PageID#4892-93; *see also* 2AC¶¶283-91 (alleging Fenix was aware of software that allowed Agencies "to access" Creators' accounts and messages).) While Plaintiffs suggest the Court cannot decide this on a motion to dismiss (Opposition, PageID#4893-94), courts in this Circuit dismiss VPPA claims based on near identical allegations, because an allegation that an entity "provides access to [p]laintiffs' PII does not plausibly suggest" the entity "*has taken the affirmative act of disclosing that data*." *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290, at *1, 3 (W.D. Wash. Sep. 3, 2024) (dismissing VPPA claim alleging defendant disclosed PII to "other Amazon affiliates and third parties" because allegation that defendant "maintains a virtual 'warehouse' of data that it collects from consumers" and provided third parties "with direct access to" that database was insufficient to state a claim). Plaintiffs' allegations that Fenix "stored" their interactions likewise fail because "the VPPA precludes claims premised solely on a defendant's allegedly unauthorized retention of information." *Rodriguez v. Sony Comput. Ent. Am. LLC*, 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012) (granting motion to dismiss VPPA claim).

Plaintiffs also assert there was "knowing" disclosure because Fenix had "direct knowledge of" the Agencies' alleged use of third parties. (Opposition, PageID#4892-93.) Plaintiffs cite allegations that Fenix "knew, and should have known" of the third parties' existence if Fenix monitored Creators' "direct messages with Fans" and "different log in sessions," and failed "to meaningfully enforce its own policies." (2AC¶¶323-39.) Plaintiffs do *not* allege, as they must, Fenix had *actual knowledge of a specific disclosure* of PII made by a Creator to an agency or by an agency to a third party. As shown, merely alleging Fenix "allow[ed] [third parties] to access" interactions is not enough. (Opposition, PageID#4893.)

Finally, Plaintiffs ignore Fenix's authority showing VPPA's "ordinary course of business" exception applies to information disclosed "incident to order fulfillment or request processing." (Motion, PageID#4681-82.) Plaintiffs insist their claims "have nothing to do with order fulfillment" and cite a decision *dismissing* a VPPA claim as pled in *Markels v. AARP*, 689 F.Supp.3d 722, 728 (N.D. Cal. 2023) to claim "marketing" does not fall within the exception—even though neither Plaintiffs nor Fenix have claimed the alleged disclosures are related to marketing. (Opposition, PageID#4894.) Rather, Plaintiffs allege Fenix "engaged in the business of selling and/or delivering audiovisual materials"—indeed, "[t]he entire purpose of the OnlyFans platform is to deliver content from Creators to Fans (and vice versa, with respect to Fan-Created Content)"—and Fenix "stored and maintained" and provided the interactions on the platform to "facilitate[] the communication of information between Fan and Creator accounts." (2AC¶¶1197-98, 1205, 1213.) Any alleged disclosures facilitating the *delivery* of that requested content are by definition "incident to order fulfillment or request processing" and within the VPPA exception. (Motion, PageID#4681-82.)

**E. <u>Plaintiffs Still Fail To Plead Contract-Based Claims</u>**

Fenix demonstrated the bulk of Plaintiffs' amended contractual claims are predicated on the same "direct message" representation that the Court rejected as insufficient because "the Terms… contain an integration clause that states Plaintiffs have 'no implied licenses or other rights [] granted to them in relation to any part of OnlyFans, *save as expressly set out in the Terms*.'" (Motion, PageID#4682 (citing Order, PageID#3465-66).) Plaintiffs insist "Fenix and the Court" are wrong because the "direct message" representation "arose after the [Terms] applied." (Opposition, PageID#4889-90.) But the Terms expressly state they "form the *entire agreement* between us and you regarding your access to *and use of OnlyFans*," and "govern [Plaintiffs'] *use* of OnlyFans" on an ongoing basis. (ECF 60-1, PageID#354, 365.) Plaintiffs cite no authority suggesting they can ignore the terms of a contract expressly governing their ongoing use—including their agreement that they have no "other rights… granted to them in relation to any part of OnlyFans, *save as expressly*

*set out in the Terms*"[5]—based on a representation they allegedly received *while using the platform*.

