Oliver Rocos - State Bar No. 319059
orocos@birdmarella.com
Bill L. Clawges - State Bar No. 345908
bclawges@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Moxy Management

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO. 8:24-cv-01655-FWS-SSC

**DEFENDANT MOXY MANAGEMENT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date: March 19, 2026
Time: 10:00 a.m.
Crtrm.: 10D

Assigned to Hon. Fred W. Slaughter

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 6

II. NON-CALIFORNIA PLAINTIFFS B.L., S.M. AND A.L. SHOULD BE DISMISSED ........ 8

III. PLAINTIFFS HAVE NOT PLED A RICO CLAIM ........ 10

A. Plaintiffs Fail To Plead Any Coordination Or Common Purpose ........ 10

B. Plaintiffs Have Not Pled That Moxy Committed Any Predicate Act ........ 15

1. Moxy Did Not Commit Its Own Predicate Act ........ 15

2. Fenix Defendants' Alleged Acts Cannot Be Imputed To Moxy ........ 17

C. Plaintiffs Still Have Failed To Plead RICO Damages ........ 18

IV. PLAINTIFFS HAVE NOT PLED A RICO CONSPIRACY CLAIM ........ 19

V. PLAINTIFFS FAIL TO PLEAD A VPPA CLAIM ........ 19

A. Moxy Had No PII To Disclose In Violation Of The VPPA ........ 20

B. Plaintiffs Fail to Allege That Moxy Knowingly Disclosed PII ........ 21

C. The "Ordinary Course Of Business" Exception Applies ........ 22

VI. MOXY DID NOT VIOLATE THE UCL ........ 24

VII. THE COURT SHOULD DISMISS THE SAC WITH PREJUDICE ........ 25

VIII. CONCLUSION ........ 26

CERTIFICATE OF COMPLIANCE ........ 27

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) .......... 24

*Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) .......... 20

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) .......... 26

*Boyle v. U.S.*, 556 U.S. 938 (2009) .......... 13

*Bromlow v. D.M. Carriers, LLC*, 438 F. Supp. 3d 1021 (N.D. Cal. 2020) .......... 9

*Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) .......... 19

*Choudhuri v. Specialized Loan Servicing*, No. 22-CV-06993-JST, 2023 WL 6277327 (N.D. Cal. Sept. 26, 2023) .......... 25

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) .......... 13, 14

*Cleghorn v. Blue Shield of Cal.*, No. SA CV 02-852DOCANX, 2003 WL 24196895 (C.D. Cal. Feb. 19, 2003), *aff'd sub nom. Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005) .......... 8

*Davidson v. Sprout Foods, Inc.*, 106 F.4th 842 (9th Cir. 2024) .......... 19

*Gardner v. Starkist Co.*, 418 F. Supp. 3d 443 (N.D. Cal. 2019) .......... 18

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................21

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023)....................25

*Johnson v. Amazon.com Inc.*,
No. 2:24-CV-01070-JNW, 2025 WL 949495 (W.D. Wash. Mar. 27, 2025)....................26

*LD v. United Behavioral Health*,
508 F. Supp. 3d 583 (N.D. Cal. 2020)....................13

*Levay v. AARP, Inc.*,
No. 17-09041 DDP, 2019 WL 2108124 (C.D. Cal. May 14, 2019)....................25

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988)....................9, 10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................20

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007)....................10, 13

*Oscar v. Univ. Students Co-op. Ass'n*,
965 F.2d 783 (9th Cir. 1992)....................10, 18

*Punian v. Gillette Co.*,
Case No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)....................24

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)....................14

*RJ v. Cigna Health & Life Ins. Co.*,
625 F. Supp. 3d 951 (N.D. Cal. 2022)....................17

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014)....................23, 24

*U.S. v. Fernandez*,
388 F.3d 1199 (9th Cir. 2004) ........ 11

*Uce v. Oral Aesthetic Advoc. Grp., Inc.*,
No. CV 23-3186-CBM-MRWx, 2024 WL 3050720 (C.D. Cal. Feb. 23, 2024) ........ 18

*Velaro, Inc. v. National Flood Services, LLC*,
2021 WL 8779924 (C.D. Cal. July 7, 2021) ........ 9

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ........ 14

*In re WellPoint, Inc. Out of Network UCR Rates Litigation*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) ........ 14

*Wimo Labs LLC v. eBay Inc.*,
Case No. SACV 15-1330-JLS, 2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) ........ 11

*Yoder v. Ingersoll-Rand Co.*,
31 F. Supp. 2d 565 (N.D. Ohio 1997), *aff'd*, 172 F.3d 51 (6th Cir. 1998) ........ 22

**Federal Statutes**

18 U.S.C.
§ 2710(a)(2) ........ 22, 23
§ 2710(b)(1) ........ 21

**Other Authorities**

Fed. R. Civ. Proc. Rule 9(b) ........ 12, 24

## I. INTRODUCTION[1]

Long on rhetoric but short on substance, Plaintiffs' Opposition (Dkt. No. 235) is replete with conclusory claims unsupported by citations to alleged facts. This is best exemplified by their RICO claims, which Plaintiffs insist are well-pled despite not having included *even a single new allegation* in the SAC that would warrant this Court reconsidering its prior ruling. The exact same is true with respect to the claims this Court dismissed for improper forum—*Plaintiffs' allegation as to the non-California Plaintiffs' claims are identical to those deemed insufficient in their prior pleading*. The Court gave Plaintiffs leave to amend their FAC to state new facts, not to argue a backdoor motion for reconsideration. With respect to all but the VPPA claim—which fails for new but equally conclusive reasons—the Court need do little more than copy and paste its prior dismissal Order.

