Nithin Kumar (SBN 300607)
nithin@kingfisherlawapc.com
KINGFISHER LAW APC
P.O. Box 492415
Los Angeles, California 90024
T: (408) 930-3580

Attorneys for Defendant Content X, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiff,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO. 8:24-cv-01655-FWS-SSC

**REPLY IN SUPPORT OF DEFENDANT CONTENT X, INC.'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

Date: March 19, 2026
Time: 10:00 a.m.
Dept.: 10D

Assigned to Hon. Fred W. Slaughter

# I. INTRODUCTION

After filing a substantially longer Second Amended Complaint ("SAC") that somehow manages to ***not include a single new substantive allegation*** against Content X, Plaintiffs attempt to cast blame on Content X and the other smaller Agency Defendants for not burdening the Court with even more extensive briefing that would merely repeat and duplicate the exact same arguments already articulated by the other Defendants. (*See* Dkt. 233.) As explained below, Plaintiffs' procedural objections are unavailing, and Content X's motion to dismiss should be granted for the same reasons articulated in the other Agency Defendants' motions.

# II. DISCUSSION

## A. Content X Properly Joined the Other Defendants' Motions to Dismiss

As an initial matter, it was entirely proper for Content X to join the other Defendants' motions and incorporate their arguments into its own motion to dismiss. "Joinders are an accepted practice that help courts avoid having to read duplicative arguments, and are not improper." *Doe v. Taro Pharm. U.S.A., Inc.*, No. 25-CV-07815-RFL, 2025 WL 3280257, at *1 (N.D. Cal., Nov. 25, 2025). "[I]ncorporation of another party's argument (much like joinder to a motion) is an accepted practice in appropriate situations like here, and saves the court having to read the same arguments and authorities multiple times." *Tessema v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l. Union*, No. 2:13-CV-01782-APG-VCF, 2014 WL 4656226, at *3 (D. Nev., Sept. 17, 2014); *see, e.g.*, *Cal. Inst. of Tech. v. City of Pasadena*, No. 2:23-CV-07681-AB-AJR, 2024 WL 6938009, at *4 (C.D. Cal., Aug. 23, 2024) (allowing joinder to motion to dismiss and noting "courts have granted co-defendants' requests to join arguments as long as it, at the very least, is efficient"); *Neumann v. Veal*, No. CIV.S-06-2874-MCE-EFB, 2009 WL 688895, at *3-*4 (E.D. Cal. Mar. 13, 2009) (explaining that joinder to a "motion to dismiss is a reasonable and efficient means of evaluating the defense that [both defendants] seek to raise").

### B. The Arguments in the Other Defendants' Motions Apply Equally to Content X and Support Its Motion to Dismiss

Plaintiffs falsely assert that "many of the arguments" asserted in OnlyFans, Moxy and Creator's Inc. motions do not apply with equal force to Content X. (Dkt. 233 at 11.) ***Not so***. The Court already recognized that the Agency Defendants all "raise[d] similar arguments" in moving to dismiss the FAC (Dkt. 209 at 20 n.3), and the Court ultimately granted those motions for reasons that applied to all Agency Defendants. For example, the Court previously dismissed Plaintiffs' RICO claim "because Plaintiffs fail to allege facts that Fenix Defendants and Agency Defendants combined as an enterprise in furtherance of the Chatter Scams" and did not "sufficiently allege coordination among the members." (*Id.* at 19.) Likewise, the Court previously dismissed the VPPA claim because "Plaintiffs fail to adequately allege the information disclosed was PII." (*Id.* at 24.) In other words, the Court dismissed the FAC based on pleading defects that had nothing to do with the scant few individualized allegations that differentiate between the various Agency Defendants.

These same defects also exist in SAC, which contains ***no new substantive allegations regarding Content X*** that were not already included in the FAC. As such, Plaintiffs' claim that "many of the arguments made by Fenix, Moxy, and Creators Inc. are specific to the allegations against those Defendants" and not Content X (Dkt. 233 at 11), is pure sophistry. To the contrary, the vast majority of arguments asserted in the other Defendants' briefs support dismissal of Content X for the exact same reasons. (*See e.g.*, Dkt. 225 at 12 ("Plaintiffs fail to allege any coordination between Fenix and the Agency Defendants, either individually or collectively"), Dkt. 227 at 12 (Elite Creators arguing that "Plaintiffs alleged the same common purpose that the Court already found was deficient"), at 15-18 (arguing that the UCL claim allegations regarding the Agency Defendants do not satisfy Rule 9(b)), at 18-19 (arguing that the Court did not grant Plaintiffs leave to assert new claims); Dkt. 228 at 15-19 (Moxy arguing that Plaintiffs have not pled a RICO enterprise, including because "Plaintiffs

fail to plead facts showing any Defendant knew any other Defendant existed, let alone that any Defendant ever communicated with any other Defendants"), at 22-23 (arguing that Plaintiffs failed to allege a compensable injury under RICO), at 25-26 (arguing that only disclosure alleged is "Plaintiffs' own disclosure to chatters," which is not actionable under VPPPA).)

