_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                  Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

Rolls Royce Paschal                                           N/A
Deputy Clerk                                                Court Reporter

Attorneys Present for Plaintiffs:               Attorneys Present for Defendants:

Not Present                                             Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [225, 227-32]**

Plaintiff N.Z., Plaintiff R.M., Plaintiff B.L., Plaintiff S.M., and Plaintiff A.L. (collectively, "Plaintiffs") bring this case against Defendant Fenix International Limited ("Fenix International" or "FIL"), Defendant Fenix Internet LLC (individually "Fenix Internet," and together with Fenix International, "Fenix Defendants"), Defendant Boss Baddies, LLC ("Boss Baddies"), Defendant Moxy Management ("Moxy"), Defendant Unruly Agency LLC ("Unruly"), Defendant Dysrpt Agency, Defendant Behave Agency LLC ("Behave"), Defendant A.S.H. Agency, Defendant Content X, Inc. ("Content X"), Defendant Verge Agency, Inc. ("Verge"), and Defendant Elite Creators LLC ("Elite Creators") (collectively, "Defendants"). (*See generally* Dkt. 218 ("Second Amended Complaint" or "SAC").)

Before the court are several motions to dismiss: (1) Fenix Defendants' Motion to Dismiss, (Dkt. 225); (2) Elite Creators' Motion to Dismiss, (Dkt. 227); (3) Moxy's Motion to Dismiss, (Dkt. 228); and (4) Verge's Motion to Dismiss, (Dkt. 229) (collectively, "Motions to Dismiss"). Behave, Unruly, and Content X join the Motions to Dismiss. (Dkts. 230-232.) These matters are fully briefed. (Dkts. 226, 233-36, 239-44, 246.) The court found this matter appropriate for resolution without oral argument. (Dkt. 247.) Based on the state of the record, as applied to the applicable law, the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.**

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

## I.      Background

The court provides a summary of (1) the Second Amended Complaint's allegations, (2) the OnlyFans Terms of Service, and (3) the court's prior order granting several motions to dismiss and granting in part and denying in part a motion to strike, (Dkt. 209 ("Prior Order" or "PO")).

### A.      Summary of the Second Amended Complaint's Allegations

OnlyFans is a social media platform known for hosting sexually oriented content with hundreds of millions of users ("Fans").  (SAC ¶ 3.)  Fans pay for the privilege of communicating personally and directly with specific people who post content on the platform ("Creators").  (*Id.*)  Fenix International is a private limited company that owns and operates the OnlyFans website and social media worldwide through various subsidiaries and affiliates.  (*Id.* ¶ 41.)  Fenix Internet is a Delaware limited liability company and wholly owned subsidiary of Fenix International.  (*Id.* ¶ 44.)  On information and belief, Fenix Internet directly or indirectly collects and receives all OnlyFans-related payments from Fans in the United States at the direction of, and under control of, Fenix International.  (*Id.*)  In short, Fenix Defendants operate the OnlyFans platform.

Plaintiffs are OnlyFans users and reside in different states such as California, Tennessee, Georgia, and Wisconsin.  (*Id.* ¶¶ 30-40.)  Plaintiffs used and/or subscribed to the OnlyFans website for various periods between 2018 to 2025.  (*See, e.g., id.* ¶ 452 (Plaintiff N.Z. used OnlyFans from 2020 to present); ¶ 467 (Plaintiff R.M. used OnlyFans from 2019 to 2023); ¶¶ 485, 500 (Plaintiff B.L. used OnlyFans from 2020 to present); ¶ 501 (Plaintiff S.M. used OnlyFans from 2018 to 2024); ¶ 521 (Plaintiff A.L. used OnlyFans from 2021 to 2024).)  As OnlyFans users, Plaintiffs subscribe to one or more creators represented by Boss Baddies, Moxy, Unruly, Dysrpt Agency, Behave, A.S.H. Agency, Content X, Verge, and Elite Creators (collectively, "Agency Defendants").  (*Id.* ¶¶ 48-56.)

OnlyFans' "core promise of its platform and marketing hinges on the authenticity of the personal interaction between Fans and Creators."  (*Id.* ¶ 14.)  On the website's "about" page, OnlyFans promises the following: "OnlyFans is the 18 + subscription platform empowering

_____

**CIVIL MINUTES – GENERAL**                                                                          **2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                       Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

creators to own their full potential, monetize their content, and develop authentic connections with their fans." (*Id.* ¶ 219.)  One of OnlyFans' "Core Values" is the following: "Giving creators control to own and monetize their content and to foster *authentic relationships* with their followers and fanbase." (*Id.* ¶ 221.)  Also, OnlyFans urges Fans to subscribe to specific Creators using the following language: "**SUBSCRIBE AND GET THESE BENEFITS**: Full access to this user's content [/] **Direct message with this user** [/] Cancel your subscription at any time." (*Id.* ¶ 227.)  OnlyFans' social media actively endorses, publishes, and emphasizes opportunities to direct message and build authentic relationships with Creators.  (*Id.* ¶ 230.)

Agency Defendants "sell their services to OnlyFans Creators with promises that they can increase a Creator's revenue exponentially—without the Creator ever having to actually do what OnlyFans promises: 'directly connect' with Fans." (*Id.* ¶ 263.)  "[O]nce a Creator engages an agency to operate his or her account, the agency takes over and operates all aspects of the Creator's account." (*Id.* ¶ 265.)  "Working in partnership with their Creators—often with full permission and authority from those Creators—agencies contract with 'Chatters' to conduct most, if not all, of the communications between the Creators and the Fans.  Without the Fans' knowledge, the Chatters impersonate the Creators when direct messaging with Fans." (*Id.* ¶ 266 (internal quotation marks added).)  "Agencies even provide Chatters with actual 'scripts' similar to those used by telemarketers and call center employees, which give Chatters a specific workflow to follow in order to maximize the amount of money extracted from any given Fan." (*Id.* ¶ 272.)

This case centers around what Plaintiffs call "Chatter Scams," in which Fans believe they are chatting directly with the Creator but are actually chatting with someone else.  In recent years, companies have developed specialized tools to facilitate the use of a single OnlyFans account by a team of Chatters.  (*Id.* ¶ 282.)  For example, Supercreator, CreatorHero, Infloww, and OnlyMonster are customer relationship management platforms ("CRM") designed to allow agency members to access OnlyFans accounts simultaneously to manage Creator accounts and facilitate the Chatter Scams.  (*Id.* ¶ 283.)  Agency Defendants use CRM tools to access the Creator's OnlyFans account and mirror a single live session inside a multi-seat dashboard.  (*Id.* ¶ 284.)  "These tools let multiple chatters read and answer DMs concurrently, without requiring each chatter to separately log into the Creator's official OnlyFans account—and doing so without having to access the OnlyFans online interface." (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                           Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

"OnlyFans is either aware of, or intentionally ignorant to, the use of CRM software on its platform—not least because its use violates OnlyFans' Terms of Service—but chooses to do nothing to prevent the use of this software because of the increased revenues that CRM software facilitates." (*Id.* ¶ 291.) "OnlyFans also tracks the volume of messaging traffic between Fans and Creator accounts that would demonstrate the use of Chatters." (*Id.* ¶ 310.) "OnlyFans knew, and should have known, that its Creators were using Chatters to engage with Fans—including based on the revenue being generated by those Creators; the number of direct messages with Fans; the number of different login sessions to a given Creator's account, often from many different locations and IP addresses; and the number of Fan complaints (which OnlyFans ignored)." (*Id.* ¶ 324.)

In sum, Fenix Defendants and Agency Defendants operate a fraudulent scheme whereby Fenix Defendants charge OnlyFans subscribers to communicate directly with Creators, purport to connect subscribers with Creators, and instead connect subscribers with Chatters hired to impersonate Creators and convince users to spend more money on the website. (*See, e.g., id.* ¶¶ 1-19.) "[T]he 'Chatter Scams' involve massive breaches of confidentiality and privacy violations in which intimate communications and private and/or personal information about Fans—including photos and videos—are distributed and/or accessible to numerous unauthorized parties." (*Id.* ¶ 5.)

