JASON D. RUSSELL (SBN 169219)
jason.russell@davispolk.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@davispolk.com
DAVIS POLK & WARDWELL LLP
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and Fenix Internet LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiff,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a SIREN AGENCY), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),

Defendants.

CASE NO.: 8:24-cv-01655-FWS-SSC

**1) DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS II AND III OF THE FOURTH AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM;**

**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT;**

**FILED UNDER SEPARATE COVER**

**(3) DECLARATION OF JASON D. RUSSELL; and**

**(4) [PROPOSED] ORDER.**

Hearing: October 22, 2026
Time: 10:00 a.m.
Courtroom: 10D
Judge: Hon. Fred W. Slaughter

**NOTICE OF MOTION TO DISMISS COMPLAINT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2026, at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Defendants Fenix International Limited ("FIL") and Fenix Internet LLC ("Fenix Internet") (collectively, "Fenix") will, and hereby do, present for hearing by the Court, the Honorable Fred W. Slaughter presiding, this motion to dismiss Counts II and III of the Fourth Amended Class Action Complaint ("4AC") filed by Plaintiffs N.Z. and R.M. ("Motion").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6), and is based on this Notice, the Memorandum of Points and Authorities that follows, the files and records in this action, the arguments of counsel, and any other matters the Court may properly consider. The 4AC pleads two counts against FIL, Counts II and III, and none against Fenix Internet. The grounds for this motion are as follows:

- 47 U.S.C. §230 bars Counts II and III because they are based on allegations regarding FIL's role as the publisher of the OnlyFans website and FIL's provision of content-neutral tools to Creators on the platform;
- Counts II and III are each barred by OnlyFans' Terms of Service, which fatally contradict Plaintiffs' theory that FIL had a contractual duty to monitor chat services and content offered by OnlyFans Creators or, allegedly, their agents, and to detect breaches of and/or enforce the Terms of Service against the Creators for alleged breaches.
- The 4AC alleges no claims against Fenix Internet and so it should be dismissed from this action. Counts II and III are expressly limited to FIL and the 4AC explicitly notes that references to FIL are *not* references to Fenix Internet. (4AC¶46, 48-49 (noting FIL and Fenix Internet are defined collectively as "Fenix Defendants").) In any case, Fenix Internet

does not operate the OnlyFans platform; it merely provides payment processing assistance to its parent company, FIL, and thus Plaintiffs cannot bring their remaining breach claims against it.

As reflected in the concurrently-filed Declaration of Jason D. Russell, this Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 23, 2026.

Dated: July 21, 2026

DAVIS POLK & WARDWELL LLP

By: *s/ Jason D. Russell*

Jason D. Russell (SBN 169219)
jason.russell@davispolk.com
Hillary A. Hamilton (SBN 218233)
hillary.hamilton@davispolk.com
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and*
*Fenix Internet LLC*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..... 1

LEGAL STANDARD ..... 2

BACKGROUND ..... 3

I. Plaintiffs Omit Key Provisions Of The Terms In The 4AC ..... 3

II. The Court's Prior Two Orders Dismissed Plaintiffs' Contractual Claims ..... 6

ARGUMENT ..... 7

I. Section 230 Bars Plaintiffs' Claims ..... 7

A. Plaintiffs' Claims Target Publishing Activity ..... 8

B. Plaintiffs Have Not Plausibly Alleged FIL Materially Contributed To Platform Content ..... 10

C. Plaintiffs Do Not Allege A Specific "Enforceable Promise" Separate From FIL's Publisher Status ..... 12

II. Plaintiffs' Claims Are Barred By Express Provisions In The Terms ..... 16

A. The Terms Preclude Plaintiffs' "Reasonable Care and Skill" Claim ..... 16

B. Plaintiff Cannot Establish A Breach Of Any Implied Covenant ..... 18

III. Plaintiffs Fail To Allege A Single Claim Against Fenix Internet ..... 21

CONCLUSION ..... 22

CERTIFICATE OF COMPLIANCE ..... 23

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......... 13

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .......... 11, 13, 14

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*,
497 F.3d 972 (9th Cir. 2007) .......... 2

*Damner v. Facebook Inc.*,
2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) .......... 19

*Doe 1 v. Meta Platforms, Inc.*,
174 F.4th 1159 (9th Cir. 2026) .......... 8, 10

*Doe 1 v. Twitter, Inc.*,
148 F.4th 635 (9th Cir. 2025) .......... 8, 10

*Doe v. Fenix Internet, LLC*,
2024 WL 2845961 (N.D. Ill. June 5, 2024) .......... 22

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) .......... 10

*Doe v. Reddit, Inc.*,
2021 WL 5860904 (C.D. Cal. Oct. 7, 2021),
*aff'd*, 51 F.4th 1137 (9th Cir. Oct. 24, 2022) .......... 12

*Dyroff v. Ultimate Software Group, Inc.*,
934 F.3d 1093 (9th Cir. 2019) .......... 10

*Ebeid v. Facebook, Inc.*,
2019 WL 2059662 (N.D. Cal. May 9, 2019) .......... 20

*Glasscell PC v. Aetna Life Ins. Co.*,
2025 WL 740181 (C.D. Cal. Feb. 7, 2025) .......... 2

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) .......... 11, 12, 14

*Hall v. YouTube, LLC*,
2025 WL 1482007 (N.D. Cal. May 5, 2025) .......... 17

*Jackson v. Airbnb, Inc.*,
2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) .......... 10

*Karam v. Meta Platforms, Inc.*, 2025 WL 3079048 (N.D. Cal. Nov. 4, 2025) ........ 8, 16

*Kennedy v. Meta Platforms Inc.*, 2025 WL 1935433 (N.D. Cal. June 5, 2025) ........ 16

*Khan v. Twitter, Inc.*, 2023 WL 6466201 (N.D. Cal. Oct. 3, 2023) ........ 18

*King v. Facebook, Inc.*, 2023 WL 5318464 (9th Cir. Aug. 18, 2023) ........ 13

*LevelFields, Inc. v. Reddit, Inc.*, 2024 WL 5161951 (N.D. Cal. Dec. 17, 2024) *aff'd,* 2026 WL 1230551 (9th Cir. May 05, 2026) ........ 17

*Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020) *aff'd,* 851 Fed.Appx. 723 (9th Cir. Apr. 15, 2021) ........ 20, 21

