Oliver Rocos - State Bar No. 319059
    orocos@birdmarella.com
Bill L. Clawges - State Bar No. 345908
    bclawges@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Moxy Management

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>              Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed Concurrently Declaration of Oliver Rocos, Request for Judicial Notice and  [Proposed] Order*<br><br>Date:     October 22, 2026<br>Time:     10:00 a.m.<br>Crtrm.:  10D<br><br>Assigned to Hon. Fred W. Slaughter |

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

## <u>NOTICE OF MOTION</u>

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled court, before the Honorable Fred W. Slaughter, United States District Judge of the Central District of California, Southern Division, in Courtroom 10D, Defendant Moxy Management ("Moxy") will, and hereby does, move for an order dismissing the Fourth Amended Class Action Complaint (the "4AC") against Moxy pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for the following reasons:

**Forum Non-Conveniens** – Moxy moves for an order dismissing the claims brought by Plaintiffs B.L., S.M., and A.L. in the 4AC against Moxy on the basis of forum non conveniens because, as this Court previously found, their claims fall within the ambit of the forum selection clause in the Terms of Service agreed between Plaintiffs and Fenix Defendants and so cannot be brought here.

**Video Privacy Protection Act (VPPA)** – Plaintiffs fail to state a claim under this statute because they fail to allege facts showing that Moxy ever sent a Plaintiff a video, that Moxy ever knowingly disclosed any such information outside of its ordinary course of business, or that Plaintiffs were not aware that third parties may access their information.

**Unfair Competition Law** – Plaintiffs' Unfair Competition Law claim fails to remedy the deficiencies identified in the Court's prior order or allege an inadequate remedy at law.  Plaintiffs' claim under the "unlawful" prong fails because it is based on Plaintiffs' deficient VPPA claim.  Plaintiffs' claim under the "unfair" prong fails because Plaintiffs have identified no economic injury that could confer standing.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Oliver Rocos, the reply papers, the pleadings on file, and such other evidence and argument

as the Court may receive.  Pursuant to Local Rule 7-3, on July 15, 2026, counsel for Moxy met and conferred with counsel for Plaintiffs to discuss the grounds for its motion.  The parties were unable to resolve their issues.

DATED:  July 21, 2026          Oliver Rocos
                               Bill L. Clawges
                               Bird, Marella, Rhow,
                               Lincenberg, Drooks & Nessim, LLP


                          By: _____
                                       Oliver Rocos
                               Attorneys for Defendant Moxy
                               Management

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION..................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES.............................................9

I.     INTRODUCTION ..............................................................................................9

II.    PROCEDURAL HISTORY ...........................................................................11

III.   FACTUAL BACKGROUND .........................................................................12

IV.    LEGAL STANDARDS ..................................................................................13

V.     NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE
       DISMISSED ON THE BASIS OF FORUM NON CONVENIENS .............14

       A.    The Court Correctly Dismissed Claims By The Non-California
             Plaintiffs ...............................................................................................14

       B.    The Claims Are "Closely Related" To The Overall Terms Of
             Service Because They Concern A Core Part Of Those Terms.............15

VI.    PLAINTIFFS' VPPA CLAIM FAILS ...........................................................17

       A.    The 4AC Contains No Allegation That Any Moxy-Represented
             Creator Provided a Video to Any Plaintiff .........................................18

       B.    Plaintiffs' Collective Allegations Cannot Supply Facts They
             Never Plead Against Moxy...................................................................20

       C.    Plaintiff's Defective Fraud Allegations Cannot Defeat The
             "Ordinary Course Of Business" Exception .........................................22

             1.    Plaintiffs Plead Chatters Are An Integral Part Of Moxy's
                   "Ordinary Course Of Business" ..................................................22

             2.    Plaintiffs Failed To Plead Fraudulent "Chatter Scams"
                   Exist To Defeat The "Ordinary Course Of Business"
                   Exception ....................................................................................24

VII.   PLAINTIFFS' UCL CLAIM STILL FAILS ................................................26

       A.    Plaintiffs Have Not Cured the Deficiencies Identified by the
             Court in Their Unfair Prong Claim......................................................26

       B.    Both UCL Claims Fail to Allege an Inadequate Remedy At Law .......27

       C.    Plaintiffs' Unlawful Prong Claim Fails Because It Relies on
             Their Deficient VPPA Claim, and Plaintiffs Lack Standing to
             Assert It ................................................................................................28

VIII.  CONCLUSION ..............................................................................................29

CERTIFICATE OF COMPLIANCE.........................................................................30

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................... 10, 13, 14, 20

*Benson v. SimpleNursing, LLC*,
  No. CV 24-1118-GBW, 2026 WL 1045614, at *4 (D. Del. Apr. 17,
  2026) ....................................................................................................... 18, 19

*Borders v. City of Tulare*,
  No. 1:16-CV-1818-DAD-SKO, 2017 WL 1106039 (E.D. Cal. Mar.
  23, 2017) ......................................................................................................... 21

*CFPB v. Prime Marketing Holdings, LLC*,
  2016 WL 10516097 (C.D. Cal. Nov. 15, 2016) ............................................ 25

*Copelan v. Infinity Ins. Co.*,
  359 F. Supp. 3d 926 (C.D. Cal. 2019) ........................................................... 28

*Findley v. Am. Home Mortg. Corp.*,
  No. CIV. S-10-2885 FCD, 2010 WL 5169046 (E.D. Cal. Dec. 14,
  2010) ............................................................................................................... 20

*Frazier v. Kuhn*,
  No. 222CV07555BRMLDW, 2023 WL 4014291, at *4 (D.N.J. June
  15, 2023) ......................................................................................................... 21

*Guerrero v. Gates*,
  442 F.3d 697, 706 (9th Cir. 2006) ........................................................... 24, 25

*Hinson-Gribble v. United States Office of Personnel*,
  No. 5:16-CV-70-FL, 2017 WL 9480265, at *5 (E.D.N.C. July 11,
  2017) ............................................................................................................... 21

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........................................................... 18

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................................... 25

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

*Jefferson v. Healthline Media, Inc.*,
   674 F. Supp. 3d 760 (N.D. Cal. 2023)................................................................28

