Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

Case No. 8:24-cv-01655-FWS-SSC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND THE FOURTH AMENDED CLASS ACTION COMPLAINT**

Judge: Hon. Fred W. Slaughter
Courtroom: 10D
Date: October 22, 2026
Time: 10:00 a.m.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2026, at 10:00 a.m., in Courtroom 10D of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiffs N.Z., R.M., B.L., S.M., and A.L. ("Plaintiffs") will and hereby do move for an order granting Plaintiffs leave to amend the Fourth Amended Class Action Complaint (the "Complaint") under Fed. R. Civ. P. 15(a)(2).

This request is based on this Notice, the attached Memorandum of Points and Authorities, and Declaration of Robert B. Carey.

On June 23, 2026, Plaintiffs' counsel conferred with Defendants' counsel via Zoom, under Local Rule 7-3, to meet and confer about whether Defendants opposed Plaintiffs' forthcoming Motion for Leave to Amend the Fourth Amended Class Action Complaint ("Motion"). Defendants stated that they would oppose Plaintiffs' Motion.

As more fully described in the accompanying Memorandum in Support, this Motion is made upon the grounds that good cause exists to allow Plaintiffs to amend their Complaint. This Motion is based on this Notice and the Memorandum in Support, as well as all papers and pleadings on file herein, and such arguments as the Court may permit.

DATED this 21st day of July, 2026.

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *<u>/s/ Robert B. Carey</u>*
Robert B. Carey

*Attorney for Plaintiffs*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. FACTS .......... 1

III. ARGUMENT .......... 6

A. Plaintiffs can show there is good cause to amend the scheduling order. .......... 7

B. Plaintiffs' proposed amendments will not prejudice Defendants. .......... 8

C. The request is not brought in bad faith. .......... 9

D. The request is not the result of undue delay. .......... 10

E. The proposed amendments are not futile. .......... 11

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*C.A.F. & Assocs., LLC v. Portage, Inc.*,
913 F. Supp. 2d 333 (W.D. Ky. 2012) .......... 12

*Calderon v. Tulare Reg'l Med. Ctr.*,
No. 1:17-CV-0040-BAM,
2018 WL 4473626 (E.D. Cal. Sept. 17, 2018) .......... 9

*Chang v. Cashman*,
723 F. Supp. 3d 772 (N.D. Cal. 2024) .......... 10

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018) .......... 11

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 6, 7

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 11

*Griggs v. Pace Am. Grp.*,
170 F.3d 877 (9th Cir. 1999) .......... 6

*Howey v. U.S.*,
481 F.2d 1187 (9th Cir. 1973) .......... 10

*Jimenez v. Menzies Aviation Inc.*,
No. 15–CV–02392–WHO,
2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) .......... 11

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
880 F. Supp. 2d 1029 (N.D. Cal. 2012) .......... 12

*Johnson v. Serenity Transportation, Inc.*,
No. 15-CV-02004-JSC,
2015 WL 4913266 (N.D. Cal. Aug. 17, 2015) .......... 9

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bur.*,
701 F.2d 1276 (9th Cir. 1983) .......... 11

*Martinez v. City of W. Sacramento*,
No. 216CV02566TLNEFB,
2019 WL 469038 (E.D. Cal. Feb. 6, 2019) .......... 9, 10

*Mendia v. Garcia*,
165 F. Supp. 3d 861 (N.D. Cal. 2016) .......... 9

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) .......... 11

*Mirabelli v. Olson*,
No. 3:23-CV-00768-BEN-VET,
2024 WL 5689954 (S.D. Cal. Aug. 8, 2024) .......... 11

*Nelson v. Equifax Info. Servs., LLC*,
522 F. Supp. 2d 1222 (C.D. Cal. 2007) .......... 13

*Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*,
471 F. Supp. 2d 1035 (N.D. Cal. 2007) .......... 12

*Ponten Spirit Holding AB v. Automile, Inc.*,
No. 18-CV-05096-EDL,
2019 WL 7819472 (N.D. Cal. June 28, 2019) .......... 6

