Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a Siren Agency), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),

Defendants.

Case No. 8:24-cv-01655-FWS-SSC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MOXY MANAGEMENT'S MOTION TO DISMISS FOURTH AMENDED CLASS ACTION COMPLAINT**

Judge: Hon. Fred W. Slaughter
Courtroom: 10D
Date: October 22, 2026
Time: 10:00 a.m.

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Moxy's thinly veiled motion for reconsideration of this Court's prior Order on Forum Non Conveniens should be rejected. ........ 1

1. Moxy has not, because it cannot, meet the requirements for reconsideration of this Court's May 19, 2026 Order. ........ 1

2. Moxy applies the wrong legal standard. ........ 2

3. There is no basis to apply the Terms of Service to Moxy under the closely related doctrine. ........ 3

B. Plaintiffs have alleged that Moxy violated the VPPA. ........ 5

1. Moxy provided video content to Plaintiffs. ........ 6

2. Plaintiffs have adequately alleged claims with facts specific to Moxy. ........ 8

3. Moxy's wrongdoing was not authorized under the ordinary course of business exception. ........ 9

a. Chatter Scams are not part of Moxy's ordinary course of business. ........ 9

b. Plaintiffs are not required to plead facts to defeat Moxy's affirmative defense under the VPPA. ........ 11

C. Plaintiffs have stated a UCL claim against Moxy. ........ 13

1. Plaintiffs have added additional information to support both a misrepresentation claim and an omission claim. ........ 14

2. Plaintiffs do not have to allege they have an inadequate remedy at law to bring a UCL claim. ........ 16

3. Plaintiffs have alleged a UCL claim under the unlawful prong. ........ 19

III. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. Viki, Inc.*,
No. 23-CV-02161-RFL,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ............ 17, 19

*Aesha v. State Farm Gen. Ins. Co.*,
No. 5:24-CV-00850-HDV-DTB,
2024 WL 5410447 (C.D. Cal. July 30, 2024) ............ 17

*Archer v. NBCUniversal Media, LLC*,
794 F. Supp. 3d 716 (C.D. Cal. 2025) ............ 5, 11

*Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*,
275 F. Supp. 2d 1013 (D. Ariz. 2003) ............ 17

*Benson v. SimpleNursing, LLC*,
No. CV 24-1118-GBW,
2026 WL 1045614 (D. Del. Apr. 17, 2026) ............ 7

*Boyd v. SunButter, LLC*,
762 F. Supp. 3d 931 (C.D. Cal. 2025) ............ 14

*Cariaga v. Local No. 1184 Laborers Intern. Union of Am.*,
154 F.3d 1072 (9th Cir. 1998) ............ 4

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ............ 2

*CFPB v. Prime Marketing Holdings, LLC*,
No. CV 16-07111-BRO,
2016 WL 10516097 (C.D. Cal. Nov. 15, 2016) ............ 13

*Clark v. EmCare, Inc.*,
No. 2:16-CV-07503-ODW-JC,
2017 WL 1073342 (C.D. Cal. Mar. 21, 2017) ............ 11, 12

*Copelan v. Infinity Ins. Co.*,
359 F. Supp. 3d 926 (C.D. Cal. 2019) ............ 18

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) .......... 14

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......... 15, 16

*Frazier v. Kuhn*,
No. 2:22-cv-07555 (BRM) (LDW),
2023 WL 4014291 (D.N.J. June 15, 2023) .......... 9

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) .......... 13

*Hinson-Gribble v. United States Off. of Pers. Mgmt.*,
No. 5:16-CV-70-FL,
2017 WL 9480265 (E.D.N.C. July 11, 2017) .......... 9

*In re Hulu Priv. Litig.*,
No. C 11–03764 LB,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 10

*In re Hulu Priv. Litigation*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......... 6

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) .......... 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 15

*Kishore v. Times Internet (UK) Ltd.*,
No. 23-CV-03594-HSG,
2024 WL 4197619 (N.D. Cal. Sept. 12, 2024) .......... 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134, 63 P.3d 937 (2003) .......... 16

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) .......... 5

*M. K. v. Google LLC*,
No. 21-CV-08465-VKD,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .......... 12

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)........................................................10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)........................................................7

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013)........................................................5

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
268 F.R.D. 652 (S.D. Cal. 2010)........................................................19

*Otto v. Abbott Lab'ys Inc.*,
No. 5:12-CV-01411-SVWDTBX,
2014 WL 12591475 (C.D. Cal. Apr. 22, 2014)........................................................15

*Pepper v. Charitable Res. Found., Inc.*,
No. 2:14-cv-02573-SVW-FFM,
2014 WL 12961327 (C.D. Cal. Oct. 14, 2014)........................................................20

*Rodriguez v. Delta T LLC*,
No. 2:23-cv-03717 HDV AGR,
2023 WL 9419152 (C.D. Cal. Dec. 12, 2023)........................................................7

