Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

*Counsel for Plaintiffs*

*(Additional Counsel on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a Siren Agency), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),<br><br>Defendants. | Case No. 8:24-cv-01655-FWS-SSC<br><br>**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO CERTAIN AGENCY DEFENDANTS' MOTIONS TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Judge: Hon. Fred W. Slaughter<br>Courtroom: 10D<br>Date: October 22, 2026<br>Time: 10:00 a.m. |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Verge again fails to establish that this is not the proper forum. ..... 1

1. Verge is not a party to the TOS and was expressly excluded from asserting rights based on the TOS. ..... 3

2. There remains no basis to apply the TOS to Verge under the closely related doctrine. ..... 3

B. Plaintiffs have adequately alleged a VPPA claim against Verge. ..... 7

1. Plaintiffs' Fourth Amended Complaint establishes that Verge disclosed personally identifiable information. ..... 8

2. Chatter Scams are not part of Verge's ordinary course of business. ..... 10

C. Content X's, and Unruly and Behave's Joinders are without merit. ..... 11

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer v. NBCUniversal Media, LLC*,
794 F. Supp. 3d 716 (C.D. Cal. 2025) ........ 7

*Bromlow v. D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ........ 6

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ........ 2

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 8

*Hua Nan Com. Bank v. HSBC Bank USA, N.A.*,
No. CV 10-8773 PSG (EX),
2011 WL 13217782 (C.D. Cal. May 19, 2011) ........ 6

*In re Hulu Privacy Litigation*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ 9

*JH Portfolio Debt Equities, LLC v. Garnet Capital Advisors, LLC*,
No. 2:17-CV-08839-CAS(JCx),
2018 WL 6112695 (C.D. Cal. Mar. 16, 2018) ........ 5

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) ........ 4, 5

*Pirozzi v. Fiserv Corp.*,
668 F. Supp. 3d 968 (C.D. Cal. 2022) ........ 5

**Statutes**

18 U.S.C. § 2710 ........ 7, 9, 10

**Rules**

C.D. Cal. L.R. 7-18 ........ 2

## I. INTRODUCTION

Defendants Verge Agency, Inc. ("Verge"), Content X, Inc. ("Content X"), Unruly Agency LLC ("Unruly"), and Behave Agency LLC ("Behave") (collectively, "Agency Defendants") move to dismiss the Fourth Amended Class Action Complaint ("4AC") (Dkt. 262). Dkts. 271–274, 276. Despite the Court previously finding that the non-California Plaintiffs' claims were not subject to the forum selection clause in the Fenix TOS and that Plaintiffs have a VPPA claim against Verge, Verge now improperly asks the Court to do so. But Verge does not provide any basis for the Court to reverse its earlier decision. The Court should deny Verge's motion. Content X, Unruly, and Behave also join the arguments made by the other Defendants. But as each of those Motions fails, those Joinders also fail.[1]

## II. ARGUMENT

### A. Verge again fails to establish that this is not the proper forum.

Verge offers no new arguments, and makes no effort to address the arguments raised by Plaintiffs that the Court relied on in its May 19, 2026 Order ("May 19 Order") (Dkt. 251). Instead, Verge uses its brief to remind the Court that, when it was faced with different facts, different arguments, and different caselaw, it reached a different outcome. Instead of addressing any of the arguments advanced by Plaintiffs in their Opposition to Verge's Motion to Dismiss the Second Amended Complaint ("Verge SAC Opposition"), which the Court accepted in its May 19

[1] Unless otherwise defined herein, Plaintiffs adopt and use the definitions and capitalized terms from the 4AC. Plaintiffs also incorporate by reference their oppositions to Dkts. 266 and 267.

Order, Verge relies on conclusory assertions that Plaintiff A.L.'s allegations are "'closely related' to the Terms of Service" (Dkt. 271 at 6) and, thus, Verge should be able to enforce the TOS's forum selection clause. Yet, Verge has no rights under the TOS—that contract explicitly says as much.

