JASON D. RUSSELL (SBN 169219)
jason.russell@davispolk.com
HILLARY A. HAMILTON (SBN 218233)
hillary.hamilton@davispolk.com
DAVIS POLK & WARDWELL LLP
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and Fenix Internet LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiff,

v.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC (d/b/a SIREN AGENCY), MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC (d/b/a CREATORS INC.),

Defendants.

CASE NO.: 8:24-cv-01655-FWS-SSC

**DEFENDANTS FENIX INTERNATIONAL LIMITED'S AND FENIX INTERNET LLC'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS COUNTS II AND III OF THE FOURTH AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Hearing: October 22, 2026
Time: 10:00 a.m.
Courtroom: 10D
Judge: Hon. Fred W. Slaughter

## TABLE OF CONTENTS

PAGE


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Plaintiffs Ignore The Law And The Terms Establishing That §230 Bars Their Claims .......... 2

A. Plaintiffs Do Not And Cannot Refute FIL's Showing That They Allege No Specific "Enforceable Promise" Separate From FIL's Publisher Status .......... 2

B. Plaintiffs' Allegations Are Intertwined With FIL's Publisher Status .......... 4

C. Plaintiffs Cannot Counter FIL's Showing The Alleged "Tools" Provided Are Content-Neutral And Designed For All Creators .......... 7

II. Plaintiffs' Claims Are Barred By Express Provisions In The Terms .......... 10

A. Consistent With California Law, The Terms Preclude Plaintiffs' "Reasonable Care and Skill" Breach of Contract Claim .......... 10

1. Plaintiffs Mischaracterize FIL's Disclaimers And Their Own Claims .......... 11

2. Plaintiffs' Statutory Interpretation Arguments Contradict Their Own Authority .......... 12

3. Plaintiffs' Reliance On "Promises" Made By Users *To FIL* Are Unavailing .......... 15

B. Plaintiffs Cannot Overcome The Flaws In Their Implied Covenant Claim .......... 18

CONCLUSION .......... 22

CERTIFICATE OF COMPLIANCE .......... 23

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES

*In re Apple In-App Purchase Litigation*,
855 F.Supp.2d 1030 (N.D. Cal. 2012) .......... 20, 21

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......... 2, 3

*Boghos v. Certain Underwriters at Lloyd's of London*,
36 Cal.4th 495 (2005) .......... 12, 13

*Bouck v. Meta Platforms, Inc.*,
No. 25-cv-05194-RS,
2026 WL 810036 (N.D. Cal. Mar. 24, 2026) .......... 8, 15, 16, 18, 19

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) .......... 10

*Carma Developers (California), Inc. v. Marathon Development California, Inc.*,
2 Cal.4th 342 (1992) .......... 21

*Cholla Ready Mix, Inc. v. Civish*,
382 F.3d 969 (9th Cir. 2004) .......... 9

*Darnaa, LLC v. Google LLC*,
756 F. App'x 674 (9th Cir. 2018) .......... 14

*Davis v. Farmers Insurance Group.*,
134 Cal.App.4th 100 (2005) .......... 13

*Doe 1 v. Meta Platforms, Inc.*,
174 F.4th 1159 (9th Cir. 2026) .......... 4

*Doe v. Epic Games, Inc.*,
435 F.Supp.3d 1024 (N.D. Cal. 2020) .......... 20

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) .......... 6, 7

*Doe v. Meta Platforms, Inc.*, No. 25-CV-09762-JST, 2026 WL 2225477 (N.D. Cal. Aug. 3, 2026) ....... 5

*Doe v. Webgroup Czech Republic, AS, et al.*, No. 25-2424, 2026 WL 2334146 (9th Cir. Aug. 12, 2026) ....... 8

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ....... 6

*Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ....... 20

*Forrest v. Meta Platforms, Inc.*, 737 F.Supp.3d 808 (N.D. Cal. June 17, 2024) ....... 8

*Goddard v. Google, Inc.*, 640 F.Supp.2d 1193 (N.D. Cal. 2009) ....... 3

*Great American Insurance Co. v. Weitz Co., LLC*, No. 25-CV-02079-LJC, 2026 WL 346683 (N.D. Cal. Feb. 6, 2026) ....... 12

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) ....... 6

*Jackson v. Suzuki Motor of America, Inc.*, No. 8:23-CV-02189-FWS-JDE, 2024 WL 5379202 (C.D. Cal. Nov. 21, 2024), *aff'd*, 2026 WL 2137693 (9th Cir. July 24, 2026) ....... 9

*JEB Group, Inc. v. San Jose III*, No. CV 19-04230-CJC(AGRX), 2020 WL 2790012 (C.D. Cal. Mar. 31, 2020) ....... 18, 19

*Khan v. Twitter, Inc.*, No. 23-CV-00816-SI, 2023 WL 6466201 (N.D. Cal. Oct. 3, 2023) ....... 15, 17, 18

*Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) ....... 7

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021) ....7

*LevelFields, Inc. v. Reddit, Inc.*,
No. 3:2024-CV-02760
2024 WL 5161951 (N.D. Cal. Dec. 17, 2024) ....10

*Ligon v. Meta Platforms, Inc.*,
No. 25-CV-03959-RMI,
2026 WL 1146091 (N.D. Cal. Apr. 28, 2026) ....2, 21

*Locke v. Warner Brothers, Inc.*,
57 Cal.App.4th 354 (1997) ....21, 22

*Monaco v. Bear Stearns Residential Mortgage Corp.*,
554 F.Supp.2d 1034 (C.D. Cal. 2008) ....13

*Murphy v. LinkedIn Corp.*,
No. 25-CV-04036-EKL,
2026 WL 881710 (N.D. Cal. Mar. 30, 2026) ....3

*New England Country Foods, LLC v. Vanlaw Food Products, Inc.*,
17 Cal.5th 703 (2025) ....14

*Padilla v. Medline Industries, Inc.*,
No. 5:25-CV-02254-FWS-SP,
2025 WL 3190652 (C.D. Cal. Oct. 1, 2025) ....19

*Perdue v. Crocker National Bank*,
38 Cal.3d 913 (1985) ....21

*Pez Seafood DTLA, LLC v. Travelers Indemnity Co.*,
514 F.Supp.3d 1197 (C.D. Cal. 2021) ....13

*Sifuentes v. Meta Platforms, Inc.*,
No. 25-CV-04479-JST,
2026 WL 1143542 (N.D. Cal. Apr. 28, 2026) ....10

