Oliver Rocos - State Bar No. 319059
orocos@birdmarella.com
Bill L. Clawges - State Bar No. 345908
bclawges@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Moxy Management

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,<br><br>Defendants. | CASE NO. 8:24-cv-01655-FWS-SSC<br><br>**DEFENDANT MOXY MANAGEMENT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 22, 2026<br>Time: 10:00 a.m.<br>Crtrm.: 10D<br><br>Assigned to Hon. Fred W. Slaughter |

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION .......... 7

II. NON-CALIFORNIA PLAINTIFFS B.L., S.M., AND A.L. SHOULD BE DISMISSED .......... 9

A. Dismissal Is Required Due To The Fan-Creator Contract Plaintiffs Put At Issue In The 4AC .......... 9

1. As Creators' Agents, Moxy Can Invoke The Forum Provision In The Fan-Creator Contract .......... 10

2. The Non-California Plaintiffs' Claims Fall Within The Scope Of The Forum-Selection Clause .......... 12

3. Plaintiffs Do Not Show Why The Forum-Selection Clause In The Fan-Creator Contract Should Not Be Applied .......... 13

4. Plaintiffs' Reliance On Ordinary Forum-Non-Conveniens Balancing Ignores The Controlling Forum-Selection Clause .......... 14

B. This Court Should Consider Whether The Claims Are "Closely Related" To The Terms Of Service And Hold They Are .......... 15

III. PLAINTIFFS FAIL TO PLEAD A VPPA CLAIM .......... 16

A. Plaintiffs Still Do Not Identify Any Video Requested Or Obtained *From Moxy* Or From A *Moxy-Represented* Creator .......... 16

B. The Ordinary-Course-Of-Business Exception Bars Plaintiffs' Claim .......... 19

1. Plaintiffs' Own Allegations Establish The Ordinary-Course-Of-Business Exception .......... 19

2. Plaintiffs Cannot Defeat The Exception Using Fraud Without Satisfying Rule 9(b) .......... 21

IV. PLAINTIFFS' UCL CLAIM STILL FAILS .......... 22

A. The UCL Claim Remains Grounded In Fraud And Still Fails Rule 9(b) .......... 22

B. Plaintiffs' Omission Theory Does Not Save Their Claim .......... 23

C. Plaintiffs Fail To Allege An Inadequate Remedy At Law .......... 25

D. Plaintiffs' Unlawful-Prong Claim Fails For Independent Reasons .......... 26

1. The Unlawful-Prong Claim Fails With The VPPA Claim .......... 26

2. Plaintiffs Fail To Connect The Alleged VPPA Violation To Any Economic Injury ........ 27

V. CONCLUSION ........ 28

CERTIFICATE OF COMPLIANCE ........ 29

# TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 16

*Atl. Marine Constr. Co. v. United States Dist. Court*,
571 U.S. 49 (2013) ... 14

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ... 14

*Chen v. JPMorgan Chase Bank, N.A.*,
745 F. Supp. 3d 1025 (C.D. Cal. 2024) ... 26

*City of Los Angeles v. Santa Monica BayKeeper*,
254 F.3d 882 (9th Cir. 2001) ... 15

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ... 25

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ... 27

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ... 27

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ... 16

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ... 19

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ... 23

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986) ... 10

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 10, 12, 13, 16

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) .......... 24

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 20

*Regueiro v. FCA US, LLC*,
671 F. Supp. 3d 1085 (C.D. Cal. 2023) .......... 26

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) .......... 20, 21

*Sharma v. Volkswagen AG*,
524 F. Sup. 3d 891 (N.D. Cal. 2021) .......... 25, 26

*Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
660 F. Supp. 3d 863 (N.D. Cal. 2023) .......... 24

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) .......... 20, 21

*Watson v. Crumbl LLC*,
736 F. Supp. 3d 827 (E.D. Cal. 2024) .......... 25

*Weizman v. Talkspace, Inc.*,
705 F. Supp. 3d 984 (N.D. Cal. 2023) .......... 25

*Yei A. Sun v. Adv. China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 10, 14

**California Cases**

*Daro v. Superior Ct.*,
151 Cal. App. 4th 1079 (2007), *as modified* (July 3, 2007) .......... 27

*Orcilla v. Big Sur, Inc.*,
244 Cal. App. 4th 982 (2016), *as modified* (Mar. 11, 2016) .......... 27

**Federal Statutes**

18 U.S.C.
§ 2710(a)(3) .......... 16
§ 2710(b)(2) .......... 19
§ 2710(b)(2)(E) .......... 20

Video Privacy Protection Act (VPPA) .......... *passim*

**Other Authorities**

Fed. R. Civ. Proc. Rule 8 .......... 16, 18, 19, 21

Fed. R. Civ. Proc. Rule 9(b) .......... *passim*

## I. INTRODUCTION

Plaintiffs' Opposition cannot overcome three straightforward problems with the Fourth Amended Complaint ("4AC"). The Non-California Plaintiffs agreed that claims arising from their transactions with Creators must be litigated in England and Wales. Plaintiffs still do not identify any video that any Plaintiff requested or obtained from Moxy or a Moxy-represented Creator. And Plaintiffs still do not identify the particular representations, omissions, or transactions necessary to support their UCL claim. Plaintiffs attempt to obscure each defect through collective allegations, labels, and arguments that conflate distinct contracts and defendants. But no amount of aggregation can supply the missing allegations.

