Nithin Kumar (SBN 300607)
nithin@kingfisherlawapc.com
KINGFISHER LAW APC
P.O. Box 492415
Los Angeles, California 90024
T: (408) 930-3580

Attorneys for Defendant Content X, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

N.Z., R.M., B.L., S.M., and A.L., individually and on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, BOSS BADDIES LLC, MOXY MANAGEMENT, UNRULY AGENCY LLC (also d/b/a DYSRPT AGENCY), BEHAVE AGENCY LLC, A.S.H. AGENCY, CONTENT X, INC., VERGE AGENCY, INC., AND ELITE CREATORS LLC,

Defendants.

CASE NO. 8:24-cv-01655-FWS-SSC

**REPLY IN SUPPORT OF DEFENDANT CONTENT X, INC.'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

Date: October 22, 2026
Time: 10:00 a.m.
Dept.: 10D

Assigned to Hon. Fred W. Slaughter

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 3

II. DISCUSSION .......... 4

A. Failing to Respond to an Argument Raised in a Motion to Dismiss Concedes That Argument .......... 4

B. By Failing to Respond to Content X's Motion, Plaintiffs Have Conceded that Content X Should Be Dismissed .......... 5

1. Plaintiffs Concede That N.Z., R.M., and A.L. Have No Claim Against Content X .......... 7

2. Plaintiffs Fail to Respond to Content X's VPPA Arguments .......... 8

3. Plaintiffs' Blanket Incorporation of Their Other Oppositions Does Not Supply the Missing Response .......... 12

C. Plaintiffs' Arguments Directed at Verge and the Other Agency Defendants Fail on the Merits as to Content X .......... 13

1. The Forum Selection Clause Independently Bars B.L.'s and S.M.'s Claims Against Content X .......... 13

2. The 4AC Does Not Cure the UCL Deficiencies Previously Identified by the Court .......... 15

III. CONCLUSION .......... 16

## I. INTRODUCTION

Content X filed its own Motion to Dismiss the Fourth Amended Complaint ("4AC"), separate from its Joinder to the other Agency Defendants' motions. (Dkts. 273, 274.) The Motion raised grounds specific and unique to Content X, including that the 4AC fails to allege any facts showing (i) that three of the five Plaintiffs—N.Z., R.M., and A.L.—have any connection whatsoever to Content X; (ii) that any Plaintiff obtained any videos from Content X or any Content X-affiliated Creator; and (iii) that Content X disclosed any Plaintiffs' personally identifiable information. (Dkt. 273 at 2-4.)

Plaintiffs' Opposition to Certain Agencies' Motions to Dismiss ("Opposition") responds to none of those arguments. (Dkt. 286.) The Opposition confuses Content X's separate Motion to Dismiss (Dkt. 273) with Content X's one-page Joinder (Dkt. 274) to the other Agency Defendants' Motions. (*See* Dkt. 286 at 1, 11.) As a result, Plaintiffs have completely failed to respond to any of the Content X-specific arguments asserted in its Motion. Instead, the Opposition is directed almost entirely to arguments made by Verge and allegations in 4AC unique to Verge. While the Opposition also incorporates Plaintiffs' briefs opposing the other Agency Defendants' motions, none of those other briefs make any reference to Content X. (*Id.* at 11.) Because Plaintiffs fail to respond to any of the Content X-specific arguments, Plaintiffs have conceded that N.Z., R.M., and A.L. have no claim against Content X and that the 4AC fails to allege facts necessary to support a VPPA claim or UCL claim against Content X specifically.

Plaintiffs' Opposition does address two other arguments made in Content X's Motion, but only in reference to the other Agency Defendants' motions. First, as this Court previously held in December 2025 when it rejected Plaintiffs' identical arguments (Dkt. 209 at 30-32), the England and Wales forum selection clause bars the claims of B.L. and S.M., the non-California Plaintiffs and the only Plaintiffs with any alleged connection to Content X. Second, the UCL claim should be

dismissed with prejudice because the 4AC does nothing to cure the deficiencies the Court identified in previously dismissing that claim from the Second Amended Complaint. *See Glasscell PC v. Aetna Life Ins. Co.*, 2025 WL 740181, at *8 (C.D. Cal. Feb. 7, 2025) (Slaughter, J.) (dismissing claims with prejudice where prior order "explained precisely what was deficient" but "despite amendment, Plaintiff still fails to sufficiently allege any cause of action").

