UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC Date: October 20, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND [268]; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT [265-267, 271-274]**

Plaintiffs N.Z., R.M., B.L., S.M., and A.L. bring this case against Defendants Fenix International Limited ("Fenix International" or "FIL"), Fenix Internet LLC (individually "Fenix Internet," and together with Fenix International, "Fenix Defendants"), Boss Baddies, LLC ("Boss Baddies"), Moxy Management ("Moxy"), Unruly Agency LLC ("Unruly"), Dysrpt Agency ("Dysrpt"), Behave Agency LLC ("Behave"), A.S.H. Agency ("A.S.H"), Content X, Inc. ("Content X"), Verge Agency, Inc. ("Verge"), and Elite Creators LLC ("Elite Creators") (collectively, "Defendants"). (*See generally* Dkt. 262 ("Fourth Amended Complaint" or "4AC").)

Before the court is Plaintiffs' Motion for Leave to Amend the 4AC. (Dkt. 268.) Also before the court are motions to dismiss filed by: (1) Fenix Defendants, (Dkt. 265); (2) Elite Creators, (Dkt. 266); (3) Moxy, (Dkt. 267); (4) Verge, (Dkt. 271); Content X (Dkt. 273); and Behave and Unruly (Dkt. 276) (collectively, "Motions to Dismiss"). Behave and Unruly join the Motions to Dismiss filed by Fenix Defendants, Elite Creators, Moxy, and Verge. (Dkt. 272.) Context X joins the Motions to Dismiss filed by Elite Creators, Moxy, and Verge. (Dkt. 274.) These matters are fully briefed. (Dkts. 277–287, 290–295.) The court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral

hearings."); L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Accordingly, the **hearing** set for **October 22, 2026**, is **VACATED** and **OFF CALENDAR**. Based on the state of the record, as applied to the relevant law, Plaintiffs' Motion for Leave to Amend is **DENIED** and the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.**

## I. Background

### A. Factual Allegations

Plaintiff's 4AC alleges the following facts. OnlyFans is a social media platform known for hosting sexual content with hundreds of millions of users ("Fans"). (4AC ¶ 3.) The website states that the platform "empower[s] creators to…develop authentic connections with their fans." (4AC ¶ 205.) To that end, the platform offers users a list of Subscription Benefits that includes the ability to directly message "specific people who post content on the platform ('Creators')." (4AC ¶¶ 3, 15.) Fans are encouraged "to subscribe to their favorite Creators so they can access VIP pages that promise a more intimate interaction—what some describe as a 'girlfriend experience' or a 'really real' experience where you 'get to know people.'" (4AC ¶ 15.) The "authenticity of the personal interaction between Fans and Creators" is what distinguishes OnlyFans from other platforms where users can get sexual "content for free." (*Id.* ¶ 14.) In its Terms of Use, "OnlyFans promises: 'We will use reasonable care and skill in providing OnlyFans to you.'" (4AC ¶ 219.)

Plaintiffs are users of OnlyFans who "subscribed to the accounts of one or more Creators" on the platform. (4AC ¶ 29.) They allege that rather than interacting with specific Creators, users who purchased a subscription "end up—unknowingly and without their consent—communicating with professional 'chatters' hired to impersonate that Creator in order to convince Fans to spend even more money on the platform." (4AC ¶ 3.) "Chatters" are hired by management agencies "operating OnlyFans accounts on behalf of multiple Creators" and are often "low-cost, yet well-educated, workers who can convince Fans they are engaged in 'authentic' communication with a particular Creator." (4AC ¶ 4.) Plaintiffs allege that OnlyFans "knows about the agencies perpetrating the Chatter Scams," but "does nothing to stop

the use of Chatters in violation of its promises to the Fans on its platform." (4AC ¶¶ 7, 19, 282.)

OnlyFans is owned and operated by Fenix International, and its subsidiary, Fenix Internet, "collects and receives all OnlyFans-related payments" from users located in the United States. (4AC ¶¶ 43, 46.) The remaining defendants, including Boss Baddies, Moxy, Unruly, Dysrpt, Behave, A.S.H., Content X, Verge, and Elite Creators (collectively, "the Agency Defendants") are all management agencies that "represented at least one Creator subscribed to and followed by a Plaintiff." (4AC ¶ 50.)

**B. Procedural Background**

On July 29, 2024, Plaintiffs brought a putative class action against Defendants asserting a wide variety of claims including fraud, breach of contract, invasion of privacy, and violations of RICO. (*See generally* Dkt. 1 ("Complaint").) In the over two years since litigation commenced, Plaintiffs have amended their Complaint four times and the court has ruled on two rounds of various motions to dismiss. (Dkts. 209, 251 ("Prior Orders").)

**1.** *Early Motions and Scheduling Order*

The first set of motions to dismiss in this case was filed in October 2024. (*See generally* Dkt.) On October 25, 2024, the Fenix Defendants filed a Motion to Dismiss for *Forum Non Conveniens* ("FNC"), (Dkt. 60), and a Motion to Preclude the Use of Pseudonyms, (Dkt. 61.) That same day, the Fenix Defendants, Elite Creators, Moxy Management, Verge, and Content X filed motions to dismiss for failure to state a claim under Rule 12(b)(6). (Dkts. 62, 64–67.) Defendants then stipulated to withdraw their Rule 12(b)(6) motions pending the resolution of the Fenix Defendants' FNC Motion, (Dkt. 70), and the court vacated those motions without prejudice to refiling on November 1, 2024, (Dkt. 71).

On February 5, 2025, the court ordered the parties to file an amended Joint Rule 26(f) Report with a completed schedule of pretrial and trial deadlines. (Dkt. 110.) After the parties complied, the court entered a Scheduling Order on February 18, 2025. (Dkt. 114.) Importantly, the Scheduling Order set October 23, 2025, as the deadline to amend the pleadings or add new parties. (Dkt. 114 at 1.)