Further, Plaintiffs cannot escape the Court's *other* findings: the Terms "disclaim[] Fenix['s] responsibility, stating that [Fenix] are not responsible for any Fan/Creator Transaction and All Fan/Creator Transactions are contracts between Fans and Creators" and "'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans." (Order, PageID#3466, 3467; *see also* ECF 60-1, PageID#360 ("The materials which we make accessible on OnlyFans for Users are for general information only. We make no promises or guarantees about the accuracy or otherwise of such materials, or that Users will achieve any particular result or outcome from using such materials.").) Plaintiffs' omission of the Court's prior findings and the disclaimers in the Terms is telling, because they are equally fatal to their restated contractual claims.

Plaintiffs' defense of their other contract-based arguments similarly run afoul of the Terms.

*First*, Fenix showed Plaintiffs' promissory estoppel claim fails because as this Court held, even if "all the other elements of a promissory estoppel claim are met, the integration clause by its terms bars any extra-contractual promises." (Motion, PageID#4682-83.) Plaintiffs again apparently agree, as they make no mention of their promissory estoppel claim. (Opposition, PageID#4888-92.) The Court should dismiss this claim as unopposed. *Supra* §I.

*Second*, Fenix detailed how the challenged "promise" to use "reasonable care and

[5] Plaintiffs characterize this language as an "implied licenses provision" and claim "[c]ourts uniformly interpret similar provisions as a reservation-of-rights designed to prevent users from claiming implied intellectual property licenses." (Opposition, PageID#4889, n.7.) The single inapposite case Plaintiffs cite contains no such "reservation of rights" language, and involved an explicit License Agreement which stated "licenses granted herein are the only licenses granted to Licensee, and that no other licenses are granted, expressly, by implication or by estoppel" and "all rights not expressly granted to Licensee under this Agreement in and to CSS and the Proprietary Information are reserved and retained by Licensor." *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F.Supp.2d 913, 924 (N.D. Cal. 2009). Plaintiffs omit that the provision here ***appears in the "General" section of the Terms***, not the separate Terms section entitled "Intellectual property rights—ownership and licenses." (ECF 60-1, PageID#360-61, 365.) Plaintiffs' efforts to construe this generally applicable provision as confined exclusively to "implied licenses" fall flat.

skill" appears in a bolded provision titled "**What [Fenix] are not responsible for**," disclaiming responsibility for moderating content, controlling others' use of content on OnlyFans, and monitoring content or breaches of the Terms. (Motion, PageID#4683 (emphasis in original).) While Plaintiffs insist they "do not claim that Fenix failed to moderate content or control users" (Opposition, PageID#4888), the 2AC tells a different story, alleging that Fenix "failed to use reasonable care and skill" because it "permitted… management agencies that use [third parties]," "failed to act" and "declined to exercise their contractual enforcement powers against Agency-operated accounts." (2AC¶¶300-12, 1223 (cited by Plaintiffs).)

Plaintiffs also bafflingly claim "Fenix's cited [Terms] provision does not disclaim liability for... ignoring the use of [third parties] and breaches of the" Terms. (Opposition, PageID#4889.) But that provision states Fenix "*are not responsible for reviewing or moderating Content*, and… are under no obligation to monitor Content *or to detect breaches of the Terms*." (ECF 60-1, PageID#359.) The Court's prior finding dismissing Plaintiffs' fraud claims applies equally here: Fenix "explicitly disclaimed responsibility in the Terms" for "reviewing or moderating Content." (Order, PageID#3467.) Plaintiffs' gaslighting cannot overcome their allegations, the Terms, or this Court's Order foreclosing their claim.[6]