As to the claims by non-California Plaintiffs, the law is long-settled that a contractual forum selection clause will apply to claims against non-parties where they are "closely related to the contractual relationship." Order at 31. Without any new allegations, Plaintiffs offer nothing but desperate arguments in pursuit of a frivolous reinterpretation of the law. Those claims should again be dismissed.

Plaintiffs' RICO allegations *are identical* to those in their FAC and so fail for identical reasons. This Court already ruled that the bare allegations Fenix Defendants promised "'authentic' connections" and Agency Defendants "implemented the Chatter Scams" were insufficient to state a RICO claim "because Plaintiffs fail to allege facts that Fenix Defendants and Agency Defendants combined as an enterprise in furtherance of the Chatter Scams." *Id.* at 18-19. There is nothing new to the SAC that could convert what this Court found was merely independent conduct carried out for "the ordinary business purpose of increasing revenue" into a sinister coordinated conspiracy. *Id.* at 19. Indeed, Plaintiffs *still* have not alleged anywhere that anyone

[1] Capitalized terms have the same meaning ascribed in Moxy's Motion to Dismiss.

at Moxy ever communicated at any time with anyone at any other Defendant for any purpose. As much as Plaintiffs insist they do not have to allege such communications, courts at every level of the federal system say they must.

This Court also already ruled that Plaintiffs "fail to sufficiently allege Agency Defendants committed wire fraud with particularity," without which the RICO claim must fail. *Id.* at 20-21 (noting, among other flaws, that allegations "on information and belief" are insufficient as a matter of law). Again, however, Plaintiffs have merely repeated those *exact same allegations* in the SAC.

While Plaintiffs' VPPA claim is different because they now allege some information that certain Plaintiffs shared, it still fails because Moxy did not knowingly share PII for a non-business purpose. Plaintiffs' claim relies upon its effort to stretch the VPPA well beyond its bounds: it is not a general purpose privacy statute, but only prohibits the narrow act of knowingly sharing PII that can link a person to specific video content that they viewed. The absence of any allegation that Moxy *ever* provided any video content to any Plaintiff means that none of the PII it allegedly shared could ever violate the statute. Moreover, any supposed sharing of PII was inherently inadvertent—not "knowing"—because there is no allegation that Moxy had any idea that any Plaintiff had sent PII. And even if Moxy did knowingly share PII, it did so only for the purpose of fulfilling video requests—a permitted purpose under the statute. Plaintiffs' attempt to abuse this limited statute fails at every point.

Finally, Plaintiffs' UCL claim fails because it is derivative of its other claims. Plaintiffs fail to show otherwise, whether as a matter of fact or law.

Plaintiffs already have amended their claims twice and have entirely failed to fix their many pleading failures this Court identified in substantial detail. The Court has indulged Plaintiffs enough already and should not give them another opportunity to try and plead what are fatally flawed claims. This action should be dismissed with prejudice.

## II. NON-CALIFORNIA PLAINTIFFS B.L., S.M. AND A.L. SHOULD BE DISMISSED

This Court has now twice dismissed the claims of Non-California Plaintiffs B.L., S.M., and A.L. Order at 30-31. Tellingly, ***Plaintiffs do not allege any new facts that would justify asking the Court to change its prior ruling***, and do not pretend otherwise in Opposition. Instead, their Opposition is a backdoor request for reconsideration that argues the Court should change its ruling because it was wrong, rather than because there has been a change in the law or new facts alleged. Courts routinely reject attempts to use these sorts of tactics. *See, e.g.*, *Cleghorn v. Blue Shield of Cal.*, No. SA CV 02-852DOCANX, 2003 WL 24196895, at *2 (C.D. Cal. Feb. 19, 2003) (because plaintiff failed to amend claims, "the opposition to [d]efendant's motion to dismiss is more akin to a motion for reconsideration" and court "ha[d] little choice but to grant [d]efendant's motion"), *aff'd sub nom. Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir. 2005). And Plaintiffs are still wrong.

The central pillar of the SAC is that Moxy and the other Defendants conspired together in a RICO scheme to defraud Plaintiffs in violation of a contractual promise that their interactions with Creators would be "authentic." It was for that reason that the Court previously dismissed the Non-California Plaintiffs—their allegations against Moxy (and the other Agency Defendants) are "so closely related to the contractual relationship" that the forum selection clause within the Plaintiffs' Terms of Service contract with Fenix Defendants applied to them even though Moxy was not itself a signatory to that contract. Order at 31 (citing *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988))). Moreover, Moxy was aware of and indirectly bound by the Terms of Service because of its agency relationship with the Creators on whose behalf it acted. *Id.* at 32. Having alleged that the RICO conspiracy was a violation of the Terms of Service, Plaintiffs could not avoid the forum selection clause in that agreement. *Id.* Plaintiffs' attempt

top reinterpret the law in their favor each fail.

*First*, Plaintiffs' contention that *Velaro* and *Manetti* are distinguishable because of the sophistication of the parties involved finds no support within those cases. Opposition at 4. What in fact mattered in each was that the claims at issue against non-parties to the contract nevertheless arose out of the contract in which the forum selection clause appeared. *See Velaro*, 2021 WL 8779924, at *5 (noting that the forum selection clause applied to the non-party because their respective acts "are interrelated enough" with the contract); *Manetti-Farrow*, 858 F.2d at 514 n.5 (holding that "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"). The supposed sophistication of the parties is irrelevant; Plaintiffs' claim otherwise is a fiction.