And even where the other Defendants' arguments focused specifically on the allegations against them, those same arguments still apply to Content X, as Plaintiffs also made very similar allegations against Content X. For example, the other Agency Defendants argue that the SAC fails to satisfy Rule 9(b) with respect to the allegations of wire fraud against them. (*See* Dkt. 227 at 7-10, Dkt. 228 at 19-21.) This same general argument supports Content X's motion, as none of Plaintiffs' allegations identify with particularity any fraudulent statements made by Content X in furtherance of the RICO enterprise. (Dkt. 231; *see* Dkt. 127 at 11-12 (explaining why FAC's allegations of fraud by Content X—which are repeated in the SAC in paragraph 511—do not satisfy Rule 9(b)). Indeed, none of the "SAC's overwhelming allegations"—which Plaintiffs claim "Content X failed to present any argument [to] rebut"—come even close to satisfying Rule 9(b). (*See* Dkt. 233 at 12-13 (citing SAC ¶¶ 418, 421-422, 1011-1015).)[1]

---

[1] Paragraphs 418 and 1012 of the SAC merely allege that "Content X uses marketing . . . that emphasize the personal nature of the interactions"; paragraphs 421 and 1014 allege that "Content X provides Chatter services"; paragraphs 422 and 1015 allege that "former Represented Creators . . . discussed the sub-par nature of the Chatter services" and the pressure they received to provide 'account managers' with sexually explicit photographs"; and paragraph 1014 identifies Creators managed by Content X. ***None of these allegations even remotely amount to fraud.***

Paragraph 1011 alleges that Content X "transmitted multiple communications through the internet to Plaintiffs and Class Members, falsely representing they were Creators, to convince Plaintiffs and Class Members to pay Premium Content Fees." This allegation falls woefully short of meeting the particularity requirements of Rule 9(b).

Similarly, the other Agency Defendants' arguments regarding the VPPA's ordinary business exception also apply to Content X, as Plaintiffs' allegations regarding the nature of Content X's business also confirm that the alleged disclosures of PII by Content X fall within the exception. (*See* Dkt. 127 at 26-27 (arguing that "[s]o long as Moxy's 'ordinary course of business' is engaging chatters to conduct the 'selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators,'" the alleged disclosures to chatters falls within the ordinary course of business exception).) Accepting as true Plaintiffs' allegation that Content X is in the business of providing chatter services, Plaintiffs cannot also simultaneously assert that the disclosures Content X makes in the context of providing chatter services falls outside Content X's ordinary course of business. (*See* SAC ¶ 1204 ("Each of the Agency Defendants is engaged in the business of selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators"), ¶ 421 ("as part of its management of those and other Creator accounts, Content X provides Chatter services").)

In summary, the arguments asserted by the other Defendants in their respective briefs apply equally to Content X and support Content X's motion to dismiss for the same reasons.[2]

**C. The Court's Prior Ruling on the Forum Selection Clause Mandates Dismissal with Prejudice of All Claims Against Content X**

Finally, the claims against Content X should be dismissed with prejudice because Plaintiffs included the exact same allegations in the SAC that the Court

---

[2] To be sure, the other Agency Defendants assert some arguments that apply only to them and not Content X. (*E.g.*, Dkt. 242 at 17 (noting that Plaintiff R.M. cannot establish reliance as he remains subscribed to Moxy creator Chyanne Burden).) As shown above, however, the vast majority of the arguments made in support of dismissal of the RICO, VPPA and UCL claims apply equally to all Agency Defendants, including Content X, because they are based on Plaintiffs' failure to plead the necessary elements of their claims as to ***any*** defendant.

previously cited in ruling that the forum selection clause applied to the Non-California Plaintiffs' claims against the Agency Defendants. (*Compare* FAC ¶¶ 332, 335, 441a, 441d *with* SAC ¶¶ 547, 550, 1187a, 1187d.) Although Plaintiffs point to the SAC's new allegation that the Terms of Service state that it "does not give any rights to third parties" (Dkt. 233 at 6 (citing SAC ¶ 235)), the Court already expressly considered that exact provision in its prior ruling before rejecting Plaintiffs' position and enforcing the forum selection clause against the Non-California Plaintiffs. (Dkt. 209 at 31 (citing Dkt. 60-1 at p.21). Accordingly, the Court should dismiss the Non-California Plaintiffs' claims for the exact same reasons it articulated in its prior order. (*Id.* at 32 (citing FAC ¶¶ 332, 335, 441a, 441d).)

Because none of the California Plaintiffs allege subscribing to any of Content X's creators, the dismissal of the Non-California Plaintiffs' claims results in no other claims being asserted against Content X. Thus, assuming the Court agrees with its own prior ruling, the Non-California Plaintiffs' claims should be dismissed again, and Content X should be dismissed from this lawsuit with prejudice.

## V. CONCLUSION

For all of the reasons stated herein, in its moving papers, and in the other motions it joined, Content X respectfully requests that the Court dismiss the claims asserted against it in the Second Amended Complaint and deny leave to amend.

Respectfully submitted,

DATED: March 5, 2026 KINGFISHER LAW APC

By: */s/ Nithin Kumar*
Nithin Kumar
Attorneys for Defendant Content X, Inc.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Content X, Inc. certifies that this brief contains 1,605 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 5, 2026 KINGFISHER LAW APC

By: */s/ Nithin Kumar*
Nithin Kumar
Attorneys for Defendant Content X, Inc.