Plaintiffs plead the following claims:[1]

1.    Violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") Against Defendants
2.    Violation of RICO Against Fenix Defendants and Elite Creators
3.    Violation of RICO Against Fenix Defendants and Moxy
4.    Violation of RICO Against Fenix Defendants and Boss Baddies ("Claim 4")
5.    Violation of RICO Against Fenix Defendants and Unruly

---

[1] Only N.Z. and R.M. plead claims against Fenix Defendants. (SAC ¶ 25.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

6.    Violation of RICO Against Fenix Defendants and Content X ("Claim 6")
7.    Violation of RICO Against Fenix Defendants and A.S.H. Agency
8.    Violation of RICO Against Fenix Defendants and Verge ("Claim 8")
9.    RICO Conspiracy Against Defendants
10.   Violation of the Federal Video Privacy Protection Act against Defendants ("VPPA")
11.   Breach of Contract for Failure to Provide Platform with Reasonable Care and Skill Against Fenix International
12.   Breach of Contract Regarding Direct Messaging Representation Against Fenix International
13.   Breach of Implied-in-Fact Contract Against Fenix International
14.   Breach of Implied Covenant of Good Faith and Fair Dealing Against Fenix International
15.   Promissory Estoppel Against Fenix International in the Alternative
16.   Breach of Contract Regarding Third-Party Beneficiary of Creator Terms of Use Against Fenix International
17.   Fraud Against Fenix Defendants
18.   Deceit Against Fenix Defendants on Behalf of California Subclass, California Code §§ 1709, 1710
19.   Violation of California's False Advertising Law ("FAL") Against Fenix Defendants on Behalf of California Subclass
20.   Violation of California Unfair Competition Law ("UCL") against Defendants on Behalf of California Subclass

(*See generally id.* ¶¶ 570-1328.)

**B.    The OnlyFans Terms of Service**

The Terms of Service govern the relationship between Fenix Defendants and any user of OnlyFans, whether a Creator or Fan or both.  (Dkt. 60-1 (Declaration of Lee Taylor, "Taylor

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                            Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Decl.") ¶ 12, Ex. A ¶¶ 1-2.)[2]  Starting in July 2018, OnlyFans required users to agree to the Terms of Service when creating an account on the website; users create an account by filling out their name, email, and password, and then clicking a "sign up" button.  (Taylor Decl. ¶¶ 22-27, Ex. C.)  The "sign up" button appears above text stating, "[b]y signing up you agree to our Terms of Service and Privacy Policy[] and confirm that you are at least 18 years old." (Taylor Decl. ¶¶ 22-26, Ex. C.)  The phrases "Terms of Service" and "Privacy Policy" appear in blue and contain hyperlinks to the relevant policies.  (Taylor Decl. ¶ 24, Ex. C.)

OnlyFans employs a similar process for amendments to the Terms of Service.  For the December 2021 amendment, OnlyFans sent all users a message through the website before the amendment took effect, which stated the Terms of Service were being updated, listed the effective date of the update, shared a hyperlink to the updated Terms of Service, summarized the relevant changes, and informed users that they agree to comply with the updated terms by continuing to use OnlyFans.  (Taylor Decl. ¶¶ 28-29, Ex. D.)  OnlyFans also sent users an alert on the first day they logged into the website after the amendment went into effect stating: "Our Terms of Service have been updated on December 15, 2021.  To continue using our service, please confirm you have read and agree with our Terms of Service."  (Taylor Decl. ¶¶ 31-33, Ex. E.)  The alert contained a hyperlink to the updated Terms of Service and required users to click "accept" to continue using the website.  (Taylor Decl. ¶ 33.)

The Terms of Service include a forum selection clause and choice-of-law provision applicable to OnlyFans users, which state, in pertinent part:

> <u>Consumers - Law</u>: If you are a consumer, your agreement with us is governed by English law and English law will apply to (i) any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans, and (ii) any claim that we have against you that arises out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or

---

[2] The court takes judicial notice of the Terms of Service under Federal Rule of Evidence 201 and under the doctrine of incorporation by reference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

claims).  You will also be able to rely on mandatory rules of the law of the country where you live.

Consumers - where claims must be brought:
. . .
If you are a consumer resident **outside** of the United Kingdom or the European Union, any claim which you have or which we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) must be brought in the courts of England and Wales.
If you are a Consumer resident in the United States with claims exclusively against Fenix Internet LLC, a wholly-owned subsidiary of Fenix International Limited, located at 1000 N. West Street, Suite 1200, Wilmington, Delaware, 19801, you may pursue your consumer claim in an appropriate case in a court of jurisdiction in Wilmington, Delaware.
. . .

(Taylor Decl. ¶ 14, Ex. A ¶ 16(a).)

### C.    Prior Order

Previously, the court's granted several motions to dismiss and granted in part and denied in part a motion to strike.  The court made the following findings in the Prior Order.[3]

---

[3] The court notes that the prior oppositions to the motions to dismiss had numerous errors caused by the misuse of artificial intelligence ("AI").  (Dkt. 207 (Order Imposing Sanctions for the Misuse of AI).)  The oppositions currently before the court have provided more thorough explanations and accurate citations to the law and record.  To the extent any of the court's findings in this Order conflict with the Prior Order, the court was persuaded by the amended allegations, Plaintiffs' accurate citations to the law, and Plaintiffs' developed arguments.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                              Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court found the First Amended Complaint, (Dkt. 118 ("FAC")), failed to adequately allege that the court could exercise (1) general jurisdiction, (2) specific jurisdiction, (3) jurisdiction under 18 U.S.C. § 1965(b), and (4) jurisdiction under 18 U.S.C. § 1965(d) over Fenix Defendants.  (PO at 32.)[4]  The court was not persuaded that the court should transfer the claims against Fenix Internet to Delaware.  (*Id.*)  The court further found the FAC failed to adequately allege that the Central District of California is a proper venue for R.M.'s claims because the FAC failed to allege events or omissions relevant to R.M.'s claims occurring in this District, R.M. does not reside in this District, and the alleged harm suffered by R.M. occurred outside this District.  (*Id.*)  The court also found that Plaintiffs' claims were not barred to the extent they rely on Fenix Defendants' own representations about promising authentic relationships between Fans and Creators under 47 U.S.C. § 230.  (*Id.*)

Regarding the sufficiency of the alleged claims, the court found the FAC failed to adequately allege a RICO claim, particularly a RICO enterprise, coordination, a common purpose, or wire fraud with particularity.  (*Id.* at 33.)  Separately, the court found the FAC adequately alleged Fenix Defendants and Agency Defendants are video tape service providers and that Plaintiffs are consumers under the VPPA.  (*Id.*)  However, the court found the FAC failed to adequately allege the information disclosed was personally identifiable information ("PII") under the VPPA.  (*Id.*)  The court found the FAC failed to adequately allege a violation of California's Invasion of Privacy Act ("CIPA") and Federal Wiretap Act claims, particularly failing to adequately allege an interception.  (*Id.*)  The court found the FAC failed to plausibly allege unlawful access of Plaintiffs' data by overcoming technical or code-based barriers.  (*Id.*)  The court further found the FAC failed to plausibly allege a breach of contract claim based on the integrated contract with Fenix Defendants.  (*Id.*)  The court also found the FAC failed to plausibly allege the fraud and deceit claims because of Fenix Defendants' disclosures.  (*Id.*)  Additionally, the court found the UCL and FAL claims failed as they are based on the failed fraud, deceit, and CIPA theories.  (*Id.*)

Regarding the motion to strike, the court found that a motion to strike was the improper vehicle for the arguments made, but the court considered the arguments in conjunction with the relevant motions to dismiss.  (*Id.*)  The court was not persuaded that Agency Defendants

_____

[4] All citations in the Order refer to the CM/ECF pagination.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

entered into an agreement under the Terms of Service with Plaintiffs.  (*Id.*)  However, the court found that dismissing the non-California Plaintiffs was warranted because Plaintiffs' claims are closely related to the Terms of Service, as it pertains to Agency Defendants.  (*Id.*)

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  A defendant's challenge under Rule 12(b)(1) may be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "accepts the truth of plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  "When a defendant moves to dismiss for lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.'"  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  Absent an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of jurisdictional facts."  *Id.* (citation and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule 12(b)(6) motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                         Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

_____
**CIVIL MINUTES – GENERAL**                                                          **10**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## III.   Analysis

The court considers the following: (1) whether the court has subject matter jurisdiction over N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8; (2) whether the court has personal jurisdiction over Fenix Defendants; (3) whether venue in this District is proper for R.M.'s claims; (4) whether dismissal of the non-California Plaintiffs' claims is warranted under the forum selection clause; and (5) the sufficiency of Plaintiffs' allegations under Rule 12(b)(6).

### A.    Subject Matter Jurisdiction over N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8

N.Z. and R.M. allege Fenix Defendants entered into separate RICO conspiracies with Boss Baddies (Claim 4), Content X (Claim 6), and Verge (Claim 8).  Fenix Defendants argue the court lacks subject matter jurisdiction over N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8 because N.Z. and R.M. do not allege that they subscribed to Creators whose OnlyFans pages were managed by Boss Baddies, Content X, and Verge.  (Dkt. 225 at 11-12.)  Fenix Defendants further argue that N.Z. and R.M. could not have been injured by the alleged RICO conspiracies because the alleged conspiracies did not involve any Creators N.Z. and R.M. subscribed to. (*Id.*)  Plaintiffs do not respond to Fenix Defendants' argument. (*See generally* Dkt.)