*Ligon v. Meta Platforms Inc.*, 2026 WL 1146091 (N.D. Cal. Apr. 28, 2026) ........ 13, 14, 18

*Lloyd v. Facebook, Inc.*, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022), *aff'd in relevant part,* 2024 WL 3325389 (9th Cir. July 08, 2024) ........ 13

*Murphy v. Linkedin Corp.*, 2026 WL 881710 (N.D. Cal. Mar. 30, 2026) ........ 11, 14, 15

*Nguyen v. Endologix, Inc.*, 962 F.3d 405 (9th Cir. 2020) ........ 2

*Rangel v. Dorsey*, 2022 WL 2820107 (N.D. Cal. July 19, 2022) ........ 14

*Rogozinski v. Reddit, Inc.*, 2025 WL 1650019 (9th Cir. June 11, 2025) ........ 19

*Sifuentes v. Meta Platforms, Inc.*, 2026 WL 1143542 (N.D. Cal. Apr. 28, 2026) ........ 16, 18

*Suddeth v. Meta Platforms, Inc.*, 2026 WL 810252 (N.D. Cal. Mar. 24, 2026) ........ 12, 20

*The Manning Grp. LLC v. Neudesic LLC*, 2024 WL 3543472 (C.D. Cal. May 14, 2024) ........ 19

*Zhang v. Twitter Inc.*, 2023 WL 5493823 (N.D. Cal. Aug. 23, 2023), *aff'd,* 2025 WL 66050 (9th Cir. Jan. 10, 2025) ........ 13, 18

**Statute**

47 U.S.C. §230 ........ 7

# PRELIMINARY STATEMENT

After this Court dismissed all of Plaintiffs N.Z.'s and R.M.'s ("Plaintiffs")[1] claims (ECF 209, "First Order"), Plaintiffs added 130 pages to their Second Amended Complaint, to no avail. The Court dismissed almost all of Plaintiffs' amended claims against Fenix with prejudice, but allowed Plaintiffs one last chance to "cure the deficiencies" in their newly (but inadequately) pled breach of contract claims against FIL "(1) for failure to provide platform with reasonable care and skill and (2) for implied covenant of good faith and fair dealing." (ECF 251, ("Second Order"), PageID#5082-83.) Despite adding 15 *more* pages of allegations, Plaintiffs' 4AC still fails.[2]

***First***, Plaintiffs' copious technical jargon cannot disguise that, as amended, both claims fall squarely within §230. Plaintiffs allege FIL *can*, but does not, monitor Creator activity to "detect" Creators purportedly using third-parties to communicate with Fans, and thus *can*, but does not, enforce the Terms against those Creators by deleting their content for allegedly breaching the Terms. Because liability for Plaintiffs' claims is dependent on FIL's role as a publisher, and Plaintiffs cannot point to any separate enforceable promise apart from that role, §230 bars the claims.

***Second***, Plaintiffs still cannot avoid the disclosures and disclaimers in the OnlyFans Terms of Service ("Terms") that end their claims. Courts routinely dismiss

[1] While acknowledging that California plaintiffs N.Z. and R.M. are the only two Plaintiffs permitted to pursue claims against Fenix after the Court's ruling on Fenix's forum non conveniens motion (4AC¶24; ECF 117, PageID#1519), Plaintiffs did not clarify in the 4AC that Count II and III, like Count IV, can be brought only "on behalf of California Subclass." (4AC¶¶622-36.) Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material.

[2] Plaintiffs filed the 4AC after Defendants informed them that the Third Amended Complaint unnecessarily re-alleged dismissed claims and added two new plaintiffs without seeking the Court's leave to amend. (ECF 260.)

contract claims similarly based on website terms where, as the Court has repeatedly found, the contract provisions contradict Plaintiffs' contentions.

***Third***, the 4AC references Fenix Internet only four times. (4AC¶¶46, 48-49, 585.) Notably, the 4AC does *not* allege any count against Fenix Internet: Counts II and III are alleged against FIL *only* and Plaintiffs make clear that references to FIL are *not* to Fenix Internet, and vice versa. (4AC¶¶43, 46, 49; 4AC¶¶595-609 (Count II "(Against FIL)"); 4AC¶¶610-21 (Count III "(Against FIL)").) Moreover, Plaintiffs *cannot* allege any count against Fenix Internet, because it does not operate OnlyFans; it merely provides payment processing assistance to its parent, FIL. Because no claims are—or can be—pled against Fenix Internet, it must be dismissed with prejudice.

Plaintiffs' fifth attempt to state a claim against Fenix should be their last. Counts II and III should be dismissed without leave to amend.

## LEGAL STANDARD

To survive a motion to dismiss under FRCP 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," nor do they "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007).

The Court's "discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint." (Second Order, PageID#5058); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (affirming dismissal of second amended complaint with prejudice because "it was clear that the plaintiff had made her best case and had been found wanting"); *Glasscell PC v. Aetna Life Ins. Co.*, 2025 WL 740181, at *8 (C.D. Cal. Feb. 7, 2025) (dismissing claims with prejudice where prior order "explained precisely what was deficient" but "despite amendment, Plaintiff still fails to sufficiently allege any cause

of action") (Slaughter, J.).

## BACKGROUND

### I. Plaintiffs Omit Key Provisions Of The Terms In The 4AC

As the Court recognized, FIL has established the Terms "govern the relationship between [FIL] and any user of OnlyFans, whether a Creator or Fan or both."[3] (Second Order, PageID#5049 (quoting ECF 60-1).) Plaintiffs acknowledge the Terms are "the legally binding agreement between [Users] and [FIL]" which include "these Terms of Use for all Users… Terms of Use for Fans… Terms of Use for Creators… Acceptable Use Policy [and] Complaints Policy." (ECF 60-1, PageID#355; *see also* 4AC¶218 (quoting same).)