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .............................................................................13

*Letizia v. Prudential Bache Sec., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) ...........................................................................16

*Martin v. Meredith Corp.*,
   657 F.Supp.3d 277, 284 (S.D.N.Y 2023) ...........................................................19

*Miranda v. Am. Nat'l Red Cross*,
   No. 22-CV-03633-SK, 2022 WL 22860766 (N.D. Cal. Sept. 7,
   2022) ...................................................................................................................27

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ...........................................................................16

*Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) .............................................................................13

*Pepper v. Charitable Res. Found., Inc.*,
   No. 214CV02573SVWFFM, 2014 WL 12961327 (C.D. Cal. Oct.
   14, 2014) .............................................................................................................29

*Roberts v. Heim*,
   No. C 84-8069 TEH, 1994 WL 675261 (N.D. Cal. Sept. 16, 1994).................17

*Rodriguez v. Delta T LLC*,
   No. 223CV03717HDVAGR, 2023 WL 9419152, at *5 (C.D. Cal.
   Dec. 12, 2023) ....................................................................................................19

*Schertzer v. Samsonite Co. Stores, LLC*,
   No. 19-CV-639 JLS (MSB), 2020 WL 4281990 (S.D. Cal. Feb. 25,
   2020) ...................................................................................................................27

*Smith v. Norcal Waste Sys. of San Jose, Inc.*,
   2006 WL 581041 (N.D. Cal. Mar. 7, 2006) .......................................................25

*Solomon v. Flipps Media, Inc.*,
   No. 22-CV-55082023(JMA)(JMW), 2023, WL 6390055, at *5
   (E.D.N.Y. Sept. 30, 2023), *aff'd*, 136 F.4th 41 (2d Cir. 2025) ........................19

6

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................................................ 27

*Sorenson v. Cnty. of Lake*,
No. 21-CV-09681-TLT, 2023 WL 1934506 (N.D. Cal. Jan. 13, 2023) ........................................................................................................... 22

*Sterk v. Redbox Automated Retail LLC*,
770 F.3d 618 (7th Cir. 2014) ................................................................................ 23

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................................ 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
826 F. Supp. 2d 1180 (C.D. Cal. 2011) ............................................................... 25

*Vargas v. JP Morgan Chase Bank*, N.A.,
30 F. Supp. 3d 945 (C.D. Cal. 2014) .................................................................... 28

*Vess v. Ciba-Geigy Corp., USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................................. 24

*Ward v. Crow Vote LLC*,
634 F. Supp. 3d 800 (C.D. Cal. 2022), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024) ................................................................ 28

**Federal Statutes**

18 U.S.C.
§ 2710(a)(2) ......................................................................................................... 22
§ 2710(b)(1) ......................................................................................................... 18
§ 2710(a)(3) ......................................................................................................... 18

42 U.S.C.
§ 1983 ................................................................................................................... 21

**California Statutes**

California Penal Code
§ 502 ..................................................................................................................... 11

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

**Other Authorities**

Federal Rules of Civil Procedure

8 ..................................................................................................................20, 22
8(a)(2) ...............................................................................................................22
9(b)...........................................................................................................*passim*
12(b)(6) .............................................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The latest pleading is the *fifth* in this case, yet it is still replete with issues that require the dismissal of its remaining claims.  Plaintiffs stubbornly refuse to plead the basic facts they need to establish any of their claims against Moxy and it is clear that they cannot do so.  The Fourth Amended Complaint ("4AC") should be dismissed with prejudice as to Moxy and this action brought to an end.

As a threshold matter, the claims by the non-California Plaintiffs (B.L., S.M., and A.L.) should be dismissed from the action for the reasons stated in this Court's prior ruling.  The forum selection clause in the Terms of Service applicable to Plaintiffs' activities on OnlyFans *already has been enforced* as to claims against both Fenix Defendants [Dkt. 117 at 16] and Moxy [Dkt. 209 at 31-32].  The allegations in the 4AC that the Terms of Service incorporated an express contract between Fans (like Plaintiffs) and Creators (on whose behalf Moxy acted) reinforces the closeness of the relationship between the claims at issue against Moxy (and the other Agency Defendants) and the Terms of Service as a whole.  This Court should affirm its prior ruling and dismiss the claims by Plaintiffs who agreed they would only pursue claims elsewhere.

The claims themselves fare no better.  The VPPA statute is not a general purpose privacy statute, but protects only the disclosure of personally identifiable information that could identify a person as having "requested or obtained *specific video materials*."  Consequently, courts across the nation are clear that at a *bare minimum*, a plaintiff must plead they did in fact "request or obtain" a "specific video." That is not a high threshold if the facts are there.  And Plaintiffs do plead that they obtained videos from *some* Defendants.  But not from Moxy.  All Plaintiffs offer as to Moxy is a single conclusory statement lumping it in with seven other agencies: Plaintiffs viewed "videos [that] had been sent by *one or more agents or contractors of the Agency Defendants*."  4AC ¶¶ 465.  Such conclusory, generalized allegations

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

as to many defendants at once is insufficient to meet the minimum pleading standards.

Plaintiffs' VPPA claim also fails because their own allegations make plain that the disclosures to chatters about which they complain were a central part of Moxy's "ordinary course of business" for which they cannot be liable. Moxy's business is managing its affiliated Creators' accounts and, as Plaintiffs allege, "[a]s part of its management of those accounts, Moxy provides Chatter services, employing Chatters." 4AC ¶ 361. Having placed chatters at the center of Moxy's business activities, responsible for fulfilling Fans' orders, Plaintiffs cannot now claim that disclosures to them is anything other than "ordinary." Plaintiffs' last ditch resort to argue that the disclosures are not ordinary because they are "fraudulent" fails for the simple reason that this Court already has dismissed with prejudice all of their fraud allegations as insufficient. Plaintiffs must plead fraud with particularity, but have offered nothing but generalizations.

The Supreme Court memorably held that courts should "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because that is all Plaintiffs have to offer as to their VPPA claim, the doors should remain closed and that claim dismissed.