*Replenium Inc. v. Albertsons Companies, Inc.*,
No. 2:24-CV-01281-TL,
2025 WL 460057 (W.D. Wash. Feb. 11, 2025) .......... 13

*Solomon v. Aurora Loan Servs. LLC*,
No. CIV. 2:12-209 WBS,
2012 WL 2577559 (E.D. Cal. July 3, 2012) .......... 12

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
No. CV143466MMMJPRX,
2015 WL 12746208 (C.D. Cal. Oct. 30, 2015) .......... 6, 7

*Underwood v. O'Reilly Auto Enters., LLC*,
342 F.R.D. 338 (D. Nev. 2022) .......... 8, 9, 10

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) .......... 10

*Wagner v. Adickman*,
No. CV-19-03216-PHX-SMB,
2020 WL 2395172, at *1 (D. Ariz. May 12, 2020) .......... 7

**Other Authorities**

Fed. R. Civ. P. 9 .......... 5

Fed. R. Civ. P. 15 .......... 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs request leave to file an amended complaint ("Fifth Amended Complaint") to add two additional California plaintiffs and to amend back in their promissory estoppel claim. Pursuant to Judge Slaughter's Standing Order, a redline of the [Proposed] Fifth Amended Class Action Complaint and a chart of the proposed changes are hereby attached as Exhibits A and B to the Declaration of Robert B. Carey ("Carey Decl."), respectively. Plaintiffs are requesting that the Court allow them to add two additional California plaintiffs to support the UCL claims against the Agency Defendants, in particular providing additional factual support for that claim, and avoiding a separate, parallel litigation. And, as the Court dismissed Plaintiffs' allegations relating to Fenix's website's express promises of direct messaging during the subscription process with Creators from Plaintiffs' breach of contract claim—and promissory estoppel claims are appropriate for promises made outside of the contract—Plaintiffs are requesting leave to amend back in their promissory estoppel claim to fill the gap left by that dismissal.

## II. FACTS

Other than amending their complaint early in this litigation—after the Court ruled on the Fenix Defendants' Motion to Dismiss for Forum Non Conveniens—each of Plaintiffs' amendments to the Complaint has been by leave of Court. This is the first time Plaintiffs have requested leave to amend the operative Complaint.

Plaintiffs initially filed this case on July 29, 2024. After multiple stipulations and extensions, the deadline for Defendants to respond to the Complaint was set for October 25, 2024. Dkts. 33, 49. On October 23, 2024, the parties stipulated to sequence Defendants' various motions responding to the complaint, agreeing that the Fenix Defendants would file their motion to dismiss for forum non conveniens ("FNC Motion") and motion to compel Plaintiffs to proceed without pseudonyms ("Motion to Compel"). Dkt. 56 at 2. The parties set a briefing schedule and agreed

Plaintiffs could amend their complaint two weeks after the Court decided the FNC Motion and Motion to Compel. *Id.* ¶¶ 1–6. The parties also stipulated that any Rule 12 motions would be due 30 days after Plaintiffs filed their amended complaint. *Id.* ¶ 7. The Court later granted that stipulation. Dkt. 68. Fenix Defendants filed their FNC Motion and Motion to Compel on October 25, 2024. Dkts. 60, 61.

While the parties were briefing these motions, the Court set the Rule 26(f) Scheduling Conference for February 6, 2025, making the Rule 26(f) Report due January 23, 2025. The parties filed their Joint Rule 26(f) Report on January 23, 2025, and filed an Amended Joint Rule 26(f) Report on February 13, 2025, at the Court's request. Dkts. 102, 112, 113. The parties disagreed on when to start discovery, with Plaintiffs requesting that discovery begin immediately and Defendants requesting that it not start until after the FNC Motion and any Rule 12 motions were decided, while anticipating that those motions would be resolved by June 5, 2025. Dkt. 113 at 10–12. The parties agreed that the deadline to amend the pleadings/add parties would be August 5, 2025—two months after the latest date the parties believed discovery would commence—with a hearing date of October 23, 2025. Dkt. 113-1. The Court did not rule on either party's discovery start date, but adopted the schedule setting the hearing on any motion to amend/add parties for October 23, 2025, setting the end of fact and expert discovery for February 18, 2027, setting the expert disclosure deadline for November 19, 2026, setting the last day to hear dispositive motions for May 27, 2027, and setting the trial for October 5, 2027. Dkt. 114.