*Schertzer v. Samsonite Co. Stores, LLC*,
No. 19-CV-639 JLS (MSB),
2020 WL 4281990 (S.D. Cal. Feb. 25, 2020)........................................................18

*Shaw v. Regents of University of California*,
58 Cal. App. 4th 44 (1997)........................................................4

*Smith v. Norcal Waste Sys. of San Jose, Inc.*,
No. C-05-03706 RMW,
2006 WL 581041 (N.D. Cal. Mar. 7, 2006)........................................................13

*Solomon v. Flipps Media, Inc.*,
No. 22-CV-5508 (JMA) (JMW),
2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023),
aff'd, 136 F.4th 41 (2d Cir. 2025)........................................................7

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)........................................................17, 18

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ........ 19

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ........ 10

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017),
*aff'd*, 731 Fed. App'x 719 (9th Cir. 2018) ........ 15

*Vess v. Ciba-Geigy Corp., USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 13

*Yu v. Liberty Surplus Ins. Corp.*,
30 Cal. App. 5th 1024 (2018) ........ 4

**Statutes**

18 U.S.C. § 2710 ........ *passim*

**Rules**

C.D. Cal. L.R. 7-18 ........ 2

Fed. R. Civ. P. 8 ........ 12

Fed. R. Civ. P. 9 ........ 11, 12, 14, 15

# I. INTRODUCTION

Defendant Moxy Management ("Moxy") moves to dismiss the Fourth Amended Class Action Complaint ("4AC") (Dkt. 262). Dkt. 267. Despite the Court previously finding that the non-California Plaintiffs' claims were not subject to the forum selection clause in the Fenix TOS and that Plaintiffs have stated a VPPA claim against Moxy, Moxy now improperly asks the Court to reverse its decision. But Moxy provides no basis for the Court to reverse its earlier decision. Nor has Moxy identified any deficiency in Plaintiffs' amended UCL claim. Moxy's Motion should be denied in its entirety.[1]

# II. ARGUMENT

## A. Moxy's thinly veiled motion for reconsideration of this Court's prior Order on Forum Non Conveniens should be rejected.

### 1. Moxy has not, because it cannot, meet the requirements for reconsideration of this Court's May 19, 2026 Order.

Despite Moxy's protestations to the contrary, the Court was clear as to why its May 19, 2026 Order ("May 19 Order") (Dkt. 251) declined to dismiss the non-California Plaintiffs' claims against the Agency Defendants: "the court was persuaded by the amended allegations, Plaintiffs' accurate citations to the law, and Plaintiffs' developed arguments." Dkt. 251 at 7 n.3. Moxy and the Agency Defendants ask this Court to return to its December 12, 2025 analysis, but make no effort to address the reasoning that caused the Court to deviate from that ruling in the first place. Instead, they rehash the same arguments that the Court has already considered and denied. Moxy's Motion amounts to a thinly veiled motion for

---

[1] Unless otherwise defined herein, Plaintiffs adopt and use the definitions and capitalized terms from the 4AC. Plaintiffs also incorporate by reference their oppositions to Dkts. 266, 271–274, 276.

reconsideration that cites only two cases, both of which Moxy had previously failed to raise. Yet, in order for this Court to reconsider its prior ruling, Moxy must show that there has been "(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." C.D. Cal. L.R. 7-18. Moxy has not even attempted to do so, because it knows it cannot. There have been zero such developments. As such, Moxy's Motion should be denied.

**2. Moxy applies the wrong legal standard.**

Moxy's argument fares no better on the merits. As in Moxy's Motion to Dismiss the Second Amended Complaint (Dkt. 228), Moxy fails to even attempt to meet the correct legal standard. It is undisputed that there is no contract between the non-California Plaintiffs and the Agency Defendants that contains a forum selection clause. As such, Moxy "bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). Moxy has once more failed to assert a prima facie case that would meet this standard. It has not even tried. Nor does Moxy claim it is a party to any contract that contains a forum selection clause that also binds Plaintiffs. For those reasons alone, the Motion should be rejected.

### 3. There is no basis to apply the Terms of Service to Moxy under the closely related doctrine.

Instead of attempting to meet its burden to demonstrate an adequate alternative forum and balance the private and public interest factors as required, Moxy again attempts to invoke the "closely related doctrine," even as it abandons any citations to case law that involves the doctrine. Yet, Moxy cannot invoke the "closely related doctrine" to enforce the forum selection clause.

To invoke the "closely related doctrine" and piggyback onto the forum selection clause in OnlyFans' Terms of Service ("TOS"), Moxy must convince the Court to ignore the plain language of the TOS. The Court, Moxy contends, was "plainly wrong" for resting its May 19 Order on the fact that the TOS "explicitly state that third parties shall not have rights under the Terms of Service." Dkt. 267 at 16; Dkt. 251 at 19. Yet, this is exactly what the TOS containing the forum selection clause says. And there is no real question that Moxy is, if anything, a third party to that contract.