Indeed, the only new case cited by Verge does not relate to forum selection clauses at all, but rather the Court's power to reconsider its own interlocutory order. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) ("A district court therefore retains jurisdiction over an interlocutory order—and thus may reconsider, rescind, or modify such an order—until a court of appeals grants a party permission to appeal."). At the same time, Verge makes no attempt to meet the high standard for reconsideration. In order for this Court to reconsider its prior ruling, Verge must show that there has been (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. C.D. Cal. L.R. 7-18. Verge has not tried to meet this standard, because it cannot. Rather than pointing to new facts, Verge admits that the facts have not substantively changed. (Dkt. 271 at 6). Verge fails to meet the standard for reconsideration. As such, Verge's Motion should be denied on that basis alone.

Even if the Court reaches the merits of Verge's briefing (it need not), Verge provides no justification for the Court to abandon the reasoning underlying its May

19 Order. In the Verge SAC Opposition, Plaintiffs raised five reasons outlining why Verge and the other Agency Defendants could not invoke the forum selection clause, which apply with equal force as to the 4AC. Dkt. 233. The five reasons are reiterated below. These arguments, and the new allegations in the SAC, are what caused the Court to reverse its position as to enforcing the forum selection clause against Verge. (Dkt. 251 at 7 n.3). Verge has failed to rebut these arguments. As such, there is no basis to apply the forum selection clause to Plaintiffs' claims against Verge.

**1. Verge is not a party to the TOS and was expressly excluded from asserting rights based on the TOS.**

**First**, Verge is not a party to the standard contract between Fans and Creators ("Fan-Creator Contract" or "Contract") and thus cannot receive benefits under a contract from which it is explicitly excluded. Verge's argument is contrary to the plain language of the TOS, which explicitly excludes Verge from asserting rights based on the TOS, stating, "[y]our agreement with us does not give rights to any third parties." (4AC ¶ 221). The Court's May 19 Order was consistent in its interpretation of this language, making clear that neither the Agency Defendants nor the Plaintiffs could claim third-party rights to the TOS. In dismissing Plaintiffs' claim for breach of contract regarding third-party beneficiary of TOU, the Court found that the TOS contains "express language manifesting an intent not to create third-party rights." (Dkt. 251 at 33). So too here.

**2. There remains no basis to apply the TOS to Verge under the closely related doctrine.**

Despite this plain language, Verge argues that the TOS applies to non-California Plaintiffs' claims because the Court previously dismissed Plaintiffs'

RICO claims against Verge, finding that "Plaintiffs' claims are logically or causally connected to the Terms of Service." (Dkt. 271 at 7; Dkt. 209 at 31). Verge does not address the difference between RICO claims—which alleged coordinated actions between Verge and Fenix—and the remaining claims against Verge which are based exclusively on Verge's actions. Verge simply makes conclusory statements of close relatedness; it does not actually engage in any analysis of the current claims against it and how they supposedly closely relate to a TOS which explicitly bars third party enforcement rights.

Moreover, and as the Court held in its May 19 Order, the cases relied on by Verge do not support a finding that the forum selection clause applies here for four additional reasons.

**First**, the case law cited by Verge involves sophisticated defendants—mostly large corporations who negotiated a contract with a forum selection clause—and courts requiring their related corporate entities or executives to litigate in the same forum as the corporate defendant that negotiated and agreed to the forum selection clause. Here, the non-California Plaintiffs are ordinary consumers, not a sophisticated corporation, who never "negotiated" a forum selection clause when they entered an adhesion contract with OnlyFans, a non-party to the claims asserted by the non-California Plaintiffs. The non-California Plaintiffs have no claims against the Fenix Defendants. Their claims are limited to claims against the Agency Defendants, each based in California. As such, there is no "closely related" contract to apply, let alone one negotiated at arm's length by related entities. Verge, moreover, is not a party to the TOU or a related entity under the contract. The case law cited by Verge has no application here. In *Manetti-Farrow, Inc. v. Gucci*