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001),
*op. amended*, 275 F.3d 1187 (9th Cir. 2001) ....9

*Suddeth, et al v. Meta Platforms, Inc.*, No. 25-CV-08581-RS, 2026 WL 2351231 (N.D. Cal. Aug. 13, 2026) ....................5, 8, 15

*The Manning Group LLC v. Neudesic LLC*, No. 8:23-CV-01997-FWS-KES, 2024 WL 3543472 (C.D. Cal. May 14, 2024) ....................18

*Wasjutin v. Countrywide Bank N.A.*, No. CV 15-09401-MWF-JC. 2016 WL 7443219 (C.D. Cal. June 8, 2016), *aff'd*, 732 F. App'x 513 (2018) ....................19

*Williams v. Apple, Inc.*, 449 F.Supp.3d 892 (N.D. Cal. 2020) ....................13

*Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL 5493823 (N.D. Cal. Aug. 23, 2023), *aff'd*, 2025 WL 66050 (9th Cir. Jan. 10, 2025) ....................15

**STATUTES**

California Civil Code §1641 ....................12, 13, 14, 18

California Civil Code §1643 ....................18

California Civil Code §1668 ....................14, 15

## PRELIMINARY STATEMENT

Plaintiffs' Opposition "concede[s]" at the outset that Plaintiffs state no claims against Fenix Internet, and it can be dismissed from the action with prejudice. (ECF 281, "Opp'n," PageID#7211 n.2.) The remainder of Plaintiffs' Opposition compels the same result for FIL. Plaintiffs have had five attempts to state a claim. They do not deserve a sixth.[1]

Plaintiffs argue that this Court has already considered and rejected FIL's §230 arguments. (Opp'n, PageID#7212-14.) Not so. Plaintiffs ignore that the Court has yet to consider their *amended* allegations now that Plaintiffs must confine their remaining two claims exclusively to FIL's general "promise to 'use reasonable care and skill in providing OnlyFans'" and FIL's "conduct in designing and operating the platform." (*Id.*, PageID#7212-13.) Plaintiffs redouble their efforts to disguise their claims in technical jargon but cannot avoid that they allege FIL broke its "promise to 'use reasonable care and skill'" solely by allowing Creators to use third-party agencies to assist in managing their OnlyFans accounts and interactions with Fans, while allegedly failing to monitor or prevent those Creators from using third parties to communicate with the Plaintiffs. These allegations constitute monitoring activity squarely within §230's immunity, and Plaintiffs' allegations that FIL "provid[ed] tools designed to facilitate" exclusively third-party communications (Opp'n, PageID#7232) are both unavailing and implausible. Most importantly, Plaintiffs cannot avoid that FIL expressly disclaims any liability for such activity, so Plaintiffs cannot show a promise separate from FIL's publishing activity. §230 therefore bars their claims.

Plaintiffs try to counter FIL's showing that the express provisions of the Terms

---

[1] Capitalized terms carry the same meaning they had in Fenix's Motion to Dismiss Counts II and III of Plaintiffs' 4AC (ECF 265, "Motion" or "Mot."). Unless otherwise noted, all emphasis is added, and all citations, brackets, and internal quotation marks are omitted from quoted material.

also bar their claims by asserting that FIL is taking the position that the "reasonable care and skill" clause is "not enforceable." (*See*, *e.g*., Opp'n, PageID#7228.) Wrong again. It is Plaintiffs' *interpretation* of that clause that is contrary to the language of the Terms and the law, and therefore unenforceable under Plaintiffs' own authority. Plaintiffs' attempts to willfully disregard the provisions in the Terms they agreed to (as well as this Court's previous Orders rejecting their claims) and to reframe their own allegations to avoid dismissal do not, and cannot, overcome FIL's showing that Plaintiffs' claims should be dismissed as a matter of law.

# ARGUMENT

## I. Plaintiffs Ignore The Law And The Terms Establishing That §230 Bars Their Claims

### A. Plaintiffs Do Not And Cannot Refute FIL's Showing That They Allege No Specific "Enforceable Promise" Separate From FIL's Publisher Status

FIL established in the Motion that an alleged "contract term related to a publishing activity does not properly form the basis for a contract claim where there is no manifest intent that the term should be enforceable—*[§]230(c)(1) applies even though the basis for liability is technically the contract rather than the publisher's status*." (Mot., PageID#6582-85 (collecting cases).) Plaintiffs simply ignore the Ninth Circuit and district court decisions collected and cited by FIL and have no answer to the careful analysis of Ninth Circuit precedent and reasoning in *Ligon v. Meta Platforms Inc.*, 2026 WL 1146091 (N.D. Cal. Apr. 28, 2026).

Plaintiffs also have no meaningful response to the oft-cited statement in *Barnes v. Yahoo!, Inc.* that "to avoid liability" for alleged promises in its website terms, a defendant "need only disclaim any intention to be bound." 570 F.3d 1096, 1108 (9th Cir. 2009). Plaintiffs' argument that their "claims are based on FIL's conduct in actively facilitating the use of [third-party agencies] and breaches of the [Terms], not content moderation" (*id*.) misses the point. The "reasonable care and skill" clause

cannot constitute an enforceable contractual promise independent of FIL's publisher status because—as Plaintiffs refuse to acknowledge—that provision *explicitly* carves out the same alleged "conduct" regarding third parties and "breaches" of the Terms as "certain things which [FIL] *are not responsible for*," including "the use which other [u]sers or third parties make" of content posted on OnlyFans. (Mot., PageID#6572-75, 6584-85.)

As its Terms make clear, FIL is "under no obligation to monitor Content or *to detect breaches of the Terms*… (including, in particular, our Acceptable Use Policy)," and FIL "may" but *is not obligated to* "moderate or review any… Content to verify compliance with the Terms… (including, in particular, our Acceptable Use Policy)" and "*may* take any action we consider appropriate." (*Id*.) As the court in *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193 (N.D. Cal. 2009)—another case cited by FIL but ignored by Plaintiffs—recognized, "to be a basis of liability for [FIL's] violation of its own [T]erms" and avoid §230, Plaintiffs' interpretation of the "reasonable care and skill" clause must be something Fenix "promises to abide by." *Id*. at 1200-01. Plaintiffs cannot make that showing.