*First*, the Non-California Plaintiffs' claims should be dismissed under the forum-selection clause in the Fan-Creator Contract, which requires claims be brought in England and Wales. Plaintiffs expressly invoke that contract in their 4AC, and it governs *every* interaction between a Fan (including Plaintiffs) and the Creators. Moxy can invoke that forum-selection clause because its alleged liability under the VPPA arises out of actions Plaintiffs plead it undertook in its capacity as the Creators' representatives, who acted on their behalf, operated their accounts, facilitated content sales, and sold or delivered audiovisual materials as their agent. Having pled that Moxy acted as the Creators' agent under the Fan-Creator Contract for purposes of imposing liability, Plaintiffs cannot now treat Moxy as a stranger to the same transactions to avoid the agreed forum. Rather than confronting these arguments, Plaintiffs mischaracterize Moxy's position as an improper request for reconsideration. As Plaintiffs well know, the Court previously considered only the Terms of Service contract with Fenix Defendants (the "Terms of Service"), and has never considered the independent Fan-Creator Contract. That independent forum-selection clause warrants dismissal of the Non-California Plaintiffs' claims.

*Second*, the Video Privacy Protection Act ("VPPA") claim fails for an even more basic reason: Plaintiffs still do not allege that any Plaintiff requested or obtained

a video from Moxy or a Moxy-represented Creator. Without that allegation, their claim necessarily fails.

The omission as to Moxy is conspicuous. When Plaintiffs allege that they purchased videos from Creators represented by *other* agencies, they use the word "video." But when describing the purchases involving Moxy-represented Creators, they allege only unspecified "digital content," a category that expressly includes non-video material. ***Not one*** of the thirty-seven paragraphs Plaintiffs claim contains the required specific allegation in fact identifies Moxy as the provider of any video to any Plaintiff. They instead contain only generalized claims and group pleading of the sort courts consistently reject as insufficient. Quantity is not a substitute for a Moxy-specific claim.

Further, Plaintiffs' own allegations establish that any access to subscriber information occurred for the reasons of request processing or order fulfillment, which is conduct expressly permitted by the VPPA's ordinary-course-of-business exception. Plaintiffs try to escape their own allegations by accusing Moxy of fraud, but a label is not an allegation, and the Court has repeatedly rejected Plaintiffs' fraud theory for lack of particularity. Plaintiffs cannot convert lawful activity into unlawful activity merely by arguing a fraud theory they have never adequately pled.

*Third*, the UCL claim fails for the same particularity problem the Court previously identified. Plaintiffs' theory remains that they believed they were communicating with Creators, were instead communicating with Chatters, and paid money because of that belief. Yet, the 4AC still does not identify which Moxy statement was made to which Plaintiff, when or where it was made, why it was false, or which payment it induced. Plaintiffs concede that they merely repeat allegations from the prior pleading the Court already found deficient. Those defects are not cured by Plaintiffs' cynical attempt to recast their claim as an "omission" theory.

The UCL claim additionally fails because it seeks equitable recovery for damages Plaintiffs have already calculated, and its unlawful-prong theory does not

connect the alleged VPPA disclosure to the economic injury Plaintiffs claim.

The 4AC is Plaintiffs' *fifth* attempt to state claims against Moxy. The remaining defects are not technical, and they are not cured by another compilation of generalized allegations. The Non-California Plaintiffs chose a different forum, no Plaintiff is alleged to have obtained a video from Moxy, and the California Plaintiffs still do not plead the supposed deception with particularity. The Court should dismiss the claims against Moxy with prejudice.

## II. NON-CALIFORNIA PLAINTIFFS B.L., S.M., AND A.L. SHOULD BE DISMISSED

### A. Dismissal Is Required Due To The Fan-Creator Contract Plaintiffs Put At Issue In The 4AC

Plaintiffs improperly characterize Moxy's argument as a request for reconsideration. Opp. at 2. It is not. Moxy invokes an independent contractual ground the Court's prior orders *did not address*: the forum-selection clause in the Fan-Creator Contract that governs the transactions from which the Non-California Plaintiffs' VPPA claim arises.

Plaintiffs have put at issue the Fan-Creator Contract that governed the relationship and transactions between the Plaintiffs and the Moxy-represented Creators. As the Creators' agent, Moxy allegedly performed those transactions on which Plaintiffs base their claim. That contract contains an independent forum-selection clause warranting dismissal of the Non-California Plaintiffs. Mot. at 16. Plaintiffs concede this Court can take judicial notice of the Fan-Creator Contract [Dkt. 284], and do not argue it already has been considered. Plaintiffs instead fabricate and then attack arguments Moxy never made: (1) that the Creators are third parties to the Fan-Creator Contract, and (2) the Fan-Creator Contract is incorporated into the general Terms of Use. Opp. at 4. Moxy says nothing of the sort.

Moxy's arguments are that the Fan-Creator Contract contains a forum-selection clause that Moxy can enforce as the Creators' agents and that the claims fall within

the clause's scope.

1. <u>As Creators' Agents, Moxy Can Invoke The Forum Provision In The Fan-Creator Contract</u>

It is agreed that the named parties to the Fan-Creator Contract are Plaintiffs and the Creators. Opp. at 3-4 ("every Fan and every Creator that use OnlyFans is a party to the Fan-Creator Contract"). There is no dispute that the Fan-Creator Contract contains an independent forum-selection clause that selects the same forum as the one this Court already enforced as to the Non-California Plaintiffs' claims against the Fenix Defendants. [*Compare* Dkt. 267-1 ¶ 2, Ex. A at ¶ 12(b)(ii) *with* Dkt. 117 at 4.]