After five complaints, Plaintiffs have yet to plead a viable claim against Content X. Content X—a small agency that dissolved and went out of business before this lawsuit was filed—has completely exhausted its resources and cannot afford to continue defending itself should Plaintiffs be given yet another opportunity to amend their claims. Content X respectfully requests that the Court grant its Motion and finally dismiss Content X from this action with prejudice.

## II. DISCUSSION

### A. Failing to Respond to an Argument Raised in a Motion to Dismiss Concedes That Argument

It is well established that a plaintiff who fails to address an argument raised in a motion to dismiss concedes that argument and "has effectively abandoned his claim." *Horsley v. Kaiser Found. Hosps., Inc.*, 2025 WL 3205857, at *2 (9th Cir. Nov. 17, 2025), *cert. denied*, 146 S. Ct. 2689, 225 L. Ed. 2d 233 (2026) (quoting *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)); *see Montgomery v. Specialized Loan Servicing, LLC*, 772 F. App'x 476, 477 (9th Cir. 2019) ("The district court properly dismissed plaintiffs' remaining claims because plaintiffs failed to respond to the arguments raised in defendants' motion to dismiss these claims."); *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition."). A court need not construct a response that a party has chosen not to make. *See Hiken v. Dep't of Def.*, 836 F.3d 1037, 1046 (9th Cir. 2016); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929

(9th Cir. 2003).

Consistent with that authority, this Court and others within this District routinely dismiss claims, and treat arguments as conceded, where the plaintiff's opposition fails to respond to them. *See Trevillyan v. Carpenters Servs. Admin. Corp.*, 2026 WL 1770518, at *3 (C.D. Cal. May 6, 2026) (where plaintiff's opposition failed to address separate defendant's argument for dismissal, plaintiff conceded defendant's dismissal); *Nguyen v. Westlake Servs. Holding Co.*, 2024 WL 694909, at *11 (C.D. Cal. Feb. 5, 2024) (Slaughter, J.) (granting motion to dismiss as to claim plaintiff failed to address in opposition); *Castillo v. Hoag Mem'l Hosp. Presbyterian*, 2023 WL 12167633, at *3 (C.D. Cal. July 3, 2023) (Slaughter, J.) (granting motion to dismiss for lack of Article III standing where plaintiffs failed to address injury requirement in opposition; "the court finds Plaintiffs, by failing to respond to Defendant's arguments regarding injury, concede that they have not suffered an injury" (citing *Silva*, 2011 WL 7096576, at *3)).

### B. By Failing to Respond to Content X's Motion, Plaintiffs Have Conceded that Content X Should Be Dismissed

Content X filed its own Motion to Dismiss the claims asserted against it in Plaintiffs' 4AC. (Dkt. 273.) That Motion was filed separately from, and in addition to, Content X's Joinder to the motions of Moxy, Elite Creators, and Verge. (Dkt. 274.) Content X's Motion raised four grounds for dismissal. *First*, Plaintiffs N.Z., R.M., and A.L. are not alleged to have subscribed to any Creator allegedly managed by Content X, so nothing connects them to Content X now that the RICO and conspiracy claims have been dismissed. (Dkt. 273 at 3.) *Second*, B.L. and S.M., the only remaining Plaintiffs, are non-California Plaintiffs whose claims are subject to the forum selection clause in the OnlyFans Terms of Service, as the Court previously held as to Content X and the other Agency Defendants. (*Id.* (citing Dkt. 209 at 31-32).) *Third*, the VPPA claim fails for multiple reasons, including because (i) the 4AC does not allege that any Plaintiff "requested or obtained specific video materials" from

Content X or any of its alleged Creators, 18 U.S.C. § 2710(a)(3), (ii) the 4AC does not plead fraud sufficient to defeat the VPPA's ordinary course of business exception, (iii) the Terms of Service affirmatively disclose that Creators may use third-party agencies, and (iv) the 4AC does not allege any specific disclosure of any Plaintiff's PII by Content X. (Dkt. 273 at 4.) *Fourth*, Content X's Motion argued the UCL claim should be dismissed because the 4AC does not cure the deficiencies the Court identified when it previously dismissed that claim. (*Id.*) In summary, while Content X's Motion relies on the same reasoning as the other Agency Defendants' motions in certain respects, it also raises grounds for dismissal that turn on what the 4AC does—and, more to the point, does not—allege about Content X specifically.