**2.** *Plaintiffs' First Amended Complaint and Related Motions to Dismiss*

On April 9, 2025, the court issued its ruling on the Fenix Defendants' FNC Motion, (Dkt. 117), and shortly after, on April 23, 2025, Plaintiffs filed their First Amended Complaint (Dkt. 118.) Exactly a month later, Defendants filed separate motions to dismiss. (Dkts. 121, 124–127.) Then on December 12, 2025, the court ruled on Defendants' motions to dismiss Plaintiffs' First Amended Complaint. (Dkt. 209.) The court granted the motions. (Dkt. 209 at 34.) Specifically, the court found that Plaintiffs had not adequately alleged that the court could exercise general or specific jurisdiction over the Fenix Defendants. (Dkt 209 at 32.) The court also found that Plaintiffs had failed to sufficiently allege their (1) RICO claims; (2) VPPA claims; (3) CIPA and Federal Wiretap claims; (4) state-law claims for fraudulent data access; (5) breach of contract claims; (6) fraud and deceit claims; and (7) UCL and false advertising claims. (Dkt. 209 at 21–29.) Because the court could not determine at that early stage of litigation that granting leave to amend would be futile, it granted Plaintiffs leave to amend to cure the jurisdictional, venue, and pleading deficiencies that the court identified. (Dkt. 209 at 34.)

**3.** *Plaintiffs' Second Amended Complaint and Related Motions to Dismiss*

Plaintiffs then filed their Second Amended Complaint on January 9, 2026. (Dkt. 218.) On January 23, 2026, Defendants again filed separate motions to dismiss. (Dkts. 225, 227–231.) Then on May 19, 2026, the court ruled on Defendants' motions to dismiss Plaintiffs' Second Amended Complaint. (Dkt. 251.)

The court again found that Plaintiffs failed to adequately their (1) RICO claims; (2) VPPA claim against the Fenix Defendants; (3) breach of contract claims regarding direct messaging representations; (4) breach of contract claims regarding third-party beneficiaries; (5) fraud and deceit claims; (6) UCL claim against Fenix Defendants; and (7) false advertising claim against Fenix Defendants. (Dkt. 251 at 39.) Because the court found that amendment of these claims would be futile, it denied leave to amend those specific claims. (Dkt. 251 at 39.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC Date: October 20, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

The court also dismissed Plaintiffs' (1) UCL claim against the Agency Defendants; (2) claims for failure to provide a platform with reasonable care and skill; (3) and claims for implied covenant of good faith and fair dealing. (Dkt 251 at 39.) For these claims, the court granted Plaintiffs leave to amend to cure the deficiencies described in its Order. (Dkt. 251 at 39.)

**4.** *Plaintiffs' Third Amended Complaint*

On June 17, 2026, Plaintiffs filed their Third Amended Complaint. (Dkt. 259.) Plaintiffs' Third Amended Complaint re-alleged several of Plaintiffs' claims that the court had dismissed without leave to amend in its May 19, 2026, Order. (Dkt. 259 at 158-258.) It also added two new plaintiffs without seeking the court's leave to add parties.

On June 23, 2026, Plaintiffs met and conferred with Defendants. (Dkt. 268-1 ("Carey Decl.") ¶ 3.) At the meeting, Defendants informed Plaintiffs that they were "considering whether to file a motion for sanctions for leaving the dismissed claims in the Third Amended Complaint and for adding two new plaintiffs after the deadline to add parties had passed." (Carey Decl. ¶ 4.) Plaintiff then agreed to file a Fourth Amended Complaint and separately seek leave to amend the complaint and add new plaintiffs. (Carey Decl. ¶ 5.) They also informed Defendants that they would seek to amend back in their promissory estoppel claim, that had previously been pleaded alongside their breach of contract claims. (Carey Decl. ¶ 6.)

**5.** *Plaintiffs' Fourth Amended Complaint and Related Motions to Dismiss*

On July 2, 2026, nearly two full years after Plaintiffs' initial Complaint was filed, Plaintiffs filed their Fourth Amended Complaint. (Dkt. 262.) The 4AC removes the previously dismissed claims, adds a claim for promissory estoppel, and adds two new plaintiffs. (Dkt. 262.) The Plaintiffs' 4AC now pleads the following four claims:[1]

1. Violation the Federal Video Privacy Protection Act ("VPPA") against the Agency Defendants;

[1] Only N.Z. and R.M. plead claims against Fenix Defendants. (SAC ¶ 24.)

2. Breach of Contract for Failure to Provide Platform with Reasonable Care and Skill against Fenix International;
3. Breach of Implied Covenant of Good Faith and Fair Dealing against Fenix International; and
4. Violation of the California Unfair Competition Law ("UCL") against the Agency Defendants on Behalf of California Subclass.

(*See generally* 4AC ¶¶ 571–633.)

On July 21, 2026, Defendants filed their separate Motions to Dismiss. (Dkts. 265–267, 271, 273, 276.) That same day, Plaintiffs filed a Motion for Leave to Amend the 4AC. (Dkt. 268.) The court turns first to the Motion for Leave to Amend.

## II. Plaintiffs' Motion for Leave to Amend

The court's Scheduling Order, entered on February 18, 2025, set October 23, 2025, as the deadline to file motions to amend the pleadings or add parties. (*See* Dkt. 114 at 1.) Plaintiffs now request leave to amend the 4AC to "add two additional California plaintiffs to support the UCL claims against the Agency Defendants" and add "back in their promissory estoppel claim." (Dkt. 268 at 1.) Defendants oppose the Motion. (Dkts. 277–280, 285, 287.)

### A. Legal Standard

Under Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The key determination is whether the subject deadline 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 638 (D. Nev. 2021) (quoting Johnson, 975 F.2d at 609). "The focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609. "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be

granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).

A party may demonstrate diligence by showing: (1) they "diligently assisted the court in recommending and creating a workable scheduling order;" (2) they are "unable to comply with the deadlines set in the scheduling order due to issues not reasonably foreseeable at the time of the issuance of the scheduling order;" and (3) they were "diligent in seeking an amendment once the party reasonably knew that [they] could not comply with the scheduling order." *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)).

Federal Rule of Civil Procedure 15 authorizes a party to amend its pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Generally, Federal Rule of Civil Procedure 15(a) liberally allows for amendments to the pleadings." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). However, a district court may deny a motion to amend where the amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces undue delay; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The opposing party bears the burden of showing why leave to amend should not be granted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987).

### B. Discussion

The court first considers whether Plaintiffs have demonstrated sufficient diligence to meet Rule 16's good cause standard and finds that they do not.[2] *See Johnson*, 975 F.2d at 609.