*Third*, Fenix showed Plaintiffs' breach of implied covenant claim fails because Plaintiffs are not seeking "compliance with the express terms of the contract" but "to create obligations not contemplated by the" Terms. (Motion, PageID#4683.) Plaintiffs assert the Terms do not disclaim "enabling, [] tolerating," "facilitat[ing]" or "[c]ollecting data that revealed" the presence of third parties or "[d]eclining to enforce platform rules" and, further, Fenix "promises... all Users will comply with the [Terms]" and non-compliant

[6] Plaintiffs try to salvage their claim by asserting Fenix also "actively market[s] to Agencies" representing Creators and "design[s] tools for" third-party use, citing one conclusory subparagraph devoid of factual support. (Opposition, PageID#4889; *contrast* 2AC¶1223(c) *with* 2AC¶¶282-91 (detailing CRM software tools developed by other companies) *and* ¶¶300-12 (alleged Fenix monitoring practices).) Plaintiffs do not and cannot explain how either demonstrates that Fenix failed to use "reasonable care and skill in providing OnlyFans." (Opposition, PageID#4888-89.)

accounts will be terminated. (Opposition, PageID#4891 (citing 2AC¶1252(b)-(e)).) Wrong on all counts. The Terms repeatedly state Fenix "*can* but… *are not obligated to* moderate or review any of your Content to verify compliance with the Terms," "are not responsible for reviewing or moderating Content, and… are under no obligation to monitor Content or to detect breaches of the Terms," and "reserve the right *in our sole discretion* to terminate… access to OnlyFans." (ECF 60-1, PageID#357-59.)

Contrary to Plaintiffs' unsupported assertion, the Terms expressly authorize the alleged Fenix conduct that Plaintiffs are targeting. (Opposition, PageID#4891); *see Lewis v. Google LLC*, 461 F.Supp.3d 938, 961 (N.D. Cal. 2020) (dismissing implied covenant claim where "the contracts g[a]ve [d]efendants unilateral discretion" to moderate content); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (dismissing implied covenant claim where defendant "had the contractual right to remove or disapprove any post or ad *at [defendant's] sole discretion*"). Even if an implied covenant claim based on a purported lack of content moderation were not barred by §230—and it is, *supra* §IV.A—the express language of the Terms ends Plaintiffs' claim.

*Fourth*, Fenix showed Plaintiffs' contention that they are third-party beneficiaries of the Terms of Use for Creators is unsupported by the law or facts. Plaintiffs must—but cannot—show "the contract reflects the express or implied intention of the parties to the contract to benefit the third party," where, as here, the Terms of Use for All Users and Terms of Use for Creators contain clauses that "relinquish[] all third party rights." (Motion, PageID#4683-84, collecting cases and quoting ECF 60-1, PageID#355, 365, 374.)

Plaintiffs doggedly insist the Terms of Use for Creators "is designed to benefit the Fans" (Opposition, PageID#4892), despite its fatal language stating Fenix's "relationship is with [Creators], and not with any third party." (ECF 60-1, PageID#374.) Plaintiffs also contend the Terms of Use for All Users "[are] an entirely different contract" (Opposition, PageID#4892), overlooking their acknowledgment in the 2AC that the Terms of Service expressly incorporate the Terms of Use For All Users and the Terms of Use for Creators in one "legally binding agreement." (2AC¶232, quoting ECF 60-1, PageID#355 ("'Terms

of Service' (also called 'your agreement with us') means the legally binding agreement between you and us which consists of: (i) these *Terms of Use for all Users*, (ii) Terms of Use for Fans, (iii) *Terms of Use for Creators*, (iv) Privacy Policy, (v) Acceptable Use Policy, (vi) Referral Program Terms, (vii) Complaints Policy, (viii) Platform to Business Regulation Terms; and (ix) Community Guidelines").) Plaintiffs' remaining contractual claim therefore fails.