*Second*, Plaintiffs' contention that "the more reasoned application of the 'closely related doctrine'" is that it must be "foreseeable" that "the non-signatory will be subject to the clause" is also nowhere to be found in the law. Opposition at 4-5. The ruling in Plaintiffs' cited case of *Bromlow v. D.M. Carriers, LLC*, 438 F. Supp. 3d 1021 (N.D. Cal. 2020) turned on the *Manetti-Farrow* standard the court cited—"forum-selection clauses can be applied to non-signatories where the conduct of the non-parties is closely related to the contractual relationship." *Id.* at 1029. The court nowhere referenced foreseeability as a prerequisite to that application.

*Third*, Plaintiffs baselessly argue that the clause should not be enforced because the parties have not found other occasions of enforcement in consumer claims and that Moxy is not a designated third-party beneficiary under the Terms of Service. Opposition at 5. They cite no case that even suggests there is something unique and special about consumer claims. And Plaintiffs cite no law supporting their position that Moxy must be designated a third-party beneficiary in order for the forum selection clause to apply. *Id.* Plaintiffs do not dispute that the forum selection clause applied to the parties in *Velaro*, *Manetti-Farrow*, and *Bromlow* even though they were not third-party beneficiaries. Moreover, Plaintiffs cannot in good faith allege both

that (1) Moxy is liable for having conspired to breach the Terms of Service, and (2) Moxy is a stranger to the Terms of Service such that it cannot invoke the forum selection clause. Having asked this Court to judge Moxy's conduct against the Terms of Service, *Manetti-Farrow* makes clear that Plaintiffs are stuck with all of its terms—they do not get to pick those they like and leave the rest.

*Fourth*, Plaintiffs' argument that the clause should not be applied because they claim it would be difficult to sue Moxy in the U.K. ignores the very purpose of forum selection clauses and the law under *Manetti-Farrow*. Opposition at 5-6. Plaintiffs willingly consented to pursue claims arising out of the Terms of Service in the U.K., and the law prevents the absurd result that would follow if Non-California Plaintiffs were allowed to split their contract based claims depending on who they are suing.

The Court should restate its prior ruling enforcing the forum selection clause against Non-California Plaintiffs.

## III. PLAINTIFFS HAVE NOT PLED A RICO CLAIM

To accurately analyze this claim, the Court need do little more than read its prior Order. There are *no new RICO allegations* at all, and Plaintiffs do not even pretend otherwise. Instead, they cynically repeat the exact same allegations in the FAC and hope that the Court changes its mind. The Court should not do so.

### A. Plaintiffs Fail To Plead Any Coordination Or Common Purpose

The Ninth Circuit is clear as to the purpose of the civil RICO statute: it is "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates,* 420 F.3d 897 (9th Cir. 2005). Accordingly, this Court, like dozens before it, made clear that Plaintiffs must plead facts showing that *organization or coordination*, rather than independent actors acted in a way Plaintiffs can imagine was sinister. Order at 18-19; *see Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (plaintiffs must plead "evidence of an ongoing organization, formal or informal, and evidence that the

various associates function as a continuing unit") (cleaned up). Plaintiffs (still) utterly fail to plead any such coordination between the Fenix Defendants, Moxy, and the other Agency Defendants, and the arguments in their Opposition are frivolous.

The undisputed and determinative fact is that Plaintiffs ***nowhere allege in the SAC that anyone at Moxy at any time ever communicated with anyone at Fenix Defendants or any other Agency Defendant, or that Moxy even knew any other Agency Defendant even existed***. This Court already found that this deficiency doomed Plaintiffs' RICO claim. Order at 19 (citing *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1051, 1057 (C.D. Cal. 2016) (finding allegations that defendants agreed to conceal the scope and nature of the defects without specific facts, such as references to specific communications, insufficient to state a common purpose)). That ruling is supported by countless others. *See, e.g.*, *U.S. v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (defendant can only participate in RICO scheme where it is "aware of the essential nature and scope of the enterprise") (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)); *Wimo Labs LLC v. eBay Inc.*, Case No. SACV 15-1330-JLS (KESx), 2016 WL 11507382, at *3-4 (C.D. Cal. Jan. 28, 2016) (RICO claim failed absent allegations enterprise members "were even aware of one another's existence as participants in a scheme to defraud" and where "Plaintiff fail[ed] to allege any facts suggesting that they combined as an enterprise in furtherance of a fraudulent or unlawful purpose").