"To have standing to sue a particular defendant, a plaintiff must have experienced an injury in fact that is fairly traceable to the challenged action of that defendant." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "[N]amed plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members." *Martinez*, 46 F.4th at 970.

Here, N.Z. and R.M. do not allege that they subscribed to any Creators managed by Boss Baddies, Content X, or Verge.  (*See generally* SAC; *id.* ¶ 452 (listing Creators that N.Z.

_____

**CIVIL MINUTES – GENERAL**                                                        **11**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                     Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

subscribed to); *id.* ¶ 467 (listing Creators that R.M. subscribed to).)  The court finds that Plaintiffs fail to adequately allege N.Z. and R.M. have standing to bring Claim 4, Claim 6, and Claim 8.  *See Martinez*, 46 F.4th at 970.  Accordingly, N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8 are **DISMISSED** for lack of subject matter jurisdiction.

### B.      Personal Jurisdiction over Fenix Defendants

Fenix Defendants argue that the court lacks (1) general jurisdiction and (2) specific jurisdiction over them.  (Dkt. 225 at 14-17.)  The court addresses each argument in turn.

### 1.      General Jurisdiction

Fenix Defendants argue that the court lacks general jurisdiction over Fenix International because it is incorporated and registered in England and Wales, with its principal place of business in London.  (Dkt. 225 at 14.)  Fenix Defendants further argue that the court lacks general jurisdiction over Fenix Internet because it is organized and headquartered in Delaware.  (*Id.*)  Fenix Defendants also argue that they do not have offices, staff, other physical presence, or a registered agent for service of process in California.  (*Id.*)  Plaintiffs do not respond to Fenix Defendants' argument.  (*See generally* Dkt.)

"A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render them essentially at home in the forum State.'"  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (citation modified).  "[A] plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)).  "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."  *Daimler*, 571 U.S. at 137 (citation modified).  Though, the Supreme Court has not "foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 139 n.19 (citation omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court finds Plaintiffs fail to adequately establish that the court has general jurisdiction over Fenix Defendants. (*See* PO at 9-10.) Plaintiffs do not allege that Fenix Defendants have a place of incorporation or a principal place of business in California. (*See generally* SAC.) Plaintiffs allege that Fenix International is "a private limited company registered in the United Kingdom and Hong Kong, with its principal place of business in London." (*Id.* ¶ 41.) Plaintiffs further allege Fenix International has "over 200 [associated members] in California." (*Id.* ¶ 43.) Plaintiffs also allege that Fenix Internet is "a Delaware limited-liability company headquartered in Florida." (*Id.* ¶ 44.) The court finds such allegations insufficient to allege Fenix Defendants have contacts that are "so continuous and systematic as to render [Fenix Defendants] essentially at home" in California. *LNS Enters.*, 22 F.4th at 859 (citation modified); *see, e.g.*, *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (finding no general jurisdiction over out-of-state corporation in Montana even though corporation had systematic infrastructure and operations and "more than 2,000 employees in Montana").

**2.    Specific Jurisdiction**

Specific jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (internal quotation marks omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). In the Ninth Circuit, courts utilize the following three-prong test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                        Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

*Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).  The court considers the first and second prongs together and then turns to the third prong.

### a.      First and Second Prongs

Fenix Defendants argue that the court lacks specific jurisdiction over them because none of Plaintiffs' claims arise out of or relate to Fenix Defendants' alleged California contacts. (Dkt. 225 at 15-17.)  Plaintiffs respond that Fenix Defendants purposefully availed themselves of the privileges of doing business in California by entering into numerous contractual relationships in California, contracting with California Creators, and running and marketing OnlyFans in California.  (Dkt. 236 at 11-12.)  Plaintiffs further respond that Fenix Defendants committed intentional acts aimed at California by hiring a Californian to market in, and run OnlyFans from, California; engaging California agents to recruit California adult film stars and expand its market; and executing a marketing campaign in California.  (*Id.* at 12-13.)

The first prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  A "'purposeful availment' analysis is used for cases sounding in contract" whereas "purposeful direction" analysis is often applied in tort cases.  *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (citing *Schwarzenegger*, 374 F.3d at 802).  Though "there's no need to adhere to an iron-clad doctrinal dichotomy to analyze specific jurisdiction."  *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).  "Rather, when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction."  *Id.*

The court finds that Fenix Defendants' alleged California contacts satisfy the purposeful availment and purposeful direction tests.  Plaintiffs allege that Fenix Defendants "enlisted California-based adult entertainment leader Bill Fox to spearhead the recruitment of adult entertainment performers," and that he "was instrumental in building OnlyFans' creator base, particularly by targeting California's robust adult entertainment community."  (SAC ¶¶ 69, 76.)

**CIVIL MINUTES – GENERAL**                                                                 **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                      Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Plaintiffs further allege that Fenix International invests in and promotes OnlyFans TV which is filmed and produced in California and promotes California Creators.  (*Id.* ¶ 157.)  Additionally, Plaintiffs allege that Fenix Defendants "targeted at least two other California-based industries as recruiting sources for new OnlyFans Creators: Hollywood celebrities and comedians."  (*Id.* ¶ 87.)  Plaintiffs also allege that there were partnerships with "many famous celebrities that live in the Los Angeles area, including Blac Chyna, Bella Thorne, Iggy Izalea, and Mia Khalifa."  (*Id.* ¶ 90.)  Plaintiffs allege that "OnlyFans has also hosted multiple other live events in California including OnlyFans 'Meet-Up' events and launch parties."  (*Id.* ¶ 92.)  The court finds such allegations sufficient to allege that Fenix Defendants purposefully availed themselves of the privileges of conducting business in California, especially given Fenix Defendants' extensive promotion and business operations in California.  *See Schwarzenegger*, 374 F.3d at 802.  For similar reasons, the court finds that these allegations sufficiently allege Fenix Defendants purposefully directed their contacts to California, especially given Fenix Defendants allegedly target California's entertainment market and seek to build Creator and Fan bases in California.  *See id.*

Turning to the second prong, the Ninth Circuit has "long understood that for an injury to arise out of a defendant's forum contacts required but for causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023) (citation modified).  "The Supreme Court announced in *Ford* that 'arise out of' and 'relate to' are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, 'a company . . . serves a market for a product in the forum State and the product malfunctions there.'"  *Id.* at 504-05 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 363 (2021)).  "The 'relates to' test only requires a 'connection' between a plaintiff's suit and a defendant's activities.'"  *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1112 (9th Cir. 2025) (quoting *Ford*, 592 U.S. at 361).  "[A] stronger showing of purposeful contacts with the forum state will permit a lesser showing of relatedness to the litigation.  That is because a defendant who has more substantially engaged with the forum—such as one who has continuously and deliberately exploited the forum state's market—will more reasonably anticipate being subject to personal jurisdiction for causes of action that do not directly arise from those contacts, but that nonetheless relate to them."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1091 (9th Cir. 2023) (citation modified).

The court finds Plaintiffs sufficiently allege that their claims relate to Fenix Defendants' contacts with California. *See Deutsche Lufthansa*, 157 F.4th at 1112. As discussed above, Plaintiffs allege that Fenix Defendants have extensive contacts with California, promoting OnlyFans in California and conducting many business operations in California. The court finds that these allegations "permit a lesser showing of relatedness to the litigation" because Fenix Defendants have "continuously and deliberately exploited" California's market. *Impossible Foods Inc*, 80 F.4th at 1091 (citation modified). Given that the court permits a lesser showing of relatedness, the court finds that Plaintiffs' claims against Fenix Defendants are sufficiently connected to Fenix Defendants' California contacts, satisfying the "relates to" test. *Deutsche Lufthansa*, 157 F.4th at 1112. Plaintiffs' claims against Fenix Defendants concern Fenix Defendants' alleged promotion of OnlyFans as a platform for Fans to build genuine and direct relationships with Creators. (*See, e.g.*, SAC ¶¶ 1-19.) To grow the OnlyFans platform's presence in California, Fenix Defendants allegedly marketed OnlyFans in California, ran business operations from California, and recruited California Creators. Plaintiffs allege that N.Z., a California resident, subscribed to Creators who were in Los Angeles and had accounts run by agencies in Los Angeles. (*Id.* ¶¶ 30, 453.) Plaintiffs further allege that N.Z. "relied on OnlyFans' successful efforts to market itself as a 'revolutionary' platform that allowed content Creators to have direct interactions with their Fans" and the "representations that subscribing to a Creator's account gave him 'benefits' that specifically included the ability to '[d]irect message with this user.'" (*Id.* ¶ 454.) Based on these allegations, the court finds that Plaintiffs' claims are sufficiently related to Fenix Defendants' alleged California contacts because the claims are connected to OnlyFans' growth, promotion, and marketing in California. *See Deutsche Lufthansa*, 157 F.4th at 1112.