Plaintiffs base both their claims on language from a Terms section while omitting key disclaimer language from that section. (4AC¶599, 615.) Contrary to Plaintiffs' selective quote, the section provides "**What we are not responsible for**: We will use reasonable care and skill in providing OnlyFans to you, *but there are certain things which we are not responsible for*," (*id.*, PageID#359 (first emphasis in original)), including:

- "We do *not authorize or approve Content on OnlyFans*…" (*Id.*)
- "We do not grant you *any rights in relation to Content*." (*Id.*)
- "*We are not responsible for reviewing or moderating Content*, and we do not select or modify the Content that is stored or transmitted via OnlyFans. *We are under no obligation to monitor Content or to detect breaches of the Terms of Service (including the Acceptable Use Policy)*." (*Id.*)

[3] The 4AC "continues to refer to the [December 2021] version of the Terms" (4AC¶218 n.118), which the Court took "judicial notice of… under Federal Rule of Evidence 201 and under the doctrine of incorporation by reference." (Second Order, PageID#5050 & n.2; *see also* ECF 122, 165 (Fenix briefing requesting judicial notice and notice of documents incorporated by reference).)

- "The materials which we make accessible on OnlyFans for Users are for general information only. *We make no promises or guarantees about the accuracy or otherwise of such materials, or that Users will achieve any particular result or outcome from using such materials*." (*Id.*, PageID#360.)
- "You acknowledge that once your Content is posted on OnlyFans, we *cannot control and will not be responsible* to you for *the use which other Users or third parties make of such Content*." (*Id.*)

Both the Terms of Use for Fans and Terms of Use for Creators expressly incorporated in the Terms reiterate:

- "We are not responsible for and do not endorse any aspect of any Content posted by you or *any other User of OnlyFans*. *We do not have any obligation to monitor any Content* and have no direct control over what your Content may comprise." (*Id.*, PageID#370, PageID#376.)
- "All Fan/Creator Transactions are contracts between Fans and Creators on the terms of the Standard Contract between Fan and Creator. *Although we facilitate Fan/Creator Transactions by providing the OnlyFans platform and storing Content we are not a party to the Standard Contract between Fan and Creator or any other contract which may exist between a Fan and Creator*, *and are not responsible for any Fan/Creator Transactions*." (*Id.*, PageID#370, PageID#374.)

As the Court recognized and Plaintiffs admit, the Terms of Use for Creators state explicitly that Creators may "have an agent, agency, management company or other third party… assist[ing them] with the operation of [their] Creator account (or operat[ing] it on [their] behalf." (*Id.*, PageID#374; 4AC¶231; *see* First Order, PageID#3467; Second Order, PageID#5078.) The Terms of Use for Creators clarify that such actions do not affect the Creator's "personal legal responsibility": "[o]ur relationship is with you, and not with any third party, and *you* will be legally

responsible for ensuring that all Content posted and all use of your account complies with the Terms of Service." (*Id.*, PageID#374.)

Plaintiffs further admit that the Standard Contract between Fans and Creators ("Standard Contract") "govern[s] each transaction between a Fan and Creator on OnlyFans" and "[t]he *only parties to this agreement are the Fan and Creator participating in the Fan/Creator Transaction*." (4AC¶¶238-40.)[4] The Standard Contract also states FIL is not "a party to this agreement," nor "*grants any rights in respect of, nor participates in, any Fan/Creator Transaction*, except that" FIL or its subsidiaries "may act as a payment intermediary." (Standard Contract ¶3.) The Standard Contract further states "[t]he Creator is solely responsible for creating and uploading the Relevant Content" and if there is a conflict between the Terms and the Standard Contract, "the [Terms] will apply." (4AC¶¶597, 600.)

Plaintiffs selectively quote the Terms (particularly the Acceptable Use Policy) (*see* 4AC¶¶219-37, 320), but omit key provisions in part or entirely, including:

- "We *can but we are not obligated to moderate or review any of your Content to verify compliance with the Terms of Service* (*including, in particular, our Acceptable Use Policy*)." (ECF 60-1, PageID#357.)
- "It is *our policy* to suspend access to any Content you post on OnlyFans which we become aware may not comply with the Terms of Service *(including, in particular, our Acceptable Use Policy)*… whilst we investigate the suspected non-compliance or unlawfulness of such Content…. Following our investigation of the suspected non-compliance or unlawfulness of the relevant Content, we *may* take any action *we consider appropriate*, including to reinstate access to the Content or to

[4] Plaintiffs cite the version of the Standard Contract available at https://web.archive.org/web/20240721211059/https://onlyfans.com/contract. (*Id.* & nn.138-40.) The Court may also take judicial notice of the Standard Contract and as incorporated by reference in the 4AC. *See supra* n.3.

permanently remove or disable access to the relevant Content…." (*Id.*, PageID#357-58.)

- "We reserve the right *in our sole discretion* to terminate your agreement with us and your access to OnlyFans *for any reason*…. We *can* also suspend access to your User account or terminate your agreement with us and your access to OnlyFans immediately and without prior notice: if we think that you have or may have seriously or repeatedly breached any part of the *Terms of Service (including in particular our Acceptable Use Policy)*…." (*Id.*, PageID#358.)
- "Breaches of this [Acceptable Use] Policy *may* lead to your account being suspended or terminated, and access to your earnings being revoked…." (*Id.*, PageID#386.)

Plaintiffs also selectively quote the section of the Terms of Use for Creators entitled in bold "**Circumstances in which we *may* withhold Creator Earnings,**" (*id.*, PageID#379 (bold in original)), omitting that each provision outlines expressly optional actions that FIL "may" take at its discretion, with language like "*may* withhold," "*may* arrange," "*may* notify", and "*may* set off." (*Id.*, PageID#379-80.)

## II. <u>The Court's Prior Two Orders Dismissed Plaintiffs' Contractual Claims</u>

The First Order dismissed Plaintiffs' breach of contract claim predicated on FIL's alleged "direct message" statement because "the parties agreed to an integrated contract and therefore Plaintiffs cannot bring contract-related claims outside the alleged contract." (First Order, PageID#3465-66.) Dismissing Plaintiffs' fraud claims, the Court held the Terms "disclaim[] [FIL's] responsibility, stating that [FIL is] 'not responsible for any Fan/Creator Transaction' and 'All Fan/Creator Transactions are contracts between Fans and Creators'" and "'make no promises or guarantees about the accuracy or otherwise' of materials made available to Fans." (*Id.*, PageID#3466-67.)

In dismissing all Plaintiffs' fraud-based claims with prejudice in the Second

Order, the Court reiterated FIL "made explicit disclosures regarding the use of third parties, its inability to control how Fan content is used, and the materials provided to Fans." (Second Order, PageID#5078.) The Court dismissed Plaintiffs' "claims for breach of contract regarding direct messaging representation," including "breach of contract," "implied-in-fact contract" and "Plaintiffs' alternative promissory estoppel claim" with prejudice because "the parties agreed to an integrated contract." (*Id.*, PageID#5073-74 & n.7, 5081-82.)