Plaintiffs' UCL claim fares no better. *First*, when dismissing their "unfair" UCL claim months ago the Court gave Plaintiffs specific guidance as to the flaws that needed to be remedied. Plaintiffs ignored that advice and they still fail to allege that claim because they still do not identify any allegedly deceptive message, when it was sent, who sent it, which Plaintiff received it, why it was false, or which purchase it supposedly induced. *Second*, far from alleging they lack an adequate remedy at law, Plaintiffs affirmatively and repeatedly allege that they are entitled to damages. That is fatal. *Third*, Plaintiffs' "unlawful" UCL claim fails because it is predicated on their defective VPPA claim. Even if it wasn't, the claim still fails because they lack an economic injury.

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

## II.     PROCEDURAL HISTORY

Plaintiffs filed this action on July 29, 2024.  [Dkt. 1.]  On April 9, 2025, the Court partially granted Fenix Defendants' motion to dismiss for forum conveniens, dismissing the claims of out-of-state Plaintiffs B.L., S.M., and A.L. against Fenix Defendants on the basis that their claims were subject to the forum selection clause in the Terms of Service they had agreed with Fenix Defendants.  [Dkt. 117.]  Plaintiffs filed their First Amended Complaint on April 23, 2025, [Dkt. 118], Defendants moved to dismiss on May 23, 2025.  [Dkt. 121-129].

On September 4, 2025, the Court issued an Order to Show Cause ("OSC") why Plaintiffs' counsel should not be sanctioned for having misused artificial intelligence in its opposition to Defendants' motions to dismiss.  [Dkt. 187.]  The Court heard oral argument on Defendants' motions to dismiss on September 4, 2025, and on the OSC on September 25, 2025.

On December 12, 2025, the Court sanctioned Plaintiffs' counsel for their use of artificial intelligence.  [Dkt. 207.]  The Court also granted in full Moxy's motion to dismiss, detailing in a 34-page Order the many flaws in each of Plaintiffs' claims and dismissing their RICO claims, wiretap claims, and VPPA claim.  [Dkt. 209.]  The Court also spent 3 pages detailing the reasons as to why its forum non conveniens ruling as to the Fenix Defendants applied to the claims by out-of-state Plaintiffs B.L., S.M., and A.L. against Moxy and the other Agency Defendants.  [Dkt. 209 at 30-32.] The Court gave Plaintiffs leave to amend.

On January 2, 2026, Plaintiffs filed the SAC.  [Dkt. 216-218.]  In the SAC, Plaintiffs dropped their claims under the California Invasion of Privacy Act, the Federal Wiretap Act, and California Penal Code § 502, but maintained their other claims under RICO and the VPPA and added a new claim for violation of California's Unfair Competition Law.  Defendants moved to dismiss the SAC on January 23, 2026. [Dkt. 225-232.]  Plaintiffs opposed Defendants' motions on February 19, 2026 [Dkt. 233-236], and Defendants replied on March 5, 2026 [Dkt. 239-244].

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

On May 19, 2026, the Court issued an order granting in part and denying in part Defendants' motions to dismiss. [Dkt. 251.] The Court dismissed the RICO and RICO conspiracy claims without leave to amend, finding that Plaintiffs failed to adequately allege a RICO enterprise, coordination among Defendants, or a viable fraud-based predicate act, and that Plaintiffs' wire-fraud allegations remained deficient under Rule 9(b). *Id.* at 22-26. The Court also dismissed Plaintiffs' fraud and deceit claims without leave to amend, holding that Plaintiffs failed to plead the alleged misrepresentations with particularity. *Id.* at 33-34. For similar reasons, the Court dismissed the UCL and FAL claims against the Fenix Defendants and dismissed the UCL claim against the Agency Defendants with leave to amend, concluding that Plaintiffs failed to satisfy Rule 9(b). *Id.* at 34-36.

The Court dismissed Plaintiffs' VPPA claim against the Fenix Defendants without leave to amend, holding in part that Plaintiffs had agreed through the Terms of Use that their content could be viewed by individuals who recognized their identity. *Id.* at 26-27. The Court did not dismiss the VPPA claim against Moxy Management ("Moxy") and the other defendant agencies (collectively, the "Agency Defendants"), but found that Plaintiffs had pled Agency Defendants had disclosed Plaintiffs' information when they granted their chatter agents access to Creator accounts. *Id.* at 27. Despite having dismissed all of Plaintiffs' fraud claims, the Court accepted Plaintiffs' argument that the alleged disclosures fell outside the ordinary course of business exception because they were alleged to be part of the purportedly unlawful "Chatter Scams." *Id.* The Court did not consider whether Plaintiffs had pled that they had ever actually requested or obtained a video from any Agency Defendant. *Id.*

## III.   FACTUAL BACKGROUND[1]

The Fenix Defendants operate OnlyFans, a platform on which individuals ("Creators") can create, share, and monetize content they offer to others ("Fans") and

---

[1]   Additional facts relevant to the specific claims are set forth in the argument sections below.

on which Fans can direct-message Creators' accounts. Fourth Amended Complaint ("4AC") ¶¶ 8-9, 15. Moxy is a management and consulting company formed in 2021 that provides services to Creators on OnlyFans. *Id.* ¶¶ 348-351.

Plaintiffs allege they are five individuals who wanted the fantasy of an intimate relationship with certain Creators by exchanging direct messages. *Id.* ¶¶ 29, 32-42, 438-540. Plaintiffs concede Moxy-affiliated Creators have "subscriber bases so large" it would be "physically impossible for a single individual" to interact with Fans "on a direct personal basis." *Id.* ¶ 362. Plaintiffs nonetheless claim they were somehow duped into thinking they were talking directly to Creators, when they allegedly were instead talking to "chatters" Moxy and the other defendant management agencies (collectively, the "Agency Defendants") engaged to impersonate Creators. *See, e.g.*, *id.* ¶ 452. Apparently disappointed their fantasy was just that, *a fantasy*, Plaintiffs now claim they were duped.

Of the five individual Plaintiffs, three live outside of California—Plaintiffs B.L. (Tennessee), S.M. (Georgia), and A.L. (Wisconsin). *Id.* ¶¶ 36, 38, 40.