On April 9, 2025, the Court granted in part and denied in part the FNC Motion—dismissing the non-California Plaintiffs' claims against the Fenix Defendants—and denied the Motion to Compel. Dkt. 117 at 1, 16–18. Plaintiffs then filed their First Amended Complaint on April 23, 2025, in accordance with the Court's earlier scheduling order. Dkts. 68, 118. The First Amended Complaint made three substantive amendments: it revised the claims to reflect the Court's

order dismissing the non-California Plaintiffs' claims, it added allegations about the CRM tools, and it added a claim for violation of the California Data Access and Fraud Act. Dkt. 118.

On May 5, 2025, Plaintiffs issued discovery requests to Defendants, as the Court did not limit when discovery could commence. Carey Decl. ¶¶ 10–13. Other than the Fenix Defendants providing some responses that related to jurisdiction, all Defendants refused to fully answer substantive merits-based discovery before the upcoming motions to dismiss were answered. *Id.* ¶ 14.

On May 23, 2025, Defendants filed nine motions, including multiple motions to dismiss, a motion to strike, and a request for judicial notice. Dkts. 121–129. By stipulation of the parties, Plaintiffs responded to those motions on July 17, 2025, and Defendants filed replies in support of those motions on August 18, 2025. Dkts. 133, 138–142, 163–166, 169–174.

While the parties were briefing the motions to dismiss, Plaintiffs agreed to start with jurisdictional discovery. On July 29, 2025, as part of the meet and confer process on discovery, Plaintiffs issued additional discovery requests to the Fenix Defendants related solely to jurisdiction. Carey Decl. ¶ 15. Plaintiffs and Fenix Defendants then submitted an informal discovery dispute to Magistrate Judge Christensen for Fenix's failure to provide full jurisdictional discovery. Dkt. 153. While Judge Christensen ordered the parties to meet and confer further after the conference (*id.*), during the conference she agreed that the Court had fully opened discovery and had not set any limits on discovery. Carey Decl., Ex. C. at 19:21–21:1, 24:22–25:12. The Fenix Defendants then responded to some jurisdictional discovery, but none of the Defendants have provided substantive merits-based discovery responses to date. Carey Decl. ¶ 16.

On July 31, 2025, Fenix filed a Motion for Partial Reconsideration, asking the Court to reverse its decision denying the FNC Motion in part. Dkt. 147.

Plaintiffs responded to that motion on August 11, 2025, and the Fenix Defendants filed their reply on August 18, 2025. Dkts. 158, 167–168.

The Court held an in-person hearing on all the pending motions on September 4, 2025. Dkt. 186. On December 12, 2025, the Court denied the Motion for Reconsideration, but granted the other motions filed by Defendants, including the motions to dismiss, giving Plaintiffs leave to file an amended complaint by January 2, 2026. Dkts. 208–209. The Court found that it lacked jurisdiction over the Fenix Defendants and found Plaintiffs had failed to state any claims. Dkt. 209.

On January 2, 2026, in accordance with the Court's order, Plaintiffs filed their Second Amended Complaint. Dkts. 218, 221. On January 23, 2026, Defendants then filed six motions to dismiss the Second Amended Complaint. Plaintiffs responded to those motions on February 19, 2026, and Defendants filed replies on March 5, 2026. Dkts. 225–236, 239–244. On May 19, 2026, the Court granted the motions to dismiss in part and denied them in part. Dkt. 251. The Court found that it had specific jurisdiction over the Fenix Defendants and Plaintiffs had alleged a VPPA claim against the Agency Defendants. Dkt. 251 at 36–37. The Court dismissed the remaining claims, giving Plaintiffs leave to amend the UCL claim against the Agency Defendants and leave to amend the breach of contract claim for failure to provide the platform with reasonable care and skill and the implied covenant of good faith and fair dealing. Dkt. 251 at 37–38. In dismissing the remaining claims, the Court was silent on whether the promissory estoppel claim was dismissed with prejudice—noting that it was being dismissed for the same reason as the direct messaging breach of contract claim—but the Court also did not give Plaintiffs leave to amend the claim. *Id.* at 29 n.7, 36–39.