To attempt an end run around this clear and fatal conclusion, Moxy appears to inexplicably contend that Creators are third parties to the TOS and, as agents of the Creators, so too is Moxy. The argument appears to be as follows: when Fans agree to the TOS, they agree to the Fan TOU and, in doing so, agree to the Fan-Creator Contract that Moxy claims is incorporated therein. Thus, the TOS—an agreement only between a User and OnlyFans—must grant rights to a third party, the Creator, even though the plain language of the TOS itself says the exact opposite, explicitly stating, "[y]our agreement with us does not give rights to any third parties." 4AC ¶ 221. This tortured logic is also belied by the plain language of the Fan-Creator Contract ("The only parties to this agreement are the Fan and

Creator participating in the Fan/Creator Transaction"). Dkt. 267-1, Ex. A ¶ 3. Indeed, every Fan and every Creator that use OnlyFans is a party to the Fan-Creator Contract—just as every Fan on OnlyFans has agreed to the Fan-Creator Contract as a condition precedent of using the site; so too has every Creator. Creator TOU ¶ 3 (Dkt. 60-1 at 19–20). Moxy's arguments that Creators (and by extension Moxy) are third parties to the TOS and to the Fan-Creator Contract with rights to enforce those agreements (including the forum selection clauses) makes no sense—each agreement explicitly forecloses such third-party rights and Creators cannot be a third-party to a contract (the Fan-Creator Contract) that they are direct parties to. Moxy cannot attempt to blur the lines between these agreements to create third-party rights which are plainly disallowed by a plain language reading of each contract's explicit terms.

Moreover, Moxy's basic premise that the Fan-Creator Contract is incorporated into the TOS is wrong. Under California law, a document can incorporate another if "the reference to the incorporated document [is] clear and unequivocal and the terms of the incorporated document must be known or easily available to the contracting parties." *Cariaga v. Local No. 1184 Laborers Intern. Union of Am.*, 154 F.3d 1072, 1074 (9th Cir. 1998) (citation modified). To do so, the parties must have "objective intent [to incorporate the document] as evidenced by the words of the instrument." *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 55 (1997). The Fan TOU lacks objective intent to incorporate the Fan-Creator Contract—to the contrary, it explicitly states that the Fan-Creator Contract "does not form part of [Fan's] agreement with [OnlyFans]." 4AC ¶ 227(e). The incorporation likewise fails because it is not clear and unequivocal. *See Yu v.*

*Liberty Surplus Ins. Corp.*, 30 Cal. App. 5th 1024, 1032 (2018) (Holding that a statement that certain documents were "incorporated herein by reference as though fully set forth herein" was not clear and unequivocal because it contained the phrase "for identification and informational purposes only.")[2]

### B. Plaintiffs have alleged that Moxy violated the VPPA.

Even though the Court has already held that Plaintiffs sufficiently alleged a VPPA claim against Moxy, Moxy once again argues that Plaintiffs' VPPA claim should be dismissed. Moxy's arguments fail again. The VPPA "requires a plaintiff to allege that '(1) a defendant is a video tape service provider; (2) the defendant disclosed personally identifiable information concerning any customer to any person; (3) the disclosure was made knowingly; and (4) the disclosure was not authorized by § 2710(b)(2).'" *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 720 (C.D. Cal. 2025) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1063 (9th Cir. 2015)). This Court previously held that the Agency Defendants are video tape service providers. Dkt. 209 at 33. The Court has also already held that Moxy disclosed personally identifiable information ("PII") to a third party, the disclosure was made knowingly, and it was not authorized. Dkt. 251 at 28. Therefore, the Court has already held that Plaintiffs have adequately alleged a VPPA claim against

---

[2] Both cases cited by Moxy, *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187–88 (9th Cir. 1986), and *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229–31 (9th Cir. 2013) (Dkt. 267 at 16), do not help its position. Both cases address the narrow issue of enforcing an arbitration agreement against an agent of a signatory to that agreement. *Letizia*, 802 F.2d at 1188; *Murphy*, 724 F.3d at 1232. They do not stand for the general principle that an agent may enforce any contractual rights available to her principal. And, in any event and as argued above, as third parties to the TOS, Creators do not have rights to enforce the TOS or its forum selection clause.

the Agency Defendants, including Moxy. Dkt. 251 at 37. Moxy's repeated attempts to reargue the Court's finding as to the VPPA claim are meritless.