*America, Inc.*, the parties to the agreement were two sophisticated corporations who distributed and sold Gucci-branded luxury products, each of whom expressly negotiated and agreed to the forum selection clause. 858 F.2d 509, 514–15 (9th Cir. 1988). The non-signatories subject to the forum selection clause were related "Gucci" corporations—including Gucci America who signed a consent and ratification agreement, consenting to the terms of the contract—and executives of the Gucci conglomerate with obvious ties to Italy or located in Italy, the forum selected by the corporations. *Id*. at 510–11. In contrast, here, Verge is expressly excluded from the agreement, including the forum selection clause. Further, unlike the plaintiffs in *Manetti-Farrow*, Plaintiffs here (1) never negotiated the forum selection clause, (2) did not breach the contract giving rise to the claims, and (3) have no relationships with the chosen forum. *Manetti-Farrow* has no application here.

Verge cites two additional cases to support its position, but each suffers from the same infirmity. In *JH Portfolio Debt Equities, LLC v. Garnet Capital Advisors, LLC*, the court applied a forum selection clause to a sophisticated corporation who negotiated the clause where the corporation was a signatory to the clause, finding that the plaintiff's claims were closely related to the claims arising from contract because they were "premised on [Defendant's] acts and omissions that induced [plaintiff] to enter into" the contract containing the forum selection clause. No. 2:17-CV-08839-CAS(JCx), 2018 WL 6112695, at *5 (C.D. Cal. Mar. 16, 2018) ("As signatory to Section 12.13 – the forum selection clause – it appears that Garnet may properly enforce it."). *See also Pirozzi v. Fiserv Corp*., 668 F. Supp. 3d 968, 973–74 (C.D. Cal. 2022) (applying clause to related corporate entities and

executive who signed the contract for his corporation while emphasizing reluctance to upset agreement between commercial parties). Verge has not cited any case law involving non-commercial parties, akin to Plaintiffs.

**Second**, the closely related doctrine applies when it is reasonably foreseeable for a party to litigate in the chosen forum when asserting claims against a party. *See Hua Nan Com. Bank v. HSBC Bank USA, N.A.*, No. CV 10-8773 PSG (EX), 2011 WL 13217782, at *11 (C.D. Cal. May 19, 2011) (relationship must be "so close as would make it reasonably foreseeable" the clause would be enforced); *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020) ("Non-signatories are typically bound by (or may avail themselves of) forum-selection clauses in circumstances where they have an agency relationship of some kind with a signatory or the signatory is a predecessor-in-interest."). Here, the TOS excluded Verge and all other Agency Defendants from asserting rights under that contract, meaning no reasonable consumer would expect to litigate against the Agency Defendants in the U.K., as there was no basis to do so. Any reasonable consumer—such as the non-California Plaintiffs—would expect to sue the Agency Defendants in California, Verge's home state, or their own home state.

**Third**, Plaintiffs remain unaware of any case law applying the closely related doctrine to contracts of adhesion in a consumer context where the party seeking to enforce the clause is excluded from the contract. Verge cites multiple cases, none of which apply to an adhesion contract in a consumer transaction, especially ones involving relatively low-dollar claims. Furthermore, each case cited by Verge involves sophisticated corporate entities, or employees, who knew or should have

reasonably foreseen that they would be forced to litigate in the chosen forum. The cases have no application here.

**Fourth**, applying the forum selection clause to the non-California Plaintiffs' claims would be contrary to public policy because: (1) it would eviscerate the rights of consumers to file suit against the Agency Defendants for any interaction tangentially involving the Fenix Defendants; (2) the application of the clause to the non-California Plaintiffs would, in reality, mean that individual consumers could not file a claim, not that they would litigate in the U.K.; (3) granting Verge's Motion would give them the ability to commit any bad act they wish without repercussion, so long as the violation is less than the cost of litigation; and (4) it would be unreasonable to force consumers to litigate in the U.K. based on a Contract that does not apply or give rights to Verge, a Delaware corporation with its principal place of business in California, with no known connection to the U.K.