Tellingly, Plaintiffs try to distinguish only *one* of the *ten* cases cited by FIL, suggesting the court in *Murphy v. LinkedIn Corp.*, 2026 WL 881710 (N.D. Cal. Mar. 30, 2026), found the breach claim arising from third-party fraudsters' use of the site barred by §230 for one reason: "because [plaintiffs] sought to 'hold LinkedIn liable solely based on its general monitoring policy and aspirations to remove fraudulent users from its platform.'" (Opp'n, PageID#7224 (quoting *Murphy*).) Plaintiffs' selective quotation omits a key holding of the *Murphy* opinion explicitly invoking *Barnes*: "LinkedIn expressly disclaims liability by notifying users" that some content may "'be inaccurate'" and LinkedIn "'generally does not review content,'" so that, under *Barnes*, §230 "*bars these claims*." 2026 WL 881710 at *3. As in *Barnes* and *Murphy*, FIL's contractual provisions likewise disclaim liability to monitor or prevent the exact conduct and policy "breaches" alleged here.

Because Plaintiffs cannot show FIL made a separate, enforceable promise independent of its publishing conduct, §230 bars Plaintiffs' remaining claims.

**B. Plaintiffs' Allegations Are Intertwined With FIL's Publisher Status**

Plaintiffs also ignore the recent Ninth Circuit and district court cases cited by FIL and this Court establishing that Plaintiffs' claims impermissibly require FIL to monitor and moderate Creator content. (Mot., PageID#6577-79 (collecting cases)). Plaintiffs only tackle the holding in *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159 (9th Cir. 2026) by claiming "[t]hat case, *unlike this one*, was 'about the content of third-party posts,'" while their allegations are purportedly confined to FIL's alleged "affirmative commercial conduct" in "soliciting" and allegedly "accommodat[ing] and actively court[ing]" agency involvement. (Opp'n, PageID#7216-18 (quoting *Doe I*).) Plaintiffs' argument is contrary to their allegations and their own authority.

*First*, the 4AC contradicts Plaintiffs' efforts to distance their allegations from *Doe* (and all the other FIL-cited authority that Plaintiffs ignore) and this Court's holding that §230 bars allegations "based on [FIL] permitting management agencies to use" third parties to communicate with Fans "because this theory of liability imposes a monitoring obligation on" FIL. (ECF 251, Second Order, PageID#5075.) Contrary to Plaintiffs' implausible contention that their claims are unrelated to third-party content, *every claim* is premised *entirely* on harm that Plaintiffs allegedly sustained when they exchanged messages with Creator accounts on the OnlyFans platform, but "were actually interacting with" third-parties represented by agencies engaged by those Creators. (*See, e.g.*, 4AC¶¶1-5, 16-17, 249-76, 326-487.)[2]

[2] Even Plaintiffs' self-serving summary of their claims establishes they are intertwined with third-party content: Plaintiffs allege FIL "engag[ed] with Creator agencies for commercial gain," "collect[ed] *data sufficient to identify [third-party]-operated* accounts," and provided "a suite of tools" and a "payout/verification infrastructure," which Plaintiffs implausibly assert served only Creators using agencies and third parties, as discussed below. (Opp'n, PageID#7219.)

As detailed in FIL's Motion, Plaintiffs seek to hold FIL responsible for that third-party content because the "reasonable care and skill" clause in the Terms purportedly meant FIL was *obligated* to (1) monitor Creator usage data and implement moderation methods to "identify" Creators using third parties to communicate with Fans and (2) punish those Creators by "enforc[ing]" the Terms—that is, suspending the Creators and removing their content. (Mot., PageID#6578-79 (citing 4AC¶¶320(c)-(d)599, 601-02, 613, 615-17).) To separate their claims from the "monitoring obligation" flagged by the Court, Plaintiffs' Opposition insists FIL can fulfill these purported obligations "without monitoring anyone," and Plaintiffs are merely "requir[ing] FIL to answer for the platform it built," but these vague assertions neglect to explain how FIL's publisher status is not implicated and how monitoring is not *per se* required to detect, prevent, and/or correct supposed problems with Creator content. (Opp'n, PageID#7217-18.)

Last month the *Suddeth v. Meta Platforms, Inc.* court rejected a near-identical argument asserting that ads created by the defendant website led to "a separate interaction between the victims and the scammers which caused [p]laintiffs' injury." 2026 WL 2351231, at *4 (N.D. Cal. Aug. 13, 2026). The court found §230 barred the claim because "[p]laintiffs' injury was not complete until the scammers populated the… chats with the offending posts and messages, and the only way for [defendant] to have prevented that *would have been to 'monitor third-party content and prevent' the scammers from posting those messages*." *Id*. (quoting *Grindr*); *see also Doe v. Meta Platforms, Inc.*, 2026 WL 2225477, at *1, 3 (N.D. Cal. Aug. 3, 2026) (§230 required dismissing with prejudice claims based on defendant's alleged lack of "a meaningful system to verify" individuals' consent to their images being posted by third parties, because platform allegedly "disseminat[ed] content created by someone else… a clear function of a publisher" and even if claim was not based on platform's publisher status, alleged duty not to disclose such images "would necessarily require [platform] to monitor third-party content"). The same reasoning applies with full force

here.

*Second*, unable to distinguish the *current* law, Plaintiffs rely on substantially older decisions, such as the inapposite *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019). (Opp'n, PageID#7213-14.) In an entirely different procedural posture, the plaintiff websites in *HomeAway.com* argued §230 preempted a city ordinance prohibiting short-term rentals, but the panel found the regulation at issue did "not require [plaintiffs] to monitor third-party content," but instead merely "prohibits processing transactions for unregistered properties"—that is, "requests to complete a booking transaction—content that, while *resulting from* the third-party listings, is distinct, internal, and nonpublic." 918 F.3d at 682 (emphasis in original). The regulation also did "not proscribe, mandate, or even discuss the content of the listings that [defendants] display on their website" or require defendants to remove "unbookable listings"—unlike here, the websites "face[d] *no liability for the content* of the bookings; rather, any liability arises only from unlicensed bookings." *Id*. at 683-84. For these reasons, as the *Dyroff* court observed, *HomeAway.com* "is of no help to Plaintiff[s]." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).