There is a "strong federal policy in favor of enforcing forum-selection clauses." *Yei A. Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1090 (9th Cir. 2018). And as this Court already held, "the forum selection clause within [a] contract can apply to" a non-signatory where its "alleged conduct is so closely related to the contractual relationship." [Dkt. 209 at 31 (quoting *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988))).] If the law were otherwise, a contracting party could avoid the chosen forum through artful pleading against affiliated entities or agents whose alleged conduct is inseparable from performance of the contract but are not themselves signatories. *See Manetti-Farrow*, 858 F.2d at 514 n.5; *see also Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (federal policy would be significantly undermined if a party could evade contractual clauses merely by suing the signatory's agents).

There cannot be any meaningful dispute that Plaintiffs allege Moxy was the agent of its affiliated Creators and that each of Moxy's alleged actions was taken on behalf of the Creator signatories. In fact, Plaintiffs explicitly allege that Moxy, and the other Agency Defendants, "*represent, act on behalf or [sic], or are the agents of multiple Creators*," 4AC ¶ 50 (emphasis added), and that *"[a]cting on behalf of and as the agent of the Creator*, the agency provides" various services, *id.* ¶ 260b

(emphasis added). Plaintiffs further repeatedly allege that Moxy acted "on behalf of" its represented Creators. *Id.* ¶¶ 249, 260(b), 348-363. Plaintiffs further allege that Moxy received "unfettered administrative access" to Creator accounts, controlled content, responded to Fan messages on behalf of the Creators, and facilitated sales of Creator content. *Id.* ¶¶ 357, 359-361. Indeed, the first paragraph of Plaintiffs' VPPA allegations states that "[e]ach of the Agency Defendants is engaged in the business of selling and/or delivering audiovisual materials *as the agent or representative of the Represented Creators*." *Id.* ¶ 582 (emphasis added). In short, ***every act*** on which Plaintiffs base their VPPA claim against Moxy is alleged to have been undertaken by Moxy in its alleged representative capacity for the Creators. Those allegations place Moxy squarely within the line of authorities cited above that permit agents and closely related non-signatories to invoke forum-selection clauses that bind their principals. A holding otherwise would run contrary to decades of law. And given Plaintiffs' allegation that Moxy performed the Creator side of the Fan/Creator Transactions as the Creators' agent, application of the Creators' agreed forum to claims challenging that performance was plainly foreseeable.

Plaintiffs do not confront this point. Rather than arguing why the forum-selection clause in the *Fan-Creator Contract* should not apply to Moxy, Plaintiffs respond by arguing Moxy cannot invoke the clause in the *Terms of Service*. Opp. at 3-4. As set forth below, Moxy disagrees with that analysis for reasons this Court already has explained. But whether the forum-selection clause in the Terms of Service is binding says *nothing* about whether the clause in the Fan-Creator Contract is binding.

The forum-selection clause in the Fan-Creator Contract is binding, and Moxy is entitled to enforce it because its actions were all taken on behalf of its Creator principals. The Non-California Plaintiffs' claims should be dismissed.

2. The Non-California Plaintiffs' Claims Fall Within The Scope Of The Forum-Selection Clause

Plaintiffs themselves allege that the Fan-Creator Contract "governs and sets out the terms applicable to each Fan/Creator Transaction," applies "[e]ach time a Fan/Creator Transaction is initiated on OnlyFans," and makes the Fan and Creator the contracting parties. 4AC ¶¶ 227(e), 238-240; *see also* Dkt. 267-1 ¶ 2, Ex. A ¶ 1. A "Fan/Creator Transaction" includes "any transaction . . . by which access is granted to the Creator's Content," including through a subscription, a payment for "pay-per-view Content," or a payment "to use the interaction function on a Creator's account." Dkt. 267-1 ¶ 2, Ex. A ¶ 2.

Crucially, Plaintiffs themselves plead that their VPPA claim—which is the only claim the Non-California Plaintiffs assert—arises directly out of Moxy's "business of selling and/or delivering audiovisual materials as the agent or representative of the Represented Creators"; that Plaintiffs purchased content through Creator accounts Moxy operated; and that Moxy obtained and disclosed Plaintiffs' information while carrying out those transactions. 4AC ¶¶ 582, 585-591. Because in Moxy's alleged interactions with the Plaintiffs "access [was] granted to the Creator's Content," those actions necessarily constituted a Fan/Creator Transaction that was expressly governed by the Fan-Creator Contract. Plaintiffs' claim therefore challenges the manner in which Moxy allegedly performed the Creator side of transactions expressly governed by the Fan-Creator Contract.

The clause encompasses "any claim under this agreement." [Dkt. 267-1 ¶ 2, Ex. A ¶ 12(b)(ii).] Plaintiffs cannot avoid that broad scope merely by saying the VPPA claim is not for breach of the Fan-Creator contract or that it arises under a statute. The Ninth Circuit applies forum-selection clauses to claims whose adjudication relates to the interpretation or performance of the underlying contract. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). In *Manetti-Farrow* itself, for example, the court held that tort claims were governed by

the contractual forum provision because they "relate[d] in some way to rights and duties enumerated in the exclusive dealership contract" and could not be adjudicated without analyzing whether the parties had complied with that contract. *Id.* Here, the VPPA claim is necessarily covered by the forum-selection clause because Plaintiffs challenge the manner in which Moxy allegedly carried out the alleged sale and delivery of content, Moxy's access to Creator accounts, and its handling of Plaintiffs' information, each of which allegedly occurred through Fan/Creator Transactions governed by the Fan-Creator Contract. Plaintiffs cannot avoid the forum selected for claims under that relationship by suing only the alleged agent that performed the transactions rather than the Creator signatories on whose behalf it allegedly acted.

3. <u>Plaintiffs Do Not Show Why The Forum-Selection Clause In The Fan-Creator Contract Should Not Be Applied</u>

Plaintiffs' argument that the Terms of Use and the Fan-Creator Contract have language denying rights to third parties, Opp. at 3-4, misstates Moxy's position and the law.