Plaintiffs' Opposition to Content X's Motion categorically fails to address any of Content X's specific arguments. By including Dkt. 273 in a string of docket numbers, the first page of the Opposition confirms that it is in fact the brief Plaintiffs submitted in response to Content X's Motion. (Dkt. 286 at 1.) Inexplicably, however, the Opposition never mentions Content X, its Motion to Dismiss the 4AC, or the Content X-specific arguments made therein until the very final paragraph of the Opposition. (*Id.* at 11.) That paragraph merely asserts that "Content X's, and Unruly and Behave's Joinders are without merit" and "provide no independent basis or facts" for dismissal. (*Id.* at 11.) The Opposition thus never acknowledges that Content X filed a separate Motion to Dismiss that identified defects in the 4AC unique to Content X, nor does the Opposition make any attempt to address those defects.

Accordingly, as discussed below, Plaintiffs have conceded each of Content X's arguments for dismissing each Plaintiff's VPPA and UCL claims asserted against it in the 4AC. *See Montgomery*, 772 F. App'x at 477; *Trevillyan*, 2026 WL 1770518, at *3; *Castillo*, 2023 WL 12167633, at *3; *Silva*, 2011 WL 7096576, at *3.[1]

---

[1] *See also, e.g.*, *Bellaire Recovery, Inc. v. Premera Blue Cross Blue Shield of Alaska*, 2026 WL 826641, at *10 (C.D. Cal. Mar. 23, 2026) ("Plaintiff does not

### 1. Plaintiffs Concede That N.Z., R.M., and A.L. Have No Claim Against Content X

The first argument in Content X's Motion is straightforward and indisputable: N.Z., R.M., and A.L. are not alleged to have subscribed to any Creator allegedly managed by Content X, and with the RICO and conspiracy theories now dismissed, nothing connects those Plaintiffs to Content X. (Dkt. 273 at 3 (citing 4AC ¶¶ 438, 458, 525).) The 4AC alleges that the four Creators attributed to Content X—Bella Thorne, Abella Danger, Mathilde Tantot, and Pauline Tantot—were subscribed to only by B.L. and S.M. (4AC ¶ 405.) None of those Creators appears among the accounts to which N.Z., R.M., or A.L. are alleged to have subscribed. (*Id.* ¶¶ 438, 458, 525.)

Plaintiffs offer no response in their Opposition to Content X's Motion or any of their other briefs. They identify no allegation linking N.Z., R.M., or A.L. to Content X, and they advance no theory under which those Plaintiffs could maintain any claim against an agency with which they never interacted. Nor could they, because "named plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004)). Plaintiffs' silence is all the more telling because they readily acknowledge this same defect where other agencies are

---

address this argument at all in Opposition and therefore concedes" the point); *Kocontes v. Orange Cnty. Sheriff's Dep't*, 2020 WL 9071688, at *3 (C.D. Cal. Dec. 30, 2020) ("Plaintiff conceded this point by failing to oppose it"), *aff'd*, 2022 WL 42471 (9th Cir. Jan. 5, 2022); *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, 2017 WL 2992739, at *2 n.1 (C.D. Cal. May 11, 2017) ("when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

concerned. As to Verge, Plaintiffs "do not dispute" that the 4AC contains no allegation that R.M., N.Z., S.M., or B.L. subscribed to a Verge-managed Creator. (Dkt. 286 at 8.) As to Elite Creators, Plaintiffs likewise "do not dispute" that R.M. did not subscribe to any Creator it allegedly managed. (Dkt. 282 at 2.)