[2] The court observes that the promissory estoppel claim Plaintiffs seek to amend back into their Complaint was dismissed without leave to amend in the court's May 19, 2026, Order alongside

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC Date: October 20, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

First, Plaintiffs have not demonstrated that they were unable to comply with the scheduling order's October 23, 2025, deadline to add new parties due to issues not reasonably foreseeable at the time the scheduling order was issued. Plaintiffs state that they seek to add the proposed plaintiffs because "neither of the existing California Plaintiffs subscribed to" Creators represented by Verge or Content X. (Dkt. 268 at 4–5.) But Plaintiffs have long been on notice that the existing California Plaintiffs did not subscribe to Creators represented by Verge or Content X and offer no explanation regarding why they could not have sought to modify the scheduling order prior to the deadline. (*See* Dkt. 221 (Second Amended Complaint) ¶¶ 452-484; Dkt. 251 at 11 ("N.Z. and R.M. do not allege that they subscribed to Creators whose OnlyFans pages were managed by Boss Baddies, Content X, and Verge").) Indeed, Plaintiffs had several months between their April 23, 2025, First Amended Complaint and the October 23, 2025, deadline to identify and add new plaintiffs who did subscribe to Creators represented by Verge and Content X. And even if doing so proved difficult or required further time, Plaintiffs could have moved to extend the deadline at any point prior to October 23, 2025. They did not.

Second, Plaintiffs have not shown they were diligent in seeking an amendment once they reasonably knew that they could not comply with the scheduling order. The scheduling order deadline passed nearly a year ago. Since then, Plaintiffs have filed 3 new versions of the Complaint—one on January 2, 2026 (Dkt. 218); another on June 9, 2026 (Dkts. 252–254); and most recently on July 2, 2026 (Dkt. 262). At no point in the process of amending their Complaint several times over this year did Plaintiffs seek to add new parties or modify the scheduling order. (*See generally* Dkt.) Plaintiffs also do not argue that any new facts or circumstances have emerged that justify their substantial delay.

Lastly, the court is not persuaded by Plaintiffs' argument that because the rounds of briefing in this case have left "none of the current case deadlines…feasible," the deadline to amend should be extended because modification of the scheduling order is otherwise necessary. (Dkt. 268 at 7–8.) Modification of the discovery deadlines in this case may be necessary

---

Plaintiffs' related breach of contract claims. (Dkt. 251.) Therefore, even if Plaintiffs had acted diligently, that particular claim cannot be properly amended back into the Complaint. For that reason, the court's analysis focuses on Plaintiffs' request to add new plaintiffs.

because substantive discovery has not started. But Plaintiffs have been amending their Complaint for the past two years and could have requested leave to modify the scheduling order to extend the deadline to add new parties at any point. They failed to do so.

Because Plaintiffs have failed to demonstrate diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609; *see also Manriquez v. City of Phoenix*, 654 Fed. App'x 350, 351 (9th Cir. 2016) ("A party's failure to act diligently is determinative."). Therefore, the court does not consider Plaintiffs' arguments under Rule 15(a)(2). The Motion for Leave to Amend is **DENIED**.

## III. Defendants' Motions to Dismiss

### A. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal 'can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652 F.3d at 1216). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 556); *accord Wilson v. HewlettPackard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### B. Discussion

The court considers the following: (1) whether dismissal of the non-California Plaintiffs' claims is warranted under the forum selection clause; (2) whether the named Plaintiffs have

standing against the Agency Defendants; and (3) the sufficiency of Plaintiffs' allegations under Rule 12(b)(6).

### 1. Forum Selection Clause

The Agency Defendants argue that the court should dismiss the claims asserted by non-California Plaintiffs B.L., S.M., and A.L. against them pursuant to the doctrine of *forum non conveniens* based on the mandatory forum selection clause in the Terms of Service. (Dkts. 267 at 2; 271 at 6–7; 273 at 3; 274 at 2; 276 at 2.) Plaintiffs argue that because the Agency Defendants were not a party to the Terms of Service and their claims are not closely related to the Terms of Service, dismissal is not warranted. (Dkt. 283 at 3.)

"Even when a party did not sign a contract, the forum selection clause within that contract can apply to 'non-parties' when 'the alleged conduct of the non-parties is so closely related to the contractual relationship.'" *Velaro, Inc. v. National Flood Services, LLC*, 2021 WL 8779924, at *5 (C.D. Cal. July 7, 2021) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)); *see also Products & Ventures International v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (quoting *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)).

Here, the Agency Defendants argue that Plaintiffs' claims against them are closely related to the Terms of Service. In making their argument, the Agency Defendants rely on the court's April 9, 2025, Order ruling that the forum selection clause was "valid and enforceable as to Plaintiffs B.L., S.M., and A.L.['s]" claims against the Fenix Defendants (Dkt. 117 at 16), and the court's December 12, 2025, Order which reasoned that "dismissing the non-California Plaintiffs is warranted here because Plaintiffs' claims are closely related to the Terms of Service, as it pertains to Agency Defendants." (Dkt. 209 at 33.) In response, Plaintiffs rely on the court's more recent May 19, 2026, Order which stated that "the court is not persuaded that the non-California Plaintiffs' claims are 'so closely related' to the Terms of Service to warrant dismissal." (Dkt. 251 at 19.) Plaintiffs further argue that the Agency Defendants fail to provide any basis for the court to reverse its May 19, 2026, decision. (Dkt. 283 at 1-2.)

The court agrees with Plaintiffs. In its May 19, 2026, Order the court explicitly stated that "to the extent any of the court's findings in this Order conflict with the Prior Order, the court was persuaded by the amended allegations, Plaintiffs' accurate citations to the law, and Plaintiffs' developed arguments." (Dkt. 251 at 7 n.3.) The Terms of Service clearly state that third parties shall not have rights under it, (4AC ¶ 221), and the non-California Plaintiffs have asserted no claims against Fenix Defendants, who are the contracting parties to the Terms of Service (*see generally* 4AC). The court is also not persuaded by Moxy's argument that the Fan-Creator Contract[3] gave "third parties like Creators rights" and that "Moxy is entitled to invoke the contractual rights available to the creators." (Dkt. 267 at 16.) For the same reasons as in the court's May 19, 2026, Order, the court permits the non-California Plaintiffs' claim to proceed against the Agency Defendants at this stage of the proceedings.