### F. Plaintiffs' Misguided Efforts To Dodge This Court's Order Do Not Save Their Fraud And Deceit Claims

As Fenix showed, this Court dismissed Plaintiffs' fraud and deceit claims because Fenix "explicitly disclaimed responsibility in the Terms of Service, stating Creators may have an agent... or other third party' that assists them, and Fenix 'cannot control' how Creators or third parties 'use' content provided by Fans, 'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans, and 'are not responsible for reviewing or moderating Content.'" (Order, PageID#3467; ECF 60-1, PageID#359-60, 374.) Plaintiffs make no mention of this Court's conclusions, and instead assert for the first time that Fenix's disclosure that Creators may "have an agent, agency… or other third party which assists" them (ECF 60-1, PageID#374) "was never given to Plaintiffs" because "the TOU and Fan TOU clearly state that the Creator TOU is not part of the contract between Fans and OnlyFans." (Opposition, PageID#4894.) Wrong.

As shown, the definition of "Terms of Service" *expressly incorporates* the Terms of Use for Creators that Plaintiffs now claim they did not receive. *Supra* §IV.E. This definition appears just below the all caps, bolded statement that "**BY USING OUR WEBSITE YOU AGREE TO THESE TERMS – PLEASE READ THEM CAREFULLY.**" (ECF 60-1, PageID#354.) And far from "clearly stat[ing]" the Terms of Use for Creators are "not part of the contract between Fans" and Fenix, as Plaintiffs contend, the Terms of Use for All Users *underscore* that "other terms or policies forming part of the Terms of Service will also apply to you and form part of your agreement with us," specifically identifying the Terms of Use for Creators and noting they "contain *additional* terms which apply if you

use OnlyFans as a Creator." (ECF 60-1, PageID#369; *see also id*. (in Terms of Use for Fans, stating "the Terms of Use for Creators *will apply* to your use of OnlyFans" if the Fan is also a Creator).) This express language repeatedly incorporating the Terms of Use for Creators as part of the "legally binding agreement" for users—with every reference to the Terms of Use for Creators hyperlinked for easy review—puts the lie to Plaintiffs' contention that they were "never disclosed." (Opposition, PageID#4894.)[7]

This is no doubt why, even when this Court gave leave to amend after its ruling, Plaintiffs tellingly failed in their 2AC to allege they had not seen the representation regarding Creators' potential use of third parties in the Terms of Use for Creators or that those terms were "not disclosed." To the contrary, as Fenix showed (and Plaintiffs do not address), both Plaintiffs expressly alleged they were "aware that management agencies existed" and were used by Creators on the platform. (2AC¶¶460, 476.)

In any event, Plaintiffs have no answer to, and thus ignore, the *other* express provisions in the Terms disclosing potential third-party access to Plaintiffs' content.[8] They also ignore this Court's finding that Plaintiffs were on notice that Fenix "'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans, and 'are not responsible for reviewing or moderating Content.'" (Order, PageID#3467.) In short, Plaintiffs' late-breaking unpled ignorance of Fenix's disclosure of Creators' use of Agencies and third parties in the Terms does not save their claims.

Plaintiffs do not (because they cannot) challenge Fenix's showing that their revisions

---

[7] Plaintiffs cite a footnote in a nearly 30-year-old case where the court would not allow plaintiffs to rely on a sample agreement to demonstrate "the scope of rights that were not acquired," because the same plaintiffs admitted the sample agreement "was not executed, and hence was not part of their contract with [d]efendants." *Yerkovich v. MCA, Inc.*, 11 F.Supp.2d 1167, 1177 n.18 (C.D. Cal. 1997). Here, Plaintiffs cannot and do not dispute they agreed to the Terms, which expressly incorporate and include the disclosure they now seek to avoid.

[8] *See, e.g.,* ECF 60-1, PageID#360 ("You acknowledge that once your Content is posted on OnlyFans, we cannot control and will not be responsible to you for the use which other Users *or third parties* make of such Content"), PageID#364 (disclaiming liability to business users "if your Content is copied, distributed, reposted elsewhere or its copyright is infringed by another User *or any third party*" or for "any disclosure or publication of your personal information by other Users *or third parties* without your consent").

to their dismissed fraud claim were "minimal" at best, and their deceit claim "is unchanged." (Motion, PageID#4685.)[9] Instead, they insist they have satisfied Rule 9(b) but do not refute Fenix's showing that in their limited and conclusory new allegations that they saw and "justifiably relied" on some "direct message" representations, they admittedly do not recall and cannot plead specifically when, where, and how they saw them, and *still* do not plead they ever saw or relied on the marketing statements described elsewhere in the 2AC. (*Id.*) Thus, the 2AC "lacks sufficient detail with respect to the 'who,' 'when,' 'where,' or 'how'" to satisfy Rule 9(b). *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) ("We therefore agree with the district court that plaintiffs' allegations do not state with particularity the circumstances of the alleged fraud.") (cited by Plaintiffs).