Plaintiffs seek to avoid this fatal flaw by substituting rhetoric for substance, boldly claiming that "Moxy is a vital member of the scheme, directing activity across all levels of the enterprise." Opposition at 10-11; *see also id.* at 17-18 (claiming "Moxy gives direction at nearly every level of the conspiracy"). But having made that proclamation, Plaintiffs fail to identify any alleged facts that support it.[2] Instead,

[2] Bold, unsupported proclamations are a consistent feature of the Opposition. Plaintiffs also assert the "SAC provides painstaking detail and abundant examples of

the only communications Plaintiffs cite in the SAC are Moxy's alleged *internal communications* with unidentified Creators and Chatters. *Id.* (failing to identify a single communication between Moxy and Fenix Defendants or Agency Defendants); *see also id.* at 14 and 17-18 (alleging that Moxy's only communications were with unidentified Creators and Chatters). As, again, this Court already found, these sorts of allegations about Moxy's internal workings do not support a RICO claim because they describe nothing more than that Moxy was engaging in "the ordinary business purpose of increasing revenue." Order at 19 (citing *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("Without the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose. The challenge for Plaintiffs is to set forth sufficient allegations to distinguish ordinary business conduct from fraudulent conduct. Pleading by adjective does not comply with Rule 9(b)."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) (finding mere allegations of defendants fraudulently associated in a manner directly related to their own primary business activities insufficient to state a claim under 18 U.S.C. § 1962(c):)).

In an implicit acknowledgement that they cannot allege facts to satisfy this pleading threshold, Plaintiffs attempt to lower their pleading burden by asserting that mere conclusory allegations suffice. Opposition at 9, 11-12. As before, that argument is an obvious misstatement of the law.[3]

---

the common purpose uniting the Content Fraud Enterprise," without bothering to provide any of those details or examples. Opposition at 14.

[3] Plaintiffs argue that the fact that Moxy was not formed until 2021—five years *after* the alleged RICO enterprise began—is irrelevant because a party can join a pre-existing conspiracy. Opposition at 8. While that is theoretically true, a two person RICO conspiracy cannot exist if one of the parties does not exist. Plaintiffs nonetheless insist otherwise, ignoring the absurdity. SAC ¶¶ 736-808 (alleging Moxy was in a RICO conspiracy from 2016 onwards).

For example, Plaintiffs cite *Boyle v. U.S.*, 556 U.S. 938 (2009) and argue that because there the alleged group was "loosely and informally organized" and did not "appear to have had a leader or hierarchy," Plaintiffs need not plead here more than broad conclusions as to coordination and common purpose. *Id.* at 9-10. But Plaintiffs either negligently or deliberately misread *Boyle*, as they did in their prior briefing, because the allegations in that action as to coordination and common purpose were clear: the RICO activity "was typically carried out *by a group of participants who met beforehand to plan the crime*, gather tools (such as crowbars, fishing gaffs, and walkie-talkies), *and assign the roles that each participant would play* (such as lookout and driver)."[4] 556 U.S. at 941 (emphases added). Unlike in *Boyle*, where allegations of inter-defendant communications were clear, Plaintiffs have not alleged any such communications. Instead, they have alleged precisely what the *Boyle* court said was *insufficient*: alleging only "that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not [] enough to show that the individuals were members of an enterprise." *Id.* at 947 n. 4.

Plaintiffs' other citations for the same argument fail for the same reasons. Opposition at 12. In *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), when determining that plaintiff had adequately pled coordination in furtherance of a common scheme the Ninth Circuit emphasized the existence of formal contractual relationships, coordinated marketing efforts, and extensive data transfers between the parties. 486 F.3d at 552. In *LD v. United Behavioral Health*, 508 F. Supp. 3d 583 (N.D. Cal. 2020), the plaintiffs had alleged "*facts* that raise the inference" that the defendants, who were in direct contractual relationships with one another, had actually "collaborated and conspired to develop and use a database and pricing tool" that had defrauded plaintiffs. 508 F. Supp. 3d at 602 (emphasis added). In *In re*

[4] Plaintiffs made this same baseless argument as to *Boyle* when defending the FAC. *See* Dkt. No. 142 at 8.

*Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Pracs. and Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018), the defendant automobile manufacturer and its various subsidiaries, suppliers, and executives did not even argue a lack of coordination or common purpose because they were in direct contractual relationships with one another and the "defeat device" that had been installed in vehicles and caused the harm could only have been created and installed with active collusion. *See id*. at 981-83. The court did not hold that such allegations were unnecessary. Finally, *In re WellPoint, Inc. Out of Network UCR Rates Litigation*, 865 F. Supp. 2d 1002 (C.D. Cal. 2011), is the same, because the defendants were all closely related entities who had direct contractual relationships and so necessarily communicated with each other. *Id.* at 1033-34.

The Supreme Court was abundantly clear when it stated what RICO plaintiffs must allege: that "the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). The Ninth Circuit agreed in *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008), holding that RICO a plaintiff must plead facts showing a defendant was not just "involved" in a RICO enterprise but also had "some part in directing its affairs." As in *Walter*, and *Reves* (and those many other cases cited above), so too here: Plaintiffs' conclusory assertion that Moxy was "involved" in the supposed enterprise is insufficient absent any factual allegations supporting that it had "some part in directing its affairs." Because all of the acts, direction, and communications Moxy allegedly undertook were *internal*, it was not in a RICO enterprise but was acting independently.

Just as this Court found with respect to their prior pleading, Plaintiffs have failed to plead any facts whatsoever to support that Moxy ever did *anything to participate* in the purported "Content Fraud Enterprise." That warrants dismissal of the RICO claim.

### B. Plaintiffs Have Not Pled That Moxy Committed Any Predicate Act

#### 1. Moxy Did Not Commit Its Own Predicate Act

Plaintiffs do not dispute that their allegations in the SAC as to the supposed predicate acts are identical to those that were deemed insufficient in the FAC. In an implicit concession that there is no valid response to Moxy's arguments and this Court's prior ruling, Plaintiffs simply pretend they do not exist. That is not a viable strategy.