### b.    Third Prong

Plaintiffs have sufficiently alleged facts satisfying the purposeful availment and purposeful direction tests and that Plaintiffs' claims are related to Fenix Defendants' California contacts. *See* Section III.B.2.a, *supra*. "The burden thus shifts to [Fenix Defendants] to

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

‘present a compelling case’ that the exercise of jurisdiction is not reasonable.” *Briskin v. Shopify, Inc.*, 135 F.4th 739, 761 (9th Cir. 2025) (quoting *Schwarzenegger*, 374 F.3d at 802).

"The principles governing the exercise of jurisdiction over an out-of-state party derive from and reflect two sets of values—treating defendants fairly and protecting interstate federalism.  Consistent with these values, [the Ninth Circuit] ha[s] developed a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction.  [The Ninth Circuit] look[s] to[:]

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*Id.* (citation modified).

The court finds Fenix Defendants have not met their burden to "present a compelling case that the exercise of jurisdiction is not reasonable." *Briskin*, 135 F.4th at 761 (citation and internal quotation marks omitted).  Fenix Defendants do not specifically address the third prong, (*see generally* Dkts. 225, 239), arguing primarily that Plaintiffs' claims do not arise out of or relate to Fenix Defendants' alleged California contacts.  But the court has already found that Plaintiffs' claims are sufficiently related to Fenix Defendants' alleged California contacts. *See* Section III.B.2.a, *supra*.  Based on this record, the court finds that the exercise of personal jurisdiction over Fenix Defendants is reasonable.  *See Briskin*, 135 F.4th at 761.

### C.    Venue as to R.M.'s Claims

Fenix Defendants argue that the court should dismiss R.M.'s claims for improper venue because R.M. resides in the Eastern District of California and fails to allege any significant conduct occurring in this District.  (Dkt. 225 at 12-13.)  Plaintiffs respond that venue is proper

_____

**CIVIL MINUTES – GENERAL**                                                    **17**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

in this District as to R.M.'s claims because R.M. subscribed to Moxy and Unruly Creators, Moxy and Unruly are headquartered in this District, and Moxy and Unruly controlled the Creators' accounts and ran the Chatter Scams from this District.  (Dkt. 236 at 25-26.)

A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

Plaintiffs allege that R.M. subscribed to Creators managed by Moxy and Unruly.  (SAC ¶ 467.)  Plaintiffs further allege that Moxy and Unruly are headquartered in Los Angeles, California, provide Chatter services, and employ Chatters to impersonate Creators, that the Chatter services were devised and implemented in Los Angeles, California, and that Chatters access and control the Creators' content from Los Angeles, California.  (*Id.* ¶¶ 362, 371-73, 393, 407-09, 411-12, 467-78.)  The court finds such allegations sufficient to allege that this District is a proper venue for R.M.'s claims because Moxy and Unruly allegedly operated the Chatter Scams in this District, which gave rise to R.M.'s claims.  *See* 28 U.S.C. § 1391(b)(2).

### D.  Forum Selection Clause

Previously, the court granted in part and denied in part the motion to dismiss for forum non conveniens.  (*See generally* Dkt. 117 ("FNC Order").)  In the FNC Order, the court found the forum selection clause was valid and enforceable as to the non-California Plaintiffs' claims, and the court dismissed the non-California Plaintiffs' claims against Fenix Defendants.  (*Id.* at 16.)

Moxy argues that the non-California Plaintiffs' claims against Agency Defendants should be dismissed as the claims are closely related to the Terms of Service.  (Dkt. 228 at 13-14.)  Plaintiffs respond that dismissal is not warranted because Agency Defendants were not a party to the Terms of Service and their claims are not closely related to the Terms of Service.  (Dkt. 233 at 6.)

"Even when a party did not sign a contract, the forum selection clause within that contract can apply to 'non-parties' when 'the alleged conduct of the non-parties is so closely

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

related to the contractual relationship.'" *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)); *see also Products & Ventures International v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (quoting *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)).

At this stage of the proceedings, the court is not persuaded that the non-California Plaintiffs' claims are "so closely related" to the Terms of Service to warrant dismissal. *Manetti-Farrow*, 858 F.2d at 514 n.5; *Holland*, 485 F.3d at 456. First, the Terms of Service explicitly state that third parties shall not have rights under the Terms of Service. (*See* SAC ¶ 235.) Second, the non-California Plaintiffs have no claims against Fenix Defendants, who are contracting parties to the Terms of Service, and the non-California Plaintiffs' claims are only against Agency Defendants. (*See generally id.*) For these reasons, the court permits the non-California Plaintiffs' claims to proceed at this stage. *See Manetti-Farrow*, 858 F.2d at 514 n.5; *Holland*, 485 F.3d at 456.

### E.     Sufficiency of Allegations

The court considers the following: (1) whether Plaintiffs' claims against Fenix Defendants are barred by Section 230 and whether Plaintiffs sufficiently allege their (2) RICO and RICO conspiracy claims, (3) VPPA claim, (4) breach of contract claims, (5) fraud and deceit claims, and (6) UCL and FAL claims.

#### 1.     47 U.S.C. § 230

Under Section 230 of the Communications Decency Act, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "'No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with'" Section 230. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025) (quoting 47 U.S.C. § 230). "As applied to state law claims, it 'only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                              Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

information content provider.'" *Id.* (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)). Here, the parties do not dispute that Fenix Defendants are providers of an interactive computer service, nor does the court find otherwise based on Plaintiffs' allegations. *See id.* Accordingly, the court considers only the second and third prongs under *Barnes*.

"The second and third prongs of *Barnes* require [the Ninth Circuit] to consider each cause of action alleged to determine whether a plaintiff's *theory of liability* would treat a defendant as a publisher or speaker of third-party content." *Id.* (citation modified).

The second prong requires courts to ask "whether plaintiff claims that the defendant breached a *duty* that derives from the defendant's status or conduct as a publisher or speaker." *Id.* (citation modified). "Duty is that which one is bound to do, and for which somebody else has a corresponding right." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Duty*, Black's Law Dictionary (11th ed. 2019)). When examining duty, the Ninth Circuit conducts a two-step analysis. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177 (9th Cir. 2024). "First, [the Ninth Circuit] examine[s] the right from which the duty springs. Does it stem from the platform's status as a publisher (in which case it is barred by [Section] 230)? Or does it spring from some other obligation, such as a promise or contract (which, under *Barnes*, is distinct from publication and not barred by [Section] 230)? Second, [the Ninth Circuit] ask[s] what **'this duty requir[es] the defendant to do.'** If it *requires* that [the defendant] moderate content to fulfill its duty, then [Section] 230 immunity attaches." *Id.* (citation modified). Put simply, "[a] claim that obliges the defendant to monitor third-party content to avoid liability also treats the defendant as a publisher." *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 640 (9th Cir. 2025). The Ninth Circuit "emphasize[s], however, that this does not mean immunity attaches anytime [defendant] *could* respond to a legal duty by removing content." *Yolo Techs.*, 112 F.4th at 1177 n.3. "For immunity to attach at this second step, moderation must be more than one option in [defendant]'s menu of possible responses; it must be the only option." *Id.*

The third prong requires courts to ask "whether the cause of action targets content provided by another." *Grindr*, 128 F.4th at 1151 (citation modified). "A defendant loses its immunity to the extent that the cause of action seeks to treat the defendant 'as the publisher or speaker of its *own* content—or content that it created or developed in whole or in part—rather

**CIVIL MINUTES – GENERAL**                                                    **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

than [as] the publisher or speaker of entirely third-party content.'" *Id.* (quoting *Calise*, 103 F.4th at 744).

In the Prior Order, the court found that, to the extent Plaintiffs seek to hold Fenix Defendants liable for "facilitating communication" between Plaintiffs and Agency Defendants, Plaintiffs' claims were barred under Section 230. (PO at 17.) Here, Fenix Defendants argue Plaintiffs' amended claims still seek to hold Fenix Defendants liable for facilitating communications. (Dkt. 225 at 17-19.) Plaintiffs respond that Section 230 does not immunize Fenix Defendants from their own statements and conduct. (Dkt. 236 at 16-20.) The court evaluates the amended allegations that Fenix Defendants argue are barred by Section 230.