The Court dismissed "Plaintiffs' claim for breach of contract for failure to provide platform with reasonable care and skill," holding Plaintiffs' allegations concerning the use of management agencies to assist with Creator interactions were barred by §230 "because this theory of liability imposes a monitoring obligation on Fenix." (*Id.*, PageID#5074-75.) The Court further found the allegations that FIL "merely design[ed] and provid[ed] tools for OnlyFans users" were not "sufficient to allege a breach," because "Plaintiffs do not allege how [the] tools… enable, or were specifically designed for" the alleged use of third-parties to communicate with Fans. (*Id.*, PageID#5075.)

The Court dismissed Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing as "inadequately alleged" for the same reasons, "and because Plaintiffs are imposing substantive duties beyond those incorporated in the alleged contracts." (*Id.*, PageID#5075-76.)

Because it was "Plaintiffs' first attempt" to allege the two new contract claims, the Court granted leave to amend "to cure the deficiencies" it outlined. (*Id.*, PageID#5082-83.) Plaintiffs have failed to do so.

## ARGUMENT

## I. Section 230 Bars Plaintiffs' Claims

As the Court recognized, 47 U.S.C. §230 immunizes "(1) a provider… of an interactive computer service (2) whom a plaintiff seeks to treat… as a publisher or speaker (3) of information provided by another information content provider," and

"[w]hen a plaintiff cannot allege enough facts to overcome [§]230 immunity, [his] claims should be dismissed." (First Order, PageID#3454; Second Order PageID#5063-64.) The Court found as to the first prong, "the parties do not dispute that Fenix Defendants are providers of an interactive computer service, nor does the court find otherwise based on Plaintiffs' allegations." (Second Order, PageID#5064.) Plaintiffs' amended allegations in the 4AC compel the same finding and result.

The Court recognized it must consider "whether a plaintiff's *theory of liability* would treat a defendant as a publisher or speaker of third-party content" by asking "whether plaintiff claims that the defendant breached a *duty* that derives from the defendant's status or conduct as a publisher." *Id.* (emphasis in original). The Court first "examines the right from which the duty springs" and then must ask "what **this duty requires the defendant to do."** *Id.* (emphasis in original). If the duty "*requires* that [FIL] moderate content to fulfill its duty, then [§]230 immunity attaches." *Id.* (emphasis in original). "Put simply, 'a claim that obliges the defendant to monitor third-party content to avoid liability also treats the defendant as a publisher.'" *Id.* (quoting *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 640 (9th Cir. 2025).)

**A. <u>Plaintiffs' Claims Target Publishing Activity</u>**

The Ninth Circuit recently made clear that a claim asserting a defendant "did not do enough to screen and moderate content… does not eliminate the application of" §230 because "[i]t blames [defendant] for not moderating content in some way, whether through deletion, change, or suppression." *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1167 (9th Cir. 2026). "*Asking a platform to monitor and review third-party content goes to Section 230's core*." *Id.* at 1167-68 (affirming dismissal of claims premised on "the sharing of messages and what happens when some users interact with bad content," which "necessarily relies on information provided by third parties"); *see also Karam v. Meta Platforms, Inc.*, 2025 WL 3079048, at *2 (N.D. Cal. Nov. 4, 2025) (§230 barred breach of contract claim asserting defendant "failed to prevent other Facebook users from posting content relating to [p]laintiff" and

"failed to prevent hate speech, discriminatory content, and targeted harassment from proliferating on its platforms" because "[c]laims premised upon a defendant's decision whether to permit or remove a user's content treat the defendant as a publisher of third-party content").

Plaintiffs' 4AC relies heavily on padding their allegations with technical jargon and an inapposite English judicial proceeding (in which FIL was not a party and did not participate in any way).[5] Plaintiffs' efforts to mask their deficient allegations beneath technobabble cannot obscure that, at base, Plaintiffs allege FIL breached a "promise" to "use reasonable care and skill in providing OnlyFans" because FIL had access to data suggesting third-parties were communicating with Fans, yet chose not to use what Plaintiffs describe as "platform-integrity interventions"—put simply, moderation methods—to monitor Creator accounts. (4AC¶¶599, 601-02, 613, 617.)

Plaintiffs' allegations that FIL "reserved… broad discretionary powers to enforce" the Terms but "elects not to exercise those powers against Agency-operated accounts" (4AC¶¶603, 605, 615-17) inherently rely on monitoring content, which is

[5] Plaintiffs assert that proceeding shows FIL "consent[ed]" to Creators and agencies' use of third-party software that "enabl[ed] a single agency to operate many Creator accounts simultaneously and… a single Creator account to be operated by multiple" third-parties. (*See, e.g.*, 4AC¶¶600, 601c(v), 601d(i)-(iii), 605 (citing ECF 246-2).) Contrary to Plaintiffs' assertions, the dispute involved allegations that a "Customer Relations Management ('CRM') platform[]" working with Creators stole agency-generated scripts and notes from a rival CRM platform, *not OnlyFans.* (ECF 246-2 ¶¶1, 4-7, 36-38, 46-50.) FIL neither appeared nor provided any evidence. (*See id*. ¶¶4, 9-21, 123-30.) Plaintiffs omit the English court found "[t]he Defendants' evidence—unchallenged by the Claimants—is that the [stolen third-party] Scripts are held on the CRM platform (*not on OnlyFans*)," the stolen "Scripts are *not available on* the OnlyFans platform itself *and an agency must use a CRM to access Scripts*," and "the Notes function on [the CRM platform] *is not linked to the Notes function on OnlyFans*." (*Id*. ¶¶22, 123, 128, 130.) Far from demonstrating that FIL was aware of, let alone "consented" to, Creator use of third-parties to assist with Creator interactions with Fans, the opinion shows FIL was not privy to any of the alleged *off-platform* activity.

fatal to their claim under §230. Plaintiffs admit the enforcement mechanisms in the Terms (that FIL "may" use if "appropriate") include indisputable publishing conduct like suspension of the Creator account and "permanent[] remov[al]" of the Creator's content if FIL determines them to be non-compliant. *Supra* 5-6; (4AC¶320(c)-(d).)