## IV. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a court accepts factual allegations as true and views them in the light most favorable to plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation" and will accept such a conclusion only where it is adequately "supported by factual allegations."

*Iqbal*, 556 U.S. at 664, 678-79.

## V.   NON-CALIFORNIA PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ON THE BASIS OF FORUM NON CONVENIENS[2]

### A.   The Court Correctly Dismissed Claims By The Non-California Plaintiffs

In its ruling granting in part Fenix Defendants' Motion to Dismiss for Forum Non Conveniens, the Court found that the forum selection clause in the "Terms of Service" required the dismissal of claims against the Fenix Defendants by Plaintiffs B.L., S.M., and A.L., who reside outside California (the "Non-California Plaintiffs").[3] [Dkt. 117 at 16[4].]   When it issued its carefully considered ruling on Agency Defendants' Motion to Dismiss the First Amended Complaint, the Court extended its forum non conveniens ruling by applying it to the claims by Non-California Plaintiffs against the Agency Defendants.  [Dkt. 209 at 31-32.]   The Court did so because it found that the claims asserted by the Non-California Plaintiffs against the Agency Defendants were "so closely related" to the contractual relationship governed by the Terms of Service that the forum selection clause applied to those claims, too.  *Id.*

Plaintiffs did not amend their Second Amended Complaint to add *any* allegations as to the appropriate forum for the Non-California Plaintiffs' claims.  [*See* Dkt. 228 at 13.]  Accordingly, Moxy argued that the prior ruling should apply.  *Id.*

The Court reversed its position without explanation or even acknowledgement of its prior order.  Despite having expressly found that the Non-California Plaintiffs' claims *could not* be pursued in this jurisdiction because they were "so closely related"

---

[2]   As has been the acknowledged practice in this action to date, Moxy incorporates by reference the Motions to Dismiss filed by the other Agency Defendants.

[3]   Plaintiffs B.L., S.M., and A.L. are citizens of Tennessee, Georgia, and Wisconsin, respectively.  4AC ¶¶ 39-44.

[4]   Unless otherwise noted, page references refer to the page in the electronic stamp.

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

to the Terms of Service, the Court found that they now *could* because they were actually not "so closely related." [Dkt. 251 at 18-19.]

The Court's first ruling was the correct one, and the allegations in the 4AC and the documents it incorporates by reference make that clear.

**B.     The Claims Are "Closely Related" To The Overall Terms Of Service Because They Concern A Core Part Of Those Terms**

As a core part of their claims against the Fenix Defendants, Plaintiffs included in the 4AC a detailed overview of the Terms of Service applicable to them as OnlyFans users.[5] 4AC ¶¶ 218-240. As is relevant to Moxy, Plaintiffs expressly allege that "The Standard Contract states that it 'sets out the terms which govern each transaction *between a Fan and a Creator* on OnlyFans,'" and sets forth a hyperlink to that specific set of terms. 4AC ¶ 238, FN 138 ("Standard Contract ¶ 1 https://web.archive.org/web/20240721211059/https://onlyfans.com/contract (last visited Dec. 29, 2025).") (emphasis added). A true and correct copy of the document accessed via that link (the "Fan-Creator Contract") is attached as **Exhibit A** to the Declaration of Oliver Rocos, which is filed alongside the contemporaneously filed Request for Judicial Notice.

The Fan-Creator Contract makes clear that it applies "Each time a Fan/Creator Transaction is initiated on OnlyFans." *Id.* at 1. "Fan/Creator Transaction" is defined as "any transaction between a Fan and a Creator on OnlyFans by which access is granted to the Creator's Content, including in any of the following ways: (i) a Subscription, (ii) payments made by a Fan to view a Creator's pay-per-view Content (pay-per-view media and pay-per-view live stream), and (iii) payments made by a Fan to use the fan interaction function on a Creator's account." *Id.* at 2. The contract

---

[5]   These allegations were first added to the SAC. [Dkt. 217-1 at ¶ 252] Moxy did not present arguments regarding these allegations in its motion to dismiss the SAC because the Court already had ruled that identical forum allegations in that pleading as to the Non-California Plaintiffs did not overcome the forum selection clause.

further states that "this Standard Contract between Fan and Creator will legally bind the Fan and Creator participating in the Fan/Creator Transaction." *Id.* at 1.

The explicit incorporation of the Fan-Creator Contract into the overall Terms of Service supports the correctness of the Court's earlier ruling that the Non-California Plaintiffs' claims against the Agency Defendants should be dismissed because they are "closely related" to the Terms of Service and the forum selection clause therein.

*First*, the central argument on which the Court relied to conclude that the forum selection clause should not be applied to claims against the Agency Defendants is that the Terms of Service "state that third parties shall not have rights under the Terms of Service." [Dkt. 251 at 19 (citing SAC ¶ 235).] But that is plainly wrong. Plaintiffs affirmatively allege that the Fan-Creator Contract was an *integral part* of the Terms of Service. 4AC ¶ 238. Plaintiffs also affirmatively allege that contract *did* give third parties like Creators rights because it "set[] out the terms which govern each transaction between a Fan and a Creator on OnlyFans." 4AC ¶ 238.

Moxy acts at the direction and behest of its affiliated Creators. *Id.* ¶ 360 (alleging Moxy acts "on behalf of [the Creator], and use its reasonable, good faith efforts to upsell the products and content Talent offers"). Because the claims against Moxy arise entirely from conduct it undertook in its representative capacity, Moxy is entitled to invoke the contractual rights available to the creators. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-31 (9th Cir. 2013).

In short, the Terms of Service *do* give Moxy rights. The central pillar on which the Court's reversal was based is incorrect.

*Second*, the Fan-Creator Contract itself notably includes a forum selection clause of its own. **Exhibit A** at 4-5. That clause mirrors the forum selection clause this Court already enforced:

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

"If this agreement is with a Fan resident outside of the United Kingdom or the European Union any claim under this agreement must be brought in the courts of England and Wales, unless the Fan and Creator otherwise agree."

The existence of this separate forum selection clause not only reinforces that the Terms of Service give Moxy rights, but also confirms that it is entirely reasonable to enforce the forum selection clause because it is consistent with the clause that governs fan-creator interactions.