On June 9, 2026, Plaintiffs filed their Third Amended Complaint, amending the breach of contract claim, the implied covenant of good faith and fair dealing claim, and the UCL claim. Dkts. 254, 259. Plaintiffs also added two additional plaintiffs to support their amended UCL claim. Dkt. 254 ¶¶ 35–38, 507–553.

Specifically, proposed plaintiff J.A. subscribed to a Creator represented by Defendant Verge (*id.* ¶ 507)—as neither of the existing California Plaintiffs subscribed to a Verge Creator. J.A.'s allegations provide the Rule 9(b) specificity the Court found was required, and provide a basis for the unlawful prong of the UCL, as he would also have a VPPA claim against Verge. *Id.* ¶¶ 508–26. Similarly, proposed plaintiff N.T. subscribed to Creators represented by Content X, A.S.H. Agency, and Creators Inc. (*id.* ¶ 527)—neither of the existing California Plaintiffs had subscribed to a Creator represented by Content X and the UCL claim against Creators Inc. was limited to N.Z.'s subscription to McKinley Richardson (*id.* ¶¶ 457, 477). Like J.A., N.T.'s allegations provide the Rule 9(b) specificity and provide a basis for the unlawful prong of the UCL, as he would have a VPPA claim against Content X, A.S.H. Agency, and Creators Inc. *Id.* ¶¶ 528–53. Last, to preserve their rights on appeal, Plaintiffs did not remove their dismissed claims from the Third Amended Complaint, but acknowledged those claims had been dismissed. *Id.* ¶ 27.

After filing their Third Amended Complaint, Plaintiffs met and conferred with Defendants at the request of the Defendants. Fenix Defendants stated that they were considering whether to file a motion for sanctions for leaving the dismissed claims in the Third Amended Complaint and for adding two plaintiffs after the deadline to add parties had passed. Carey Decl. ¶¶ 3–4. Although Plaintiffs maintain it was proper to add plaintiffs to plead their UCL claim as described above, Plaintiffs agreed to file an amended complaint to avoid any unnecessary disputes, and agreed to seek leave to amend their complaint to add the new plaintiffs. *Id.* ¶ 5. Plaintiffs then filed the Fourth Amended Complaint, removing the

dismissed causes of action and removing the two new plaintiffs, but leaving the remainder of the Third Amended Complaint mostly intact.[1] Dkt. 262.

Plaintiffs now seek to add back to their Fifth Amended Complaint two new California plaintiffs, J.A. and N.T., and to add back in their promissory estoppel claim. The proposed amendments mirror what was in the Third Amended Complaint. Carey Decl., Ex. B.

## III. ARGUMENT

Plaintiffs request leave to file their Fifth Amended Complaint under Federal Rule 15(a)(2), which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has interpreted Rule 15(a)(2) as a pro-amendment policy "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Accordingly, district courts generally resolve motions for leave to amend "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp.*, 170 F.3d 877, 880 (9th Cir. 1999).

Because Plaintiffs are requesting leave to amend after the deadline set in the scheduling order, "the stricter standard of good cause under Rule 16(b) must be met before leave to amend can be granted." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV143466MMMJPRX, 2015 WL 12746208, at *7 (C.D. Cal. Oct. 30, 2015). "Once good cause has been shown, the party seeking leave to amend must demonstrate that its amendment is proper under Rule 15(a)(2)." *Ponten Spirit Holding AB v. Automile, Inc.*, No. 18-CV-05096-EDL, 2019 WL 7819472, at *4 (N.D. Cal. June 28, 2019). "Courts may decline to grant leave to amend *only* if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

[1] Through the meet and confer process, Plaintiffs also agreed to remove any sealed materials from the Fourth Amended Complaint, as the Court had already determined it had jurisdiction over the Fenix Defendants. Dkt. 262 ¶ 103 n.33.