**1. Moxy provided video content to Plaintiffs.**

Moxy once again argues that there are no allegations in the 4AC that Plaintiffs requested video material from Creators managed by Moxy under the VPPA. Dkt. 267 at 18; *see also* Dkt. 251 at 27 ("Moxy argues that Plaintiffs do not allege they obtained or requested video content from Moxy or a Moxy-affiliated Creator."). This is false. Under the VPPA, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiffs who subscribed to Moxy-managed Creators allege that they requested and viewed videos, including paying for digital content and Premium Content Fees. 4AC at ¶¶ 195–199, 355, 438, 444, 454–456, 458, 464–467, 481–482, 485, 488–491, 493–494, 504, 510, 520, 525, 530, 580, and 584–585. This includes specific allegations that Plaintiffs requested and viewed videos sent via agency Chatters. 4AC at ¶¶ 444, 465, 493–494, 510, and 530. The Court already found that Plaintiffs' allegations were sufficient (Dkt. 251 at 28), and nothing has changed factually between the Second Amended Complaint and the 4AC that would require dismissal.

Moxy cites *In re Hulu Priv. Litigation*, to argue Plaintiffs are required to allege that they disclosed PII *and* requested video content (Dkt. 267 at 18), but there "the user's identity and that of the video material were transmitted separately." 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) (citation modified). Here, Plaintiffs allege that the disclosure of names and faces and the video viewing

history all occurred within the direct messages with Creators and that communication history was all viewable by the Chatters. 4AC ¶¶ 575–581. Plaintiffs further allege that their video viewing history was stored by OnlyFans and accessible by Creators. *Id.* ¶ 584. This is sufficient to connect the Plaintiffs' identities with the specific videos and viewing history required by the VPPA.

Moxy cites numerous cases to argue that Plaintiffs are required to identify the specific video content they requested. Putting aside that Plaintiffs did identify that they viewed videos from specific Creators managed by Moxy—Moxy's cited cases are all distinguishable. In *Benson v. SimpleNursing, LLC*, the only disclosure alleged under the VPPA was a subscription to access videos (no allegation she viewed them) and that was insufficient for a VPPA claim. No. CV 24-1118-GBW, 2026 WL 1045614, at *4 (D. Del. Apr. 17, 2026). In *Solomon v. Flipps Media, Inc.*, there was no allegation that plaintiff actually accessed a video. No. 22-CV-5508 (JMA) (JMW), 2023 WL 6390055, at *4 (E.D.N.Y. Sept. 30, 2023), *aff'd*, 136 F.4th 41 (2d Cir. 2025). In *Rodriguez v. Delta T LLC*, the allegation that the plaintiff downloaded an app, but no allegation she viewed any video, was insufficient under the VPPA. No. 2:23-cv-03717 HDV AGR, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023). Finally, in *Martin v. Meredith Corp.*, the only shared information was a website URL along with a Facebook user profile, not any video viewing content. 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023). As stated above, Plaintiffs here have outlined the allegations regarding specific videos requested and viewed by Plaintiffs and the identifying information required under the VPPA. Further, this Court has already held that Moxy disclosed PII pursuant to the VPPA and that Plaintiffs have adequately pled their VPPA claims. Dkt. 251 at 28.

**2. Plaintiffs have adequately alleged claims with facts specific to Moxy.**

Despite the Court already holding that Plaintiffs have adequately alleged their VPPA claims against Moxy, Moxy tries to argue that the Fourth Amended Complaint lacks specificity. This is not the case. As the Court noted in its Order "a claim is facially plausible where 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Dkt. 251 at 10–11 (citing cases). Here, the Court has already found that Plaintiffs adequately alleged VPPA claims against Moxy, stating that "Plaintiffs sufficiently allege Moxy, and other Agency Defendants, knowingly disclosed PII." Dkt. 251 at 28. Further, the Court noted additional facts alleged including that Plaintiffs shared personally identifiable information ("PII") in chats with Creators, including their full legal name and photos of their face, how the Chatter Scams function, the specific content the Plaintiffs requested and/or viewed, that the Agency Defendants, including Moxy, allowed Chatters access to the Creators' accounts—either directly or via CRM software—and that the Plaintiffs' PII was disclosed to other people. *Id*.

The 4AC contains the same allegations that the Court relied on when issuing its prior Order. The 4AC does not simply lump Moxy in with the other Agency Defendants; there are many specific allegations as to Moxy's independent conduct. This includes how the Chatter Scams work and Moxy's involvement therein. 4AC at ¶¶ 249–325, 348–363. It also includes examples of the PII Plaintiffs shared with Creators managed by Moxy, the specific content Plaintiffs requested and viewed, and how the PII was disclosed. 4AC at ¶¶ 195–199, 355, 438, 444, 454–456, 458, 464–467, 481–482, 485, 488–491, 493–494, 501, 504, 510, 520–521, 525, 530,

580, 584–585. The 4AC specifically includes allegations that Moxy disclosed Plaintiffs' PII and how Moxy did it. 4AC at ¶ 357. Moxy's cited cases do not reference the VPPA and have no application here.[3] The 4AC contains specific allegations as to Moxy, it does not simply lump Moxy in with the other Agency Defendants, and as the Court has already held, the 4AC adequately alleges Moxy's wrongdoing. Moxy's claims that the 4AC lacks specificity falls short.