### B. Plaintiffs have adequately alleged a VPPA claim against Verge.

Even though the Court has already held that Plaintiffs sufficiently alleged a VPPA claim against Verge, Verge once again argues that Plaintiffs' VPPA claim should be dismissed. The VPPA "requires a plaintiff to allege that '(1) a defendant is a video tape service provider; (2) the defendant disclosed personally identifiable information concerning any customer to any person; (3) the disclosure was made knowingly; and (4) the disclosure was not authorized by § 2710(b)(2).'" *Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 720 (C.D. Cal. 2025) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1063 (9th Cir. 2015)). This Court previously held that the Agency Defendants, including Verge, are video tape service providers. Dkt. 209 at 33. The Court has also already held the Agency Defendants disclosed

personally identifiable information ("PII") to third parties, the disclosures were made knowingly, and were not authorized. Dkt. 251 at 28. Therefore, the Court has already held that Plaintiffs have adequately alleged a VPPA claim against Verge. Dkt. 251 at 37. Verge's repeated attempts to reargue the Court's findings as to the VPPA claim are meritless.

**1. Plaintiffs' Fourth Amended Complaint establishes that Verge disclosed personally identifiable information.**

Plaintiffs do not dispute the fact that the 4AC does not contain allegations that Plaintiffs R.M., N.Z., S.M., and B.L. subscribed to Creators managed by Verge. Plaintiff A.L. has subscribed to a Verge Creator and sufficiently alleged a VPPA claim against Verge despite Verge's arguments to the contrary. Plaintiffs have filed a Motion for Leave to Amend the Fourth Amended Complaint and if Plaintiffs are allowed to do so, that Amended Complaint will include an additional Plaintiff who subscribed to a Verge Creator which will lend further support to Plaintiffs' VPPA claim against Verge.

Verge cites to *Eichenberger v. ESPN, Inc.*, as did the Court in its May 19 Order, for the Ninth Circuit interpretation that PII means "information that would 'readily permit an ordinary person to identify a [particular individual as having watched certain videos].'" 876 F.3d 979, 985 (9th Cir. 2017). The Court has already held that Plaintiffs have adequately alleged facts to support the finding that "Agency Defendants… knowingly disclosed PII." Dkt. 251 at 28. The Court's findings include Verge as an Agency Defendant. Further, the Court noted additional facts that Plaintiffs shared personal information in chats with Creators, including their full legal name and photos of their face, how the Chatter Scams function, the specific content the Plaintiffs requested and/or viewed, that the agencies including

Verge allowed Chatters access to the Creator Accounts – either directly or via the CRM software, and Plaintiffs' PII was disclosed to other people. *Id*.

Verge also argues that Plaintiffs' VPPA claim fails because Plaintiff A.L. never alleged that he requested or viewed videos from a Creator managed by Verge. Verge is incorrect in this assertion. Under the VPPA, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). As alleged in the 4AC, Plaintiff A.L. subscribed to Verge-managed Creators and requested and viewed videos, including paying for digital content and Premium Content Fees. 4AC at ¶¶ 195–199, 430, 525, 530, 580, and 584-585. This includes specific allegations that Plaintiffs requested and viewed videos sent via Verge's Chatters. 4AC at ¶ 530. Verge cites *In re Hulu Privacy Litigation*, but there "[t]he user's identity and that of the video material were transmitted separately." 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015). Here, Plaintiffs allege that the disclosure of names and faces and the video viewing history all occurred within the direct messages with Creators and that communication history was all viewable by the Chatters. 4AC ¶¶ 575–581. Plaintiffs further allege that their video viewing history was stored by OnlyFans and accessible by Creators. *Id*. ¶ 584. As the Court found, this is sufficient to connect the Plaintiffs' identities with the specific videos and viewing history required by the VPPA. Dkt. 251 at 28.