Plaintiffs' reliance on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) is equally misplaced. The single negligence claim at issue there alleged the defendant website failed to warn plaintiff about criminals luring models who posted on the website to fake auditions; the court expressly distinguished plaintiff's allegations from *the conduct alleged by Plaintiffs here*, noting she was *not* alleging defendant "fail[ed] to remove content posted on the websites" or "monitor postings," or even that the criminals "posted anything to the website." *Id*. at 851. Rather, plaintiff alleged the website "fail[ed] to warn her about information it obtained *from an outside source* about" the criminals, which did "not require [defendant] to remove any user content *or otherwise affect how it publishes or monitors such content*"—her claim "ha[d]

nothing to do with [defendant's] efforts, or lack thereof, to edit, monitor, or remove user[-]generated content." *Id*. at 851-52.

Plaintiffs also tenuously claim their contract claims are "analogous" to the negligent-design claim based on Snapchat's "speed filter" in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), purely because the word "design" appears twice in Plaintiffs' general allegation of FIL's "acts of design, construction, operation, and performance that facilitate the agencies' circumvention of the default one-user design." (Opp'n, PageID#7218 (quoting 4AC¶601).) According to Plaintiffs, "if the claim targets the website's 'design,' then the claim does not fall within §230's ambit." (*Id*., PageID#7218-19.)

Plaintiffs' spin turns Ninth Circuit law on its head and misreads *Lemmon*, which allowed the design-defect claim to proceed because "Snap could have satisfied its 'alleged obligation'—to take reasonable measures to design a product more useful than it was foreseeably dangerous—*without altering the content that Snapchat's users generate*." 995 F.3d at 1092. Unlike Plaintiffs' claims that FIL failed to detect, monitor, or prevent Creators' alleged use of third parties to communicate with Fans, the *Lemmon* plaintiffs' claim stood "independently of the content" on Snap's platform. *Id*. at 1093-94 (noting plaintiffs' "claim does not depend on what messages, if any, a Snapchat user employing the Speed Filter actually sends"). Contrary to Plaintiffs' dubious interpretation, they cannot "circumvent [§230]'s protections through 'creative' pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) "Were it otherwise, [§230] immunity could be avoided simply by" adding the word "design" to any claim against a website, but the law is clear that §230 cannot "be so casually eviscerated." *Id*. at 1268–69.

### C. <u>Plaintiffs Cannot Counter FIL's Showing The Alleged "Tools" Provided Are Content-Neutral And Designed For All Creators</u>

FIL collected and presented Ninth Circuit authority establishing that §230 applies to claims based on "a platform's provision of neutral tools for users to publish

content," even if those tools can be improperly "manipulated by third parties." (Mot., PageID#6579-81 (collecting cases).) After the Motion was filed (but before Plaintiffs' Opposition was due), the Ninth Circuit reiterated that where "neutral tools such as tags, keywords, search functions, recommendation algorithms, thumbnails, *revenue-sharing schemes*, VPN use, and *anonymized communication*… do not contribute materially to the illegality of" challenged content "or treat such content *differently than any other third-party created content*," platforms deploying those tools "are entitled to §230 immunity." *Doe v. WebGroup Czech Republic, AS*, 2026 WL 2334146, at *1 (9th Cir. Aug. 12, 2026) (affirming dismissal of claims).[3]

Plaintiffs address only three of the *eight* cases cited by FIL, offering the generic assessment that they "involve wholly distinct fact patterns where plaintiffs attempted to hold websites liable for monitoring third-party content"—but this factual distinction ignores both the reasoning of those cases (Mot., PageID#6579-81) and the content-based third-party conduct Plaintiffs are alleging here. *Supra* p.4.

Attempting to refute FIL's showing that the challenged tools are plainly content-neutral and benefit all Creators (*id.*, PageID#6580-81 (collecting cases)), Plaintiffs invoke the same jargon-laden allegations, but the Opposition's descriptions of the tools acknowledge that "mass messag[ing],"[4] "per-Fan spending and behavior

---

[3] Plaintiffs' heavy reliance on *Forrest v. Meta Platforms, Inc.*, 737 F.Supp.3d 808 (N.D. Cal. June 17, 2024) and *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036, at *1 (N.D. Cal. Mar. 24, 2026) as "instructive" (Opp'n, PageID#7222) ignores that, as the *Suddeth* court held in distinguishing the same decisions, "the core illegality about which the plaintiffs complained and from which their injuries flowed was contained in the ads that [defendant] allegedly helped create" in those actions, while "the alleged illegality here does not stem from the" alleged tools, "it stems from" third parties allegedly using the content-neutral tools to communicate with Plaintiffs. *Suddeth*, 2026 WL 2351231, at *5.

[4] Plaintiffs have no answer to—and concede—their contradictory allegation in the 4AC asserting the alleged messaging feature is provided by third-party software, not the OnlyFans platform. (Mot., PageID#6580-81& n.6.)

analytics" (which Plaintiffs concede means "spending habits") and "per-Fan notes fields that are tied to each Fan profile [to] *allow the Creators* to… document[] their Fan interactions" are admittedly content-neutral tools that Creators can use for engagement with Fans. (Opp'n, PageID#7220.)

Plaintiffs nonetheless assert that their allegations that such tools have "no plausible operational use for a Creator personally engaged with their own Fans in real time" should still be "taken as true." (*Id*., PageID#7219-20.) The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," but instead may "draw on its judicial experience and common sense." *Jackson v. Suzuki Motor of Am., Inc.*, 2024 WL 5379202, at *3 (C.D. Cal. Nov. 21, 2024) (Slaughter, J.) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (dismissing claims where plaintiffs "offer no facts that would justify reaching the conclusion that corrosion was the cause of their braking issues instead of another cause" and offered instead "speculation and conclusion")); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973, 975 (9th Cir. 2004) (affirming dismissal of claims where, *inter alia*, plaintiff "alleged no facts that would support a conclusion that the state defendants were not motivated *at least in part* by [a] secular purpose").[5]

Because Plaintiffs did not and cannot plausibly allege that FIL created and provided the alleged tools *exclusively* for Creators to use third-party agencies to assist in their communications with their Fans, §230 bars their claims.