*First*, Moxy *does not* argue that it is a direct party to the Fan-Creator Contract or that it and Creators are "third parties to the [Terms of Use] and to the Fan-Creator Contract with rights to enforce those agreements." Opp. at 4. Instead, and as set forth above and in the Motion, it argues only that it is a closely related nonsignatory who can invoke the forum-selection clause because it is being sued for conduct undertaken as the Creator signatories' agent. *See supra*; *see also* Mot. at 16.

*Second*, Plaintiffs' argument that the Fan-Creator Contract "does not form part of" the separate Fan-Fenix agreement is beside the point. Opp. at 4-5. Moxy need not establish that the Fan-Creator Contract was incorporated into the Fan's agreement with Fenix because the Fan-Creator Contract *independently* "governs and sets out the terms applicable to each Fan/Creator Transaction." 4AC ¶ 227(e). Moxy relies on that independent contract and its independent forum provision.

The Fan-Creator Contract stands on its own and warrants the dismissal of Non-

California Plaintiffs' claims for the same reasons their claims against the Fenix Defendants were dismissed: the forum-selection clause requires they be adjudicated in England and Wales. [Dkt. 117 at 16.]

4. <u>Plaintiffs' Reliance On Ordinary Forum-Non-Conveniens Balancing Ignores The Controlling Forum-Selection Clause</u>

Finally, Plaintiffs wrongly assert that Moxy must satisfy the traditional forum-non-conveniens factors. Opp. at 2-3. That argument applies only if Moxy cannot invoke the forum-selection provision in the Fan-Creator Contract or the claim falls outside its scope. But Moxy can invoke it and the claim falls within its scope.

Where parties have agreed to a valid forum-selection clause selecting a foreign tribunal, the ordinary forum-non-conveniens analysis is materially altered. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60, 63-66 & n.8 (2013). The plaintiff's choice of forum receives no weight, the parties' private interests are deemed to favor the selected forum, and only public-interest considerations may be considered. *Id.* at 63-64. Those public-interest factors "will rarely defeat" enforcement of the clause. *Id.* at 64; *see also Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-88 (9th Cir. 2018). As such, Plaintiffs' reliance on *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011), is misplaced.

Plaintiffs identify no extraordinary public-interest circumstances that would justify disregarding the selected forum. The Non-California Plaintiffs reside in Tennessee, Georgia, and Wisconsin, not California. 4AC ¶¶ 36-40. Their claims are federal VPPA claims against Agency Defendants and do not depend on any uniquely California interest. The Court has already enforced the materially parallel England-and-Wales forum provision against these same Plaintiffs with respect to their claims against the Fenix Defendants. Dkt. 117 at 16. Requiring the same Non-California Plaintiffs to litigate claims arising from the same OnlyFans transactions in the same selected forum promotes, rather than fragments, the parties' contractual allocation of

forum.

**B. This Court Should Consider Whether The Claims Are "Closely Related" To The Terms Of Service And Hold They Are**

Alternatively, the Court may revisit whether the VPPA claim is sufficiently closely related to the Terms of Service to fall within that agreement's forum-selection clause. The Court's December 2025 order correctly held that they are. [Dkt. 209 at 31-32.]

While Plaintiffs complain this issue has been addressed, an interlocutory ruling does not foreclose consideration of a renewed motion directed to the operative amended complaint. "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis in original, citation omitted); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment.").

The Court should do so here in order to reconcile its inconsistent prior rulings and reach the legally correct result. And indeed, the Court's consideration of this issue would be consistent with its past approach of reconsidering its prior dismissal of the Non-California Plaintiffs' claims against Moxy in the First Amended Complaint [Dkt. 209 at 31-32] when Plaintiffs re-alleged the same allegations in the Second Amended Complaint and defended them with arguments this Court already had rejected [Dkt. 228 at 13-14; Dkt. 242 at 8-10].

The Court should grant Moxy's motion to dismiss the claims of the Non-California Plaintiffs for those reasons clearly stated in its detailed December 2025 ruling dismissing those claims. Mot. at 14 (citing Dkt. 209 at 31-32). Plaintiffs continue to allege that Moxy violated the Terms of Service by allegedly using Chatters. 4AC ¶¶ 7, 19, 316. This Court's reliance on language denying substantive

rights to third parties does not answer the separate and dispositive question of whether a nonsignatory whose alleged conduct is inseparable from the contractual relationship may invoke the forum-selection clause under *Manetti-Farrow*. Moxy can invoke that clause for all the reasons this Court previously found, and should find again. [Dkt. 209 at 31-32.]

## III. PLAINTIFFS FAIL TO PLEAD A VPPA CLAIM

As set forth in the Motion, Plaintiffs have failed to plead a VPPA claim. While Plaintiffs again seek to claim that Moxy is requesting reconsideration, the law requires that Plaintiffs substantiate each of their claims with allegations in the operative complaint. They have not done so, and their VPPA claim should be dismissed.

### A. Plaintiffs Still Do Not Identify Any Video Requested Or Obtained *From Moxy* Or From A *Moxy-Represented* Creator

Recognizing they must plead that each Plaintiff received a video from Moxy or a Moxy-represented Creator, Plaintiffs *falsely* say they have done so. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), but that is all Plaintiffs can offer.

The VPPA explicitly requires a plaintiff to have "requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). "[W]hat is barred is disclosing information that 'identifies a person *as having requested or obtained* specific video materials.'" *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) (emphasis in original, citation omitted); *see also id.* at 1095 (VPPA plaintiff must plead "three distinct elements": (1) a person's identity, (2) "the video material's identity," and (3) the connection between them). As this Court itself noted, the "most important[]" allegations are those identifying "the specific content that [Plaintiffs] requested and/or viewed." [Dkt. 251 at 28.]