The same defect disposes of the California Unfair Competition Law ("UCL") claim against Content X altogether. The 4AC brings the UCL claim only against the Agency Defendants "on behalf of California Subclass" and defines the "California Plaintiffs" as N.Z. and R.M. (4AC ¶ 544; *id.* at 170 (Count IV).) The UCL allegations concerning solicitation and reliance refer exclusively to the California Plaintiffs and cite only the paragraphs describing N.Z.'s and R.M.'s experiences. (*Id.* ¶¶ 627-632 (citing *id.* ¶¶ 444-449, 464-479).) Because neither N.Z. nor R.M. is alleged to have subscribed to a Content X-affiliated Creator (*id.* ¶¶ 438, 458), there is no California Plaintiff who could assert a UCL claim against Content X. *See Martinez*, 46 F.4th at 970; *Easter*, 381 F.3d at 961-62. The UCL claim against Content X therefore fails at the threshold, independent of the additional substantive deficiencies addressed in Section C.2 below.

Indeed, in addition to the tacit concession resulting from their failure to respond to Content X's Motion, Plaintiffs also expressly concede this pleading defect in their motion for leave to file a *fifth* amended complaint. (*See* Dkt. 268 at 5 (seeking leave to add a new proposed plaintiff N.T. who allegedly "subscribed to Creators represented by Content X" because "***neither of the existing California Plaintiffs [N.Z. and R.M.] had subscribed to a Creator represented by Content X***" (emphasis added)).) Plaintiffs thus acknowledge that there is no basis for plaintiffs who did not subscribe to Creators affiliated with Content X to assert claims against Content X.

For this reason alone, the Court should dismiss—with prejudice—the claims asserted by N.Z., R.M., and A.L. as to Content X.

**2. Plaintiffs Fail to Respond to Content X's VPPA Arguments**

Content X's Motion identified multiple reasons why Plaintiffs have failed to

state a VPPA claim against Content X, including that the 4AC does not allege any videos that were provided by Content X or that Content X disclosed any PII in an unauthorized manner. (Dkt. 273 at 4.) To state a VPPA claim, a plaintiff must allege that he or she "requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3); *see In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (VPPA plaintiff must plead "three distinct elements": (1) a person's identity, (2) "the video material's identity," and (3) the connection between them). Additionally, a plaintiff must allege that their personally identifiable information ("PII")—as specifically defined by the statute—was disclosed by the defendant in a manner that "was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Despite Content X raising these issues in its Motion, the Opposition fails to show how the 4AC pleads any of those elements as to Content X.

***Videos.*** Content X's Motion sought dismissal based on "Plaintiffs' failure to allege any videos sent to them by Content X or any of their alleged Creators." (Dkt. 273 at 4 (citing 4AC ¶¶ 494d, 494h).) The only VPPA argument in the Opposition responsive to Content X's Motion is Plaintiffs' defense of A.L.'s claim against Verge. Plaintiffs support that claim by citing allegations that A.L. subscribed to Verge-managed Creators and requested and viewed videos sent through Verge's Chatters. (Dkt. 286 at 9 (citing 4AC ¶¶ 195-199, 430, 525, 530, 580, 584-585).) But none of those allegations concern Content X, as A.L. is not alleged to have subscribed to a Content X-affiliated Creator at all. (4AC ¶ 525.) The Opposition points to nothing comparable as to Content X, and the 4AC contains nothing comparable. The only transactions the 4AC ties to a Content X-affiliated Creator are B.L.'s purchase of unspecified "digital content" from Pauline Tantot and a "photo" from Mathilde Tantot (*id.* ¶ 494(d), (h)), and S.M.'s purchase of unspecified "content" from Bella Thorne and Abella Danger (*id.* ¶ 511). When Plaintiffs meant to allege the purchase of a video, they said so expressly—as they did for B.L.'s purchases from a Creator attributed to a different agency. (*Id.* ¶ 494(e), (g), (j).) The only other video allegations

bearing on B.L. and S.M. are generic assertions that they viewed videos "sent by one or more agents or contractors of the Agency Defendants" (*id.* ¶¶ 493, 510), which identify neither Content X, nor a Content X-affiliated Creator, nor any particular video.

These omissions are fatal. The VPPA protects only information that "identifies a person as having requested or obtained specific video materials or services from a video tape service provider," 18 U.S.C. § 2710(a)(3)—that is, information that "would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). A plaintiff who does not allege that he actually requested or obtained a specific video from the defendant therefore cannot state a VPPA claim. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095; *Benson v. SimpleNursing, LLC*, 2026 WL 1045614, at *4 (D. Del. Apr. 17, 2026) (purchase of subscription insufficient). Because the 4AC does not allege that any Plaintiff requested or obtained a video—let alone a specific one—from Content X or a Content X-affiliated Creator, the VPPA claim against Content X fails for this reason alone, and Plaintiffs, by failing to respond, have conceded as much.