**2. Standing**

Article III of the United States Constitution requires that courts adjudicate only actual cases or controversies. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016). To constitute an actual case or controversy, the plaintiffs bringing a case must have standing. *See id.* at 338; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (describing Article III standing as an "irreducible constitutional minimum"). "To have standing to sue a particular defendant, a plaintiff must have experienced an injury in fact that is fairly traceable to the challenged action of that defendant." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[N]amed plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members." *Martinez*, 46 F.4th at 970.

[3] Moxy seeks judicial notice of the Fan-Creator Contract referenced in Plaintiffs' 4AC. (Dkt. 269 at 2.) Plaintiffs do not oppose the court taking judicial notice of the "existence and contents of the Fan-Creator Contract." (Dkt. 284 at 5.) Accordingly, to the extent that the court relies on information encompassed by Moxy's request for judicial notice, the request is **GRANTED**. See *Pena v. Ocwen Loan Servicing, LLC*, 2018 WL 5857983, at *1 n.1 (C.D. Cal. Apr. 23, 2018) (taking judicial notice of documents to the extent that the court relies on the information).

While not all Agency Defendants raised standing arguments, "federal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *Osborne v. Cnty. of Riverside*, 385 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005). The court thus considers whether Plaintiffs have standing to bring their VPPA and UCL claims against the Agency Defendants.

*1. Moxy Management*

Each named Plaintiff alleges that they subscribed to a Moxy-represented Creator. (*See generally* 4AC.) Thus, the court finds that each named Plaintiff has standing to assert their VPPA and UCL claims against Moxy.

*2. Elite Creators*

Plaintiffs N.Z., S.M., B.L., and A.L. allege that they subscribed to Creators represented by Elite Creators. (*See generally* 4AC.) Elite Creators argues that Plaintiff R.M's claims against it must be dismissed because "R.M. did not subscribe to any Creator that Plaintiffs allege Elite Creators represented. (Dkt. 266 at 7.) Plaintiffs do not dispute this. (Dkt. 282 at 2.) Accordingly, Plaintiff R.M's VPPA and UCL claims against Elite Creators are **DISMISSED**. *See Martinez*, 46 F.4th at 970.

*3. Verge*

Verge argues that "Plaintiffs R.M., N.Z., S.M., and B.L." never "subscribed to a Verge managed creator" and their claims against Verge should therefore be dismissed. (Dkt. 271 at 8–9.) Plaintiffs "do not dispute the fact that the 4AC does not contain allegations that Plaintiffs R.M., N.Z., S.M., and B.L. subscribed to Creators managed by Verge." (Dkt. 286 at 8.) Accordingly, Plaintiffs R.M, N.Z., S.M., and B.L.'s VPPA and UCL claims against Verge are **DISMISSED**. *See Martinez*, 46 F.4th at 970.

*4. Content X*

Context X argues that "the claims asserted by Plaintiffs N.Z., R.M., and A.L. against Content X must be dismissed because they are not alleged to have subscribed to any of the Creators allegedly managed by Content X." (Dkt. 273 at 3.) The court agrees, (*see generally* 4AC), and Plaintiffs did not respond to this argument. Accordingly, Plaintiffs N.Z., R.M., and A.L.'s VPPA and UCL claims against Content X are **DISMISSED**. *See Martinez*, 46 F.4th at 970.

*5. Behave and Unruly*

Plaintiffs B.L. and A.L. allege that they subscribed to Creators represented by Behave and all Plaintiffs other than Plaintiff S.M. allege that they subscribed to Unruly-represented Creators. (*See generally* 4AC.) Although Behave and Unruly do not argue that claims against them from Plaintiffs who did not subscribe to Creators they represented should be dismissed, the court finds it appropriate to do so *sua sponte* due to a lack of standing. *See Martinez*, 46 F.4th at 970. Accordingly, because Plaintiff S.M. did not subscribe to any Unruly-represented Creators, Plaintiff S.M.'s VPPA and UCL claims against Unruly are **DISMISSED**. Further, because Plaintiffs N.Z., R.M., and S.M. did not subscribe to Behave-represented Creators, Plaintiffs N.Z., R.M., and S.M.'s VPPA and UCL claims against Behave are **DISMISSED**.

### 3. Sufficiency of Allegations

The court now turns to the following: (1) whether Plaintiffs sufficiently allege their breach of contract and breach of implied covenant claims against Fenix International; (2) whether Plaintiffs sufficiently allege their VPPA claim against the Agency Defendants; and (3) whether Plaintiffs sufficiently allege their UCL claims against Agency Defendants.

#### a. Plaintiffs' Claims Against Fenix International

Plaintiffs bring two claims against Fenix International alone: breach of contract for failure to provide a platform with reasonable care and skill and breach of the implied covenant of good faith and fair dealing.[4] (4AC ¶ 601, 610.) Fenix International argues that (1) the claims

[4] The court observes that Plaintiffs' assert their breach of contract and implied covenant claims against Fenix International alone and not Fenix Internet. (*See generally* 4AC.) "Plaintiffs

are barred by Section 230; and (2) both claims have not been sufficiently alleged. (Dkt. 265 at 9–10.) The court addresses both arguments in turn.

*1. Section 230 Immunity*

Section 230 of the Communications Decency Act "immunizes from liability '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Doe 1 v. Meta Platforms, Inc.*, 174 F.4th 1159, 1167 (9th Cir. 2026) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)); 47 U.S.C. § 230(c)(1). "'No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with'" Section 230. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025) (quoting 47 U.S.C. § 230). The parties agree that the Fenix Defendants are providers of an interactive computer service. Thus, the court considers the second and third prongs of the *Barnes* test and concludes that Section 230 does not bar Plaintiffs' claims.