Unable to meaningfully distinguish Fenix's authority,[10] Plaintiffs assert they have adequately pled knowledge and intent—and demonstrate precisely why their fraud claims are barred by §230. Plaintiffs tout their allegations that Fenix "allows" third parties "on the platform," "actively reviews platform traffic" and "facilitates tools for" and "ignores complaints about" third-party communication with users. (Opposition, PageID#4895.) As shown, because Fenix can only avoid liability under Plaintiffs' theory by monitoring Creator content, these claims are barred. *Supra* §IV.A.

### G. <u>Plaintiffs' UCL And FAL Claims Fail</u>

Plaintiffs ignore and therefore concede Fenix's showing that their UCL claim (unchanged) and FAL claim (amended to paste in Plaintiffs' fraud allegations) are still

---

[9] Plaintiffs indignantly protest that they added "including in paragraph 1273-1283" to their deceit claim (*see* Opposition, PageID#4895, n.9 (citing 2AC¶1294)), but this only proves their failure to correct the pleading flaws that resulted in dismissal.

[10] Plaintiffs try and fail to distinguish the court's rejection of allegations similar to Plaintiffs' as "merely conclusory" in *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009), by quoting an unrelated and inapposite section of the opinion, where the court dismissed claims against Whole Foods because "its representation to its customers is different from the misrepresentation upon which [p]laintiffs base their suit" in that "[p]laintiffs do not base their fraud claim on representations that Whole Foods allegedly makes to its consumers concerning bleached flour." *Id.* Plaintiffs neglect to explain how this holding saves their fraud claim.

based on "failed fraud [and] deceit… theories," and must be dismissed. (Motion, PageID#4686; Order, PageID#3467-68). Plaintiffs try to distinguish *Morton v. Twitter*, 2021 WL 1181753 (C.D. Cal. Feb. 19, 2021), where the court dismissed claims that Twitter failed to enforce its non-consensual nudity policy because "Twitter's terms of service specifically disclaim its responsibility for 'any conduct or content of any third party on the services.'" *Id*. at *5. Wholly contradicting their arguments that "Plaintiffs do not claim that Fenix failed to moderate content or control users" or "must monitor content or detect breaches" in defense of their contract claims, Plaintiffs assert they, unlike the *Morton* plaintiff, are claiming "Fenix is not only aware of and not enforcing breaches of the [Terms], it actively makes false promises to Plaintiffs and refuses to suspend accounts as promised in the [Terms]." (*Contrast* Opposition, PageID#4888-89 *with* PageID#4896.)

As shown, the Terms repeatedly state Fenix "*can* but… *are not obligated to* moderate or review" content "to verify compliance with the Terms… and/or any applicable law" and "are under no obligation to monitor Content or to detect breaches of the Terms." *Supra* §IV.E. The Terms do not "impose[] a duty on [Fenix] to suspend offending accounts," and "specifically disclaim [Fenix's] responsibility for any conduct" on the platform. *Morton*, 2021 WL 1181753, at *5. Plaintiffs' UCL and FAL claims fail (again).

## **CONCLUSION**

For the reasons stated above and in the Motion, the Court should dismiss the 2AC with prejudice.

DATED: March 5, 2026 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Jason D. Russell*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,995 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: March 5, 2026 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: *[/s/ Jason D. Russell]*
JASON D. RUSSELL
*Attorneys for Specially Appearing Defendants*
Fenix International Limited and Fenix Internet LLC