Plaintiffs blithely assert that they have "amply allege[d] when, where, and how Moxy utilized interstate wires," and then cite to a single instance where "several of Moxy's own represented Creators told Plaintiff S.M. that they were the ones directly responding to messages without using Chatters." Opposition at 15 (citing SAC ¶¶ 510-11, 788(b)).[5] As Moxy and the Court already stated, that claim ignores the law and their own allegations in several fatal respects.

*First*, as this Court already found, Plaintiffs' allegations "[o]n information and belief" that Moxy represented the Creators Plaintiffs reference, SAC ¶ 369, control their accounts, *id.* ¶ 265, and used those accounts to perpetrate the supposed scam, *id.* ¶ 501, are insufficient to plead a fraud claim. Order at 21. These are each key elements of Plaintiffs' fraud claim and they had 1,328 paragraphs in the SAC to plead supporting facts to the heightened fraud pleading standard. They failed to do so.

*Second*, the alleged misrepresentation Plaintiffs assert underlies the fraud remains a generalized statement by a group of Creators at an unknown time that "it was them replying to messages and/or denied using Chatters." SAC ¶ 511 (cited in Opposition at 15). That is word for word the precise same allegation that this Court held in the Order did not "adequately allege the 'who, what, when, where, and how'

[5] Plaintiffs' citations to paragraphs 510 and 788 of the SAC are a red herring, intended to make it look like their allegations are weightier than the single allegation in paragraph 511. Neither of those paragraphs identify any representations by anyone.

of the alleged fraud conducted by Moxy. . . [because it] do[es] not allege the circumstances of specific representations made by Moxy that gave rise to Plaintiffs' claims."[6] Order at 21. Plaintiffs' pointed failure to provide that information in the SAC despite the Court's Order makes clear they cannot do so.

Desperate to escape their failure to allege even the most basic facts underlying their fraud claim, Plaintiffs plead ignorance of those facts on the basis they "have no access to Moxy's internal messaging platform." Opposition at 16. That excuse is risible. *Plaintiffs must base their fraud claim on statements they were told and on which they relied*.[7] The consequence of a failure to do so with the requisite specificity is dismissal, not discovery.

*Third*, Plaintiffs *still* do not allege any facts in the SAC supporting that any representation by Moxy or its agents was false. Plaintiffs implicitly concede as much by failing even to argue falsity. While Plaintiffs argue the fraud claim arises out of generalized representations made to Plaintiffs that they were messaging with Creators, *Plaintiffs cite no paragraphs where those representations are alleged to have been actually false and do not even affirmatively state that they were false*. Opposition at 15-16. To the extent that argument is based on the allegation made "on information and belief" that Moxy represented Creators, that is insufficient for the reasons stated above and because Plaintiffs have affirmatively pled that Creators actually did speak with Fans. SAC ¶ 266 ("agencies contract with chatters to conduct most" *but not all* of the communications "between the Creators and the Fans"). Without any particularized allegation of fact supporting falsity, Plaintiffs have not pled a fraud.

---

[6] *Compare* SAC ¶ 511 ("Plaintiff S.M. confronted Bella Thorne, Stephanie Landor, Breckie Hill, and Kaitlyn Krems via direct message and they all said it was them replying to messages and/or denied using Chatters.") *with* FAC ¶ 299 (same).

[7] Moxy *cannot* identify those misrepresentations for Plaintiffs because they are proceeding anonymously.

*Fourth*, as in the FAC, Plaintiffs' allegations in the SAC as to reliance are insufficient. In fact, Plaintiffs *nowhere* allege that they relied upon *any* statement by Moxy at any time, and instead allege only that they relied on *Fenix Defendants'* statements. *See, e.g.*, SAC ¶¶ 454, 469, 487, 503, 523 (alleging each Plaintiff "relied on OnlyFans' successful efforts to market itself as a 'revolutionary' platform that allowed content Creators to have direct interactions with their Fans"). And Plaintiffs cannot have relied on these representations to subscribe to Creators because they now claim the representations were false but *they still subscribe* to the Creators and do not contend they cancelled any subscription because of the purported fraud. *See, e.g.*, SAC ¶ 641 (alleging R.M. remains subscribed to Chyanne Burden). As before, Plaintiffs have not sufficiently alleged "which specific representations by [Moxy] were relied on by Plaintiffs." Order at 21. Although the lack of reliance is independently fatal to Plaintiffs' claims, Plaintiffs *nowhere* argue in Opposition that they have properly pled reliance.

*Finally*, Plaintiffs' attempt to assert that Moxy's "use of social media to induce Fan subscriptions," Opposition at 16, fails not only for the reasons identified above, but also because there is no allegation any Plaintiff ever even saw those supposed social media posts.[8] If Plaintiffs never saw them, they cannot have relied on them or been defrauded by them.

2. Fenix Defendants' Alleged Acts Cannot Be Imputed To Moxy

Plaintiffs' attempts to impute to Moxy alleged acts by Fenix Defendants also fails because they have failed to show Moxy did more than perform their own legitimate business activities. Even if Plaintiffs *had* alleged fraud by Fenix Defendants—they have not—Moxy is not liable for those acts merely because

[8] Plaintiffs' citation to *RJ v. Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 963 (N.D. Cal. 2022) is inapposite because, unlike here, the fraud there was misrepresentations a defendant made in three telephone calls to a plaintiff.