Starting with the VPPA claim, Plaintiffs allege that, "[t]hrough its platform, which facilitates the communication of information between Fan and Creator accounts, OnlyFans disclosed Plaintiffs' and Class Members' PII to unauthorized third parties, including Agencies and Chatters." (SAC ¶ 1213.) The court finds this allegation barred by Section 230 because it seeks to hold Fenix Defendants liable solely for facilitating communications through the OnlyFans platform. (*See* PO at 17.) To the extent the allegation does not seek to hold Fenix Defendants liable for facilitating communications under the VPPA, the allegation is conclusory as to Fenix Defendants violating the VPPA. Turning to Plaintiffs' RICO claim, Plaintiffs allege that Fenix Defendants actively facilitated the use of third parties to communicate with users on the platform and failed to actively police the platform's network activity. (SAC ¶¶ 585, 677-79, 751-53, 825-27, 899-901, 974-76, 1049-51, 1124-26, 1186.) The court finds these allegations similarly barred to the extent the allegations seek to hold Fenix Defendants liable solely for facilitation of communications and monitoring more generally. (*See* PO at 17.) Regarding Plaintiffs' breach of contract for failure to provide platform with reasonable care and skill claim against Fenix International, Plaintiffs allege that Fenix International breached a contractual promise that it "will use reasonable care and skill in providing OnlyFans" by collecting "data sufficient to identify Chatter-operated accounts—including multiple simultaneous logins from disparate geographic locations—and failed to act on this information." (SAC ¶¶ 1222-23.) The court is not persuaded that such allegations seek to hold Fenix Defendants liable solely for facilitating communications but rather require Fenix Defendants to ensure the users are operating OnlyFans properly and that Fenix Defendants are acting on the simultaneous logins. *See Yolo Techs.*, 112 F.4th at 1177.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                           Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Fenix Defendants argue Section 230 bars Plaintiffs' amended RICO, contract, and misrepresentation claims to the extent the claims are based on Fenix Defendants' alleged representations that users can "'direct message' . . ., chat '1 on 1' . . ., and build 'genuine' and 'authentic' connections" with Creators.  (Dkt. 225 at 19 (citing to SAC).)  Fenix Defendants further argue that Section 230 bars these amended claims because the claims require Fenix Defendants to monitor third-party communications or else face liability.  (*Id.*)  The court disagrees.

The court finds that the amended claims premised on Fenix Defendants' alleged representations regarding direct Fan-to-Creator messaging are not barred by Section 230 because the claims do not require Fenix Defendants to monitor third-party communications to avoid liability.  *See Yolo Techs.*, 112 F.4th at 1177.  Plaintiffs allege that Fenix Defendants made representations on various platforms, including its website, that Plaintiffs could "'direct message' . . . , chat '1 on 1' . . . , and build 'genuine' and 'authentic' connections" with Creators.  (*See, e.g.*, SAC ¶¶ 580, 673, 747, 821.)  The amended claims premised on these allegations are ultimately grounded on Fenix Defendants' failure to honor these representations. (*See id.*)  Put another way, Plaintiffs seek to hold Fenix Defendants "accountable for a promise or representation, and not for failure to take certain moderation actions."  *Yolo Techs.*, 112 F.4th at 1178.  Although "content moderation [may be] one possible solution" for Fenix Defendants to fulfill their alleged duties, "the underlying duty being invoked by the Plaintiffs, according to *Calise*, is the promise" or representation itself.  *Id.* at 1179.  For these reasons, the court finds that the amended claims regarding Fenix Defendants' alleged representations are not barred by Section 230.  Accordingly, Plaintiffs' claims are **DISMISSED** only to the extent the claims are barred, as described above.

### 2.      RICO and RICO Conspiracy Claims

The civil RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  "A plaintiff may bring a private civil action for violations of the [RICO] Act."  *See* Ninth Circuit Manual of Model Civil Jury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Instructions § 8 (2021); *see also* 18 U.S.C. § 1964(c); *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019) (stating "[t]he RICO statute provides a cause of action to any person injured in his business or property by reason of a violation of the statute") (citation modified).

"The RICO statute sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Props. E.*, 751 F.3d at 997 (citing 18 U.S.C. § 1962(c)). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Id.* To state a RICO conspiracy claim, a plaintiff must allege "the assent of each defendant who is charged, although it is not necessary that each conspirator knows all of the details of the plan or conspiracy." *United States v. Brooklier*, 685 F.2d 1208, 1222 (9th Cir. 1982).

The court considers whether Plaintiffs adequately allege a (1) RICO enterprise and conduct in furtherance of a RICO enterprise and a (2) RICO conspiracy.

> **a.      RICO Enterprise and Conduct in Furtherance of a RICO Enterprise**

"RICO defines the term 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting 18 U.S.C. § 1961(4)). "An associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007)). "To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E.*, 751 F.3d at 997 (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

"In the Ninth Circuit, to assess whether a defendant had a sufficient role in operation or management to meet the standard of [the RICO statute], courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the chain of command through which the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is vital to the mission's success." *Tatung Co., Ltd. v. Hsu*, 2015 WL 11072178, at \*20 (C.D. Cal. Apr. 23, 2015) (citing *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008)) (citation modified).

Fenix Defendants argue that Plaintiffs fail to allege Fenix Defendants and Agency Defendants worked together to form an unlawful organization because Plaintiffs fail to allege any coordination between Fenix Defendants and Agency Defendants.  (Dkt. 225 at 20-21.) Fenix Defendants also argue that Plaintiffs fail to allege conduct in furtherance of a racketeering enterprise.  (*Id.* at 22-23.)  Similarly, Elite Creators and Moxy argue that Plaintiffs fail to adequately allege coordination.  (Dkt. 227 at 17-19; Dkt. 228 at 16-18.)  Moxy argues that the alleged RICO Enterprise fails as it allegedly existed before the members even existed.  (Dkt. 228 at 15-16.)  Plaintiffs respond that Fenix Defendants provide the technological infrastructure while Agency Defendants operationalize the Chatter Scams.  (Dkt. 236 at 24.)  Plaintiffs further respond that the alleged enterprise is not tethered to the corporate formation of Moxy but to OnlyFans' representations regarding authentic and direct communications between Creators and Fans.  (Dkt. 235 at 15.)  Plaintiffs further respond that Fenix Defendants committed numerous predicate acts by deliberately misrepresenting the relationship between Fans and Creators. (Dkt. 236 at 24-25.)

The court finds that Plaintiffs fail to adequately allege an enterprise and conduct in furtherance of an enterprise for the following reasons.[5]  First, the court finds that Plaintiffs still fail to adequately allege coordination between Fenix Defendants and Agency Defendants.  (*See* PO at 18-19.)  Plaintiffs merely allege that OnlyFans marketed on social media about the genuine and authentic nature of communications between Creators and Fans and that Fenix Defendants knew about Agency Defendants' use of Chatters through its own network monitoring.  (SAC ¶¶ 230, 300-12.)  The court finds such allegations insufficient because Plaintiffs do not allege Fenix Defendants coordinated with Agency Defendants or even knew of the alleged enterprise.  *See Christensen*, 828 F.3d at 780.  Instead of alleging coordination or the

---

[5] The court's finding here is an alternative basis for dismissing N.Z. and R.M.'s Claim 4, Claim 6, and Claim 8, and any RICO allegations that are not barred by Section 230.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

formation of an enterprise, Plaintiffs merely allege that Fenix Defendants are marketing the OnlyFans website and that Fenix Defendants should be aware of the use of Chatters. *See id.* Second, the court finds the alleged enterprise inadequately alleged to the extent it was formed prior to Agency Defendants' formation. *See id.* Plaintiffs allege that Fenix Defendants and Agency Defendants were in a "Content Fraud Enterprise," cooperating for the common purpose of using Chatters to extract Premium Content Fees since 2016. (SAC ¶¶ 576-77, 594.) Plaintiffs allege, however, that Agency Defendants registered as businesses no earlier than 2020. (*Id.* ¶¶ 50-56.) Although Plaintiffs assert that Agency Defendants may join an existing enterprise, an enterprise is a "group of persons associated together for a common purpose." *Christensen*, 828 F.3d at 780 (citation modified). The court is not persuaded that the alleged enterprise existed since OnlyFans' founding in 2016 given that Agency Defendants existed no earlier than 2020, the alleged RICO scheme requires Agency Defendants' participation, and Plaintiffs do not point to Agency Defendants' association with Fenix Defendants prior to the alleged formation. *See id.* Accordingly, the court **DISMISSES** the RICO claim.[6] *See id.*

      **b.**    **RICO Conspiracy**

The court finds that Plaintiffs fail to adequately plead a RICO conspiracy. First, "[b]ecause [Plaintiffs] failed to state a RICO claim under § 1962(c), [Plaintiffs] also failed to state a RICO conspiracy claim under § 1962(d)." *Khalid v. Microsoft Corp.*, 2023 WL 2493730, at *1 (9th Cir. Mar. 14, 2023). Second, Plaintiffs fail to allege "the assent of each

---

[6] Even if the court found that Plaintiffs adequately alleged an enterprise, the court would find that Plaintiffs fail to adequately allege their wire fraud theory under Rule 9(b) for reasons discussed in the Prior Order, (*see* PO at 20-21), and below in Sections III.E.5-6. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) ("Rule 9(b)'s requirement that [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims," and "[t]o avoid dismissal for inadequacy under Rule 9(b), [plaintiff]'s complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.") (citations and internal quotation marks omitted); *Fong v. Specialized Loan Servicing, LLC*, 2023 WL 12162170, at *3 (C.D. Cal. Apr. 28, 2023) ("Civil RICO claims relying upon fraud must comply with Rule 9(b)'s demands.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

defendant who is charged" to the alleged RICO conspiracy.  *Brooklier*, 685 F.2d at 1222.
Accordingly, the court **DISMISSES** the RICO conspiracy claim.