Plaintiffs' claims "necessarily implicate [FIL's] role as a publisher of third-party content" and "require [FIL] to monitor third-party content" to avoid liability. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025). That is, "the only way for [FIL] to avoid" the alleged liability is by monitoring Creators' communications with Fans to detect suspected third-party use and then "deciding whether to exclude material that [the Creators] seek to post online"—conduct which "is perforce immune" under §230. *Twitter*, 148 F.4th at 643. Plaintiffs' "theory of liability" is *still* based on FIL "permitting management agencies to use" third-parties to communicate with Fans, *the same conduct* this Court flagged as "impos[ing] a monitoring obligation on" FIL. (Second Order, PageID#5075.) "The accusation here is fundamentally that [FIL] should have monitored and curbed third-party content… exactly the sort of case for which [§]230 provides an impenetrable shield." *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022).

**B. Plaintiffs Have Not Plausibly Alleged FIL Materially Contributed To Platform Content**

As the Court recognized, courts must consider "whether the cause of action targets content provided by another." (Second Order, PageID#5064.) The Ninth Circuit has repeatedly held "a platform's provision of *neutral tools* for users to publish content is not material contribution to such content." *Meta Platforms*, 174 F.4th at 1169; *see also Grindr*, 128 F.4th at 1153 (claims barred by §230 where based on "features and functions of Grindr that were meant to facilitate the communication and content of others" that were "content neutral on their own"); *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098-99 (9th Cir. 2019) (same). Simply "providing tools that can be manipulated by third parties for unlawful purposes" does

not render §230 inapplicable. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 745 (9th Cir. 2024); *see also Murphy v. Linkedin Corp.*, 2026 WL 881710, at *2 (N.D. Cal. Mar. 30, 2026) (describing Ninth Circuit precedent holding defendant cannot "be sued for content developed entirely by a malevolent user merely because the defendant provided neutral tools").

Because "there almost always will be *some* argument that *something* the website operator did encouraged the" alleged wrongful conduct, "only where it is *very clear* that the website directly participates in developing the alleged illegality will immunity be lost." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1201 (N.D. Cal. 2009) (emphasis in original) (dismissing claims where plaintiffs "failed to allege facts that plausibly would support a conclusion that Google created or developed, in whole or in part, any of the allegedly fraudulent AdWords advertisements").

Contrary to Plaintiffs' assertion that the OnlyFans platform includes "a suite of tools whose functional design has no plausible operational use for a Creator [but]… instead serves the operational requirements of" third-parties (4AC¶601(d)), the tools Plaintiffs describe are content-neutral and have obvious utility to all Creators.

Specifically, Plaintiffs allege FIL provides Creators with "per-Fan spending and behavior analytics"—i.e., the Fan's purchase history—and "per-Fan notes fields tied to each Fan profile, in which the operator of the Creator account may record persistent information about that Fan." (4AC¶601(d)(ii)-(iii).) Plaintiffs' allegation that only third-parties would use such tools ignores that Creators do not have perfect recall of their prior interactions with every Fan and need notes to refresh their memory for future Fan engagements. On their face, these tools not only are content-neutral, but also have clear utility to any individual Creator.

Plaintiffs also seek to base liability on "a 'mass message' feature that dispatches a single composed message simultaneously to many Fans." (4AC¶601(d)(i)).)[6] The

[6] Plaintiffs elsewhere allege this tool is provided by *third-party CRM software*—independent of the OnlyFans platform (4AC¶272)—and thus arguably it cannot be a

tool as alleged is inherently "neutral," enabling Creators to send a single message to all their Fans notifying them, for example, about new posted content or an upcoming livestream. *See Doe v. Reddit, Inc.*, 2021 WL 5860904, at *4-5 (C.D. Cal. Oct. 7, 2021) (rejecting allegation that Reddit's messaging tool contributed to illegal website content because "pseudonymous, private messaging apply broadly across Reddit and do not play any special role in the illegality of the" alleged conduct) (collecting cases).

In sum, Plaintiffs' allegations are based on "content-neutral" tools that can benefit all Creators. "As in both *Dyroff* and *Grindr*, [FIL's] tools were content[-]neutral on their own—it was the [third-parties] who [allegedly] chose to manipulate those tools." *Suddeth v. Meta Platforms, Inc.*, 2026 WL 810252, at *2-3 (N.D. Cal. Mar. 24, 2026). Because Plaintiffs' allegations fail to "mak[e] it very clear that [FIL] contributed to any alleged illegality," §230 bars Plaintiffs' claims. *Goddard*, 640 F.Supp.2d at 1202.

### C. <u>Plaintiffs Do Not Allege A Specific "Enforceable Promise" Separate From FIL's Publisher Status</u>

That Plaintiffs are asserting two contractual claims does not save them from §230's reach. Stymied by the Court's rejection of their contract claims premised on the "direct message" statement, Plaintiffs are forced to base their remaining claims on general "reasonable care and skill" language in the Terms. (4AC¶¶219, 599, 615.) Plaintiffs allege FIL breached that "promise" in failing to detect breaches of and/or enforce the Terms against the Creators allegedly using third-parties, but only cite obligations imposed on *users* and FIL's general monitoring policy. (*Id*. ¶¶601(c)(ii), 603, 605, 607, 615.) Plaintiffs cannot show that FIL intended the "promise" as construed by Plaintiffs to be an enforceable obligation because, as the Court has repeatedly held, FIL disclaimed liability for the precise monitoring and enforcement conduct Plaintiffs complain about. (First Order, PageID#3466-67; Second Order,

---

basis for a claim against FIL.

PageID#5078.)

Ninth Circuit courts have repeatedly recognized "there is no 'categorical rule that contract-based claims are never barred by [§]230(c)(1).'" *Ligon v. Meta Platforms Inc.*, 2026 WL 1146091, at *8 (N.D. Cal. Apr. 28, 2026) (quoting *King v. Facebook, Inc.*, 2023 WL 5318464, at *2 (9th Cir. Aug. 18, 2023)); *see also Zhang v. Twitter Inc.*, 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23, 2023) ("There is no exception under [§]230 for breach of contract claims.").