The Court already reached the correct ruling on this issue once before, and the correctness of that prior ruling is substantially buttressed by the terms of the Fan-Creator Contract. The Non-California Plaintiffs should be dismissed from this action.

## VI. PLAINTIFFS' VPPA CLAIM FAILS

Plaintiffs' VPPA claim against Moxy—but not all defendants—fails for a straightforward reason: they ***nowhere allege that any Plaintiff requested, obtained, purchased, or viewed a video associated with Moxy***.[6] Without such an allegation, which cannot be satisfied by broad allegations as to multiple defendants, no plaintiff can be a "consumer" within the meaning of that statute.

Even if Plaintiffs had alleged they were consumers, their only argument that Moxy's purported disclosure of their information was outside of its "ordinary course of business," and can thus form the basis of a claim, is that it was disclosed for a fraudulent purpose. That argument fails because, as this Court *repeatedly* has held, Plaintiffs have failed to meet the minimum standards for pleading fraud in connection with any of their claims.

---

[6] Moxy acknowledges that the Court's May 19 Order found that Plaintiffs "Plaintiffs sufficiently allege their VPPA claim against Agency Defendants." [Dkt. 251 at 37]. However, Moxy requests that the Court exercise its discretion to consider whether Plaintiffs adequately pled a VPPA claim against Moxy specifically. *See Roberts v. Heim*, No. C 84-8069 TEH, 1994 WL 675261, at *6 (N.D. Cal. Sept. 16, 1994) ("The Court retains the discretion to consider a new motion to dismiss at any time or, indeed, even to reconsider rulings it has rendered in the past.").

**A.      The 4AC Contains No Allegation That Any Moxy-Represented Creator Provided a Video to Any Plaintiff**

Despite now being on their fourth amended pleading, Plaintiffs' VPPA claim against Moxy fails at the threshold because *unlike with respect to other defendants*, no Plaintiff has ever alleged that they requested, obtained, or otherwise viewed a video from a Moxy-represented Creator.

The VPPA prohibits the "knowing[] disclos[ure], to any person, [of] personally identifiable information concerning any consumer" of a video tape service provider. 18 U.S.C. § 2710(b)(1). The statute defines "personally identifiable information" ("PII") as information that identifies a person as having "requested or obtained ***specific video materials*** or services from a video tape service provider." *Id.* § 2710(a)(3) (emphasis added). By its express terms, therefore, the statute requires Plaintiffs to plead that they provided PII *and* that they "requested or obtained specific video content." *Id.*; *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) ("[W]hat is barred is disclosing information that "identifies a person *as having requested or obtained* specific video materials.") (emphasis in original).

Consistent with the statute's plain text, courts repeatedly hold that a VPPA plaintiff must allege that he or she "requested or obtained specific video materials" from the defendant and must plead "the identity of specific video materials." In *Benson v. SimpleNursing, LLC*, for example, the plaintiff failed to identify any video that she had requested or obtained and instead only that she had purchased a subscription through which she *could* access videos. No. CV 24-1118-GBW, 2026 WL 1045614, at *4 (D. Del. Apr. 17, 2026). That was insufficient on its face, because the VPPA statute "requires disclosure of the specific video obtained," not merely the possibility that one could be obtained. *Id.* In short, "Benson's mere purchase of a subscription [was] insufficient to identify her specific video-watching behavior." *Id.* At bottom, the court "agree[d] with SimpleNursing that a specific video … must be disclosed." *Id.*

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

A similar outcome occurred in *Solomon v. Flipps Media, Inc.*, the court dismissed a VPPA claim where the plaintiff failed to allege "that she actually accessed such 'prerecorded' video on Defendant's site."  No. 22-CV-5508 (JMA) (JMW), 2023 WL 6390055, at *5 (E.D.N.Y. Sept. 30, 2023), *aff'd*, 136 F.4th 41 (2d Cir. 2025).

That scenario repeated again in *Rodriguez v. Delta T LLC*, where the court held that the plaintiff failed adequately to plead VPPA consumer status because she did "not allege whether she view[ed] any of Defendant's video content on its mobile app." No. 223CV03717HDVAGR, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023).  As in *Benson* and *Solomon*, the mere fact that the plaintiff *could theoretically* have accessed a video was insufficient in the absence of an allegation he actually had.

The court in *Martin v. Meredith Corp.* also dismissed a VPPA on the basis of insufficient allegations where the complaint "le[ft] off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; (3) … which 'specific video materials' were requested or obtained … ; and (4) whether the website visitor 'requested or obtained' any videos at all."  657 F.Supp.3d 277, 284 (S.D.N.Y 2023).

Taken together, these decisions confirm that in order to state a VPPA claim, Plaintiffs must *at a minimum* plead that the alleged disclosure of their PII identified them as having requested or obtained ***a specific video***.  As to Moxy in particular, no Plaintiff has ever met that minimum standard.

Notably, whenever Plaintiffs intend to allege purchase of a specific video, they expressly pled that in clear terms.  For example, Plaintiff N.Z. alleges that "On June 28, 2023, he paid Stefanie Gurzanski (Unruly) $40.50 for digital content and he tipped her $99 *for a video*."  4AC ¶¶ 444b. (emphasis added).  And Plaintiff B.L. alleges that "On January 30, 2023, B.L. *purchased a video* for $15 from Summer Soderstrom (Creators Inc.)" and that "On April 14, 2023, B.L. *purchased a video* for $18 from

Summer Soderstrom (Creators Inc.)."  4AC ¶¶ 494(e), (g) (emphases added).[7]  But *none* of those allegations involve a Creator allegedly affiliated with Moxy.

Instead, the only Moxy-related purchases are described as unspecified "digital content," which falls distantly short of the minimum pleading requirement.  4AC ¶¶ 444(a), 494(i).  Throughout the 4AC, Plaintiffs refer to a broad range of "digital content" including "text," "photos," direct messages, and others that *are not* videos. *See, e.g., id.* ¶ 8 (defining digital content to include "photos," "videos," and "text"); *id.* ¶¶ 260(a) (alleging "stock content" includes both "videos and contemporaneous still photos").  Accordingly, "digital content" *is not* synonymous with "video."