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Wagner v. Adickman*, No. CV-19-03216-PHX-SMB, 2020 WL 2395172, at *1 (D. Ariz. May 12, 2020) (citation modified) (citing *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013)). "Not all of the factors merit equal weight"; the most consequential is prejudice to the opposing party. *Eminence Cap., LLC*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* Leave to amend should be granted here.

**A. Plaintiffs can show there is good cause to amend the scheduling order.**

"The focus of the good cause inquiry is not on whether modification of the schedule could have been avoided by diligence, but rather whether delay could have been avoided by diligence. Not all modifications of a scheduling order are the same; if the movant's lack of diligence necessitates a greater modification of the case management schedule than would have been required had the movant acted diligently, the movant has not shown good cause to modify the schedule." *UMG Recordings, Inc.*, 2015 WL 12746208, at *9. Here, the request will not require any modification of the scheduling order that does not already need to occur and there is no lack of diligence on Plaintiffs' part that caused a delay.

When the parties agreed to a case schedule, which the Court adopted, there was an understanding by all parties that discovery would be underway no later than June 5, 2025. Instead, no substantive discovery has occurred because Defendants have refused to engage in discovery and continue to refuse to engage in discovery until all motions to dismiss are decided.[2] Once the Court decides this round of

[2] After the Court's last order allowing the VPPA claim to go forward, Plaintiffs sent a letter to the Agency Defendants requesting they respond to the earlier discovery requests. Carey Decl., Ex. D. In response, Moxy again stated it would not

briefing—this Motion and the motions to dismiss that will be filed by Defendants contemporaneously herewith—the parties will have to set a new schedule on whatever claims remain. The earliest that will occur is after October 22, 2026, the hearing date on these motions. Dkt. 256. This means none of the current case deadlines are feasible and will have to be pushed back at least 18 months to mirror the original proposed schedule. For example, the current deadline to issue expert reports is November 19, 2026, but it is unlikely that the parties will have even started dispositive discovery by then. And there is no way for the parties to complete all fact and expert discovery by February 18, 2027. There is no lack of diligence in seeking to amend the scheduling order because any request at this point would be premature. Plaintiffs assume that the parties will agree to amend the scheduling order after the motions to dismiss have been decided and the parties know what claims are going forward.

Additionally, Plaintiffs have been diligent in seeking to amend their complaint. The deadline to amend the complaint/add parties passed *before* the Court ever ruled on a Rule 12 motion to dismiss. And Plaintiffs timely amended each time the Court allowed an amendment, including when they filed the Third Amended Complaint by adding two plaintiffs to support their amended claims. The addition of those plaintiffs ensured that Plaintiffs could allege their UCL claims and the underlying VPPA claim. And this is the first time Plaintiffs could have sought leave to amend back in the promissory estoppel claim, as it was only recently dismissed. There is no lack of diligence and leave should be granted.

**B. Plaintiffs' proposed amendments will not prejudice Defendants.**

Prejudice "is the most important consideration in determining whether to allow amendment." *Underwood v. O'Reilly Auto Enters., LLC*, 342 F.R.D. 338, 343

---

"provide supplemental responses unless and until the pleadings are settled." *Id.* Ex. E. The remaining Agency Defendants have not responded. *Id.* ¶ 22.

(D. Nev. 2022). "The potential for *some* prejudice" is not enough to warrant denying leave to amend. *Id.* (emphasis added). Rather, the party opposing leave to amend bears the burden of showing "substantial prejudice or substantial negative effect." *Id.* (citation omitted). Further, "[p]rejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred." *Calderon v. Tulare Reg'l Med. Ctr.*, No. 1:17-CV-0040-BAM, 2018 WL 4473626, at *5 (E.D. Cal. Sept. 17, 2018) (citing *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987)).