**3. Moxy's wrongdoing was not authorized under the ordinary course of business exception.**

**a. Chatter Scams are not part of Moxy's ordinary course of business.**

Despite the clear May 19 Order from the Court holding that Moxy's knowing disclosure of consumer PII does not fall under the ordinary course of business exception (Dkt. 251 at 28), Moxy again attempts to re-argue this point. Under the VPPA, a video service provider may disclose PII for certain enumerated reasons, including if it is in the ordinary course of business. 18 U.S.C. § 2710(b)(2)(E). "The term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2) (citation modified); Dkt. 251 at 28. Moxy argues that Chatters processing and fulfilling orders are done in the ordinary course of Moxy's business—specifically order fulfillment. But Moxy is not in the business of selling

[3] *See Hinson-Gribble v. United States Off. of Pers. Mgmt.*, No. 5:16-CV-70-FL, 2017 WL 9480265, at *5 (E.D.N.C. July 11, 2017) (in a case involving the Privacy Act of 1974, the court concluded that that allegations were too vague and conclusory and fails to assert any wrongdoing by certain defendants); *Frazier v. Kuhn*, No. 2:22-cv-07555 (BRM) (LDW), 2023 WL 4014291, at *4 (D.N.J. June 15, 2023) (the court dismissed claims under 42 U.S.C. § 1983 for supervisory liability where complaint "was devoid of facts to support that accusation" and provided no facts about certain defendants).

products. It is in the business of surreptitiously managing Creator accounts. 4AC ¶¶ 348–355. More importantly, Plaintiffs were purchasing content directly from the Creators using the OnlyFans platform. Chatters are not required to fulfill orders—rather they were there to deceive and upsell the Plaintiffs. And the Chatters were not merely filling orders—if that were the case, they would not need access to, and management of, the chats. In making their argument, Moxy attempts to intertwine the Chatter Scams with order fulfillment to hijack the ordinary course of business exception. But as the Court noted in its May 19 Order "[t]he court is not persuaded that the alleged disclosure of PII to Chatters falls within Moxy's…ordinary course of business because the disclosure is part of the allegedly unlawful operation of Chatter Scams, not Agency Defendants' ordinary business practice of managing Creators." Dkt. 251 at 28.

Moxy's cited case does not help its argument. In *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 625 (7th Cir. 2014), the plaintiff claimed that customer service requests were not part of a video rental company's ordinary course of business. The court rejected that claim finding "Congress contemplated customer service as part and parcel of the ordinary rental experience." *Id*. Here, the Chatters are not part of the service OnlyFans or the Creators offer, and their function of defrauding Plaintiffs does not fall within the ordinary course of business exception. *See In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) (tracking users' activities was not part of order fulfillment or request processing); *Markels v. AARP*, 689 F. Supp. 3d 722, 729 (N.D. Cal. 2023) (no evidence that "marketing" fell under ordinary course of business exception).

**b. Plaintiffs are not required to plead facts to defeat Moxy's affirmative defense under the VPPA.**

Moxy's last argument about the VPPA claim is essentially that Plaintiffs were required to plead facts under Rule 9(b) to defeat Moxy's ordinary course of business affirmative defense. While Moxy attempts to disguise this argument as one about the sufficiency of Plaintiffs' Chatter Scams allegations, Moxy is asking this Court to find that Plaintiffs had an affirmative obligation to anticipate Moxy's ordinary course of business defense, plead facts to defeat that defense, and do so with particularity under Rule 9(b). This is based on Moxy's misunderstanding of the Court's May 19 Order that stated the ordinary course of business exception does not apply because PII disclosure is part of the allegedly unlawful operation of Chatter Scams. Dkt. 251 at 28. But as Plaintiffs have no obligation to plead any facts to defeat an affirmative defense, Moxy's argument fails no matter the pleading standard. *See Clark v. EmCare, Inc.*, No. 2:16-CV-07503-ODW-JC, 2017 WL 1073342, at *2 (C.D. Cal. Mar. 21, 2017) ("A court cannot dismiss a complaint for failure to state sufficient facts going to an affirmative defense, because a plaintiff need not plead any facts relating to an affirmative defense.").