Verge further argues that the 4AC lacks sufficient factual allegations as to the types of information Plaintiff A.L. furnished and as to the videos he requested or obtained from a Verge Creator. As the Court noted in its May 19 Order "a claim is facially plausible where 'the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Dkt. 251 at 10 (citing cases). Based on this standard, the Court has already held that Plaintiffs have adequately alleged a VPPA claim against Verge including that Verge knowingly disclosed PII. The same allegations that the Court based its decision on exist in the 4AC. Verge's arguments to the contrary fail.

**2. Chatter Scams are not part of Verge's ordinary course of business.**

Again, despite a clear Order from the Court, holding that Verge's knowing disclosure of consumer PII does not fall under the ordinary course of business exception (Dkt. 251 at 28), Verge attempts to argue otherwise. Under the VPPA, a video service provider may disclose PII for certain enumerated reasons, including if it is in the ordinary course of business. 18 U.S.C. § 2710(b)(2)(E). "[T]he term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). Dkt. 251 at 28. Verge argues that Chatter Scams are part of its ordinary course of business in providing managerial services to Creators. The Court's May 19 Order states that Agency Defendants' ordinary business practice is managing Creators. So, Verge is now arguing the Chatter Scams fall under the category of managing Creators to make this argument. But as the Court noted in its May 19 Order, the unlawful operation of the Chatter Scams is not part of the Agency Defendants' ordinary course of business. Dkt. 251 at 28. Further, Chatter Scams do not fall under any of the four stated activities that § 2710(a)(2) defines as an ordinary course of business activity. Therefore, Verge's argument fails.

**C. Content X's, and Unruly and Behave's Joinders are without merit.**

Content X, Unruly, and Behave join in the motions made by the other Agency Defendants (Dkts. 272, 274), but provide no independent basis or facts for applying the forum selection clause, dismissing the VPPA claim, or dismissing the UCL claim. Plaintiffs incorporate by reference their arguments in response to the motions submitted by Elite Creators LLC, Moxy Management, and Verge. Content X's, and Unruly and Behave's Joinders should be denied for the reasons set forth in those responses.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants Content X, Inc.'s, Verge Agency, Inc.'s, and Unruly Agency LLC and Behave Agency LLC's Motions to Dismiss.

DATED: September 1, 2026 Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By /s/ *Robert B. Carey*

Robert B. Carey (*pro hac vice)*
Leonard W. Aragon (*pro hac vice*)
Michella A. Kras (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
leonarda@hbsslaw.com
michellak@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP

301 N. Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: christopherp@hbsslaw.com

Andrea R. Gold (*pro hac vice*)
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com

Keith T. Vernon (*pro hac vice*)
TIMONEY KNOX LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Facsimile: (215) 540-2643
Email: kvernon@timoneyknox.com

Andrew W. Knox (*pro hac vice*)
TIMONEY KNOX LLP
400 Maryland Ave.
Fort Washington, PA 19034
Phone: (215) 540-2643
Facsimile: (215) 540-2643
Email: aknox@timoneyknox.com

Andrew C. Stone (*pro hac vice*)
Seth T. Goertz (*pro hac vice*)
DORSEY & WHITNEY LLP
2325 E Camelback Road, Suite 300
Phoenix, AZ 85016
Phone: (602) 735-2691
Facsimile: (602) 926-2471
Email: stone.andy@dorsey.com
goertz.seth@dorsey.com

Jonathan Shub (SBN 237708)
SHUB JOHNS & HOLBROOK LLP

200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 477-8380
Email: jshub@shublawyers.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3,024 words, which complies with the word limit of L.R. 11-6.1. The undersigned also certifies that all citations were checked and accurately reflect the propositions put forth, which complies with this Court's Order entered on December 12, 2025 (Dkt. 207).

Dated: September 1, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP
*/s/ Robert B. Carey*
Robert B. Carey