[5] Contrary to Plaintiffs' insistence the Court should accept as true their allegations based on an English court decision involving agencies submitted as supplemental authority (Opp'n, PageID#7221), Plaintiffs do not attempt to refute FIL's showing that the decision wholly contradicts their claims, and instead shows FIL was neither party to nor aware of the explicitly *off-platform* agency activity alleged in that action. (Mot., PageID#6578 & n.5.) These allegations also need not be accepted as true. *Jackson*, 2024 WL 5379202, at *3 (court "need not… accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

## II. Plaintiffs' Claims Are Barred By Express Provisions In The Terms

### A. Consistent With California Law, The Terms Preclude Plaintiffs' "Reasonable Care and Skill" Breach of Contract Claim

FIL established that courts routinely dismiss breach claims where, as here, the "promises" as construed by plaintiffs are contradicted by other provisions in defendant's website terms, and Plaintiffs' breach claims premised on their interpretation of the "reasonable care and skill" clause in isolation should be dismissed because the Terms "expressly disclaim the[] alleged obligations" that Plaintiffs seek to impose. (Mot., PageID#6585-87 (collecting cases and quoting *Sifuentes v. Meta Platforms, Inc.*, 2026 WL 1143542, at *8 (N.D. Cal. Apr. 28, 2026))); *see also Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming dismissal of breach of contract claim because the claims were barred "by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties").

Plaintiffs counter that some (but not all) of those decisions "involve wholly distinguishable facts," but neglect to address those courts' conclusions dismissing breach claims where, as here, other website terms expressly disclaim liability for the conduct asserted in the claims. (Opp'n, PageID#7230-31.) In particular, Plaintiffs gloss over the *LevelFields* court's refusal to adopt plaintiffs' expansive interpretation of a provision promising the website would "use reasonable means to ensure" ad delivery when the same provision included express carveouts of liability. (*See* Mot., PageID#6585-87 (discussing *LevelFields, Inc. v. Reddit, Inc.*, 2024 WL 5161951 (N.D. Cal. Dec. 17, 2024).)

As FIL showed (but Plaintiffs ignore), the section of the Terms where Plaintiffs' "reasonable care and skill" snippet appears expressly provides "**What we are not responsible for**: We will use reasonable care and skill in providing OnlyFans to you, *but there are certain things which we are not responsible for*," and then expressly disclaims any FIL obligation to "authorize or approve Content on

OnlyFans," or review, moderate, or "monitor Content or *to detect breaches of the Terms of Service* (including the Acceptable Use Policy)." (Mot., PageID#6572-73 (quoting ECF 60-1, PageID#359-60 (bold emphasis in original)).) The same section also states FIL "*cannot control and will not be responsible* to you for the use which other Users *or third parties* make of" Content posted on the OnlyFans platform—including the alleged third-party communications that give rise to Plaintiffs' claims. (*Id*.)[6]

Plaintiffs ignore the Terms as well as the cases FIL cited and misapply basic principles of California contract law. As such, their arguments fail.

**1. <u>Plaintiffs Mischaracterize FIL's Disclaimers And Their Own Claims</u>**

Plaintiffs mischaracterize the "What we are not responsible for" provision as merely a single "disclaimer of responsibility for reviewing User Content" and then try to disguise their claims in another avalanche of technobabble, claiming their "theory concerns platform architecture, session and device controls, delegated-access design, payout/verification infrastructure, and FIL's own commercial dealings with agencies," purportedly wholly independent of "Content" or the conduct disclaimed in the precise provision they rely on. (Opp'n, PageID#7224-25 (emphasis omitted).) Plaintiffs' technical jargon cannot mask that their allegations essentially are that FIL had access to data suggesting Creators were using third parties to assist with their interactions with Fans, yet chose not to monitor Creator communications with users, prevent third parties from communicating with users, and/or "exercise" FIL's admittedly *discretionary* enforcement "powers" against Creators who allegedly

---

[6] Plaintiffs concede, as they must, that the Terms define "Content" as "*any material uploaded to OnlyFans by any User*… including any photos, videos… data, text…, images, interactive features… and *any other material whatsoever*"—which indisputably includes communications between users on the platform. (Opp'n, PageID#7225 (quoting ECF 60-1, PageID#354).)

breached the Terms by using third-party agencies. (Mot., PageID#6578-79 (citing 4AC¶¶599, 601-03, 605, 613, 615-17).)

Plaintiffs' tortured characterizations of the contractual provisions and their own claims overlook their argument that, in fact, their "claims are based on FIL's conduct in actively facilitating the use of [third-party agencies] *and breaches of the* [*Terms*]" (Opp'n, PageID#7223). The "**What we are not responsible for**" provision plainly disclaims any FIL liability for both.

### 2. Plaintiffs' Statutory Interpretation Arguments Contradict Their Own Authority

Plaintiffs also offer three brief and flawed statutory interpretation arguments. *First*, Plaintiffs wrongly contend the disclaimers included in the "**What we are not responsible for**" provision "swallow the ['reasonable care and skill'] promise" and "render[s] the… term meaningless" surplusage, contrary to California Civil Code §1641's requirement that "every part" of a contract should be "give[n] effect." (Opp'n, PageID#7225.) Plaintiffs cite no cases finding express disclaimers in website terms (or any contract) were surplusage. Rather, Plaintiffs' sole case *rejected* the same argument, finding no surplusage where a contract term "continues to have real effect" despite plaintiff's interpretation. *See Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503-04 (2005) (holding enforcement of insurance policy arbitration clause "according to its terms" did not render service of suit clause surplusage); *see also Great Am. Ins. Co. v. Weitz Co., LLC*, 2026 WL 346683, at *9 (N.D. Cal. Feb. 6, 2026) (finding no "surplusage issue" where dispute resolution provision "still plays a role" if defendant "elect[s] not to arbitrate claims"). Here, Plaintiffs' one-paragraph argument does not and cannot establish that the "reasonable care and skill" phrase is somehow deprived of "real effect" by, for example, FIL's disclaimers of liability for third-party conduct in the same provision. *Boghos*, 36 Cal.4th 495 at 503; (ECF 60-1, PageID#359-60).

Indeed, courts routinely reject similar attempts to "render [contractual] exclusion[s] meaningless." *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 514 F.Supp.3d 1197, 1208 & n.6 (C.D. Cal. 2021); *see also Davis v. Farmers Ins. Grp.*, 134 Cal.App.4th 100, 107 (2005) (where plaintiff's interpretation "improperly focuses on [one portion of exclusion] while ignoring the latter part of the exclusion, which sets forth examples of the type of defects that it encompasses," holding "plain meaning of the exclusion is [not] reasonably susceptible to [plaintiff's] interpretation because it renders the exclusion meaningless"). Here, Plaintiffs' proposed construction of the Terms "give[s] [no] effect" to FIL's express disclaimers and should therefore be rejected. *See* Cal. Civ. Code §1641 ("The whole of a contract is to be taken together, *so as to give effect to every part*, if reasonably practicable, each clause helping to interpret the other.") (cited by Plaintiffs).