Because Moxy can only be liable if it disclosed PII linking a Plaintiff to their requesting or viewing a video, Plaintiffs cannot state a claim merely by saying they

viewed videos *somewhere* on OnlyFans. They must plead that they requested or obtained specific video materials ***from Moxy itself or a Moxy-represented Creator***. Courts consistently find that failure to plead that a specific video was sought or obtained from a defendant warrants dismissal. *See* Mot. at 18-19 (citing *Benson*, *Solomon*, *Rodriguez*, and *Martin*).

Plaintiffs concede that failure to plead that a Plaintiff requested or accessed a video from Moxy is fatal to their claim. Opp. at 7. They claim they have met that standard and cite dozens of paragraphs in support. *Id.* at 6, 8. But ***none*** of those paragraphs actually alleges that any Plaintiff ever sought or obtained a video from Moxy or a Moxy-represented Creator:

- Paragraphs 4AC ¶¶ 195-199 describe OnlyFans' monetization structure and state that creators can charge subscription fees, tips, and fees for "PPV Content." The 4AC expressly defines PPV Content to include direct messages, posts, and livestreams.
- Paragraph 4AC ¶ 355 identifies creators allegedly represented by Moxy.
- Paragraphs 4AC ¶¶ 438, 444, 454–456 include Plaintiff N.Z.'s allegations. The only Moxy-related purchase identified is a payment to Breckie Hill for unspecified "digital content." Notably, the same paragraph (444(b)) alleges that N.Z. "paid Stefanie Gurzanski (Unruly) $40.50 for ***digital content*** and he tipped her $99 for a ***video***."
- Paragraphs 4AC ¶¶ 458, 464–467, 481–482, and 485 include Plaintiff R.M.'s allegations. Although R.M. alleges that he viewed videos, he says he received them from Agency Defendants *other than* Moxy. His collective reference to "one or more agents or contractors of the Agency Defendants" only highlights the absence of a Moxy-specific claim he is required to plead. 4AC ¶ 478.
- Paragraphs 4AC ¶¶ 488–491, 493–494, and 501 include Plaintiff B.L.'s allegations against all defendants but again, the only Moxy-related purchases are of unspecified "digital content" (¶ 494(i)) and "Premium Content Fees" (¶ 501).
- Paragraphs 4AC ¶¶ 504, 510, 520–521, 525, and 530 (related to Plaintiffs S.M. and A.L.) again do not identify a single purchase of a video from any Moxy-related creator. Instead, they rely on a generalized allegation that Plaintiff viewed "videos sent to him via direct message from the Subscribed Creator accounts." 4AC ¶¶ 510, 530.
- Paragraph 4AC ¶ 580 merely states that "information provided by Plaintiffs, linked to their request for or viewing of any video content" is PII. This does not state that each (or any) Plaintiff actually viewed a video, much less one provided by Moxy.

- Paragraphs 4AC ¶¶ 584-85 describe how videos ***and other content*** are stored on OnlyFans in a "Vault," and that this content was purchased from "the Agency Defendants."

Instead, these allegations fall into four deficient categories. *First*, generalized allegations of OnlyFans' overall structure, which say nothing about whether a Plaintiff requested or obtained a video from Moxy. *Id.* ¶¶ 195-199.

*Second*, allegations that Plaintiffs purchased "digital content" from Moxy-represented creators are insufficient because the 4AC's own wording confirms that "digital content" cannot be presumed to mean video. In the *very same paragraph*, Plaintiffs allege that N.Z. paid an Unruly-represented Creator "$10 for digital content" and paid another $99 "for a video." 4AC ¶ 444(a), (b). That is not an isolated allegation, because similar distinctions between content types are made throughout the 4AC. *See, e.g.*, 4AC ¶ 494 (switching back and forth between the terms "digital content" and "video" to describe the content provided). Plaintiffs would not have separated those payments and used different words if "digital content" and "video" were synonymous. Plaintiffs know how to plead a video purchase when one allegedly occurred, but have not once pled any such transaction with any Moxy-represented Creator.

*Third*, Plaintiffs cite generalized allegations that they viewed "videos sent to [them] via direct message" through Creator accounts and that the videos were sent by "***one or more*** agents or contractors of the Agency Defendants." 4AC ¶¶ 465, 493, 510, 530 (emphasis added). But those allegations do not differentiate between Defendants, and lump Moxy in with defendants for which there ***are*** specific allegations that videos were obtained. Those unspecified allegations do not satisfy even Rule 8's basic notice pleading requirements, let alone the substantive VPPA pleading requirement that Plaintiffs identify a specific video requested or obtained. Mot. at 20-21 (citing *Borders v. City of Tulare*, No. 1:16-CV-1818-DAD-SKO, 2017 WL 1106039, at *2 (E.D. Cal. Mar. 23, 2017) ("When multiple defendants are named, the plaintiff *must allege the basis of his claims as to each defendant*; it is improper to

simply lump defendants together.”)). Plaintiffs do not meaningfully contest Moxy’s assertion that generalized allegations are insufficient. Nor could they, as Plaintiffs do not “identify what action each Defendant took that caused Plaintiffs’ harm, without resorting to generalized allegations against Defendants as a whole.” *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). Rule 8 is not a high bar, but it is a bar that Plaintiffs must cross. They have not.

*Fourth*, Plaintiffs allege OnlyFans maintains “Vaults” of content (including but not limited to videos). 4AC ¶¶ 584-85. But that allegation says nothing about whether any Moxy-affiliated Creator had any videos in that “vault,” much less whether any Plaintiff requested such a video from that vault.