***Disclosure of PII.*** Content X's Motion also sought dismissal based on "Plaintiffs' failure to allege any specific disclosure of any of their PII *by Content X specifically*." (Dkt. 273 at 4 (emphasis added).) Plaintiffs defend the disclosure element only as to Verge, by pointing to the Court's prior order and to generalized allegations that Plaintiffs shared their names and photographs "with Creators" and that the Agency Defendants gave Chatters access to Creator accounts. (Dkt. 286 at 8-9.) Crucially, Plaintiffs cannot identify a single factual allegation that any Plaintiff shared PII with a Content X Creator's account, much less that Content X disclosed that information to anyone.

Absent any specific factual allegations that Content X disclosed any Plaintiff's PII, the 4AC fails to establish a VPPA violation by Content X. The statute imposes liability only on a "video tape service provider who knowingly discloses, to any

person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). A plaintiff therefore must allege that the defendant itself made such a disclosure. *See Mollett*, 795 F.3d at 1066. Generalized allegations that unspecified "Agency Defendants" gave Chatters access to unspecified Creator accounts do not allege that Content X disclosed anything—let alone that Content X knowingly disclosed information identifying B.L. or S.M. as having requested or obtained a specific video. The VPPA claim against Content X fails on this independent ground as well, and Plaintiffs, by failing to respond, have conceded as much.

***Ordinary course of business.*** Content X's Motion further sought dismissal based on "Plaintiffs' failure to plead fraud to defeat the application of the ordinary course of business exception." (Dkt. 273 at 4.) The Ninth Circuit has explicitly held that a VPPA plaintiff must plead, among other things, that the alleged disclosure "was not authorized by section 2710(b)(2)," which includes the ordinary course of business exception. *Mollett v. Netflix, Inc.*, 795 F.3d at 1066 (dismissing claim on basis Plaintiff had pled facts supporting that an exception applied). To avoid the application of the ordinary course of business exception, Plaintiffs have argued that Content X and the other defendants' conduct was fraudulent. (*See* Dkt. 283 at 10-11.) But as Content X noted in its motion, Plaintiffs have failed to allege fraud with the particularity demanded by Rule 9(b)

The Opposition's response is addressed exclusively to Verge's argument that its Chatter services were part of the managerial services it provides to its Creators. (Dkt. 286 at 10; *see also* Dkt. 283 (Moxy Opp.) at 9-10.) Yet nowhere do Plaintiffs explain how the 4AC pleads, with the particularity Rule 9(b) requires, any fraudulent "Chatter Scam" involving Content X or a Content X Creator. Plaintiffs identify no misrepresentation, no date, no Chatter, and no communications between Content X and any Plaintiff pled anywhere in the 4AC. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (Rule 9(b) "does not allow a complaint to merely lump

multiple defendants together" but requires plaintiffs to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud" (citation omitted)).

Nor can Plaintiffs avoid this deficiency by recasting the exception as an affirmative defense they need not address (Dkt. 283 at 17-18). A VPPA plaintiff must allege that the disclosure "was not authorized by section 2710(b)(2)," *Mollett*, 795 F.3d at 1066, and the Ninth Circuit has affirmed dismissal at the pleading stage where the complaint's own allegations placed the challenged disclosure within the order-fulfillment and request-processing exception. *See Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015). Here, Plaintiffs allege that the agencies' Chatters exist to "sell Fans content from the Creator's Vault" and relay Fans' content requests to Creators (4AC ¶ 260(c)–(d)), which is precisely request processing and order fulfillment, and Plaintiffs plead no particularized fraud involving Content X that could take the alleged disclosures outside the exception. Because the 4AC's own allegations place any alleged disclosure within the ordinary course of business exception, and Plaintiffs neither plead nor identify any particularized fraud by Content X that could remove it from that exception, the 4AC fails to plead the fourth element of a VPPA claim as to Content X. *See Mollett*, 795 F.3d at 1066. The VPPA claim against Content X should be dismissed on this ground as well.