The second prong requires courts to ask "whether plaintiff claims that the defendant breached a duty that derives from the defendant's status or conduct as a publisher or speaker." *Id.* (citation modified). "Duty is that which one is bound to do, and for which somebody else has a corresponding right." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Duty*, Black's Law Dictionary (11th ed. 2019)). When examining duty, the Ninth Circuit conducts a two-step analysis. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1177 (9th Cir. 2024). "First, [the Ninth Circuit] examine[s] the right from which the duty springs. Does it stem from the platform's status as a publisher (in which case it is barred by [Section] 230)? Or does it spring from some other obligation, such as a promise or contract (which, under *Barnes*, is distinct from publication and not barred by [Section] 230)? Second, [the Ninth Circuit] ask[s] what 'this duty requir[es] the defendant to do.' If it requires that [the defendant] moderate content to fulfill its duty, then [Section] 230 immunity attaches." *Id.* (citation modified). Put simply, "[a] claim

---

concede that Counts II and III are only alleged against FIL and that these counts can be dismissed as to Fenix Internet LLC." (Dkt. 281 at 1 n.1.) Accordingly, because no claims are asserted against Fenix Internet, the court **DISMISSES** Fenix Internet from this action.

that obliges the defendant to monitor third-party content to avoid liability also treats the defendant as a publisher." *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 640 (9th Cir. 2025). The Ninth Circuit "emphasize[s], however, that this does not mean immunity attaches anytime [defendant] could respond to a legal duty by removing content." *Yolo Techs.*, 112 F.4th at 1177 n.3. "For immunity to attach at this second step, moderation must be more than one option in [defendant]'s menu of possible responses; it must be the only option." *Id.*

The third prong requires courts to ask "whether the cause of action targets content provided by another." *Grindr*, 128 F.4th at 1151 (citation modified). "A defendant loses its immunity to the extent that the cause of action seeks to treat the defendant 'as the publisher or speaker of its own content—or content that it created or developed in whole or in part—rather than [as] the publisher or speaker of entirely third-party content.'" *Id.* (quoting *Calise*, 103 F.4th at 744).

Here, Fenix International argues that Plaintiffs' amended breach of contract and implied covenant claims require it to monitor third-party content to avoid liability. (Dkt. 265 at 9–10.) The court was previously unpersuaded by this argument. In the court's May 19, 2026, Order, the court stated that it was "not persuaded that such allegations seek to hold Fenix Defendants liable solely for facilitating communications but rather require Fenix Defendants to ensure the users are operating OnlyFans properly." (Dkt. 251 at 21.) The court explained that "Plaintiffs seek to hold Fenix Defendants 'accountable for a promise or representation, and not for failure to take certain moderation actions.'" *Id.* (quoting *Yolo Techs.*, 112 F.4th at 1178). Although "content moderation [may be] one possible solution" for Fenix Defendants to fulfill their alleged duties, "the underlying duty being invoked by the Plaintiffs, according to *Calise*, is the promise" or representation itself. *Id.; see also Calise*, 103 F.4th at 743 (finding that "Meta's duty arising from its promise to moderate third-party advertisements is unrelated to Meta's publisher status, and § 230(c)(1) does not apply to Plaintiffs' contract claims"). Based on that analysis, the court found that these particular claims were not barred by Section 230 to the extent they sought to hold Fenix Defendants liable for more than just facilitating communications.

The court's position remains the same. Plaintiffs' amended breach of contract and implied covenant claims are not barred by Section 230 because the claims do not seek to hold

Fenix International liable solely for facilitating communications. Rather, the threshold duty Plaintiffs invoke relates to the representations and promises Fenix International made on the platform. Those include the promise that OnlyFans "will use reasonable care and skill in providing" the platform to users. (4AC ¶ 219.) The allegations do not pose an ongoing monitoring duty on FIL but rather allege that FIL's affirmative actions such as "soliciting the agency channel, building partner programs, running OnlyFans TV promotions of agency managed Creators, building payout/verification infrastructure for agencies" are what constituted a breach of FIL's promise. (Dkt. 281 at 7.) The court agrees with Plaintiffs and finds that Section 230 does not bar Plaintiffs' claims against FIL at this stage. *See Bouck v. Meta Platforms, Inc.*, 2026 WL 810036, at *5 (N.D. Cal. Mar. 24, 2026) (rejecting Section 230 argument where plaintiffs "allege[d] Meta worked with the scammers to gin up the offending posts"); *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024) (finding claim was not barred by Section 230 even where plaintiff did "not clearly allege how Meta's ad tools work or contribute to the challenged ads" because plaintiff did "allege that the tools affect ad content in a manner that could at least potentially contribute to their illegality.").

Lastly, the court addresses Fenix International's argument that no enforceable promise can exist because the Terms of Service include an "explicit disavowal of any obligation to monitor or moderate Content." (Dkt. 265 at 9–10.) Plaintiffs respond that any "disclaimer of responsibility for reviewing User Content does not disclaim the obligation to build and operate the web platform with care." (Dkt. 281 at 15.) Plaintiffs also argue that "FIL's argument raises an ambiguity with the contract's interpretation" and "the contract's meaning is a question of fact that cannot be resolved on a Rule 12(b)(6) motion." (Dkt. 281 at 16.) At this stage of the proceedings, the court does not find that FIL's disavowal of any obligation to monitor or moderate content or violations of the Terms of Service also constituted a disavowal of its promise that it "will use reasonable care and skill in providing OnlyFans to [users]." (4AC ¶ 219.) Therefore, the court finds that Plaintiffs sufficiently allege an enforceable promise unrelated to a monitoring obligation and the claims against FIL are not barred by Section 230.

### 2. *Sufficiency of Breach of Contract Claim*

FIL next argues that Plaintiffs' breach of contract for failure to provide a platform with reasonable care and skill claim should be dismissed because the Terms of Service expressly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC Date: October 20, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

disclaim responsibility for reviewing or moderating content. (Dkt. 265 at 16.) Plaintiffs respond that the claim is not based on content moderation but other conduct such as Fenix International actively marketing to Agency Defendants and designing tools that facilitated the alleged Chatter Scams. (Dkt. 281 at 14.)