Plaintiffs can connect a string of dots between Moxy and Fenix Defendants. *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (that the *seller* of canned tuna misrepresented it was "dolphin-safe" did not mean the fisherman, importers, storers, canners and processors had engaged in fraudulent RICO conduct); *Uce v. Oral Aesthetic Advoc. Grp., Inc.*, No. CV 23-3186-CBM-MRWx, 2024 WL 3050720, at *5 (C.D. Cal. Feb. 23, 2024) (alleged RICO scheme members did not commit RICO conduct where they "[s]imply perform[ed] services for the enterprise"). Again, the law requires far more specificity than Plaintiffs have provided.

**C. Plaintiffs Still Have Failed To Plead RICO Damages**

It is undisputed that a RICO plaintiff is required to plead facts showing that the RICO scheme caused it "concrete financial loss." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) *abrogated on other grounds by Diaz v. Gates,* 420 F.3d 897 (9th Cir. 2005). Plaintiffs argue they have done so because they overpaid "Premium Content Fees." Opposition at 19. But they have not properly alleged that any (much less all) of those fees were paid (or overpaid) as a result of any alleged fraud, rather than for other reasons. Although the supposed "fraud" was that Plaintiffs were told they would have "authentic" interactions with Creators when they were in fact talking to Chatters, the SAC makes clear that Premium Content Fees were paid for reasons *other than* to speak to Creators.

As set forth in Moxy's Motion to Dismiss, Pay-Per-View charges and Creator Tips fall within Plaintiffs' "Premium Content Fees" definition but they cannot constitute RICO damages because they were paid to view custom material or "custom content, special requests, advice, recipes, lessons, or almost anything else" rather than to talk to Creators. Motion at 23 (citing SAC ¶ 209).

The only "Premium Content Fees" that conceivably *could* be actionable under RICO are the subscription fees Plaintiffs allege were paid to talk to Creators. While Plaintiffs insist that those fees would not have been paid absent the purported fraud, Opposition 19, they do not dispute that *they are still subscribed* to at least some of the

Creators or argue why that is not determinative.[9] *See, e.g.*, SAC ¶ 641 (alleging R.M. remains subscribed to Chyanne Burden); *id.* ¶ 788b-e (alleging Plaintiffs S.M., R.M. and N.Z. were subscribed to alleged Moxy Creators without stating that they are no longer subscribed). Plaintiffs have the burden of pleading their fraud damages with particularity, and they have not done so. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 980-81 (9th Cir. 2008) (RICO claim dismissed where Plaintiff failed to plead the alleged RICO activity, rather than other acts, caused it any financial loss); *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 853 (9th Cir. 2024) (dismissing fraud claim for failure to plead facts identifying how the alleged fraud caused harm).

Plaintiffs' failure to plead facts connecting the alleged RICO fraud to their alleged harm is yet another reason their RICO claim fails.

## IV. PLAINTIFFS HAVE NOT PLED A RICO CONSPIRACY CLAIM

Plaintiffs do not meaningfully dispute, nor could they, that if their RICO claim is dismissed their RICO conspiracy claim should be dismissed too. Order at 21-22 (citing *Khalid v. Microsoft Corp.*, No. 20-35921, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023) ("Because [plaintiff] failed to state a RICO claim . . . he also failed to state a RICO conspiracy claim.")).

## V. PLAINTIFFS FAIL TO PLEAD A VPPA CLAIM

The addition in the SAC of new allegations as to what personal information Plaintiffs disclosed does not remedy all the defects in Plaintiffs' VPPA claim. Plaintiffs' failure to plead facts showing that any of them ever chose a video from a Moxy-affiliated Creator means they have not pled Moxy ever had any PII as it is defined in the statute: information that will disclose the identity of a person and what video they chose. In any event, the VPPA does not prohibit the absurd result Plaintiffs suggest—that Moxy cannot disclose information to its alleged Chatter employees they

[9] The only Plaintiff who no longer subscribes to an alleged Moxy-affiliated Creator is B.L., but he does not claim fraud caused him to end his subscription. *Id.* ¶ 788a.

need to do their job. If that was true, no videotape provider could avoid a violation of the statute.

**A. Moxy Had No PII To Disclose In Violation Of The VPPA**

There is no dispute that the VPPA only prohibits disclosure of PII that "identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 285 (3d Cir. 2016); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) ("plaintiff must prove that the defendant knew that a third party would actually link information it had with other information conveyed and become aware that a particular person had in fact purchased a particular video"). Plaintiffs fail to show in Opposition that they have pled facts supporting that Moxy ever had any such information.

Critically, Plaintiffs nowhere cite *any* allegation in the SAC that any Plaintiff ever sought or received a video from a Moxy-affiliated Creator. That is telling, because Plaintiffs *do* allege that they received videos from Creators affiliated with *other Agency Defendants*. *See, e.g.*, *id.* ¶ 458(b) (Plaintiff N.Z. paid "$99 for a video" from an Unruly-affiliated Creator); ¶ 491(e)-(g), (j) (Plaintiff B.L. purchased four "video[s]" from Creators, Inc.-affiliated Creator). If Plaintiffs had requested and received a video from a Moxy-affiliated Creator, they would have said so. Their failure to do so means they have necessarily failed to plead that Moxy ever even possessed any PII that fits the VPPA's narrow definition.