>       3.      **VPPA Claim**

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person."  18 U.S.C. § 2710(b)(1).  "[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  The Ninth Circuit has adopted the ordinary person standard to determine what constitutes PII, holding that "personally identifiable information means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation modified).

The court considers (1) whether Plaintiffs adequately allege Defendants knowingly disclosed PII and (2) whether the ordinary business exception applies.

>       a.      **Knowing Disclosure of Personally Identifiable Information**

Fenix Defendants argue Plaintiffs' VPPA claim fails because Plaintiffs expressly acknowledged and agreed that their content may be viewed by individuals who recognize their identity and that Fenix Defendants are not responsible if Plaintiffs are identified.  (Dkt. 225 at 23.)  Fenix Defendants further argue that Plaintiffs never allege Fenix Defendants took affirmative acts of disclosing Plaintiffs' PII, or knowingly disclosed Plaintiffs' PII.  (*Id.* at 24.)  Plaintiffs respond that the VPPA claim is sufficiently alleged.  (Dkt. 236 at 30-31.)

The court finds that Plaintiffs fail to adequately plead the VPPA claim against Fenix Defendants for the following reasons.  First, under the Terms of Use ("TOU"), Plaintiffs agreed and acknowledged that their "[c]ontent may be viewed by individuals that recognise [their] identity" and that Fenix Defendants are "not in any way . . . responsible" if Plaintiffs "are identified from [their] Content."  (Dkt. 60-1 at 15.)  Content is defined as "any material uploaded to OnlyFans by any [u]ser (whether a Creator or a Fan), including any photos, videos,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

audio (for example music and other sounds), livestream material, data, text (such as comments and hashtags), metadata, images, interactive features, emojis, GIFs, memes, and any other material whatsoever." (*Id.* at 10.)  Second, the court finds that Plaintiffs fail to sufficiently allege Fenix Defendants knowingly disclosed Plaintiffs' PII under the VPPA.  Plaintiffs allege that Fenix Defendants disclosed "Plaintiffs' and Class Members' PII to unauthorized third parties" "knowing that Plaintiffs and Class Members had not consented to the disclosure of their PII to anyone other than their selected Creators." (SAC ¶ 1213.)  The court finds such allegations conclusory, and Plaintiffs fail to direct the court to other allegations that Fenix Defendants unlawfully disclosed PII in violation of the VPPA.  Rather, Plaintiffs merely assert that Fenix Defendants should have known about the Chatters and alleged disclosures.  (Dkt. 236 at 31-32.)  The court finds such assertions unpersuasive because Plaintiffs do not adequately allege Fenix Defendants *knowingly* transmitted PII in violation of the VPPA.  *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("[K]nowingly connotes actual knowledge" and "means consciousness of transmitting the private information.").  Furthermore, "[t]he lawfulness of th[e] [alleged] disclosure[s] cannot depend on circumstances outside of [Fenix Defendants'] control" under the VPPA.  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).  Here, as described in more detail below, it was Agency Defendants who allegedly disclosed the PII, and Plaintiffs' allegations do not sufficiently reflect that Fenix Defendants had control over that disclosure.  (*See generally* SAC.)  The court is not persuaded that Fenix Defendants can be held liable for Agency Defendants' alleged conduct that was outside of Fenix Defendants' control.  *See Netflix*, 795 F.3d at 1066.  And again, Plaintiffs' VPPA claim against Fenix Defendants is barred by Section 230 to the extent Plaintiffs seek to hold Fenix Defendants liable solely for facilitating communications.  *See* Section III.E.1, *supra*.  Accordingly, the court **DISMISSES** the VPPA claim against Fenix Defendants.

Moxy argues that Plaintiffs do not allege they obtained or requested video content from Moxy or a Moxy-affiliated Creator.  (Dkt. 228 at 24-25.)  Moxy further argues that Plaintiffs fail to allege knowing disclosure of PII because Plaintiffs do not allege Moxy disclosed Plaintiffs' PII, but rather Plaintiffs disclosed their own PII after Moxy allegedly facilitated Chatters' access to Creators' accounts.  (*Id.* at 25-26.)  Plaintiffs respond that they adequately allege Moxy disclosed PII to Chatters.  (Dkt. 235 at 27-30.)

**CIVIL MINUTES – GENERAL**                                              27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                     Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court finds that Plaintiffs sufficiently allege Moxy, and other Agency Defendants, knowingly disclosed PII. *See* 18 U.S.C. § 2710(b)(1). Plaintiffs allege that Plaintiffs shared personal information in chats with Creators, including their full legal name and photos of their face. (SAC ¶¶ 1198-1202.) Plaintiffs further allege that the Chatter Scams function by "creating a communication history viewable by Chatters" which consists of "intimate knowledge of the Fan's personal information, conversation history, and preferences," and most importantly, "the specific content that they requested and/or viewed." (*Id.* ¶¶ 1202-03.) Plaintiffs also allege that "Agencies allowed Chatters to have access to Creator Accounts on the OnlyFans platform—whether directly (by providing Chatters with login information) or indirectly" via third-party CRM software. (*Id.* ¶ 1214.) And finally, Plaintiffs allege that each Agency Defendant disclosed PII to other people, including Chatters. (*Id.*; *see, e.g.*, ¶ 371 (alleging Moxy employed Chatters to impersonate the Creators using the viewable history).) The court finds such allegations sufficient at this stage of the proceedings because Moxy, and other Agency Defendants, allegedly disclosed PII from Fans to Chatters by sharing login information or via CRM software. *See* 18 U.S.C. § 2710(b)(1).

### b.      Ordinary Business Exception

"A video tape service provider may disclose personally identifiable information concerning any consumer . . . to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, "the term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

Moxy argues that any knowing disclosure of PII occurred during Moxy's ordinary course of business. (Dkt. 228 at 26-27.) Plaintiffs respond that the ordinary course of business exception does not apply because the Chatter Scams are not related to Moxy's ordinary course of business. (Dkt. 235 at 30-31.) The court agrees with Plaintiffs at this stage of the proceedings. The court is not persuaded that the alleged disclosure of PII to Chatters falls within Moxy's, or other Agency Defendants', ordinary course of business because the disclosure is part of the allegedly unlawful operation of the Chatter Scams, not Agency Defendants' ordinary business practice of managing Creators. *See* 18 U.S.C. § 2710.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

### 4.      Breach of Contract Claims

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Plaintiffs allege claims against Fenix International for (1) breach of contract regarding direct messaging representation and of implied-in-fact contract, (2) breach of contract for failure to provide platform with reasonable care and skill, (3) breach of implied covenant of good faith and fair dealing, and (4) breach of contract regarding third-party beneficiary of Terms of Use for Creators.  (SAC ¶¶ 1218-1271.)  The court considers each claim in turn.

### a.      Direct Messaging Claims

In the Prior Order, the court found Plaintiffs failed to plausibly allege a breach of contract claim based on the alleged representation that a Fan will be able to direct message with the Creator.  (PO at 27-28.)

Fenix Defendants argue that Plaintiffs' claim for breach of contract regarding direct messaging representation and, in the alternative promissory estoppel, fail for the same reasons discussed in the Prior Order.  (Dkt. 225 at 25-26.)  Plaintiffs respond that the integration clause does not bar Plaintiffs' claim for breach of contract regarding direct messaging because the claims are based on subsequent promises by Fenix Defendants.  (Dkt. 236 at 27-28.)