Courts have held §230 does not bar contractual claims arising from specific "enforceable promises" which bind a defendant "by a contractual duty separate from its status as a publisher." *Calise*, 103 F.4th at 743. But "as a matter of contract law, the promise must be as clear and well defined as a promise that could serve as an offer," and "[t]hus a general monitoring policy… on the part of an interactive computer service… does not suffice for contract liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1108 (9th Cir. 2009); *see also King*, 2023 WL 5318464, at *2 (affirming dismissal of implied covenant claim because "specific promise to take down explicit content at issue in *Barnes* does not compare to the general promise made by [defendant], and incorporated into its [website terms], to use 'good faith' or make an 'honest' determination before deciding to exercise publishing… discretion").[7]

For a social media platform "to avoid liability[] *it need only disclaim any intention to be bound*" because the alleged contractual promise must "be worded consistently with its being intended to be enforceable." *Barnes*, 570 F.3d at 1108.

[7] *See also Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *9 (N.D. Cal. Oct. 3, 2022) (§230 barred breach claim alleging defendants "did not take action after being made aware of harmful actions by third parties" because "merely stating" in website terms "that [defendant] does not allow users to post harmful content and that they will remove them is mere[ly] 'a general monitoring policy' that the Ninth Circuit noted was insufficient").

"[T]o be a basis of liability for the defendant's violation of its own terms and conditions," a challenged provision must be one "the defendant promises to abide by." *Goddard*, 640 F.Supp.2d at 1200-01 (citing *Barnes* and dismissing breach claim premised on website terms which "constituted a promise *by Google's advertising customers to Google*" but did not "contain[] any promise by Google to enforce its terms of use or otherwise to remove noncompliant advertisements"); *see also Rangel v. Dorsey*, 2022 WL 2820107, at *3 (N.D. Cal. July 19, 2022) (where plaintiff's claims derived from Twitter's decision to exclude his content involved "traditional publishing functions" and were barred by §230, plaintiff's "contract claim fares no differently because it is based on the Terms of Service, which is discretionary and merely incorporates Twitter's right to act as a publisher").

Courts analyzing *Barnes* and *Calise* conclude "the relevant question is whether there is an 'outwardly manifested intention' to create an 'enforceable promise' by the internet platform." *Ligon*, 2026 WL 1146091, at *9 n.6 (quoting *Calise*, 103 F.4th at 743). An alleged "contract term related to a publishing activity does not properly form the basis for a contract claim *where there is no manifest intent that the term should be enforceable*—[§]230(c)(1) applies even though the basis for liability is technically the contract rather than the publisher's status." *Id*. (dismissing breach and implied covenant claims because plaintiff "failed to demonstrate the type of specific, enforceable promise or contract that would go beyond Defendant's role as publisher").

*Murphy* is instructive. The plaintiffs alleged "two anonymous fraudsters" lured them through "private messages sent via LinkedIn" into "transferr[ing] significant sums" into the fraudsters' accounts. 2026 WL 881710, at *1. The court held §230 barred plaintiffs' tort claims because they were "premised on a purported duty to monitor users, restrict the accounts of fraudulent actors, and to suppress fraudulent activities by" LinkedIn users, and thus "necessarily implicate LinkedIn's role as a publisher of third-party content because discharging the alleged duty *would require*

*LinkedIn to monitor third-party content and prevent communications between fraudsters and legitimate LinkedIn users*." *Id*. at *2 (citing *Grindr*).

The court also dismissed plaintiffs' breach claim, which "rest[ed] on certain terms and representations purportedly made in" LinkedIn's website terms and policies and was "premised on the same duties… that fundamentally seek to hold LinkedIn liable for content created by the fraudsters." *Id*. The court distinguished *Calise*, emphasizing "[p]laintiffs seek to hold LinkedIn liable solely based on its general monitoring policy and aspirations to remove fraudulent users from its platform"[8] and further, that "LinkedIn expressly disclaims liability by notifying users that they 'may encounter content or information that might be inaccurate…' and that LinkedIn 'generally does not review content provided by its Members or others.'" *Id*. at *3.

As shown, Plaintiffs' allegation of FIL's "promise" eliminates the key language around it: "**What we are not responsible for**: We will use reasonable care and skill in providing OnlyFans to you, *but there are certain things which we are not responsible for*" (*contrast* 4AC¶599 *with* ECF 60-1, PageID#359 (first emphasis in original)), including that FIL is "not responsible for reviewing or moderating Content," "cannot control and will not be responsible to [Plaintiffs] for the use which other [u]sers or third parties make" of content uploaded to OnlyFans, and, importantly and repeatedly, is "*under no obligation to monitor Content or to detect breaches of the Terms… (including the Acceptable Use Policy)*." *Supra* 3-5.

Plaintiffs also ignore the Terms' language regarding FIL's enforcement "powers" that Plaintiffs claim FIL "elects not to exercise" (4AC¶1295): "We *can but we are not obligated to moderate or review any of your Content to verify compliance*

---

[8] The LinkedIn User Agreement provisions cited by *Murphy* state: "We *can* also remove any content or other information you shared if we believe it violates our Professional Community Policies… or otherwise violates this Contract." *See* User Agreement §§3.4, 8, available at https://www.linkedin.com/legal/user-agreement#rights (last visited July 6, 2026).

*with the Terms… (including, in particular, our Acceptable Use Policy)*" and that breaching that policy "*may* lead to your account being suspended or terminated, and access to your earnings being revoked." *Supra* 5-6. The Terms make clear FIL has "sole discretion" and "*may* take any action [FIL] *consider appropriate*" in event of a breach. *Id*.

Because Plaintiffs did not and cannot allege an enforceable promise separate from FIL's publisher status, their breach claims are barred by §230.

## II. Plaintiffs' Claims Are Barred By Express Provisions In The Terms

Plaintiffs' claims also fail because "Plaintiff[s] misread[] the Terms by taking phrases out of context and quoting them in a piecemeal fashion." *Kennedy v. Meta Platforms Inc.*, 2025 WL 1935433, at *2-3 (N.D. Cal. June 5, 2025) (dismissing breach claim premised on website terms with prejudice). Instead, the Terms continue to bar Plaintiffs' amended claims.