If Plaintiffs intended to allege that a Moxy-represented creator sold or transmitted a video then they would have stated "video," as they did for other Agency Defendants.  Plaintiffs' deliberate choice not to do so is consequential—it means they have not pled a key element of their VPPA claim against Moxy.  Because "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a VPPA claim.  *Iqbal*, 556 U.S. at 679.

## B.    Plaintiffs' Collective Allegations Cannot Supply Facts They Never Plead Against Moxy

Lacking allegations specific to Moxy, Plaintiffs try to fill the gap with generic allegations directed at unidentified "Agency Defendants."  Rule 8 does not permit them to do so.  "[I]t is not enough for the complaint to make general allegations against multiple defendants without providing more specificity as to the claims against each defendant."  *Findley v. Am. Home Mortg. Corp.*, No. CIV. S-10-2885 FCD, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14, 2010).  "When multiple defendants are named, the plaintiff *must allege the basis of his claims as to each defendant*; it is

---

[7]  There were other examples in Plaintiffs' abandoned Third Amended Complaint [Dkt. 259], such as at paragraph 514(b) (alleging proposed plaintiff J.A. paid "for videos of Conley"), 533(f) (alleging proposed plaintiff N.T. spent "$25 for a video on February 6, 2023").

improper to simply lump defendants together." *Borders v. City of Tulare*, No. 1:16-CV-1818-DAD-SKO, 2017 WL 1106039, at *2 (E.D. Cal. Mar. 23, 2017) (emphasis added).

Courts applying pleading standards to privacy-related statutes like the VPPA have consistently rejected precisely the type of pleading Plaintiffs employ here. In *Hinson-Gribble v. United States Office of Personnel Management*, the court held that allegations against two defendants were "too vague and conclusory to meet minimum pleading requirements for a Privacy Act claim (or any other claim)." No. 5:16-CV-70-FL, 2017 WL 9480265, at *5 (E.D.N.C. July 11, 2017). As to one defendant, "general allegations in the complaint regarding defendants collectively" were insufficient where there were "no express allegations regarding it." *Id.* Similarly, in *Frazier v. Kuhn*, the court dismissed a Section 1983 privacy claim because the plaintiff alleged "the same claim against all three defendants without alleging facts to show personal involvement." No. 222CV07555BRMLDW, 2023 WL 4014291, at *4 (D.N.J. June 15, 2023).

Unable to allege any specific facts that a Plaintiff ever "requested or obtained" any video from *Moxy*, Plaintiffs instead lump Moxy with the other Agency Defendants and generally allege that Plaintiffs viewed "videos [that] had been sent by ***one or more agents or contractors of the Agency Defendants***." 4AC ¶¶ 465, 493, 510, 530 (emphasis added) (alleging Plaintiffs viewed "videos sent to [them] via direct message through the Subscribed Creator Accounts"). This is Plaintiffs' ***sole*** allegation regarding the provision of videos by the Agency Defendants. That entirely conclusory and generalized allegation does not identify which "agent or contractor" allegedly sent a video, with which Defendant they were affiliated, or even what that video was.[8] If it was the videos explicitly alleged in the 4AC, that is not sufficient to

---

[8] Plaintiffs also fail to allege any specific instance of ***Moxy*** disclosing PII to a Chatter. With regard to each Plaintiff, the 4AC merely alleges that the Plaintiffs'

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

allege a claim against Moxy for those reasons stated above.

The Agency Defendants are not one entity and Plaintiffs cannot treat them as such. Their allegations lumping together not only all Agency Defendants, but also all "Subscribed Creator Accounts" of any type, fail Rule 8's minimum pleading standards and cannot support a cause of action. *Sorenson v. Cnty. of Lake*, No. 21-CV-09681-TLT, 2023 WL 1934506, at *4 (N.D. Cal. Jan. 13, 2023) (dismissing claims for lack of notice pleading under Rule 8(a)(2) because plaintiff's factual allegations made it unclear as to what each defendant had allegedly done and requiring plaintiff to "set forth the individual actions by each" defendant). Absent any allegations that specify *Moxy's* wrongdoing under the VPPA, Plaintiffs have failed to plead a claim under the VPPA and it should be dismissed.

## C.    Plaintiff's Defective Fraud Allegations Cannot Defeat The "Ordinary Course Of Business" Exception

Even if Plaintiffs had alleged facts supporting the elements of a claim under the VPPA, any disclosure of PII by Moxy was lawful under the VPPA's "ordinary course of business" exception because Plaintiffs' allegations make plain the disclosure was for the purposes of "order fulfillment [and] request processing." 18 U.S.C. § 2710(a)(2).

As this Court recognized in its prior Order, Plaintiffs' sole argument that Moxy cannot meet this exception is that "Chatter Scams are not related to Moxy's ordinary course of business." [Dkt. 251 at 28.] But Plaintiffs' argument is not supported by its own allegations.

### 1.    Plaintiffs Plead Chatters Are An Integral Part Of Moxy's "Ordinary Course Of Business"

According to Plaintiffs, Moxy's entire business is to employ Chatters to act on

_____

"messages and their content were being disclosed to one or more agents or contractors of the Agency Defendants—including professional Chatters." *See* 4AC ¶¶ 450, 465, 478, 497, 512, 531.

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

behalf of Creators.  Specifically, the service Moxy allegedly provides Creators is the "[f]acilitation of all content that is posted on Paid Content Platforms including [OnlyFans]."  4AC ¶ 360.  In order to carry out its obligations, Moxy's contracts with Creators require it to "respond to messages on Paid Content Platforms on behalf of [the Creators]" and to use "reasonable, good faith efforts to upsell the products and content [Creators] offer[] on Paid Content Platforms."  *Id.*  Moxy has "unfettered administrative access to" the Creators' accounts so that it can perform those services.  *Id.* ¶ 361.