Defendants cannot show undue prejudice. As a preliminary issue, there has been no substantive discovery and this case is still in the pleading stage. That alone dictates there is no prejudice. *See Martinez v. City of W. Sacramento*, No. 216CV02566TLNEFB, 2019 WL 469038, at *6 (E.D. Cal. Feb. 6, 2019) (finding no "procedural prejudice" where "discovery in this case has yet to commence and trial is not imminent"); *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2015 WL 4913266, at *5 (N.D. Cal. Aug. 17, 2015) (where case is in the pleading stage "prejudice [is] doubtful"). And while a trial date is set, that trial date will have to be moved, along with all the other pretrial deadlines.

Here, Defendants will be hard-pressed to show any prejudice as they have been aware of the claims since the inception of this suit. Adding two new California plaintiffs and amending back in the promissory estoppel claim will not change that analysis. This is the first time Plaintiffs could have moved to amend back in the promissory estoppel claim. And, even if Plaintiffs could have requested leave to add additional plaintiffs earlier, that is not enough to establish prejudice when the parties are still in the pleading stage. *Johnson*, 2015 WL 4913266, at *5. Defendants cannot show undue prejudice.

**C. The request is not brought in bad faith.**

"Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early." *Mendia v.*

*Garcia*, 165 F. Supp. 3d 861, 873 (N.D. Cal. 2016) (citing *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir.1995)). Here, the parties are still in the pleading phase, Plaintiffs are not seeking to amend in new claims, and no merits-based discovery has occurred. There is nothing in the record to suggest that this motion is being brought in bad faith.

**D. The request is not the result of undue delay.**

Plaintiffs' Motion is not the result of undue delay. This factor of "the inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings." *Chang v. Cashman*, 723 F. Supp. 3d 772, 782 (N.D. Cal. 2024) (citation omitted) (citation modified). Even if there was some delay (there is none), delay alone is insufficient to foreclose amendment. *See United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (delay alone is not a reason to deny motion to amend); *Howey v. U.S.*, 481 F.2d 1187, 1190–91 (9th Cir. 1973) (it is an abuse of discretion to deny a motion to amend on grounds of delay alone).

Plaintiffs have already established in Section II.A, *supra*, there was no undue delay. The promissory estoppel claim was only just dismissed, so this is the first opportunity Plaintiffs had to seek leave to amend back in that claim. Additionally, Plaintiffs seek to add two additional California plaintiffs in order to amend their UCL claim to comply with the Court's recent order. And as this case is in the early stages, there is a strong presumption that there is no undue delay. *Underwood*, 342 F.R.D. at 346 ("A strong presumption against a finding of undue delay exists when a case is still in discovery." (citation omitted)). Rather, "[t]he delays that have attended this case are not so much prejudicial to Defendants as they are a natural consequence of modern civil litigation." *Martinez*, 2019 WL 469038, at *6. There is no undue delay.

**E. The proposed amendments are not futile.**

Amendment is futile when the allegations—when presumed true—still fail to state a claim as a matter of law. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bur.*, 701 F.2d 1276, 1293 (9th Cir. 1983) (upholding a denial of leave to amend when amendment to a complaint "could not affect the outcome of th[e] lawsuit"); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622–23 (9th Cir. 2004) (same). Otherwise, the plaintiff "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, both proposed amendments are not futile. Adding two new California plaintiffs will cement the VPPA and UCL claims against the Agency Defendants. And, whether the amended breach of contract claim or breach of the covenant of good faith and fair dealing claim are viable does not change with the addition of two more class representatives. Rather, it is common in class cases to allow the addition of class representatives during the case. *E.g., Jimenez v. Menzies Aviation Inc.*, No. 15–CV–02392–WHO, 2015 WL 4914727, at *2, *4 (N.D. Cal. Aug. 17, 2015) (allowing addition of new plaintiff to represent subclass original plaintiff was not a part of); *see also Mirabelli v. Olson*, No. 3:23-CV-00768-BEN-VET, 2024 WL 5689954, at *3 (S.D. Cal. Aug. 8, 2024) (finding addition of new plaintiffs after nine months, while discovery is open, will not cause undue delay or "'fundamentally alter' the nature of the case"). It will also streamline the litigation by handling all claims within this case, rather than having multiple courts reviewing these claims or wasting judicial time and resources transferring and coordinating a newly filed matter on behalf of these proposed plaintiffs. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 740 (2018) ("With class claims, on the other hand, efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel.").