As discussed above, to state a VPPA claim, Plaintiffs only have to allege that Agency Defendants were video tape service providers, they disclosed Plaintiffs' PII to a third-party, the disclosure was made knowingly, and the disclosure was not authorized by § 2710(b)(2). *Archer*, 794 F. Supp. 3d at 720. Under the VPPA, a video service provider may disclose PII for certain enumerated reasons, including if it is in the ordinary course of business. 18 U.S.C. § 2710(b)(2)(E). "The term 'ordinary course of business' means only debt collection activities, order

fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2) (citation modified). It is Moxy's burden to show that the ordinary course of business exception applies. Plaintiffs are not required to allege anything about the ordinary business exception to plead a VPPA claim. *Clark*, 2017 WL 1073342, at *2; *see also M. K. v. Google LLC*, No. 21-CV-08465-VKD, 2023 WL 4937287, at *6 n.4 (N.D. Cal. Aug. 1, 2023) (Plaintiff "has no duty to foreclose an ordinary course of business defense in his complaint.").[4]

No heightened pleading standards apply to a VPPA claim,[5] and plaintiffs have no affirmative obligation to plead facts regarding a defendant's possible affirmative defense. Moxy now takes the position that the VPPA was not pled with the particularity required under Rule 9(b). This is the first time Moxy has raised this argument despite this being its third round of Motion to Dismiss briefing. Nevertheless, as the Court has already held that alleged Chatter Scams are unlawful and sufficient to form the basis of the VPPA claim (Dkt. 251 at 28), the 4AC is sufficiently pled as to the Chatter Scams that Moxy utilizes. As discussed above, the Court held that Plaintiffs have adequately alleged that Chatter Scams are unlawful which includes the following conduct: Moxy knowingly disclosed PII including that Plaintiffs shared personal information in chats with Creators, including their full legal name and photos of their face; the Chatter Scams function by "creating a communication history viewable by Chatters" which consists of "intimate knowledge of the Fan's personal information, conversation history and

---

[4] Plaintiffs allege that the ordinary course of business exception does not apply. 4AC ¶ 592.

[5] Moxy concedes in its Motion that the general pleading standards under Rule 8 applies to the VPPA claim. Dkt. 267 at 20, 22.

preferences"; and "the specific content the Plaintiffs requested and/or viewed." Dkt. 251 at 28. Further, that Moxy employed Chatters to impersonate the Creators using the viewable history, allowed Chatters access to the Creator Accounts—either directly or via CRM software—and the Plaintiffs' PII was disclosed to other people, including Chatters. *Id*. The 4AC contains these same allegations. *See* 4AC ¶¶ 357–363, 575–591. As the Court has already found these allegations to be sufficient for the VPPA claim, Moxy's argument fails.

The cases Moxy cites do not advance their argument. Moxy cites *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003), and *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006), which consider which allegations may require heightened specificity, and *Smith v. Norcal Waste Sys. of San Jose, Inc.*, No. C-05-03706 RMW, 2006 WL 581041, at *4 (N.D. Cal. Mar. 7, 2006), and *CFPB v. Prime Marketing Holdings, LLC*, No. CV 16-07111-BRO (JEMx), 2016 WL 10516097, at *7 (C.D. Cal. Nov. 15, 2016), which simply support general statements regarding lack of particularity in pleading certain claims. These cases do not support Moxy's claim that Plaintiffs' 4AC is not pled with required particularity, as the Court has held. Finally, Moxy argues that other causes of action were dismissed, somehow lending to a lack of particularity generally. Yet the Court's prior Orders are clear and those decisions were not for lack of particularity. The 4AC clearly pleads a VPPA claim against Moxy.

**C. Plaintiffs have stated a UCL claim against Moxy.**

Plaintiffs have stated a UCL claim against Moxy under both the unfair and unlawful prongs of the UCL. Plaintiffs provided additional specificity about the misrepresentations constituting an unfair business practice and they have added an

omission claim. Additionally, because the Court found Plaintiffs had stated a VPPA claim against the Agency Defendants, they have stated a claim under the unlawful prong of the UCL.

**1. Plaintiffs have added additional information to support both a misrepresentation claim and an omission claim.**

"To state a fraudulent omission or misrepresentation claim under the CLRA or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages, all with the particularity required by Rule 9(b)." *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 941 (C.D. Cal. 2025). Plaintiffs N.Z. and R.M. have amended their allegations to include further details about the misrepresentation. N.Z. previously alleged the dates he made purchases from Moxy-represented Creator, Breckie Hill. Dkt. 218 ¶ 458(a). In the 4AC, he repeats those allegations and further alleges that at the time he made those purchases, he believed he was talking with the Creator, that the Creators referred to themselves as "I" in the messages with him, and that none of the Creators disclosed or indicated that he was not speaking to them. 4AC ¶¶ 444(a), 445–447. Similarly, Plaintiff R.M. amended his allegations to include the purchases he made from Moxy-represented Creators, Chyanne Burden and Claire Stone, that he believed he was directly talking with those Creators, and they never disclosed they were not the person he was talking to. *Id*. ¶¶ 466–472. These allegations provide the specificity required by Rule 9(b). Plaintiffs provided the dates or approximate dates of the interactions, that the Creators referred to themselves as "I" in the messages, and that Plaintiffs believed they were speaking to the Creators. *See Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1263 (N.D. Cal. 2022) ("The claims are also adequately pleaded under Rule 9(b). The 'who' is Roblox. The 'what' is inducing users to reasonably believing that their