*Second*, *Boghos* forecloses Plaintiffs' argument that the disclaimers render the contract "ambiguous." (Opp'n, PageID#7226.) The phrase "[w]e will use reasonable care and skill in providing OnlyFans to you, *but there are certain things which we are not responsible for*" (ECF 60-1, PageID#359-60) "clearly indicates" the conduct for which FIL was disclaiming liability. *Boghos*, 36 Cal.4th at 503. "No ambiguity exists" because "the parties intended the [express disclaimers] to apply… even if other provisions"—like the "reasonable care and skill" clause—"read in isolation, *might* seem to require a different result." *Id*.

As Plaintiffs' authority confirms, "[l]anguage in a contract must be interpreted *as a whole*." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008). "Where contract language is clear and explicit and does not lead to absurd results, [courts] ascertain intent from the written terms and go no further." *Williams v. Apple, Inc.*, 449 F.Supp.3d 892, 908 (N.D. Cal. 2020) (cited by Plaintiffs). A contractual provision is ambiguous "when it is capable of two or more *reasonable* interpretations" and thus "leaves doubt as to the parties' intent." *Monaco*, 554 F.Supp.2d at 1040; *Williams*, 449 F.Supp.3d at 908-09 (same). Here, Plaintiffs

do not—and cannot—offer any alternative *reasonable* interpretation of the plain meaning of the Terms; they instead argue the "reasonable care and skill" phrase should be considered in isolation, without regard for the qualifying language and disclaimers *in the very same provision* that establish the parties' intent. (ECF 60-1, PageID#359-60.) Plaintiffs also ignore the *other* provisions throughout the Terms expressly disclaiming FIL's liability for the same monitoring and third-party conduct. (*See* Mot., PageID #6573-75 (collecting Terms provisions).) Plaintiffs' failure to consider the Terms "as a whole" flies in the face of their own authority, including California Civil Code §1641.

*Third*, Plaintiffs look in vain to California Civil Code §1668. (Opp'n, PageID#7226.) As the California Supreme Court has made clear, where, as here, "the claims asserted *are nothing more than a breach of... contractual obligations*, [§]1668 *does not apply*." *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal.5th 703, 717 (2025); *see also Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018) (affirming dismissal of implied covenant claim based on alleged breach of YouTube website terms because "[a]s interpreted by California courts, [§]1668 generally does not prohibit parties from limiting liability for breach of contract, including breach of the implied covenant").

Moreover, Plaintiffs' §1668 argument relies on FIL's alleged "continu[ing] to display 'direct message with this user' as a subscription benefit" despite FIL's purported awareness of Creators using third-party agencies to assist in their communications with Fans. (Opp'n, PageID#7226.) Plaintiffs continue to disregard this Court's *multiple* orders dismissing Plaintiffs' fraud-related claims premised *on the same allegations* as precluded by the integration clause and FIL's disclosures in the Terms. (Mot., PageID#6589 n.12.)[7] Because those claims are dismissed *with*

[7] Plaintiffs also unsuccessfully sought to invoke §1668 against FIL's disclosures in a footnote in its opposition to Fenix's motion to dismiss those claims. (ECF 236, MTD

*prejudice*, Plaintiffs have no claim for fraud, willful misconduct, or violation of the law outside of their two remaining contract claims that would implicate §1668.

### 3. Plaintiffs' Reliance On "Promises" Made By Users *To FIL* Are Unavailing

Lastly, Plaintiffs scour the Terms for other FIL "promises" to hang their breach claim on, but all of the provisions they cite involve obligations of users owed *to FIL*. Plaintiffs entirely ignore the decisions cited by FIL dismissing breach of contract claims where the challenged provisions "refer to what [platform] *users*… can and cannot do" and "*do not require [the platform] to perform any particular action*." (Mot., PageID#6586-87 (quoting *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *5 (N.D. Cal. Aug. 23, 2023) and *Khan v. Twitter, Inc.*, 2023 WL 6466201, at *2-4 (N.D. Cal. Oct. 3, 2023))); *see also Suddeth*, 2026 WL 2351231, at *5 (dismissing breach claims premised on enforcement language in website terms that defendant "uses to 'hold *you* accountable for the content *you* post'" because "that language can only refer to one individual—the one who created the offending content" and did not apply to alleged failure to prevent third-party fraud on the platform because "[n]owhere does this provision indicate any intention to protect [defendant's] *other users* from the ills of the offending content").

Plaintiffs' authority is not to the contrary. Plaintiffs' reliance on *Bouck* as "instructive" (Opp'n, PageID#7222) omits that court's *dismissal of* plaintiffs' claim for breach of contract. Those plaintiffs asserted defendant website breached a provision in its website terms stating that it "does not allow content that attempts to scam or defraud users and/or businesses," which plaintiffs interpreted as "imposing two duties on [defendant]: (1) to prevent third parties from posting offending content on its platforms and (2) not to contribute to the proliferation of such content." *Bouck*, 2026 WL 810036, at *7. The court rejected *both* theories because the provision "does

---

2AC Opp'n, PageID#4887 n.6.)

not expressly or impliedly impose a binding contractual obligation on [the platform] to do anything" but "is much more naturally read as a creating a duty *of its users* not to pollute [the] platforms with scam investment ads." *Id*.

The court further rejected plaintiffs' reliance on other provisions in the website terms addressing enforcement because "[t]hese admonitions are also not enforceable contractual promises either—they are warnings about what [defendant] will do if the *user* violates the [terms]. That is, they announce an enforcement mechanism to ensure that [defendant's] users comply with *their* binding contractual obligations." *Id*. at *8 (emphasis in original).