None of the *thirty-seven* string-cited allegations in Plaintiffs’ Opposition alleges that any of them ever requested or obtained a video from Moxy. They are instead generalized allegations courts consistently hold are an inadequate substitute for a proper allegation satisfying this indispensable element of a VPPA claim. That is fatal to the VPPA claim against Moxy.

**B. The Ordinary-Course-Of-Business Exception Bars Plaintiffs’ Claim**

1. <u>Plaintiffs’ Own Allegations Establish The Ordinary-Course-Of-Business Exception</u>

Plaintiffs assert that they need not address the ordinary-course-of-business exception because it is an affirmative defense that cannot justify dismissal at this stage. Opp. at 11. But Plaintiffs are wrong because their own allegations plead them into that exception and their unsupported fraud allegations do not allow them an escape.

Even if Plaintiffs’ undifferentiated allegations could be construed to allege that Moxy delivered video content to a Plaintiff, the Ninth Circuit has explicitly held that a VPPA plaintiff must plead, among other things, that the alleged disclosure “was not authorized by section 2710(b)(2),” which includes the ordinary business exception.

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Critically, where the complaint pleads facts showing that the exception applies, dismissal is appropriate at the pleading stage. *See Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1053-54 (9th Cir. 2015) (affirming dismissal based on ordinary-course-of-business exception). Accordingly, Plaintiffs' affirmative-defense cases do not help them because Moxy seeks dismissal based not on a hypothetical defense, but on Plaintiffs' own allegations that establish the alleged disclosure of Plaintiffs' PII was in the ordinary course of business. 18 U.S.C. § 2710(b)(2)(E).

According to Plaintiffs, "[t]he entire purpose of the OnlyFans platform is to deliver content from Creators to Fans," *i.e.* to process requests and fulfill orders. 4AC ¶ 583. To that end, Agency Defendants maintain "Vaults" of content (4AC ¶ 260(a)), communicate with Fans to "sell Fans content from the Creator's Vault," (¶ 260(c)), transmit requests to the Creator (¶ 260(d)), and respond to subscriber messages while "upsell[ing]" content (¶ 360). More particularly as to their VPPA claim, Plaintiffs expressly allege the disclosure of their PII was part of Moxy's Chatters' fulfillment of Plaintiffs' orders when they sent content through direct messages.[1] *See* 4AC ¶¶ 465, 493, 510, 530.

Moxy's ordinary business, as alleged by Plaintiffs, falls squarely within the exception as contemplated by Congress. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 625-26 (7th Cir. 2014) (stating that "we can safely assume that Congress contemplated customer service as part and parcel of the ordinary rental experience"). While video-viewing technology has advanced since the statute was passed, the medium and staffing model do not change the statute's function. Whether performed by an in-store employee or an online account representative, receiving a

---

[1] As outlined *supra*, Plaintiffs fail to allege that Moxy actually sent any video to any Plaintiff. However, these allegations are sufficient to infer that Moxy's ***ordinary*** course of business is selling content to subscribers, such that the exception applies.

customer's content request, locating the requested content, arranging payment, and delivering that content are permitted acts of request processing and order fulfillment.

Nor does it matter that Chatters are third parties because the statute focuses on *why* the information was disclosed, not the recipient's identity. *See id.* at 626 ("[T]he permissibility of disclosure under the VPPA turns on the underlying purpose for which [the defendant] provides the information to a third party."); *Rodriguez*, 801 F.3d at 1054 ("[T]he Senate Report reflects Congress' awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other businesses, may use third parties in their business operations.") (cleaned up).

At bottom, Plaintiffs' own allegations establish the exception, and their arguments to the contrary and allegations that the defendants engaged in some acts ancillary to the exception fall flat. Indeed, *Rodriguez* rejected an attempt to avoid the exception through artful pleading, holding that services involving management of a video platform would fall "comfortably within the 'order fulfillment' or 'request processing' exemptions." *Id*. This Court should do the same here.

2. Plaintiffs Cannot Defeat The Exception Using Fraud Without Satisfying Rule 9(b)

Recognizing their allegations establish the exception, Plaintiffs seek to defeat it by alleging Moxy is engaging in fraud. Opp. at 10-11. That attempt fails.

While Plaintiffs do not need to plead VPPA to the same standard as a fraud claim, their invocation of a fraudulent scheme to defeat the ordinary-course-of-business exception must be supported by allegations that meet Rule 9(b)'s heightened pleading requirements. Mot. at 24 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (2003) ("Where the claim is said to be 'grounded in fraud' or to 'sound in fraud,' the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).")). Neither Plaintiffs nor anyone else can survive dismissal merely by labeling otherwise ordinary conduct as fraudulent or making conclusory claims, even under Rule 8's less demanding standard. But that is all they do.

Specifically, Plaintiffs argue that the 4AC alleges "Moxy is not in the business of selling products," but is instead "in the business of surreptitiously managing Creator accounts." Opp. at 9-10. They continue on to claim that the actions by Chatters cannot be valid request processing and order fulfillment because the "function of defrauding Plaintiffs does not fall within the ordinary course of business exception." *Id.* at 10-13. Most egregiously, they claim "the Court has already held that alleged Chatter Scams are unlawful." *Id.* at 12. None of that is true or supported by any allegations whatsoever. Plaintiffs cite no paragraphs supporting fraud at all.[2] And the Court has not held that a Chatter Scam even *exists*, let alone that it is "unlawful." The Court's actual rulings say the opposite—Plaintiffs' RICO claims were repeatedly dismissed on the basis they had failed to plead, among other things, any fraudulent act. [Dkt. 209 at 20-21, 28-29; Dkt. 251 at 25 n.6, 33-35.]