**3. Plaintiffs' Blanket Incorporation of Their Other Oppositions Does Not Supply the Missing Response**

Plaintiffs cannot avoid these concessions through incorporation by reference. Plaintiffs' Opposition to Content X's Motion incorporates their oppositions to Moxy's and Elite Creators' motions (Dkt. 286 at 1 n.1, 11), and those oppositions in turn purport to incorporate Plaintiffs' response to Content X (Dkt. 282 at 5 n.1; Dkt. 283 at 7 n.1). This circular cross-incorporation cannot generate a response that none of the briefs actually contain. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir.

1996) ("[T]he incorporation of substantive material by reference is not sanctioned by the federal rules . . . ."). Content X is not mentioned anywhere in Plaintiffs' briefs filed in opposition to Moxy's and Elite Creators' motions. Each brief defends the claims against a different agency by citing allegations about that agency, its Creators, and the Plaintiffs who subscribed to them. To the extent those briefs contain any argument framed in general terms, it rests on allegations about other defendants and does not identify a single allegation concerning Content X. As in *Trevillyan*, an opposition that treats separately named defendants as interchangeable does not respond to the arguments of the defendant it ignores. *See Trevillyan*, 2026 WL 1770518, at *3. It is not the burden of Content X, or of the Court, to comb through Plaintiffs' briefing directed at other parties in search of arguments Plaintiffs never made as to Content X. *See Indep. Towers*, 350 F.3d at 929; *Hiken*, 836 F.3d at 1046.

Because Plaintiffs have failed to respond to the grounds raised in Content X's Motion that are specific to Content X, those grounds are conceded. Those concessions dispose of every claim by N.Z., R.M., and A.L., and of the VPPA and UCL claims of B.L. and S.M., against Content X.

**C. Plaintiffs' Arguments Directed at Verge and the Other Agency Defendants Fail on the Merits as to Content X**

Plaintiffs' Opposition and their other briefs do address two issues that Content X raised in common with other Agency Defendants—the forum selection clause and the UCL claim—but only as to those other defendants. Because Content X's arguments on those issues are materially identical to Verge's (as to the forum selection clause) and to Moxy's and Elite Creators' (as to the UCL claim), Content X addresses Plaintiffs' arguments on the merits and explains below why they fail as to Content X.

**1. The Forum Selection Clause Independently Bars B.L.'s and S.M.'s Claims Against Content X**

B.L. and S.M., the only Plaintiffs alleged to have subscribed to a Content X-affiliated Creator, are non-California residents whose claims fall within the Terms of

Service's forum selection clause. (Dkt. 60-1, Ex. A ¶ 16(a).) Plaintiffs' arguments, directed solely at Verge (Dkt. 286 at 1-7), provide no basis to depart from the Court's December 2025 ruling enforcing that clause as to Content X. (Dkt. 209 at 31-32.)

*First*, Local Rule 7-18 (Dkt. 286 at 2) does not govern a Rule 12 motion directed at a new operative pleading, and as the Opposition acknowledges, the Court may revisit its interlocutory rulings at any time. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

*Second*, the December 2025 ruling should govern. After several pages of analysis, the Court found that "the broad scope of the forum selection clause covers Plaintiffs' claims," which are "logically or causally connected to the Terms of Service," notwithstanding the Terms of Service's statement that it confers no rights on third parties. (Dkt. 209 at 30–32.) The May 2026 order permitted the non-California Plaintiffs' claims "to proceed at this stage" (Dkt. 251 at 19) based on the same no-third-party-rights language the Court had already considered. (*Id.* (citing SAC ¶ 235).) Plaintiffs attribute the change to "new allegations in the SAC" (Dkt. 286 at 3), but identify none bearing on the forum question, and none exists: the Terms of Service, the clause, and B.L.'s and S.M.'s relationship to Content X are unchanged between the FAC, the SAC, and the 4AC.

*Third*, Plaintiffs' principal argument—that Verge is not a party to, and may not assert rights under, the Terms of Service (Dkt. 286 at 3)—proves nothing. The closely related doctrine exists precisely to allow non-signatories to invoke a forum selection clause; it asks whether their alleged conduct is "closely related to the contractual relationship," not whether the contract confers rights on them. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 & n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." (citation omitted)).