In previously dismissing this claim, the court noted that "Plaintiffs do not allege how tools such as Fan spending analytics and inter-shift notes features enable, or were specifically designed for, the Chatter Scam." (Dkt. 251 at 31.) The court granted leave to amend that portion of the allegations and now finds that Plaintiffs sufficiently allege that FIL breached its promise to provide a platform with reasonable care and skill. The amended allegations rest on "affirmative acts of design, construction, operation, and performance that facilitate the agencies' circumvention of the default one-user design" of the OnlyFans platform. (4AC ¶ 601.) Plaintiffs' 4AC now lays out how the referenced tools enabled and were specifically designed for Chatter Scams. Specifically, Plaintiffs allege that (1) the "mass message" tool "conceals broadcast nature from the recipient, [and] has no operational use for a Creator personally chatting with a Fan in real time;" (2) the spending analytics tool is "a feature for which a Creator personally engaging with a Fan in real time has no operational need mid-conversation, and which serves the shift-based Chatter qualification, upsell-prioritization, and operator-handoff workflow;" and (3) the per-Fan notes field "is the documented inter-shift handoff mechanism for agency Chatter operations" for which a Creator "personally engaged with her own Fans in real time has no operational utility." (4AC ¶ 601.) Plaintiffs also allege that "FIL implemented an agency-accommodating payout/verification infrastructure that necessarily contemplates the inappropriate use of agencies" on its platform. (*Id.*)

The court thus finds that the amended allegations cure the deficiencies noted by the court in its previous May Order. *See Bouck v. Meta Platforms, Inc.*, 2026 WL 810036, at *5 (N.D. Cal. Mar. 24, 2026) (rejecting argument that ad tools on Meta were "neutral"); *Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808, 818 (N.D. Cal. 2024) (allowing claim to proceed where there existed "a factual dispute regarding whether Meta's ad systems were neutral tools that anyone could use (or misuse) or whether the tools themselves contributed to the content of the ads.").

*3. Breach of Implied Covenant of Good Faith and Fair Dealing*

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citing *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960)). "The elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1145 (E.D. Cal. 2012) (citations omitted). The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349-50.

As the court previously found in its May 19, 2026, Order, Plaintiffs' claim imposes substantive duties beyond those incorporated in the alleged contracts, and the amended allegations have not cured this defect. (Dkt. 251 at 32.) The court therefore finds that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails once again. *See Guz*, 24 Cal. 4th at 349-50 ("[The covenant] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."); *Wasjutin v. Countrywide Bank N.A.*, 2016 WL 7443219, at *3 (C.D. Cal. June 8, 2016) ("The covenant is 'limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" (quoting *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004)). Accordingly, Plaintiffs' claim for breach of implied covenant of good faith and fair dealing against Fenix International is **DISMISSED**.

#### b. VPPA Claims Against Agency Defendants

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). "[T]he term 'personally identifiable information' includes information which identifies a person as having requested or obtained

specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has adopted the ordinary person standard to determine what constitutes personally identifiable information, or PII, holding that "personally identifiable information means only that information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation modified). "A video tape service provider may disclose personally identifiable information concerning any consumer . . . to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, "the term 'ordinary course of business' means only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

The court considers (1) whether Plaintiffs adequately allege that each of the Agency Defendants knowingly disclosed PII and (2) whether the ordinary business exception applies.

First, the court previously found that Plaintiffs had adequately alleged that the Agency Defendants "disclosed PII to other people, including Chatters." (Dkt. 251 at 27–28.) The court finds that Plaintiffs' amended allegations continue to be sufficient on this point. Second, the court finds that the ordinary business exception does not apply. As the court previously explained, it "is not persuaded that the alleged disclosure of PII to Chatters falls within Moxy's, or other Agency Defendants', ordinary course of business because the disclosure is part of the allegedly unlawful operation of the Chatter Scams, not Agency Defendants' ordinary business practice of managing Creators." (Dkt. 251 at 28.) Nothing in Plaintiffs' amended allegations alters the court's position on that point.

The Agency Defendants raise a new argument that Plaintiffs' VPPA claim fails on the merits because "Plaintiffs consented through the Terms of Use ('TOU') to the very third-party access they now challenge." (Dkt. 266 at 8.) Put simply, the argument is that "the affirmative disclosures in the Terms of Service regarding Creators' potential use of third-party agencies" put Plaintiffs on notice that their PII could be shared with third parties like management agencies. (Dkt. 273 at 3.) The Agency Defendants rely on the Creator Terms of Service, which includes a statement that Creators may "have an agent, agency, management company or other third party which assists [them] with the operation of [their] Creator account (or operates it on

[their] behalf)." (Dkt. 266 at 8–9.) However, although the court relied in part on this analysis in dismissing the VPPA claims against the Fenix Defendants, the court has previously held that the Agency Defendants did not enter "into an agreement under the Terms of Service with Plaintiffs," (Dkt. 251 at 9), and therefore have no rights under it. The court is not persuaded that the statement in the Terms of Service "that Fenix Defendants are 'not in any way . . . responsible' if Plaintiffs 'are identified from [their] Content'" extends to also cover the Agency Defendants. (Dkt. 251 at 26.)

The court next addresses arguments from specific Agency Defendants.

*1. Moxy Management*

Moxy argues that "no Plaintiff has ever alleged that they requested, obtained, or otherwise viewed a video from a Moxy-represented Creator." (Dkt. 267 at 18.) The court rejected this argument in its May 19, 2026, Order and its position remains the same. (Dkt. 251 at 27-28.) Each Plaintiff alleges that they subscribed to a Moxy-represented Creator. (*See generally* FAC.) Moxy's challenge to Plaintiffs' use of the term "digital content" instead of "video" does not change the court's analysis. The cases Moxy relies on involved deficient pleadings because the plaintiffs there failed to allege that they actually accessed or viewed any video content. *See Benson v. SimpleNursing, LLC*, 2026 WL 1045614, at *5 (D. Del. Apr. 17, 2026) (dismissing VPPA claim because "purchase of a subscription does not identify any specific videos obtained"); *Solomon v. Flipps Media, Inc.*, 2023 WL 6390055, at *5 (E.D.N.Y. Sept. 30, 2023), *aff'd*, 136 F.4th 41 (2d Cir. 2025) (dismissing VPPA claim where Plaintiff failed to "plausibly allege that Plaintiff actually accessed any 'prerecorded' video"); *Rodriguez v. Delta T LLC*, 2023 WL 9419152, at *5 (C.D. Cal. Dec. 12, 2023) (dismissing VPPA claim where Plaintiff did "not allege whether she views any of Defendant's video content on its mobile app"). Here, Plaintiffs' 4AC specifically alleges, among other allegations, that (1) "On April 3, 2023, [Plaintiff N.Z.] paid Breckie Hill (Moxy Management) $10 for digital content;" (2) Plaintiff R.M. subscribed to a Moxy-represented Creator and "paid her $20 a month to subscribe to her account;" and (3) "On November 22, 2023, [Plaintiff B.L.] purchased digital content for $15 from Ski Mask Girl (Moxy Management)." (4AC ¶¶ 444, 467, 494.) Thus, the court finds that all Plaintiffs adequately allege that they requested and viewed videos from Moxy-represented Creators.