Recognizing this shortcoming, Plaintiffs misleadingly argue that "Plaintiffs who subscribe to Moxy-managed Creators allege that they requested and viewed videos." Opposition at 21. But that is artful misdirection based on improper group pleading. The paragraphs in the supporting string cite support only the general propositions that Moxy *offers* videos and that Plaintiffs obtained videos from "the Agency Defendants" generally, not from Moxy in particular. Gamesmanship is not a valid substitute for allegations. Plaintiffs' general allegation that Moxy *offers* videos

is not enough to support a claim that Moxy ever had Plaintiffs' PII as the VPPA defines it. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) ("generalized allegations saying that [the defendant] shares video titles" were insufficient to support VPPA liability).

**B. Plaintiffs Fail to Allege That Moxy Knowingly Disclosed PII**

Even if Moxy did collect PII under the VPPA (it did not), none of allegations in the SAC suggest that Moxy ***knowingly*** disclosed this information, as the VPPA requires. 18 U.S.C. § 2710(b)(1). A knowing disclosure occurs only where the defendant is "conscious[] of transmitting the private information," which requires actual knowledge that it possessed PII at the time of the alleged disclosure. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("'[K]nowingly' connotes actual knowledge."). Plaintiffs have failed to plead Moxy had any such knowledge beyond the entirely conclusory, and therefore insufficient, assertion that "Defendants knowingly disclosed Plaintiffs' and Class Members' PII." SAC ¶ 1208. Plaintiffs fail to show otherwise in Opposition.

Plaintiffs' sole argument in support of knowing disclosure is that "the Chatter Scams are designed to solicit personal information from Fans and create a personal relationship to increase revenue from Premium Content Fees." Opposition at 22 (citing SAC ¶¶ 271-75). But that is not supported by the cited paragraphs, which only allege that (1) Chatters act like the Creators, SAC ¶ 271; (2) Chatters use scripts "designed … to lead the Fan" into buying content, *id.* ¶¶ 272-74; and (3) some fans send "their own photos and videos" to Creators, which are often "of a sexual nature," *id.* ¶ 275. Nothing in the cited material, or elsewhere in the SAC, is sufficient to support the inference that Moxy "designed" any services to "solicit personal information."

But even if the Court finds that the SAC does support this inference, that Chatters ***can*** obtain personal information from fans is again insufficient to establish that Moxy had any knowledge that Chatters had ***actually obtained*** PII from Plaintiffs

such that it could disclose that PII knowingly. *See Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997), *aff'd*, 172 F.3d 51 (6th Cir. 1998) ("It is a logical impossibility for a party intentionally to disclose information that it does not know it has."). Rather, Plaintiffs' allegations support that Moxy *did not* disclose, knowingly or otherwise, any PII by giving Chatters access to Creators' accounts, because it was Chatters who obtained that information. SAC ¶¶ 1198-1203.

At bottom, Moxy cannot violate the VPPA by creating only a potential risk of disclosure of PII—it must have actually and knowingly disclosed it. Plaintiffs have not pled that ever happened.

### C. The "Ordinary Course Of Business" Exception Applies

Even if Plaintiffs had alleged Moxy collected PII as defined in the statute and knowingly disclosed it, any disclosure was lawful under the VPPA's "ordinary course of business" exception because it was for "order fulfillment [and] request processing." 18 U.S.C. § 2710(a)(2). Plaintiffs' attempt to avoid that exception by speciously asserting that "Moxy is not in the business of selling products" but is in the business of managing Creator accounts," and that "Chatters are not required to fulfill orders," betrays the fatal flaws in their case. Opposition at 23-24.

Plaintiffs assertions in the Opposition as to Moxy's business are directly contrary to their repeated claims in the SAC where Plaintiffs take pains to explain that is *precisely what Moxy does*. *See, e.g.*, SAC ¶ 273(c) (alleging Moxy's business is "sell[ing] Fans content from the Creator's Vault").[10] They also are directly contrary to the position taken in their Opposition to the FAC when arguing Moxy is a videotape

[10] *See also, e.g.*, SAC ¶ 48 (alleging Moxy "provides 'Chatter services'" with "the express purpose of deceiving and manipulating Fans in order to maximize their willingness to purchase content"); ¶ 583 ("Agency Defendants' Chatter Scams are designed to use deception to maximize the Premium Content Fees paid to the Creators by the Fans"); ¶ 586 (Agency Defendants' "fraudulent activities … increase and maximize a Creator's Premium Content Fees").

provider under the VPPA. *See* Dkt. No. 142 at 21 ("The FAC alleges that each Agency Defendant orchestrated the delivery of paid audiovisual content by managing the sending of unlock links and pricing of custom videos through Creator accounts. These videos were delivered via unlock links, PPV tips, and custom video transactions—each orchestrated by agency personnel operating through Creator accounts."). But even if those assertions were not frivolous and bad faith, they are irrelevant because the ordinary-course-of-business exception does not require Moxy to engage ***solely*** in the sale of content, only that "order fulfillment or request processing" be an ***ordinary part*** of its business. 18 U.S.C. § 2710(a)(2). The SAC makes clear that it is.