The court finds that Plaintiffs still fail to adequately allege claims for breach of contract regarding direct messaging representation.[7]  (*See* PO at 27-28.)  Plaintiffs allege that Fenix International subscription interface displays the following message, "'Direct message with this user [Creator].'"  (SAC ¶ 1231.)  Plaintiffs further allege that this representation "is chosen and

---

[7] The court finds that Plaintiffs' alternative promissory estoppel claim fails for the reasons discussed here and because Plaintiffs fail to address Fenix Defendants' arguments regarding the alternative promissory estoppel claim, (*see generally* Dkt. 236).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                              Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

imposed by FIL as part of its website and describes what every subscription on OnlyFans includes." (*Id.* ¶ 1232.)  Plaintiffs also allege that "[t]his representation is an agreement between FIL and Fans about what the OnlyFans platform provides." (*Id.* ¶ 1233.)  However, as stated in the Prior Order, (*see* PO at 27-28), the Terms of Service contain an integration clause that states Plaintiffs have "[n]o implied licenses or other rights are granted to [them] in relation to any part of OnlyFans, *save as expressly set out in the Terms of Service*." (Dkt. 60-1 at 21 (emphasis added).)  The Terms of Service expressly state that they "form the entire agreement between [Fenix International] and [the user] regarding [the user's] access to and use of OnlyFans," and "govern [Plaintiffs'] use of OnlyFans." (*Id.* at 10, 21.)  Based on this record, the court remains persuaded that the parties agreed to an integrated contract and therefore Plaintiffs cannot bring the claims for breach of contract regarding direct messaging representations.  (*See* PO at 28.)  Accordingly, the court **DISMISSES** the claims for breach of contract regarding direct messaging representation.

> **b.    Failure to Provide Platform with Reasonable Care and Skill Claim**

Fenix Defendants argue that Plaintiffs' claim for breach of contract for failure to provide platform with reasonable care and skill fails because the Terms of Service expressly disclaim responsibility for reviewing or moderating content.  (Dkt. 225 at 26.)  Plaintiffs respond that the failure to use reasonable care and skill claim is not based on content moderation but other conduct such as Fenix Defendants actively marketing to Agency Defendants and designing tools for Chatters.  (Dkt. 236 at 26-27.)

In this case, Plaintiffs allege the TOU provides that OnlyFans use reasonable care and skill providing OnlyFans to the user.  (SAC ¶ 1222.)  Plaintiffs allege that Fenix International "permitted and actively marketed to management agencies that use Chatters to impersonate Creators." (*Id.* ¶ 1223(a).)  Plaintiffs allege that Fenix International "collected data sufficient to identify Chatter-operated accounts" "and failed to act on this information." (*Id.* ¶ 1223(b).)  Plaintiffs also allege that Fenix International "designed and provided tools specifically intended to facilitate Chatter deception, including mass-message cloaking that disguises messages to thousands of Fans as personal communications, Fan spending analytics, and inter-shift notes features enabling Chatters to maintain the illusion of a continuous personal relationship." (*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

¶ 1223(c).)  The court is not persuaded that Plaintiffs sufficiently alleged their claim based on Fenix Defendants permitting management agencies to use Chatters to impersonate Creators because this theory of liability imposes a monitoring obligation on Fenix Defendants.  *See* Section III.E.1, *supra*.  In addition, the court is not persuaded that Fenix Defendants merely designing and providing tools for OnlyFans users is sufficient to allege a breach.  *See also Goldman*, 51 Cal. 4th at 821 (requiring a plaintiff to allege defendant's breach).  Plaintiffs do not allege how tools such as Fan spending analytics and inter-shift notes features enable, or were specifically designed for, the Chatter Scam.  (*See generally* SAC.)  Accordingly, the court **DISMISSES** the breach of contract for failure to provide platform with reasonable care and skill claim.

### c.      Implied Covenant of Good Faith and Fair Dealing Claim

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citing *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)).  "The elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1145 (E.D. Cal. 2012) (citations omitted).  The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).  "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349-50.

Fenix Defendants argue that Plaintiffs' claim for breach of implied covenant of good faith and fair dealing fails because Plaintiffs impermissibly seek to impose duties on Fenix Defendants beyond those incorporated in the specific terms of the alleged contract.  (Dkt. 225 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

26-27.)  Plaintiffs respond that the implied covenant of good faith and fair dealing claim is based on the alleged contracts.  (Dkt. 236 at 28-29.)  The court agrees with Fenix Defendants.

For the reasons the court finds Plaintiffs' breach of contract claims inadequately alleged, and because Plaintiffs are imposing substantive duties beyond those incorporated in the alleged contracts, the court finds that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails.  *See Guz*, 24 Cal. 4th at 349-50 ("[The covenant] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."); *Wasjutin v. Countrywide Bank N.A.*, 2016 WL 7443219, at *3 (C.D. Cal. June 8, 2016) ("The covenant is 'limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" (quoting *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004)).  Accordingly, the court **DISMISSES** the claim for breach of implied covenant of good faith and fair dealing.

### d.    Third-Party Beneficiary of Creator Terms of Use Claim

Fenix Defendants argue that Plaintiffs' claim for breach of contract regarding third-party beneficiary of Terms of Use for Creators, (SAC ¶ 232 ("Creator TOU")), is foreclosed under the TOU and Creator TOU.  (Dkt. 225 at 27.)  Plaintiffs respond that the Creator TOU was intended to benefit Fans because it requires Creators to be individuals and safeguard their accounts.  (Dkt. 236 at 29-30.)

"The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012).  "To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Id.* (citation modified).  The Ninth Circuit has held that explicit and unambiguous relinquishing of all third-party rights "unambiguously manifests an intent *not* to create any obligations to third parties." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161, 1163 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Here, the Terms of Services provides that it "does not give rights to any third parties" and the Creator TOU provides that OnlyFans' "relationship [is] with [Creators], and not with any third party." (Dkt. 60-1 at 21, 30.)  Given the express language manifesting an intent not to create third-party rights, the court finds that Plaintiffs fail to adequately allege their claim for breach of contract regarding third-party beneficiary of TOU.  *See Balsam*, 627 F.3d at 1161, 1163.  Accordingly, the court **DISMISSES** the claim for breach of contract regarding third-party beneficiary of TOU.

### 5.      Fraud and Deceit Claims

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) (citation modified); *see also Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("The elements of fraud and deceit are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.").  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Accordingly, fraud must be alleged with particularity, meaning Plaintiffs must "articulate the who, what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (citation and quotation marks omitted).

In the Prior Order, the court found that Plaintiffs failed to plausibly allege their fraud and deceit claims based on Fenix Defendants' disclosures.  (*See* PO at 29.)  Here, Fenix Defendants argue that Plaintiffs' fraud and deceit claims fail for the same reasons, and because Plaintiffs failed to correct the deficiencies in their pleadings.  (Dkt. 225 at 28.)  Fenix Defendants further argue that Plaintiffs fail to adequately allege the misrepresentations and scienter.  (*Id.* at 28-29.)  Plaintiffs respond that Fenix Defendants never disclosed to Plaintiffs that Creators could use an agent, that nothing in the TOU states that Creators can use third parties, or supersede OnlyFans' promise of direct communication with Creators, and that the allegations are adequate.  (Dkt. 236 at 32-34.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court finds that Plaintiffs still fail to adequately allege their fraud and deceit claims. (*See* PO at 29.)  First, as discussed in the Prior Order, Fenix Defendants made explicit disclosures regarding the use of third parties, its inability to control how Fan content is used, and the materials provided to Fans.  (*See id.*)  Second, the court finds Plaintiffs' allegations regarding N.Z. insufficient under Rule 9(b).  Plaintiffs allege that, every time N.Z. or R.M. subscribed to a Creator, OnlyFans falsely represented that they would have "direct," "1 on 1," and "authentic" communications with the Creator.  (SAC ¶ 1272.)  Plaintiffs allege that they relied on each communication and representation when they subscribed to a Creator on the OnlyFans platform.  (*Id.* ¶ 1274.)  For example, Plaintiffs allege that "OnlyFans falsely represented to Plaintiff N.Z. that he would be direct messaging with" several Creators when he subscribed to those accounts from between 2020 and 2022.  (*Id.* ¶ 1282.)  The court finds such allegations insufficient because Plaintiffs do not "specify when [N.Z.] was exposed to [the representations] or which ones he found material." *Kearns*, 567 F.3d at 1126; *see also Moody v. Hot Topic, Inc.*, 2023 WL 9511159, at *7 (C.D. Cal. Nov. 15, 2023) (dismissing misrepresentation claims where plaintiffs failed to "provide the particulars of [their] own experience reviewing or relying upon any representations").  Accordingly, the court **DISMISSES** the fraud and deceit claims.

### 6.     UCL and FAL Claims

Plaintiffs allege, on behalf of the N.Z. and R.M., that Agency Defendants' conduct constitutes unfair business practices because they used "Chatters to impersonate the Represented Creators" and "Chatters to facilitate the relationship to further the opportunity to collect (and solicit the purchase of) Premium Content Fees."  (SAC ¶ 1321.)  Plaintiffs further allege that "Agency Defendants acted unfairly by using Chatters to solicit payments from Plaintiffs N.Z. and R.M."  (*Id.* ¶ 1322.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "California's False Advertising Law makes it unlawful for any person to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                           Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

2012) (quoting Cal. Bus. & Prof. Code § 17500).  The Ninth Circuit has held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the UCL.  *Kearns*, 567 F.3d at 1125 ("In fact, we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."); *see also Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2020 WL 3893395, at *3 (E.D. Cal. July 10, 2020) ("The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims of fraud under the UCL.").