### A. The Terms Preclude Plaintiffs' "Reasonable Care and Skill" Claim

Courts routinely dismiss breach claims brought against social media websites "based on the conduct of third parties and [defendant's] purported response to such conduct" where, as here, defendant's alleged promises are contradicted by other provisions in the website terms. *Karam*, 2025 WL 3079048, at *3-4 (dismissing breach claim with prejudice where terms "disclaim [defendant's] liability for claims related to the conduct of others or [defendant's] response" in provision stating "[w]e do not control or direct what people and others do or say, and we are not responsible for their actions or conduct"); *see also Sifuentes v. Meta Platforms, Inc.*, 2026 WL 1143542, at *8-9 (N.D. Cal. Apr. 28, 2026) (dismissing with prejudice breach claim asserting website terms "contained express and/or implied terms obligating [d]efendant to provide services in a competent manner and to take reasonable measures to protect the security, confidentiality, and integrity of [plaintiff's] personal information" where terms "expressly disclaim these alleged obligations, providing that Facebook would not always be 'safe, secure, or error-free' and that [defendant]

is not responsible for the 'actions or conduct' of third parties"); *Hall v. YouTube, LLC*, 2025 WL 1482007, at *1, 5 (N.D. Cal. May 5, 2025) (dismissing breach claim alleging "YouTube reinstated allegedly infringing content uploaded by [third-party] despite [plaintiff's] objections and failed to act on his… complaints," noting website terms "expressly reserves broad discretion to [defendant] to remove or retain content and disclaims any obligation to host content").

*LevelFields, Inc. v. Reddit, Inc.*, 2024 WL 5161951 (N.D. Cal. Dec. 17, 2024) is instructive. The plaintiff asserted Reddit breached their contract by "not using 'reasonable means' to prevent clicks from fraud" based on a provision that "Reddit will use reasonable means to ensure that the Ad is delivered according to your criteria, but Reddit does not guarantee… your Ad will reach users with your selected criteria, reach the users that you intended when you selected the criteria, and/or deliver any specific result." *Id*. at *4. The court dismissed the breach claim with prejudice because "[t]here is no basis to read into the reasonable means provision *something not expressly covered* (such as a requirement that Reddit employ some unidentified 'reasonable means' to ensure each click results in traffic to an advertiser's website)." *Id*.

The court also rejected the breach claim as contrary to "other provisions": "The Agreement to which [plaintiff] agreed expressly discloses that fraudulent clicks or impressions might occur and that the remedy for that fraud or mistake is *not requiring Reddit to verify that traffic reached an advertisers site before charging for clicks,* but the claims process." *Id*. The court dismissed the claim with prejudice because the plaintiff's amended complaint "still fails given the unambiguous language of the Agreement." *Id*. at *5.

The *Zhang* court likewise dismissed a breach claim with prejudice based on Twitter's "failure to suspend" a third-party's account "despite his alleged breach of Twitter's Financial Scam and Platform Manipulation and Spam policies," because "the policies *do not require Twitter to perform any particular action*." 2023 WL

5493823 at *5. The court noted the "policies do not *require* Twitter to suspend users suspected of violating… the policies," but rather "list[] various actions Twitter '*may* take.'" *Id.*; *see also Khan v. Twitter, Inc.*, 2023 WL 6466201, at *2-4 (N.D. Cal. Oct. 3, 2023) (dismissing with prejudice breach claim premised on defendant's alleged "fail[ure] to prevent spam" emails from third-parties or "tak[e] corrective measures" because agreement provisions "refer to what Twitter *users*… can and cannot do" and stated defendant "*may not* monitor or control the Content posted" and "cannot take responsibility for such Content").

As shown, the Terms repeatedly state FIL cannot "control" Creator content and disavow any obligation to "review or moderate" or "monitor Content or detect breaches of the Terms." *Supra* 3-5. As the Court has repeatedly recognized,[9] the Terms "expressly disclaim the[] alleged obligations" to detect and prevent alleged third-party involvement in Creator accounts that Plaintiffs seek to impose—including "that [FIL] is not responsible for the actions or conduct of third parties." *Sifuentes*, 2026 WL 1143542, at *8. The Terms make clear that any potential penalties described therein are optional and *may* be imposed in FIL's *sole discretion*. *Supra* 5-6. Contrary to Plaintiffs' claim, the Terms "do not *require* [FIL] to perform any particular action," but rather "list[] various actions [FIL] '*may* take.'" *Zhang*, 2023 WL 5493823 at *5.

Plaintiffs' amended breach claim fails again.

### B. <u>Plaintiff Cannot Establish A Breach Of Any Implied Covenant</u>

"It is well settled the implied covenant does not extend so far as to impose enforceable duties that are beyond the scope of the contract, nor does the covenant prohibit actions that are expressly authorized by the contract's terms." *Ligon*, 2026 WL 1146091, at *17 (dismissing breach of covenant claim because "[d]efendant is explicitly allowed under the terms of the contract to reject Plaintiff's ads for any

[9] (*See* First Order, PageID#3466, 3467; Second Order, PageID#5078.)

reason whenever it wants").[10] As the Court recognized, "[t]he covenant 'exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.'" (Second Order, PageID#5075 (emphasis in original).) The implied covenant "is limited to assuring compliance with the express terms of the contract, *and cannot be extended to create obligations not contemplated by the contract*." (*Id*., PageID#5076.)

Where implied covenant "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous." *The Manning Grp. LLC v. Neudesic LLC*, 2024 WL 3543472, at *4-5 (C.D. Cal. May 14, 2024) (dismissing implied covenant claim as "duplicative" of breach claim where "although [p]laintiff argues that the two claims are premised upon different conduct, the conduct alleged in support of" implied covenant claim "all relates to express contractual provisions") (Slaughter, J.).

Plaintiffs' breach of implied covenant claim specifically references their breach allegations (4AC¶¶615-16) and is premised on the same activity: FIL's alleged failure to detect, prevent, and/or enforce the same Terms provisions against Creators using third-parties to manage Creator interactions. (*Compare* 4AC¶¶601-04,

[10] *See also Rogozinski v. Reddit, Inc.*, 2025 WL 1650019, at *1 (9th Cir. June 11, 2025) (affirming dismissal of breach and implied covenant claims with prejudice where defendant's user agreement "reserve[d] the right to revoke or limit a user's ability to moderate at any time and for any reason or no reason" so defendant "did not violate any contractual obligation or other duty—let alone in bad faith—when it removed [plaintiff's] moderator privileges"); *Damner v. Facebook Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. Dec. 31, 2020) (dismissing implied covenant claim based on defendant's alleged "duty to do its best to keep Facebook safe" where plaintiff did not identify "any contractual obligation on Facebook's part to keep Facebook safe; rather, the [website terms] disavows such an obligation" and implied covenant "cannot impose substantive duties not found in the underlying contract").