Plaintiffs plead that "Moxy's Represented Creators have subscriber bases so large that interacting on a direct personal basis with even a fraction of those Fans would be physically impossible for a single individual."  *Id.* ¶ 362.  As a consequence, Moxy engages Chatters to fulfill those obligations: "As part of its management of those accounts, Moxy provides Chatter services, employing Chatters."  *Id.* ¶ 357.  Those Chatters operate Creators' accounts in order to "sell Fans content from the Creator's Vault and/or obtain Fans' requests for specific 'custom' content."  *Id.* ¶ 260(c).  When Chatters receive a request for content, "the Chatter notifies the Creator of the request" in order to fulfill it.  *Id.* ¶ 260(d).

In short, Plaintiffs themselves plead that Moxy's business is to engage Chatters to fulfill its obligations to the Creators.  Indeed, the VPPA claim itself is expressly predicated on that exact basis: "information provided by Plaintiffs [is] linked to their request for or viewing of any video content."  *Id.* ¶ 580.

Plaintiffs cannot on the one hand plead that Moxy's entire business is to engage Chatters to process and fulfil orders for content, while simultaneously stating that those acts are not a part of Moxy's ordinary business.  The law is clear that where, as here, information is disclosed for the purposes of fulfilling and processing order, the "ordinary course of business" exception is met and a VPPA claim fails.  *See Sterk v. Redbox Automated Retail LLC*, 770 F.3d 618 (7th Cir. 2014) (VPPA not violated where disclosure was part of defendant's "ordinary course of business" of fulfilling

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

orders and processing requests).

### 2. Plaintiffs Failed To Plead Fraudulent "Chatter Scams" Exist To Defeat The "Ordinary Course Of Business" Exception

The Court noted in its Order that Plaintiffs contend the "ordinary course of business exception" does not apply because "the disclosure is part of the allegedly unlawful operation of the Chatter Scams." [Dkt. 251 at 28.]  That argument fails, however, because this Court repeatedly has found that Plaintiffs have failed to plead that the fraudulent Chatter Scams exist with the required particularity.

Rule 9(b) requires that a plaintiff set forth what is false or misleading about a statement, why it is false, including the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  That pleading standard applies not only to formal fraud counts, but also to "any" allegation of fraud relating to a cause of action.  *Id.* ("Where the claim is said to be 'grounded in fraud' or to 'sound in fraud,' the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).").  Critically, it also applies "*to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud*.'"  *Id.*  And where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Instead, a plaintiff must identify each defendant's role in the alleged scheme.  *Id.* at 765.

In accordance with that requirement, the Ninth Circuit has applied that heightened pleading standard to allegations that seek to defeat exceptions or affirmative defenses on the basis of fraud, even where fraud is not an element of the underlying claim.  In *Guerrero v. Gates*, for example, plaintiff alleged that its untimely claims were timely because of tolling by fraudulent concealment.  442 F.3d 697, 706 (9th Cir. 2006).  Although fraud was not an element of the underlying claims, the Ninth Circuit held that allegations of fraudulent concealment had to be pled with

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

the requisite particularity in order to defeat the affirmative defense. *Id.* at 706-07. Plaintiff's failure to do so warranted the dismissal of the claims on statute of limitations grounds. *Id.*; *see also Smith v. Norcal Waste Sys. of San Jose, Inc.*, 2006 WL 581041 at *4 (N.D. Cal. Mar. 7, 2006) ("conclusory statements" of fraud insufficient to defeat affirmative defense). Similarly, courts apply the heightened pleading standard when claims allegedly arise out of a course of fraudulent conduct even if fraud is not an element of a claim, and dismiss claims when the standard is not met. *CFPB v. Prime Marketing Holdings, LLC*, 2016 WL 10516097, at *7 (C.D. Cal. Nov. 15, 2016) (claims dismissed for lack of particularity because plaintiff based its claims on fraud, rather than mere mistake).

There can be no question that the supposed "Chatter Scams" are allegedly unlawful only because they are purportedly "fraudulent." Plaintiffs expressly define "Chatter Scams" as "the use of professional 'chatters' to impersonate OnlyFans Creators in order to manipulate Fans into paying as much as possible for PPV content and tips, and to use a single Creator account to develop as many 'personal' relationships as possible." 4AC ¶ 248. Plaintiffs assert that Agency Defendants "provide[] 'Chatter services'" by "hiring individuals to interact with Fans, [who] *fraudulently misrepresent their identities*" with "the express purpose of deceiving and manipulating Fans in order to maximize their willingness to purchase content." *Id.* ¶ 50 (emphasis added). Plaintiffs certainly never plead any way *other* than fraud in which the "Chatter Scams" could be supposedly unlawful.

Having asserted that Moxy cannot use the "ordinary course of business" exception because the Chatter Scams are "fraudulent," Plaintiffs *must* plead facts sufficient to meet Rule 9(b)'s heightened pleading standard as to those supposed scams. As this Court repeatedly has found in its prior rulings dismissing the RICO, fraud, and UCL claims, Plaintiffs have not and cannot do so.[9] [Dkt. 209 at 20-21, 28-

---

[9]    As this Court already noted, a party cannot meet the particularity requirement

29] [Dkt. 251 at 25 n.6, 33-35.]

This Court's prior rejections of Plaintiffs allegations thus require the dismissal of Plaintiffs' VPPA claim.  Under Plaintiffs' own allegations, Moxy's supposed disclosure of PII allegedly happened during its "ordinary course of business."

## VII.   PLAINTIFFS' UCL CLAIM STILL FAILS

The Court already has considered and rejected Plaintiffs' UCL theory against the Agency Defendants.  In its May 19, 2026 Order, the Court found that Plaintiffs failed to plead their UCL claim with the particularity required by Rule 9(b) and dismissed the claim with leave to amend.  [Dkt. 251 at 34-36.]  Plaintiffs' UCL claim in the 4AC does not cure these defects, but merely repackages the same deficient theories under the UCL's "unlawful" and "unfair" prongs.  Both prongs fail.