Leave to amend back in the promissory estoppel claim is not futile. This Court dismissed the claim but did not specifically dismiss it with prejudice. The only claim-specific deficiency the Court identified was Plaintiffs' failure to address Fenix's promissory-estoppel arguments. But this is a curable defect that does not go to the merits of the claim. The claim itself is not futile. In dismissing the breach-of-contract claims regarding the direct messaging representations, the Court relied on its previous analysis, specifically "that the parties agreed to an integrated contract and therefore Plaintiffs cannot bring contract-related claims outside the alleged contract." Dkt. 209 at 28; Dkt. 251 at 29–30. When a promise is extraneous to the contract, "an express contract does not bar plaintiff's promissory estoppel claim." *Solomon v. Aurora Loan Servs. LLC*, No. CIV. 2:12-209 WBS, 2012 WL 2577559, at *6 (E.D. Cal. July 3, 2012); *see also Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1043 (N.D. Cal. 2007) (accepting promissory estoppel "requires extracontractual statements, as opposed to promises bargained for and contained within a contract."); *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("claims based on the contract law doctrine of promissory estoppel are regarded as extra-contractual (because promissory estoppel applies only in the absence of an enforceable contract)"). An integration clause does not bar a promissory estoppel claim where the promise is not mentioned or addressed in the contract. *See* C*.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 351 (W.D. Ky. 2012) (where the "alleged promise . . . [was] neither mentioned nor addressed by" a contract "the merger clause does not extinguish [plaintiff's] promissory estoppel claim").

Here, the Court already determined that the direct message promise was outside of the contract; therefore, that promise can form the basis for Plaintiffs' promissory estoppel claim and the integration clause does not change that analysis.

Additionally, OnlyFans' promises were made *after* the parties entered into the integrated TOS. Plaintiffs accepted the TOS when they subscribed to OnlyFans. Dkt. 60 at 3. But OnlyFans' "direct message" promise, along with other subscription promises, were made after Plaintiffs agreed to that integrated contract. Each time a user, including Plaintiffs, goes to subscribe to a Creator, a popup containing subscription benefits appears.




Dkt. 262 ¶ 214. The popup, which is automatically generated by OnlyFans, makes promises to subscribers about certain subscription benefits, including the promise to direct message with the Creator. Dkt. 262 ¶¶ 213–215. Plaintiffs relied on OnlyFans' subscription promises by subscribing to their chosen Creators. Those extracontractual promises—promises made *after* the formation of the contract—form the basis of a promissory estoppel claim. *See Replenium Inc. v. Albertsons Companies, Inc.*, No. 2:24-CV-01281-TL, 2025 WL 460057, at *15 (W.D. Wash. Feb. 11, 2025) (finding that although contract contained an integration clause, plaintiff alleged a promissory estoppel claim where the defendant "made new promises after the contract was formed"); *cf. Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007) ("release does not apply to claims arising from subsequent conduct occurring after the execution of a release").

Plaintiffs can state a claim for promissory estoppel. Plaintiffs' proposed amendments are not futile.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend their Complaint.

DATED: July 21, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice)*
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950

Email: agold@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (*pro hac vice*)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215)540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

Jonathan Shub (SBN 237708)
SHUB JOHNS & HOLBROOK LLP
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 477-8380
Email: jshub@shublawyers.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,288 words which complies with the word limit of C.D. Cal. L.R. 11-6.1.

Dated: July 21, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Robert B. Carey*

Robert B. Carey