purchased virtual items would not be deleted according to the alleged 'scheme.' The 'when' is when Doe used the service. The 'where' is on Roblox's website. And the 'how' is the course of conduct described above."). Plaintiffs' allegations also serve the purpose of Rule 9(b), which is, in part, to provide defendants with adequate notice and defend against the charge. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (setting forth purposes of Rule 9(b)).

Plaintiffs N.Z. and R.M. also added an omission claim by alleging that Moxy never disclosed that they were talking to Chatters instead of Moxy-represented Creators. "A plaintiff may base a UCL claim or a CLRA claim" on a fraudulent omission, "but to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) (citation modified), *aff'd*, 731 Fed. App'x 719 (9th Cir. 2018). A duty to disclose can arise "in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."[6] *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337 (1997)). Here, Moxy's omission was contrary to affirmative representations it made. When subscribing to each Creator's profile,

[6] "The materiality of a misrepresentation or omission is ordinarily a question of fact," applying the reasonable consumer standard of the target audience. *Otto v. Abbott Lab'ys Inc.,* No. 5:12-CV-01411-SVWDTBX, 2014 WL 12591475, at *7 (C.D. Cal. Apr. 22, 2014).

Plaintiffs were specifically promised that they would be direct messaging with the Creator, and the Agency Defendants (pretending to be the Creators) represented to Plaintiffs that they were speaking to the Creators. 4AC ¶¶ 213–14, 352, 355–63. Additionally, Moxy had a duty to disclose that it was not the Creator on the chat because it had exclusive knowledge of material facts and actively concealed those facts from the California Plaintiffs. On their own, the California Plaintiffs had no way to know whether they were actually speaking to Creators managed by Moxy and Moxy actively concealed that information, by using Chatters to impersonate the Creators as outlined in their Services Agreement. *Id.* ¶¶ 357, 360–61. And because a "fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim . . . a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim." *Falk*, 496 F. Supp. 2d at 1098–99. Plaintiffs have sufficiently alleged a UCL omission-based claim.

**2. Plaintiffs do not have to allege they have an inadequate remedy at law to bring a UCL claim.**

Moxy misstates the law on what is required at the pleading stage for a UCL claim. While damages may not be recovered in a UCL claim, both restitution and injunctive relief are available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 63 P.3d 937, 943 (2003). But there is no requirement that Plaintiffs allege they have no other adequate remedy at law at the pleading stage, particularly where no legal remedies have survived the motion to dismiss stage. As a preliminary issue, this is not a case where Plaintiffs have alleged, or the Court has found, that Plaintiffs alleged other legal remedies that would prohibit an equitable remedy. The only other claim that has survived against Agency

Defendants is the VPPA claim. And the only relief available under the VPPA is the award of statutory damages. 18 U.S.C. § 2710(c)(2). A VPPA claim can form the basis of the unfair prong of the UCL, meaning the UCL claim does not need to be brought as an alternative remedy. *See Ade v. Viki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) (A VPPA claim "may support a UCL claim under the statute's unlawful prong."). And even if Plaintiffs had an adequate legal remedy—they do not—precluding allegations of "both legal and equitable claims at this early stage would be inconsistent with the practice of allowing pleadings in the alternative." *Aesha v. State Farm Gen. Ins. Co.*, No. 5:24-CV-00850-HDV-DTB, 2024 WL 5410447, at *5 (C.D. Cal. July 30, 2024). And "there are no requirements to include the magic words 'in the alternative' in making alternative claims." *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).

Moxy cites *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), arguing it requires Plaintiffs to allege that they have no adequate remedy at law.[7] Dkt. 267 at 27. But *Sonner* merely states that "a plaintiff must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner*, 971 F.3d at 844. The plaintiff in *Sonner* strategically dismissed her damages claim at law several years into litigation and immediately before the scheduled jury trial, and was warned by the court and defendant that her UCL claim would likely be dismissed because she had an adequate remedy at law.

---

[7] If Moxy's complaint is one of form—that Plaintiffs do not include the language "no adequate remedy at law" to the UCL cause of action—Plaintiffs should be given leave to add that language.

*Id.* at 838. If anything, *Sonner* stands only for the premise that plaintiffs cannot self-select equitable claims rather than viable legal claims. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 638 (N.D. Cal. 2020) (finding facts of *Sonner* inapposite on motion to dismiss "where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury").