Here, Plaintiffs cite two provisions in the Terms of Use for all Users in a section entitled "**Your commitments *to us***," where *users* promised *FIL* to keep "account/login details confidential and secure" and agreed to be responsible if "someone else uses *your* account." (Opp'n, PageID#7227, 7229 (citing ECF 60-1, PageID#357 (bold emphasis in original).) Plaintiffs also cite the section entitled "**Personal legal responsibility *of Creators***" in the Terms of Use for Creators which states "[i]f *you* have an agent, agency, management company or other third party which assists *you* with the operation of *your* Creator account (or operates it on *your* behalf), this does not affect *your* personal legal responsibility" and "*you* will be legally responsible for ensuring that all Content posted and all use of *your account* complies with the Terms," which Plaintiffs admit is "a warning *to Creators*" of their potential liability *to FIL*. (Opp'n, PageID#7228 (quoting ECF 60-1, PageID#374 (bold emphasis in original)).)[8]

---

[8] Plaintiffs copy-and-paste their previous argument that this provision was "never disclosed to Fans." (*Compare* Opp'n, PageID#7228 *with* ECF 236, MTD 2AC Opp'n, PageID#4894; *see also* ECF 239, MTD 2AC Reply, PageID#4926 (refuting argument and distinguishing same authority).) The Court's Second Order *expressly acknowledged and rejected* this argument because "as discussed in the Prior Order, Fenix… made explicit disclosures regarding the use of third parties." (Second Order, PageID#5077-78; *see also* ECF 60-1, PageID#360 (additional FIL disclaimer in "**What we are not responsible for**" provision that it "*cannot control and will not be*

Plaintiffs also misleadingly claim "FIL's own Standard Contract" contains a provision that "[t]he Creator is solely responsible for creating and uploading the Relevant Content." (*Id.*, PageID#7227.) But this also is not a promise by FIL. Plaintiffs conveniently omit both the full name of the agreement—the "Standard Contract *between Fans and Creators*"—and their own allegations, which admit the agreement states "[t]he only parties to this agreement *are the Fan and Creator participating in the Fan/Creator Transaction*." (Mot., PageID#6574 (quoting 4AC¶¶238-40).) FIL has established, and Plaintiffs have ignored, that the Terms also twice reiterate the Standard Contract's statement that FIL is not "a party to" that agreement. (*Id.*, PageID#6573-74 ("Although we facilitate Fan/Creator Transactions by providing the OnlyFans platform and storing Content *we are not a party to the Standard Contract* between Fan and Creator… and are not responsible for any Fan/Creator Transactions.").

Finally, Plaintiffs look to the Acceptable Use Policy, which "applies to *your use* of OnlyFans and all Content on OnlyFans and forms part of *your agreement with us*," and "sets out what is and is not permitted on OnlyFans." (Opp'n, PageID#7229-30; ECF 60-1, PageID#383.) Once again, every policy provision cited by Plaintiffs constitutes a promise *by users to FIL*; specifically, "Do not use OnlyFans except for *your* own personal use and do not… share *your* account or any Content obtained from *your* use of OnlyFans"; "Do not post or cause to be posted any Content which is… inauthentic, repetitive, misleading or low quality" and "Do not use any automated program, tool or process… to access OnlyFans…." (Opp'n, PageID#7229-30 (citing ECF 60-1, PageID#383, 386).) These statements merely "refer to what [OnlyFans]

---

*responsible* to you for" third-party use of the Platform).) In any event, the fact that this additional provision in the Terms of Use for Creators was disclosed and incorporated in the Terms that Plaintiffs agreed to does not and cannot change that it is a promise made *by Creators to FIL* and cannot serve as the basis for Plaintiffs' breach claim here.

users… can and cannot do," and cannot be the basis for a breach claim. *Khan*, 2023 WL 6466201, at *4.

Plaintiffs point to the Terms' language stating that the Terms of Use for all Users "apply to the extent of" any conflict with the Terms of Use of Creators or the Acceptable Use Policy (Opp'n, PageID#7229), but Plaintiffs do not and cannot suggest there is a conflict between the "**What we are not responsible for**" provision (containing the "reasonable care and skill" clause and the disclaimers therein), and the promises that *users made to FIL* cited by Plaintiffs, which "impose [no] binding obligation on" FIL. *Bouck*, 2026 WL 810036, at *7. Contrary to their own authority, Plaintiffs' interpretation of these other provisions is neither "reasonable" nor "gives effect to every part" of the Terms and should therefore be rejected. (Opp'n, PageID#7229 (citing Cal. Civ Code §§1641, 1643).)

## B. Plaintiffs Cannot Overcome The Flaws In Their Implied Covenant Claim

Defending their implied covenant claim, Plaintiffs again ignore their own allegations and the authority cited by FIL. Moreover, the authority they cite establishes that their claim must be dismissed.

*First*, FIL showed that Plaintiffs' claim can be "disregarded as superfluous" because it "specifically references their breach allegations and is premised on the same activity: FIL's alleged failure to detect, prevent, and/or enforce the same Terms provisions against Creators using third-parties to manage Creator interactions." (Mot., PageID#6588-89 (collecting citations to 4AC).) Plaintiffs claim their allegations "differ[]" and again try to cloak their allegations in technical jargon (e.g. "declining to build account-integrity controls") (Opp'n, PageID#7233-34), but they cannot dodge FIL's showing that their allegations "rely[] on the same alleged acts" and "simply seek the same damages or other relief already claimed" in their breach claim. *The Manning Grp. LLC v. Neudesic LLC*, 2024 WL 3543472, at *4 (C.D. Cal. May 14, 2024) (Slaughter, J.); *see also JEB Grp., Inc. v. San Jose III*, 2020 WL 2790012,

at *2-3 (C.D. Cal. Mar. 31, 2020) (rejecting plaintiff's contention that implied covenant claim did "more than allege a contractual breach" by "also alleg[ing] a misappropriation of trade secrets"; plaintiff "misse[d] the point" that "[t]he exact same conduct underlies both claims").

*Second*, Plaintiffs assert they are entitled to contractual "benefits" separate from the "reasonable care and skill" language on which their breach claim is based but again point only to promises made *by users to FIL* in the Acceptable Use Policy and the Terms of Use for All Users section entitled "**Your commitments *to us.***" (Opp'n, PageID#7231-32 (citing ECF 60-1, PageID#356-57, 383, 385).)[9] Plaintiffs' authority fails them again. The *Bouck* court dismissed an implied covenant claim premised on similar *user* obligations because "[t]he purpose of the covenant is to make effective the agreement's promises" and "[a]s explained, [p]laintiffs are not invoking the covenant of good faith and fair dealing because they were unable to realize the benefits of the promises in the contract, they are invoking it *to create new promises*. That the covenant cannot do." *Bouck*, 2026 WL 810036, at *8 (emphasis in original)).[10]

---

[9] Plaintiffs ignore, and therefore concede, FIL's argument that this Court's Second Order dismissing their "direct message" claims with prejudice precludes any claim predicated on FIL "[d]isplaying 'direct message with this user'." (Mot., PageID#6589 n.12; Opp'n, PageID#7232.) Plaintiffs also ignore FIL's arguments exposing the flaws in Plaintiffs' allegations regarding a "full access" statement on the subscription page, and FIL's discretionary approach to user complaints and refunds. (Mot., PageID#6589-90, nn. 12-13.) All of these allegations can be disregarded, because as this Court has recognized, "[w]here a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Padilla v. Medline Indus., Inc.*, 2025 WL 3190652, at *2 (C.D. Cal. Oct. 1, 2025) (Slaughter, J.).

[10] *See also Wasjutin v. Countrywide Bank N.A.*, 2016 WL 7443219, at *3 (C.D. Cal. June 8, 2016) (dismissing implied covenant claim where plaintiffs allege defendant failed to "provide them with reasonable opportunity to modify the loan" because "nothing in the loan entitles [p]laintiffs to modification of their payment plan," and implied covenant "cannot be extended to create obligations not contemplated by the

*Lastly*, Plaintiffs challenge FIL's purported "declining to enforce" its Terms against "high-revenue agency accounts." (Opp'n, PageID#7233-34.) Plaintiffs admit the Terms expressly state FIL "may" enforce the Terms "as we consider appropriate" and "in our sole discretion," and ignore the decisions cited by FIL dismissing implied covenant claims that contradict website terms allowing defendants to take actions in their "sole discretion." (*Contrast* Opp'n, PageID#7231, 7233 *with* Mot., PageID#6587-90 (collecting cases).) Plaintiffs cite *Ebeid v. Facebook, Inc.*, to "articulat[e the] standard" (Opp'n, PageID#7231), overlooking that *Ebeid* dismissed an implied covenant claim where defendant website "had the contractual right to remove or disapprove any post or ad at [defendant's] *sole discretion*." 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019).

Plaintiffs wrongly assert that FIL breached the covenant by exercising "the discretion FIL reserved for itself" and that "whether FIL exercised that discretion in good faith" is a factual question unresolvable on a motion to dismiss. (Opp'n, PageID#7233-34) These arguments run headlong into FIL's authorities and the established principle that "the implied covenant… will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *In re Apple In-App Purchase Litig.*, 855 F.Supp.2d 1030, 1042 (N.D. Cal. 2012). The *Apple* court dismissed an implied covenant claim because "[p]laintiffs must show that Apple lacked subjective good faith in the validity of its act or the act was intended to and did frustrate the common purpose of the agreement," but could not do so because the terms "expressly provide that [p]laintiffs are responsible for activity occurring on

---

contract") (cited by Plaintiffs); *Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024, 1048–49 (N.D. Cal. 2020) (dismissing implied covenant claim alleging defendant "fail[ed] to ensure minors abide by" provision "requir[ing] minors to obtain the consent of a parent or guardian" because "the provision imposes a duty on the player, not defendant" and "[t]hus, plaintiff has not alleged any failure to receive the benefits of a contract between him and defendant").

or through their accounts and Apple may charge them for any such activity," so "the implied covenant cannot negate Apple's ability to charge [p]laintiffs." *Id.*; *see also Ligon*, 2026 WL 1146091, at *17 (dismissing implied covenant claim where website terms "specifically give [d]efendant the right to reject ads 'for any reason, in its sole discretion'" because "the implied covenant of good faith and fair dealing cannot require a party to go beyond the terms of a contract and cannot contradict the express terms").

Plaintiffs' reliance on *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342 (1992), is particularly misplaced. The California Supreme Court *upheld* the right of the landlord to exercise a discretionary lease termination provision because the landlord's "termination of the lease in order to claim for itself [a profit] was *expressly permitted* by the lease and was clearly within the parties' reasonable expectations." *Id.* at 376. The *Carma* court unequivocally confirmed there can be no breach of covenant where, as here, the targeted conduct was expressly authorized by the Terms because "if defendants were given the right to do what they did by the express provisions of the contract *there can be no breach*." *Id.* at 374 ("[N]o covenant of good faith and fair dealing can be implied which forbids such acts and conduct… authorized by the express provisions of the contract"). Like *Carma*, FIL's choice to enforce the Terms in its "sole discretion" and as FIL "consider[s] appropriate" (Mot., PageID#6574-75), "is precisely what is contemplated" by the Terms, and "it is [Plaintiffs], not [FIL], that [are] trying to get more than [they] bargained for." 2 Cal.4th at 362.[11]

---

[11] Plaintiffs' other elderly cases are inapposite. *Perdue v. Crocker National Bank* rejected plaintiff's contention that a bank signature card was not a contract and did not address the question of whether a party vested with discretion acted in good faith; instead, the court rejected plaintiff's argument that such discretion rendered the contract illusory. 38 Cal.3d 913, 923-24 (1985). *Locke v. Warner Brothers, Inc.* similarly made no "good faith" determination and instead considered "the subjective standard of honest satisfaction" as applied to a studio's rejection of plaintiff's movie

Because Plaintiffs seek to impose contractual liability on FIL for (1) promises that FIL did not make and/or (2) exercising the contractual discretion admittedly authorized by the Terms, Plaintiffs' implied covenant claim should be dismissed.

**CONCLUSION**

For the reasons stated above and in the Motion, Counts II and III should be dismissed with prejudice and judgment rendered for FIL and Fenix Internet.

Dated: September 29, 2026

DAVIS POLK & WARDWELL LLP

By: *s/ Jason D. Russell*

Jason D. Russell (SBN 169219)
jason.russell@davispolk.com
Hillary A. Hamilton (SBN 218233)
hillary.hamilton@davispolk.com
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants Fenix International Limited and Fenix Internet LLC*

projects. 57 Cal.App.4th 354, 363-64 (1997) (emphasis omitted).

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Fenix International Limited and Fenix Internet LLC, certifies that this brief contains 6,910 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 29, 2026 DAVIS POLK & WARDWELL LLP

By: *s/ Jason D. Russell*

Jason D. Russell (SBN 169219)
jason.russell@davispolk.com
Hillary A. Hamilton (SBN 218233)
hillary.hamilton@davispolk.com
2000 Avenue of the Stars, Suite 510N
Los Angeles, California 90067
Telephone: (424) 556-5900
Facsimile: (424) 556-5950

*Attorneys for Defendants*
*Fenix International Limited and*
*Fenix Internet LLC*