Plaintiffs' arguments are hollow and should be dismissed as such. They cannot invoke fraud to defeat *their own allegations* that show the ordinary-course-of-business exception applies here. The VPPA claim should be dismissed.

## IV. PLAINTIFFS' UCL CLAIM STILL FAILS

The Court already rejected Plaintiffs' UCL theory in its May 19, 2026 order. Nothing in Plaintiffs' 4AC or Opposition cures the identified deficiencies.

### A. The UCL Claim Remains Grounded In Fraud And Still Fails Rule 9(b)

As an initial matter, Plaintiffs cannot evade Rule 9(b) by relabeling the same alleged course of deception as "unfair" rather than "fraudulent." Their unfair-prong theory alleges that Moxy used Chatters to impersonate Creators, concealed the Chatters' identities, and thereby induced Plaintiffs to pay money. Opp. at 14 (citing 4AC ¶¶ 444(a), 445–447, 466–472). Because that theory rests on allegedly fraudulent

---

[2] The only paragraphs cited are 4AC ¶¶ 348-355, which describe Moxy's founding and allege Moxy has certain affiliated Creators but are silent as to any supposed fraud.

conduct, Rule 9(b) applies. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to UCL claims based on a course of fraudulent conduct even if "not grounded in fraud").

The Court already told Plaintiffs that what was missing from their UCL claim was "which representations were made and relied on, or the particular circumstances surrounding such representations," each of which Rule 9(b) requires. [Dkt. 251 at 35 (citing *Kearns*) (internal quotation marks omitted).] Plaintiffs concede they have merely "repeat[ed] those allegations" the Court ruled were deficient, but ask the Court to take another look. Opp. at 14. But the allegations do not change with repetition. The 4AC still does not identify the content of a Moxy-attributable statement, who made it, when or through which Creator account it was made, which Plaintiff received it, and what purchase followed. The 4AC also fails to plead reliance, because a bare allegation that a Plaintiff generally "believed" a Creator was communicating does not identify the Moxy statement that created that belief or was relied upon to complete a purchase. Rule 9(b) does not allow Plaintiffs to base a fraud claim on broad, course-of-conduct allegations from which Moxy and the Court are meant to infer the required elements.

This claim should be dismissed for the exact same reasons it was last time.

**B. Plaintiffs' Omission Theory Does Not Save Their Claim**

Plaintiffs attempt to avoid the Court's prior ruling by repackaging their UCL misrepresentation theory as a fraud-by-omission theory. Opp. at 15-16. But that repackaging does not change the result because Plaintiffs' new omission theory depends on the ***exact same premise*** as their misrepresentation theory: that Plaintiffs believed they were talking to Creators when they were really talking to Chatters. *See* Opp. at 15 ("Moxy never disclosed that they were talking to Chatters instead of Moxy-represented Creators."). Indeed, Plaintiffs still allege that Chatters "assure Fans that they are interacting with the actual Creator," "impersonate the Creators," and communicate with subscribers while "pretending to be the Creators." 4AC ¶¶ 17, 252,

452. Plaintiffs also allege that Chatters used first-person language and falsely represented that subscribers were communicating directly with the Creators themselves. 4AC ¶¶ 447, 477, 514. Those allegations of misleading statements confirm that Plaintiffs' omission theory is not independent of the alleged affirmative deception, but is part of the same unified fraudulent course that remains subject to Rule 9(b).

Plaintiffs cannot obtain a lower pleading standard by describing the same alleged deception once as an affirmative misstatement and again as a failure to disclose the truth. In *Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, for example, the court refused to "apply the lower pleading standard to Plaintiffs' fraud by omission claim" because the omission allegations were "identical" to the misrepresentation allegations and thus constituted a "semantical attempt to evade the requirement[s] of Rule 9(b) by pleading the converse of the conduct" underlying the misrepresentation claim. 660 F. Supp. 3d 863, 877 (N.D. Cal. 2023) (cleaned up). This Court should do the same.

Even if Plaintiffs *had* properly presented an omission theory, their allegations do not satisfy Rule 9(b). An omission claim "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Allegations of that sort are nowhere in the 4AC, and Plaintiffs do not identify any.

Finally, the omission theory independently fails because Plaintiffs do not plead facts establishing a duty by Moxy to disclose. Their labels of "exclusive knowledge" and "active concealment" are conclusions, not supporting facts. Opp. at 15. And their partial-representation theory identifies no particular Moxy statement rendered misleading by the omitted Chatter identity. Without identifying the communication,

the Moxy-represented account, the speaker, and the transaction it induced, Plaintiffs cannot establish either a duty to correct a partial statement or reliance on the omission.

Accordingly, Plaintiffs cannot cure their deficient UCL claim by replacing the word "misrepresentation" with "omission." The omission theory remains subject to Rule 9(b), and fails for the same reasons the Court previously identified.

**C. Plaintiffs Fail To Allege An Inadequate Remedy At Law**

Plaintiffs argue that equitable relief under the UCL remains available, and they lack an adequate remedy at law, because the Court dismissed the majority of their legal claims and the only remaining claim against Moxy is the VPPA. Opp. at 16-17. This argument misinterprets the law.

At the pleadings stage, courts generally require facts plausibly showing that legal remedies would be inadequate; a bare request for equitable relief or the absence of a surviving damages count is not enough. *See Weizman v. Talkspace*, *Inc.*, 705 F. Supp. 3d 984, 990 (N.D. Cal. 2023) (collecting cases supporting that "courts in this District have generally required that plaintiffs at least allege the lack of a remedy at law when asserting a UCL claim"); *see also Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 840 (E.D. Cal. 2024) ("Most district courts applying *Sonner* in the Ninth Circuit have 'understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief.'") (emphasis in original, quotation omitted). In fact, in a recent VPPA-related case, the court dismissed both unfair- and unlawful-prong UCL claims because plaintiffs failed to adequately allege the absence of an adequate remedy at law. *See Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 885-86 (N.D. Cal. 2025). Plaintiffs' 4AC is defective because it contains no such allegation.

Plaintiffs also fail to plausibly allege why legal remedies are inadequate. The relevant question is not whether another damages cause of action survived dismissal; it is whether the injury Plaintiffs identify is one that can be adequately remedied through monetary damages. In *Sharma v. Volkswagen AG*, for example, the plaintiffs

devoted several paragraphs of their pleading to explaining why legal claims were unavailable to them. 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021). The court nevertheless found that equitable relief was unavailable because the plaintiffs alleged only that they suffered a "*loss of money*" and "*loss in value*" as a result of the defendant's conduct, explaining that this is "exactly the type of injury for which legal remedies are appropriate." *Id*. (emphasis in original). That requirement has been repeatedly applied in post-*Sonner* cases. *See Regueiro v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1100 (C.D. Cal. 2023) ("Our courts have [] held that, to show a lack of an adequate legal remedy, it is not enough that the complaint makes no request for damage; rather, the complaint must 'clearly allege facts suggesting that monetary damages would not make them whole.'") (collecting cases).

Here, Plaintiffs' alleged UCL injury is the payment of identifiable subscription fees, Premium Content Fees, and tips. Indeed, Plaintiffs repeatedly identify those specific losses throughout the 4AC, showing they are readily calculable. *See, e.g.*, ¶¶ 455, 485, 501. Plaintiffs identify no allegations, and make no valid argument, that monetary damages equal to those payments would not fully compensate the supposed injury. In any event, statutory damages constitute an adequate remedy at law. *See Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1035 (C.D. Cal. 2024) (noting that "Plaintiffs seek several remedies at law" including "statutory damages").

The dismissal of Plaintiffs' defective RICO and other claims means nothing more than that they could not state those claims. Plaintiffs' inability to plead valid claims does not automatically convert their belief they suffered a loss into a basis for obtaining equitable relief. The failure to affirmatively plead and plausibly demonstrate that they lack an adequate remedy at law is fatal to their UCL claim.

**D. Plaintiffs' Unlawful-Prong Claim Fails For Independent Reasons**

1. <u>The Unlawful-Prong Claim Fails With The VPPA Claim</u>

As a preliminary matter, Plaintiffs' unlawful-prong claim is predicated solely on the alleged VPPA violations. 4AC ¶ 626(a). Accordingly, Plaintiffs' unlawful-

prong theory rises or falls with their predicate VPPA claim. *See, e.g.*, *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) ("[A] claim under this prong hinges upon whether a plaintiff can formulate a claim under the predicate law"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022) ("Since those claims fail, Plaintiffs do not allege a claim under UCL's unlawful prong"). Plaintiffs' unlawful-prong UCL claim fails for the same reasons as their VPPA claim.

2. Plaintiffs Fail To Connect The Alleged VPPA Violation To Any Economic Injury

Plaintiffs also fail to connect their alleged UCL damages to any violation of the VPPA, which is independently fatal to their unlawful-prong claim.

An unlawful-prong claim requires Plaintiffs to allege "a causal connection between the harm suffered and the unlawful business activity." *Daro v. Superior Ct.*, 151 Cal. App. 4th 1079, 1099 (2007), *as modified* (July 3, 2007). "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1013 (2016), *as modified* (Mar. 11, 2016).

Here, Plaintiffs seek to establish the connection between the VPPA claim and the UCL claim by arguing they have alleged they would not have paid Premium Content Fees had they known their personal information was being shared with Chatters. Opp. at 20. But the paragraphs they cite do not say that. What those paragraphs in fact allege is that Plaintiffs paid those fees because they believed they were ***communicating directly with Creators***, not Chatters. *See* 4AC ¶¶ 444-449, 454-456 (N.Z.); ¶¶ 475-477, 482-486 (R.M.); ¶¶ 494-502 (B.L.); ¶¶ 511-522 (S.M.); ¶¶ 537-539 (A.L.). The 4AC makes clear that the alleged disclosure of Plaintiffs' data in violation of the VPPA did not cause their alleged overpayment; rather, the alleged cause was the Chatters' alleged deceptive "impersonation" of Creators.

At bottom, Plaintiffs' own allegations make clear that the harm from the VPPA—Moxy's alleged disclosure of their personally identifiable information that

shows their video viewing history—is entirely separate from the harm allegedly suffered by paying money to speak to Creators who were in fact Chatters. Because Plaintiffs do not allege that disclosure of their alleged video information affected any payment decision, they would have suffered the same asserted overpayment whether or not Moxy complied with the VPPA. Their unlawful-prong claim thus fails as a matter of law.

## V. CONCLUSION

For the foregoing reasons and those set forth in its Motion, Moxy respectfully requests that the Court dismiss the Fourth Amended Complaint against Moxy with prejudice.

DATED: September 29, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________

Oliver Rocos
Attorneys for Defendant Moxy Management

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Moxy Management, certifies that this brief contains 6,995 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: September 29, 2026

Oliver Rocos
Bill L. Clawges
Bird, Marella, Rhow,
Lincenberg, Drooks & Nessim, LLP

By: ______________________________
Oliver Rocos
Attorneys for Defendant Moxy Management