*Fourth*, Plaintiffs' assertion that their remaining claims rest "exclusively" on the Agency Defendants' own conduct (Dkt. 286 at 4) ignores the 4AC, which alleges

that B.L. and S.M. subscribed, messaged, and purchased content on OnlyFans in reliance on OnlyFans' representations. (4AC ¶¶ 488–494, 504–511.) Those claims arise from their "use of OnlyFans," which the clause expressly covers.

*Fifth*, Plaintiffs' remaining objections (Dkt. 286 at 4-7) fail. The Supreme Court has enforced a nonnegotiated forum selection clause in a consumer form contract, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991), and this Court has already rejected Plaintiffs' public policy objection as to B.L. and S.M. (Dkt. 117 at 13–14).

*Sixth*, and independently, the Fan-Creator Contract—which Plaintiffs allege "governs . . . each Fan/Creator Transaction" (4AC ¶ 227(e))—requires non-U.K. and non-E.U. Fans to bring "any claim under this agreement" in England and Wales. (Dkt. 267-1, Ex. A ¶ 12(b)(ii); *see* Dkt. 267 at 15-17; Dkt. 274.) Because Plaintiffs allege that Content X acted "as the agent of the Creator" (4AC ¶ 260(b); *see id.* ¶ 411), they cannot avoid the forum the Creators agreed to by suing their alleged agent. *See Manetti-Farrow*, 858 F.2d at 514 & n.5.

For all these reasons, the Court should once again apply the forum selection clause to dismiss B.L.'s and S.M.'s claims against Content X, and this time, with prejudice.

### 2. The 4AC Does Not Cure the UCL Deficiencies Previously Identified by the Court

Even apart from the absence of any California Plaintiff with a UCL claim against Content X (*see* Section B.1, *supra*), the UCL claim fails because the 4AC does not cure the deficiency the Court identified in dismissing that claim from the Second Amended Complaint: Plaintiffs' failure to "specify which representations were made and relied on, or 'the particular circumstances surrounding such representations.'" (Dkt. 251 at 35 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)).) As to Content X, the 4AC is unchanged in that respect. It identifies no representation made by or on behalf of Content X or any Content X-

affiliated Creator to any Plaintiff, and neither California Plaintiff is alleged to have communicated with a Content X-affiliated Creator's account at all. (4AC ¶¶ 438, 458.) Having been told precisely what was missing, Plaintiffs failed to supply it, and dismissal without leave to amend is warranted. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *Glasscell PC v. Aetna Life Ins. Co.*, 2025 WL 740181, at *8 (C.D. Cal. Feb. 7, 2025) (Slaughter, J.).

Plaintiffs' briefs do not suggest otherwise. Their defense of the UCL claim, offered only in their oppositions to Moxy and Elite Creators, rests entirely on allegations about those agencies' Creators and, for their omission theory, on Moxy's alleged services agreement. (Dkt. 283 at 14-16; Dkt. 282 at 11.) None of those allegations concerns Content X, and Rule 9(b) does not permit Plaintiffs to "merely lump multiple defendants together." *Swartz*, 476 F.3d at 764; *see Kearns*, 567 F.3d at 1125-27. Plaintiffs' "unlawful" prong theory fares no better, because it depends entirely on the VPPA claim (Dkt. 283 at 25), which fails as to Content X for the reasons above. The UCL claim against Content X should be dismissed.

## III. CONCLUSION

For the foregoing reasons, and for the reasons stated in Content X's Motion and in the motions it joined, Content X respectfully requests that the Court grant its Motion and dismiss—with prejudice—all claims asserted against Content X in the Fourth Amended Complaint.

Respectfully submitted,

DATED: September 29, 2026 KINGFISHER LAW APC

By: */s/ Nithin Kumar*
Nithin Kumar
Attorneys for Defendant Content X, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Content X, Inc. certifies that this brief contains 4,787words, which complies with the word limit of L.R. 11-6.1.

DATED: September 29, 2026 KINGFISHER LAW APC

By: */s/ Nithin Kumar*

Nithin Kumar

Attorneys for Defendant Content X, Inc.