*2. Elite Creators*

Elite Creators argues that Plaintiffs' 4AC "does not contain any specific allegation that Elite Creators itself delivered video content to any Plaintiff." (Dkt. 266 at 12.) The court disagrees. Plaintiffs N.Z., S.M., B.L., and A.L. allege that they subscribed to Creators represented by Elite Creators. (*See generally* 4AC.) Plaintiffs' 4AC specifically alleges, among other allegations, that (1) "On August 23, 2023, [Plaintiff N.Z.] paid McKinley Richardson (Creators Inc.) $20 for digital content;" (2) "On April 14, 2023, B.L. purchased a video for $18 from Summer Soderstrom (Creators Inc.);" (3) Plaintiff S.M. "purchased content from…Stephanie Landor (Creators Inc.);" and (4) Plaintiff A.L. subscribed to Creators represented by Elite Creators and "viewed videos sent to him via direct message through the Subscribed Creator Accounts." (4AC ¶¶ 444, 491, 508, 529.) Thus, the court finds that Plaintiffs N.Z., S.M., B.L., and A.L. adequately allege that they requested and viewed videos from Creators represented by Elite Creators.

*3. Verge*

Verge argues that Plaintiffs' amended allegations do not adequately "allege that Verge received PII that could be used to identify the Plaintiff A.L.'s video watching behavior." (Dkt. 271 at 8–9.) The court disagrees. Plaintiffs' 4AC specifically alleges that Plaintiff A.L. subscribed to Creators "Katie Williams and Mikayla Demaiter (Verge Agency)" and that "Plaintiff A.L. viewed videos sent to him via direct message through the Subscribed Creator Accounts." (4AC ¶¶ 525, 530.) Thus, the court finds that Plaintiff A.L. adequately alleges that he requested and viewed videos from Verge-represented Creators.

*4. Content X*

Context X joins in the other Agency Defendants' argument that Plaintiffs do not adequately allege that they viewed or received video content from Content X. (Dkt. 274.) But the 4AC alleges that Plaintiff B.L. subscribed to "Mathilde Tantot and Pauline Tantot (Content X)" and that "[o]n April 2, 2022, B.L. purchased digital content for $15 from Pauline Tantot

(Content X)." (4AC ¶¶ 488, 494.) The 4AC also alleges that Plaintiff S.M. subscribed to "Bella Thorne and Abella Danger (Content X Studios)" and that "Plaintiff S.M. purchased content from Bella Thorne (Content X), Abella Danger (Content X)" including "videos sent to him via direct message from the Subscribed Creator accounts." (4AC ¶¶ 504, 510, 511.) Thus, the court finds that Plaintiffs B.L. and S.M adequately allege that they requested and viewed videos from Content X-represented Creators.

*5. Behave and Unruly*

Behave and Unruly jointly argue that Plaintiffs fail to allege that they "ever sent a video to a Plaintiff." (Dkt. 276 at 2.) But Plaintiffs B.L. and A.L. allege that they subscribed to Creators represented by Behave and all Plaintiffs other than Plaintiff S.M. allege that they subscribed to Unruly-represented Creators. (*See generally* 4AC.) Plaintiffs' 4AC specifically alleges, among other allegations, that (1) "On June 28, 2023, [Plaintiff N.Z.] paid Stefanie Gurzanski (Unruly) $40.50 for digital content and he tipped her $99 for a video;" (2) Plaintiff B.L. subscribed to "Ryann Murphy and Chloe Rosenbaum (Behave)" and "viewed videos sent to him via direct message from Creators' accounts;" and (3) Plaintiff A.L. subscribed to "Kayla Simmons (Behave Agency)" and "viewed videos sent to him via direct message through the Subscribed Creator Accounts." (4AC ¶¶ 444, 493, 530.) Thus, the court finds that Plaintiffs B.L. and A.L. adequately allege that they requested and viewed videos from Creators represented by Behave. The court also finds that Plaintiffs N.Z., R.M., B.L., and A.L. adequately allege that they requested and viewed videos from Creators represented by Unruly.

**c. UCL Claims Against Agency Defendants**

Plaintiffs' 4AC alleges that the Agency Defendants violated the UCL in two ways. First, Plaintiffs allege that the Agency Defendants "committed unlawful business practices in violation of the UCL . . . because they have violated the VPPA." (4AC ¶ 626.) Second, Plaintiffs allege that the Agency Defendants' "conduct constitutes an unfair business practice" in violation of the UCL because the Agency Defendants (1) "used Chatters to impersonate the Represented Creators;" (2) used Chatters "to induce [Plaintiffs] to continue paying subscription fees and to solicit the purchase of Premium Content Fees;" (3) "omitted and/or failed to

disclose" their use of Chatters; and (4) "omitted and/or failed to disclose that the Represented Creators were not actually direct messaging with California Plaintiffs." (4AC ¶ 627.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Ninth Circuit has held that when "UCL claims are premised on misleading representations, Rule 9(b) requires a plaintiff to allege 'the particular circumstances surrounding [the] representations' at issue." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); s*ee also Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2020 WL 3893395, at *3 (E.D. Cal. July 10, 2020) ("The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims of fraud under the UCL."). "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (cleaned up).

The court finds that Plaintiffs' 4AC adequately alleges with particularity the circumstances giving rise to their contention that the Agency Defendants used Chatters to impersonate Creators, induced Plaintiffs to continue paying subscription and Premium Content Fees, and omitted and/or failed to disclose that the Creators were not actually direct messaging with Creators. The amended allegations also include specific misrepresentations made to Plaintiffs by Creators. For example, Plaintiffs' 4AC alleges that (1) "the Chatters referred to themselves as 'I' in the messages" to Plaintiffs; (2) "on June 28, 2023, Stefanie Gurzanski solicited N.Z. to buy premium content by representing 'i rarely do this,' 'plus it's a pov so I know you are gonna love it';" and (3) "[o]n November 27, 2021, Nicky Gile asked for N.Z.'s ID so he could become "a verified VIP" and it was "a precaution I'm taking now that I'm sharing such sensitive content!" (4AC ¶¶ 447–449.)

To the extent Agency Defendants argue that Plaintiffs' 4AC allegations could be more specific, the court finds that they still comply with Rule 9(b) because the allegations are "specific enough to give defendants notice of the particular misconduct so that they can defend

against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also* Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.) ("Perhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) is the determination of how much detail is necessary to give adequate notice to an adverse party and to enable that party to prepare a responsive pleading."). The court is also not convinced by Moxy's argument that Plaintiffs failed to allege that they have no other adequate remedy at law because the only remaining claim Plaintiffs have against the Agency Defendants is their VPPA claim which provides for statutory damages only. (Dkt. 281 at 16–17.)

As to Plaintiffs' new unlawful business practices UCL claim, the Agency Defendants argue that "Plaintiffs lack standing to bring their 'unlawful act' UCL claim because they have not alleged that they suffered any loss or deprivation of money or property that was caused by the alleged VPPA violation." (Dkts. 266 at 5; 267 at 29.) Plaintiffs respond that it "is enough for a plaintiff to allege that they would not have subscribed or paid for services if they knew their PII would be disclosed to a third party." (Dkt. 283 at 10.)

"For a private plaintiff to possess standing to bring a UCL claim, the plaintiff must: '(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.'" *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 827 (C.D. Cal. 2022), *aff'd*, 2024 WL 2239010 (9th Cir. May 17, 2024) (quoting *Kwikset*, 51 Cal. 4th at 322.) In the cases relied on by the Agency Defendants, the plaintiffs did not plead injuries other than statutory violations themselves. *See Pepper v. Charitable Res. Found., Inc.*, at *7 (C.D. Cal. Oct. 14, 2014). Here, "California Plaintiffs specifically allege that they expected their information to remain private, and that had they known of the Chatter Scams or that their personal information was being shared with Chatters, they would not have subscribed or paid those Premium Content Fees." (Dkt. 283 at 20.) The court finds that sufficient to establish economic injury as a result of the VPPA violation. *See Kishore v. Times Internet (UK) Ltd.*, 2024 WL 4197619, at *3 (N.D. Cal. Sept. 12, 2024) (finding that plaintiffs "met the standing requirements under both Article III and the UCL" when they "alleged that 'they paid more for Defendant's services than they otherwise would have had they known Defendant was disclosing [their] video viewing information to

unauthorized third parties"); *Ade v. Viki, Inc.*, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) ("a claim for violation of the VPPA…may support a UCL claim under the statute's unlawful prong").

Accordingly, the court finds that Plaintiffs' UCL claims against the Agency Defendants may proceed.

### C. Summary and Leave to Amend

The court provides a summary of the court's findings and determinations of whether leave to amend is appropriate. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Leave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'") (quoting *Balistreri*, 901 F.2d at 701); *Ctr. for Bio. Diversity v. United States Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear . . . that the complaint could not be saved by any amendment.'") (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022)).

Leave to Amend. Plaintiffs' Motion for Leave to Amend is **DENIED**.

Forum Selection Clause. The court finds that the forum selection clause does not cover claims asserted by non-California Plaintiffs B.L., S.M., and A.L. against the Agency Defendants.

Standing. The court finds that certain named Plaintiffs do not have standing to bring claims against the Agency Defendants because they did not subscribe to Creators represented by those Agencies and amendment would be futile. The court **DISMISSES WITHOUT LEAVE TO AMEND**: (1) Plaintiff R.M's VPPA and UCL claims against Elite Creators; (2) Plaintiffs R.M, N.Z., S.M., and B.L.'s VPPA and UCL claims against Verge; (3) Plaintiffs N.Z., R.M., and A.L.'s VPPA and UCL claims against Content X; (4) Plaintiff S.M.'s VPPA and UCL claims against Unruly; and (5) Plaintiffs N.Z., R.M., and S.M.'s VPPA and UCL claims against Behave.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:24-cv-01655-FWS-SSC Date: October 20, 2026
Title: N.Z. *et al.* v. Fenix International Limited *et al.*

Fenix Internet. The court **DISMISSES** Fenix Internet as a Defendant because no claims are asserted against it.

Plaintiffs' Breach of Contract Claim. The court finds that the claim is not barred by Section 230 and is adequately alleged. Fenix International's Motion to Dismiss this claim is **DENIED**.

Plaintiffs' Breach of Implied Covenant Claim. The court finds that the claim is not barred by Section 230 but has not been adequately alleged. The court finds granting leave to amend would be futile because Plaintiffs have repeatedly failed to adequately allege this claim and did not adequately address the deficiencies in the May 19, 2026, Order. (Dkt. 251 at 32); *see Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco,* 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."). Accordingly, the court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiffs' breach of implied covenant claim against Fenix International.

VPPA Claims Against Agency Defendants. The court finds that: (1) Plaintiffs adequately allege their VPPA claim against Moxy; (2) Plaintiffs N.Z., B.L., S.M., and A.L. adequately allege their VPPA claim against Elite Creators; (3) Plaintiff A.L. adequately alleges his VPPA claim against Verge; (4) Plaintiffs B.L. and S.M. adequately allege their VPPA claim against Content X; (5) all Plaintiffs other than S.M. adequately allege their VPPA claims against Unruly; and (6) Plaintiffs B.L. and A.L. adequately allege their VPPA claim against Behave. The Agency Defendants' Motions to Dismiss these claims are **DENIED**.

UCL Claims Against Agency Defendants. The court finds that Plaintiffs adequately allege their UCL claims against the Agency Defendants. The Agency Defendants' Motions to Dismiss Plaintiffs' UCL claims are **DENIED**.

## IV. Disposition

For the reasons stated above, Plaintiffs' Motion for Leave to Amend is **DENIED**. Fenix International's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The

court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiffs' breach of implied covenant of good faith and fair dealing against Fenix International. Plaintiffs' breach of contract claim for failure to provide a platform with reasonable care and skill may proceed. The court also **DISMISSES** Fenix Internet as a defendant because no claims are asserted against it. The Agency Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART.** Plaintiffs' VPPA and UCL claims against Agency Defendants that did not manage the Creators they subscribed to are **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiffs' VPAA and UCL claims against Agency Defendants who did represent Creators they subscribed to may proceed.

The remaining Defendants are **ORDERED** to file an answer to the remaining claims in the 4AC on or before **November 20, 2026.**

**IT IS SO ORDERED.**