*First*, Moxy (and the other Agency Defendants) allegedly "takes over and operates all aspects of the Creator's account," including chats. SAC ¶ 265. *Second*, Moxy allegedly engages Chatters to operate the Creators' accounts in order to "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content." *Id.* ¶ 274(c). *Third*, upon receipt of a request for content, "the Chatter notifies the Creator of the request" in order to fulfill it. *Id.* ¶ 274(d). Accordingly, *the entire basis of Plaintiffs' VPPA claim is that Chatters process requests for custom content through chatter services*. *See* SAC ¶ 1202 (alleging that "information provided by Plaintiffs [is] linked to their request for or viewing of any video content"). Plaintiffs' attempt to recast this as "tracking users' activities" or "marketing" similarly ignores their own repeated allegations. Opposition at 24. Plaintiffs have themselves alleged facts showing that any disclosure by Moxy of PII is for the protected purposes of fulfilling orders and processing requests.

Lastly, Plaintiffs' attempt to distinguish *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 625 (7th Cir. 2014), is not only unpersuasive, but also reinforces Moxy's argument. As Plaintiffs acknowledge, the *Sterk* court found that "customer service" falls squarely within the scope of order fulfillment and request processing and is thus protected conduct under the VPPA. Opp. at 24. This is the case whether

the alleged disclosure is "proactive (in anticipation of customer requests) [or] reactive (in response to an individual customer's call)." *Sterk*, 770 F.3d at 626. As noted, Plaintiffs' allegations here are that Chatters *are* that customer service—they anticipate customer requests and react to them. The outcome here should therefore be the same as in *Sterk*.

## VI. MOXY DID NOT VIOLATE THE UCL

Plaintiffs' UCL claim remains a mere repackaging of their RICO and VPPA claims, and thus fails along with them. *See* Motion at 24. Plaintiffs invoke the "unfair" prong with respect to Moxy, alleging it "us[ed] chatters" to "impersonate" creators and "facilitate the relationship" to collect fees. SAC ¶ 1321. The very same allegations underlie their RICO and VPPA claims, *see* Sections III & V, *supra*, and a UCL claim cannot survive when it is based on other failed theories of liability. *See* Order at 29.

Plaintiffs cite no allegations or legal authority in support of their assertion that "RICO and VPPA are distinctly different from the UCL," such that a UCL claim can survive independent of these causes of action based on the same alleged conduct. *See* Opposition at 24-25. Nor could they. It is well-established that a UCL claim rises and falls with other causes of action based on the same allegations. *See* Mot. at 28 (citing *Punian v. Gillette Co.*, Case No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016); *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011)). Plaintiffs' attempts to distinguish *Punian* and *Actimmune* merely cite dicta incidental to the courts' opinions. The relevant inquiry is not whether "the same standard governs all the statutes" or a Rule 9(b) analysis was conducted.[11] Opposition at 24-25. It is whether the UCL claim is based on other failed theories of relief.

---

[11] In any event, as discussed in Section II.B.1, *supra*, Plaintiffs do not allege any fraud that could underlie a UCL claim with the requisite particularity.

Where, as here, that is the case, the UCL claim should be dismissed. *See, e.g.*, *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) ("Consequently, the complaint, as it stands, does not plausibly allege a VPPA claim. Dismissal is also warranted for the UCL and unjust enrichment claims, which Jefferson effectively tethers to her VPPA claim.").

Because Plaintiffs can point to no distinct allegations that support their UCL claim, this claim fails with their VPPA and RICO claims.

But even if Plaintiffs could point to a distinct basis to maintain their UCL claim (they have not), this claim still fails because—as argued by Elite Creators (Dkt. No. 227 at 18)—it is new to the SAC. In its prior Order, the Court merely granted Plaintiffs leave to amend to "***cure the deficiencies described in this Order***." *See* Order at 34 (emphasis added). This language permits Plaintiffs to add only new *allegations*—not new *claims*. *See Choudhuri v. Specialized Loan Servicing*, No. 22-CV-06993-JST, 2023 WL 6277327, at *5 (N.D. Cal. Sept. 26, 2023) ("Where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken."). Because the SAC did not bring a UCL claim against Moxy or any other Agency Defendant, Plaintiffs attempt to bring this claim is improper and in violation of the Court's Order.

## VII. THE COURT SHOULD DISMISS THE SAC WITH PREJUDICE

Plaintiffs have twice amended their claims and been given explicit direction as to what their amendments needed to achieve. Yet they have not only failed to allege sufficient facts, they have refused even to try. The SAC contains 800 more paragraphs than the FAC, but adds nothing of substance.

Having given Plaintiffs ample opportunity to state a claim, the Court should exercise its "broad" discretion to deny further leave to amend. *See Levay v. AARP, Inc.*, No. 17-09041 DDP (PLAX), 2019 WL 2108124, at *8 (C.D. Cal. May 14, 2019) ("[D]iscretion to deny leave to amend is particularly broad where the plaintiff has

previously amended.") (internal quotation marks omitted). Having failed to try and make substantive changes once, amendment is certainly futile. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *see also Johnson v. Amazon.com Inc.*, No. 2:24-CV-01070-JNW, 2025 WL 949495, at *5 (W.D. Wash. Mar. 27, 2025) (denying leave to amend because the "amended complaint suffers the same deficiencies as [] prior pleadings"). This frivolous action should be brought to a decisive end.

**VIII. CONCLUSION**

For the foregoing reasons and those stated in Moxy's Motion to Dismiss, Moxy respectfully requests that the Court grants its Motion to Dismiss in its entirety with prejudice.

DATED: March 5, 2026

Respectfully submitted,

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________
Oliver Rocos
Attorneys for Defendant Moxy Management

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Moxy Management, certifies that this brief contains 6,995 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: March 5, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________
Oliver Rocos
Attorneys for Defendant Moxy Management