Elite Creators argue that Plaintiffs fail to allege the UCL claim with particularity as required under Rule 9(b) because Plaintiffs do not allege that Elite Creators managed Ms. Richardson in August 2023, the specific content of any statement Elite Creators made on Ms. Richardson's behalf that N.Z. relied on, or who made the communication on Ms. Richardson's behalf.  (Dkt. 227 at 21-24.)  Plaintiffs respond that the UCL claim against Elite Creators was sufficiently alleged, and that Plaintiffs are not required to provide the exact statements the Chatters made to meet Rule 9(b).  (Dkt. 234 at 21-23.)

The court finds that Plaintiffs fail to sufficiently allege their UCL claim against Agency Defendants.  *See Kearns*, 567 F.3d at 1125.  Plaintiffs allege that "Agency Defendants' conduct constitutes an unfair business practice" given that Agency Defendants use Chatters to impersonate Creators and to facilitate the relationship with Fans to collect and solicit the purchase of Premium Content Fees.  (SAC ¶ 1321.)  Plaintiffs allege that, "[a]fter being solicited by the 'Creators' (who on information and belief were Chatters)," N.Z. made several purchases from or gave tips to several Creators.  (*Id.* ¶ 458 (alleging dated payments to specific Creators).)  Plaintiffs also allege that R.M. purchased premium content after being solicited by Creators (who on information and belief were Chatters).  (*Id.* ¶ 481.)  The court finds such allegations insufficient because Plaintiffs do not allege the specific representations, or which representations were found material, to N.Z. and R.M.  *See Kearns*, 567 F.3d at 1125.  Rather, Plaintiffs assert that they are not required to provide the exact statements the Chatters made to satisfy Rule 9(b).  (Dkt. 234 at 22.)  The court is not persuaded that Plaintiffs can assert UCL claims against Agency Defendants under Rule 9(b) where Plaintiffs do not specify which representations were made and relied on, or "the particular circumstances surrounding such representations."  *Kearns*, 567 F.3d at 1126.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

_____

Fenix Defendants argue that the UCL and FAL claims fail, noting that the court previously dismissed the UCL and FAL claims because it was based on failed fraud, deceit, and CIPA theories.  (Dkt. 225 at 29.)  Because the court finds that Plaintiffs fail to sufficiently allege the fraud and deceit claims against Fenix Defendants, *see* Section III.E.5, *supra*, and for the same reasons the court finds such claims fail, the court finds that Plaintiffs fail to sufficiently allege their UCL and FAL claims against Fenix Defendants.

Accordingly, the court **DISMISSES** the UCL and FAL claims.

**F.      Summary of Findings and Leave to Amend**

The court provides a summary of the court's findings and determinations of whether leave to amend is appropriate.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'") (quoting *Balistreri*, 901 F.2d at 701); *Ctr. for Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear . . . that the complaint could not be saved by any amendment.'") (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022)).

Jurisdiction.  The court finds Plaintiffs fail to establish that the court has subject matter jurisdiction over N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8.  The court finds Plaintiffs fail to adequately establish that the court has general jurisdiction over Fenix Defendants.  However, the court finds that the court has specific jurisdiction over Fenix Defendants.

The court finds granting leave to amend N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8 would be futile because Plaintiffs have consistently not alleged N.Z. and R.M. subscribing to Creators managed by Boss Baddies, Content X, or Verge.  (*Compare* SAC *with* FAC.)  Furthermore, Plaintiffs fail to respond to this deficiency at all in their oppositions.  Accordingly, the court **DENIES LEAVES TO AMEND** N.Z.'s and R.M.'s Claim 4, Claim 6, and Claim 8.  *See Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.").

_____

**CIVIL MINUTES – GENERAL**                                                              **36**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

<u>Venue</u>.  The court finds that this District is a proper venue for R.M.'s claims.

<u>Forum Selection Clause</u>.  The court is not persuaded that dismissal of the non-California Plaintiffs' claims against Agency Defendants is warranted under the forum selection clause.

<u>Section 230</u>.  The court finds several allegations barred by Section 230 because the allegations seek to hold Fenix Defendants liable solely for facilitating communications. However, the court finds that Section 230 does not bar Plaintiffs' amended claims based on Fenix Defendants' own representations.

<u>RICO and RICO conspiracy</u>.  The court finds that Plaintiffs fail to adequately allege their RICO and RICO conspiracy claims.

The court finds granting leave to amend would be futile because Plaintiffs have failed to adequately allege the RICO and RICO conspiracy claims twice and did not adequately address the deficiencies in the Prior Order.  (*See* PO at 17-22); *see also Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  Accordingly, the court **DENIES LEAVES TO AMEND** the RICO and RICO conspiracy claims.

<u>VPPA Claim</u>.  The court finds that Plaintiffs fail to adequately allege the VPPA claim against Fenix Defendants.  The court finds that Plaintiffs sufficiently allege their VPPA claim against Agency Defendants.

The court finds granting leave to amend the VPPA claim against Fenix Defendants would be futile because of the TOU and Plaintiffs have repeatedly not alleged Fenix Defendants disclosing PII, but rather focused on Fenix Defendants' alleged facilitation and monitoring duties which failed in the Prior Order.  (*See* PO at 16-17.)  Accordingly, the court **DENIES LEAVES TO AMEND** the VPPA claim against Fenix Defendants.

<u>Breach of Contract Claims</u>.  The court finds that Plaintiffs fail to adequately allege all of the breach of contract claims.  The court finds granting leave to amend the claims for breach of contract regarding direct messaging representation would be futile because Plaintiffs have failed to adequately allege this claim twice and did not adequately address the deficiencies identified

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                          Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

in the Prior Order.  (*See* PO at 27-28); *see also Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  The court finds granting leave to amend the breach of contract claim regarding third-party beneficiary of Creator TOU would be futile given the express language of the TOU and Creator TOU manifesting an intent not to create third-party rights.  Accordingly, the court **DENIES LEAVES TO AMEND** the claims for breach of contract regarding direct messaging representation and breach of contract regarding third-party beneficiary of Creator TOU. However, because this is Plaintiffs' first attempt in alleging the claims (1) for failure to provide platform with reasonable care and skill and (2) for implied covenant of good faith and fair dealing, the court **GRANTS** leaves to amend these two claims.

Fraud and Deceit Claims.  The court finds that Plaintiffs' fraud and deceit claims are insufficiently alleged.

The court finds granting leave to amend the fraud and deceit claims would be futile because Plaintiffs have failed to allege these claims twice and did not adequately address the deficiencies identified in the Prior Order.  (*See* PO at 28-29); *see also Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  Accordingly, the court **DENIES LEAVES TO AMEND** the fraud and deceit claims.

UCL Claim.  The court finds that Plaintiffs' UCL claim is insufficiently alleged.

The court finds granting leave to amend the UCL claim against Fenix Defendants would be futile because Plaintiffs have failed to allege this claim twice and did not adequately address the deficiencies identified in the Prior Order.  (*See* PO at 29-30); *see also Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  Accordingly, the court **DENIES LEAVES TO AMEND** the UCL claim against Fenix Defendants.  *See Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  However, the court will grant leave to amend the UCL claim against Agency Defendants.

FAL Claim.  The court finds that Plaintiffs' FAL claim is insufficiently alleged.

The court finds granting leave to amend the FAL claim would be futile because Plaintiffs have failed to allege this claim twice and did not adequately address the deficiencies identified

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC                    Date: May 19, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

in the Prior Order.  (*See* PO at 29-30); *see also Fed. Home Loan Bank of San Francisco*, 792 F.2d at 1438.  Accordingly, the court **DENIES LEAVES TO AMEND** the FAL claim.

## IV.    Disposition

For the reasons stated above, the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**.  The court **DISMISSES WITHOUT LEAVE TO AMEND** the RICO and RICO conspiracy claims; VPPA claim against Fenix Defendants; the breach of contract regarding direct messaging representation claims; the breach of contract claim regarding third-party beneficiary of Creator TOU; the fraud and deceit claims; UCL claim against Fenix Defendants; and the FAL claim against Fenix Defendants.  The court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' UCL claim against Agency Defendants; and Plaintiffs' claims for failure to provide platform with reasonable care and skill and for implied covenant of good faith and fair dealing.  If Plaintiffs believe they can cure the deficiencies described in this Order, Plaintiffs shall file any amended complaint on or before **June 9, 2026**.  If Plaintiffs do not file an amended complaint, Agency Defendants shall file an answer to the claims and allegations remaining in the SAC on or before **June 23, 2026**, and the court will dismiss Fenix Defendants from this case.