*with* 4AC¶¶613-17.) These allegations can be disregarded as superfluous,[11] and fail for the reasons above, including the Terms' explicit disavowal of any obligation to monitor or moderate Content. *Supra* 3-5. To the extent Plaintiffs suggest an implicit contractual obligation to implement the "account-integrity controls described" in the breach claim (4AC¶617f), "Plaintiffs are not invoking the covenant of good faith and fair dealing because they were unable to realize the benefits of the promises in the contract, they are invoking it *to create new promises*. That the covenant cannot do." *Suddeth*, 2026 WL 810252, at *4.[12]

Plaintiffs' allegations that FIL enforced the Terms against others, but not Creators using third-parties to communicate with Fans (4AC¶617a-b), fail because the Terms expressly state FIL "may" enforce the Terms "as we consider appropriate" and "in our sole discretion." *Supra* 5-6; *see also Lewis v. Google LLC*, 461 F.Supp.3d 938, 961 (N.D. Cal. 2020) (dismissing implied covenant claim where "the contracts g[a]ve [d]efendants unilateral discretion" to moderate content); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (dismissing implied covenant

---

[11] Plaintiffs allege in both claims that FIL's "breach… caused Plaintiffs damages in an amount to be proven at trial," adding in the implied covenant claim "including without limitation the value of subscriptions, tips, and pay-per-view payments Plaintiffs made in reliance on FIL's contractual commitment to provide OnlyFans with reasonable care and skill" and "contractual" enforcement powers—the exact same as asserted in their breach claim. (4AC¶¶609, 621.)

[12] Plaintiffs also appear to predicate their claim on FIL "[d]isplaying 'direct message with this user'" and "falsehoods about direct messaging with the Creators." (4AC¶613a, 617f.) These twice-dismissed allegations should be rejected again for the same reasons—they are precluded by the integration clause and FIL's disclosures in the Terms. (Second Order, PageID#5073-74, 5077-78, 5080-82.) Plaintiffs also insert a single sentence claiming, without support or explanation, that the statement "'full access to this user's content'… is not true, as the Fan only gets access to the site where content is for sale." (4AC¶617e.) Further elaboration is unnecessary in any event. As Plaintiffs admit, that statement appears just above the "direct message" statement (*see* 4AC¶213), so any claim based upon it is also precluded by the integration clause.

claim where defendant "had the contractual right to remove or disapprove any post or ad at [defendant's] sole discretion").[13]

In sum, Plaintiffs are again "imposing substantive duties beyond those incorporated in the alleged contracts." (Second Order, PageID#5075-76.) But because FIL was "given the right to do what they did by the express provisions of the contract[,] *there can be no breach*." *Lewis*, 461 F.Supp.3d at 962.

## III. <u>Plaintiffs Fail To Allege A Single Claim Against Fenix Internet</u>

Although Plaintiffs name Fenix Internet as a party, they have not asserted any claims against it. The 4AC expressly distinguishes between FIL and Fenix Internet. (*See* 4AC¶¶43, 46.) In this regard, Plaintiffs assert Counts II and III only "Against FIL." (4AC¶¶595-621.) Neither Count is asserted "against" Fenix Internet. (*Id.*)

Indeed, throughout the entire 176-page, 636-paragraph 4AC, there are *only* four references to Fenix Internet, none of which are tethered to Counts II and III. (4AC¶46 (identifying Fenix Internet), ¶48 (alleging on information and belief supposed licensing obligations); ¶49 (defining FIL and Fenix Internet collectively as "Fenix Defendants"); ¶585 (referencing Fenix Internet in VPPA claim against Agencies).

Moreover, as other courts have recognized and Plaintiffs failed to dispute, Fenix Internet does not operate the OnlyFans platform; it merely provides payment processing assistance to its parent company, FIL, the owner and operator of the OnlyFans platform. (ECF 60-1, PageID#346-47; ECF 62-1, PageID#509-510); *see*

---

[13] Plaintiffs' additional allegations that FIL "exercised the discretion to investigate and resolve user complaints" and "grant Fan refunds" for some complaints but not those related to Creators using third-parties (4AC¶617c-d) fail for the same reasons. The Complaints Policy in the Terms states FIL "will take such steps *as we consider to be appropriate*" to investigate and address complaints about breaches of the Acceptable Use Policy, but "*are not obligated to inform you of the outcome of your complaint*," and makes no mention of refunds. (ECF 60-1, PageID#392-93.) FIL does not guarantee any refund anywhere in the Terms, stating only that "[i]f we consider that any request for a refund… was made by you in bad faith, we have the right to suspend or delete your User account." (*Id.*, PageID#371.)

*also Doe v. Fenix Internet, LLC*, 2024 WL 2845961, at *3-5 (N.D. Ill. June 5, 2024) (dismissing claims against Fenix Internet where "affirmative evidence" showed Fenix Internet "has no involvement in the age verification process" at issue "or the operation of Onlyfans.com generally"). Setting aside their inherent lack of merit as detailed above, Plaintiffs' claims for alleged failure to provide the OnlyFans platform with reasonable care and skill and for breach of the implied covenant simply do not touch on Fenix Internet's operations (i.e., payment processing assistance) in any way.

Because Plaintiffs do not and cannot allege a single count against it, Fenix Internet must be dismissed.

## CONCLUSION

For the foregoing reasons, Fenix Internet and Counts II and III should be dismissed with prejudice.

Dated: July 21, 2026

DAVIS POLK & WARDWELL LLP

By: *s/ Jason D. Russell*

Jason D. Russell (SBN 169219)
jason.russell@davispolk.com
Hillary A. Hamilton (SBN 218233)
hillary.hamilton@davispolk.com
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and*
*Fenix Internet LLC*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Specially Appearing Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,980 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 21, 2026

DAVIS POLK & WARDWELL LLP

By: *s/ Jason D. Russell*

Jason D. Russell (SBN 169219)
jason.russell@davispolk.com
Hillary A. Hamilton (SBN 218233)
hillary.hamilton@davispolk.com
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and*
*Fenix Internet LLC*