### A.   Plaintiffs Have Not Cured the Deficiencies Identified by the Court in Their Unfair Prong Claim

As an initial matter, Plaintiffs still have not cured the defects in their "unfair" prong theory that the Court identified in its May 19 Order.  There, the Court held that Plaintiffs' UCL allegations were "insufficient" because they failed to identify "the specific representations, or which representations were found material." [Dkt. 251 at 35.]  But, as before, they still do not identify the allegedly deceptive message, when it was sent, who sent it, which Plaintiff received it, why it was false, or which purchase it supposedly induced.  Instead, Plaintiffs allege in conclusory fashion that Agency Defendants used Chatters to impersonate creators and induce purchases.  4AC ¶¶ 627-

merely by describing routine business activity as "fraudulent." *See, e.g.*, *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (dismissing RICO fraud claim because "[w]ithout the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) ("alleg[ing] no more than that Defendants' primary business activity . . . was conducted fraudulently" is insufficient to state a RICO fraud claim).

32.  Those allegations are not merely lacking in detail; they fail to allege the very facts the Court previously held were required.  [*See* Dkt. 251 at 35] (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)).

The deficiency is particularly glaring as to Moxy.  Plaintiffs continue to rely on collective allegations against unidentified "Agency Defendants" rather than pleading any specific misrepresentation attributable to Moxy.  *See* 4AC ¶¶ 627-32.  They do not identify a ***single statement made on behalf of a Moxy-represented creator***, much less explain why that statement was false or how it induced any purchase.  Instead, Plaintiffs again ask the Court to infer deception from the mere existence of Chatter communications.  The Court already rejected that argument.  [Dkt. 251 at 35.]

Plaintiffs were expressly told what Rule 9(b) required.  They were granted leave to amend so they could supply those missing facts.  Instead, the 4AC repeats the same theory without supplying the facts the Court found to be absent.  Thus, the Court should dismiss Plaintiffs' UCL claim.

**B.     Both UCL Claims Fail to Allege an Inadequate Remedy At Law**

As it relates to both of their UCL claims, Plaintiffs fail to allege they lack an adequate remedy at law, which is a prerequisite to equitable relief under any UCL theory.  "A UCL action is equitable in nature; damages cannot be recovered." *Miranda v. Am. Nat'l Red Cross*, No. 22-CV-03633-SK, 2022 WL 22860766, at *3 (N.D. Cal. Sept. 7, 2022) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)).  To obtain equitable relief under the UCL, Plaintiffs must allege that they "lack[] an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs do the opposite.  Throughout the 4AC, they seek to recover monetary damages based on the very same alleged conduct.  "[N]umerous district courts have dismissed, at the pleading stage, claims for restitution and injunctive relief under the UCL … where the plaintiff is seeking or could seek damages."  *See Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639 JLS (MSB), 2020 WL 4281990, at *4-5

27

(S.D. Cal. Feb. 25, 2020); *Copelan v. Infinity Ins. Co.*, 359 F. Supp. 3d 926, 933 (C.D. Cal. 2019) ("Courts frequently dismiss or strike requests for equitable relief under the UCL where, as in this case, there is an adequate remedy at law.").  The UCL claim fails on that basis alone.

> **C.      Plaintiffs' Unlawful Prong Claim Fails Because It Relies on Their Deficient VPPA Claim, and Plaintiffs Lack Standing to Assert It**

Plaintiffs' new "unlawful" prong claim fails as a standalone claim.  Plaintiffs now contend that the Agency Defendants violated the UCL because they allegedly violated the VPPA.  4AC ¶ 626.  But that theory rises or falls with the VPPA claim.  Because Plaintiffs fail to state a VPPA claim against Moxy, as discussed above, they necessarily fail to state a UCL claim predicated on VPPA violations.  Indeed, it is black letter law that Plaintiffs cannot maintain a claim under the UCL's unlawful prong based on a deficient cause of action.  *See Vargas v. JP Morgan Chase Bank*, *N.A.*, 30 F. Supp. 3d 945, 952–53 (C.D. Cal. 2014) ("If unable to state a claim for the underlying offense, the plaintiff similarly cannot state a claim under UCL for unlawful practices."); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) ("Consequently, the complaint, as it stands, does not plausibly allege a VPPA claim. Dismissal is also warranted for the UCL and unjust enrichment claims, which Jefferson effectively tethers to her VPPA claim.").

But even if Plaintiffs' unlawful-prong claim was viable, they lack standing to assert it.  "For a private plaintiff to possess standing to bring a UCL claim, the plaintiff must: '(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice … that is the gravamen of the claim.'"  *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 827 (C.D. Cal. 2022) (F. Slaughter), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024) (citation omitted).

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

Here, Plaintiffs point to no economic injury caused by any purported VPPA violations. As discussed *supra*, the VPPA protects against disclosures of PII linked to video-viewing history. Plaintiffs do not allege that any such disclosure caused them to lose money or property. Instead, their VPPA claim seeks "statutory damages, punitive damages, attorneys' fees, and any other relief deemed appropriate by the Court." 4AC ¶ 594. Of these damages, only "statutory damages" could theoretically result from any PII disclosures, but a "claim for statutory damages is insufficient to establish [] standing to bring a UCL claim." *Pepper v. Charitable Res. Found., Inc.*, No. 214CV02573SVWFFM, 2014 WL 12961327, at *7 (C.D. Cal. Oct. 14, 2014).

In turn, the economic injuries Plaintiffs identify in support of their UCL claim are entirely unrelated to any alleged VPPA violation. Plaintiffs seek "lost money and undesirable service, ***as a result of the Agency Defendants' misrepresentations***." *Id.* ¶ 635 (emphasis added). But the VPPA does not concern misrepresentations; it concerns alleged disclosures of PII.

Accordingly, because Plaintiffs have not alleged a viable VPPA violation or any economic injury caused by the alleged VPPA disclosures, they fail to state an unlawful-prong claim and lack standing to pursue one.

## VIII. CONCLUSION

For those reasons, Plaintiffs' 4AC should be dismissed as to Moxy.

DATED: July 21, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: _____

Oliver Rocos
Attorneys for Defendant Moxy
Management

DEFENDANT MOXY MANAGEMENT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT; MEMO. OF POINTS AND AUTHORITIES

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Moxy Management, certifies that this brief contains 6,883 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED:  July 21, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP


By: _____

Oliver Rocos
Attorneys for Defendant Moxy
Management