Moxy's argument also misses the mark because Plaintiffs have not alleged a claim for actual damages. Moxy erroneously argues that "[t]hroughout the 4AC, they seek to recover monetary damages based on the very same alleged conduct." Dkt. 267 at 27. But the only relief Plaintiffs seek against the Agency Defendants, including Moxy, are statutory damages and punitive damages under the VPPA and restitution under the UCL. 4AC ¶¶ 594, 636. Tellingly, Moxy does not state where in the 4AC Plaintiffs seek actual damages or what cause of action against the Agency Defendants would entitle them to actual damages. Moxy's cited cases are all inapposite because the plaintiffs in those cases also alleged a cause of action that would provide an adequate remedy at law. *See Copelan v. Infinity Ins. Co.*, 359 F. Supp. 3d 926, 930 (C.D. Cal. 2019) ("Plaintiff alleged causes of action which, if successful, would have provided an adequate remedy at law."); *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639 JLS (MSB), 2020 WL 4281990, at *10 (S.D. Cal. Feb. 25, 2020) (dismissing UCL claim where adequate legal remedy was sought). Here, Plaintiffs do not have a cause of action, nor have they alleged a cause of action, that would provide them an adequate remedy at law.

**3. Plaintiffs have alleged a UCL claim under the unlawful prong.**

The unlawful prong of the UCL "'borrows' violations of other laws and makes them independently actionable under the UCL," including the VPPA. *In re Nat'l W. Life Ins. Deferred Annuities Litig.,* 268 F.R.D. 652, 667 (S.D. Cal. 2010) (citing *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180–81(1999)); *see also Ade*, 2024 WL 1880153, at *4 (VPPA claim). Here, the Court has already determined Plaintiffs have alleged a VPPA violation (Dkt. 251 at 28), and, as shown above, nothing has changed that would dictate dismissal of that claim.

The California Plaintiffs also have standing to bring their UCL claim under the unlawful prong. Moxy argues that Plaintiffs fail to allege that they suffered an injury besides statutory damages, and that any injury they allege relates only to the unfair prong of the UCL. It is enough for a plaintiff to allege that they would not have subscribed or paid for services if they knew their PII would be disclosed to a third party. *See Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (finding allegation "that if Patreon had disclosed the manner in which it shared user data with Facebook, [plaintiffs] would not have paid Patreon subscription fees, or at least not in the same amounts" sufficient to survive motion to dismiss); *Kishore v. Times Internet (UK) Ltd.*, No. 23-CV-03594-HSG, 2024 WL 4197619, at *3 (N.D. Cal. Sept. 12, 2024) (finding that paying "more for defendant's services than they otherwise would have had they known defendant was disclosing [their] video viewing information to unauthorized third parties" was sufficient for standing under the UCL (citation modified)); *cf. Ade*, 2024 WL 1880153, at *4 (granting leave to amend UCL claim to add economic injury, finding VPPA claim may support UCL

claim, but plaintiffs failed to allege they "paid [defendant] to use its services"). The California Plaintiffs specifically allege that they expected their information to remain private, and that had they known of the Chatter Scams or that their personal information was being shared with Chatters, they would not have subscribed or paid those Premium Content Fees. 4AC ¶¶ 441–44, 454–56, 461–72, 478, 482–86. Plaintiffs further allege that the disclosure of PII was done to facilitate the Chatter Scams and that they were injured as a result, seeking recovery of statutory damages and lost money. 4AC ¶¶ 581, 591, 594, 635–36. Moxy's cited case is inapposite (Dkt. 267 at 29), as the plaintiff there did not allege any other injury other than a statutory violation. *See Pepper v. Charitable Res. Found., Inc.*, No. 2:14-cv-02573-SVW-FFM, 2014 WL 12961327, at *7 (C.D. Cal. Oct. 14, 2014) (statutory damages alone are not a basis for injury under the UCL). At worst, Plaintiffs' allegations of injury are found throughout the 4AC and not stated directly in the UCL claim. But as those allegations are already present and incorporated by reference in the UCL claim (4AC ¶ 622), Moxy's argument is, at best, one of form over substance and the UCL claim has been properly alleged.[8]

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Moxy Management's Motion to Dismiss.

---

[8] If the only error is that the allegations of injury are not directly in the UCL claim, Plaintiffs should be given leave to add that small amendment, as it does not change any of the existing allegations in the 4AC.

DATED: September 1, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice)*
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (*pro hac vice*)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215) 540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

Jonathan Shub (SBN 237708)
SHUB JOHNS & HOLBROOK LLP
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 477-8380
Email: jshub@shublawyers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,067 words, which complies with the word limit of L.R. 11-6.1. The undersigned also certifies that all citations were checked and accurately reflect the propositions put forth, which complies with this Court's Order entered on December 12, 2025 (Dkt. 207).

Dated: September 1, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey